IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARANDA LYNN ODONNELL, | ) | |
|     On behalf of herself and all others | ) | |
|     similarly situated, | ) | |
| | ) | |
|         Plaintiffs, | ) | Case No. 4:16-cv-01414 |
| | ) | (Class Action) |
| v. | ) | The Honorable Lee H. Rosenthal |
| | ) | U.S. District Judge |
| HARRIS COUNTY, TEXAS, | ) | |
| SHERIFF RON HICKMAN, | ) | |
| ERIC STEWART HAGSTETTE, | ) | |
| JOSEPH LICATA III, | ) | |
| RONALD NICHOLAS, | ) | |
| BLANCA ESTELA VILLAGOMEZ, | ) | |
| JILL WALLACE, | ) | |
| | ) | |
|         Defendants. | ) | |

**Reply in Support of Motion to Dismiss**

# Table of Contents

Page

Table of Contents .................................................................................................. ii

Table of Authorities ............................................................................................. iii

Summary ................................................................................................................1

Argument and Authorities......................................................................................2

    A.    ODonnell's Response is unclear as to the precise "policy" at issue. .......................2

    B.    All claims against Sheriff Hickman should be dismissed.........................................3

        1.    *Dismissal is warranted because ODonnell's claims against Sheriff Hickman are identical to her claims against Harris County.* ......................4

        2.    *Ex parte Young is inapplicable.* .................................................................5

        3.    *ODonnell's argument that Sheriff Hickman's "policy" of supposedly detaining arrestees without "lawful authority" relies on a misapplication of Texas statutes.* ......................................................8

    C.    All claims against Harris County should be dismissed.........................................11

        1.    *ODonnell's Response makes it clear that the Rules of Court are not unconstitutional.*.......................................................................................11

        2.    *The alleged "custom" of ignoring the Rules of Court requirements is not attributable to Harris County.* ..................................................13

        3.    *ODonnell has pled no facts showing that the County Court at Law Judges acquiesced in the Hearing Officers' "custom" of refusing to consider an arrestee's ability to pay, nor is this acquiescence attributable to Harris County.* ...................................................15

Conclusion ...........................................................................................................16

Certificate of Service ..........................................................................................18

**Table of Authorities**

**Page(s)**

<small>**CASES**</small>

*Alberti v. Klevenhagen*,
    610 F. Supp. 138 (S.D. Tex. 1985) ....................................................................9

*Armstrong v. Exceptional Child Cntr. Inc.*,
    135 S. Ct. 1378 (2015)..................................................................................7

*Bd. of Conty. Comm'rs of Bryan Cnty. v. Brown*
    520 U.S. 397 (1997)....................................................................................12

*Bigford v. Taylor*,
    834 F.2d 1213 (5th Cir. 1988) .............................................................14, 15

*Bostic v. Schaefer*,
    760 F.3d 352 (4th Cir. 2014) ......................................................................7

*Brown v. Harris Cnty., Tex.*,
    No. H-07-0644, 2010 WL 774138 (S.D. Tex. March 2, 2010) ...................4, 13, 14

*Buenrostro v. Collazo*,
    777 F. Supp. 128 (D.P.R. 1991)...............................................................4, 8

*City of San Antonio v. City of Boerne*,
    111 S.W.3d 22 (Tex. 2003).........................................................................12

*Connor v. Harris Cnty.*,
    No. H-88-78, 1992 WL 337420 (S.D. Tex. Sept. 17, 1992).........................5

*Degen v. Gen. Coatings, Inc.*,
    705 S.W.2d 734, 735 (Tex. App.—Houston [14th Dist.] 1986, no writ) ..............12

*DeLeon v. City of Haltom City*,
    106 F. App'x 909 (5th Cir. 2004) ..............................................................15

*Echols v. Parker*,
    909 F.2d 795 (5th Cir. 1990) .....................................................................5

*Eggar v. City of Livingston*,
    40 F.3d 312 (9th Cir. 1994) ...........................................................13, 14, 15

*Familias Unidas v. Briscoe*,
    619 F.2d 391 (5th Cir. 1980) .....................................................................12

*Fireman's Fund Ins. Co. v. City of Lodi, Cal.*,
  302 F.3d 928 (9th Cir. 2002) ............................................................7, 8

*Goodman v. Harris Cnty.*,
  571 F.3d 388 (5th Cir. 2009) ...............................................................5

*Griffin v. Cnty. Sch. Bd. of Prince Edward Cnty.*,
  377 U.S. 228 (1964)...............................................................................7

*Harris v. City of Austin*,
  2016 WL 1070863 (W.D. Tex. Mar. 16, 2016) .................................13, 14

*Johnson v. Moore*,
  958 F.2d 92 (5th Cir. 1992) ...............................................2, 11, 14, 15

*Kentucky v. Graham*,
  470 U.S. 159 (1985).............................................................................4

*Lopez v. Maczko*,
  No. Civ. A. 07-1382, 2007 WL 2461709 (E.D. Pa. Aug. 16, 2007)................4, 6, 7

*Los Angeles Cnty., Cal. v. Humphries*,
  562 U.S. 29 (2010).............................................................................11

*McBeath v. Campbell*,
  12 S.W.2d 118 (Tex. Comm'n App. 1929, holding approved) ................9

*Monell v. Dep't of Social Servs.*,
  436 U.S. 658 (1978).....................................................................4, 11, 7

*Okpalobi v. Foster*,
  244 F.3d 405 (5th Cir. 2001) ...............................................................6

*Pembaur v. City of Cincinnati*,
  475 U.S. 469 .....................................................................................15

*Philadelphia Co. v. Stimson*,
  223 U.S. 605 (1912)..............................................................................7

*Saldivar v. Tex. Dep't of Assistive Rehabilitative Servs.*,
  No. H-08-1820, 2009 WL 3386889 (S.D. Tex. Oct. 13, 2009) ...............6

*Soto v. Ortiz*,
  526 Fed. App'x 370 (5th Cir. 2013) ................................................9, 10

*Stripling v. Jordan Prod. Co., LLC*,
  234 F.3d 863 (5th Cir. 2002) ............................................................10

*Whirl v. Kern*,
  407 F.2d 781 (5th Cir. 1968) ........................................................................8, 9, 10

*Ex Parte Young*,
  209 U.S. 123 (1908) .................................................................................1, 3, 4, 5, 6, 7

**STATUTES**

TEX. CODE OF CRIM. PROC. art. 17.15 ....................................................................2, 4

Texas Local Government Code § 351.041(a) ..........................................................9, 10

**OTHER AUTHORITIES**

Charles A. Wright & Arthur R. Miller, 17A FED. PRAC. & PROC. JURIS. § 4232 (3d ed.
  2016) ....................................................................................................................6

Harris County Criminal Courts at Law Rules of Court ....................................1, 2, 5, 6,7

TEX. CONST. art. V, sec. 18 .....................................................................................12

## **Summary**

ODonnell has sued the wrong parties. While she continues to adjust her theory about the exact policy at issue, she is consistent about one thing—her complaint that people are jailed without "any inquiry into or findings concerning" ability to pay bail. As explained in detail in Defendants' Motion to Dismiss, there is no Harris County policy on setting bail and neither Sheriff Hickman nor the Hearing Officers make policy regarding bail. In her Response, ODonnell makes several creative attempts to avoid these facts. But she fails to identify a Harris County policy on bail. Without this, dismissal is proper.

Sheriff Hickman is not a proper party to this case. ODonnell's official-capacity claims against Sheriff Hickman are identical to and duplicative of her claims against Harris County. Moreover, ODonnell's contention that this Court should expand *Ex parte Young* in order to maintain ODonnell's unnecessary claim against Sheriff Hickman should be rejected. *Ex parte Young* applies to *State* policies and allows suit for unconstitutional behavior by *State* actors because—per the Eleventh Amendment—parties cannot directly sue the *State*. The Eleventh Amendment, however, does not bar suits against Harris County. Thus, there is no impediment to suing Harris County for unconstitutional County policies, and, as such, no need to also sue a Harris County employee to address these policies.

Moreover, ODonnell pleads no facts that Sheriff Hickman is involved in setting bail. Rather, judicial officers set bail in Harris County and Sheriff Hickman is obligated to follow these facially valid court orders. ODonnell's assertion that Sheriff Hickman is constitutionally obligated to ignore the bail orders of hearing officers and judges is contrary to the law.

As to Harris County, ODonnell fails to identify a policy that is attributable to Harris County. There is no unconstitutional policy of the Sheriff at issue here. And ODonnell's complaint that the bail schedule is misapplied does not implicate a Harris County policy. The

bail schedule is applied by judicial officers—both judges and hearing officers. Even if there is, as ODonnell contends, a "custom" of not considering ability to pay, setting bail (along with determining whether to release on personal recognizance) for individual arrestees are judicial acts for which Harris County cannot be liable.

## **Argument and Authorities**

A.      ODonnell's Response is unclear as to the precise "policy" at issue.

The central issue in this case is the alleged "policy" of "detain[ing] arrestees in jail pursuant to the scheduled amount without considering the person's ability to pay." (Docket Entry No. 3, ¶ 1.) ODonnell claims that Harris County is responsible for this "policy" through either Sheriff Hickman or the Hearing Officers (or potentially both). For Harris County to be liable, ODonnell is correct that she must identify a policy. Courts have generally recognized two types of polices: (1) a written policy or (2) "a persistent, widespread practice . . . [that] is so common and well settled at to constitute custom that fairly represents municipal policy." *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992).

The Rules of Court (along with the Texas Code of Criminal Procedure) instruct that in setting bail "ability to make bail is to be regarded." (Docket Entry No. 25, Ex. A, Rules of Court, Rule 4.2.3.1.3); Tex. Code of Crim. Proc. art. 17.15. In her complaint, ODonnell never goes so far as to claim that the Rules of Court, or the mere existence of a bail schedule, violate the constitution. However, in an attempt to identify a "Harris County policy" in response to Defendants' Motion to Dismiss, ODonnell points to the Rules of Court themselves and argues that they are a policy set by the County Criminal Court at Law Judges that is attributable to Harris County. (Docket Entry No. 27, p. 22) (discussing that the "establishment of a bail schedule" is not a judicial function); (*id.* at 21) (arguing that "promulgation of the County's bail schedule and acquiescence in the Hearing Officer's failure to consider ability to pay are

administrative functions . . .").  But it is undisputed that the Rules of Court do require an inquiry into ability to pay.  Therefore, as discussed at length in Defendants' Response to Plaintiff's Request for Preliminary Injunction, which Defendants incorporate by reference, the Rules of Court are constitutional even under Odonnell's reading of the Constitution.

Perhaps recognizing that the Rules of Court are constitutionally sufficient, ODonnell claims that it is the "policy and practice" in Harris County not to consider an arrestee's ability to make bail.  (Docket Entry No. 3, p. 1.)  Indeed, ODonnell now appears to allege that two "customs" exist: (1) the Hearing Officers "custom" of not considering ability to pay and (2) Sheriff Hickman's "custom" of unlawfully detaining arrestees without "lawful authority" because the arrestees' bail was allegedly set "pursuant to money bail amounts set without an inquiry into or findings concerning their ability to pay," which is articulated for the first time in ODonnell's Response.  (Docket Entry No. 27, pp. 16–17.)

Defendants will address all three of the alleged policies upon which ODonnell's claims are based.

B.      All claims against Sheriff Hickman should be dismissed

ODonnell has pled no facts showing that Sheriff Hickman is in any way involved in setting bail in Harris County.  ODonnell's Response does not address this deficiency. ODonnell's claims against Sheriff Hickman should be dismissed for this reason alone.

Putting this defect aside, the remainder of ODonnell's Response for why she believes she has stated a claim against Sheriff Hickman is flawed.  First, ODonnell advocates for the expansion of *Ex parte Young* by claiming that it applies to county officers enforcing county policy.[1]  The doctrine of *Ex Parte Young* is a limited exception to the general principle of

---

[1]  ODonnell's Response makes numerous references to "state law."  (Docket Entry No. 27, p. 9) (discussing the Court's "equitable power enjoin a state or municipal actor from enforcing unconstitutional judicial orders or *state*

sovereign immunity allowing a suit for injunctive or declaratory relief challenging the constitutionality of an official's actions in enforcing *state law*. *See Ex Parte Young*, 209 U.S. 123 (1908). *Ex parte Young* has no application to *county employees* enforcing county policy. *See Lopez v. Maczko*, No. Civ. A. 07-1382, 2007 WL 2461709, at *7 (E.D. Pa. Aug. 16, 2007).

Second, ODonnell argues that Sheriff Hickman maintains a policy of detaining people without "lawful authority." (Docket Entry No. 27, p. 17.) ODonnell demands that Sheriff Hickman ignore orders issued by the Hearing Officers—*judicial officers*—and conduct a de novo inquiry of an accused's ability to make bail before detaining the accused. ODonnell's unsupported argument is unworkable and contrary to legal precedent, which holds that the Sheriff is not obligated to "verify or otherwise review the correctness of [a] judicially issued order." *Buenrostro v. Collazo*, 777 F. Supp. 128, 135 (D.P.R. 1991).

1. *Dismissal is warranted because ODonnell's claims against Sheriff Hickman are identical to her claims against Harris County.*

"[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity." *Brown v. Harris Cnty., Tex.*, No. H-07-0644, 2010 WL 774138, at *14 (S.D. Tex. March 2, 2010); *see also Kentucky v. Graham*, 470 U.S. 159, 167 n.14 (1985) ("There is no longer a need to bring official-capacity actions against local governments officials, for under *Monell*, *supra*, local governmental units can be sued directly for damages and injunctive or declaratory relief."). Therefore, where the claims against the county official are identical to those against the county, courts routinely dismiss the claims against the official. *See Brown*, 2010 WL 774138 at *14 (dismissing claims against Harris County Sheriff in his official capacity after noting that the

---

*law*."); (*id.*, p. 10) (reasoning that "Defendants' arguments that they are merely enforcing *state law* or following the orders of judges do nothing to undermine the Court's power to grant injunctive relief . . ."). ODonnell, however, is not claiming that any aspect of state law is unconstitutional. These ubiquitous references to state law are an attempt to give the appearance that *Ex parte Young* has some application, which it does not.

plaintiff's claims against Harris County and the Harris County Sheriff were "identical"); *See Connor v. Harris Cnty.*, No. H-88-78, 1992 WL 337420, at \*3 (S.D. Tex. Sept. 17, 1992) (dismissing the sheriff because the class claims against him "in his official capacity are actually claims against Harris County, because plaintiffs are pursing identical claims against Harris County, and because [Sheriff] Klevenhagen's presence as a defendant sued in his official capacity is not necessary to ensure adequate relief . . .").

ODonnell's claims against Sheriff Hickman in his official capacity and Harris County are identical. ODonnell complains about the same conduct and seeks the same relief. Accordingly, dismissal of Sheriff Hickman is warranted. *See Goodman v. Harris Cnty.*, 571 F.3d 388, 395–96 (5th Cir. 2009) (affirming dismissal of a claim against a Constable in his official capacity because plaintiff's official capacity claims were identical to those brought against Harris County and discussing that the only way a separate claim could exist is if it were brought against him in his individual capacity).

2. *Ex parte Young is inapplicable.*

ODonnell makes the creative argument that independent grounds for suing Sheriff Hickam in his official capacity exist under *Ex parte Young.* ODonnell asks the Court to exercise its "equitable power to enjoin a state or municipal actor from enforcing unconstitutional judicial orders or state laws." (Docket Entry No. 27, p. 9.)

No court has ever applied *Ex parte Young* against a municipal or county official who is applying local or county law. *See, e.g.*, *Echols v. Parker*, 909 F.2d 795, 801 (5th Cir. 1990) ("A county official pursues his duties as a state agent when he is enforcing state law or policy. He acts as a county agent when he is enforcing county law or policy."). Rather, *Ex parte Young* is a narrow exception to a state's sovereign immunity under the Eleventh Amendment. Because a "suit against a state agency 'is a suit against the state,'" the Eleventh Amendment would

ordinarily bar such suits. *Saldivar v. Tex. Dep't of Assistive Rehabilitative Servs.*, No. H-08-1820, 2009 WL 3386889, at \*14 (S.D. Tex. Oct. 13, 2009). *Ex parte Young* is a fiction that circumvents the Eleventh Amendment by allowing parties to seek declaratory or injunctive relief against state officers. *Id.*; *Okpalobi v. Foster*, 244 F.3d 405, 411 (5th Cir. 2001) (discussing that *Ex parte Young* "allows suits against state officials for the purpose of enjoining the enforcement of an unconstitutional state statute."); *Lopez v. Maczko*, No. Civ. A. 07-1382, 2007 WL 2461709, at \*7 (E.D. Pa. Aug. 16, 2007) ("The doctrine developed due to the inability of a plaintiff to sue a *state* directly unless the state waived its Eleventh Amendment immunity or Congress overrode the *state's* immunity."). It is premised on the idea "that because a sovereign state cannot commit an unconstitutional act, a state official enforcing an unconstitutional act is not acting for the sovereign state and therefore is not protected by the Eleventh Amendment." *Id.*; *see also* Charles A. Wright & Arthur R. Miller, 17A FED. PRAC. & PROC. JURIS. § 4232 (3d ed. 2016) ("The basic doctrine of *Ex parte Young* can be simply stated: A federal court is not barred by the Eleventh Amendment from enjoining *state officers*.").

ODonnell recognizes that Harris County does not enjoy Eleventh Amendment immunity for the alleged policies at issue. (*See* Docket Entry No. 27, p. 15.) Thus, extending *Ex parte Young* to allow a suit against Sheriff Hickman in his official capacity is unnecessary and contrary to precedent dismissing local officials when the claims against those officials mirror the claims against the local governmental entity. (*See* Section B1 above.) In fact, ODonnell even admits that this Court can enjoin Constitutional violations by Harris County. (*See* Docket Entry No. 27, 13–15.)

At least one court has expressly refused to extend *Ex parte Young* to municipal officials. In *Lopez*, the plaintiff sued the police commissioner in his official capacity and the city. *Lopez v.*

*Maczko*, No. Civ. A. 07-1382, 2007 WL 2461709, at *7 (E.D. Pa. Aug. 16, 2007). "The plaintiff argue[d] that his official capacity suit against Commissioner Donchez should be maintained [under *Ex parte Young*] to the extent he is seeking equitable relief." *Id.* The court found the plaintiff's argument "entirely misplaced," and explained that *Ex parte Young* only applied to suits against state officials. The court reasoned that because the plaintiff's official capacity claim could be maintained against the city directly under *Monell*, *Ex parte Young* was inapplicable. *Id.*

Likewise, the cases cited by ODonnell confirm that *Ex parte Young* applies only in instances where the Eleventh Amendment is implicated.[2] Each case ODonnell cites either involves enforcement of state or federal law where the actual party (e.g., the State or the United States) could not be sued or in the instance of *Fireman's Fund Insurance Co.*, the official capacity claims were "necessary to 'effectively foreclose any assertion . . . of Eleventh Amendment Immunity," which is not the case here. *Fireman's Fund Ins. Co. v. City of Lodi, Cal.*, 302 F.3d 928, 957 (9th Cir. 2002). ODonnell has cited no authority for the proposition that claims against a county officer (like Sheriff Hickman) who is enforcing county policy (as ODonnell claims Sheriff Hickman is doing), gives rise to a separate official-capacity claim under *Ex parte Young*.

---

[2] *See Armstrong v. Exceptional Child Cntr. Inc.*, 135 S. Ct. 1378, 1382 (2015) (seeking to enjoin "two officials in Idaho's Department of Health and Welfare" from implementing *state* law); *Philadelphia Co. v. Stimson*, 223 U.S. 605, 619 (1912) (discussing potential liability of the Secretary of War—a *federal officer*—for enforcement of *federal law*, and further discussing that the United States itself could not be sued, but that "the exemption of the United States from suit does not protect its officers from personal liability to persons whose rights of property have been wrongfully invaded."); *Griffin v. Cnty. Sch. Bd. of Prince Edward Cnty.*, 377 U.S. 228, 233 (1964) (challenging application of *state law* (i.e., Virginia's segregation laws)); *Bostic v. Schaefer*, 760 F.3d 352, 371 (4th Cir. 2014) (challenging *state law* regarding same-sex marriage). In fact, the footnote cited by ODonnell expressly states: "Pursuant to *Ex parte Young*, the Eleventh Amendment does not bar a citizen from suing a *state officer* to enjoin to enforcement of an unconstitutional law . . . ." (Docket Entry No.

3. *ODonnell's argument that Sheriff Hickman's "policy" of supposedly detaining arrestees without "lawful authority" relies on a misapplication of Texas statutes.*

ODonnell asserts that Sheriff Hickman is liable in his official capacity because he "possesses the ultimate authority and responsibility to detain only those people who are 'lawfully' ordered to his jail." (Docket Entry No. 27, p. 17.) ODonnell reasons that before Sheriff Hickman can commit individuals to jail, he must first "ensure that the individuals in his custody are there pursuant to lawful orders and lawful process." (*Id.* at p. 17). ODonnell then asserts that Sheriff Hickman maintains a "practice of detaining individuals on money bail imposed without inquiry into and findings concerning ability to pay," purportedly in violation of Sheriff Hickman's duty. (*Id.* at p. 3.) ODonnell's argument lacks authority and practicality, and is contrary to Texas law.

The Court should first consider the gravity of what ODonnell suggests: ODonnell claims that Sheriff Hickman has the discretion to ignore judicial orders setting bail and that Sheriff Hickman must conduct a de novo review of such orders. ODonnell's argument defies all logic and common sense; worse yet, it is contrary to law.

Courts have held that jailers are required to follow facially valid court orders, and that no independent obligation to verify the correctness of facially proper orders exists. For example, in *United States ex rel. Bailey v. Askew*, the Fifth Circuit rejected a claim that a jailer could be liable for holding a person pursuant to a court order. 486 F.2d 134 (5th Cir. 1973) (per curiam). The court held: "a jailer cannot be held liable for an error in an order of commitment which is patently proper." *Id.*; *see also Whirl v. Kern*, 407 F.2d 781, 791 (5th Cir. 1968) (discussing when a jailer can be liable and noting "a jailer cannot be liable for errors in a warrant of commitment fair and valid on its face"); *Buenrostro*, 777 F. Supp. at 135 (finding no duty "on the part of the

Department of Corrections to verify or otherwise review the correctness of the judicially issued order").

Indeed, failing to obey a court order can lead to liability. A sheriff who disobeys a valid court order can be held in contempt. *See, e.g.*, *Alberti v. Klevenhagen*, 610 F. Supp. 138, 141 (S.D. Tex. 1985) (discussing contempt generally). Likewise, if a court sets a bond and a plaintiff makes the bond but the sheriff chooses to continue to detain him in spite of the court's order, a sheriff can be liable for false imprisonment. *McBeath v. Campbell*, 12 S.W.2d 118, 122 (Tex. Comm'n App. 1929, holding approved). Liability can also arise if a jailer holds a plaintiff after dismissal of a criminal case (i.e., in the total absence of any authority). *Whirl v. Kern*, 407 F.2d 781, 794–95 (5th Cir. 1968) (holding the sheriff liable for detaining a prisoner for nine months after his case was dismissed).

Moreover, ODonnell's reliance on Texas Local Government Code § 351.041(a) and the cases citing this provision is misplaced. ODonnell argues that § 351.041(a) "confers a duty on the Harris County Sheriff to incarcerate only those persons whom he has lawful authority to imprison." (Docket Entry No. 27, p. 16.) Section 351.041 states: "The sheriff of each county is the keeper of the county jail. The sheriff shall safely keep all prisoners committed to the jail by *lawful authority*, subject to an order of the proper court." The "lawful authority" element has been interpreted to require the sheriff to examine whether there is any objective basis for holding a person (e.g., probable cause or court order); it is not license to disregard court orders with which the sheriff disagrees. *See Soto v. Ortiz,* 526 Fed. App'x 370, 376 (5th Cir. 2013) (holding that because the plaintiff was arrested pursuant to a "facially valid warrant," even though there was a case of mistaken identity, the sheriff was not liable for false imprisonment).

At most, § 351.041(a) requires that a jailer maintain "reasonable internal procedures" to ensure that he has a "good faith belief based on objective circumstances that [he has] valid legal authority to imprison." *Soto*, 526 F. App'x at 375. Given the line of cases holding that corrections officers have no obligation to look behind court orders, "objective circumstances" exist and Sheriff Hickman's duty is discharged so long as detention is pursuant to a facially valid court order. *See id.* (finding no liability for four days of detention pursuant to a facially valid but incorrect warrant); *compare Whirl v. Kern*, 407 F.2d 781, 794–95 (5th Cir. 1968) (holding the sheriff liable for detaining a prisoner for nine months after his case was dismissed).

Even if § 351.041(a) requires review of each order setting bail, reasonable procedures are in place to review the Hearing Officers' orders. Unsurprisingly, the Hearing Officers' orders are reviewed by other judicial officers—not the Sheriff or anyone under the Sheriff's control. Specifically, those who cannot make bail are taken before a County Court at Law Judge within 72 hours of arrest where their bail may again be reviewed. In short, Sheriff Hickman has no authority or obligation to review the Hearing Officer's orders, and, in any event, any defects in those orders are reviewed by a County Court at Law Judge within 72 hours. Thus, proper judicial procedures exist to ensure that bail is properly set, and Sheriff Hickman's duty under § 351.041(a) is to follow those orders.

Finally, under no set of facts could Sheriff Hickman be liable for the wrongs ODonnell alleges. Setting bail in any given case is entirely a judicial function for which Sheriff Hickman plays no role whatsoever, Sheriff Hickman lacks discretion as a matter of law to disregard judicial orders, and Sheriff Hickman is compliant with his duties under § 351.041(a) when he jails pursuant to a court order. Therefore, allowing ODonnell the opportunity to amend would be futile. *See Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2002) (finding

that "futility" means that an "amended complaint would fail to state a claim upon which relief could be granted.").

C.    All claims against Harris County should be dismissed.

To state a claim against Harris County, ODonnell must identify a policy that is *attributable to* Harris County. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694–95 (1978); *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 37 (2010). ODonnell acknowledges as much by noting that because Harris County can act "only . . . through policy and not through the isolated actions of [it]s employees," she must identify a Harris County policy "in order to show that an injunction could actually stop the unconstitutional action." (Docket Entry No. 27, p. 13.)

It is unclear precisely which policy or policies ODonnell is complaining of, but her Response hints at three possibilities: (1) a policy for which Sheriff Hickman is allegedly responsible, discussed above; (2) the Rules of Court written by the County Court at Law Judges; and (3) the Hearing Officer's "custom" of refusing to consider the ability of arrestees to make bail (as is expressly required by the Rules of Court).  As explained above, there is no authority for ODonnell's claim that Sheriff Hickman owes any duty to review the Hearing Officer's bail orders.  As set forth below, ODonnell fails to state a claim against Harris County based upon the other two "policies." The only "unconstitutional action" ODonnell identifies is the Hearing Officers' alleged custom of failing to inquire into the ability to pay. This is a judicial function not attributable to Harris County.

1.    *ODonnell's Response makes it clear that the Rules of Court are not unconstitutional.*

To the extent that ODonnell claims that Harris County is liable for the bail schedule as a "policy statement, ordinance, regulation, or decision" adopted by Harris County and promulgated by its lawmaking officers, ODonnell has failed to state a claim. *See Johnson*, 958 F.2d at 94.

ODonnell acknowledges that the Rules of Court require consideration of ability to pay when the bail is determined: "the procedures for Harris County actually instruct the Hearing Officers to consider ability to pay, Rule 4.2.3.1.2." (Docket Entry No. 27, p. 20.) The bail schedule and the requirement that Hearing Officers conduct an inquiry into misdemeanor arrestees' ability to pay bail are directly in line with Fifth Circuit precedent. (*See* Docket Entry No. 26, pp. 11–17.)[3]

Furthermore, irrespective of the constitutionality of the Rules of Court, the Rules of Court are not attributable to Harris County. ODonnell argues that in promulgating the Rules of Court, the County Court at Law Judges act in a "legislative" capacity for Harris County and, therefore, the Rules of Court are an official Harris County policy. ODonnell cites *Degen v. Gen. Coatings, Inc.* in support of this proposition. 705 S.W.2d 734, 735 (Tex. App.—Houston [14th Dist.] 1986, no writ). *Degen*, however, stands for the uncontroversial principle that an amendment to the Texas Rules of Civil Procedure should not be given less weight than the Rules themselves because "[t]he promulgation of rules and amendments thereto is a legislative act of the court, and the rules have the force of statutes." *Id.*

ODonnell also cites *Board of County Commissioners of Bryan County v. Brown* for the principle that a municipality may be held liable for the decisions of "its duly constituted legislative body." 520 U.S. 397, 403 (1997). But the County Criminal Courts at Law is not the duly constituted legislative body of Harris County—that designation belongs to the Harris County Commissioners Court. *See* TEX. CONST. art. V, sec. 18; *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 27-28 (Tex. 2003); *see also Familias Unidas v. Briscoe*, 619 F.2d 391, 405 (5th Cir. 1980) (finding that the administrative functions of the head "judge" of the county commissioners court—an administrative body, not a typical court of law like the County

---

[3] Defendants briefed the constitutionality of the Rules of Court and the bail schedule in their Response to Motion for Preliminary Injunction, and incorporate that Response herein.

Criminal Court at Law—could be a policy attributable to the county, whereas the "judge's" non-administrative actions were not attributable to the county).

*Degen* and *Brown* are irrelevant to the issue at hand: whether promulgation of the bail schedule by the County Courts at Law Judges is an administrative function and, if it is, whether it is a policy attributable to Harris County. This exact issue was recently addressed in *Harris v. City of Austin*, 2016 WL 1070863 (W.D. Tex. Mar. 16, 2016). There, the court found the act of promulgating rules governing court procedure was "more judicial than non-judicial in nature." *Id.* at *7. The court rejected the plaintiff's argument that municipal judges passing court rules pursuant to the Austin City Code were acting in an administrative capacity for the city. *Id.* Accordingly, the court concluded that the rules were not attributable to the city of Austin. *Id.*

Likewise, the County Court at Law Judges promulgated the Rules of Court and the bail schedule for orderly and efficient court procedure, plainly within constitutional parameters. ODonnell alleges a Hearing Officers' custom of failure to inquire into the ability to pay, but the Rules of Court require that exact inquiry. The Rules of Court, even if a policy attributable to Harris County, are not an unconstitutional policy, and do not cause the allegedly unconstitutional custom at issue.

2. *The alleged "custom" of ignoring the Rules of Court requirements is not attributable to Harris County.*

The third "policy" identified by ODonnell is the purported "custom" of the Hearing Officers ignoring the Rules of Court requirement that "the ability to make bail is to be regarded." (Docket Entry No. 27, p. 20.) This purported "custom" is not a policy attributable to Harris County because setting bail is a judicial function which is not and cannot be controlled by Harris County. *Eggar v. City of Livingston*, 40 F.3d 312, 316 (9th Cir. 1994) ("A municipality cannot be

liable for judicial conduct it lacks the power to require, control, or remedy, even if that conduct parallels or appears entangled with the desires of the municipality.").

Defendants cited numerous cases demonstrating that judicial acts are not attributable to a municipality. *See, e.g., Johnson v. Moore*, 958 F.2d at 94; *Bigford v. Taylor*, 834 F.2d 1213, 1221 (5th Cir. 1988); *Eggar v. City of Livingston*, 40 F.3d 312, 316 (9th Cir. 1994). ODonnell dismisses these cases as "irrelevant," and attempts to distinguish Defendants' authority by arguing that those cases "involved a municipal judge's decision to deny bail in a single case involving a specific defendant," whereas she purportedly complains of the "establishment of a bail schedule and associated policies" that are applied "automatically across the board as a rule." (Docket Entry No. 27, p. 22.)  The "irrelevant" cases have consistently held that a judge's actions taken in his or her judicial capacity cannot constitute municipal policy.

Indeed, this exact distinction was rejected in *Harris v. City of Austin*, which also complained about a bail "policy" and not a decision to deny bail in a single case involving a single defendant. The *Harris* court held that the alleged failure of the City of Austin's municipal judges to inquire into the ability of arrestees' to pay fines, and the existence of court rules providing for and authorizing those fines, were not policies attributable to the City. *Harris*, 2016 WL 1070863, at *7. The Court held that, in assessing the complained-of fines, the municipal judges exercised their "authority under state law" and acted in a judicial role. *Id.* at *6. Accordingly, the judges' alleged widespread policy and custom of setting fines without inquiring into the ability to pay bail did not constitute a policy or custom for which the City of Austin was responsible. *Id.* at *7.

Likewise, Harris County is not liable for the Hearing Officers' decisions (even wrong ones) in setting bail. *See, e.g., Bigford*, 834 F.2d at 1222. "[A judge's] 'deliberate or mistaken

departure from the controlling law' cannot be said to represent county policy." *Id.* (*citing Pembau v. City of Cincinnati*, 475 U.S. 469. 486 (1986) (White, J., concurring)).

3.  *ODonnell has pled no facts showing that the County Court at Law Judges acquiesced in the Hearing Officers' "custom" of refusing to consider an arrestee's ability to pay, nor is this acquiescence attributable to Harris County.*

ODonnell also argues that the County Court at Law judges "acquiesce" in the Hearing Officers' alleged custom of failing to inquire into the ability to pay when setting bail. (Docket Entry No. 27, p. 20.) This argument appears for the first time in ODonnell's Response. ODonnell pleads no facts in support of this assertion in her Complaint—her only allegations as to the County Court at Law judges are that they "promulgate the bail schedule" and preside over misdemeanor cases. (Docket Entry No. 3, ¶¶ 12.) ODonnell has identified no wrongdoing attributable to Harris County arising from the conduct of the County Court at Law judges and instead, in her Complaint, contends that the Harris County policy at issue is a policy made by Sheriff Hickman.

Just as Harris County cannot control the judicial functions of the Hearing Officers, Harris County cannot control the judicial functions of the County Court at Law Judges, and cannot control their alleged "acquiescence" in what the Hearing Officers do in any individual case. *See DeLeon v. City of Haltom City*, 106 F. App'x 909, 910-11 (5th Cir. 2004) (rejecting "the contention that the City had the power to set judicial policy for a municipal judge . . . or that it could have ratified a municipal judge's judicial conduct, even if its policymakers knew of the judge's conduct and approved of it") (*citing Eggar*, 40 F.3d at 316; *Johnson*, 958 F.2d at 94)). Even if ODonnell had alleged facts sufficient to show the ratification of a "persistent and widespread practice," Harris County is not liable when, as is the case here, the practice consists of judicial acts that the municipality cannot control or remedy. *See Eggar*, 40 F.3d at 316.

## **Conclusion**

ODonnell's Response fails to clarify how she has stated a claim against these Defendants. Although ODonnell alleges a variety of acts and policies, none of these acts or policies are attributable to any Defendant for the purposes of § 1983. Sheriff Hickman does not create or implement bail policy, and is simply not a proper party to a case about the creation and implementation of bail policy. The Hearing Officers actually do set bail, but exercise a judicial function in doing so. Harris County cannot require or control this conduct, or the conduct of the County Court at Law Judges' in promulgating the Rules of Court and the bail schedule. ODonnell's Complaint should be dismissed for failure to state a claim.

Respectfully Submitted,

GARDERE WYNNE SEWELL LLP

/s/ Katharine D. David
Mike Stafford
Federal I.D. No. 20898
Texas Bar No. 18996970
mstafford@gardere.com
Katharine D. David
Federal I.D. No. 577391
Texas Bar No. 24045749
kdavid@gardere.com
Philip J. Morgan
Federal I.D. No. 1708541
Texas Bar No. 24069008
pmorgan@gardere.com
Ben Stephens
Federal I.D. No. 2898153
Texas Bar No. 24098472
bstephens@gardere.com
2000 Wells Fargo Plaza
1000 Louisiana Street
Houston, TX  77002-5011
Ph: 713-276-5500 – Fax: 713-276-5555

**OFFICE OF THE HARRIS COUNTY ATTORNEY**

/s/ Melissa Spinks
Melissa Spinks
Sr. Assistant County Attorney
Federal I.D. No. 1312334
Texas Bar No. 24029431
melissa.spinks@cao.hctx.net
John Odam
Assistant County Attorney
Texas Bar No. 15192000
Federal I.D. No. 6944
john.odam@cao.hctx.net
1019 Congress, 15th Floor
Houston, Texas 77002
Ph: 713-274-5101 – Fax: 713-755-8924
***Counsel for Harris County, Texas, Sheriff Ron Hickman, Eric Stewart Hagstette, Joseph Licata III, Ronald Nicholas, Blanca Estela Villagomez, and Jill Wallace***

17

**Certificate of Service**

I certify that on the 1st of August, 2016, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court.

*/s/ Katharine D. David*
Katharine D. David