**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| MARANDA LYNN ODONNELL,<br>LOETHA MCGRUDER,<br>ROBERT RYAN FORD<br>　　　　On behalf of themselves and all<br>　　　　others  similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>HARRIS COUNTY, TEXAS,<br><br>SHERIFF RON HICKMAN,<br><br>ERIC STEWART HAGSTETTE,<br>JOSEPH LICATA III,<br>RONALD NICHOLAS,<br>BLANCA ESTELA VILLAGOMEZ,<br>JILL WALLACE,<br><br>PAULA GOODHART,<br>BILL HARMON,<br>NATALIE C. FLEMING,<br>JOHN CLINTON,<br>MARGARET HARRIS,<br>LARRY STANDLEY,<br>PAM DERBYSHIRE,<br>JAY KARAHAN,<br>ANALIA WILKERSON,<br>DAN SPJUT,<br>DIANE BULL,<br>ROBIN BROWN,<br>DON SMYTH,<br>MIKE FIELDS,<br>JEAN HUGHES,<br>LINDA GARCIA<br><br>　　　　　　Defendants. | Case No. 16-cv-01414<br>(Consolidated Class Action)<br>The Honorable Lee H. Rosenthal<br>U.S. District Judge |

## FIRST AMENDED CLASS ACTION COMPLAINT

### Introduction

This case is about Harris County jailing some of its poorest people because they cannot afford to make a monetary payment.  Named Plaintiff Maranda Lynn ODonnell is currently being held in the Harris County jail because she cannot pay a $2,500 money bail after being arrested for Driving While License Invalid.  The Named Plaintiff's money bail was imposed pursuant to Harris County's predetermined money bail schedule and without any inquiry into or findings concerning her ability to pay.  Because she is impoverished and cannot afford the payment required by the County for her release, she will be kept in a Harris County jail cell.[1]

In Harris County, wealthier arrestees are released from custody almost immediately upon payment of money to the County.  Arrestees who are too poor to purchase their release remain in jail because of their poverty.  On any given night, over 500 people arrested for misdemeanors languish in the Harris County Jail because of a money bail that they cannot afford.  Between 2009 and 2015, 55 human beings died in the Harris County Jail awaiting trial after being unable to pay the amount of money demanded by the County for their release.

On behalf of the many other arrestees subjected to Harris County's unlawful and ongoing post-arrest wealth-based detention scheme, Plaintiffs challenge in this action the use of secured money bail to detain only the most impoverished of misdemeanor arrestees.  Harris County's wealth-based pretrial detention system violates the Equal Protection and Due Process Clauses of the United States Constitution.  It has no place in modern American law.

---

[1] At the time of filing related case 16-cv-01436 (now administratively closed and consolidated with 16-cv-01414), Named Plaintiffs Loetha Shanta McGruder, a 22-year-old pregnant mother of two, and Robert Ryan Ford, 26 years old, were in jail because they could not pay a $5,000 money bail after each was arrested for a misdemeanor offense. Like Ms. ODonnell, their money bail amounts were imposed pursuant to Harris County's predetermined money bail schedule and without any inquiry into or findings concerning their ability to pay.  Because they are impoverished and cannot afford the payment required by the County for their release, they were kept in a Harris County jail cell and were in jail when their case, 16-cv-01436, was filed.

By and through their attorneys and on behalf of themselves and all others similarly situated, Plaintiffs seek injunctive relief to enjoin the County's wealth-based post-arrest detention procedures and a declaration that Defendants cannot employ a system of wealth-based detention by imposing and enforcing secured financial conditions of pre-trial release without an inquiry into and findings concerning the arrestee's present ability to pay.

### Nature of the Action[2]

1.      It is the policy and practice of Defendants to refuse to release misdemeanor arrestees from custody unless they pay a monetary sum.  The amount of money required is determined by a generic offense-based bail schedule, and it is the policy and practice of Harris County officials to impose the scheduled amount without considering the person's ability to pay, a practice that results in the systemic wealth-based detention of those arrestees who are too poor to pay their money bail.  Plaintiffs seek declaratory and injunctive relief prohibiting Defendants' wealth-based post-arrest detention scheme.

### Jurisdiction and Venue

2.       This is a civil rights action arising under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, *et seq*., and the Fourteenth Amendment to the United States Constitution.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

### Parties

4.      Maranda Lynn ODonnell is a 22-year-old mother of a 4-year-old daughter.  She represents herself as an individual and a Class of similarly situated people subjected to Defendants' wealth-based post-arrest detention scheme.

---

[2] Plaintiffs make the allegations in this Complaint based on personal knowledge as to matters in which they have had personal involvement and on information and belief as to all other matters.

5.      Loetha Shanta McGruder is a 22-year-old woman who is the mother of a 4-year-old son and a 9-month-old son.  She is seven weeks pregnant.  She represents herself as an individual and a Class of similarly situated people subjected to Defendants' wealth-based post-arrest detention scheme.

6.      Robert Ryan Ford is a 26-year-old man.  He represents himself as an individual and a Class of similarly situated people subjected to Defendants' wealth-based post-arrest detention scheme.

7.      Defendant Harris County is a municipal corporation organized under the laws of the State of Texas.  The Harris County Sheriff's Department is a division of Harris County and operates the Harris County Jail and several other detention facilities.

8.      The Sheriff's Office is itself responsible for 27 percent of arrests within Harris County.  The Sheriff's Department also transports arrestees from field stations run by various other authorities with arresting power to the Harris County Jail, which houses all inmates to be held pending prosecution within the Harris County courts.  The Sheriff's Department detains arrestees at the Harris County Jail and several other facilities.  The officers and employees of the Sheriff's Department are authorized by County policy to accept money bail as determined by the schedule, release an arrestee, and set a time for an arrestee's appearance in court.

9.      After arrest, Sheriff's Department employees and agents bring arrestees held on money bail to a room inside the jail for probable cause hearings and bail setting.  Sheriff's Department employees and agents supervise, monitor, and give instructions to the arrestees during the hearing.  The Sheriff therefore has knowledge that secured financial conditions of release are imposed without any inquiry into or findings concerning a person's ability to pay the amount set.

10.     The Sheriff is aware of who is in the jail that the Sheriff runs and the basis for each inmate's detention, including whether any inmate is subject to any detainers or otherwise ineligible for pretrial release, and the amount of money bail any inmate is required to pay for immediate release.  The Sheriff therefore has knowledge that the imposition of secured money bail results in systemic, wealth-based detention, and that there are hundreds of people in his jail every night, charged only with misdemeanors, who would be released but for their inability to pay a money bail amount imposed pursuant to the bail schedule used by Harris County.

11.     The Sheriff's Department, by policy and practice, detains arrestees too poor to afford the money bail amount imposed without inquiry into and findings concerning ability to pay and releases arrestees who pay their money bail.

12.     The Sheriff's Department is run by the Harris County Sheriff, Defendant Ron Hickman.  The Sheriff is the final policymaker for all law enforcement decisions in Harris County.  He is sued in his individual and official capacities.

13.     Eric Stewart Hagstette, Joseph Licata III, Ronald Nicholas, Blanca Estela Villagomez, and Jill Wallace are all Harris County Criminal Law Hearing Officers.  They are County employees, who are appointed and can be terminated by a two-thirds vote of a Harris County board composed of three judges of the District Courts of Harris County, three judges of the County Criminal Courts at Law, and three justices of the peace.[3]  They make probable cause determinations and set bail for arrestees pursuant to the County's money bail schedule.  The Hearing Officers do not conduct any inquiry into or make any findings concerning a person's ability to pay money bail before imposing secured financial conditions of release, which results

---

[3] Tex. Code Ann. § 54.852.

in the detention of only those individuals who are too poor to pay the money bail amount set. They are sued in their individual and official capacities for declaratory relief only.[4]

14.     Paula Goodhart, Bill Harmon, Natalie C. Fleming, John Clinton, Margaret Harris, Larry Standley, Pam Derbyshire, Jay Karahan, Analia Wilkerson, Dan Spjut, Diane Bull, Robin Brown, Don Smyth, Mike Fields, Jean Hughes, and Linda Garcia are the 16 Harris County Criminal Courts at Law Judges.

15.     Sitting *en banc*, they promulgate Harris County's post-arrest procedures, including the generally applicable Harris County Bail Schedule applied systemically to all misdemeanor arrestees.

16.     Each judge knows that, pursuant to the bail schedule, the Sheriff's Department imposes and enforces secured financial conditions of release on every individual the Sheriff's Department arrests or accepts into custody, without an inquiry into or findings concerning an arrestee's present ability to pay the predetermined amount set.

17.     Each judge is aware of the Hearing Officers' systemic custom of setting secured financial conditions of release based on the bail schedule without any inquiry into or findings concerning an arrestee's present ability to pay the amount set.

18.     Each judge has knowledge that hundreds of individuals charged with misdemeanors are detained in Harris County every day solely because they are too poor to pay the money bail amounts imposed pursuant to the predetermined bail schedule that they promulgated.  Each judge is further aware that Hearing Officers refuse to consider ability to pay

---

[4] Because declaratory relief is unavailable on an emergency, preliminary basis, and because Plaintiffs are suffering ongoing irreparable harm, Plaintiffs are simultaneously seeking a preliminary injunction against the Hearing Officers, even though the final judgment Plaintiffs seek is a declaration that the Hearing Officers' conduct is unconstitutional.

during the initial magistration hearings, which are recorded on video and audio and kept by the County and the clerk's office.

19.     Each judge provides blanket generic instructions to the Hearing Officers about how to set bail and when to approve release on personal bonds for individuals assigned to that judge's court.  Hearing Officers are required to follow each judge's instructions about whether and when to release arrestees without secured financial conditions.  Each judge has acquiesced in the Hearing Officers' open and notorious custom of failing and refusing to consider ability to pay.

20.     The County Courts at Law Judges are sued in their individual and official capacities for injunctive and declaratory relief.

### Factual Background

**A.     The Named Plaintiffs Will Be Held in Jail Because They Are Unable To Pay the Money Bail Demanded for Their Release**

21.     Maranda Lynn ODonnell is a 22-year-old woman.

22.     Ms. ODonnell was arrested on May 18, 2016 and taken into the custody of Harris County for allegedly driving while her license was invalid.  She was informed that, because of the Harris County bail schedule, she would be released immediately, but only if she paid a money bail of $2,500.  She was told that she will be detained by Harris County if she does not pay.  *See* Exhibit 1, Declaration of Maranda Lynn ODonnell.

23.     Ms. ODonnell appeared by video from the jail at a probable cause hearing, and a Hearing Officer found probable cause for her arrest. She was told by Harris County Sheriff's Deputies not to speak at the hearing.  The hearing lasted less than 60 seconds and, pursuant to the policies and practices described in this Complaint, no inquiry was made into her present ability

to pay.  The predetermined money bail amount required by the Harris County bail schedule was confirmed to be $2,500.

24.     Ms. ODonnell is the mother of a 4-year-old child.  She and her child struggle to meet the basic necessities of life.  She receives benefits from the federal government's Women, Infants, and Children (WIC) program to help meet the nutritional needs of her daughter. Because she cannot afford shelter, she stays with a friend.  She recently obtained a job at a restaurant within the past few weeks, but she is worried that her current jailing will cause her to lose her job.

25.     Loetha Shanta McGruder is a 22-year-old woman.

26.     Ms. McGruder was arrested on May 19, 2016, for a misdemeanor offense and taken into the custody of Harris County.  She was informed that she would be released immediately, but only if she paid a money bail of $5,000.  She was told that she will be detained by Harris County if she does not pay.  *See* Exhibit 2, Declaration of Loetha Shanta McGruder.

27.     Ms. McGruder appeared by video from the jail at a probable cause hearing, and a Hearing Officer found probable cause for her arrest.  The hearing last one minute and 20 seconds, and pursuant to the policies and practices described in this Complaint, no inquiry was made into her ability to pay.  The predetermined money bail amount required by the Harris County bail schedule was confirmed to be $5,000.

28.     Ms. McGruder is the mother of two young children.  She and her children struggle to meet the basic necessities of life.  She receives benefits from the federal government's social security program to help meet the needs of her older son, who has Downs Syndrome and other medical needs.  She also supports her children using child support payments.  She is not

currently working, and lives with her boyfriend.  She helps with household expenses when she has a job and is able.

29.     Robert Ryan Ford is a 26-year-old man.

30.     He was arrested on May 18, 2016, for a misdemeanor offense and taken into the custody of Harris County. *See* Exhibit 3, Declaration of Robert Ryan Ford.

31.     Mr. Ford appeared by video from the jail at a probable cause hearing, and a Hearing Officer found probable cause for his arrest.  The hearing lasted 60 seconds, and pursuant to the policies and practices described in this Complaint, no inquiry was made into his ability to pay.  The predetermined money bail amount required by the Harris County bail schedule was confirmed to be $5,000.

32.     Mr. Ford struggles to meet the basic necessities of life.  He is not working and lives with his girlfriend's parents.  He helps with household responsibilities to compensate her family for giving him a place to live.

**B.      Defendants' Wealth-Based Detention System Detains Arrestees Who Cannot Pay Their Money Bail Amount While Releasing Those Who Can Pay**

**i.   Arrest and the Initial Money Bail-Setting Process**

33.     Harris County uses a predetermined money bail schedule, promulgated through administrative order by the Harris County Criminal Courts at Law Judges, to determine money bail for everyone who is arrested for a Class A or B misdemeanor in Harris County.  *See* Exhibit 4, Harris County Bail Schedule.  The bail schedule is the exclusive means of setting bail "unless otherwise directed by the Judges of the Harris County Criminal Courts at Law."  *Id.* ("The initial bail amount shall be determined by application of the bail schedule.").[5]

---

[5] Texas law gives Harris County the authority to cite and release a person being charged with certain misdemeanor offenses.  Tex. C.C.P. Art. 14.06(b)–(d).  However, County officials have decided instead as a matter of policy to

34.     Harris County itself made 27.9 percent of misdemeanor arrests within the County in 2015.  There are roughly 100 additional agencies within Harris County that have the authority to make arrests.  For example, the City of Houston Police Department made 45.9 percent of arrests in 2015.[6]

35.     When a person is arrested within Harris County, she will be taken to a "field station" run by the arresting authority.  If she is arrested by Harris County, she will be taken either to a field station or directly to the jail.  These field stations vary in size and their capacity to hold and process arrestees.  Some include holding cells.  In others, arrestees are made to sit shackled to a bench while initial post-arrest procedures are conducted.

36.     Once at a field station, if the person was arrested without a warrant, the arresting officer will determine whether the Harris County District Attorney's Office wishes to pursue the charge by calling a hotline that is staffed 24 hours a day, 7 days a week by Harris County's assistant district attorneys.  The arresting officer describes the allegations to the assistant district attorney on duty, who makes a charging decision over the phone.

37.     If the assistant district attorney on hotline duty does not wish to pursue charges, she tells the officer to release the individual.

38.     If the district attorney decides to pursue the charges, she instructs the arresting officer to impose money bail pursuant to the bail schedule.  *See* Ex. 4 ("The district attorney shall affix an initial bail amount at the time a complaint is filed in a county criminal court at law.").  At no point does any person perform any inquiry into the arrestee's ability to pay the money bail amount written on the schedule.

---

rely on the Harris County bail schedule for all individuals charged with any misdemeanor.  As a matter of policy, Harris County has rejected the cite-and-release option.

[6]     Harris   County   Pretrial   Services,   2015   Annual   Report   (2015)   at   8,   available   at https://pretrial.harriscountytx.gov/Pages/Annual-Reports.aspx.

39.     From the moment a secured bail amount is imposed, all misdemeanor arrestees are eligible for release if they can pay the money bail amount listed in the predetermined schedule, unless they are subject to certain holds (e.g., immigration or probation).

40.     The ADA setting bail, the agencies processing individuals for release from field stations, and the Harris County Sheriff's Department all have access to information about whether any given arrestee is subject to any of a variety of non-monetary holds.  These entities therefore know whether a financial condition of release is the only reason a person is being detained.

41.     Arrestees free from other non-monetary holds can post bail themselves, make a phone call to ask a friend or family member to post bail on their behalf, or contact a bonding agent to assist in posting bail.  A person who can afford to pay will be released from the field station, and will never be transported to the Harris County Jail.

42.     The imposition of money bail is the moment of differential treatment: a person with financial resources will be released almost immediately after bail is imposed, but Defendants will continue to require the detention of a person who cannot afford to pay her bail. This policy and practice results in systemic and automatic wealth-based detention in Harris County.

43.     Individuals who are arrested pursuant to warrants are also subjected to the money bail schedule.  In these cases, the district attorney again makes a charging decision on the basis of allegations by a police officer or another complainant and imposes a money bail amount according to the bail schedule.  The money bail amount is written on the warrant.  A Hearing Officer or County Court at Law Judge makes a finding of probable cause based on the

allegations in the warrant and then signs the warrant.  As a matter of policy, the Hearing Officer or Judge imposes the monetary bail required by the schedule.

44.     Whether a person is arrested pursuant to a warrant or pursuant to a warrantless arrest, that person can pay the secured money bail amount predetermined by the schedule and be released immediately from the field station,[7] prior to formal booking.  Those who know about active warrants for their arrest can avoid even being arrested if they pay a "non-arrest" bond, *see infra* ¶ 123 & n.45.[8]  If the individual is unable to pay, she will be transported to and booked into the jail.[9]

45.     The time it takes for an arrestee to be transported to the Harris County Jail varies depending on a variety of factors, including where the person was arrested.

46.     Harris County is a large county, and individuals arrested within its borders can be taken initially to field stations as geographically close to the Harris County Jail as the Houston Police Stations located a little over a mile from the jail, or as far away as, for example, the City of Lakeview, which is more than 30 miles away.

---

[7] Individuals arrested by Harris County officers are generally taken directly to the Harris County Jail.  However, as noted, Harris County itself is only one of roughly 100 agencies with arresting authority in the County.

[8] The vast majority of arrestees use a bail bond agent to secure their release from jail.  Typically, if accepted by a for-profit bail agent, an arrestee will have to pay the for-profit agent a non-refundable fee of 10 percent of the value of the bond to be released, though the industry standard for low money bail amounts in Harris County exceeds 10 percent.  In 2012, the for-profit bail bond industry in Harris County collected at least $34.4 million dollars in fees.  *See* Gerald R. Wheeler & Gerald Fry, Project Orange Jumpsuit Report #2, *Harris County's Two-Tier Justice System: Longitudinal Study of Effects of Harris County Felony and Misdemeanor Defendants' Legal & Extralegal Attributes on Pretrial Status and Case Outcome* (Apr. 23, 2014) at 4, available at http://www.pretrial.org/download/research/Harris%20County's%20Two-tier%20Justice%20System%20(Project%20Orange%20Jumpsuit)%20-%20Wheeler%20and%20Fry%202014.pdf [Wheeler & Fry, Report #2]; Michael Barajas, *Will Lawmakers Reform the System That Keeps Poor, Legally Innocent People in Lockup?* (Sept. 25, 2015), available at http://www.houstonpress.com/news/will-lawmakers-reform-the-system-that-keeps-poor-legally-innocent-people-in-lockup-7788583 (quoting a bondsman saying that "being poor raises a red flag").

[9]  Wheeler & Fry, Report #2, *supra* note 8, at 1.

47.     Recently, many people arrested for misdemeanors have been held on money bail imposed pursuant to the predetermined bail schedule for as long as two or three days or more before being transferred to the Harris County Jail for a videolink probable cause hearing.[10]

48.     Sometime after arrest, an arrestee's case documents become publicly available on the District Court Clerk's website.  Once the arrestee is in Harris County custody, the arrestee's online case records will indicate that fact.  The arrestee's specific location will be listed as "in processing" at 1201 Commerce Street.

49.     While the individual is in processing, she is completely unavailable for an attorney (or other) visit and cannot be contacted.  Jail officials state that individuals who are in processing are actually located in the basement of one of four jail buildings, and the only way to find a specific person is for a guard to walk through the cell blocks and call the person's name.

50.     However, jail officials also state that if a person who is in processing is able to pay the scheduled money bail, she will be found and released.  Thus, during this period of time, poor arrestees are held incommunicado, but an individual who has money can purchase her release from jail.

51.     Sometime after a person arrives at the Jail — and usually before she is assigned to a housing unit — she will be taken by Sheriff's Department employees to a room in the jail with several dozen other new arrestees to appear before a Hearing Officer, who will determine probable cause.  This appearance takes place by videolink. It usually takes between 8 and 24

---

[10] For example, according to the case records on the Harris County District Clerk's website and the Houston Police Department's website, as of about 7:30 a.m. EST on August 30, 2016, the following individuals were among those individuals being detained on money bail and awaiting transfer to the jail for a probable cause hearing for at least two or three days after arrest: Julio Ruiz, arrested on August 28 for possession of marijuana under two ounces and held on a $500 bail; Blanchard B. Stewart, arrested on August 25 for possession of marijuana under two ounces and held on a $5,000 bail; Michael Ray Mata, arrested on August 28 for interfering with the duties of a public servant and held on a $4,500 bail; and Oscar Balarbo, arrested on August 28 for trespass and held on a $5,000 bail. According to Harris County's website, these individuals had no non-monetary holds and were in custody solely because they had not paid their money bail.  None had seen a Hearing Officer.

hours for a person arrested in Harris County to be given a probable cause hearing, but hundreds of people every month must wait several days as a matter of practice.

52.     These policies have consistently, for years, resulted in the needless and devastating jailing of impoverished people accused of misdemeanor offenses.   In 2012, 81 percent of misdemeanor arrestees were booked into the jail because they were unable to immediately pay for their release.[11]   Other arrestees with financial means were able to pay their predetermined money bail and avoid the booking process altogether.

53.     In 2014 and 2015, about 40 percent of misdemeanor arrestees were still sitting in jail cells at the time their misdemeanor case concluded because of their inability to afford the secured financial condition set for their release.[12]

### ii.  Probable Cause Hearings and Approval of Bail According to the Bail Schedule

54.     The Harris County Sheriff's Department, through its jail personnel, assembles groups of roughly 20 to 45 people, many of them charged with minor misdemeanors, throughout the day, every day.[13]

55.     Sheriff's Department employees and agents routinely tell arrestees not to say anything during these hearings.

56.     Generally within 24 hours of arrest, these groups of recent arrestees, dressed in orange jumpsuits or street clothes and located inside the Harris County Jail, appear via videolink

---

[11] Gerald R. Wheeler & Gerald Fry, *Project Orange Jumpsuit: The Misdemeanor Report #1* (Jan. 22, 2016), available at http://themisresearch.org/files/MISD_2016_REPORT.pdf [Wheeler & Fry, Report #1].

[12] Harris County Pretrial Services, 2014 Annual Report (2014) at 8, available at http://www.harriscountytx.gov/CmpDocuments/59/Annual%20Reports/2014%20Annual%20Report.pdf, (showing in Table B.1 that roughly 60 percent of misdemeanor arrestees post money bail); Pretrial Services 2015 Annual Report, *supra* note 6 at 8.

[13] In 2014, an average of 144 people were admitted to the jail every day on misdemeanor charges.  *See* Pretrial Services 2014 Annual Report, *supra* note 12 at 3 (stating that 52,506 people whose most serious charge was a misdemeanor were admitted to the jail in 2013).

before one of the five Defendant Harris County Hearing Officers.  The Hearing Officer determines probable cause for the arrest and reviews the bail amount previously imposed to ensure that it conforms to the bail schedule and the systemic general policy instructions from Harris County Criminal Courts at Law Judges about how to administer the predetermined schedule.  Throughout the hearing, the arrestees remain in the Harris County jail, supervised by Sheriff's Department employees, while the Hearing Officer and a prosecutor are in a courtroom in the Harris County Courthouse.

57.     These hearings are referred to locally as "magistrations," "Article 15.17 hearings," or "probable cause hearings."

58.     The County strives to hold these hearings within 24 hours of arrest for people charged with misdemeanors.  However, arrestees often are not transported to the Jail in time to meet that deadline, and, even when they are, the Sheriff sometimes fails to ensure that all inmates in his custody receive a hearing within 24 hours.  Hearing Officers represent, and the County's online case records show, that the hearings do not always take place within 24 hours of arrest.[14]  At any point in the booking process, an arrestee can pay his or her predetermined money bail and be released.

59.     If a person pays, a probable cause determination in her case will be made at a subsequent court appearance.

60.     An assistant district attorney participates in the probable cause hearings by arguing for the Hearing Officer to make a finding of probable cause and sometimes asking the Hearing Officer to impose bail in an amount higher than the amount on the schedule or on the

---

[14] For example, Named Plaintiff Robert Ryan Ford was arrested at 8:17 p.m. on May 18, 2016, but did not have a probable cause hearing until May 20 at 4:17 a.m.  *See* Harris County Criminal Courts at Law Case Records Online, available at http://www.hcdistrictclerk.com/eDocs/Public/Search.aspx.

warrant.   One prosecutor stated the policy recently at a probable cause hearing: pursuant to Harris County's bail schedule procedure, if an arrestee "can't pay, they sit in jail."

61.    Harris County does not provide defense attorneys at this hearing for those who are unable to afford to hire an attorney.

62.    Almost one-third of Harris County arrestees lack a high school education and one in five have serious mental health problems.[15]

63.    The prosecutor and Hearing Officers sometimes engage in ex parte conversations before the videolink is turned on.   To take one representative example: during one docket in March, outside the arrestees' hearing, the prosecutor and the Hearing Officer commented on the fact that one of the arrestees on the docket had been arrested multiple times in a two-week period for trespassing at the same place.   The Hearing Officer and the prosecutor agreed privately that the individual, who was homeless, would not be released without a money bail.   The Hearing Officer imposed a $5,000 money bail.   After the hearing, the Hearing Officer said, "He's a pest to society."   Unable to pay the money bail, the man appeared several days later at his first court date and pled guilty.

---

[15] Pretrial Services 2014 Annual Report, *supra* note 12 at 2. Harris County received $150,000 in May 2015 from the MacArthur Foundation to create a proposal that would lead to a more just and effective legal system.   *See* Press Release, *MacArthur Announces 20 Jurisdictions to Receive Funding to Reduce Jail Use* (May 26, 2015), available at https://www.macfound.org/press/press-releases/macarthur-announces-20-jurisdictions-receive-funding-reduce-jail-use/.   Harris County subsequently convened a Criminal Justice Coordinating Council, which investigated ways to reduce incarceration.   Among the most important reforms that participants discussed was to provide defense attorneys at the probable cause hearings. Early in January 2016, the Coordinating Counsel submitted its grant proposal to the MacArthur Foundation, seeking $4 million over two years to put its plans into effect.   The final document included a proposal for counsel only for individuals who are mentally ill.   Meagan Flynn, *Bail Hearings: Where Prosecutors and Magistrates Ensure Defenseless People Stay In Jail* (Jan. 11, 2016), available at http://www.houstonpress.com/news/bail-hearings-where-prosecutors-and-magistrates-ensure-defenseless-people-stay-in-jail-8058308.   On April 13, 2016, Harris County was awarded a $2 million MacArthur grant to reform its criminal justice system.   *See Harris County receives $2 million grant to reform criminal justice system* (Apr. 13, 2106), available at http://www.click2houston.com/news/watch-live-harris-county-receives-2-million-grant-to-reform-criminal-justice-system.

64.    In no case is a money bail determined with consideration for an arrestee's ability to pay, and in no case does a Hearing Officer make an inquiry into or findings concerning a person's present ability to pay.

65.    When the videolink is turned on, arrestees appear on a television screen, sitting on benches in a room at the jail.

66.    The Hearing Officer calls an individual's name and reads the charge.   That individual gets up and stands in the middle of a red square on the floor of the room in the jail. An assistant district attorney then reads from the complaint.   The Hearing Officer decides whether there is probable cause, finding probable cause in almost every case, and, almost always, sets secured money bail according to the predetermined schedule.   Sometimes the Hearing Officer increases the money bail from the amount required by the bail schedule.

67.    The process of setting bail and finding probable cause is a rote exercise, and the hearings last approximately one minute as a matter of routine.

68.    As a matter of policy and practice, Hearing Officers make no attempt to determine an arrestee's financial situation, and they make no inquiry into or findings concerning an arrestee's ability to pay the money bail amount that they impose.

69.    In addition to making no affirmative inquiry into or findings concerning ability to pay, Hearing Officers affirmatively refuse to hear any argument that an arrestee raises about her ability to pay.  If an arrestee tells the Hearing Officer that she cannot pay the money bail, the Hearing Officer, as a matter of policy and practice, tells the arrestee that considering a reduction of money bail from the schedule is not the purpose of that hearing and that the arrestee should have her attorney raise the issue with the County Court at Law Judge handling her case at her first court date after an attorney is assigned.  As one Hearing Officer stated recently, probable

cause hearings are "not the forum" for discussing a person's ability to pay money bail or raising any related issues, and Hearing Officers state that such questions must be addressed in an adversarial setting after appointment of counsel.

70.    On one recent occasion that is typical of standard policy, after a Hearing Officer made a bail decision according to the money bail schedule, the arrestee asked the Hearing Officer, "Can I say something?"  The Hearing Officer responded, "You can talk to me all you want, but it's not going to change the outcome.  I'm setting it according to the schedule.  Talk to your lawyer about it in the morning."

71.    After completing a docket of probable cause hearings in March, another Hearing Officer was asked by an observer whether the officer is allowed to consider an arrestee's ability to pay when setting the money bail.  The Hearing Officer responded, "What can I do about that? They have a bail schedule.  I can't do anything about that."

72.    Pursuant to policy and practice, it is not possible for arrestees to challenge the constitutionality of their money bail before the Hearing Officer.  Hearing Officers refuse to consider deviation from the bail schedule based on ability to pay and refuse to hear evidence or argument concerning ability to pay.

73.    In almost all cases, the Hearing Officer affirms the money bail previously set pursuant to the bail schedule.[16]  If, however, the district attorney or arresting officer erred in setting the money bail (i.e., the monetary amount did not conform to the bail schedule), the Hearing Officer will alter the money bail — by raising or lowering the monetary amount — so that it meets the schedule.

---

[16] Flynn, *supra* note. 15.

74.     Sometimes district attorneys will argue for a money bail that exceeds what the schedule requires.  One district attorney recently gave the following example: If someone is charged with unauthorized use of a vehicle, but is also being investigated for armed robbery of the same vehicle, the district attorney will ask the judge to impose a money bail commensurate with the more severe charge.  The district attorney stated that she would ask for the higher bail *to ensure that the person will be detained* because a person suspected of "something like armed robbery" should not be released on a low money bail like $2,000.

75.     Hearing Officers sometimes raise bail punitively and arbitrarily, doubling it if, for example, as happened recently, an arrestee responds to a question by stating, "Yeah," instead of "Yes."

76.     If an individual is not brought to the probable cause hearing due to medical reasons, the Hearing Officer will make a finding of probable cause and set money bail in that person's absence according to the predetermined schedule.

77.     In Harris County, money bail is imposed based solely on the alleged offense and the person's criminal history and without reference to a person's ability to pay, resulting in the detention of arrestees based on their poverty.

### iii. The Use of Personal Bonds

78.     Hearing Officers sometimes recommend arrestees for release on "personal bonds," which Defendants use to mean release without any secured financial conditions.

79.     Recommendations for release on personal bonds are based solely on the person's criminal charge and criminal history — they have nothing to do as a matter of policy and practice with indigence or a person's ability to pay a money bail.  The vast majority of arrestees,

due to the charge against them or their criminal history, are deemed "ineligible" for personal bonds as a matter of policy.

80.     Only about 8 percent of misdemeanor arrestees were actually released on personal bonds in 2014 and 2015.[17]

81.     Personal bonds are not based on any inquiry into ability to pay, and Hearing Officers refuse to conduct such inquiries.

82.     Even when individuals are recommended for personal bonds, they are not released immediately, and they may not be released at all.  Pretrial Services must first "verify" the person's references — for example, because Defendants' policy is to require references to confirm an address, a person who is homeless cannot even "qualify" for release without payment of the scheduled amount of bail, *see infra*.  Sometimes, references cannot be verified for days or a week.  Sometimes they cannot be verified at all.  In those cases, the person will not be released on a personal bond and will be detained unless she can pay the money bail.

83.     At any point in the verification process, the arrestee can pay the money set pursuant to the schedule and be released immediately.

84.     Recommendations for personal bonds in misdemeanor cases are further constrained by the instructions of the County Courts at Law Judges, who provide strict directives to the Hearing Officers about the money bail-setting process.

85.     For example, Hearing Officers are instructed that they may never recommend homeless individuals for release without secured financial conditions.  Some judges have told Hearing Officers never to issue non-financial conditions for any defendant who is assigned to

---

[17] Pretrial Services 2014 Annual Report, *supra* note 12 at 9; Pretrial Services 2015 Annual Report, *supra* note 6 at 9, available at https://pretrial.harriscountytx.gov/Library/2015%20Annual%20Report.pdf.

their courtroom at all,[18] or for individuals who have previously been given personal bonds in other cases.   Other judges have told Hearing Officers to consider non-secured financial conditions only for "students."[19]   Hearing Officers often deem an arrestee "not qualified" for a personal bond if she just moved to the Houston area.

86.     In all cases, personal bonds are not granted on the basis of an inquiry into ability to pay.

87.     One Hearing Officer, pursuant to policy, recently told a group of arrestees: "Don't ask me for a personal bond."   He informed them that he would consider release on a personal bond if he was authorized to consider it, and "if I'm going to give you one, I will," warning them again, "Don't ask."

88.     At another hearing during which a Hearing Officer set an arrestee's bond at $1,000 for driving on a suspended license, the arrestee pleaded with the officer for release without requiring secured bail, stating that he had "no money in the world" and needed to attend a custody hearing so he could keep his family together.   The Hearing Officer refused to consider the person's ability to pay or permit him to be released with non-financial conditions of release.

89.     An arrestee's indigence or ability to pay is never a factor in determining whether to recommend or approve non-financial conditions of release.   Hearing Officers routinely prohibit arrestees from sharing that information, and always refuse to consider it when setting money bail or granting a personal bond, even when it is brought to their attention.

### iv.  Assignment to a Housing Unit

---

[18] James Pinkerton and Laura Caruba, *Tough bail policies punish the poor and the sick, critics say* (Dec. 26, 2015), available at http://www.houstonchronicle.com/news/houston-texas/houston/article/Tough-bail-policies-punish-the-poor-and-the-sick-6721984.php?t=373b57d418&cmpid=email-premium.

[19] *Id.*

90. Any arrestee who was not assigned to a housing unit before her probable cause hearing will remain inaccessible to attorneys and everyone else outside the jail after the hearing until the jail assigns the individual to a housing unit.

91. It is only after being assigned to a housing unit that an arrestee can be contacted by anyone outside the jail and will be scheduled for a hearing in a County Court at Law.

92. A sheriff's deputy at 1201 Commerce Street was recently asked to produce for attorney visits several individuals who had attended their probable cause hearings within the previous 24 hours. After looking for the men for an hour, the deputy stated that the men could not be seen, even by an attorney, until after they had been assigned to a housing unit in the jail, which had not yet happened. He said that the individuals were all in the basements of one of four buildings, but he did not know which one. The deputy provided a list of the four facilities in which the arrestees might be located (1200 Baker Street Jail; 701 North San Jacinto; 711 North San Jacinto Street; 1307 Baker Street).

93. Shortly after that conversation, a sheriff's deputy at the jail building at 1200 Baker Street confirmed that the same men could not be contacted until after they had been assigned to a housing unit.

94. The deputies stated that it would take 24 to 36 hours for that to happen, during which time no one would be able to reach these men, including any attorney. The sheriff's deputy said that they could not be found for the purpose of an attorney visit, but *they would be found and released if money bond was posted*.

95. In total, it takes a minimum of 24 hours, and frequently 3 or 4 days, for an arrested person to be fully booked into the jail, assigned to a housing unit, and made available for an attorney or family visit. It can be another several days before a person appears in a County

Court at Law and is assigned an attorney.  At any point during this period of time, a person can pay her money bail and be released.

### v.  First Appearances

96.     If, after the probable cause hearing, an arrestee is still unable to purchase her release from jail, she will be taken to a County Court at Law, usually within 24 to 48 hours of the probable cause hearing.  However, arrestees who have their probable cause hearings on Friday morning will not see a County Court at Law Judge until the following Monday at the earliest. Individuals who attend probable cause hearings on Friday afternoon or evening or over the weekend are unlikely to see a Judge until the following Tuesday at the earliest.

97.     Detained individuals are assigned court-appointed attorneys at the first appearance hearing, but there is, as a matter of practice, no review of the money bail amount previously imposed.  The County Courts at Law Judges reduce money bail amounts previously imposed in less than 1 percent of cases.[20]

98.     Detained individuals remain in lock-up outside of the courtroom and are usually not even brought into the courtroom on this court date unless they are pleading guilty, which many who are detained because they are too poor to pay their money bail do because they are told that they can get out of custody more quickly by pleading guilty.

99.     One of the purposes and effects of Harris County's post-arrest detention is to coerce and process large numbers of guilty pleas prior to any person conducting any legal or factual investigation into the charges, let alone the complete and zealous investigation and defense required by professional standards and the Sixth Amendment to the United States Constitution.

---

[20] Pinkerton & Caruba, *supra* note 18.

100.    On one typical morning in March 2016, County Court at Law Judge Pam Derbyshire accepted four guilty pleas from detained individuals in six minutes.  These individuals had just met their attorneys, and their attorneys had conducted no meaningful investigation into the facts or circumstances of the cases.  None of the defendants had been able to pay the scheduled money bail since their arrest several days prior.  They appeared before the judge in orange jumpsuits, handcuffed together.  Several of them were sentenced to three days in jail with credit for the three days they served between their arrest and guilty plea.  This is a routine, everyday occurrence in Harris County's misdemeanor criminal legal system: every one of the 16 County Courts at Law judges routinely accepts guilty pleas from individuals who are in jail solely because they are too poor to pay money bail.  76.8 percent of detained defendants plead guilty, while only 52.8 percent of released defendants plead guilty.[21]

101.    The County Courts at Law Judges — and every other actor in the County's post-arrest system (as well as anyone who has observed probable cause hearings or first appearances) — know that many of the detained individuals who appear in front of them charged with misdemeanors are being held in jail solely because they are too poor to pay the money bail amount set by the predetermined schedule.  They all have access to information about other holds that might be keeping the person in jail.  The judges and Sheriff's Department employees and agents have knowledge that, in hundreds of people's cases every day, there is no reason for a person's detention other than the person's inability to make the monetary payment set.  The Hearing Officers and County Courts at Law Judges have access to basic financial information if an arrestee has been interviewed by Pretrial Services, and they therefore know that a large majority of those appearing before them (who have not been able to pay money bail prior to the

---

[21] Heaton, et al., *The Downstream Consequences of Misdemeanor Pretrial Detention* at 13 (forthcoming Stanford Law Review) (July 14, 2016), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2809840.

appearance) are entirely destitute, severely impoverished, or otherwise qualify for court-appointed counsel and do not have the assets to afford the secured financial condition of release prescribed by the predetermined schedule.

102.    Sheriff's Department employees and agents also observe the probable cause hearings, which occur several times per day, and witness the Defendant Hearing Officers routinely failing and refusing as a matter of policy and practice to consider ability to pay or alternatives to secured financial conditions when imposing secured financial conditions of release.

103.    The County Courts at Law Judges are aware of the Hearing Officers' open, notorious, and systemic failure to account for ability to pay. Hearing Officers frequently state that they are refusing to consider ability to pay because of blanket instructions from the Defendant County Courts at Law Judges.  Those instructions include that recognizance release may not be given to individuals who are homeless or to people who have previously been given personal bonds.  Additionally, arrestees who are too poor to pay money bail appear directly in front of the Defendant County Courts at Law Judges.  Those same judges routinely find those arrestees to be indigent for purposes of appointing counsel.  Further, audio-visual recordings of all of the probable cause hearings are maintained by the County and the County Clerk.

104.    If a defendant does not plead guilty at her first appearance, a defense attorney can file a motion for a reduction of the money bail amount.  It typically takes at least one week for that motion to be heard.  Thus, in a typical case, it can take well over a week after arrest for a person who cannot afford the predetermined money bail amount set by the schedule to obtain any meaningful review of that amount.

105.    This pretrial detention scheme means that a typical individual without financial means will be detained solely because of her inability to make a monetary payment for at least two days and usually three to more than seven days without any opportunity for release or to raise any issues concerning her ability to pay.  Most impoverished arrestees are detained longer. At any moment in this process, an arrestee who can pay the money bail set by the schedule can walk out of the doors of the jail.

106.    In 2012, 22 percent of the most impoverished misdemeanor arrestees — those who were unable to pay even a $500 money bail (the minimum amount according to the predetermined schedule) — were detained at disposition, having been in jail an average of almost 9 days.[22]

107.    In 2015, almost 17 percent of people whose money bail amount was $500 never posted bond, and nearly 25 percent of people given a bond of $501 to $1,999 never posted it.[23]

108.    In 2014 and 2015, 40 percent of misdemeanor arrestees with money bail imposed were still in jail when their case was disposed of.[24]  Individuals detained pretrial are more likely to be sentenced to jail, less likely to be sentenced to probation, and are given sentences more than twice as long as those received by individuals who were released pretrial.[25]

C.    **The Harris County Jail**

---

[22] *See* Wheeler & Fry, Report #2, *supra* note 8, at 9.  Only 9.7 percent of individuals detained at disposition are not convicted, compared with 44.2 percent of individuals who are free when their case is resolved.  Moreover, for people given a $500 bail, 80.6 percent of people detained at disposition were given jail sentences, compared to 25.6 percent of defendants released on bail at disposition.  *Id.*

[23] Pretrial Services 2015 Annual Report, *supra* note 6 at 8.

[24] Pretrial Services 2014 Annual Report, *supra* note 12 at 8 (showing in Table B.1 that roughly 60 percent of misdemeanor arrestees post money bail); Pretrial Services 2015 Annual Report, *supra* note 6 at 8; Pinkerton & Caruba, *supra* note 18 (stating that about half of arrestees pay bondsmen for their release).

[25] Heaton, et al., *supra* note 21 at 4.

109.    The Harris County Jail is the largest jail in Texas and the third largest jail in the United States.[26]  It books on average 120,000 individuals per year and 330 individuals per day.[27] Most individuals arrested in Harris County are taken first to field stations run by the City of Houston, Harris County, or some other arresting authority.   Anyone who does not post bail immediately after arrest will be transported to the Harris County Jail.

110.    The vast majority of human beings in Harris County Jail cells are not there because they have been convicted of a crime.[28]  Instead, most inmates — 77 percent — are being kept in jail cells prior to trial, despite the presumption of innocence, because they cannot afford to pay money bail.  If they could pay the money bail assigned to them, they could walk out of the doors of the jail at any time.

111.    In March 2016, a typical month, the average daily population of the Harris County Jail was 8,579 individuals, 6,841 of whom were pretrial detainees.  About 8 percent of those pretrial detainees — 545 individuals — had been arrested for misdemeanors.  The average daily population of misdemeanor pretrial detainees in April was 546, and in May, it was 527. Almost all of these individuals were there only because they were unable to afford money bail of $5,000 or less.[29]

112.    Although the jail population fell by 2,500 individuals between 2009 and 2014, the pretrial population fell by only 15 inmates.[30]

---

[26] Sarah R. Guidry, et al., *A Blueprint for Criminal Justice Policy Solutions in Harris County* at 1, http://www.americanbar.org/content/dam/aba/events/legal_aid_indigent_defendants/2015/ls_sclaid_summit_03_tcjc_2015_harris_county_blueprint.authcheckdam.pdf [ABA Report].

[27] *Id.* at 9.

[28] *See* Office of Criminal Justice Coordination, *Harris County–Jail Population March 2016 Report* at 1 [Exhibit 5].

[29] *See id.*; Office of Criminal Justice Coordination, *Harris County–Jail Population June 2016 Report*; Office of Criminal Justice Coordination, *Harris County–Jail Population July 2016 Report* [Exhibits 6, 7].

[30] ABA Report, *supra* note 26 at 3.

113.   In the year prior to March 2016, the population of pretrial misdemeanor detainees grew by 29 percent.[31]

114.   Eight percent of the pretrial population regularly consists of misdemeanor offenders.  These individuals are generally in jail solely because they cannot afford their money bail.[32]

115.   In 2008, the Department of Justice investigated the Harris County Jail and launched an era of federal oversight because of the serious and systemic violations of constitutional rights that pervaded the facility.[33]  The investigation led the County to form the Harris County Criminal Justice Coordinating Council in an effort to address the overcrowding in the jail.[34]  Since then, Harris County has struggled to stay within its operating capacity.[35]  In 2013, taxpayers spent almost $500,000 *per day* to operate the jail.[36]

116.   Researchers recently concluded that if, from 2008 to 2013, those defendants for whom the minimum $500 money bail was imposed had instead been released without requiring $500 money bail, the County would have released 40,000 additional individuals, avoided almost 5,900 criminal convictions, reduced incarceration days by more than 400,000, and prevented the commission of 1,600 felonies and 2,400 misdemeanors due to the criminogenic effects of even

---

[31] Exhibit 5 at 1.

[32] Meagan Flynn, *The Houston Man Who Refused to Plead Guilty Does Not Want an Apology* (Aug. 15, 2016), available at http://www.houstonpress.com/news/the-houston-man-who-refused-to-plead-guilty-does-not-want-an-apology-8667533 (reporting on the case of Gilbert Cruz, a disabled veteran, whose $3,500 bail was set in his absence; Mr. Cruz refused to plead guilty, leading to more than two months in jail, during which time he lost his job and his car, before the charges were dismissed for lack of probable cause).

[33] ABA Report, *supra* note 26 at 2.

[34] *Id.*

[35] *Id.*

[36] *Id.*

brief pretrial custody.  The County would have saved roughly $20 million in supervision costs alone.[37]

117.    Between 2009 and 2015, 55 human beings died while in pretrial custody in the Harris County Jail.[38]

118.    On April 5, 2016, arrestee Patrick Brown — who was being held on a $3,000 bail he could not afford after being charged with misdemeanor theft — died in the Harris County Jail.[39]

119.    In March 2016, 26 percent of the average daily population had a documented mental health history.[40]

120.    There is a documented history of inmate abuse by jail guards, deaths and suicides in the jail, inadequate training of jail staff, and lack of access to medications and medical services.  For years, the County has been aware of these intolerable conditions, which exist largely because of the overcrowding resulting from the volume of inmates who cannot afford to pay money bail.  It has failed to remedy them.[41]

121.    On a typical day, hundreds of new arrestees, presumed innocent, are arrested and booked into this jail.[42]  In 2015, 40.3 percent of the more than 50,000 misdemeanor arrestees

---

[37] Heaton, et al., *supra* note 21 at 45–46.

[38] Pinkerton & Caruba, *supra* note 18.

[39] Ebenezer Nah, one of the inmates charged with aggravated assault in connection with the death, was eligible for release solely because he could afford to pay for his release.  He had just posted money bail and was being processed out of the jail at the time of the fatal assault.  Meagan Flynn, *Inmate Beaten To Death After Spending Less Than 48 Hours In Harris County Jail* (Apr. 13, 2016), available at  http://www.houstonpress.com/news/inmate-beaten-to-death-after-spending-less-than-48-hours-in-harris-county-jail-8319129.

[40] *Jail Population Report* for March 2016, *supra* note 29 at 3.

[41] The Houston Chronical, *Jailhouse Jeopardy: Uncovering abuses at Harris County's jail* (Oct. 3, 2015–Mar. 6, 2016), available at http://www.houstonchronicle.com/local/investigations/jailhouse-jeopardy/ (providing links to a series of articles written by several reporters).

[42] ABA Report, *supra* note 26 at 13 (stating that there are 330 bookings per day); Pretrial Service 2014 Report, *supra* note 11 at 3 (stating that, in 2014, 52,506 people were arrested on misdemeanor charges, which averages 144 per day).

never posted bond.[43]   At any given moment, there are hundreds of people charged only with misdemeanors who are being detained in the Harris County Jail solely because they cannot afford money bail.[44]   Every single one of these individuals could walk out of the jail if they were wealthy enough to pay their money bail amount.   None of them received any inquiry into their ability to pay.   Only those individuals who are too poor to purchase their release are subjected to these conditions and the health and safety risks of pretrial jailing.

D.   **Defendants' Wealth-Based Detention Scheme Will Cause Plaintiffs To Be Jailed Solely Due To Their Inability To Pay Bail**

122.   The named Plaintiffs would not have to endure a minute of incarceration if they paid the amount of money required by Defendants.

123.   Individuals with outstanding warrants are frequently contacted by for-profit bonding agencies who offer them the opportunity to pay for "non-arrest bonds" approved and used by the County which allow them to avoid arrest altogether.[45]

124.   For individuals who are aware of outstanding warrants for their arrest and able to afford to hire counsel, lawyers are sometimes able to arrange "walk-throughs" for their clients, whereby the person charged with a crime goes to the courthouse, pays the money bail, and gets a court date without ever going through the arrest and booking process.   Arrestees able to pay for an attorney or for a non-arrest bond are able to pay to avoid detention.

---

[43] Pretrial Services 2015 Annual Report, *supra* note 6 at 8 (Table B.1.).

[44] *See, e.g.*, ABA Report, *supra* note 26, at 15 (noting that, in 2013 alone, there were 3,120 misdemeanor arrestees who could not post the $500 money bail that Harris County demanded of them).

[45] All About Bail Bonds, *Services for Non-Arrest Bonds in Houston*, available at http://www.allaboutbailbondshouston.com/services/non-arrest-bail-bonds/; All Access Bail Bonds, *Services*, available at http://www.allaccessbailbonds.com/index.php/services ("A 'Non-Arrest' Bond lifts the warrant and initiates the process of scheduling your day in court.  This relieves the stress and worry about being arrested.").

125.     Arrestees are given a right to release pending trial, but Defendants' wealth-based detention system conditions their release on their ability to afford money bail, thus tying their pretrial freedom to their wealth status.

126.     As a matter of policy and practice, when a new arrestee is brought to the Harris County Jail, county employees inform the arrestee that she will be released from jail immediately if she pays her money bail amount.  The arrestee is told that she will remain in jail if she is not able to make that payment.

127.     The Harris County Sheriff's Department collects arrestees' money bail payments. It is the policy and practice of the Harris County Sheriff's Department to release only those arrestees who pay their money bail amount.

128.     In a typical week, the Sheriff's Department releases hundreds of individuals who pay their money bail amount.

129.     It is the policy and practice of the Sheriff's Department to detain individuals who do not pay their money bail amount.  Before an individual's probable cause hearing, it is the policy and practice of the Sheriff's Department to detain the individual based on a money bail amount set pursuant to a predetermined bail schedule.  After a probable cause hearing, it is the policy and practice of the Sheriff's Department to detain the individual based on a money bail amount approved by a Hearing Officer pursuant to the County's bail schedule.

130.     If a person cannot pay her money bail after her first court appearance before a County Court at Law Judge, it is the policy and practice of the Sheriff's Department to continue to detain that individual unless and until she makes a monetary payment.

131.     Under Defendants' wealth-based procedures, those wealthy enough to pay are released from the County jail.  Some poorer arrestees eventually make arrangements with private

bail bond companies, after spending hours, days, or weeks in jail.[46]  And many others who are

poorer still are left to languish in jail until the resolution of their case.

E.      **Defendants' Use of Money Bail Is Not Narrowly Tailored — Nor Is It as Effective as Many Other Methods — in Securing Court Attendance or Public Safety**

132.    The empirical evidence shows that there is no relationship between requiring

money bail as a condition of release and defendants' rates of appearance in court.[47]

133.    While tying pretrial freedom to wealth status is the norm in Harris County, other

jurisdictions throughout the country do not hold people in jail because of their poverty.  Instead

of relying on money, other jurisdictions release arrestees with pretrial supervision practices and

procedures that can help increase court attendance and public safety without requiring detention.

134.    Other jurisdictions employ numerous less restrictive methods of maximizing

public safety and court appearances when necessary to guard against a particular risk.  These

include: unsecured bond, reporting obligations, phone and text message reminders of court dates,

rides to court for those without transportation or a stable address, counseling, drug and alcohol

treatment, batterer intervention programs, anger management courses, alcohol monitors, or, in

extreme cases of particular risk, electronic monitoring, among other services.

135.    Other jurisdictions also employ non-monetary conditions of release, including

unsecured or "signature" bonds (which do not require payment up front for release but instead

---

[46] Because of the common availability of commercial bail bonds, those who remain in the Harris County jail are typically those that cannot even afford to pay a third-party bonding agent.  The amount charged by a bonding agent to post a $500 cash bail is typically $150, although such agents are free to refuse to pay for the release of an arrestee for any reason or for no reason.  Thus, the availability of third-party agents, at least for those arrestees who can afford $50 but not $500, is no guarantee.  The Named Plaintiffs cannot afford such a bail.

[47] Arpit Gupta, Christopher Hansman, & Ethan Frenchman, *The Heavy Costs of High Bail: Evidence from Judge Randomization* (May 2, 2016) at 5, available at http://www.columbia.edu/~cjh2182/GuptaHansmanFrenchman.pdf ("We find no evidence that money bail increases the probability of appearance."); Wheeler & Fry, Report #1, *supra* note 11, at 4.

allow immediate release upon a promise to pay the monetary amount if the person does not appear as required), stay-away orders, curfews, or even home detention.

136.    Defendants are permitted by law to use these alternatives but, as a matter of routine, choose not to for impoverished misdemeanor arrestees.  The vast majority of Harris County arrestees are processed and detained through Harris County's money bail scheme rather than non-monetary supervision methods.  As a matter of policy and practice, Defendants do not consider less restrictive alternatives rather than detention based on money bail that a person cannot afford.

137.    Jurisdictions with robust pretrial services and non-monetary conditions of release achieve court-appearance rates over 90 percent, with more than 85 percent of those released pretrial remaining arrest-free (and 98–99 percent remaining arrest-free for violent crimes).

138.    Empirical evidence proves that unsecured bond alone is just as effective at ensuring appearance in court as secured money bail.

139.    Detention on money bail increases the likelihood of conviction.  A person who is detained pretrial is 13 percent more likely to be convicted and 21 percent more likely to plead guilty.[48]  Additionally, individuals detained pretrial will be given longer jail sentences.[49]  Money bail is disproportionately imposed on non-white arrestees.[50]

---

[48] Megan Stevenson, *Distortion of Justice: How the Inability to Pay Bail Affects Case Outcomes* (May 2, 2016) at 18, available at https://www.law.upenn.edu/cf/faculty/research/details.cfm?research_id=14047; *see also* Gupta, et. al, *supra* note 47 at 13 (finding a 12 percent increase in the likelihood of conviction using the same data); Heaton, et al., *supra* note 21 at 21.

[49] Stevenson, *supra* note 48 at 18; Heaton, et al., *supra* note 21 at 21.

[50] Gupta, et. al, *supra* note 47 at 4–5.

140.    Individuals who are detained — instead of released on money bail or on a personal bond — when their case is resolved have worse case outcomes.[51]  For example, 7.2 percent of individuals who are detained at disposition in Harris County are not convicted, while 34.1 percent of individuals who are free at disposition resolve their case without a conviction. Additionally, individuals who are being confined on $500 money bail when their case is resolved will spend a median of three days in jail (which costs the County about $1,000), while individuals who are able to pay the $500 bail in cash (or the $150 non-refundable fee to a commercial bonding agent) and are free at disposition will spend an average of only one day in jail.[52]

141.    Setting a secured money bail without an inquiry into ability to pay and in an amount higher than a person can afford by definition defeats the purpose of money bail — to incentivize a person to return to court — and removes any legitimate (let alone compelling) state interest in the setting of a financial condition.  Nor is setting money bail without findings

---

[51] Stevenson, *supra* note 48 at 18; Gupta, et. al, *supra* note 47 at 13 (finding a 12 percent increase in the likelihood of conviction using the same data); Heaton, et al., *supra* note 21 at 21; ABA Report, *supra* note 26 at 13 ("[D]efendants who are not released pre-trial are more likely to be incarcerated following a conviction, and they generally receive longer sentences upon conviction."); Lise Olson, *Study: Inmates who can't afford bond face tougher sentences* (Sept. 15, 2013), available at http://www.houstonchronicle.com/news/houston-texas/houston/article/Study-Inmates-who-can-t-afford-bond-face-tougher-4817053.php (discussing Carlos Mathis, an African-American man, who was held in jail for seven months on minor drug and theft charges because he could not afford money bail, and whose charges were dismissed); Isami Arifuku & Judy Wallen, *Racial Disparities at Pretrial and Sentencing and the Effects of Pretrial Services Programs* (Mar. 11, 2013), available at http://www.pretrial.org/download/research/Racial%20Disparities%20at%20Pretrial%20and%20Sentencing%20and%20the%20Effects%20of%20Pretrial%20Services%20Programs%20-%20NCCD%202013.pdf; Cynthia E. Jones, *"Give Us Free": Addressing Racial Disparities in Bail Determinations*, 16 N.Y.U. Legis. & Pub. Pol'y 919 (2013); Tina L. Freiburger, et. al, *The Impact of Race on the Pretrial Decision*, American Journal of Criminal Justice (2010), available at http://libres.uncg.edu/ir/asu/f/Marcum_CD_2010_Impact_of_Race.pdf.

[52] Wheeler & Fry, Report #1, *supra* note 11 at 6–7; Lowenkamp, et al., *The Hidden Costs of Pretrial Detention* at 3, 19 (Nov. 2013), available at http://www.pretrial.org/download/research/The%20Hidden%20Costs%20of%20Pretrial%20Detention%20-%20LJAF%202013.pdf (studying 153,407 defendants and finding that "when held 2-3 days, low risk defendants are almost 40 percent more likely to commit new crimes before trial than equivalent defendants held no more than 24 hours"); Arnold Foundation, *Pretrial Criminal Justice Research Summary* (2013) at 5, *available at*: http://www.arnoldfoundation.org/sites/default/files/pdf/LJAF-Pretrial-CJ-Research-brief_FNL.pdf (finding that "low-risk defendants held 2–3 days were 17 percent more likely to commit another crime within two years" and that those detained "4–7 days yielded a 35 percent increase in re-offense rates.").

concerning ability to pay the most narrowly tailored way to meet any other legitimate or compelling government interest.[53]

142.   The Defendants' use of money bail leads disproportionately to the detention of people of color as compared to whites.  Regardless of the amount of money bail imposed, people of color are more likely to be detained at disposition than whites.[54]

143.   Unnecessary pretrial detention causes instability in employment, housing, and care for dependent relatives.  Studies show that those detained pretrial face worse outcomes at trial and sentencing than those released pretrial, even when charged with the same offenses.  Detained defendants are more likely to plead guilty just to shorten their jail time, even if they are innocent.  They have a harder time preparing for their defense, gathering evidence and witnesses, and meeting with their lawyers.  Studies also show that just two days of pretrial detention increases the likelihood of future arrests and increases the future risk level of low level offenders.

144.   Pretrial detention is more than ten times more expensive than effective pretrial supervision programs.  Through non-monetary tools, pretrial supervision programs can save taxpayer expense while maintaining high public safety and court appearance rates.

## **Class Action Allegations**

145.   The named Plaintiffs bring this action, on behalf of themselves and all others similarly situated, for the purpose of asserting the claims alleged in this Complaint on a common basis.

146.   A class action is a superior means, and the only practicable means, by which the

---

[53] Independently, none of the robust procedures required for a valid order of preventative detention exists, including that there is no inquiry, let alone an inquiry with counsel and basic evidentiary norms, into whether a compelling interest exists to detain a particular defendant, whether any particular identifiable danger or risk exists, and whether there are alternatives to the use of secured money bail that could mitigate any particularized risk.

[54] *Id.*; *see also* Wheeler & Fry, Report #1, *supra* note 11 at 3.

named Plaintiffs and unknown Class members can challenge the Defendants' unlawful wealth-based post-arrest detention scheme.

147.    This action is brought and may properly be maintained as a class action pursuant to Rule 23(a)(1)–(4) and Rule 23(b)(2) of the Federal Rules of Civil Procedure.

148.    This action satisfies the numerosity, commonality, typicality, and adequacy requirements of those provisions.

149.    The Plaintiffs propose a single Class seeking declaratory and injunctive relief. The Declaratory and Injunctive Class is defined as: All Class A or Class B misdemeanor arrestees who are or will be detained in Harris County custody for any amount of time after arrest because they are unable to pay money bail.

### A.    Numerosity.  Fed. R. Civ. P. 23(a)(1)

150.    In March 2016, the average daily population of misdemeanor arrestees being held pretrial on money bails they could not afford was 545 individuals.[55]  This was a typical month. The population of pretrial misdemeanor detainees grew by 29 percent in the past year.[56]  Eight percent of the pretrial population, which numbers in the thousands on any given day, regularly consists of misdemeanor offenders unable to pay a money bail.

151.    On any given day, there are thousands of outstanding misdemeanor arrest warrants issued in Harris County, and every day dozens more are issued.

152.    Arrestees are held in jail for varying lengths of time depending on how long it takes them to make the cash payment that is required for their release.

153.    Some arrestees are able to pay immediately for their release.  Others are forced to wait one or two days until they or family members can make the payment.  Others will never be

---

[55] *Jail Population Report*, *supra* note 18, at 1.

[56] *Id.*

able to come up with any amount of money to pay for their release.

154.   The number of current and future arrestees subject to this policy — if it is not enjoined — numbers well into the thousands.

**B.   Commonality.  Fed. R. Civ. P. 23(a)(2).**

155.   The relief sought is common to all members of the Class, and common questions of law and fact exist as to all members of the Class.  The named Plaintiffs seek relief concerning whether the Defendants' policies, practices, and procedures violate the rights of the Class members and relief mandating that the Defendants change their policies, practices, and procedures so that the constitutional rights of the Class members will be protected in the future.

156.   Common legal and factual questions arise from one central scheme and set of policies and practices: the Defendants' post-arrest wealth-based detention scheme.   The Defendants operate this scheme openly and in materially the same manner every day.   The material components of the scheme do not vary from Class member to Class member, and the resolution of these legal and factual issues will determine whether all of the members of the Class are entitled to the constitutional relief that they seek.

Among the most important, but not the only, common questions of fact are:

- Whether the Defendants have a policy and practice of using a predetermined schedule to determine the amount of money required to secure post-arrest release;
- Whether the Defendants require that scheduled amount of money to be paid up front before releasing a person from the jail;
- Whether Defendants, at any stage in the post-arrest process, inquire into a person's ability to pay the predetermined amount of money and make findings concerning an arrestee's present ability to pay any amount set;
- What standard post-arrest procedures the Defendants perform on misdemeanor arrestees; for example, whether Defendants use any other alternate procedures for promptly releasing people determined otherwise eligible for release but who are unable to afford a monetary payment.

157.   Among the most important common questions of law is:

- Whether a secured "bail schedule" setting generic amounts of money required up front to avoid post-arrest detention without any inquiry or findings into a person's present ability to pay the amount set violates the Fourteenth Amendment's Due Process and Equal Protection provisions.

### C.  Typicality.  Fed. R. Civ. P. 23(a)(3).

158.  The named Plaintiffs' claims are typical of the claims of the other members of the Class, and they have the same interests in this case as all other Class members.  Each Class member is threatened with imminent and/or ongoing confinement in jail because she cannot afford to pay a standardized cash bail amount.  The answer to whether the Defendants' wealth-based detention scheme is unconstitutional will determine the claims of the named Plaintiffs and every other Class member.

159.  If the named Plaintiffs succeed in the claim that the Defendants' policies and practices concerning post-arrest detention violate their constitutional rights, that ruling will likewise benefit every other member of the Class.

### D.  Adequacy.  Fed. R. Civ. P. 23(a)(4).

160.  The named Plaintiffs are adequate representatives of the Class because their interest in the vindication of the legal claims that they raise is entirely aligned with the interests of the other Class members, each of whom has the same basic constitutional claims.  They are members of the Class, and their interests do not conflict with those of the other Class members.

161.  There are no known conflicts of interest among members of the proposed Class, all of whom have a similar interest in vindicating their constitutional rights in the face of Defendants' pay-for-freedom post-arrest detention system.

162.  Plaintiffs are represented by attorneys from Equal Justice Under Law, Texas Fair Defense Project, and Susman Godfrey who have experience in litigating complex civil rights matters in federal court and extensive knowledge of both the details of Defendants' scheme and

the relevant constitutional and statutory law.  Counsels' relevant qualifications are more fully set forth in the contemporaneously filed Motion for Class Certification.

163.    The combined efforts of Class counsel have so far included extensive investigation into fixed money bail schemes over a period of months, including numerous interviews with witnesses, court employees, jail inmates, families, judges, attorneys practicing in courts throughout the region, community members, statewide experts in the functioning of state and local courts, empirical researchers, and national experts in constitutional law, post-arrest procedure, law enforcement, judicial procedures, criminal law, pretrial services, and jails.

164.    Class counsel have a detailed understanding of state law and practices as they relate to federal constitutional requirements.  Counsel have studied the way that these systems function in other cities and counties in order to investigate the wide array of lawful options in practice for municipalities.

165.    As a result, counsel have devoted enormous time and resources to becoming intimately familiar with Defendants' scheme and with all of the relevant state and federal laws and procedures that can and should govern it.  Counsel have also developed relationships with many of the individuals and families victimized by unlawful wealth-based pretrial detention practices.  The interests of the members of the Class will be fairly and adequately protected by the Plaintiffs and their attorneys.

### E.  Rule 23(b)(2)

166.    Class action status is appropriate because the Defendants, through the policies, practices, and procedures that make up its wealth-based post-arrest detention scheme, have acted in the same unconstitutional manner with respect to all Class members. The Defendants apply and enforce a wealth-based system of pretrial justice: some arrestees can purchase their

immediate release, while other arrestees must remain in jail solely because they cannot pay.

167.    The Class therefore seeks declaratory and injunctive relief that will prevent the Defendants from detaining arrestees who cannot afford cash payments.  Because the putative Class challenges the Defendants' scheme as unconstitutional through declaratory and injunctive relief that would apply the same relief to every member of the Class, Rule 23(b)(2) is appropriate and necessary.

168.    Injunctive relief compelling the Defendants to comply with these constitutional rights will similarly protect each member of the Class from being subjected to the Defendants' unlawful policies and practices. A declaration and injunction stating that Defendants cannot detain arrestees due to their inability to make a monetary payment would provide relief to every Class member.  Therefore, declaratory and injunctive relief with respect to the Class as a whole is appropriate.

169.    Plaintiffs seek the following relief.

## Claim for Relief

**Count One:  Defendants Violate Plaintiffs' Rights By Jailing Them Because They Cannot Afford A Monetary Payment.**

170.     Plaintiffs incorporate by reference the allegations in paragraphs 1-169.

171.    The Fourteenth Amendment's Equal Protection and Due Process Clauses prohibit jailing a person because of her inability to make a monetary payment.  Defendants violate Plaintiffs' fundamental right to pretrial liberty by enforcing against them a system of wealth-based detention that keeps them in jail solely because they cannot afford to pay money bail amounts imposed without any inquiry into or findings concerning their present ability to pay.

## Request for Relief

WHEREFORE, Plaintiffs and the other Class members request that this Court issue the following prospective relief against the Defendants, who are all government actors, pursuant to 42 U.S.C. § 1983 and, independently, directly under the Fourteenth Amendment to the United States Constitution, so that they cease ongoing constitutional violations:

a. A declaratory judgment that the Defendants violate the named Plaintiffs' and Class members' constitutional rights by operating a system of wealth-based detention that keeps them in jail solely because they cannot afford to pay money bail amounts imposed without providing any inquiry into or findings concerning their present ability to pay;

b. A declaratory judgment that the Hearing Officer Defendants violate the named Plaintiffs' and Class members' constitutional rights by setting secured financial conditions of release without first providing an inquiry into an arrestee's present ability to pay money bail and making findings that an arrestee has the present ability to pay any monetary amount set;

c. An order preliminarily enjoining the Hearing Officer Defendants from imposing secured financial conditions of release without first providing an inquiry into an arrestee's present ability to pay money bail and making findings that an arrestee has the present ability to pay any monetary amount set;

d. An order and judgment preliminarily and permanently enjoining the Sheriff and his employees and agents from requiring any individual arrested by the Sheriff's Department to satisfy a secured financial condition of release unless the Sheriff's Department is informed and believes in good faith that there has first been an inquiry into the person's present ability to pay the money bail amount and findings that the arrestee has the present ability to pay the sum;

e. An order and judgment preliminarily and permanently enjoining the Sheriff and his employees and agents from accepting any arrestee into the Sheriff's custody on the basis of an unfulfilled secured financial condition of release, unless the Sheriff is informed and believes in good faith that there has first been an inquiry into the person's present ability to pay the money bail amount and findings that the arrestee has the present ability to pay the sum;

f. An order and judgment preliminarily and permanently enjoining the Harris County Courts at Law Judges, who sit en banc to develop and oversee systemic post-arrest policies applicable to all arrestees in Harris County and on whose behalf all of the other Defendants operate the County's money bail system, from implementing and enforcing a system of wealth-based detention that keeps arrestees in jail solely because they cannot afford to pay money bail amounts imposed without first providing an inquiry into the

person's present ability to pay the money bail amount and making findings that the arrestee has the present ability to pay the sum;[57]

g. A declaratory judgment that the Harris County Courts at Law Judges violate the named Plaintiffs' and Class members' constitutional rights by permitting secured financial conditions of release to be imposed without providing for an inquiry into an arrestee's present ability to pay money bail and findings that an arrestee has the present ability to pay any monetary amount set; [58]

h. Any other order and judgment this Court deems necessary to preliminarily and permanently enjoin Defendants — whether acting on behalf of the State, the County, or some other government entity — from implementing and enforcing a system of wealth-based detention that keeps arrestees in jail solely because they cannot afford to pay money bail amounts imposed without first providing an inquiry into and making findings concerning the person's present ability to pay the sum;

i. An order and judgment granting reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and any other relief this Court deems just and proper.

Respectfully submitted,

/s/ Neal S. Manne
Neal S. Manne
Lexie G. White
1000 Louisiana Street, Suite 5100
Houston, TX  77002
Phone:  (713) 651-9366
nmanne@susmangodfrey.com
lwhite@susmangodfrey.com
Michael Gervais
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019
Phone:  (212) 336-8330
mgervais@susmangodfrey.com

/s/ Rebecca Bernhardt
Rebecca Bernhardt
Texas Bar No. 24001729
rbernhardt@fairdefense.org
Susanne Pringle

---

[57] This relief is requested in the alternative in the event that the Court concludes that the County Courts at Law Judges are not final policymakers for post-arrest detention policies for Harris County and are instead agents of the State of Texas or for some other entity.

[58] This relief is requested in the alternative in the event that the Court concludes that the County Courts at Law Judges, whether County or State actors, are acting in their judicial capacity when they commit the unconstitutional acts challenged herein, and are subject only to declaratory relief in the first instance.

Texas Bar No. 24083686
springle@fairdefense.org
Texas Fair Defense Project
314 E. Highland Mall Blvd.
Suite 180
Austin, Texas 78752
Telephone: (512) 637-5220
Facsimile: (512) 637-5224

 */s/ Alec Karakatsanis*
Alec Karakatsanis (D.C. Bar No. 999294)
(*Pro Hac Vice*)
Elizabeth Rossi (*Pro Hac Vice*)
Equal Justice Under Law
601 Pennsylvania Ave. NW
South Building, 9th Floor
Washington, DC 20004
(202) 670-1004
alec@equaljusticeunderlaw.org
erossi@equaljusticeunderlawl.org

*Attorneys for Plaintiffs*

1) I, Maranda Lynn ODonnell, am a 22-year-old woman.

2) I was arrested yesterday, May 18 2016, by the Harris County Police for a misdemeanor offense.

3) I was told by the Sheriff's deputies that my money bail is $2500. I know that because I cannot afford to pay that amount, I have to stay in jail.

4) I saw a TV judge this morning and he said, "I find probable cause," or something like that. He said my bail will stay at $2500. He told me my next court date would be on May 26. I was never asked if I could afford my bail. A sheriff's deputy told me not to say anything during my hearing. It took about 60 seconds.

5) I have one 4-year-old daughter. I receive assistance from WIC to support her. WIC stands for "women infants and children." I struggle to afford basic necessities for myself and my daughter. I can't afford rent so I stay with a friend.

6) I just started working at a restaurant a few weeks ago. I live paycheck to paycheck I'm worried about whether my job will still be there when I get out.

7) I cannot afford to buy my release from jail.

I declare under penalty of perjury that the foregoing is true and correct.

_____        5.19.16
Name                                            Date

1) I, Loetha Shanta McGruder, am a 22-year-old woman.

2) I was arrested on May 19, 2016, for a misdemeanor in Jacinto, Texas.

3) I was taken to the Harris County Jail early on Friday morning, May 20. A sheriff's deputy told me that my bond was $5,000, and that if I could post the bond I would be released. I can't afford to pay.

4) I saw a judge on a TV screen who said he found probable cause and told me my bail is $5,000. I was told my court date would be on Monday, May 23. I knew that because I cannot afford to pay that amount, I would have to stay in jail until then. I was never asked if I could afford my bail.

5) I have two children, one who is 4 years old and another who is almost ten months old. My older child has Downs syndrome along with other medical needs.

6) I am pregnant. I am going to apply for Medicaid so I can get an OB/GYN.

7) I am indigent. I have no money or savings. My only sources of income are disability payments and child support. The disability payments are to help support my son with Downs syndrome. I have no job. I am going to apply for food stamps. I live with my boyfriend. We share household expenses. When I find work, I contribute what I can.

8) I cannot afford to buy my release from jail.

I declare under penalty of perjury that the foregoing is true and correct.

_Loeth Meynh_ _May 21, 2016_
Name                        Date

1) I, Robert Ford, am a 26-year-old man.

2) I was arrested on May 18, 2016 in Houston, Texas.

3) I was taken to the Harris County Jail ~~and~~ early on Friday morning, May 20.

4) I saw a judge on a TV screen who said she found probable cause and told me my bail is $5,000. I knew that to be released, I would have to pay that amount of money or else I would be kept in jail. No one asked me if I could afford to pay money bail.

5) I am indigent. I'm not currently working. I have no bank account or real property or any other assets. I live with my girlfriend at her ~~parents~~ parents' house. I try to help with household responsibilities to compensate her family for letting me live there.

6) I was told my next court date is Monday.

7) I cannot afford to buy my release from jail.

I declare under penalty of perjury
that the foregoing is true and correct.

5-21-14

Date

Name

**RULE 9.    SETTING AND MODIFYING BAIL SCHEDULE**

9.1.    Pursuant to the agreed final judgment and order of the federal court in *Roberson v. Richardson* (No. H-84-2974), Southern District of Texas (1987)), the Harris County Criminal Court at Law Judges promulgate this initial bail schedule. The district attorney shall affix an initial bail amount at the time a complaint is filed in a county criminal court at law. The initial bail amount shall be determined by either presenting relevant information in the possession of the district attorney to a county criminal court at law judge, or Harris County Hearing Officer, or by applying the initial bail schedule. The district clerk shall record the bail amount set by the judicial officer or applied by the district attorney from the initial bail schedule in the case file. This shall be the exclusive means of setting the initial amount of bail, unless otherwise directed by the Judges of the Harris County Criminal Courts at Law.

### Misdemeanor Bail Schedule

| Class: | | |
|---|---|---|
| **Class:** | **B, Standard Offense** | |
| | 1st Offense | $500 |
| | 2nd Offense | $500, plus $500 for each prior misdemeanor conviction, plus $1,000 for each prior felony conviction (not to exceed $5,000) |
| **Class:** | **A, Standard Offense** | |
| | 1st Offense | $1,000 |
| | 2nd Offense | $1,000, plus $500 for each prior misdemeanor conviction, plus $1,000 for each prior felony conviction (not to exceed $5,000) |
| **Class:** | **Family Violence or Threat of Violence** | |
| | 1st Offense | $1,500 |
| | 2nd Offense | $1,500, plus $2,000 for each prior conviction for a violent offense or threat of violence |
| **Class:** | **DWI** | |
| | First Offense | $500 |
| | Subsequent Offense | $2,500, plus $1,000 for each prior conviction not to exceed $5,000 |
| **Class:** | **Any offense committed while on bond, community supervision, intervention, or parole** | $5,000 |
| | **Any motion to adjudicate or revoke community supervision** | $5,000 |

9.2.    The initial bail amount shall be determined by application of the bail schedule. In any case where the district attorney desires a bond higher than that on the bail schedule, the district attorney shall make a request to a judge of the county criminal court at law or a criminal law hearing officer. The order, when signed by the judge or hearing officer shall be provided to the district clerk along with the complaint and information for filing.

9.3.    The district clerk shall apply the amount of bond from the bail schedule except in cases where the district attorney has provided the clerk with an order setting bail signed by a judge of a county criminal court at law or a criminal law hearing officer, in which case the clerk will apply the amount of bail provided for in the order setting bail.

# Harris County - Jail Population
## March 2016 Report

### Comparison of Daily Average Jail Population

| Category [1] | 1st Mtg of Council Aug-09 | 1 Year Ago Mar-15 | Last Month Feb-16 | Current Month Mar-16 | Aug-09 - Mar-16 | Mar-15 - Mar-16 | Feb-16 - Mar-16 |
|---|---|---|---|---|---|---|---|
| **Pretrial Detainees (By Highest Charge)** | | *Inmates* | | | | *Percent Change* | |
| District Courts - Other than State Jail Felonies | | 4,582 | 5,086 | 5,108 | | 11% | 0% |
| District Courts - State Jail Felonies | | 1,286 | 1,142 | 1,134 | | -12% | -1% |
| County Courts | | 422 | 513 | 545 | | 29% | 6% |
| Other Harris Co Court detainees (eg: JP, Family, Civil) | | 52 | 53 | 54 | | 4% | 2% |
| **Pretrial Detainees** | **6,151** | **6,342** | **6,794** | **6,841** | **11%** | **8%** | **1%** |
| *% of total in Custody* | *54%* | *73%* | *78%* | *77%* | | | |
| | | | | | | | |
| **Probationers (no pending charges):** | | | | | | | |
| District Courts | | 308 | 316 | 391 | | | |
| County Courts | | 24 | 24 | 25 | | | |
| **Probationers** | **919** | **332** | **340** | **416** | **-55%** | **25%** | **22%** |
| *% of total in Custody* | *8%* | *4%* | *4%* | *5%* | | | |
| | | | | | | | |
| **Prisoners Serving County Time: Post-Adjudication** | | | | | | | |
| Sentenced in County Courts | | 363 | 319 | 339 | | | |
| Sentenced in District Courts - State Jail Felons 12.44A | 1318 [2] | 172 | 86 | 109 | | | |
| Sentenced in District Courts - Other | | 234 | 251 | 272 | | | |
| Sentenced in JP Courts | | 13 | 17 | 19 | | | |
| **Prisoners Serving County Time: Post-Adjudication** | **2,919** | **782** | **673** | **739** | **-75%** | **-5%** | **10%** |
| *% of total in Custody* | *26%* | *9%* | *8%* | *8%* | | | |
| | | | | | | | |
| **Sentenced to TDC/State Jail: Post-Adjudication** | | | | | | | |
| Sentenced to TDC | | 455 | 365 | 384 | | -16% | 5% |
| Sentenced to State Jail | | 111 | 112 | 103 | | | |
| Pending Appeals | | 145 | 92 | 99 | | | |
| **Sentenced to TDC/State Jail: Post-Adjudication** | **632** | **711** | **569** | **586** | **-7%** | **-18%** | **3%** |
| *% of total in Custody* | *6%* | *8%* | *7%* | *7%* | | | |
| | | | | | | | |
| **Others:** | | | | | | | |
| Board of Pardons & Paroles (BOPP) | | 265 | 278 | 264 | | 0% | -5% |
| Witnesses | | 32 | 39 | 34 | | | |
| Non-Harris County Prisoners | | 52 | 41 | 42 | | | |
| **Others** | **674** | **349** | **358** | **340** | **-50%** | **-3%** | **-5%** |
| *% of total in Custody* | *6%* | *4%* | *4%* | *4%* | | | |
| | | | | | | | |
| **[3]Received, Uncategorized in JIMS** | | 125 | 4 | 0 | | | |
| *% of total in Custody* | *0.0%* | *1.4%* | *0.0%* | *0.0%* | | | |
| | | | | | | | |
| **Total in Harris County Sheriff's Custody** | **11,295** | **8,641** | **8,738** | **8,922** | **-21%** | **3%** | **2%** |
| [3]Average in Inmate Processing Center (IPC) | 354 | 358 | 248 | 343 | -3% | -4% | 38% |
| **Total Housed in Harris County Jail** | **10,941** | **8,283** | **8,490** | **8,579** | **-22%** | **4%** | **1%** |
| | | | | | | | |
| **Total Awaiting Transfer to TDCJ-ID (Paper-Ready)** | **461** | **474** | **308** | **362** | **-21%** | **-24%** | **18%** |
| *% of total in Custody* | *4%* | *5%* | *4%* | *4%* | | | |

[1] The inmate Category Definitions for this report were changed effective January 2011. Data for August 2009 has been reallocated to fit the new categories.

[2] Value taken directly from August 2009 report.

[3] IPC Includes those in intake and receiving.

Harris County - Jail Population
March 2016 Report

### Comparison of Daily Average Jail Population *vs.* Facility Capacity

| Month/Year | 1st mtg of Council Aug-09 | 1 Year Ago Mar-15 | Last Month Feb-16 | Current Month Mar-16 | Aug-09 - Mar-16 | Mar-15 - Mar-16 | Feb-16 - Mar-16 |
|---|---|---|---|---|---|---|---|
| Total in HCSO custody | 11,295 | 8,641 | 8,738 | 8,922 | -21% | 3% | 2% |
| Less IPC[1] daily average | 354 | 358 | 248 | 343 | -3% | -4% | 38% |
| Total Housed by HCSO | 10,941 | 8,283 | 8,490 | 8,579 | -22% | 4% | 1% |
| Harris County Jail Facilities Total Design Capacity | 9,434 | 9,434 | 9,434 | 9,434 | | | |
| Total over/(under) design capacity | 1,507 | (1,151) | (944) | (855) | | | |
| Percent over/(under) design capacity | 16% | -12% | -10% | -9% | | without variance beds | |
| Harris County Jail Facilities Total Design Capacity | 9,434 | 9,434 | 9,434 | 9,434 | | 9,434 | |
| TCJS Approved Variance Beds[3] | 1,612 | 680 | 580 | 580 | | - | |
| Harris County Jail Total Capacity approved by TCJS | 11,046 | 10,114 | 10,014 | 10,014 | | 9,434 | |
| less 7% | (773) | (708) | (701) | (701) | | (660) | |
| **Effective Housing Capacity (93%)[2]** | **10,273** | **9,406** | **9,313** | **9,313** | | **8,774** | |
| Total Housed by HCSO | 10,941 | 8,283 | 8,490 | 8,579 | | 8,579 | |
| Total over/(under) Effective Housing Capacity | 668 | (1,123) | (823) | (734) | | (195) | |
| Percent over/(under) Effective Housing Capacity | 7% | -12% | -9% | -7.9% | | -2.2% | |

[1] IPC Includes those in intake and receiving.

[2] Effective Housing Capacity is equivalent to 93% of the total number of beds available. At any given time, seven percent of beds are unavailable due to classification issues, repairs, construction, etc. thus preventing 100% utilization of all beds in the facility.

[3] As of November 6, 2014 the number of approved variance beds was reduced from 680 to 580 beds.

# Total Inmates Housed



# Harris County - Jail Population
## March 2016 Report

## Observations

In March 2016 the average daily jail population housed stood at 8,579 reflecting a net increase of 89 persons from last month, with increases in each major category of inmates.

The average daily jail population housed is down 22% from the first meeting of the Council in September 2009 when the population totaled 10,941 inmates, which was 16% over design capacity and 7% over TCJS approved capacity.  Including approved variance beds, the average daily jail population housed for March was 7.9% below the effective housing capacity. Without the use of variance beds, average daily jail population housed was 2.2% below effective housing capacity.

**Pretrial detainees** represent 77% (6,841 persons) of the total jail population, up slightly from the previous month and 8% higher (499 persons) than one year ago. The pretrial state jail felony detainee population declined slightly to 1,134 persons, 12% fewer (152 persons) than one year ago. The number of pretrial felony detainees (excluding state jail felonies) remains essentially the same as last month, up 11% from one year ago. The misdemeanor pretrial detainee population increased by 32 persons from last month and is 29% higher (123 persons) than one year ago.

The number of **probationers** with no pending charges increased by 76 persons from last month to 416, and is 25% higher than one year ago.

**Post-adjudicated County prisoners** represent 8% of the total jail population, up 10% from last month to 739 persons. This category is down 5% (43 persons) from one year ago due to fewer 12.44a state jail felons serving time locally.  586 persons or 7% of the total population are **post-adjudicated prisoners sentenced to TDC or state jail,** down 18% (125 persons) from one year ago.

The number of parole violators and non-Harris County prisoners declined by 18 persons from last month to 340, and is down 7% (9 persons) from one year ago.

The number of inmates awaiting transfer to TDCJ-ID (i.e. Paper Ready) averaged 362, down 31% from one year ago.

In March 2016, 26% (2,289 persons) of the average daily jail population housed had a mental health history (previously diagnosed or prescribed psychotropic medication).  775 of these 2,289 had either self-identified as being homeless or had received homeless services in the community prior to incarceration. An additional 12% (1,044 persons) of the average daily jail population housed met the same homeless criteria.

*Note: Fluctuation in the jail population as reported here is influenced by a variety of factors such as the number of cases filed, the number of people who are released on bond, the length of time to complete a case, holds placed on Harris County inmates by other jurisdictions, length of sentences handed down, the effect of early release programs, parole board processing of cases, and the list goes on.  The changes observed in the jail population categories from month to month are impacted by any number of these factors and cannot be attributed to a single cause and effect.*

*Note: Effective Housing Capacity is equivalent to 93% of the total number of beds available. At any given time, approximately seven percent of beds are unavailable due to classification issues, repairs, construction, etc. thus preventing 100% utilization of all beds in the facility. The Texas Commission on Jail Standards (TCJS) has approved the use of 580 variance beds in the Harris County Jail.  When this additional capacity is added to the design capacity, the total number of beds rises to 10,014, but 7% (701 beds) must be subtracted from this number to determine the effective housing capacity which is 9,313. (The number of variance beds is subject to periodic review by TCJS.)*

# Harris County - Jail Population
## March 2016 Report



**Total Daily Average Population In Custody**
**8,922**

Pie chart segments:
- Others (Witnesses, Appeal, JP, Family, Civil) 130 — 1%
- In Custody - Receiving 0 — 0%
- Sentenced to TDC/State Jail 586 — 7%
- BOPP Violators 264 — 3%
- Prisoners Serving County Time 739 — 8%
- Probationers 416 — 5%
- Pretrial County Court Misdemeanors 545 — 6%
- Pretrial District Court State Jail Felonies 1,134 — 13%
- Pretrial District Court Felonies 5,108 — 57%

## HARRIS COUNTY JAIL - Population Housed by HCSO
*excludes Inmate Processing Center (IPC)*
### 2009 - 2016



# Harris County - Jail Population
## March 2016 Report



**Total Average Daily Population In Custody**
**8,922**

Mental Health History, No Homeless Designation; 1,514; 17%

Mental Health History and Homeless; 775; 9%

No Mental Health History, Homeless; 1,042; 12%

No Mental Health History and No Homeless Designation; 5,591; 62%

In Custody - Receiving (Status Unknown); 0; 0%

**Mental Health History and/or Homeless**



**Total Average Daily Population In Custody**
**8,922**

Sentenced to TDC/State Jail

BOPP   Other   In Custody - Receiving

Prisoners Serving County Time

Probationers

Pretrial County Court Misdemeanors

Pretrial District Court State Jail Felonies

Pretrial District Court Felonies - Other than State Jail

- No MH History, Not Homeless
- No MH History, Homeless
- MH History, Homeless
- MH History, Not Homeless
- Unknown

**Mental Health History and/or Homeless**

# Harris County - Jail Population
## March 2016 Report

# Pretrial Detainees



District Courts - Other than State Jail Felonies

Mar-14 to Mar-16: 20%

| | Mar-14 | Apr-14 | May-14 | Jun-14 | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | Jan-15 | Feb-15 | Mar-15 | Apr-15 | May-15 | Jun-15 | Jul-15 | Aug-15 | Sep-15 | Oct-15 | Nov-15 | Dec-15 | Jan-16 | Feb-16 | Mar-16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| District Court Felonies | 4246 | 4310 | 4365 | 4452 | 4486 | 4515 | 4543 | 4549 | 4565 | 4584 | 4689 | 4,652 | 4,582 | 4,731 | 4,753 | 4,879 | 4,946 | 4925 | 4930 | 4885 | 4885 | 4941 | 5078 | 5086 | 5108 |



District Courts - State Jail Felonies

Mar-14 to Mar-16: 17%

| | Mar-14 | Apr-14 | May-14 | Jun-14 | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | Jan-15 | Feb-15 | Mar-15 | Apr-15 | May-15 | Jun-15 | Jul-15 | Aug-15 | Sep-15 | Oct-15 | Nov-15 | Dec-15 | Jan-16 | Feb-16 | Mar-16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| State Jail Felonies | 973 | 1023 | 1082 | 1094 | 1042 | 1022 | 1057 | 1059 | 1087 | 1055 | 1112 | 1,187 | 1,286 | 1,377 | 1,410 | 1,492 | 1,485 | 1425 | 1329 | 1233 | 1181 | 1153 | 1094 | 1142 | 1134 |



County Courts

Mar-14 to Mar-16: 6%

| | Mar-14 | Apr-14 | May-14 | Jun-14 | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | Jan-15 | Feb-15 | Mar-15 | Apr-15 | May-15 | Jun-15 | Jul-15 | Aug-15 | Sep-15 | Oct-15 | Nov-15 | Dec-15 | Jan-16 | Feb-16 | Mar-16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| County Courts | 516 | 530 | 469 | 464 | 473 | 458 | 445 | 464 | 452 | 412 | 438 | 418 | 422 | 483 | 453 | 461 | 505 | 497 | 512 | 503 | 482 | 493 | 498 | 513 | 545 |

# Harris County - Jail Population
## June 2016 Report

| **Comparison of Daily Average Jail Population** | | | | | | | |
|---|---|---|---|---|---|---|---|
| | 1st Mtg of Council | 1 Year Ago | Last Month | Current Month | Aug-09 - | Jun-15 - | May-16 - |
| **Category** [1] | Aug-09 | Jun-15 | May-16 | Jun-16 | Jun-16 | Jun-16 | Jun-16 |
| *Pretrial Detainees (By Highest Charge)* | *Inmates* | | | | *Percent Change* | | |
| District Courts - Other than State Jail Felonies | | 4,879 | 5,166 | 5,213 | | 7% | 1% |
| District Courts - State Jail Felonies | | 1,492 | 1,426 | 1,396 | | -6% | -2% |
| County Courts | | 461 | 527 | 508 | | 10% | -4% |
| Other Harris Co Court detainees (eg: JP, Family, Civil) | | 51 | 49 | 46 | | -10% | -6% |
| **Pretrial Detainees** | **6,151** | **6,883** | **7,168** | **7,163** | **16%** | **4%** | **0%** |
| *% of total in Custody* | *54%* | *75%* | *76%* | *75%* | | | |
| | | | | | | | |
| *Probationers (no pending charges):* | | | | | | | |
| District Courts | | 354 | 359 | 351 | | | |
| County Courts | | 23 | 27 | 25 | | | |
| **Probationers** | **919** | **377** | **386** | **376** | **-59%** | **0%** | **-3%** |
| *% of total in Custody* | *8%* | *4%* | *4%* | *4%* | | | |
| | | | | | | | |
| *Prisoners Serving County Time: Post-Adjudication* | | | | | | | |
| Sentenced in County Courts | | 352 | 337 | 309 | | | |
| Sentenced in District Courts - State Jail Felons 12.44A | 1318 [2] | 175 | 166 | 189 | | | |
| Sentenced in District Courts - Other | | 231 | 237 | 245 | | | |
| Sentenced in JP Courts | | 15 | 15 | 16 | | | |
| *Prisoners Serving County Time: Post-Adjudication* | *2,919* | *773* | *755* | *759* | *-74%* | *-2%* | *1%* |
| *% of total in Custody* | *26%* | *8%* | *8%* | *8%* | | | |
| | | | | | | | |
| *Sentenced to TDC/State Jail: Post-Adjudication* | | | | | | | |
| Sentenced to TDC | | 461 | 437 | 526 | | 14% | 20% |
| Sentenced to State Jail | | 118 | 110 | 143 | | | |
| Pending Appeals | | 140 | 94 | 88 | | | |
| *Sentenced to TDC/State Jail: Post-Adjudication* | *632* | *719* | *641* | *757* | *20%* | *5%* | *18%* |
| *% of total in Custody* | *6%* | *8%* | *7%* | *8%* | | | |
| | | | | | | | |
| *Others:* | | | | | | | |
| Board of Pardons & Paroles (BOPP) | | 250 | 327 | 340 | | 36% | 4% |
| Witnesses | | 47 | 41 | 37 | | | |
| Non-Harris County Prisoners | | 59 | 52 | 57 | | | |
| Not Guilty by Reason of Insanity (NGRI) | | | 7 | 6 | | | |
| **Others** | **674** | **356** | **427** | **440** | **-35%** | **24%** | **3%** |
| *% of total in Custody* | *6%* | *4%* | *5%* | *5%* | | | |
| [3]Received, Uncategorized in JIMS | | 108 | 0 | 0 | | | |
| *% of total in Custody* | | *1.2%* | *0.0%* | *0.0%* | | | |
| | | | | | | | |
| **Total in Harris County Sheriff's Custody** | **11,295** | **9,216** | **9,377** | **9,495** | **-16%** | **3%** | **1%** |
| [3]Average in Inmate Processing Center (IPC) | 354 | 392 | 372 | 386 | 9% | -2% | 4% |
| **Total Housed by HCSO** | **10,941** | **8,824** | **9,005** | **9,109** | **-17%** | **3%** | **1%** |
| Total Outsourced | 1,040 | - | 217 | 232 | -78% | 0% | 7% |
| **Total Housed in Harris County Jail Facilities** | **9,901** | **8,824** | **8,788** | **8,877** | | | |
| | | | | | | | |
| **Total Awaiting Transfer to TDCJ-ID (Paper-Ready)** | **461** | **465** | **411** | **499** | **8%** | **7%** | **21%** |
| *% of total in Custody* | *4%* | *5%* | *4%* | *5%* | | | |

[1] The inmate Category Definitions for this report were changed effective January 2011.
Data for August 2009  has been reallocated to fit the new categories.

[2] Value taken directly from August 2009 report.

[3] IPC Includes those in intake and receiving.

# Harris County - Jail Population
## June 2016 Report

### Comparison of Daily Average Jail Population *vs.* Facility Capacity

| Month/Year | 1st mtg of Council Aug-09 | 1 Year Ago Jun-15 | Last Month May-16 | Current Month Jun-16 | Aug-09 - Jun-16 | Jun-15 - Jun-16 | May-16 - Jun-16 |
|---|---|---|---|---|---|---|---|
| Total in HCSO custody | 11,295 | 9,216 | 9,377 | 9,495 | -16% | 3% | 1% |
| Less IPC[1] daily average | 354 | 392 | 372 | 386 | 9% | -2% | 4% |
| Total Housed by HCSO | 10,941 | 8,824 | 9,005 | 9,109 | -17% | 3% | 1% |
| Less Outsourced | 1,040 | - | 217 | 232 | | | |
| Total Housed in Harris County Jail Facilities | 9,901 | 8,824 | 8,788 | 8,877 | | | |
| | | | | | | | |
| Harris County Jail Facilities Total Design Capacity | 9,434 | 9,434 | 9,434 | 9,434 | | | |
| Total over/(under) design capacity | 467 | (610) | (646) | (557) | | | |
| Percent over/(under) design capacity | 5% | -6% | -7% | -6% | | | |
| | | | | | | without variance beds | |
| Harris County Jail Facilities Total Design Capacity | 9,434 | 9,434 | 9,434 | 9,434 | | 9,434 | |
| TCJS Approved Variance Beds[2] | 1,612 | 680 | 580 | 580 | | - | |
| Harris County Jail Total Capacity approved by TCJS | 11,046 | 10,114 | 10,014 | 10,014 | | 9,434 | |
| less 7% | (773) | (708) | (701) | (701) | | (660) | |
| **Effective Housing Capacity (93%)[3]** | **10,273** | **9,406** | **9,313** | **9,313** | | **8,774** | |
| | | | | | | | |
| Total Housed in Harris County Jail Facilities | 9,901 | 8,824 | 8,788 | 8,877 | | 8,877 | |
| Total over/(under) Effective Housing Capacity | (372) | (582) | (525) | (436) | | 104 | |
| Percent over/(under) Effective Housing Capacity | -3.6% | -6.2% | -5.6% | -4.7% | | 1.2% | |

[1] IPC Includes those in intake and receiving.

[2] As of November 6, 2014 the number of approved variance beds was reduced from 680 to 580 beds.

[3] Effective Housing Capacity is equivalent to 93% of the total number of beds available. At any given time, seven percent of beds are unavailable due to classification issues, repairs, construction, etc. thus preventing 100% utilization of all beds in the facility.



## Total Inmates Housed

# Harris County - Jail Population
## June 2016 Report

## Observations

In June 2016 the average daily jail population housed stood at 9,109, a net increase of 104 persons from the previous month. Increases were observed in those sentenced to TDC/State Jail and parole violators.

The average daily jail population housed is down 18% from the first meeting of the Council in September 2009 when the population totaled 10,941 inmates, which was 16% over design capacity and 7% over TCJS approved capacity.  Including approved variance beds, the average daily jail population housed for June was 2% below the effective housing capacity. An average of 232 inmates were housed in other Texas counties.

**Pretrial detainees** represent 75% (7,163 persons) of the total jail population, essentially the same as the previous month and 4% higher (280 persons) than one year ago. The pretrial felony population (excluding state jail felonies) increased by 47 persons to 5,213, 7% higher than one year ago. The number of pretrial state jail felony detainees declined by 30 persons from last month, 6% less than one year ago. The misdemeanor pretrial detainee population declined by 19 persons from last month and is 10% higher (47 persons) than one year ago.

The number of **probationers** with no pending charges declined 3% from last month to 351, essentially the same as one year ago.

**Post-adjudicated County prisoners** represent 8% of the total jail population, unchanged from last month, and 2% (14 persons) less than one year ago.  757 persons or 8% of the total population are **post-adjudicated prisoners sentenced to TDC or state jail,** up 5% from one year ago.

The number of **parole violators** increased 4% (13 persons) from last month to 340, 36% higher than one year ago.

The number of inmates awaiting transfer to TDCJ-ID (i.e. Paper Ready) averaged 499, up 7% from one year ago.

In June 2016, 27% (2,453 persons) of the average daily jail population housed had a mental health history (previously diagnosed or prescribed psychotropic medication).  825 of these 2,453 had either self-identified as being homeless or had received homeless services in the community prior to incarceration. An additional 11% (1,004 persons) of the average daily jail population housed met the same homeless criteria.

*Note: Fluctuation in the jail population as reported here is influenced by a variety of factors such as the number of cases filed, the number of people who are released on bond, the length of time to complete a case, holds placed on Harris County inmates by other jurisdictions, length of sentences handed down, the effect of early release programs, parole board processing of cases, and the list goes on.  The changes observed in the jail population categories from month to month are impacted by any number of these factors and cannot be attributed to a single cause and effect.*

*Note: Effective Housing Capacity is equivalent to 93% of the total number of beds available. At any given time, approximately seven percent of beds are unavailable due to classification issues, repairs, construction, etc. thus preventing 100% utilization of all beds in the facility. The Texas Commission on Jail Standards (TCJS) has approved the use of 580 variance beds in the Harris County Jail.  When this additional capacity is added to the design capacity, the total number of beds rises to 10,014, but 7% (701 beds) must be subtracted from this number to determine the effective housing capacity which is 9,313. (The number of variance beds is subject to periodic review by TCJS.)*

# Harris County - Jail Population
## June 2016 Report



**Total Daily Average Population In Custody**
**9,495**

- Sentenced to TDC/State Jail 757 8%
- BOPP Violators 340 4%
- Others (Witnesses, Appeal, JP, Family, Civil) 146 1%
- Prisoners Serving County Time 759 8%
- Probationers w/o Law Violations 376 4%
- Pretrial County Court Misdemeanors 508 5%
- Pretrial District Court Felonies 5,213 55%
- Pretrial District Court State Jail Felonies 1,396 15%



### HARRIS COUNTY JAIL - Population Housed by HCSO
### excludes Inmate Processing Center (IPC)
### 2013 - 2016

# Harris County - Jail Population
## June 2016 Report



**Total Average Daily Population In Custody**
<u>9,495</u>

Mental Health History, No Homeless Designation; 1,728; 18%

Mental Health History and Homeless; 849; 9%

No Mental Health History, Homeless; 1,044; 11%

No Mental Health History and No Homeless Designation; 5,874; 62%

**Mental Health History and/or Homeless**



**Total  Average Daily Population In Custody**
<u>9,495</u>

BOPP    Other

Sentenced to TDC/State Jail

Prisoners Serving County Time

Probationers w/o Law Violations

Pretrial County Court Misdemeanors

Pretrial District Court State Jail Felonies

Pretrial District Court Felonies - Other than State Jail

No MH History, Not Homeless

No MH History, Homeless

MH History, Homeless

MH History, Not Homeless

Unknown

**Mental Health History and/or Homeless**

Harris County - Jail Population
June 2016 Report

# Pretrial Detainees



### District Courts - Other than State Jail Felonies

Jun-14 to Jun-16: 17% ⬆

| | Jun-14 | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | Jan-15 | Feb-15 | Mar-15 | Apr-15 | May-15 | Jun-15 | Jul-15 | Aug-15 | Sep-15 | Oct-15 | Nov-15 | Dec-15 | Jan-16 | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| District Court Felonies | 4452 | 4486 | 4515 | 4543 | 4549 | 4565 | 4584 | 4689 | 4,652 | 4,582 | 4,731 | 4,753 | 4,879 | 4,946 | 4925 | 4930 | 4885 | 4885 | 4941 | 5078 | 5086 | 5108 | 5046 | 5166 | 5213 |



### District Courts - State Jail Felonies

Jun-14 to Jun-16:  28% ⬆

| | Jun-14 | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | Jan-15 | Feb-15 | Mar-15 | Apr-15 | May-15 | Jun-15 | Jul-15 | Aug-15 | Sep-15 | Oct-15 | Nov-15 | Dec-15 | Jan-16 | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Series2 | 0 | | | | | | | | | | | | | | | | | | | | | | | | |
| State Jail Felonies | 1094 | 1042 | 1022 | 1057 | 1059 | 1087 | 1055 | 1112 | 1,187 | 1,286 | 1,377 | 1,410 | 1,492 | 1,485 | 1425 | 1329 | 1233 | 1181 | 1153 | 1094 | 1142 | 1134 | 1365 | 1426 | 1396 |



### County Courts

Jun-14 to Jun-16: 9% ⬆

| | Jun-14 | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | Jan-15 | Feb-15 | Mar-15 | Apr-15 | May-15 | Jun-15 | Jul-15 | Aug-15 | Sep-15 | Oct-15 | Nov-15 | Dec-15 | Jan-16 | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Series2 | 0 | | | | | | | | | | | | | | | | | | | | | | | | |
| County Courts | 464 | 473 | 458 | 445 | 464 | 452 | 412 | 438 | 418 | 422 | 483 | 453 | 461 | 505 | 497 | 512 | 503 | 482 | 493 | 498 | 513 | 545 | 546 | 527 | 508 |

**Comparison of Daily Average Jail Population**

| Category [1] | 1st Mtg of Council Aug-09 | 1 Year Ago Jul-15 | Last Month Jun-16 | Current Month Jul-16 | Aug-09 - Jul-16 | Jul-15 - Jul-16 | Jun-16 - Jul-16 |
|---|---|---|---|---|---|---|---|
| *Pretrial Detainees (By Highest Charge)* | | *Inmates* | | | *Percent Change* | | |
| District Courts - Other than State Jail Felonies | | 4,946 | 5,213 | 5,257 | | 6% | 1% |
| District Courts - State Jail Felonies | | 1,485 | 1,396 | 1,361 | | -8% | -3% |
| County Courts | | 505 | 508 | 486 | | -4% | -4% |
| Other Harris Co Court detainees (eg: JP, Family, Civil) | | 53 | 46 | 41 | | -23% | -11% |
| **Pretrial Detainees** | **6,151** | **6,989** | **7,163** | **7,145** | **16%** | **2%** | **0%** |
| *% of total in Custody* | *54%* | *75%* | *75%* | *76%* | | | |
| | | | | | | | |
| *Probationers (no pending charges):* | | | | | | | |
| District Courts | | 332 | 351 | 403 | | | |
| County Courts | | 23 | 25 | 24 | | | |
| **Probationers** | **919** | **355** | **376** | **427** | **-54%** | **20%** | **14%** |
| *% of total in Custody* | *8%* | *4%* | *4%* | *5%* | | | |
| | | | | | | | |
| *Prisoners Serving County Time: Post-Adjudication* | | | | | | | |
| Sentenced in County Courts | | 348 | 309 | 293 | | | |
| Sentenced in District Courts - State Jail Felons 12.44A | 1318 [2] | 163 | 189 | 157 | | | |
| Sentenced in District Courts - Other | | 239 | 245 | 240 | | | |
| Sentenced in JP Courts | | 16 | 16 | 12 | | | |
| *Prisoners Serving County Time: Post-Adjudication* | *2,919* | *766* | *759* | *702* | *-76%* | *-8%* | *-8%* |
| *% of total in Custody* | *26%* | *8%* | *8%* | *7%* | | | |
| | | | | | | | |
| *Sentenced to TDC/State Jail: Post-Adjudication* | | | | | | | |
| Sentenced to TDC | | 496 | 526 | 472 | | -5% | -10% |
| Sentenced to State Jail | | 132 | 143 | 129 | | | |
| Pending Appeals | | 139 | 88 | 83 | | | |
| *Sentenced to TDC/State Jail: Post-Adjudication* | *632* | *767* | *757* | *684* | *8%* | *-11%* | *-10%* |
| *% of total in Custody* | *6%* | *8%* | *8%* | *7%* | | | |
| | | | | | | | |
| *Others:* | | | | | | | |
| Board of Pardons & Paroles (BOPP) | | 271 | 340 | 311 | | 15% | -9% |
| Witnesses | | 35 | 37 | 39 | | | |
| Non-Harris County Prisoners | | 56 | 57 | 44 | | | |
| Not Guilty by Reason of Insanity (NGRI) | | | 6 | 5 | | | |
| **Others** | **674** | **362** | **440** | **399** | **-41%** | **10%** | **-9%** |
| *% of total in Custody* | *6%* | *4%* | *5%* | *4%* | | | |
| [3]**Received, Uncategorized in JIMS** | | 100 | 0 | 4 | | | |
| *% of total in Custody* | | *1.1%* | *0.0%* | *0.0%* | | | |
| | | | | | | | |
| **Total in Harris County Sheriff's Custody** | **11,295** | **9,339** | **9,495** | **9,361** | **-17%** | **0%** | **-1%** |
| [3]Average in Inmate Processing Center (IPC) | 354 | 389 | 386 | 302 | | | |
| **Total Housed by Harris County Sheriff** | **10,941** | **8,950** | **9,109** | **9,059** | **-17%** | **1%** | **-1%** |
| Total Outsourced | 1,040 | - | 232 | 230 | | | |
| **Total Housed in Harris County Jail Facilities** | **9,901** | **8,950** | **8,877** | **8,829** | **-11%** | **-1%** | **-1%** |
| | | | | | | | |
| **Total Awaiting Transfer to TDCJ-ID (Paper-Ready)** | **461** | **515** | **499** | **424** | **-8%** | **-18%** | **-15%** |
| *% of total in Custody* | *4%* | *6%* | *5%* | *5%* | | | |

[1] *The inmate Category Definitions for this report were changed effective January 2011.*
*Data for August 2009 has been reallocated to fit the new categories.*

[2] *Value taken directly from August 2009 report.*

[3] *IPC Includes those in intake and receiving.*

**Comparison of Daily Average Jail Population** *vs.* **Facility Capacity**

| Month/Year | | 1st mtg of Council Aug-09 | 1 Year Ago Jul-15 | Last Month Jun-16 | Current Month Jul-16 | Aug-09 - Jul-16 | Jul-15 - Jul-16 | Jun-16 - Jul-16 |
|---|---|---|---|---|---|---|---|---|
| Total in HCSO custody | | 11,295 | 9,339 | 9,495 | 9,361 | -17% | 0% | -1% |
| | Less IPC[1] daily average | 354 | 389 | 386 | 302 | -15% | -22% | -22% |
| Total Housed by HCSO | | 10,941 | 8,950 | 9,109 | 9,059 | -17% | 1% | -1% |
| | Less Outsourced | 1,040 | - | 232 | 230 | | | |
| Total Housed in Harris County Jail Facilities | | 9,901 | 8,950 | 8,877 | 8,829 | | | |
| | | | | | | | | |
| Harris County Jail Facilities Total Design Capacity | | 9,434 | 9,434 | 9,434 | 9,434 | | | |
| Total over/(under) design capacity | | 467 | (484) | (557) | (605) | | | |
| Percent over/(under) design capacity | | 5.0% | -5.1% | -5.9% | -6.4% | | | |
| | | | | | | | without variance beds | |
| Harris County Jail Facilities Total Design Capacity | | 9,434 | 9,434 | 9,434 | 9,434 | | 9,434 | |
| TCJS Approved Variance Beds[2] | | 1,612 | 680 | 580 | 580 | | - | |
| Harris County Jail Total Capacity approved by TCJS | | 11,046 | 10,114 | 10,014 | 10,014 | | 9,434 | |
| less 7% | | (773) | (708) | (701) | (701) | | (660) | |
| Effective Housing Capacity (93%)[3] | | 10,273 | 9,406 | 9,313 | 9,313 | | 8,774 | |
| | | | | | | | | |
| Total Housed in Harris County Jail Facilities | | 9,901 | 8,950 | 8,877 | 8,829 | | 8,829 | |
| Total over/(under) Effective Housing Capacity | | (372) | (456) | (436) | (484) | | 56 | |
| Percent over/(under) Effective Housing Capacity | | -3.6% | -4.8% | -4.7% | -5.2% | | 0.6% | |

[1] IPC Includes those in intake and receiving.

[2] As of November 6, 2014 the number of approved variance beds was reduced from 680 to 580 beds.

[3] Effective Housing Capacity is equivalent to 93% of the total number of beds available. At any given time, seven percent of beds are unavailable due to classification issues, repairs, construction, etc. thus preventing 100% utilization of all beds in the facility.

# Total Inmates Housed



## Observations

In July 2016 the average daily jail population housed stood at 9,059, down 50 persons from the previous month. There were fewer post adjudicated county prisoners, TDC/state jail prisoners, and parole violators.

The average daily jail population housed is down 17% from the first meeting of the Council in September 2009 when the population totaled 10,941 inmates.  During the month of July an average of 230 inmates were housed in other Texas counties. Including approved variance beds, the average daily jail population housed in Harris County jail facilities was 8829, 5.2% below the effective housing capacity.

**Pretrial detainees** represent 76% (7,145 persons) of the total jail population, essentially the same as the previous month and 4% higher (280 persons) than one year ago. The pretrial felony population (excluding state jail felonies) increased by 47 persons to 5,213, 7% higher than one year ago. The number of pretrial state jail felony detainees declined by 30 persons from last month, 6% less than one year ago. The misdemeanor pretrial detainee population declined by 19 persons from last month and is 10% higher (47 persons) than one year ago.

The number of **probationers** with no pending charges increased 15% from last month to 403, up 21% from one year ago.

**Post-adjudicated County prisoners** represent 7.5% of the total jail population, down 57 persons from last month, and 8% (64 persons) less than one year ago.  684 persons or 7.3% of the total population are **post-adjudicated prisoners sentenced to TDC or state jail,** down 11% from one year ago.

The number of **parole violators** is down 9% (29 persons) from last month to 311, 15% higher than one year ago.

The number of inmates awaiting transfer to TDCJ-ID (i.e. Paper Ready) averaged 499, up 7% from one year ago.

In July 2016, 27% (2,470 persons) of the average daily jail population housed had a mental health history (previously diagnosed or prescribed psychotropic medication).  795 of these 2,470 had either self-identified as being homeless or had received homeless services in the community prior to incarceration. An additional 11% (959 persons) of the average daily jail population housed met the same homeless criteria.

*Note: Fluctuation in the jail population as reported here is influenced by a variety of factors such as the number of cases filed, the number of people who are released on bond, the length of time to complete a case, holds placed on Harris County inmates by other jurisdictions, length of sentences handed down, the effect of early release programs, parole board processing of cases, and the list goes on.  The changes observed in the jail population categories from month to month are impacted by any number of these factors and cannot be attributed to a single cause and effect.*

*Note: Effective Housing Capacity is equivalent to 93% of the total number of beds available. At any given time, approximately seven percent of beds are unavailable due to classification issues, repairs, construction, etc. thus preventing 100% utilization of all beds in the facility. The Texas Commission on Jail Standards (TCJS) has approved the use of 580 variance beds in the Harris County Jail.  When this additional capacity is added to the design capacity, the total number of beds rises to 10,014, but 7% (701 beds) must be subtracted from this number to determine the effective housing capacity which is 9,313. (The number of variance beds is subject to periodic review by TCJS.)*



**Total Daily Average Population In Custody**
**9,361**

Includes Inmate Processing Center and Outsourced Inmates

BOPP Violators
311
3%

Others (Witnesses, Appeal, JP, Family, Civil)
129
1%

Sentenced to TDC/State Jail
684
7%

Prisoners Serving County Time
702
8%

Probationers w/o Law Violations
427
5%

Pretrial County Court Misdemeanors
486
5%

Pretrial District Court State Jail Felonies
1,361
15%

Pretrial District Court Felonies
5,257
56%



**HARRIS COUNTY JAIL - Population Housed by HCSO**
*includes Outsourced Inmates, excludes Inmate Processing Center (IPC)*
**2009 - 2016**



**Mental Health History and/or Homeless**



**Mental Health History and/or Homeless**

# Harris County - Jail Population
## July 2016 Report



### Pretrial Detainees
### District Court Felonies

MH 20%
MH & Homeless 8%
Homeless 9%
Not Homeless, No MH History 63%

### Pretrial Detainees
### District Court State Jail Felonies

MH 14%
MH & Homeless 14%
Homeless 18%
Not Homeless, No MH History 54%

### Probationers

MH 19%
MH & Homeless 7%
Homeless 9%
Not Homeless, No MH History 65%

### Parole Violators

MH 21%
MH & Homeless 11%
Homeless 15%
Not Homeless, No MH History 53%

### Pretrial Detainees
### County Court Misdemeanors

MH 17%
MH & Homeless 10%
Homeless 10%
Not Homeless, No MH History 63%

### Prisoners Serving County Time

MH 13%
MH & Homeless 7%
Homeless 11%
Not Homeless, No MH History 69%

### Others (Witnesses, Appeal, JP, Family, Civil)

MH 26%
MH & Homeless 10%
Homeless 15%
Not Homeless, No MH History 49%

### Sentenced to TDC/ State Jail

MH 13%
MH & Homeless 5%
Homeless 10%
Not Homeless, No MH History 72%

# Harris County - Jail Population
## July 2016 Report

## Pretrial Detainees



### District Courts - Other than State Jail Felonies

Jul-14 to Jul-16: 17% ↑

| | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | Jan-15 | Feb-15 | Mar-15 | Apr-15 | May-15 | Jun-15 | Jul-15 | Aug-15 | Sep-15 | Oct-15 | Nov-15 | Dec-15 | Jan-16 | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 | Jul-16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| District Court Felonies | 4486 | 4515 | 4543 | 4549 | 4565 | 4584 | 4689 | 4652 | 4,582 | 4,731 | 4,753 | 4,879 | 4,946 | 4,925 | 4930 | 4885 | 4885 | 4941 | 5078 | 5086 | 5108 | 5046 | 5166 | 5213 | 5257 |



### District Courts - State Jail Felonies

Jul-14 to Jul-16: 31% ↑

| | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | Jan-15 | Feb-15 | Mar-15 | Apr-15 | May-15 | Jun-15 | Jul-15 | Aug-15 | Sep-15 | Oct-15 | Nov-15 | Dec-15 | Jan-16 | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 | Jul-16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Series2 | 0 | | | | | | | | | | | | | | | | | | | | | | | | |
| State Jail Felonies | 1042 | 1022 | 1057 | 1059 | 1087 | 1055 | 1112 | 1187 | 1,286 | 1,377 | 1,410 | 1,492 | 1,485 | 1,425 | 1329 | 1233 | 1181 | 1153 | 1094 | 1142 | 1134 | 1365 | 1426 | 1396 | 1361 |



### County Courts

Jul-14 to Jul-16: 3% ↑

| | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | Jan-15 | Feb-15 | Mar-15 | Apr-15 | May-15 | Jun-15 | Jul-15 | Aug-15 | Sep-15 | Oct-15 | Nov-15 | Dec-15 | Jan-16 | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 | Jul-16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Series2 | 0 | | | | | | | | | | | | | | | | | | | | | | | | |
| County Courts | 473 | 458 | 445 | 464 | 452 | 412 | 438 | 418 | 422 | 483 | 453 | 461 | 505 | 497 | 512 | 503 | 482 | 493 | 498 | 513 | 545 | 546 | 527 | 508 | 486 |



# Total Housed by HCSO

| | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | Jan-15 | Feb-15 | Mar-15 | Apr-15 | May-15 | Jun-15 | Jul-15 | Aug-15 | Sep-15 | Oct-15 | Nov-15 | Dec-15 | Jan-16 | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 | Jul-16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Outsourced | | | | | | | | | | | | 7 | 154 | 19 | | | | | | | | | 217 | 232 | 230 |
| Total Housed in Harris County | 8439 | 8349 | 8,424 | 8,476 | 8449 | 8181 | 8205 | 8352 | 8283 | 8424 | 8648 | 8817 | 8796 | 8711 | 8638 | 8592 | 8439 | 8308 | 8235 | 8490 | 8579 | 8770 | 8788 | 8877 | 8829 |

Harris County Jail Facilities Effective Housing Capacity 9,313

Jul-14 to Jul-16: 8%

Harris County - Jail Population
July 2016 Report

# Probationers
## *with No New Charges*



| | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | Jan-15 | Feb-15 | Mar-15 | Apr-15 | May-15 | Jun-15 | Jul-15 | Aug-15 | Sep-15 | Oct-15 | Nov-15 | Dec-15 | Jan-16 | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 | Jul-16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Probationers | 456 | 443 | 387 | 354 | 324 | 308 | 316 | 347 | 332 | 330 | 359 | 377 | 355 | 346 | 366 | 444 | 465 | 363 | 311 | 340 | 416 | 412 | 386 | 376 | 427 |
| County Courts | 40 | 40 | 33 | 22 | 26 | 21 | 30 | 29 | 24 | 26 | 23 | 23 | 23 | 22 | 25 | 21 | 19 | 20 | 22 | 24 | 25 | 23 | 27 | 25 | 24 |
| District Courts | 416 | 403 | 354 | 332 | 298 | 287 | 286 | 318 | 308 | 304 | 336 | 354 | 332 | 324 | 341 | 423 | 446 | 343 | 289 | 316 | 391 | 389 | 359 | 351 | 403 |



Harris County - Jail Population
July 2016 Report

# Post Adjudicated - Serving County Time

| | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | Jan-15 | Feb-15 | Mar-15 | Apr-15 | May-15 | Jun-15 | Jul-15 | Aug-15 | Sep-15 | Oct-15 | Nov-15 | Dec-15 | Jan-16 | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 | Jul-16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Inmates Serving County Time | 1034 | 1028 | 1016 | 1078 | 1041 | 907 | 828 | 853 | 782 | 784 | 795 | 773 | 766 | 715 | 734 | 751 | 692 | 654 | 640 | 673 | 739 | 726 | 755 | 759 | 702 |
| District Courts - Other | 273 | 279 | 278 | 289 | 278 | 249 | 236 | 231 | 234 | 221 | 222 | 231 | 239 | 236 | 242 | 250 | 250 | 235 | 231 | 251 | 272 | 224 | 237 | 245 | 240 |
| District Courts - State Jail Felons | 292 | 304 | 310 | 333 | 319 | 284 | 248 | 226 | 172 | 179 | 199 | 175 | 163 | 146 | 138 | 137 | 120 | 108 | 91 | 86 | 109 | 165 | 166 | 189 | 157 |
| Sentenced in County Courts | 454 | 430 | 415 | 442 | 431 | 363 | 332 | 382 | 363 | 375 | 361 | 352 | 348 | 315 | 336 | 341 | 303 | 294 | 297 | 319 | 339 | 320 | 337 | 309 | 293 |
| Sentenced in JP Courts | 15 | 15 | 13 | 14 | 13 | 11 | 12 | 14 | 13 | 9 | 13 | 15 | 16 | 18 | 18 | 23 | 20 | 17 | 21 | 17 | 19 | 17 | 15 | 16 | 12 |

Jul-14 to Jul-16: -32%

Legend: Sentenced in JP Courts ■ | Sentenced in County Courts ■ | District Courts - State Jail Felons ■ | District Courts - Other ■



Harris County - Jail Population
July 2016 Report

# Post-Adjudicated - Sentenced to TDC / State Jail

| | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | Jan-15 | Feb-15 | Mar-15 | Apr-15 | May-15 | Jun-15 | Jul-15 | Aug-15 | Sep-15 | Oct-15 | Nov-15 | Dec-15 | Jan-16 | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 | Jul-16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL | 768 | 708 | 789 | 796 | 775 | 751 | 689 | 744 | 711 | 673 | 749 | 719 | 767 | 706 | 654 | 632 | 599 | 552 | 472 | 569 | 586 | 646 | 641 | 757 | 684 |
| Sentenced to TDC | 470 | 444 | 479 | 510 | 501 | 488 | 420 | 453 | 455 | 422 | 494 | 461 | 496 | 457 | 427 | 420 | 401 | 346 | 289 | 365 | 384 | 430 | 437 | 526 | 472 |
| Pending Appeals | 147 | 138 | 141 | 151 | 147 | 146 | 146 | 141 | 145 | 136 | 149 | 140 | 139 | 131 | 111 | 88 | 90 | 97 | 82 | 92 | 99 | 94 | 94 | 88 | 83 |
| Sentenced to State Jail | 151 | 126 | 169 | 135 | 127 | 117 | 123 | 150 | 111 | 115 | 106 | 118 | 132 | 118 | 116 | 124 | 108 | 109 | 101 | 112 | 103 | 122 | 110 | 143 | 129 |

Harris County - Jail Population
July 2016 Report

# Other Non-Harris County Prisoners



| | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | Jan-15 | Feb-15 | Mar-15 | Apr-15 | May-15 | Jun-15 | Jul-15 | Aug-15 | Sep-15 | Oct-15 | Nov-15 | Dec-15 | Jan-16 | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 | Jul-16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL | 384 | 379 | 387 | 354 | 326 | 280 | 282 | 339 | 349 | 292 | 306 | 356 | 357 | 360 | 361 | 325 | 321 | 358 | 350 | 358 | 340 | 356 | 427 | 440 | 399 |
| Board of Pardons & Parole (BOPP) | 286 | 263 | 280 | 264 | 236 | 183 | 196 | 251 | 265 | 205 | 199 | 250 | 271 | 265 | 297 | 305 | 261 | 274 | 282 | 278 | 264 | 265 | 327 | 340 | 311 |
| Witnesses | 37 | 61 | 52 | 44 | 43 | 44 | 42 | 38 | 32 | 33 | 48 | 47 | 35 | 34 | 35 | 39 | 46 | 41 | 39 | 39 | 34 | 35 | 41 | 37 | 39 |
| Non-Harris County Prisoners | 61 | 55 | 55 | 46 | 47 | 53 | 44 | 50 | 52 | 54 | 59 | 59 | 56 | 58 | 28 | 17 | 14 | 10 | 29 | 41 | 42 | 53 | 52 | 57 | 44 |
| Not Guilty by Reason of Insanity (NGRI) | | | | | | | | | | | | | | | | | | | | | | 2.72414 | 7 | 6 | 5 |

Harris County - Jail Population
July 2016 Report

# Awaiting Transfer to TDCJ
# Paper Ready



| | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | Jan-15 | Feb-15 | Mar-15 | Apr-15 | May-15 | Jun-15 | Jul-15 | Aug-15 | Sep-15 | Oct-15 | Nov-15 | Dec-15 | Jan-16 | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 | Jul-16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Paper Ready | 469 | 431 | 467 | 506 | 506 | 486 | 418 | 446 | 474 | 394 | 487 | 487 | 515 | 466 | 424 | 417 | 423 | 340 | 252 | 308 | 362 | 370 | 411 | 499 | 424 |

Jul-14 to Jul-16:   5%

Jul-15 to Jul-16:   -1%

Prepared by the Office of Criminal Justice Coordination

08/05/2016

Harris County - Jail Population
July 2016 Report

## State Jail Felons



| | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | Jan-15 | Feb-15 | Mar-15 | Apr-15 | May-15 | Jun-15 | Jul-15 | Aug-15 | Sep-15 | Oct-15 | Nov-15 | Dec-15 | Jan-16 | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 | Jul-16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Pretrial SJFs | 1042 | 1022 | 1057 | 1059 | 1087 | 1055 | 1112 | 1187 | 1,286 | 1,377 | 1,410 | 1,492 | 1,485 | 1,425 | 1329 | 1233 | 1181 | 1153 | 1094 | 1142 | 1134 | 1365 | 1426 | 1396 | 1361 |



| | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | Jan-15 | Feb-15 | Mar-15 | Apr-15 | May-15 | Jun-15 | Jul-15 | Aug-15 | Sep-15 | Oct-15 | Nov-15 | Dec-15 | Jan-16 | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 | Jul-16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sentenced in District Courts | 292 | 304 | 310 | 333 | 319 | 284 | 248 | 226 | 172 | 179 | 199 | 175 | 163 | 146 | 138 | 137 | 120 | 108 | 91 | 86 | 109 | 165 | 166 | 189 | 157 |



| | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | Jan-15 | Feb-15 | Mar-15 | Apr-15 | May-15 | Jun-15 | Jul-15 | Aug-15 | Sep-15 | Oct-15 | Nov-15 | Dec-15 | Jan-16 | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 | Jul-16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sentenced to State Jail | 151 | 126 | 169 | 135 | 127 | 117 | 123 | 150 | 111 | 115 | 106 | 118 | 132 | 118 | 116 | 124 | 108 | 109 | 101 | 112 | 103 | 122 | 110 | 143 | 129 |

# Harris County - Jail Population
## July 2016 Report

### Daily Averages

| Date | Apr-12 | May-12 | Jun-12 | Jul-12 | Aug-12 | Sep-12 | Oct-12 | Nov-12 | Dec-12 | Jan-13 | Feb-13 | Mar-13 | Apr-13 | May-13 | Jun-13 | Jul-13 | Aug-13 | Sep-13 | Oct-13 | Nov-13 | Dec-13 | Jan-14 | Feb-14 | Mar-14 | Apr-14 | May-14 | Jun-14 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 2012 | | | | | | | | | | | 2013 | | | | | | | | | | 2014 | | | |
| **Pre-Trial Detainees (By Highest Charge):** | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| District Courts - Other than State Jail Felonies | 4232 | 4297 | 4283 | 4270 | 4234 | 4252 | 4181 | 4172 | 4182 | 4390 | 4426 | 4274 | 4264 | 4280 | 4382 | 4467 | 4401 | 4385 | 4328 | 4236 | 4204 | 4297 | 4295 | 4246 | 4310 | 4365 | 4,452 |
| District Courts - State Jail Felonies | 870 | 895 | 942 | 909 | 922 | 946 | 918 | 932 | 904 | 909 | 922 | 948 | 966 | 1,031 | 1,003 | 987 | 986 | 1001 | 977 | 972 | 964 | 1,019 | 991 | 973 | 1,023 | 1,082 | 1,094 |
| County Courts | 559 | 543 | 573 | 575 | 568 | 582 | 551 | 523 | 542 | 577 | 537 | 520 | 544 | 595 | 556 | 590 | 574 | 577 | 546 | 519 | 509 | 554 | 503 | 516 | 530 | 469 | 464 |
| Other Harris Co Court detainees (eg: JP, Family, Civil) | 74 | 56 | 63 | 63 | 81 | 84 | 89 | 80 | 73 | 76 | 87 | 96 | 79 | 100 | 79 | 76 | 76 | 82 | 86 | 88 | 73 | 69 | 62 | 60 | 57 | 61 | 59 |
| **Pre-Trial Detainees** | 5735 | 5791 | 5861 | 5817 | 5805 | 5864 | 5739 | 5707 | 5701 | 5952 | 5972 | 5838 | 5857 | 5989 | 6020 | 6120 | 6037 | 6045 | 5939 | 5813 | 5790 | 5939 | 5851 | 5795 | 5920 | 5977 | 6060 |
| % of total in Custody | 64% | 64% | 64% | 65% | 64% | 65% | 65% | 65% | 66% | 67% | 66% | 66% | 65% | 65% | 64% | 65% | 64% | 63% | 64% | 65% | 67% | 69% | 67% | 68% | 68% | 68% | 68% |
| **Probations (no pending charges):** | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| District Courts | 649 | 655 | 673 | 664 | 677 | 659 | 630 | 635 | 647 | 612 | 611 | 582 | 590 | 548 | 569 | 563 | 613 | 559 | 562 | 538 | 502 | 466 | 454 | 478 | 452 | 438 | 427 |
| County Courts | 56 | 53 | 53 | 56 | 59 | 56 | 58 | 59 | 52 | 47 | 46 | 45 | 41 | 43 | 50 | 48 | 43 | 39 | 34 | 31 | 31 | 31 | 33 | 37 | 46 | 47 | 46 |
| **Probations** | 705 | 708 | 726 | 720 | 736 | 715 | 688 | 694 | 699 | 659 | 657 | 627 | 631 | 591 | 619 | 611 | 656 | 598 | 601 | 572 | 533 | 497 | 487 | 515 | 498 | 485 | 473 |
| % of total in Custody | 8% | 8% | 8% | 8% | 8% | 8% | 8% | 8% | 8% | 7% | 7% | 7% | 7% | 6% | 7% | 6% | 7% | 6% | 6% | 6% | 6% | 6% | 6% | 6% | 6% | 6% | 5% |
| **Post-Adjudication:** | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| *Prisoners Serving County Time: Post-Adjudication* | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Sentenced in County Courts | 598 | 627 | 616 | 603 | 648 | 634 | 623 | 606 | 556 | 560 | 597 | 551 | 523 | 574 | 602 | 560 | 576 | 579 | 512 | 483 | 432 | 419 | 435 | 388 | 428 | 436 | 454 |
| Sentenced in District Courts - State Jail Felons 12.44A | 361 | 380 | 365 | 342 | 367 | 378 | 385 | 371 | 353 | 349 | 392 | 436 | 501 | 558 | 577 | 512 | 503 | 501 | 418 | 336 | 282 | 273 | 299 | 296 | 317 | 310 | 315 |
| Sentenced in District Courts - Other | 316 | 327 | 347 | 329 | 315 | 306 | 343 | 338 | 315 | 295 | 302 | 319 | 325 | 313 | 329 | 341 | 339 | 347 | 345 | 322 | 283 | 249 | 256 | 258 | 263 | 320 | 267 |
| Sentenced in JP Courts | 14 | 15 | 15 | 15 | 17 | 17 | 15 | 13 | 13 | 17 | 19 | 16 | 20 | 18 | 18 | 19 | 22 | 18 | 18 | 14 | 13 | 15 | 19 | 18 | 18 | 15 | 18 |
| **Prisoners Serving County Time: Post-Adjudication** | 1289 | 1349 | 1343 | 1289 | 1347 | 1335 | 1366 | 1328 | 1236 | 1221 | 1309 | 1325 | 1365 | 1465 | 1526 | 1432 | 1440 | 1449 | 1293 | 1155 | 1010 | 956 | 1009 | 960 | 1027 | 1081 | 1054 |
| % of total in Custody | 14% | 15% | 15% | 14% | 15% | 15% | 15% | 15% | 14% | 14% | 15% | 15% | 16% | 16% | 16% | 15% | 15% | 15% | 14% | 13% | 10% | 12% | 11% | 11% | 12% | 12% | 12% |
| *Prisoners awaiting Transport: Post-Ajudication* | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Sentenced to TDC | 435 | 462 | 447 | 439 | 438 | 435 | 418 | 379 | 384 | 370 | 409 | 410 | 440 | 469 | 496 | 507 | 563 | 635 | 616 | 623 | 623 | 520 | 581 | 543 | 535 | 526 | 500 |
| Sentenced to State Jail | 134 | 122 | 145 | 143 | 129 | 132 | 136 | 121 | 119 | 128 | 134 | 140 | 143 | 121 | 100 | 113 | 121 | 139 | 140 | 120 | 120 | 134 | 148 | 148 | 136 | 127 | 157 |
| Appeals | 169 | 168 | 158 | 149 | 154 | 136 | 136 | 121 | 123 | 118 | 132 | 132 | 134 | 142 | 144 | 133 | 139 | 142 | 141 | 141 | 141 | 130 | 135 | 140 | 141 | 156 | 151 |
| **Prisoners Awaiting Transport: Post Ajudication** | 738 | 752 | 750 | 740 | 721 | 716 | 690 | 621 | 626 | 616 | 666 | 682 | 718 | 732 | 732 | 753 | 823 | 893 | 898 | 884 | 884 | 784 | 864 | 808 | 812 | 809 | 808 |
| % of total in Custody | 8% | 8% | 8% | 8% | 8% | 8% | 8% | 8% | 7% | 7% | 7% | 8% | 8% | 8% | 8% | 8% | 9% | 9% | 10% | 10% | 10% | 9% | 10% | 9% | 9% | 9% | 9% |
| ***Others:*** | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| BOPP | 328 | 330 | 318 | 281 | 274 | 261 | 241 | 249 | 237 | 258 | 281 | 275 | 291 | 295 | 343 | 369 | 457 | 563 | 373 | 309 | 292 | 290 | 276 | 260 | 276 | 277 | 294 |
| Witnesses | 33 | 33 | 34 | 34 | 33 | 38 | 33 | 33 | 28 | 28 | 30 | 25 | 27 | 30 | 27 | 30 | 33 | 53 | 53 | 54 | 49 | 43 | 44 | 50 | 49 | 52 | 53 |
| Non-Harris County Prisoners | 52 | 51 | 56 | 46 | 55 | 55 | 63 | 50 | 50 | 41 | 62 | 60 | 54 | 60 | 60 | 30 | 33 | 56 | 56 | 47 | 42 | 54 | 54 | 55 | 56 | 52 | 56 |
| Not Guilty by Reason of Insanity (NGRI) | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| **Others** | 413 | 415 | 408 | 360 | 362 | 352 | 338 | 332 | 319 | 327 | 379 | 357 | 374 | 382 | 426 | 454 | 553 | 482 | 410 | 383 | 383 | 383 | 374 | 365 | 381 | 385 | 404 |
| % of total in Custody | 5% | 5% | 4% | 4% | 4% | 4% | 4% | 4% | 4% | 4% | 4% | 4% | 4% | 4% | 4% | 5% | 6% | 5% | 5% | 5% | 5% | 4% | 4% | 4% | 4% | 4% | 5% |
| **Received, Uncategorized in JIMS** | 35 | 47 | 40 | 51 | 62 | 58 | 68 | 62 | 52 | 57 | 77 | 75 | 49 | 36 | 65 | 85 | 95 | 133 | 101 | 60 | 60 | 69 | 98 | 104 | 89 | 80 | 76 |
| % of total in Custody | 0.4% | 0.5% | 0.4% | 0.6% | 0.7% | 0.6% | 0.8% | 0.7% | 0.6% | 0.6% | 0.8% | 0.8% | 0.5% | 0.4% | 0.9% | 0.9% | 1.0% | 1.4% | 1.1% | 0.7% | 0.7% | 0.8% | 1.1% | 1.2% | 1% | 1% | 1% |
| **Total in Harris County Sheriff's Custody** | 8915 | 9062 | 9128 | 8977 | 9033 | 9040 | 8889 | 8744 | 8633 | 8832 | 9060 | 8900 | 8944 | 9173 | 9344 | 9406 | 9404 | 9563 | 9341 | 8949 | 8660 | 8628 | 8683 | 8547 | 8727 | 8817 | 8,884 |
| [1] Average in Inmate Processing Center (IPC)(KCV Count) | 219 | 263 | 245 | 260 | 269 | 269 | 249 | 285 | 242 | 256 | 300 | 277 | 292 | 280 | 272 | 317 | 301 | 276 | 291 | 243 | 243 | 270 | 286 | 304 | 313 | 292 | 317 |
| **Total Housed by HCSO** | 8696 | 8799 | 8883 | 8728 | 8773 | 8771 | 8621 | 8496 | 8400 | 8576 | 8757 | 8612 | 8667 | 8881 | 9064 | 9134 | 9128 | 9262 | 9024 | 8658 | 8417 | 8358 | 8397 | 8243 | 8414 | 8525 | 8,565 |
| Total Outsourced | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| **Total Housed in Harris County Jail Facilities** | 8696 | 8799 | 8883 | 8728 | 8773 | 8771 | 8621 | 8496 | 8400 | 8576 | 8757 | 8612 | 8667 | 8881 | 9064 | 9134 | 9128 | 9262 | 9024 | 8658 | 8417 | 8358 | 8397 | 8243 | 8414 | 8525 | 8565 |
| Harris County Jail Capacity | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 |
| Total Awaiting Transfer to TDCJ-ID (Paper-Ready) | 283 | 322 | 289 | 287 | 304 | 317 | 318 | 285 | 242 | 265 | 297 | 291 | 297 | 328 | 398 | 432 | 497 | 654 | 634 | 627 | 627 | 516 | 579 | 535 | 448 | 527 | 490 |
| % of total in Custody | 3% | 4% | 3% | 3% | 3% | 4% | 4% | 4% | 3% | 3% | 3% | 3% | 3% | 3% | 4% | 4% | 5% | 7% | 7% | 7% | 7% | 6% | 7% | 6% | 5% | 6% | 6% |

1 IPC includes those in intake and receiving.

Prepared by the Office of Criminal Justice Coordination

08/05/2016

# Harris County - Jail Population
## July 2016 Report

### Daily Averages

| Date | 2014 | | | | | | 2015 | | | | | | | | | | | | 2016 | | | | | | | Jul-15 | Jul-16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | Jan-15 | Feb-15 | Mar-15 | Apr-15 | May-15 | Jun-15 | Jul-15 | Aug-15 | Sep-15 | Oct-15 | Nov-15 | Dec-15 | Jan-16 | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 | Jul-16 | % | # |
| **Pre-Trial Detainees (By Highest Charge):** | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| District Courts - Other than State Jail Felonies | 4,486 | 4,515 | 4,543 | 4,549 | 4,565 | 4,584 | 4,689 | 4,652 | 4,582 | 4,731 | 4,753 | 4,879 | 4,946 | 4,925 | 4,930 | 4,885 | 4,885 | 4,941 | 5,078 | 5,086 | 5,108 | 5,046 | 5,166 | 5,213 | 5,257 | | 311 |
| District Courts - State Jail Felonies | 1,042 | 1,022 | 1,057 | 1,059 | 1,087 | 1,055 | 1,112 | 1,187 | 1,286 | 1,377 | 1,410 | 1,492 | 1,485 | 1,425 | 1,329 | 1,233 | 1,181 | 1,153 | 1,094 | 1,142 | 1,134 | 1,365 | 1,426 | 1,396 | 1,361 | | (124) |
| County Courts | 473 | 458 | 460 | 452 | 452 | 412 | 438 | 418 | 422 | 483 | 453 | 461 | 505 | 497 | 512 | 503 | 482 | 493 | 498 | 513 | 545 | 546 | 513 | 508 | 486 | | (19) |
| Other Harris Co Court detainees (eg: JP, Family, Civil) | 55 | 57 | 64 | 64 | 54 | 47 | 45 | 52 | 52 | 45 | 52 | 51 | 53 | 56 | 59 | 55 | 55 | 49 | 54 | 53 | 54 | 60 | 49 | 46 | 41 | | (12) |
| **Pre-Trial Detainees** | 6056 | 6052 | 6109 | 6136 | 6158 | 6098 | 6284 | 6309 | 6342 | 6636 | 6668 | 6883 | 6989 | 6903 | 6827 | 6680 | 6603 | 6636 | 6718 | 6794 | 6841 | 7017 | 7168 | 7163 | 7145 | 2% | 156 |
| **% of total in Custody** | 69% | 70% | 70% | 70% | 71% | 72% | 74% | 72% | 73% | 75% | 74% | 75% | 75% | 76% | 76% | 75% | 76% | 77% | 78% | 78% | 77% | 76% | 76% | 75% | 76% | | |
| **Probationers (no pending charges):** | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| District Courts | 416 | 403 | 354 | 332 | 298 | 287 | 286 | 318 | 308 | 304 | 336 | 354 | 332 | 324 | 341 | 423 | 446 | 343 | 289 | 316 | 391 | 389 | 359 | 351 | 403 | | 71 |
| County Courts | 40 | 40 | 33 | 22 | 26 | 21 | 30 | 29 | 24 | 26 | 23 | 23 | 23 | 22 | 25 | 21 | 19 | 20 | 22 | 24 | 25 | 23 | 27 | 25 | 24 | | 1 |
| **Probationers** | 456 | 443 | 387 | 354 | 324 | 308 | 316 | 347 | 332 | 330 | 359 | 377 | 355 | 346 | 366 | 444 | 465 | 363 | 311 | 340 | 416 | 412 | 386 | 376 | 427 | 20% | 72 |
| **% of total in Custody** | 5% | 5% | 4% | 4% | 4% | 4% | 4% | 4% | 4% | 4% | 4% | 4% | 4% | 4% | 4% | 5% | 5% | 4% | 4% | 4% | 5% | 4% | 4% | 4% | 5% | | |
| **Post-Adjudication:** | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| *Prisoners Serving County Time: Post-Adjudication* | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Sentenced in County Courts | 454 | 430 | 415 | 442 | 431 | 363 | 332 | 382 | 363 | 375 | 361 | 352 | 348 | 315 | 336 | 341 | 303 | 294 | 297 | 319 | 339 | 320 | 337 | 309 | 293 | | (55) |
| Sentenced in District Courts - State Jail Felons 12.44A | 292 | 304 | 310 | 333 | 319 | 284 | 248 | 226 | 172 | 179 | 199 | 175 | 163 | 146 | 138 | 137 | 120 | 108 | 91 | 86 | 109 | 165 | 166 | 189 | 157 | | (6) |
| Sentenced in District Courts - Other | 273 | 279 | 278 | 289 | 278 | 249 | 236 | 231 | 234 | 221 | 222 | 231 | 239 | 236 | 242 | 250 | 250 | 235 | 231 | 251 | 272 | 224 | 237 | 245 | 240 | | 1 |
| Sentenced in JP Courts | 15 | 15 | 13 | 14 | 13 | 11 | 12 | 14 | 13 | 9 | 13 | 15 | 15 | 16 | 18 | 18 | 23 | 20 | 21 | 17 | 17 | 17 | 15 | 16 | 12 | | (4) |
| **Prisoners Serving County Time: Post-Adjudication** | 1034 | 1028 | 1016 | 1078 | 1041 | 907 | 828 | 853 | 782 | 784 | 795 | 773 | 766 | 715 | 734 | 751 | 693 | 654 | 640 | 673 | 739 | 726 | 755 | 759 | 702 | -8% | (64) |
| **% of total in Custody** | 12% | 12% | 12% | 12% | 12% | 11% | 11% | 10% | 9% | 9% | 9% | 8% | 8% | 8% | 8% | 8% | 8% | 7% | 7% | 8% | 8% | 8% | 8% | 8% | 7% | | |
| *Prisoners awaiting Transport: Post Ajudication* | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Sentenced to TDC | 470 | 444 | 479 | 510 | 501 | 488 | 420 | 453 | 455 | 422 | 494 | 461 | 496 | 457 | 427 | 420 | 401 | 346 | 289 | 365 | 384 | 430 | 437 | 526 | 472 | | (24) |
| Sentenced to State Jail | 151 | 126 | 169 | 135 | 127 | 117 | 123 | 150 | 111 | 115 | 106 | 118 | 132 | 118 | 116 | 124 | 108 | 109 | 101 | 112 | 103 | 122 | 110 | 143 | 129 | | (3) |
| Appeals | 147 | 138 | 141 | 151 | 147 | 146 | 146 | 141 | 145 | 145 | 149 | 140 | 139 | 131 | 111 | 88 | 90 | 97 | 82 | 92 | 99 | 94 | 94 | 88 | 83 | | (56) |
| **Prisoners Awaiting Transport: Post Adjudication** | 768 | 708 | 789 | 796 | 775 | 751 | 689 | 744 | 711 | 673 | 749 | 719 | 767 | 706 | 654 | 632 | 599 | 552 | 472 | 569 | 586 | 646 | 641 | 757 | 684 | -11% | (83) |
| **% of total in Custody** | 9% | 8% | 9% | 9% | 9% | 9% | 8% | 9% | 8% | 8% | 8% | 8% | 8% | 8% | 7% | 7% | 7% | 7% | 6% | 7% | 7% | 7% | 7% | 8% | 7% | | |
| *Others:* | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| BOPP | 286 | 263 | 280 | 264 | 236 | 183 | 196 | 251 | 265 | 205 | 199 | 250 | 271 | 265 | 297 | 305 | 261 | 274 | 282 | 278 | 264 | 265 | 327 | 340 | 311 | | 40 |
| Witnesses | 37 | 61 | 52 | 44 | 43 | 44 | 42 | 38 | 52 | 33 | 48 | 47 | 35 | 58 | 28 | 35 | 39 | 46 | 41 | 29 | 39 | 35 | 41 | 57 | 39 | | 4 |
| Non-Harris County Prisoners | 61 | 55 | 55 | 46 | 47 | 53 | 44 | 50 | 52 | 54 | 59 | 56 | 56 | 58 | 35 | 21 | 21 | 5 | 27 | 51 | 37 | 56 | 59 | 43 | 44 | | 5 |
| Not Guilty by Reason of Insanity (NGRI) | | | | | | | | | | | | | | | | | | | | | 3 | 7 | 6 | 5 | 5 | | 5 |
| **Others** | 384 | 379 | 387 | 354 | 326 | 280 | 282 | 339 | 349 | 292 | 306 | 356 | 362 | 357 | 360 | 361 | 321 | 325 | 350 | 358 | 340 | 356 | 427 | 440 | 399 | 10% | 37 |
| **% of total in Custody** | 4% | 4% | 4% | 4% | 4% | 3% | 3% | 4% | 4% | 3% | 3% | 4% | 4% | 4% | 4% | 4% | 4% | 4% | 4% | 4% | 4% | 4% | 5% | 5% | 4% | | |
| Received, Uncategorized in JIMS | 48 | 43 | 53 | 62 | 75 | 95 | 196 | 139 | 125 | 87 | 123 | 108 | 100 | 90 | 94 | 92 | 58 | 100 | 81 | 4 | 0 | 0 | 0 | 1E-04 | 4 | -96% | (96) |
| **% of total in Custody** | 1% | 0% | 1% | 1% | 1% | 1% | 2% | 2% | 1% | 1% | 1% | 1% | 1% | 1% | 1% | 1% | 1% | 1% | 1% | 0% | 0% | 0% | 0% | 0% | 0% | | |
| **Total in Harris County Sheriff's Custody** | 8,746 | 8,653 | 8,741 | 8,780 | 8,699 | 8,439 | 8,521 | 8,731 | 8,641 | 8,801 | 9,000 | 9,216 | 9,339 | 9,117 | 9,035 | 8,960 | 8,739 | 8,630 | 8,572 | 8,738 | 8,922 | 9,157 | 9,377 | 9,495 | 9,361 | 0% | 22 |
| [1] Average in Inmate Processing Center (IPC)/PCV Count) | 307 | 304 | 317 | 304 | 250 | 258 | 316 | 316 | 378 | 378 | 352 | 389 | 389 | 387 | 368 | 368 | 299 | 322 | 337 | 343 | 387 | 387 | 372 | 386 | 302 | -22% | (87) |
| **Total Housed by HCSO** | 8,439 | 8,349 | 8,437 | 8,476 | 8,449 | 8,181 | 8,205 | 8,352 | 8,283 | 8,423 | 8,648 | 8,824 | 8,950 | 8,730 | 8,638 | 8,592 | 8,440 | 8,308 | 8,235 | 8,490 | 8,579 | 8,770 | 9,005 | 9,109 | 9,059 | 1% | 109 |
| Total Outsourced | | | | | | | | | | | | | | | | | | | | | | | 217 | 154 | 230 | | |
| **Total Housed in Harris County Jail Facilities** | 8439 | 8349 | 8437 | 8476 | 8449 | 8181 | 8205 | 8352 | 8283 | 8423 | 8648 | 8817 | 8796 | 8711 | 8638 | 8592 | 8440 | 8308 | 8235 | 8490 | 8579 | 8770 | 8788 | 8877 | 8829 | | |
| Harris County Jail Capacity | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | 9434 | | |
| Total Awaiting Transfer to TDCJ-ID (Paper-Ready) | 469 | 431 | 467 | 506 | 506 | 486 | 418 | 446 | 474 | 394 | 487 | 465 | 515 | 466 | 424 | 417 | 423 | 340 | 252 | 308 | 362 | 370 | 411 | 424 | 424 | -18% | (91) |
| **% of total in Custody** | 5% | 5% | 5% | 6% | 6% | 6% | 5% | 5% | 5% | 4% | 5% | 5% | 6% | 5% | 4% | 4% | 5% | 4% | 3% | 4% | 4% | 4% | 4% | 5% | 5% | | |

[1] IPC includes those in intake and receiving.

Prepared by the Office of Criminal Justice Coordination

08/05/2016

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| MARANDA LYNN ODONNELL,- ) | |
| LOETHA MCGRUDER, ) | |
| ROBERT RYAN FORD ) | |
| On behalf of ~~herself~~themselves and all _____) | |
| others ) | |
| similarly situated, ———) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | Case No. 16-cv-01414 |
| HARRIS COUNTY, TEXAS, ) | (Consolidated Class Action) |
| ) | The Honorable Lee H. Rosenthal |
| SHERIFF RON HICKMAN, ) | U.S. District Judge |
| ) | ~~Expedited Hearing Requested~~ |
| ERIC STEWART HAGSTETTE, ) | |
| JOSEPH LICATA III, ) | |
| RONALD NICHOLAS, ) | |
| BLANCA ESTELA VILLAGOMEZ, ) | |
| JILL WALLACE, ) | |
| ) | |
| ————————————————) | |
| PAULA GOODHART, ) | |
| BILL HARMON, ) | |
| NATALIE C. FLEMING, ) | |
| JOHN CLINTON, ) | |
| MARGARET HARRIS, ) | |
| LARRY STANDLEY, ) | |
| PAM DERBYSHIRE, ) | |
| JAY KARAHAN, ) | |
| ANALIA WILKERSON, ) | |
| DAN SPJUT, ) | |
| DIANE BULL, ) | |
| ROBIN BROWN, ) | |
| DON SMYTH, ) | |
| MIKE FIELDS, ) | |
| JEAN HUGHES, ) | |
| LINDA GARCIA ) | |
| ) | |
| Defendants. ) | |
| ————————————————) | |

1

## FIRST AMENDED CLASS ACTION COMPLAINT

### Introduction

This case is about Harris County jailing some of its poorest people because they cannot afford to make a monetary payment.  Named Plaintiff Maranda Lynn ODonnell is currently being held in the Harris County jail because she cannot pay a $2,500 money bail after being arrested for Driving While License Invalid.  The Named Plaintiff's money bail was imposed pursuant to Harris County's predetermined money bail schedule and without any inquiry into or findings concerning her ability to pay.  Because she is impoverished and cannot afford the payment required by the County for her release, she will be kept in a Harris County jail cell.[1]

In Harris County, wealthier arrestees are released from custody almost immediately upon payment of money to the County.  Arrestees who are too poor to purchase their release remain in jail because of their poverty.  On any given night, over 500 people arrested for misdemeanors languish in the Harris County Jail because of a money bail that they cannot afford.  Between 2009 and 2015, 55 human beings died in the Harris County Jail awaiting trial after being unable to pay the amount of money demanded by the County for their release.

On behalf of the many other arrestees subjected to Harris County's unlawful and ongoing post-arrest wealth-based detention scheme, Plaintiff challengesPlaintiffs challenge in this action the use of secured money bail to detain only the most impoverished of misdemeanor arrestees.

---

[1] At the time of filing related case 16-cv-01436 (now administratively closed and consolidated with 16-cv-01414), Named Plaintiffs Loetha Shanta McGruder, a 22-year-old pregnant mother of two, and Robert Ryan Ford, 26 years old, were in jail because they could not pay a $5,000 money bail after each was arrested for a misdemeanor offense. Like Ms. ODonnell, their money bail amounts were imposed pursuant to Harris County's predetermined money bail schedule and without any inquiry into or findings concerning their ability to pay.  Because they are impoverished and cannot afford the payment required by the County for their release, they were kept in a Harris County jail cell and were in jail when their case, 16-cv-01436, was filed.

Harris County's wealth-based pretrial detention system violates the Equal Protection and Due Process Clauses of the United States Constitution.  It has no place in modern American law.

By and through ~~her~~their attorneys and on behalf of ~~herself~~themselves and all others similarly situated, ~~Plaintiff seeks~~Plaintiffs seek injunctive relief to enjoin the County's wealth-based post-arrest detention procedures and a declaration that Defendants cannot ~~detain any person pursuant to~~employ a system of wealth-based detention by imposing and enforcing secured ~~money bail~~financial conditions of pre-trial release without an inquiry into and findings concerning the ~~person's~~arrestee's present ability to pay.

### Nature of the Action[2]

1.      It is the policy and practice of ~~Harris County~~Defendants to refuse to release misdemeanor arrestees from custody unless they pay a monetary sum.  The amount of money required is determined by a generic offense-based bail schedule, and it is the policy and practice of Harris County officials to ~~detain arrestees in jail pursuant to~~impose the scheduled amount without considering the person's ability to pay.  ~~Plaintiff seeks~~, a practice that results in the systemic wealth-based detention of those arrestees who are too poor to pay their money bail. Plaintiffs seek declaratory and injunctive relief prohibiting Defendants' wealth-based post-arrest detention scheme.

### Jurisdiction and Venue

2.      This is a civil rights action arising under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, *et seq.*, and the Fourteenth Amendment to the United States Constitution.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

---

[2] ~~Plaintiff makes~~Plaintiffs make the allegations in this Complaint based on personal knowledge as to matters in which ~~she has~~they have had personal involvement and on information and belief as to all other matters.

3.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## Parties

4.      Maranda Lynn ODonnell is a 22-year-old mother of a 4-year-old daughter.  She represents herself as an individual and a Class of similarly situated people subjected to Defendants' wealth-based post-arrest detention scheme.

5.      Loetha Shanta McGruder is a 22-year-old woman who is the mother of a 4-year-old son and a 9-month-old son.  She is seven weeks pregnant.  She represents herself as an individual and a Class of similarly situated people subjected to Defendants' wealth-based post-arrest detention scheme.

6.      Robert Ryan Ford is a 26-year-old man.  He represents himself as an individual and a Class of similarly situated people subjected to Defendants' wealth-based post-arrest detention scheme.

7.      Defendant Harris County is a municipal corporation organized under the laws of the State of Texas.  The Harris County Sheriff's Department is a division of Harris County and operates the Harris County Jail and several other detention facilities.

8.      The Sheriff's Office is itself responsible for 27 percent of arrests within Harris County.  The Sheriff's Department also transports arrestees from field stations run by various other authorities with arresting power to the Harris County Jail, which houses all inmates to be held pending prosecution within the Harris County courts.   The Sheriff's Department detains inmatesarrestees at the Harris County Jail or one of theseand several other facilities after their arrest.  The officers and employees of the Sheriff's Department are authorized by County policy to accept money bail as determined by the schedule, release an arrestee, and set a time for an arrestee's appearance in court.

4

9.      After arrest, Sheriff's Department employees and agents bring arrestees held on money bail to a room inside the jail for probable cause hearings and bail setting.  Sheriff's Department employees and agents supervise, monitor, and give instructions to the arrestees during the hearing.  The Sheriff therefore has knowledge that secured financial conditions of release are imposed without any inquiry into or findings concerning a person's ability to pay the amount set.

10.      The Sheriff is aware of who is in the jail that the Sheriff runs and the basis for each inmate's detention, including whether any inmate is subject to any detainers or otherwise ineligible for pretrial release, and the amount of money bail any inmate is required to pay for immediate release.  The Sheriff therefore has knowledge that the imposition of secured money bail results in systemic, wealth-based detention, and that there are hundreds of people in his jail every night, charged only with misdemeanors, who would be released but for their inability to pay a money bail amount imposed pursuant to the bail schedule used by Harris County.

5.11.   The Sheriff's Department, by policy and practice, detains arrestees too poor to afford theirthe money bail amount imposed without inquiry into and findings concerning ability to pay and releases arrestees who pay their money bail.

6.12.   The Sheriff's Department is run by the Harris County Sheriff, Defendant Ron Hickman.  The Sheriff is the final policymaker for all law enforcement decisions in Harris County. He is sued in his individual and official capacitycapacities.

7.13.   Eric Stewart Hagstette, Joseph Licata III, Ronald Nicholas, Blanca Estela Villagomez, and Jill Wallace are all Harris County Criminal Law Hearing Officers.  They are County employees, who are appointed and are charged with making can be terminated by a two-thirds vote of a Harris County board composed of three judges of the District Courts of Harris

County, three judges of the County Criminal Courts at Law, and three justices of the peace.[3]  They make probable cause determinations and ~~setting~~set bail for arrestees pursuant to the County's money bail schedule.  The ~~hearing officers~~Hearing Officers do not conduct any inquiry into or make any findings concerning a person's ability to pay money bail. before imposing secured financial conditions of release, which results in the detention of only those individuals who are too poor to pay the money bail amount set.  They are sued in their individual and official capacities for declaratory relief only.[4]

14.     Paula Goodhart, Bill Harmon, Natalie C. Fleming, John Clinton, Margaret Harris, Larry Standley, Pam Derbyshire, Jay Karahan, Analia Wilkerson, Dan Spjut, Diane Bull, Robin Brown, Don Smyth, Mike Fields, Jean Hughes, and Linda Garcia are the 16 Harris County Criminal Courts at Law Judges.

15.     Sitting *en banc*, they promulgate Harris County's post-arrest procedures, including the generally applicable Harris County Bail Schedule applied systemically to all misdemeanor arrestees.

16.     Each judge knows that, pursuant to the bail schedule, the Sheriff's Department imposes and enforces secured financial conditions of release on every individual the Sheriff's Department arrests or accepts into custody, without an inquiry into or findings concerning an arrestee's present ability to pay the predetermined amount set.

---

[3] Tex. Code Ann. § 54.852.

[4] Because declaratory relief is unavailable on an emergency, preliminary basis, and because Plaintiffs are suffering ongoing irreparable harm, Plaintiffs are simultaneously seeking a preliminary injunction against the Hearing Officers, even though the final judgment Plaintiffs seek is a declaration that the Hearing Officers' conduct is unconstitutional.

17.     Each judge is aware of the Hearing Officers' systemic custom of setting secured financial conditions of release based on the bail schedule without any inquiry into or findings concerning an arrestee's present ability to pay the amount set.

18.     Each judge has knowledge that hundreds of individuals charged with misdemeanors are detained in Harris County every day solely because they are too poor to pay the money bail amounts imposed pursuant to the predetermined bail schedule that they promulgated.  Each judge is further aware that Hearing Officers refuse to consider ability to pay during the initial magistration hearings, which are recorded on video and audio and kept by the County and the clerk's office.

19.     Each judge provides blanket generic instructions to the Hearing Officers about how to set bail and when to approve release on personal bonds for individuals assigned to that judge's court.  Hearing Officers are required to follow each judge's instructions about whether and when to release arrestees without secured financial conditions.  Each judge has acquiesced in the Hearing Officers' open and notorious custom of failing and refusing to consider ability to pay.

20.     The County Courts at Law Judges are sued in their individual and official capacities for injunctive and declaratory relief.

**Factual Background**

**A.     The Named ~~Plaintiff~~Plaintiffs Will Be Held in Jail Because ~~She Is~~They Are Unable To Pay the Money Bail Demanded for ~~Her~~Their Release**

~~8.~~21.     Maranda Lynn ODonnell is a 22-year-old woman.

~~9.~~22.     Ms. ODonnell was arrested on May 18, 2016 and taken into the custody of Harris County for allegedly driving while her license was invalid.  She was informed that, because of the Harris County bail schedule, she would be released immediately, but only if she paid a money bail

7

of $2,500.  She was told that she will be detained by Harris County if she does not pay.  *See* Exhibit 1, Declaration of Maranda Lynn ODonnell.

~~10.~~23.  Ms. ODonnell appeared by video from the jail at a probable cause hearing, and a ~~hearing officer~~Hearing Officer found probable cause for her arrest.  She was told by Harris County Sheriff's Deputies not to speak at the hearing.   The hearing lasted ~~approximately~~less than 60 seconds and, pursuant to the policies and practices described in this Complaint, no inquiry was made into her present ability to pay.  The predetermined money bail amount required by the Harris County bail schedule was confirmed to be $2,500.

~~11.~~24.  Ms. ODonnell is the mother of a 4-year-old child.  She and her child struggle to meet the basic necessities of life.  She receives benefits from the federal government's Women, Infants, and Children (WIC) program to help meet the nutritional needs of her daughter.  Because she cannot afford shelter, she stays with a friend.  She recently obtained a job at a restaurant within the past few weeks, but she is worried that her current jailing will cause her to lose her job.

25.     Loetha Shanta McGruder is a 22-year-old woman.

26.     Ms. McGruder was arrested on May 19, 2016, for a misdemeanor offense and taken into the custody of Harris County.  She was informed that she would be released immediately, but only if she paid a money bail of $5,000.  She was told that she will be detained by Harris County if she does not pay.  *See* Exhibit 2, Declaration of Loetha Shanta McGruder.

27.     Ms. McGruder appeared by video from the jail at a probable cause hearing, and a Hearing Officer found probable cause for her arrest.  The hearing last one minute and 20 seconds, and pursuant to the policies and practices described in this Complaint, no inquiry was made into her ability to pay.  The predetermined money bail amount required by the Harris County bail schedule was confirmed to be $5,000.

28.     Ms. McGruder is the mother of two young children.  She and her children struggle to meet the basic necessities of life.  She receives benefits from the federal government's social security program to help meet the needs of her older son, who has Downs Syndrome and other medical needs.  She also supports her children using child support payments.  She is not currently working, and lives with her boyfriend.  She helps with household expenses when she has a job and is able.

29.     Robert Ryan Ford is a 26-year-old man.

30.     He was arrested on May 18, 2016, for a misdemeanor offense and taken into the custody of Harris County. *See* Exhibit 3, Declaration of Robert Ryan Ford.

31.     Mr. Ford appeared by video from the jail at a probable cause hearing, and a Hearing Officer found probable cause for his arrest.  The hearing lasted 60 seconds, and pursuant to the policies and practices described in this Complaint, no inquiry was made into his ability to pay.  The predetermined money bail amount required by the Harris County bail schedule was confirmed to be $5,000.

32.     Mr. Ford struggles to meet the basic necessities of life.  He is not working and lives with his girlfriend's parents.  He helps with household responsibilities to compensate her family for giving him a place to live.

**B.     Defendants' Wealth-Based Detention System Detains Arrestees Who Cannot Pay Their Money Bail Amount While Releasing Those Who Can Pay**

**i.     Arrest and the Initial Money Bail-Setting Process**

~~12.~~33.  Harris County uses a predetermined money bail schedule, promulgated through administrative order by the Harris County Criminal ~~Court~~Courts at Law Judges, to determine money bail for everyone who is arrested for a Class A or B misdemeanor in Harris County.  ~~Ex. 2.~~*See* Exhibit 4, Harris County Bail Schedule.  The bail schedule is the exclusive means of setting

bail "unless otherwise directed by the Judges of the Harris County Criminal Courts at Law."  *Id.*

("The initial bail amount shall be determined by application of the bail schedule.").[5]

34.     Harris County itself made 27.9 percent of misdemeanor arrests within the County

in 2015.  There are roughly 100 additional agencies within Harris County that have the authority

to make arrests.  For example, the City of Houston Police Department made 45.9 percent of arrests

in 2015.[6]

35.     When a person is arrested within Harris County, she will be taken to a "field station"

run by the arresting authority.  If she is arrested by Harris County, she will be taken either to a

field station or directly to the jail.  These field stations vary in size and their capacity to hold and

process arrestees.  Some include holding cells.  In others, arrestees are made to sit shackled to a

bench while initial post-arrest procedures are conducted.

36.     Once at a field station, if the person was arrested without a warrant, the arresting

officer ~~calls~~will determine whether the Harris County District Attorney's Office wishes to pursue

the charge by calling a hotline that is staffed 24 hours a day, 7 days a week by Harris County's

assistant district attorneys.  The arresting officer describes the allegations to the assistant district

attorney on duty, who makes a charging decision over the phone.

37.     If the assistant district attorney on hotline duty does not wish to pursue charges, she

tells the officer to release the individual.

~~13.~~38. If the district attorney decides to pursue the charges, she instructs the arresting

officer to impose money bail ~~is imposed~~ pursuant to the bail schedule.  *See* Ex. ~~14~~4 ("The district

---

[5] Texas law gives Harris County the authority to cite and release a person being charged with certain misdemeanor offenses. Tex. C.C.P. Art. 14.06(b)–(d). However, County officials have decided instead as a matter of policy to rely on the Harris County bail schedule for all individuals charged with any misdemeanor.  As a matter of policy, Harris County has rejected the cite-and-release option.

[6] Harris County Pretrial Services, 2015 Annual Report (2015) at 8, available at https://pretrial.harriscountytx.gov/Pages/Annual-Reports.aspx.

attorney shall affix an initial bail amount at the time a complaint is filed in a county criminal court at law."). At no point does any person perform any inquiry into the arrestee's ability to pay the money bail amount written on the schedule.

39. ~~If~~From the ~~assistant district attorney does not wish to pursue charges, she tells the officer to~~ moment a secured bail amount is imposed, all misdemeanor arrestees are eligible for release if they can pay the money bail amount listed in the ~~individual. If~~predetermined schedule, unless they are subject to certain holds (e.g., immigration or probation).

40. The ADA setting bail, the ~~district attorney decides to pursue charges~~agencies processing individuals for release from field stations, and the Harris County Sheriff's Department all have access to information about whether any given arrestee ~~can pay the bail~~ is subject to any of a variety of non-monetary holds. These entities therefore know whether a financial condition of release is the only reason a person is being detained.

41. Arrestees free from other non-monetary holds can post bail themselves, make a phone call to ask a friend or family member to post bail on their behalf, or contact a bonding agent to assist in posting bail. A person who can afford to pay will be released from the field station, and will never be transported to the Harris County Jail.

~~14.~~42. The imposition of money bail is the moment of differential treatment: a person with financial resources will be released almost immediately~~, the arrestee is released without ever being booked into the jail. If the district attorney decides to pursue charges~~ after bail is imposed, but Defendants will continue to require the ~~arrestee~~detention of a person who cannot ~~pay the money bail, the County will book the arrestee into the jail~~afford to pay her bail. This policy and practice results in systemic and automatic wealth-based detention in Harris County.

15.43.  Individuals who are arrested pursuant to warrants are also subjected to the money

bail schedule.  In these cases, the district attorney again makes a charging decision on the basis of

allegations by a police officer or another complainant and imposes a money bail amount according

to the bail schedule.  The money bail amount is written on the warrant.  A judicial officerA Hearing

Officer or County Court at Law Judge makes a finding of probable cause based on the allegations

in the warrant and then signs the warrant.  As a matter of policy, the judicial officerHearing Officer

or Judge imposes the monetary bail required by the schedule.

16.44.  WhenWhether a person is arrested for a misdemeanor, pursuant to a warrant or

pursuant to a warrantless arrest, that person can pay the secured money bail amount

determinedpredetermined by the schedule and be released immediately, from the field station,[7]

prior to formal booking.[8]  Those who know about active warrants for their arrest can avoid even

---

[7] Individuals arrested by Harris County officers are generally taken directly to the Harris County Jail.  However, as noted, Harris County itself is only one of roughly 100 agencies with arresting authority in the County.

[8] The vast majority of arrestees use a bail bond agent to secure their release from jail.  Typically, if accepted by a for-profit bail agent, an arrestee will have to pay the for-profit agent a non-refundable fee of 10 percent of the value of the bond to be released, though the industry standard for low money bail amounts in Harris County exceeds 10 percent.  In 2012, the for-profit bail bond industry in Harris County collected at least $34.4 million dollars in fees.  *See* Gerald R. Wheeler & Gerald Fry, Project Orange Jumpsuit Report #2, *Harris County's Two-Tier Justice System: Longitudinal Study of Effects of Harris County Felony and Misdemeanor Defendants' Legal & Extralegal Attributes on Pretrial Status and Case Outcome* (Apr. 23, 2014) at 4, available at http://www.pretrial.org/download/research/Harris%20County's%20Two-tier%20Justice%20System%20(Project%20Orange%20Jumpsuit)%20-%20Wheeler%20and%20Fry%202014.pdf [Wheeler & Fry, Report #2]; Michael Barajas, *Will Lawmakers Reform the System That Keeps Poor, Legally Innocent People in Lockup?* (Sept. 25, 2015), available at http://www.houstonpress.com/news/will-lawmakers-reform-the-system-that-keeps-poor-legally-innocent-people-in-lockup-7788583 (quoting bondsman saying that "being poor raises a red flag").

being arrested if they pay a "non-arrest" bond, *see infra* ¶ 123 & n.45.[9]  If the individual is unable to pay, she will be transported to and booked into the jail.[10]

45.     The time it takes for an arrestee to be transported to the Harris County Jail varies depending on a variety of factors, including where the person was arrested.

46.     Harris County is a large county, and individuals arrested within its borders can be taken initially to field stations as geographically close to the Harris County Jail as the Houston Police Stations located a little over a mile from the jail, or as far away as, for example, the City of Lakeview, which is more than 30 miles away.

47.     Recently, many people arrested for misdemeanors have been held on money bail imposed pursuant to the predetermined bail schedule for as long as two or three days or more before being transferred to the Harris County Jail for a videolink probable cause hearing.[11]

---

[9] The vast majority of arrestees use a bail bond agent to secure their release from jail.  Typically, if accepted by a for-profit bail agent, an arrestee will have to pay the for-profit agent a non-refundable fee of 10 percent of the value of the bond to be released, though the industry standard for low money bail amounts in Harris County exceeds 10 percent.  In 2012, the for-profit bail bond industry in Harris County collected at least $34.4 million dollars in fees.  *See* Gerald R. Wheeler & Gerald Fry, Project Orange Jumpsuit Report #2, *Harris County's Two-Tier Justice System: Longitudinal Study of Effects of Harris County Felony and Misdemeanor Defendants' Legal & Extralegal Attributes on Pretrial Status and Case Outcome* (Apr. 23, 2014) at 4, available at http://www.pretrial.org/download/research/Harris%20County's%20Two-tier%20Justice%20System%20(Project%20Orange%20Jumpsuit)%20-%20Wheeler%20and%20Fry%202014.pdf [Wheeler & Fry, Report #2]; Michael Barajas, *Will Lawmakers Reform the System That Keeps Poor, Legally Innocent People in Lockup?* (Sept. 25, 2015), available at  http://www.houstonpress.com/news/will-lawmakers-reform-the-system-that-keeps-poor-legally-innocent-people-in-lockup-7788583 (quoting a bondsman saying that "being poor raises a red flag").

[10]  Wheeler & Fry, Report #2, *supra* note 38, at 1.

[11]  For example, according to the case records on the Harris County District Clerk's website and the Houston Police Department's website, as of about 7:30 a.m. EST on August 30, 2016, the following individuals were among those individuals being detained on money bail and awaiting transfer to the jail for a probable cause hearing for at least two or three days after arrest: Julio Ruiz, arrested on August 28 for possession of marijuana under two ounces and held on a $500 bail; Blanchard B. Stewart, arrested on August 25 for possession of marijuana under two ounces and held on a $5,000 bail; Michael Ray Mata, arrested on August 28 for interfering with the duties of a public servant and held on a $4,500 bail; and Oscar Balarbo, arrested on August 28 for trespass and held on a $5,000 bail.  According to Harris County's website, these individuals had no non-monetary holds and were in custody solely because they had not paid their money bail.  None had seen a Hearing Officer.

48.     Sometime after arrest, an arrestee's case documents become publicly available on the District Court Clerk's website.  Once the arrestee is in Harris County custody, the arrestee's online case records will indicate that fact.  The arrestee's specific location will be listed as "in processing" at 1201 Commerce Street.

49.     While the individual is in processing, she is completely unavailable for an attorney (or other) visit and cannot be contacted.  Jail officials state that individuals who are in processing are actually located in the basement of one of four jail buildings, and the only way to find a specific person is for a guard to walk through the cell blocks and call the person's name.

50.     However, jail officials also state that if a person who is in processing is able to pay the scheduled money bail, she will be found and released.  Thus, during this period of time, poor arrestees are held incommunicado, but an individual who has money can purchase her release from jail.

51.     Sometime after a person arrives at the Jail — and usually before she is assigned to a housing unit — she will be taken by Sheriff's Department employees to a room in the jail with several dozen other new arrestees to appear before a Hearing Officer, who will determine probable cause.  This appearance takes place by videolink. It usually takes between 8 and 24 hours for a person arrested in Harris County to be given a probable cause hearing, but hundreds of people every month must wait several days as a matter of practice.

17.52.  These policies have consistently, for years, resulted in the needless and devastating jailing of impoverished people accused of misdemeanor offenses.  In 2012, 81 percent of misdemeanor arrestees were booked into the jail because they were unable to immediately pay for

their release.[12]   Other arrestees with financial means were able to pay their predetermined money bail and avoid the booking process altogether.   ~~In 2014, 40 percent of misdemeanor arrestees were still sitting in jail cells at the time their case was resolved.~~

53.      In 2014 and 2015, about 40 percent of misdemeanor arrestees were still sitting in jail cells at the time their misdemeanor case concluded because of their inability to afford the secured financial condition set for their release.[13]

### ii.   Probable Cause Hearings and Approval of Bail According to the Bail Schedule

~~18.~~54.   The Harris County Sheriff's Department, through its jail personnel, assembles groups of roughly 20 to 45 people, many of them charged with minor misdemeanors, throughout the day, every day.[14]

55.      Sheriff's Department employees and agents routinely tell arrestees not to say anything during these hearings.

~~19.~~56.   Generally within 24 hours of arrest, these groups of recent arrestees, dressed in orange jumpsuits or street clothes and located inside the Harris County Jail, appear via videolink before one of the five Defendant Harris County ~~hearing officers.~~Hearing Officers.   The ~~hearing officer~~Hearing Officer determines probable cause for the arrest and reviews the bail amount previously imposed to ensure that it conforms to the bail schedule and the systemic general policy

---

[12] Gerald R. Wheeler & Gerald Fry, *Project Orange Jumpsuit: The Misdemeanor Report #1* (Jan. 22, 2016), available at http://themisresearch.org/files/MISD_2016_REPORT.pdf [Wheeler & Fry, Report #1].

[13]   Harris County Pretrial Services, 2014 Annual Report (2014) at 8, available at http://www.harriscountytx.gov/CmpDocuments/59/Annual%20Reports/2014%20Annual%20Report.pdf,   (showing in Table B.1 that roughly 60 percent of misdemeanor arrestees post money bail); Pretrial Services 2015 Annual Report, *supra* note. 6 at 8.

[14] In 2014, an average of 144 people were admitted to the jail every day on misdemeanor charges.   *See* ~~Harris County Pretrial Services~~, 2014 Annual Report ~~(2014)~~, *supra* note 12 at 3~~, available at http://www.harriscountytx.gov/CmpDocuments/59/Annual%20Reports/2014%20Annual%20Report.pdf~~ (stating that 52,506 people whose most serious charge was a misdemeanor were admitted to the jail in 2013).

instructions from Harris County ~~Court~~Criminal Courts at Law Judges~~.~~ about how to administer the predetermined schedule.  Throughout the hearing, the arrestees remain in the Harris County jail, supervised by Sheriff's Department employees, while the ~~hearing officer~~Hearing Officer and a prosecutor are in a courtroom in the Harris County Courthouse.

~~20.~~57.  These hearings are referred to locally as "magistrations," "Article 15.17 hearings," or "probable cause hearings."

58.    The County strives to hold these hearings within 24 hours of arrest for people charged with misdemeanors.  However, arrestees often are not transported to the ~~length of~~Jail in time ~~between arrest~~to meet that deadline, and ~~probable cause~~, even when they are, the Sheriff sometimes fails to ensure that all inmates in his custody receive a hearing ~~depends on how long the Sheriff's booking process takes and the number of arrestees.~~within 24 hours.   Hearing ~~officers~~Officers represent ~~that, on occasion,~~, and the County's online case records show, that the hearings do not always take place within 24 hours of arrest.[15]  At any point in the booking process, ~~the~~an arrestee can pay his or her predetermined money bail and be released.

~~21.~~59.  If a person pays, a probable cause determination in her case will be made at a subsequent court appearance.

~~22.~~60.  An assistant district attorney participates in the probable cause hearings by arguing for the ~~hearing officer~~Hearing Officer to make a finding of probable cause and sometimes asking the ~~hearing officer~~Hearing Officer to impose bail in an amount higher than the amount on the schedule or on the warrant.  One prosecutor stated the policy recently at a probable cause hearing: pursuant to Harris County's bail schedule procedure, if an arrestee "can't pay, they sit in jail."

---

[15] For example, Named Plaintiff Robert Ryan Ford was arrested at 8:17 p.m. on May 18, 2016, but did not have a probable cause hearing until May 20 at 4:17 a.m.  *See* Harris County Criminal Courts at Law Case Records Online, available at http://www.hcdistrictclerk.com/eDocs/Public/Search.aspx.

~~23.~~61.  Harris County does not provide defense attorneys at this hearing for those who are unable to afford to hire an attorney.

~~24.~~62.  Almost one-third of Harris County arrestees lack a high school education and one in five have serious mental health problems.[16]

~~25.~~63.  The prosecutor and ~~hearing officers~~Hearing Officers sometimes engage in ex parte conversations before the videolink is turned on.  ~~For~~To take one representative example~~.~~: during one docket in March, outside the arrestees' hearing, the prosecutor and the ~~hearing officer~~Hearing Officer commented on the fact that one of the arrestees on the docket had been arrested multiple times in a two-week period for trespassing at the same place.  The ~~hearing officer~~Hearing Officer and the prosecutor agreed privately that the individual, who was homeless, would not be released without a money bail.  The ~~hearing officer~~Hearing Officer imposed a $5,000 money bail.  After the hearing, the ~~hearing officer~~Hearing Officer said, "He's a pest to society."  Unable to pay the money bail, the man appeared several days later at his first court date and pled guilty.

~~26.~~64.  In no case is a money bail determined with consideration for an arrestee's ability to pay~~.~~, and in no case does a Hearing Officer make an inquiry into or findings concerning a person's present ability to pay.

---

[16] Pretrial Services 2014 Annual Report, *supra* note ~~6,~~12 at 2. Harris County received $150,000 in May 2015 from the MacArthur Foundation to create a proposal that would lead to a more just and effective legal system.  *See* Press Release, *MacArthur Announces 20 Jurisdictions to Receive Funding to Reduce Jail Use* (May 26, 2015), available at https://www.macfound.org/press/press-releases/macarthur-announces-20-jurisdictions-receive-funding-reduce-jail-use/.  Harris County subsequently convened a Criminal Justice Coordinating Council, which investigated ways to reduce incarceration.  Among the most important reforms that participants discussed was to provide defense attorneys at the probable cause hearings. Early in January 2016, the Coordinating Counsel submitted its grant proposal to the MacArthur Foundation, seeking $4 million over two years to put its plans into effect.  The final document included a proposal for counsel only for individuals who are mentally ill.  Meagan Flynn, *Bail Hearings: Where Prosecutors and Magistrates Ensure Defenseless People Stay In Jail* (Jan. 11, 2016), available at http://www.houstonpress.com/news/bail-hearings-where-prosecutors-and-magistrates-ensure-defenseless-people-stay-in-jail-8058308.  On April 13, 2016, Harris County was awarded a $2 million MacArthur grant to reform its criminal justice system.  *See Harris County receives $2 million grant to reform criminal justice system* (Apr. 13, 2106), available at http://www.click2houston.com/news/watch-live-harris-county-receives-2-million-grant-to-reform-criminal-justice-system.

65.    When the videolink is turned on, arrestees appear on a television screen, sitting ~~in rows of chairs~~on benches in a room at the jail.

~~27.~~66.  The ~~hearing officer~~Hearing Officer calls an individual's name and reads the charge. That individual gets up and stands in the middle of a red square on the floor of the room in the jail. An assistant district attorney then reads from the complaint.  The ~~hearing officer~~Hearing Officer decides whether there is probable cause, finding probable cause in almost every case, and, almost always, sets secured money bail according to the predetermined schedule.  Sometimes the ~~hearing officer~~Hearing Officer increases the money bail from ~~that applied earlier at~~ the ~~Harris County jail, where it was imposed pursuant to~~amount required by the bail schedule.

~~28.~~67.  The process of setting bail and finding probable cause is a rote exercise, and the hearings last approximately one minute as a matter of routine.

~~29.~~68.  As a matter of policy and practice, ~~hearing officers~~Hearing Officers make no attempt to determine an arrestee's financial situation, and they make no inquiry into or findings concerning an arrestee's ability to pay the money bail amount that they impose.

~~30.~~69.  In addition to making no affirmative inquiry into or findings concerning ability to pay, ~~hearing officers~~Hearing Officers affirmatively refuse to hear any argument that an arrestee raises about her ability to pay.  If an arrestee tells the ~~hearing officer~~Hearing Officer that she cannot pay the money bail, the ~~hearing officer~~Hearing Officer, as a matter of policy and practice, tells the arrestee that considering a reduction of money bail from the schedule is not the purpose of that hearing and that the arrestee should have her attorney raise the issue with the County Court at Law Judge handling her case at her first court date after an attorney is assigned.  As one ~~hearing officer~~Hearing Officer stated recently, probable cause hearings are "not the forum" for discussing a person's ability to pay money bail or raising any related issues, and ~~hearing officers~~

~~believe~~Hearing Officers state that such questions must be addressed in an adversarial setting after appointment of counsel.

~~31.~~70.  On one recent occasion that is typical of standard policy, after a ~~hearing officer~~Hearing Officer made a bail decision according to the money bail schedule, the arrestee asked the ~~hearing officer~~Hearing Officer, "Can I say something?"  The ~~hearing officer~~Hearing Officer responded, "You can talk to me all you want, but it's not going to change the outcome. I'm setting it according to the schedule.  Talk to your lawyer about it in the morning."

~~32.~~71.  After completing a docket of probable cause hearings in March, another ~~hearing officer~~Hearing Officer was asked by an observer whether the officer is allowed to consider an arrestee's ability to pay when setting the money bail.  The ~~hearing officer~~Hearing Officer responded, "What can I do about that?  They have a bail schedule.  I can't do anything about that."

~~33.~~72.  Pursuant to policy and practice, it is not possible for arrestees to challenge the constitutionality of their money bail before the ~~hearing officer.~~ Hearing ~~officers determining the question of probable cause~~Officer.   Hearing Officers refuse to consider deviation from the bail schedule based on ~~indigence~~ability to pay and refuse to hear evidence or argument concerning ability to pay.

~~34.~~73.  In almost all cases, the ~~hearing officer~~Hearing Officer affirms the money bail previously set pursuant to the bail schedule.[17]  If, however, the district attorney or arresting officer erred in setting the money bail (i.e., the monetary amount did not conform to the bail schedule), the ~~hearing officer~~Hearing Officer will alter the money bail — by raising or lowering the monetary amount — so that it meets the schedule.

---

[17] Flynn, *supra* note. ~~7~~15.

19

35.74.  Sometimes district attorneys will argue for a money bail that exceeds what the schedule requires.  One district attorney recently gave the following example: If someone is charged with unauthorized use of a vehicle, but is also being investigated for armed robbery of the same vehicle, the district attorney will ask the judge to impose a money bail commensurate with the more severe charge.  The district attorney stated that she would ask for the higher bail *to ensure that the person will be detained* because a person suspected of "something like armed robbery" should not be released on a low money bail like $2,000.

75.     Hearing Officers sometimes raise bail punitively and arbitrarily, doubling it if, for example, as happened recently, an arrestee responds to a question by stating, "Yeah," instead of "Yes."

36.76.  If an individual doesis not appear atbrought to the probable cause hearing due to medical reasons, the hearing officerHearing Officer will make a finding of probable cause and set money bail in that person's absence according to the predetermined schedule.

37.77.  In Harris County, money bail is imposed based solely on the alleged offense and the person's criminal history and without reference to a person's ability to pay, resulting in the detention of arrestees based on their poverty.

### iii.  The Use of Personal Bonds

38.78.  Hearing officersOfficers sometimes recommend arrestees for release on "personal bonds," which meansDefendants use to mean release without any secured financial conditions.

39.79.  Recommendations for release on personal bonds are based solely on the person's criminal charge and criminal history — they have nothing to do as a matter of policy and practice with indigence or a person's ability to pay a money bail.  The vast majority of arrestees, due to the

charge against them or their criminal history, are deemed "ineligible" for personal bonds as a matter of policy.

80.    Only about 8 percent of misdemeanor arrestees were recommended for actually released on personal bonds in 2014.[18]  According to County policies, 92% of misdemeanor arrestees were deemed ineligible for such release.  and 2015.[19]

40.81.  Personal bonds are not based on any inquiry into ability to pay, and hearing officersHearing Officers refuse to conduct such inquiries.

41.82.  Even when individuals are recommended for personal bonds, they are not released immediately, and they may not be released at all.  Pretrial Services must first "verify" the person's references.  — for example, because Defendants' policy is to require references to confirm an address, a person who is homeless cannot even "qualify" for release without payment of the scheduled amount of bail, see infra.  Sometimes, references cannot be verified for days or a week. Sometimes they cannot be verified at all.  In those cases, the person will not be released on a personal bond and will be detained unless she can pay the money bail.

42.83.  At any point in the verification process, the arrestee can pay the money set bypursuant to the schedule and be released immediately.

43.84.  Recommendations for personal bonds in misdemeanor cases are further constrained by the instructions of the County and District CourtCourts at Law Judges, who provide strict directives to the hearing officersHearing Officers about the money bail-setting process.

---

[18] Pretrial Services 2014 Report, supra note 6, at 9.
[19] Pretrial Services 2014 Annual Report, supra note 12 at 9; Pretrial Services 2015 Annual Report, supra note 6 at 9, available at https://pretrial.harriscountytx.gov/Library/2015%20Annual%20Report.pdf.

44.85.  For example, ~~hearing officers~~Hearing Officers are instructed that they may never recommend homeless individuals for ~~personal bonds.~~release without secured financial conditions. Some judges have told ~~hearing officers~~Hearing Officers never to issue ~~personal bonds~~non-financial conditions for any defendant who is assigned to their courtroom at all,[20] or for individuals who have previously been given personal bonds in other cases.  Other judges have told ~~hearing officers~~Hearing Officers to consider ~~personal bonds~~non-secured financial conditions only for "students."[21]   Hearing Officers often deem an arrestee "not qualified" for a personal bond if she just moved to the Houston area.

45.86.  In all cases, personal bonds are not granted on the basis of ~~inability~~an inquiry into ability to pay.

46.87.  One ~~hearing officer~~Hearing Officer, pursuant to policy, recently told a group of arrestees: "Don't ask me for a personal bond."  He informed them that he would consider release on a personal bond if he was authorized to consider it, and "if I'm going to give you one, I will," warning them again, "Don't ask."

88.     At another hearing during which a Hearing Officer set an arrestee's bond at $1,000 for driving on a suspended license, the arrestee pleaded with the officer for release without requiring secured bail, stating that he had "no money in the world" and needed to attend a custody hearing so he could keep his family together.  The Hearing Officer refused to consider the person's ability to pay or permit him to be released with non-financial conditions of release.

---

[20] James Pinkerton and Laura Caruba, *Tough bail policies punish the poor and the sick, critics say* (Dec. 26, 2015), available at http://www.houstonchronicle.com/news/houston-texas/houston/article/Tough-bail-policies-punish-the-poor-and-the-sick-6721984.php?t=373b57d418&cmpid=email-premium.

[21] *Id.*

47.89.  An arrestee's indigence or ability to pay is never a factor in determining whether to recommend or approve ~~a personal bond, and arrestees are not permitted to raise that issue~~non-financial conditions of release.  Hearing Officers routinely prohibit arrestees from sharing that information, and always refuse to consider it when setting money bail or granting a personal bond, even when it is brought to their attention.

### iv.  Assignment to a Housing Unit

90.    Any arrestee who was not assigned to a housing unit before her probable cause hearing will remain inaccessible to attorneys and everyone else outside the jail after the hearing until the jail assigns the individual to a housing unit.

91.    It is only after being assigned to a housing unit that an arrestee can be contacted by anyone outside the jail and will be scheduled for a hearing in a County Court at Law.

### ~~iv.~~v.    A sheriff's deputy~~First Appearances~~

48.    ~~If, after the probable cause hearing, an arrestee is still unable to purchase her release from jail, she will be taken to the County Court, usually within 24 to 48 hours of the probable cause hearing.  However, arrestees who have their probable cause hearings on Friday will not see a County Court Judge until the following Monday at the earliest. Individuals who attend probable cause hearings on Friday afternoon or evening or over the weekend are unlikely to see a Judge until the following Tuesday.~~

49.92.  ~~Some arrestees cannot be contacted, even by attorneys, between magistration and first appearance.  A sheriff's deputy at the jail building~~ at 1201 Commerce Street was recently asked to produce for attorney visits several individuals who had ~~had~~attended their probable cause hearings within the previous 24 hours.  After looking for the men for an hour, the deputy stated that the men could not be seen, even by an attorney, until after they had been assigned to a housing

unit in the jail., which had not yet happened.  He said that the individuals were all in the basements of one of four buildings, but he did not know which one.  The deputy provided a list of the four facilities in which the arrestees might be located (1200 Baker Street Jail; 701 North San Jacinto; 711 North San Jacinto Street; 1307 Baker Street).

50.93.  Shortly after that conversation, a sheriff's deputy at the jail building at 1200 Baker Street confirmed that the same men could not be contacted until after they had been assigned to a housing unit.

51.94.  The deputies stated that it would take 24 to 36 hours for that to happen, during which time no one would be able to reach these men, including any attorney.  The sheriff's deputy said that they could not be found for the purpose of an attorney visit, but *they would be found and released if money bond was posted*.

95.     In total, it takes a minimum of 24 hours, and frequently 3 or 4 days, for an arrested person to be fully booked into the jail, assigned to a housing unit, and made available for an attorney or family visit.  It can be another several days before a person appears in a County Court at Law and is assigned an attorney.  At any point during this period of time, a person can pay her money bail and be released.

### v.vi.   First Appearances

96.     If, after the probable cause hearing, an arrestee is still unable to purchase her release from jail, she will be taken to a County Court at Law, usually within 24 to 48 hours of the probable cause hearing.  However, arrestees who have their probable cause hearings on Friday morning will not see a County Court at Law Judge until the following Monday at the earliest.  Individuals who attend probable cause hearings on Friday afternoon or evening or over the weekend are unlikely to see a Judge until the following Tuesday at the earliest.

52.97.  Detained individuals are assigned court-appointed attorneys at the first appearance hearing, but there is, as a matter of practice, no review of the money bail amount previously imposed.  The County Courts at Law Judges reduce money bail amounts previously imposed in less than 1 percent of cases.[22]

53.98.  Detained individuals remain in lock-up outside of the courtroom and are usually not even brought into the courtroom on this court date unless they are pleading guilty, which many who are detained because they are too poor to pay their money bail do because they are told that they can get out of custody more quickly by pleading guilty if they cannot afford to pay their money bail.

54.99.  One of the purposes and effects of Harris County's post-arrest detention is to coerce and process large numbers of guilty pleas prior to any person conducting any legal or factual investigation into the charges, let alone the complete and zealous investigation and defense required by professional standards and the Sixth Amendment to the United States Constitution.

55.100.      On one typical morning in March 2016, County Court at Law Judge Pam Derbyshire accepted four guilty pleas from detained individuals in six minutes.  These individuals had just met their attorneys, and their attorneys had conducted no meaningful investigation into the facts or circumstances of the cases.  None of the defendants had been able to pay the scheduled money bail since their arrest several days prior.  They appeared before the judge in orange jumpsuits, handcuffed together.  Several of them were sentenced to three days in jail with credit for the three days they served between their arrest and guilty plea.  This is a routine, everyday occurrence in Harris County's misdemeanor criminal legal system. Almost 80 percent: every one of individuals the 16 County Courts at Law judges routinely accepts guilty pleas from individuals

---

[22] Pinkerton & Caruba, *supra* note 1018.

who are in jail solely because they are too poor to pay money bail.  76.8 percent of detained ~~pretrial~~defendants plead guilty, while only ~~56~~52.8 percent of ~~individuals who are~~ released ~~pretrial~~defendants plead guilty. [23]

101.    The County Courts at Law Judges — and every other actor in the County's post-arrest system (as well as anyone who has observed probable cause hearings or first appearances) — know that many of the detained individuals who appear in front of them charged with misdemeanors are being held in jail solely because they are too poor to pay the money bail amount set by the predetermined schedule.  They all have access to information about other holds that might be keeping the person in jail.  The judges and Sheriff's Department employees and agents have knowledge that, in hundreds of people's cases every day, there is no reason for a person's detention other than the person's inability to make the monetary payment set.  The Hearing Officers and County Courts at Law Judges have access to basic financial information if an arrestee has been interviewed by Pretrial Services, and they therefore know that a large majority of those appearing before them (who have not been able to pay money bail prior to the appearance) are entirely destitute, severely impoverished, or otherwise qualify for court-appointed counsel and do not have the assets to afford the secured financial condition of release prescribed by the predetermined schedule.

102.    Sheriff's Department employees and agents also observe the probable cause hearings, which occur several times per day, and witness the Defendant Hearing Officers routinely failing and refusing as a matter of policy and practice to consider ability to pay or alternatives to secured financial conditions when imposing secured financial conditions of release.

---

[23] Heaton, et al., *The Downstream Consequences of Misdemeanor Pretrial Detention* at 13 (forthcoming Stanford Law Review) (July 14, 2016), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2809840.

103.    The County Courts at Law Judges are aware of the Hearing Officers' open, notorious, and systemic failure to account for ability to pay. Hearing Officers frequently state that they are refusing to consider ability to pay because of blanket instructions from the Defendant County Courts at Law Judges.  Those instructions include that recognizance release may not be given to individuals who are homeless or to people who have previously been given personal bonds.  Additionally, arrestees who are too poor to pay money bail appear directly in front of the Defendant County Courts at Law Judges.  Those same judges routinely find those arrestees to be indigent for purposes of appointing counsel.  Further, audio-visual recordings of all of the probable cause hearings are maintained by the County and the County Clerk.

56.104.        If a defendant does not plead guilty at thisher first appearance, a defense attorney can file a motion for a reduction of the money bail amount.  It typically takes at least one week for that motion to be heard.  Thus, in a typical case, it can take well over a week after arrest for a person who cannot afford the predetermined money bail amount set by the schedule to obtain any meaningful review of that amount.

57.105.        This pretrial detention scheme means that ana typical individual without financial means will be detained solely because of her inability to make a monetary payment for at least two days and usually three or fourto more than seven days without any opportunity for release or to raise any issues concerning her ability to pay.  Most impoverished arrestees are detained far longer.  At any moment in this process, an arrestee who can pay the money bail set by the schedule can walk out of the doors of the jail.

58.106.        In 2012, 22 percent of the most impoverished misdemeanor arrestees — those who were unable to pay even a $500 money bail (the minimum amount according to the

predetermined schedule) — were detained at disposition, having been in jail an average of almost 9 days.[24]

107.    In 2015, almost 17 percent of people whose money bail amount was $500 never posted bond, and nearly 25 percent of people given a bond of $501 to $1,999 never posted it.[25]

59.108.    In 2014 and 2015, 40 percent of misdemeanor arrestees with money bail imposed were still in jail when their case was disposed of.[26]  Individuals detained pretrial wereare more likely to be sentenced to jail, less likely to be sentenced to probation, and wereare given sentences more than twice as long as those received by individuals who were released pretrial.[27]

### C.    The Harris County Jail

60.109.    The Harris County Jail is the largest jail in Texas and the third largest jail in the United States.[28]  It books on average 120,000 individuals per year and 330 individuals per day.[29]  Most individuals arrested in Harris County are taken first to field stations run by the City of Houston, Harris County Jail, though others may be held at, or some other arresting authority. Anyone who does not post bail immediately after arrest will be transported to the Harris County-run facilities or a brief period of time before being transferred to the Jail.

---

[24] *See* Wheeler & Fry, Report #2, *supra* note 38, at 9.  Only 9.7 percent of individuals detained at disposition are not convicted, compared with 44.2 percent of individuals who are free when their case is resolved.  Moreover, for people given a $500 bail, 80.6 percent of people detained at disposition were given jail sentences, compared to 25.6 percent of defendants released on bail at disposition.  *Id.*

[25] Pretrial Services 2015 Annual Report, *supra* note 6 at 8.

[26] Pretrial Services 2014 ReportAnnual Report, *supra* note 6,12 at 8 (showing in Table B.1 that roughly 60 percent of misdemeanor arrestees post money bail); Pretrial Services 2015 Annual Report, *supra* note 6 at 8; Pinkerton & Caruba, *supra* note 1018 (stating that about half of arrestees pay bondsmen for their release).

[27] Heaton, et al., *supra* note 21 at 4.

[28]   Sarah R. Guidry, et al., *A Blueprint for Criminal Justice Policy Solutions in Harris County* at 1, http://www.americanbar.org/content/dam/aba/events/legal_aid_indigent_defendants/2015/ls_sclaid_summit_03_tcjc_2015_harris_county_blueprint.authcheckdam.pdf [ABA Report].

[29] *Id.* at 9.

61.110.      The vast majority of human beings in Harris County Jail cells are not there because they have been convicted of a crime.[30]  Instead, most inmates — 77 percent — are being kept in jail cells prior to trial, despite the presumption of innocence, because they cannot afford to pay money bail.  If they could pay the money bail assigned to them, they could walk out of the doors of the jail at any time.

62.111.      In March 2016, a typical month, the average daily population of the Harris County Jail was 8,579 individuals, 6,841 of whom were pretrial detainees.  About 8 percent of those pretrial detainees — 545 individuals — had been arrested for misdemeanors.  The average daily population of misdemeanor pretrial detainees in April was 546, and in May, it was 527. Almost all of these individuals were there only because they were unable to afford money bail of $5,000 or less.[31]

63.112.      Although the jail population fell by 2,500 individuals between 2009 and 2014, the pretrial population fell by only 15 inmates.[32]

64.113.      In the past year prior to March 2016, the population of pretrial misdemeanor detainees grew by 29 percent.[33]

---

[30] *See* Office of Criminal Justice Coordination, *Harris County–Jail Population March 2016 Report* (April 4, 2016) at 1, on file with undersigned counsel.at 1 [Exhibit 5].

[31] *Jail Population Report, supra* note 18, at 3, 1. *See id.*; Office of Criminal Justice Coordination, *Harris County–Jail Population June 2016 Report*; Office of Criminal Justice Coordination, *Harris County–Jail Population July 2016 Report* [Exhibits 6, 7].

[32] ABA Report, *supra* note *16,*26 at 3.

[33] *Jail Population Report, supra* note 18 Exhibit 5 at 1.

65.114.        Eight percent of the pretrial population regularly consists of misdemeanor offenders.  These individuals are generally in jail solely because they cannot afford their money bail.[34]

66.115.        In 2008, the Department of Justice investigated the Harris County Jail and launched an era of federal oversight because of the serious and systemic violations of constitutional rights that pervaded the facility.[35]  The investigation led the County to form the Harris County Criminal Justice Coordinating Council in an effort to address the overcrowding in the jail.[36]  Since then, Harris County has struggled to stay within its operating capacity.[37]  In 2013, taxpayers spent almost $500,000 *per day* to operate the jail.[38]

116.    Researchers recently concluded that if, from 2008 to 2013, those defendants for whom the minimum $500 money bail was imposed had instead been released without requiring $500 money bail, the County would have released 40,000 additional individuals, avoided almost 5,900 criminal convictions, reduced incarceration days by more than 400,000, and prevented the commission of 1,600 felonies and 2,400 misdemeanors due to the criminogenic effects of even brief pretrial custody.  The County would have saved roughly $20 million in supervision costs alone.[39]

---

[34] Meagan Flynn, *The Houston Man Who Refused to Plead Guilty Does Not Want an Apology* (Aug. 15, 2016), available at http://www.houstonpress.com/news/the-houston-man-who-refused-to-plead-guilty-does-not-want-an-apology-8667533 (reporting on the case of Gilbert Cruz, a disabled veteran, whose $3,500 bail was set in his absence; Mr. Cruz refused to plead guilty, leading to more than two months in jail, during which time he lost his job and his car, before the charges were dismissed for lack of probable cause).

[35] ABA Report, *supra* note *16,*26 at 2.

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] Heaton, et al., *supra* note 21 at 45–46.

67.117.      Between 2009 and 2015, 55 human beings died while in pretrial custody in the Harris County Jail.[40]

68.118.      ~~Most recently, on~~On April 5, 2016, arrestee Patrick Brown — who was being held on a $3,000 bail he could not afford after being charged with misdemeanor theft — died in the Harris County Jail.[41]

69.119.      In March 2016, 26 percent of the average daily population had a documented mental health history.[42]

70.120.      There is a documented history of inmate abuse by jail guards, deaths and suicides in the jail, inadequate training of jail staff, and lack of access to medications and medical services.  For years, the County has been aware of these intolerable conditions, which exist largely because of the overcrowding resulting from the volume of inmates who cannot afford to pay money bail.  It has failed to remedy them.[43]

71.121.      On a typical day, hundreds of new arrestees, presumed innocent, are arrested and booked into this jail.[44]  ~~Between~~In 2015, 40 ~~and 50~~.3 percent of ~~them will be unable to afford their money bail.[45]  Thus, at~~the more than 50,000 misdemeanor arrestees never posted

---

[40] Pinkerton & Caruba, *supra* note ~~10~~18.

[41] Ebenezer Nah, one of the inmates charged with aggravated assault in connection with the death, was eligible for release solely because he could afford to pay for his release.  He had just posted money bail and was being processed out of the jail at the time of the fatal assault.  Meagan Flynn, *Inmate Beaten To Death After Spending Less Than 48 Hours In Harris County Jail* (Apr. 13, 2016), available at  http://www.houstonpress.com/news/inmate-beaten-to-death-after-spending-less-than-48-hours-in-harris-county-jail-8319129.

[42] *Jail Population Report for March 2016*, *supra* note ~~18,~~29 at 3.

[43] The Houston Chronical, *Jailhouse Jeopardy: Uncovering abuses at Harris County's jail* (Oct. 3, 2015–Mar. 6, 2016), available at http://www.houstonchronicle.com/local/investigations/jailhouse-jeopardy/ (providing links to a series of articles written by several reporters).

[44] ABA Report, *supra* note ~~16,~~26 at 13 (stating that there are 330 bookings per day); Pretrial Service 2014 Report, *supra* note 11 at 3 (stating that, in 2014, 52,506 people were arrested on misdemeanor charges, which averages 144 per day).

[45] ~~Pretrial Services 2014 Report, *supra* note. 6, at 8 (Table B.1.).~~

bond.[46]  At any given moment, there are hundreds of people charged only with misdemeanors who are being detained ~~by~~in the Harris County Jail solely because they cannot afford money bail.[47] Every single one of these individuals could walk out of the jail if they were wealthy enough to pay their money bail amount.  None of them received any inquiry into their ability to pay.  Only those individuals who are too poor to purchase their release are subjected to these conditions and the health and safety risks of pretrial jailing.

### D.   ~~Defendant's~~Defendants' Wealth-Based Detention Scheme Will Cause ~~Plaintiff~~Plaintiffs To Be Jailed Solely Due To ~~Her~~Their Inability To Pay Bail

~~72.~~122.      The named ~~Plaintiff~~Plaintiffs would not have to endure a minute of incarceration if ~~she~~they paid the amount of money required by Defendants.

~~73.~~123.      Individuals with outstanding warrants are frequently contacted by for-profit bonding agencies who offer them the opportunity to pay for "non-arrest bonds" approved and used by the County which allow them to avoid arrest altogether.[48]

~~74.~~124.      For individuals who are aware of outstanding warrants for their arrest and able to afford to hire counsel, lawyers are sometimes able to arrange "walk-throughs" for their clients, whereby the person charged with a crime goes to the courthouse, pays the money bail, and gets a court date without ever going through the arrest and booking process.  Arrestees able to pay for an attorney or for a non-arrest bond are able to pay to avoid detention.

---

[46] Pretrial Services 2015 Annual Report, *supra* note 6 at 8 (Table B.1.).

[47] *See, e.g.,* ABA Report, *supra* note ~~16~~26, at 15 (noting that, in 2013 alone, there were 3,120 misdemeanor arrestees who could not post the $500 money bail that Harris County demanded of them).

[48] All About Bail Bonds, *Services for Non-Arrest Bonds in Houston*, available at http://www.allaboutbailbondshouston.com/services/non-arrest-bail-bonds/; All Access Bail Bonds, *Services*, available at http://www.allaccessbailbonds.com/index.php/services ("A 'Non-Arrest' Bond lifts the warrant and initiates the process of scheduling your day in court.  This relieves the stress and worry about being arrested.").

~~75.~~125.        Arrestees are given a right to release pending trial, but ~~Defendant's~~Defendants' wealth-based detention system conditions their release on their ability to afford money bail, thus tying their pretrial freedom to their wealth status.

~~76.~~126.        As a matter of policy and practice, when a new arrestee is brought to the Harris County Jail, county employees inform the arrestee that she will be released from jail immediately if she pays her money bail amount.  The arrestee is told that she will remain in jail if she is not able to make that payment.

~~77.~~127.        The Harris County Sheriff's Department collects arrestees' money bail payments.  It is the policy and practice of the Harris County Sheriff's Department to release only those arrestees who pay their money bail amount.

~~78.~~128.        In a typical week, the Sheriff's Department releases hundreds of individuals who pay their money bail amount.

~~79.~~129.        It is the policy and practice of the Sheriff's Department to detain individuals who do not pay their money bail amount.  Before an individual's probable cause hearing, it is the policy and practice of the Sheriff's Department to detain the individual based on a money bail amount set pursuant to a predetermined bail schedule.  After a probable cause hearing, it is the policy and practice of the Sheriff's Department to detain the individual based on a money bail amount approved by a ~~hearing officer~~Hearing Officer pursuant to the County's bail schedule.

~~80.~~130.        If a person cannot pay her money bail after her first court appearance before a County Court at Law Judge, it is the policy and practice of the Sheriff's Department to continue to detain that individual unless and until she makes a monetary payment.

~~81.~~131.        Under Defendants' wealth-based procedures, those wealthy enough to pay are released from the County jail.  Some poorer arrestees eventually make arrangements with

private bail bond companies, after spending hours, days, or weeks in jail.[49]  And many others who are poorer still are left to languish in jail until the resolution of their case.

**E.**     ~~Harris County's~~**Defendants'** **Use of Money Bail Is Not Narrowly Tailored — Nor Is It as Effective as Many Other Methods — in Securing Court Attendance or Public Safety**

~~82.~~132.          The empirical evidence ~~is~~shows that there is no relationship between requiring money bail as a condition of release and defendants' rates of appearance in court.[50]

~~83.~~133.          While tying pretrial freedom to wealth status is the norm in Harris County, other jurisdictions throughout the country do not hold people in jail because of their poverty. Instead of relying on money, other jurisdictions release arrestees with pretrial supervision practices and procedures that can help increase court attendance and public safety without requiring detention.

~~84.~~134.          Other jurisdictions employ numerous less restrictive methods of maximizing public safety and court appearances when necessary to guard against a particular risk. These include: unsecured bond, reporting obligations, phone and text message reminders of court dates, rides to court for those without transportation or a stable address, counseling, drug and alcohol treatment, batterer intervention programs, anger management courses, alcohol monitors, or, in extreme cases of particular risk, electronic monitoring, among other services.

---

[49] Because of the common availability of commercial bail bonds, those who remain in the ~~custody of~~ Harris County jail are typically those that cannot even afford to pay a third-party bonding agent.  The amount charged by a bonding agent to post a $500 cash bail is typically $150, although such agents are free to refuse to pay for the release of an arrestee for any reason or for no reason.  Thus, the availability of third-party agents, at least for those arrestees who can afford $50 but not $500, is no guarantee.  The Named Plaintiffs cannot afford such a bail.

[50]  Arpit Gupta, Christopher Hansman, & Ethan Frenchman, *The Heavy Costs of High Bail: Evidence from Judge Randomization* (May 2, 2016) at ~~19~~5, available at http://www.columbia.edu/~cjh2182/GuptaHansmanFrenchman.pdf~~;~~ ("We find no evidence that money bail increases the probability of appearance."); Wheeler & Fry, Report #1, *supra* note ~~5~~11, at 4.

85.135.        Other jurisdictions also employ non-monetary conditions of release, including unsecured or "signature" bonds (which do not require payment up front for release but instead allow immediate release upon a promise to pay the monetary amount if the person does not appear as required), stay-away orders, curfews, or even home detention.

86.136.        Harris County isDefendants are permitted by law to use these alternatives but, as a matter of routine, choose not to for impoverished misdemeanor arrestees.  The vast majority of Harris County arrestees are processed and detained through Harris County's money bail scheme rather than non-monetary supervision methods.  As a matter of policy and practice, Harris County doesDefendants do not consider less restrictive alternatives rather than detention based on money bail that a person cannot afford.

87.137.        Jurisdictions with robust pretrial services and non-monetary conditions of release achieve court-appearance rates over 90 percent, with more than 85 percent of those released pretrial remaining arrest-free (and 98–99 percent remaining arrest-free for violent crimes).

88.138.        Empirical evidence proves that unsecured bond alone is just as effective at ensuring appearance in court as secured money bail.

89.139.        Detention on money bail increases the likelihood of conviction.  A person who is detained pretrial is 13 percent more likely to be convicted and 21 percent more likely to

plead guilty.[51]   Additionally, individuals detained pretrial will be given longer jail sentences.[52] Money bail is disproportionately imposed on non-white arrestees.[53]

90.140.     Individuals who are detained — instead of released on money bail or on a personal bond — when their case is resolved have worse case outcomes.[54]  For example, 7.2 percent of individuals who are detained at disposition in Harris County are not convicted, while 34.1 percent of individuals who are free at disposition resolve their case without a conviction. Additionally, individuals who are being confined on $500 money bail when their case is resolved will spend a median of three days in jail (which costs the County about $1,000), while individuals who are able to pay the $500 bail in cash (or the $150 non-refundable fee to a commercial bonding agent) and are free at disposition will spend an average of only one day in jail.[55]

---

[51] Megan Stevenson, *Distortion of Justice: How the Inability to Pay Bail Affects Case Outcomes* (May 2, 2016) at 18, available at https://www.law.upenn.edu/cf/faculty/research/details.cfm?research_id=14047; *see also* Gupta, et. al, *supra* note 34,47 at 13 (finding a 12 percent increase in the likelihood of conviction using the same data).); Heaton, et al., *supra* note 21 at 21.

[52] Stevenson, *supra* note 35 at 18; *see also* Gupta, et. al, *supra* note 34, at 18–19 ("Criminal defendants assessed bail amounts appear frequently unable to produce the required bail amounts, and receive guilty outcomes as a result. Entered guilty pleas by defendants unwilling to wait months prior to trial and unable to finance bail likely contribute to this result."). Stevenson, *supra* note 48 at 18; Heaton, et al., *supra* note 21 at 21.

[53] Gupta, et. al, *supra* note 34,47 at 184–5.

[54] *Id.* at 7; *See* ABA Report, *supra* note 16, Stevenson, *supra* note 48 at 18; Gupta, et. al, *supra* note 47 at 13 (finding a 12 percent increase in the likelihood of conviction using the same data); Heaton, et al., *supra* note 21 at 21; ABA Report, *supra* note 26 at 13 ("[D]efendants who are not released pre-trial are more likely to be incarcerated following a conviction, and they generally receive longer sentences upon conviction."); Lise Olson, *Study: Inmates who can't afford bond face tougher sentences* (Sept. 15, 2013), available at http://www.houstonchronicle.com/news/houston-texas/houston/article/Study-Inmates-who-can-t-afford-bond-face-tougher-4817053.php (discussing Carlos Mathis, an African-American man, who was held in jail for seven months on minor drug and theft charges because he could not afford money bail, and whose charges were dismissed); Isami Arifuku & Judy Wallen, *Racial Disparities at Pretrial and Sentencing and the Effects of Pretrial Services Programs* (Mar. 11, 2013), available at http://www.pretrial.org/download/research/Racial%20Disparities%20at%20Pretrial%20and%20Sentencing%20and%20the%20Effects%20of%20Pretrial%20Services%20Programs%20-%20NCCD%202013.pdf; Cynthia E. Jones, *"Give Us Free": Addressing Racial Disparities in Bail Determinations*, 16 N.Y.U. Legis. & Pub. Pol'y 919 (2013); Tina L. Freiburger, et. al, *The Impact of Race on the Pretrial Decision*, American Journal of Criminal Justice (2010), available at http://libres.uncg.edu/ir/asu/f/Marcum_CD_2010_Impact_of_Race.pdf.

[55] Wheeler & Fry, Report #1, *supra* note 5,11 at 6–7; Lowenkamp, et al., *The Hidden Costs of Pretrial Detention* at 3, 19 (Nov. 2013), available at http://www.pretrial.org/download/research/The%20Hidden%20Costs%20of%20Pretrial%20Detention%20-%20LJAF%202013.pdf (studying 153,407 defendants and finding that "when held 2-3 days, low risk defendants are

~~91.~~141.     Setting a secured money bail without an inquiry into ability to pay and in an amount higher than a person can afford by definition defeats the ~~entire~~ purpose of money bail — to incentivize a person to return to court — and removes any legitimate (let alone compelling) state interest in the setting of a financial condition.  Nor is setting money bail without findings concerning ability to pay the most narrowly tailored way to meet any other legitimate or compelling government interest.[56]

~~92.~~142.     ~~Harris County's~~The Defendants' use of money bail ~~schedule~~ leads disproportionately to the detention of people of color as compared to whites.  Regardless of the amount of money bail imposed, people of color are more likely to be detained at disposition than whites.[57]

~~93.~~143.     Unnecessary pretrial detention causes instability in employment, housing, and care for dependent relatives.  Studies show that those detained pretrial face worse outcomes at trial and sentencing than those released pretrial, even when charged with the same offenses.  Detained defendants are more likely to plead guilty just to shorten their jail time, even if they are innocent.  They have a harder time preparing for their defense, gathering evidence and witnesses, and meeting with their lawyers.  Studies also show that just two days of pretrial detention increases the likelihood of future arrests and increases the future risk level of low level offenders.

---

almost 40 percent more likely to commit new crimes before trial than equivalent defendants held no more than 24 hours"); Arnold Foundation, *Pretrial Criminal Justice Research Summary* (2013) at 5, *available at*: http://www.arnoldfoundation.org/sites/default/files/pdf/LJAF-Pretrial-CJ-Research-brief_FNL.pdf (finding that "low-risk defendants held 2–~~-~~3 days were 17 percent more likely to commit another crime within two years" and that those detained "4–~~-~~7 days yielded a 35 percent increase in re-offense rates.").

[56] Independently, none of the robust procedures required for a valid order of preventative detention exists, including that there is no inquiry, let alone an inquiry with counsel and basic evidentiary norms, into whether a compelling interest exists to detain a particular defendant, whether any particular identifiable danger or risk exists, and whether there are alternatives to the use of secured money bail that could mitigate any particularized risk.

[57] *Id.*; *see also* Wheeler & Fry, Report #1, *supra* note ~~5,~~11 at 3.

~~94.~~144.         Pretrial detention is more than ten times more expensive than effective pretrial supervision programs.  Through non-monetary tools, pretrial supervision programs can save taxpayer expense while maintaining high public safety and court appearance rates.

### Class Action Allegations

~~95.~~145.         The named ~~Plaintiff brings~~Plaintiffs bring this action, on behalf of ~~herself~~themselves and all others similarly situated, for the purpose of asserting the claims alleged in this Complaint on a common basis.

~~96.~~146.         A class action is a superior means, and the only practicable means, by which the named ~~Plaintiff~~Plaintiffs and unknown Class members can challenge the ~~County's~~Defendants' unlawful wealth-based post-arrest detention scheme.

~~97.~~147.         This action is brought and may properly be maintained as a ~~Class~~class action pursuant to Rule 23(a)(1)~~-()–~~(4) and Rule 23(b)(2) of the Federal Rules of Civil Procedure.

~~98.~~148.         This action satisfies the numerosity, commonality, typicality, and adequacy requirements of those provisions.

~~99.~~149.         The ~~Plaintiff proposes~~Plaintiffs propose a single Class seeking declaratory and injunctive relief.  The Declaratory and Injunctive Class is defined as: All ~~individuals~~Class A or Class B misdemeanor arrestees who are or will be detained ~~by~~in Harris County custody for any amount of time after arrest because they are unable to pay money bail.

### A.    Numerosity.  Fed. R. Civ. P. 23(a)(1)

~~100.~~150.         In March 2016, the average daily population of misdemeanor arrestees being held pretrial on money bails they could not afford was 545 individuals.[58]  This was a typical

---

[58] *Jail Population Report*, *supra* note 18, at 1.

month.  The population of pretrial misdemeanor detainees grew by 29 percent in the past year.[59]

Eight percent of the pretrial population, which numbers in the thousands on any given day,

regularly consists of misdemeanor offenders unable to pay a money bail.

~~101.~~151.          On any given day, there are thousands of outstanding misdemeanor arrest

warrants issued ~~by~~in Harris County, and every day ~~the County issues~~ dozens more are issued.

~~102.~~152.          Arrestees are held in jail for varying lengths of time depending on how long

it takes them to make the cash payment that ~~the County requires~~is required for their release.

~~103.~~153.          Some arrestees are able to pay immediately for their release.  Others are

forced to wait one or two days until they or family members can make the payment.  Others will

never be able to come up with any amount of money to pay for their release.

~~104.~~154.          The number of current and future arrestees subject to this policy — if it is

not enjoined — numbers well into the thousands.

**B.     Commonality.  Fed. R. Civ. P. 23(a)(2).**

~~105.~~155.          The relief sought is common to all members of the Class, and common

questions of law and fact exist as to all members of the Class.  The named ~~Plaintiff seeks~~Plaintiffs

seek relief concerning whether the ~~County's~~Defendants' policies, practices, and procedures violate

the rights of the Class members and relief mandating that the ~~County~~Defendants change ~~its~~their

policies, practices, and procedures so that the constitutional rights of the Class ~~Members~~members

will be protected in the future.

~~106.~~156.          Common legal and factual questions arise from one central scheme and set

of policies and practices: the ~~County's~~Defendants' post-arrest wealth-based detention scheme.

The ~~County operates~~Defendants operate this scheme openly and in materially the same manner

---

[59] *Id.*

every day.  The material components of the scheme do not vary from Class ~~Member~~member to Class ~~Member~~member, and the resolution of these legal and factual issues will determine whether all of the members of the ~~class~~Class are entitled to the constitutional relief that they seek.

Among the most important, but not the only, common questions of fact are:

- Whether ~~Harris County has~~the Defendants have a policy and practice of using a predetermined schedule to determine the amount of money required to secure post-arrest release;
- Whether ~~Harris County requires~~the Defendants require that scheduled amount of money to be paid up front before ~~it will release~~ releasing a person from ~~its~~the jail;
- Whether Defendants, at any stage in the post-arrest process, inquire into a person's ability to pay the predetermined amount of money and make findings concerning an arrestee's present ability to pay any amount set;
- What standard post-arrest procedures ~~Harris County performs~~the Defendants perform on misdemeanor arrestees; for example, whether ~~Harris County uses~~Defendants use any other alternate procedures for promptly releasing ~~indigent~~ people determined otherwise eligible for release but who are unable to afford a monetary payment.

~~107.~~157. Among the most important common questions of law is:

- Whether a secured "bail schedule" setting generic amounts of money required up front to avoid post-arrest detention without any inquiry or findings into a person's present ability to pay the amount set violates the Fourteenth Amendment's Due Process and Equal Protection provisions.

## C.    Typicality.  Fed. R. Civ. P. 23(a)(3).

~~108.~~158.        The named ~~Plaintiff's~~Plaintiffs' claims are typical of the claims of the other members of the Class, and ~~she has~~they have the same interests in this case as all other Class ~~Members~~members.  Each Class ~~Member~~member is threatened with imminent and/or ongoing confinement in jail because she cannot afford to pay ~~the County's~~a standardized cash bail amount. The answer to whether the ~~County's~~Defendants' wealth-based detention scheme is unconstitutional will determine the claims of the named ~~Plaintiff~~Plaintiffs and every other Class member.

~~109.~~159.        If the named ~~Plaintiff succeeds~~Plaintiffs succeed in the claim that the

County'sDefendants' policies and practices concerning post-arrest detention violate hertheir constitutional rights, that ruling will likewise benefit every other member of the Class.

### D.     Adequacy.  Fed. R. Civ. P. 23(a)(4).

110.160.     The named Plaintiff is anPlaintiffs are adequate representativerepresentatives of the Class because hertheir interest in the vindication of the legal claims that she raisesthey raise is entirely aligned with the interests of the other Class members, each of whom has the same basic constitutional claims.  She is a memberThey are members of the Class, and hertheir interests do not conflict with those of the other Class members.

111.161.     There are no known conflicts of interest among members of the proposed Class, all of whom have a similar interest in vindicating their constitutional rights in the face of Defendants' pay-for-freedom post-arrest detention system.

112.162. Plaintiff isPlaintiffs are represented by attorneys from Equal Justice Under Law, Texas Fair Defense Project, and Susman Godfrey who have experience in litigating complex civil rights matters in federal court and extensive knowledge of both the details of Defendants' scheme and the relevant constitutional and statutory law.  Counsels' relevant qualifications are more fully set forth in the contemporaneously filed Motion for Class Certification.

113.163. The combined efforts of Class counsel have so far included extensive investigation into fixed money bail schemes over a period of months, including numerous interviews with witnesses, court employees, jail inmates, families, judges, attorneys practicing in courts throughout the region, community members, statewide experts in the functioning of state and local courts, empirical researchers, and national experts in constitutional law, post-arrest procedure, law enforcement, judicial procedures, criminal law, pretrial services, and jails.

114.164.     Class counsel hashave a detailed understanding of state law and practices

as they relate to federal constitutional requirements.  Counsel have studied the way that these systems function in other cities and counties in order to investigate the wide array of lawful options in practice for municipalities.

115.165.      As a result, counsel have devoted enormous time and resources to becoming intimately familiar with Defendants' scheme and with all of the relevant state and federal laws and procedures that can and should govern it.  Counsel hashave also developed relationships with many of the individuals and families most victimized by unlawful wealth-based pretrial detention practices.  The interests of the members of the Class will be fairly and adequately protected by the PlaintiffPlaintiffs and hertheir attorneys.

**E.  Rule 23(b)(2)**

116.166.      Class action status is appropriate because the CountyDefendants, through the policies, practices, and procedures that make up its wealth-based post-arrest detention scheme, hashave acted in the same unconstitutional manner with respect to all classClass members. The County enforcesDefendants apply and enforce a wealth-based system of pretrial justice: some arrestees can purchase their immediate release, while other arrestees must remain in jail solely because they cannot pay.

117.167.      The Class therefore seeks declaratory and injunctive relief to enjointhat will prevent the CountyDefendants from detaining arrestees who cannot afford cash payments. Because the putative Class challenges the County'sDefendants' scheme as unconstitutional through declaratory and injunctive relief that would apply the same relief to every member of the Class, Rule 23(b)(2) is appropriate and necessary.

118.168.      Injunctive relief compelling the CountyDefendants to comply with these constitutional rights will similarly protect each member of the Class from being subjected to the

~~City's~~Defendants' unlawful policies and practices.  A declaration and injunction stating that Defendants cannot detain arrestees due to their inability to make a monetary payment would provide relief to every Class ~~Member~~member.  Therefore, declaratory and injunctive relief with respect to the Class as a whole is appropriate.

~~119.~~169.        ~~Plaintiff seeks~~Plaintiffs seek the following relief.

### Claim for Relief

**Count One:  Defendants Violate ~~Plaintiff's~~Plaintiffs' Rights By Jailing ~~Her~~Them Because ~~She~~They Cannot Afford A Monetary Payment.**

~~120.~~170.        ~~Plaintiff incorporates~~ Plaintiffs incorporate by reference the allegations in paragraphs 1-~~119~~169.

~~121.~~171.        The Fourteenth Amendment's Equal Protection and Due Process Clauses prohibit jailing a person because of her inability to make a monetary payment.  Defendants violate ~~Plaintiff's~~Plaintiffs' fundamental right to pretrial liberty by ~~keeping her~~enforcing against them a system of wealth-based detention that keeps them in jail solely because ~~she~~they cannot afford to pay money bail amounts imposed without ~~providing~~ any inquiry into or findings concerning ~~her~~their present ability to pay.

### Request for Relief

WHEREFORE, ~~Plaintiff~~Plaintiffs and the other Class members request that this Court issue the following ~~relief~~prospective relief against the Defendants, who are all government actors, pursuant to 42 U.S.C. § 1983 and, independently, directly under the Fourteenth Amendment to the United States Constitution, so that they cease ongoing constitutional violations:

a. A declaratory judgment that the Defendants violate the named ~~Plaintiff's~~Plaintiffs' and Class ~~Members'~~members' constitutional rights by ~~keeping~~operating a system of wealth-based detention that keeps them in jail solely because they cannot ~~make a monetary payment~~afford to pay money bail amounts imposed without ~~an~~ providing any inquiry into ~~and~~or findings concerning their present ability to pay;

b. A declaratory judgment that the Hearing Officer Defendants violate the named Plaintiffs' and Class members' constitutional rights by setting secured financial conditions of release without first providing an inquiry into an arrestee's present ability to pay money bail and making findings that an arrestee has the present ability to pay any monetary amount set;

c. An order preliminarily enjoining the Hearing Officer Defendants from imposing secured financial conditions of release without first providing an inquiry into an arrestee's present ability to pay money bail and making findings that an arrestee has the present ability to pay any monetary amount set;

d. An order and judgment preliminarily and permanently enjoining the ~~Defendants including all officers,~~Sheriff and his employees~~,~~ and agents ~~of~~ from requiring any individual arrested by the Sheriff's Department to satisfy a secured financial condition of release unless the Sheriff's Department is informed and believes in good faith that there has first been an inquiry into the person's present ability to pay the money bail amount and findings that the arrestee has the present ability to pay the sum;

e. An order and judgment preliminarily and permanently enjoining the Sheriff and his employees and agents from accepting any arrestee into the Sheriff's custody on the basis of an unfulfilled secured financial condition of release, unless the Sheriff is informed and believes in good faith that there has first been an inquiry into the person's present ability to pay the money bail amount and findings that the arrestee has the present ability to pay the sum;

f. An order and judgment preliminarily and permanently enjoining the Harris County ~~ from using money bail to detain any person without procedures that ensure an inquiry into and~~Courts at Law Judges, who sit en banc to develop and oversee systemic post-arrest policies applicable to all arrestees in Harris County and on whose behalf all of the other Defendants operate the County's money bail system, from implementing and enforcing a system of wealth-based detention that keeps arrestees in jail solely because they cannot afford to pay money bail amounts imposed without first providing an inquiry into the person's present ability to pay the money bail amount and making findings that the arrestee has the present ability to pay the sum;[60]

---

[60] This relief is requested in the alternative in the event that the Court concludes that the County Courts at Law Judges are not final policymakers for post-arrest detention policies for Harris County and are instead agents of the State of Texas or for some other entity.

g.  A declaratory judgment that the Harris County Courts at Law Judges violate the named Plaintiffs' and Class members' constitutional rights by permitting secured financial conditions of release to be imposed without providing for an inquiry into an arrestee's present ability to pay money bail and findings that an arrestee has the present ability to pay any monetary amount set; [61]

b.h.        Any other order and judgment this Court deems necessary to preliminarily and permanently enjoin Defendants — whether acting on behalf of the State, the County, or some other government entity — from implementing and enforcing a system of wealth-based detention that keeps arrestees in jail solely because they cannot afford to pay money bail amounts imposed without first providing an inquiry into and making concerning the person's present ability to pay any monetary amount set.the sum;

c.i.  An order and judgment granting reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and any other relief this Court deems just and proper.

Respectfully submitted,

*/s/ Neal S. Manne*_____
Neal S. Manne
Lexie G. White
1000 Louisiana Street, Suite 5100
Houston, TX  77002
Phone:  (713) 651-9366
nmanne@susmangodfrey.com
lwhite@susmangodfrey.com
Michael Gervais
560 Lexington1301 Avenue, 15th of the Americas, 32nd Floor
New York, NY  1002210019
Phone:  (212) 336-8330
mgervais@susmangodfrey.com

*/s/ Rebecca Bernhardt*_____
Rebecca Bernhardt
Texas Bar No. 24001729
rbernhardt@fairdefense.org
Susanne Pringle
Texas Bar No. 24083686
springle@fairdefense.org
Texas Fair Defense Project
314 E. Highland Mall Blvd.

---

[61] This relief is requested in the alternative in the event that the Court concludes that the County Courts at Law Judges, whether County or State actors, are acting in their judicial capacity when they commit the unconstitutional acts challenged herein, and are subject only to declaratory relief in the first instance.

Suite 180
Austin, Texas 78752
Telephone: (512) 637-5220
Facsimile: (512) 637-5224

*/s/ Alec Karakatsanis*_____
Alec Karakatsanis (D.C. Bar No. 999294)
(*Pro Hac Vice* ~~Application Pending~~)
Elizabeth Rossi (*Pro Hac Vice* ~~Application Pending~~)
~~Attorneys,~~ Equal Justice Under Law
601 Pennsylvania Ave. NW
South Building, 9th Floor
Washington, DC 20004
(202) 670-1004
alec@equaljusticeunderlaw.org
erossi@equaljusticeunderlawl.org

*Attorneys for ~~Plaintiff~~Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| _____ ) | |
| MARANDA LYNN ODONNELL, ) | |
| LOETHA MCGRUDER, ) | |
| ROBERT RYAN FORD ) | |
|     On behalf of themselves and all ) | |
|     others  similarly situated, ) | |
| ) | |
|       Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | Case No. 16-cv-01414 |
| HARRIS COUNTY, TEXAS, ) | (Consolidated Class Action) |
| ) | The Honorable Lee H. Rosenthal |
| SHERIFF RON HICKMAN, ) | U.S. District Judge |
| ) | |
| ERIC STEWART HAGSTETTE, ) | |
| JOSEPH LICATA III, ) | |
| RONALD NICHOLAS, ) | |
| BLANCA ESTELA VILLAGOMEZ, ) | |
| JILL WALLACE, ) | |
| ) | |
| PAULA GOODHART, ) | |
| BILL HARMON, ) | |
| NATALIE C. FLEMING, ) | |
| JOHN CLINTON, ) | |
| MARGARET HARRIS, ) | |
| LARRY STANDLEY, ) | |
| PAM DERBYSHIRE, ) | |
| JAY KARAHAN, ) | |
| ANALIA WILKERSON, ) | |
| DAN SPJUT, ) | |
| DIANE BULL, ) | |
| ROBIN BROWN, ) | |
| DON SMYTH, ) | |
| MIKE FIELDS, ) | |
| JEAN HUGHES, ) | |
| LINDA GARCIA ) | |
| ) | |
|       Defendants. ) | |
| _____) | |

## **ORDER**

Upon consideration of Plaintiffs' Motion to File First Amended Complaint and to Incorporate Previously-Filed Motions, it is ORDERED that the motion is GRANTED.

Ordered this ____ day of _____, 2016.


Hon. _____, District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| MARANDA LYNN ODONNELL,<br>LOETHA MCGRUDER,<br>ROBERT RYAN FORD<br>      On behalf of themselves and all<br>      others  similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>HARRIS COUNTY, TEXAS,<br><br>SHERIFF RON HICKMAN,<br><br>ERIC STEWART HAGSTETTE,<br>JOSEPH LICATA III,<br>RONALD NICHOLAS,<br>BLANCA ESTELA VILLAGOMEZ,<br>JILL WALLACE,<br><br>PAULA GOODHART,<br>BILL HARMON,<br>NATALIE C. FLEMING,<br>JOHN CLINTON,<br>MARGARET HARRIS,<br>LARRY STANDLEY,<br>PAM DERBYSHIRE,<br>JAY KARAHAN,<br>ANALIA WILKERSON,<br>DAN SPJUT,<br>DIANE BULL,<br>ROBIN BROWN,<br>DON SMYTH,<br>MIKE FIELDS,<br>JEAN HUGHES,<br>LINDA GARCIA<br><br>          Defendants. | Case No. 16-cv-01414<br>(Consolidated Class Action)<br>The Honorable Lee H. Rosenthal<br>U.S. District Judge |

## **ORDER**

Upon consideration of Plaintiffs' Motion for Preliminary Injunction, it is ORDERED that the motion is GRANTED.

Defendants must cease enforcing unconstitutional wealth-based detention policies and practices against the Named Plaintiffs and all similarly-situated arrestees. Specifically, the Court orders the following preliminary injunctive relief:

1. The Hearing Officer Defendants may not impose secured financial conditions of release without providing an inquiry into an arrestee's present ability to pay any secured financial condition of release and making findings that an arrestee has the present ability to pay any monetary amount set;

2. The Sheriff and his employees and agents may not require any individual arrested by the Sheriff's Department to satisfy a secured financial condition of release unless the Sheriff's Department is informed and believes in good faith that there has first been an inquiry into the person's present ability to pay the money bail amount and findings that the arrestee has the present ability to pay the sum;

3. The Sheriff and his employees and agents may not accept any arrestee into the Sheriff's custody on the basis of an unfulfilled secured financial condition of release, unless the Sheriff is informed and believes in good faith that there has been an inquiry into the person's present ability to afford the secured financial condition of release and findings that the arrestee has the present ability to pay the sum;

4. Harris County and the Harris County Courts at Law Judges may not implement or enforce a system of wealth-based detention that keeps arrestees in jail solely because they cannot afford to pay money bail amounts imposed without providing an inquiry into the person's present ability to pay the money bail amount and making findings that the arrestee has the present ability to pay the sum;

Ordered this ___ day of _____, 2016.


Hon. _____, District Judge