United States District Court
Southern District of Texas

**ENTERED**

December 16, 2016

David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MARANDA LYNN ODONNELL, *et al.*, | § | |
| On behalf of themselves and all others | § | |
| similarly situated, | § | |
| | § | |
| Plaintiffs, | § | CIVIL ACTION NO. H-16-1414 |
| | § | |
| VS. | § | |
| | § | |
| HARRIS COUNTY, TEXAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

The plaintiffs, Maranda Lynn ODonnell, Robert Ryan Ford, and Loetha McGruder, sued under 42 U.S.C. § 1983, challenging Harris County's postarrest detention policies. They alleged that the Harris County Sheriff and sixteen Harris County Criminal Courts at Law Judges promulgate policies that violate the Equal Protection and Due Process Clauses of the United States Constitution by detaining people arrested for misdemeanor offenses who are unable to pay a financial bail bond much longer than those financially able to pay. The result is allegedly a "wealth-based detention system" of jailing misdemeanor defendants only because they cannot pay secured financial bail. (Docket Entry No. 54 ¶ 125). The plaintiffs seek injunctive and declaratory relief against the County and—to the extent that they are State, not County, actors—against the Sheriff and the sixteen Harris County Judges, sued in their official and personal capacities. The plaintiffs also seek declaratory relief against five Harris County Hearing Officers, also sued both in their official and personal capacities.

On May 19, 2016, Ms. ODonnell filed this civil-rights class-action lawsuit initially suing

1

Harris County, Sheriff Ron Hickman, and the five Harris County Hearing Officers.[1]  She sued on behalf of herself and all other similarly situated individuals.  (Docket Entry No. 3).[2]  Mr. Ford and Ms. McGruder filed their suits on May 21, 2016.  (Civil No. 16-1436, Docket Entry No. 1).  The court consolidated the cases in August 2016.  (Docket Entry No. 41).  The plaintiffs filed an amended complaint on August 31, 2016, adding the sixteen Harris County Criminal Courts at Law Judges as defendants.[3]  (Docket Entry No. 54).  Harris County, the County Judges, the Hearing Officers, and the Sheriff have moved to dismiss.  (Docket Entry Nos. 80, 83–85).  The plaintiffs responded, (Docket Entry Nos. 92–95), and the defendants replied, (Docket Entry Nos. 98, 100, 102, 106).

Based on the pleadings; the motions, responses, and replies; the record; the applicable law; and  the oral arguments of counsel on the motions presented in lengthy hearings held on August 18 and November 28, 2016,[4] the court grants in part and denies in part the defendants' motions to dismiss.  The court dismisses the personal-capacity claims against Sheriff Hickman and the County

----

[1]  The complaint names Hearing Officers Eric Stewart Hagstette, Joseph Licata III, Ronald Nicholas, Blanca Estela Villagomez, and Jill Wallace.

[2]  The operative pleading is now the first amended complaint, (Docket Entry No. 54), and further references to "the complaint" are to that pleading.

[3]  The complaint names County Judges Paula Goodhart, Bill Harmon, Natalie C. Fleming, John Clinton, Margaret Harris, Larry Standley, Pam Derbyshire, Jay Karahan, Analia Wilkerson, Dan Spjut, Diane Bull, Robin Brown, Don Smyth, Mike Fields, Jean Hughes, and Linda Garcia.

[4]  The court has also carefully considered pending litigation in substantially similar cases around the country, including *Rodriguiez v. Providence Community Corrections*, Civil No. 15-1048 (M.D. Tenn. filed Oct. 1, 2015), *appeal docketed*, Nos. 16-6127–29 (6th Cir. July 13, 2006);  *Walker v. City of Calhoun*, Civil No. 15-170 (N.D. Ga. filed Sep. 8, 2015), *appeal docketed*, No. 16-10521 (11th Cir. Feb. 9, 2016); *Harris v. City of Austin*, Civil No. 15-956 (W.D. Tex. filed Oct. 27, 2015); *Cain v. City of New Orleans*, Civil No. 15-4479 (E.D. La filed Sep. 17, 2015); *Welchen v. County of Sacramento*, Civil No. 16-185 (E.D. Cal. filed Jan. 29, 2016); *Buffin v. City and County of San Francisco*, Civil No. 15-4959 (N.D. Cal. filed Oct. 28, 2015); as well as recently settled cases such as *Thompson v. Moss Point*, Civil No. 15-182 (S.D. Miss. Nov. 6, 2015); *Jones v. City of Clanton*, Civil No. 15-34, 2015 WL 5387219 (M.D. Ala. Sep. 15, 2015); *Cooper v. City of Dothan*, Civil No. 15-425 (M.D. Ala. June 18, 2015); *Pierce v. City of Velda*, Civil No. 15-570 (E.D. Mo. June 3, 2015).

Judges. The court also dismisses the official-capacity claim against the Hearing Officers. The Hearing Officers did not move to dismiss the claims against them in their personal capacities. Those claims proceed. The court denies the motions to dismiss the claims against Sheriff Hickman and the County Judges in their official capacities, and the court denies the motion to dismiss the claim against Harris County.

The reasons for these rulings are explained below.

## I.   Background

Harris County is one of the most populous counties in the United States. Multiple overlapping authorities coordinate and control pretrial procedures in the County. The parties sharply dispute basic facts and figures about the timing of pretrial procedures that can result in release pending a dismissal or guilty plea; the number of misdemeanor arrestees detained because they cannot pay bail at or near the time of booking; the sources of authority governing bail procedures; and the entities or persons operating under that authority. Taking the plaintiffs' plausible factual allegations as true for purposes of these motions[5] shows that bail procedures are administered in Harris County as described below.

### A.   The Sources of Bail Regulation

The Texas Constitution requires that "[a]ll prisoners shall be bailable by sufficient sureties, unless for capital offenses, when the proof is evident," and it forbids "[e]xcessive bail." TEX. CONST. art. I, §§ 11, 13. The Texas Code of Criminal Procedure states that "[t]he amount of bail to be required in any case is to be regulated by the court, judges, magistrate or officer taking the bail."

---

[5] *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) ("[C]ourts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true." (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993)).

TEX. CODE CRIM. PRO. art. 17.15.  In exercising this authority, five rules apply:

1.   The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2.   The power to require bail is not to be so used as to make it an instrument of oppression.

3.   The nature of the offense and the circumstances under which it was committed are to be considered.

4.   *The ability to make bail is to be regarded, and proof may be taken upon this point.*

5.   The future safety of a victim of the alleged offense and the community shall be considered.

*Id.* (emphasis added).  The Texas Code permits release of defendants accused of certain misdemeanors after only a citation.  *Id.*, art. 14.06.[6]

In 1987, after litigation over the unequal application of bail amounts in Harris County, the United States District Court for the Southern District of Texas entered an agreed final judgment known as the *Roberson* order.  *See Roberson v. Richardson*, Agreed Final Judgment, Civil No. 84-2974 (S.D. Tex. Nov. 25, 1987).[7]  The *Roberson* order required the County Criminal Courts at Law to "implement and maintain a bond schedule for all misdemeanor offenses within their jurisdiction." *Id.* at 4.  The bond schedule had to "establish the initial amounts of bail required in each type or category of offense."  *Id.*  Judicial officers had the authority "to order the accused released on personal bond or released on other alternatives to prescheduled bail amounts." *Id.*  County Judges had to "direct the Pretrial Services Agency to make every effort to insure that sufficient information

---

[6] The Texas Code of Criminal Procedure gives the arresting officer discretion to cite-and-release for Class A or B misdemeanors relating to possession of marijuana or certain other controlled substances, criminal mischief causing damage up to $2,500, graffiti, theft of property or service up to the value of $2,500, supplying contraband to prisoners, or driving without a license, including repeat offenses and causing damage or injury while driving without a license.  TEX. CODE CRIM. PRO. art. 14.06.

[7] The order is available at Docket Entry No. 80, Ex. 1.

is available at the time of the hearings required herein for the Judicial Officer to determine an accused's eligibility for a personal bond or alternatives to prescheduled bail amounts." *Id.* Hearings to "set bail and review the accused's suitability for release on an alternative to prescheduled bail amounts" were to occur "as soon as a Judicial Officer is available after the accused is placed in a jail operated by or under the authority of the Sheriff of Harris County." *Id*. at 2. The *Roberson* court agreed to enter additional orders if "a particular arresting agency shows a pattern of failing to produce accused persons for the hearings required within 24 hours of arrest." *Id*. at 3.

The *Roberson* order also substantially repeated the Texas Code of Criminal Procedure by requiring that "bail determinations shall be according to the following criteria":

1.  The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with;

2.  The nature of the offense for which Probable Cause has been found and the circumstances under which the offense was allegedly committed are to be considered, including both aggravating and mitigating factors for which there is reasonable ground to believe shown, if any;

3.  *The ability to make bail is to be regarded, and proof may be taken upon this point;*

4.  The future safety of the victim may be considered, and if this be a factor, release to a third person should also be considered; and

5.  The Judicial Officer shall also consider the accused's employment history, residency, family affiliations, prior criminal record, previous court appearance performance and any outstanding bonds.

*Id*. at 3 (emphasis added).

The Texas Government Code permits County Judges to "adopt rules consistent with the Code of Criminal Procedure . . . for practice and procedure in the courts. A rule may be adopted by a two-thirds vote of the judges." Tex. Gov't Code § 75.403(f). On March 7, 2016, the Harris County Criminal Courts at Law Judges, sitting en banc and voting by two-thirds majority, adopted the current Harris County Criminal Courts at Law Rules of Court. These Rules of Court contain a

5

misdemeanor bail schedule, set out as Rule 9.  Current Rule 4.2.3.1. provides that "[t]he initial bail amount may be changed on motion of the court, the hearing officer, or any party subject to the following criteria":

> 4.2.3.1.1.   the bail shall be sufficiently high to give reasonable assurance that the defendant will comply with the undertaking;
>
> 4.2.3.1.2.   the nature of the offense for which probable cause has been found and the circumstances under which the offense was allegedly committed are to be considered, including both aggravating and mitigating factors for which there is reasonable ground to believe shown, if any;
>
> 4.2.3.1.3.   *the ability to make bail is to be regarded, and proof may be taken upon this point;*
>
> 4.2.3.1.4.   the future safety of the victim and the community may be considered, and if this is a factor, release to a third person should also be considered; and
>
> 4.2.3.1.5.   the criminal law hearing officer shall also consider the employment history, residency, family affiliations, prior criminal record, previous court appearance performance, and any outstanding bonds of the accused.

*Id.*, Rule 4.2.3 (emphasis added).  The current Harris County Rules of Court require that "all law enforcement officials in Harris County shall cause the pretrial detainees in their respective custody, who have been charged with a class A or class B misdemeanor, to be delivered to the criminal law hearing officer not later than 24 hours after arrest." *Id.*, Rule 4.2.1.1.  In addition to finding probable cause for the arrest, Hearing Officers are to "set the amount of bail required of the accused for release and *shall determine the eligibility of the accused for release on personal bond*, cash bond, surety bond, or other alternative to scheduled bail amounts, and shall issue a signed order remanding the defendant to the custody of the sheriff."  *Id.*, Rule 4.2.2.1.11. (emphasis added).

On August 12, 2016, the County Judges amended the County Rules of Court to provide that "personal bonds"—unsecured recognizance bonds—"are favored" in twelve specific misdemeanor

categories.[8]  *Id.*, Rule 12.  Rule 12 lists five circumstances in which personal bonds "are disfavored," including that "the defendant has demonstrated a risk to reoffend or harm society" or "has previously failed to appear in court as instructed."  *Id.*

In the present case, the plaintiffs allege that the defendants fail or refuse to comply with the *Roberson* order or the provisions of the Texas Code requiring them to consider an arrestee's inability to pay bail or eligibility for release on terms other than the scheduled bail amounts at the first hearing, which all parties agree is the probable-cause hearing before a Hearing Officer.  The issue in this litigation is how what happens to those arrested for misdemeanor offenses and who are unable to pay their bail at the time of arrest compares to what happens to those who can and do pay the scheduled bail amounts.  The complaint allegations describe what happens after arrest.

### B.    The Alleged Postarrest Procedures

The plaintiffs allege that despite the federal, state, and local regulations requiring judicial officers at the first hearing to consider a misdemeanor defendant's inability to pay bail or eligibility for release on nonfinancial conditions, Harris County maintains a "systemic custom of setting secured financial conditions of release on the bail schedule without any inquiry into or findings concerning an arrestee's present ability to pay the amount set."  (Docket Entry No. 54 ¶ 17).  The complaint alleges that this systemic custom arises from written policies in the County Rules of Court, rules informally communicated to the Hearing Officers, and unwritten customs or practices of the Hearing Officers, County Judges, and County Sheriff.  (*See, e.g.*, *id.* ¶¶ 17, 54–55, 63–64, 84–85, 92–94, 97).

---

[8]  The twelve misdemeanors for which personal bonds are favored include: (1) theft by check; (2) driving with an invalid license; (3) gambling offenses; (4) illegal dumping; (5) fictitious vehicle license plate or registration; (6) prostitution; (7) violation of laws regulating sexually oriented businesses; (8) public intoxication; (9) driving without a license; (10) class B criminal trespass; (11) class B retail theft; (12) possessing marijuana or certain other controlled substances.  RULES OF COURT, Rule 12.

The complaint alleges that the rules, customs, or practices work as follows:

- Misdemeanor arrestees in Harris County are taken either to field offices or directly to the County Jail for processing after arrest.  (*Id.* ¶ 35).

- When a person is arrested without a warrant, "the arresting officer will determine whether the Harris County District Attorney's Office wishes to pursue the charge by calling a hotline that is staffed 24 hours a day, 7 days a week by Harris County's assistant district attorneys."  (*Id.* ¶ 36).  If the district attorney decides to pursue the charge, she instructs the arresting officer to impose money bail.  (*Id.* ¶ 38).  The Harris County Rules of Court require the district attorney to "follow the bail schedule" or provide "a signed order from a judge or judicial officer setting bail at a different amount."  RULES OF COURT, Rules 2.3.1.1–2.

- If a person is arrested under a warrant, the amount that the bond schedule sets is written on the warrant.  (Docket Entry No. 54 ¶ 43).

- According to the complaint, "[a]t no point does any person perform any inquiry into the arrestee's ability to pay the money bail amount written on the schedule" during the arrest or consultation with the district attorney's office.  (*Id.* ¶ 38).

- At the field office or at booking at the Harris County Jail, arrestees able to pay the set bail amount and who are subject to no other reason for detention may post bond and be released at this point, within a few hours after arrest.  (*Id.* ¶¶ 41–42, 44).

- For arrestees taken to the Harris County Jail for booking, the Sheriff's deputies and Pretrial Services personnel know whether the arrestee is subject to any non-monetary holds, and whether those without holds can pay the secured money bail amount and be released or not.  (*Id.* ¶ 40, 44, 101).

- Those who can afford to pay may avoid detention in different ways.  If an arrestee's

application to a for-profit bail bond agent is accepted, the arrestee can pay a nonrefundable fee to the bail bond agent and the agent will stand surety for the arrestee's release. The complaint alleges that the fee in Harris County usually exceeds 10 percent of the scheduled bond amount for low money bail amounts. (*Id.* ¶ 44 n.8). Those aware of outstanding arrest warrants may proactively pay the bonding agency fee for a "non-arrest bond" and avoid arrest and detention altogether. (*Id.* ¶ 123). Those who can obtain counsel may arrange payment of bail at a courthouse, set a court date, and avoid the process of arrest and detention. (*Id.* ¶ 124).

- Those without sufficient money to pay bail are limited to a track that subjects them to longer detention than wealthier arrestees. That discrepancy is the basis for this suit.

- Those who cannot (or do not) pay the scheduled bail amount are booked into the County Jail. (*Id.* ¶ 44). At booking, Harris County Pretrial Services prepares an informational form on each arrestee, recording personal information, criminal history, employment information, and information about sources of income and family support. (*See* Docket Entry No. 80 at 15–16). This information gives the Hearing Officer, and other officers, the basis to know if the defendant is eligible for release on nonfinancial conditions and cannot afford the prescheduled, or any, amount of bail. (Docket Entry No. 54 ¶ 101).

- After booking, arrestees are taken to a room in the jail. They appear by videolink before a Hearing Officer—a County magistrate judge. (*Id.* ¶ 51). This is the first judicial officer the defendant encounters. The hearing is conducted entirely by videolink, and indigent arrestees do not yet have a lawyer provided to them. (*Id.* ¶¶ 69–70).

- The Hearing Officer determines if there is probable cause for the arrest and sets bail. (*Id.*). In setting bail, the Hearing Officer, like the district attorney, must "refer[]" to the bail

schedule, but the Hearing Officer may modify the bail amount or grant an unsecured personal recognizance bond under the *Roberson* factors codified in the County Rules of Court.  RULES OF COURT, Rules 4.2.2.1.11 and 4.2.3.1.  The Hearing Officer has available at the videolink hearing the information on each arrestee's prior record, including arrests or convictions for felonies or violent acts, and information about any other nonfinancial reasons for continued pretrial detention with no bail or a higher bail amount. (Docket Entry No. 54 ¶ 101).  The Hearing Officer also has the arrestee's financial information collected by Pretrial Services.  (*Id.*).

- While "[t]he County strives to hold these hearings within 24 hours of arrest for people charged with misdemeanors," and "[i]t usually takes between 8 and 24 hours for a person arrested in Harris County to be given a probable cause hearing," the complaint alleges that "hundreds of people every month must wait several days as a matter of practice." (*Id.* ¶ 51, 58).  In addition to the facts of the plaintiffs' arrests, described below, the complaint provides a sampling of arrest data from the Harris County district clerk's website on August 30, 2016.  That data shows four arrestees who had been held for at least two or three days without a videolink hearing before a Hearing Officer.[9] (*Id.* ¶ 47 n.10).

- The videolink hearing before a Hearing Officer is a brief, "rote exercise." (*Id.* ¶ 67).  By rule, each video hearing is recorded and the recording is maintained for at least 120 days. RULES OF COURT, Rule 4.2.1.1.  Hundreds of these recordings—according to the complaint—demonstrate their perfunctory nature.  The hearings typically last a minute or less.  (Docket Entry No. 54 ¶ 67).  The misdemeanor defendants are warned not to

---

[9] The plaintiffs allege that the four arrestees, Julio Ruiz, Blanchard B. Stewart, Michael Ray Mata, and Oscar Balbarbo, had no nonfinancial holds on their records and were detained solely "because they had not paid their money bail."  (Docket Entry No. 54 ¶ 47 n.10).

10

speak—about anything—lest they incriminate themselves.  (*Id.* ¶ 69).  The Hearing Officers routinely, as a matter of consistent practice, apply the bail schedule without raising or considering any arrestee's financial circumstances; without considering a lower bail or alternatives to secured financial bail; and without permitting the arrestee to speak, much less meaningfully raise an inability to pay bail or seek release on a personal bond.  (*Id.* ¶¶ 60, 64–73).  Misdemeanor defendants who are granted personal bonds—8 percent of all misdemeanor arrestees—are granted the bonds on the basis of the charge against them or their criminal history, and not because their ability or inability to pay was considered.  (*Id.* ¶ 79–80).

- After the videolink probable-cause hearing, a misdemeanor defendant is taken to a County Court at Law, usually within one business day after the probable-cause hearing.  (*Id.* ¶ 96). When the probable-cause hearing occurs on a Friday, the defendant remains in jail through the weekend.  If the following Monday is a holiday, the detention is extended to at least three days.  (*Id.*)

- The appearance at a County Court at Law before a County Judge is the first formal adversary proceeding for a misdemeanor defendant.  Those who cannot afford counsel may have an attorney appointed for them at this hearing.[10]  The complaint alleges that at this point, "there is, as a matter of practice, no review of the money bail amount previously imposed." Instead, County Judges "reduce money bail amounts previously imposed in less than 1 percent of cases."  (*Id.* ¶ 97 (citing James Pinkerton and Laura Caruba, *Tough bail policies punish the poor and the sick, critics say*, HOUSTON CHRONICLE, Dec. 26, 2015)).

---

[10] Under *Gideon v. Wainwright*, 371 U.S. 344 (1963), the Sixth Amendment right to counsel attaches at the initiation of adversarial proceedings against the accused.  *See also Massiah v. United States*, 377 U.S. 201 (1964).

- If an attorney is appointed at this hearing, that attorney may file a motion to reduce or remove the money bail condition, but the complaint alleges that it typically takes at least one week for these motions to be heard. (*Id*. ¶ 104). For these defendants, detention lasts until at least a week after arrest. (*Id*.).

The complaint alleges significant consequences following a "systemic custom of setting secured financial conditions of release based on the bail schedule without any inquiry into or findings concerning an arrestee's present ability to pay the amount set." (*Id*. ¶ 17). During processing at the County jail, an arrestee's family members or legal counsel are unable to reach him or her unless the scheduled bail amount can be paid. (*Id*. ¶¶ 49–50). If the bail is not paid, a misdemeanor arrestee remains unreachable until assigned to a housing unit, sometimes days after arrest and even after the probable-cause hearing before a Hearing Officer. (*Id*. ¶¶ 92–95).

Another alleged consequence is that misdemeanor defendants often plead guilty as the only way to "get out of custody more quickly." (*Id*. ¶ 98). The complaint alleges that the County Judges routinely accept guilty pleas from defendants at their initial appearances and sentence them to time served, immediately releasing those who plead guilty while continuing to detain those who cannot pay but want to contest the charges. (*Id*. ¶ 100). The added detention, the complaint alleges, is imposed as a cost for exercising their constitutional right to a trial. (*Id*. ¶¶ 98–99). A study of Harris County misdemeanor pleas forthcoming in the *Stanford Law Review* shows that 76.8 percent of detained misdemeanor defendants plead guilty, compared to only 52.8 of defendants released on bond. (*Id*. ¶ 100 (citing Heaton *et al.*, *The Downstream Consequences of Misdemeanor Pretrial Detention*, 69 STAN. L. REV. (forthcoming))).

The complaint alleges that the Harris County District Attorney, County Judges, Hearing Officers, and County Sheriff "know that many of the detained individuals . . . charged with

12

misdemeanors are being held in jail solely because they are too poor to pay the money bail amount set by the predetermined schedule." (*Id.* ¶ 101). Information collected before and during booking is available to the Hearing Officers, County Judges, and County Sheriff, including the misdemeanor arrestees' financial condition and whether they are ineligible for release for reasons unrelated to their inability to pay bail. (*Id.*). The district attorney or her assistants, and Sheriff Hickman or his deputies, are present at the videolink probable-cause hearings before the Hearing Officers. (*Id.* ¶¶ 56, 60). According to the plaintiffs' summary of the videolink-hearing recordings, the Hearing Officers or the Sheriff's deputies instruct the misdemeanor defendants to remain silent during the hearings. (*Id.* ¶¶ 23, 70). The Hearing Officers routinely disclaim any ability to grant personal bonds or consider inability to pay. Instead, the Hearing Officers act as if they were required to impose the scheduled bond amounts as the only available release condition. (*Id.* ¶¶ 69–76, 85–89). The complaint alleges that this squarely violates the Texas Code requirement that "the ability to make bail is to be regarded, and proof may be taken upon this point," TEX. CODE CRIM. PRO. art. 17.15; the *Roberson* court order that the eligibility for release on conditions other than the preset bail amount be considered at the first hearing before a judicial officer, Agreed Final Judgment, *Roberson*, Civil No. 84-2974; and the written Harris County Rules of Court requirement that Hearing Officers consider inability to pay and eligibility for release on nonfinancial conditions, RULES OF COURT, Rules 4.2.2.1.11, 4.2.3.1.3. County Judges, the complaint alleges, acquiesce in the Hearing Officers' unwritten customs and practices of violating the federal, state, and local laws as written. The County Judges formally and informally ratify the customs and practices by requiring the denial of pretrial release for misdemeanor arrestees across the system in the written and unwritten rules they promulgate, as well as in the individual cases in which they confirm the scheduled bail amounts as the only available condition of release. (Docket Entry No. 54 ¶ 103). The

complaint alleges that the County Judges have additional unwritten practices and customs that they require the Hearing Officers to follow, such as an unwritten policy that no homeless defendant may be considered for release on a personal bond.  (*Id*. ¶¶ 84–85).

### C.   The Complaint Allegations as to the Individual Plaintiffs

Maranda Lynn ODonnell was arrested on May 18, 2016 for driving with a suspended license. (Docket Entry No. 54 ¶ 22).  The district attorney set her bail at $2,500, the prescheduled amount. (*Id*.).  She could not afford to pay any bail amount.  (*Id*. ¶ 24).  The Sheriff's deputies told her not to speak at her brief, videolink probable-cause hearing.  (*Id*. ¶ 23).  The defendants allege that Ms. ODonnell had a criminal record consisting of two previous failures to appear in court.  (Docket Entry No. 80 at 22).  The defendants allege that Ms. ODonnell could pay the bail amount and was "released on bail" on May 20, 2016.[11]  (*Id*.).

Robert Ryan Ford was arrested on May 18, 2016 for misdemeanor theft of property.  (Docket Entry No. 80 at 23).  Mr. Ford did not have a probable-cause hearing until the morning of May 20, when, at a brief videolink appearance, the Hearing Officer set his bail at $5,000, the prescheduled amount.  (Docket Entry No. 54 ¶ 31 & n.14).  Mr. Ford could not afford to pay any bail amount. (*Id*. ¶ 32).  The defendants allege that Mr. Ford has a criminal history, including two felonies in the last ten years.  (Docket Entry No. 80 at 23).  At his first court appearance on May 23—five days after his arrest—Mr. Ford pleaded guilty and was released with a sentence of time served.  (*Id*.).

Loetha McGruder was arrested on May 19, 2016 for the misdemeanor offense of giving a false name to a police officer.  (*Id*. at 24).  A $5,000 bail, the prescheduled amount, was set and confirmed at the videolink probable-cause hearing.  (Docket Entry No. 54 ¶¶ 26–27).  She could not

---

[11]  None of the parties' filings indicate when or under what circumstances Ms. ODonnell was released from confinement.  The County Judges produce a bond securing release for Ms. ODonnell signed May 20, 2016.  (Docket Entry No. 80, Ex. 14).

afford any bail amount.  (*Id.* ¶ 28).  At a hearing before a County Judge on May 23—four days after

her arrest—the bail was reduced to a personal bond, and Ms. McGruder was released.  (Docket Entry

No. 80 at 24, and Ex. 11).

The complaint alleges that these plaintiffs' experiences are typical of other indigent

misdemeanor defendants.[12]  According to a 2012 report, 81 percent of misdemeanor arrestees in

Harris County could not post bail at booking and were jailed.  Most of the other 19 percent could

pay and were released on bond before or at booking.  (Docket Entry No. 54 ¶ 52).  Harris County

Pretrial Services annual reports indicate that in 2014, an average of 144 people were admitted to the

jail each day on misdemeanor charges; in 2015, 40 percent were still in detention when their cases

resolved, most often by a guilty plea.  (*Id.* ¶ 53 nn.12–13, 108).

### D.   Procedural History

Ms. ODonnell filed her complaint on May 19, 2016, while still in pretrial detention in the

Harris County Jail.  (Docket Entry No. 3).  Ms. McGruder and Mr. Ford filed their complaint the

next day, while they were both in pretrial detention.  Civil No. 16-1436 (S.D. Tex. May 20, 2016).

The court consolidated the cases on August 18, 2016.  (Docket Entry No. 41).

Ms. ODonnell's original complaint named Harris County, Harris County's five Hearing

Officers, and County Sheriff Ron Hickman as defendants.  The defendants filed a joint motion to

dismiss on June 24, 2016.  (Docket Entry No. 25).  At the motion hearing on August 28, 2016, the

court granted the plaintiffs time to consider amending to add any proper parties for the prospective

relief alleged in the complaint.  (Docket Entry No. 43).  The plaintiffs amended on August 31, 2016,

adding the sixteen Harris County Criminal Courts at Law Judges as defendants.  (Docket Entry No.

---

[12]  The plaintiffs' motion to certify a class under Federal Rule of Civil Procedure 23 will be heard
in February 2017.

54).  The complaint alleges a systemic and knowing violation of the Due Process and Equal Protection Clauses of the United States Constitution by the defendants' detention of misdemeanor arrestees without regard for their ability to pay secured financial conditions of release, while permitting release at booking for defendants able to pay bail.  The complaint seeks injunctive and declaratory relief from the County Judges and Sheriff in their official and personal capacities, injunctive and declaratory relief against Harris County, and declaratory relief against the Hearing Officers in their official and personal capacities.

The County Judges moved to dismiss the complaint on November 9, 2016.  (Docket Entry Nos. 80–82).  They argue that the named plaintiffs lacked standing under Federal Rule of Civil Procedure 12(b)(1), and that the complaint failed to state a plausible claim for relief under Rule 12(b)(6).  They argue that their role in setting bail procedures for the County entitled them to immunity from suit.  Finally, they argue that this court should dismiss by abstaining under *Younger v. Harris*, 401 U.S. 37 (1971).

Harris County, the Sheriff, and the Hearing Officers agree with and incorporate by reference the County Judges' constitutional and abstention arguments.  They also filed separate motions to dismiss, asserting their own immunity defenses and arguing that the plaintiffs have failed to identify a final municipal policymaker and therefore cannot show that Harris County is liable under 42 U.S.C. § 1983.  (Docket Entry Nos. 83–85).

The court considers each argument and the plaintiffs' responses, based on the pleadings, the record, the legal standards, and the oral arguments of counsel presented at lengthy hearings held in August and November 2016.

## II.      The Legal Standards

### A.      Standing Challenges under Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) applies to challenges to a plaintiff's standing.  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation and internal quotation marks omitted).  A court lacks power to decide a claim that a plaintiff lacks standing to bring.  The plaintiff has the burden of demonstrating that subject-matter jurisdiction exists.  *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

Standing requires: "(1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury."  *Croft v. Governor of Tex.*, 562 F.3d 735, 745 (5th Cir. 2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  As "the party invoking federal jurisdiction," the plaintiffs "bear[ ] the burden of establishing these elements."  *Lujan*, 504 U.S. at 561. They must meet this burden "'with the manner and degree of evidence required at the successive stages of the litigation,'" which means that "on a motion to dismiss, plaintiffs must allege facts that give rise to a plausible claim of . . . standing."  *Cornerstone Christian Sch. v. Univ. Interscholastic League*, 563 F.3d 127, 133–34 (5th Cir. 2009) (quoting *Lujan*, 504 U.S. at 561). When a complaint seeks multiple kinds of relief, the plaintiff must show standing "for each type of relief sought."  *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)).

Courts may dismiss for lack of subject-matter jurisdiction based on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented

by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). When examining a factual challenge to subject-matter jurisdiction under Rule 12(b)(1), which does not implicate the merits of a plaintiff's cause of action, the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997); *see also Clark*, 798 F.2d at 741. The court may consider matters outside the pleadings, such as testimony and affidavits, to resolve a factual challenge to subject-matter jurisdiction, without converting the motion to dismiss to one for summary judgment. *See Garcia*, 104 F.3d at 1261.

### B.     Pleading Sufficiency under Rule 12(b)(6)

A pleading is deficient and may be dismissed under Rule 12(b)(6) if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

"[I]n deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry

to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum, Inc*., 78 F.3d 1015, 1018 (5th Cir. 1996).  A court may "consider documents integral to and explicitly relied on in the complaint, that the defendant appends to his motion to dismiss, as well as the full text of documents that are partially quoted or referred to in the complaint." *In re Sec. Litig. BMC Software, Inc*., 183 F.Supp.2d 860, 882 (S.D. Tex. 2001) (internal quotation marks omitted).  Consideration of documents attached to a defendant's motion to dismiss is limited to "documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Scanlan v. Tex. A & M. Univ*., 343 F.3d 533, 536 (5th Cir. 2003) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).  The court may consider these extrinsic materials without converting to a summary-judgment motion.  *See Isquith v. Middle S. Utils., Inc*., 847 F.2d 186, 193 n.3 (5th Cir. 1988) (quoting 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366).

## C.     Section 1983

"Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).  A local government may not be sued under § 1983 for the deprivation of rights guaranteed by the Constitution or federal law inflicted solely by its employees or agents. Instead, it is "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government entity is responsible under § 1983." *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978).  To plausibly allege a claim under § 1983 against a municipality, "a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588

F.3d 838, 847 (5th Cir. 2009).

An official policy can be either "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers," or a "governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 690–91. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see also Peterson*, 588 F.3d at 847. ("It usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy.") (quotation marks omitted). "*Monell*'s 'policy or custom' requirement applies in § 1983 cases irrespective of whether the relief sought is monetary or prospective." *Los Angeles Cty. v. Humphries*, 562 U.S. 29, 39 (2010).

"[A] municipal judge acting in his or her judicial capacity to enforce state law does not act as a municipal official or lawmaker" for purposes of § 1983 liability. *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *see also Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980) (distinguishing a county judge's "judicial duties" from his "executive, legislative and administrative chores in the day-to-day governance of the county."). A municipality may be held liable for "deprivations resulting from the decisions of its duly constituted legislative body." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997). A claim against a municipal defendant in her official capacity is the equivalent of a claim against the municipality itself. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

"[S]uits against States and their agencies . . . are barred regardless of the relief sought" by

the Eleventh Amendment to the United States Constitution. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citing *Ex parte Young*, 209 U.S. 123 (1908); *Cory v. White*, 457 U.S. 85 (1982)). There is a narrow exception to Eleventh Amendment immunity for suits brought against individuals in their official capacity, as agents of the state or a state entity, if the relief sought is injunctive in nature and prospective in effect. *See Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir.1998) (citing *Young*, 209 U.S. at 123).

    **D.**    **Abstention**

As long as a federal court has jurisdiction over an action, the "'obligation' to hear and decide a case is 'virtually unflagging.'" *Sprint Communications, Inc. v. Jacobs*, 134 S.Ct. 584, 591 (2013) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). In *Younger v. Harris*, 401 U.S. at 37, the federal-court plaintiff was simultaneously defending a state criminal prosecution. It was proper for the federal court to abstain from exercising its jurisdiction to hear the case "under 'the basic doctrine of equity jurisprudence that courts of equity should not act . . . to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief.'" *Sprint*, 134 S.Ct. at 591 (quoting *Younger*, 401 U.S. at 43–44).

Abstention under *Younger* is warranted when three conditions are met: "(1) the dispute must involve an ongoing state judicial proceeding, (2) an important state interest in the subject matter of the proceeding must be implicated, and (3) the state proceeding must afford an adequate opportunity to raise the constitutional challenge." *M. D. v. Perry*, 799 F.Supp.2d 712, 715 n.3 (S.D. Tex. 2011) (citing *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)) (internal quotation marks omitted). Unless all three conditions are present, *Younger* abstention is improper, and the plaintiff has the burden to show that the opportunity to raise the constitutional challenge in

a state proceeding is inadequate. *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 14 (1987) (citing *Moore v. Sims*, 442 U.S. 415, 429–30 (1979); *Younger*, 401 U.S. at 45). If the alleged ongoing proceeding is not a criminal proceeding or a quasi-criminal civil enforcement action, the three factors are "not dispositive." *Sprint*, 134 S.Ct. at 593.

## III.    The Issues All the Defendants Raise

### A.    The Plaintiffs' Standing

Because there are warrants pending in both Harris County and Galveston County for Ms. ODonnell's failure to appear for misdemeanor court proceedings, the defendants argue that Ms. ODonnell's claims should be dismissed under the fugitive-disentitlement doctrine. They also allege that Ms. ODonnell was able to pay her bail when she was arrested, undermining her standing to sue here. Finally, they argue that because of her criminal background and history of failing to appear, Ms. ODonnell was not imprisoned "solely" because she could not afford to pay any bail amount. (Docket Entry No. 80 at 45–47).

The fugitive-disentitlement doctrine is discretionary, sparingly invoked, and rarely applied. *Degen v. United States*, 517 U.S. 820 (1996). When it does apply, it is usually in criminal appeals, immigration, and civil forfeiture cases. *Giri v. Keisler*, 507 F.3d 833 (5th Cir. 2007) (per curiam) (extending doctrine to appellate review of Board of Immigration Appeals decisions); *United States v. Hinojosa*, 273 F.3d 1107 (5th Cir. 2001) (per curiam) (dismissing appeal in criminal case under the doctrine); 28 U.S.C. § 2466(a) (civil forfeiture fugitive-disentitlement provision). It has not been applied in this circuit to challenges under § 1983.[13] The doctrine is intended to prevent defendants

---

[13]  The defendants cite out-of-circuit cases to support applying the doctrine here. Those cases are readily distinguishable. *Sarlund v. Anderson*, 205 F.3d 973, 975 (7th Cir. 2000) (dismissing appeal because "[t]he risk of abuse of process is particularly great . . . given the number of defendants and the more than likelihood that the suit is completely frivolous"); *Hughes v. Colorado Dept. of Corr.*, Civil No. 07-354, 2009 WL 3074619, at *4 (D. Col. Sept. 21, 2009) (noting that the fugitive plaintiff's legal representation was

appealing in criminal cases from obtaining a favorable ruling while escaping unfavorable results or impending proceedings. *See Degen*, 517 U.S. at 820; *Bright v. Holder*, 649 F.3d 397, 400 (5th Cir. 2011); *Giri*, 507 F.3d at 835–36 (quoting *Sapoundijev v. Ashcroft*, 376 F.3d 727, 728–29 (7th Cir. 2004)). This case is not a criminal appeal, and Ms. ODonnell's failure to appear in County Court will not permit her to escape negative rulings this court might make. She seeks an injunction against using only secured-money bail for misdemeanor defendants without considering their inability to pay at the same time those able to pay bail can secure release. If the court rules against Ms. ODonnell, she will continue to be subject to Harris County's bail policies and practices. Neither the law nor the record provides a basis to dismiss Ms. ODonnell's claims under the fugitive-disentitlement doctrine.

Accepting the assertions that Ms. ODonnell did in fact have the ability to pay bail or that she was jailed because of her criminal background and not her inability to pay would require the court to resolve disputed facts that go to the merits. These assertions are not standing objections. *See Bond v. United States*, 564 U.S. 211, 218–19 (2011) (sufficiency of factual allegations should not be confused with justiciability of the controversy). Even taking the defendants' factual allegations on these points as true, Ms. ODonnell would have standing to bring her claim. Ms. ODonnell alleges that no judicial officer timely considered her inability to pay or her eligibility for release despite her criminal history, and that this outcome is typical for misdemeanor defendants in Harris County. The defendants' allegations do not resolve Ms. ODonnell's claims.[14]

---

"severely compromised" by his absence); *Colorado v. Platteville Police Dept.*, Civil No. 07-486, 2008 WL 3669079, at *1, *3 (W.D. Wisc. Apr. 21, 2008) (dismissing plaintiff's constitutional claim because plaintiff had not communicated with lawyer, shown up for depositions, or responded to motions, thus severely prejudicing defendants). The defendants do not argue that they have suffered prejudice from Ms. ODonnell's absence.

[14]  The defendants make the same argument with regard to Mr. Ford. Their motion to dismiss under Rule 12(b)(1) is denied for the same reasons.

As to Ms. McGruder, the defendants argue that she "is the prime example of the system functioning as it should."  (Docket Entry No. 80 at 48).  They argue that Ms. McGruder "was not held in jail," because a County Judge granted her request for a personal bond "on the first business day after her" probable-cause hearing.  (*Id.* at 47).  The defendants do not adequately account for the calendar.  A weekend intervened before the "next business day."  Ms. McGruder stayed in detention on her misdemeanor charge for four days, despite the fact that, as the defendants admit, she was eligible for prompt release on a personal bond based on her inability to pay and on the absence of any other basis for detention.  Whether Ms. McGruder received due process and equal protection goes to the merits.  This is not a proper standing objection under Rule 12(b)(1).

The defendants' motion to dismiss the plaintiffs' claims for lack of standing under Rule 12(b)(1) is denied.

## B.     The Legal Standard for the Constitutional Challenges to Pretrial Detention

### 1.     Excessive Bail

Bail may be set at "an amount reasonably calculated to ensure the defendant's presence at trial." *Broussard v. Parish of Orleans*, 318 F.3d 644, 650 (5th Cir. 2003) (citing *Stack v. Boyle*, 342 U.S. 1, 5 (1951)); *see also Schlib v. Kuebel*, 404 U.S. 357, 365 ("Bail, of course, is basic to our system of law, and the Eighth Amendment's proscription of excessive bail has been assumed to have application to the States through the Fourteenth Amendment.").  The defendants argue that the plaintiffs' complaint "is simply a disguised excessive bail challenge under the Eighth Amendment." (Docket Entry No. 80 at 32).  They cite precedents holding that an inability to pay does not make bail excessive under the Eighth Amendment or unreasonable under state law.  *See United States v. McConnell*, 842 F.2d 105, 107 (5th Cir. 1988) ("[A] bail setting is not constitutionally excessive merely because a defendant is financially unable to satisfy the requirement."); *Simon v. Woodson*,

454 F.2d 161, 166 (5th Cir. 1972) ("[T]he ability to make bond is an important element in fixing an appropriate amount therefor, but it cannot be said that the Constitution requires that it alone be controlling."); *Jobe v. State*, 482 S.W.3d 300, 302 (Tex. App.—Eastland 2016, pet. ref'd) (if ability to pay is the sole criterion, "the role of the trial court in setting bond would be eliminated, and the accused would be in the position to determine what his bail should be").

The cases the defendants cite involved one-off complaints about excessive bail. These cases did not raise the inability to pay, or that issue was irrelevant in light of felony charges or a high risk of flight or danger.[15] In this case, by contrast, the plaintiffs directly challenge an alleged systematic policy of illegal detention in the timing of misdemeanor defendants' release based on the inability to pay bail and an alleged refusal to consider alternatives to secured money bail for misdemeanor offenses, as state and federal law require. The plaintiffs do not challenge the existence of the bail schedule or the specific amounts set out in the schedule, but rather the defendants' alleged refusal to consider any alternatives to financial-release conditions for misdemeanor defendants unable to pay bail and the delay in considering the inability to pay as a basis for release. This case is not properly characterized as an Eighth Amendment challenge to excessive bail.

### 2.    Equal Protection

The defendants argue that the Fourteenth Amendment is an improper basis for relief, first because disparate impact is insufficient to state a § 1983 claim, and second because the

---

[15] *See, e.g., McConnell*, 842 F.2d at 106, 108 (defendant charged with two counts of bank fraud carrying 5-year sentence; the court noted that "it is clear that the court was motivated by concern that McConnell might flee"); *Simon*, 454 F.2d at 162–63 (defendant charged with felony assault on an officer carrying life sentence); *United States v. Cordero*, 166 F.3d 334 (4th Cir. 1998) (unpublished table decision) (defendant charged with a drug felony carrying 10-year sentence; the court noted that "the fact that a defendant is financially incapable of satisfying the bail requirement does not violate the Eighth Amendment if the district court finds that the defendant is a flight risk or a danger to the community" (citing *McConnell*, 842 F.2d at 109–10)); *United States v. Jessup*, 757 F.2d 378, 380 (1st Cir. 1985) (defendant charged with a drug felony carrying a statutory presumption that a defendant will likely flee before trial).

government's legitimate interest in ensuring that criminal defendants appear for trial satisfies rational-basis review. (Docket Entry No. 80 at 36–38). The defendants cite cases on racial discrimination for the proposition that disparate impact is not actionable under § 1983, and that the plaintiffs must instead plausibly allege discriminatory intent. *See Manley v. Texas Southern Univ.*, 107 F.Supp.3d 721 (S.D. Tex. 2015) (citing *Priester v. Lowndes County*, 354 F.3d 414, 424 (5th Cir. 2004)). The defendants argue that even if the Harris County Rules of Court did discriminate based on wealth, the case should be dismissed under rational-basis review because the government "has a substantial interest in ensuring that persons accused of crimes are available for trials and, ultimately, for service of their sentences" and "confinement of such persons pending trial is a legitimate means of furthering that interest." *Bell v. Wolfish*, 441 U.S. 520, 534 (1979).

These arguments raise strong points. But they overlook circuit law that requires courts to consider challenges to pretrial detention based on indigence with particular care. "[I]mprisonment solely because of indigent status is invidious discrimination and not constitutionally permissible." *Pugh v. Rainwater*, 572 F.2d 1053, 1056 (5th Cir. 1978) (en banc) (citing *Williams v. Illinois*, 399 U.S. 235 (1970); *Tate v. Short*, 401 U.S. 395 (1971)). The state has a "compelling interest in assuring the presence at trial of persons charged with crime. Yet such individuals remain clothed with a presumption of innocence and with their constitutional guarantees intact." *Id.* (footnote omitted).

The Fifth Circuit panel decision in *Pugh v. Rainwater*, 557 F.2d 1189 (5th Cir. 1977), applied strict scrutiny to a § 1983 Equal Protection Clause claim challenging Florida's alleged refusal to consider inability to pay in setting bail. The panel noted that although the Supreme Court did not consider wealth a suspect classification, "the Court has been extremely sensitive to classifications based on wealth in the context of criminal prosecutions." *Id.* at 1196. The panel

applied strict scrutiny because the claim implicated "fundamental" Fourteenth Amendment rights to be presumed innocent and presumptively eligible for release before trial and criminal conviction. *Id*. at 1197.  The panel decision was vacated en banc after Florida changed its bail rules while the appeal was pending.  *See Pugh v. Rainwater*, 572 F.2d at 1055.  The en banc court affirmed the panel's basis for its ruling, stating that "[a]t the outset we accept the principle that imprisonment solely because of indigent status is invidious discrimination and not constitutionally permissible." *Id.* (citing *Williams*, 399 U.S. at 235; *Tate*, 401 U.S. at 395).

These statements remain the applicable law in this circuit, based on subsequent case law developments.  In *Williams*, 399 U.S. at 235, the Supreme Court held that a facially neutral system of imprisoning convicted defendants who did not pay their fines "works an invidious discrimination" as applied to indigent defendants.  *Id*. at 242.  The majority did not explicitly call for heightened scrutiny but used a functionally similar analysis, finding the government's "substantial and legitimate interest" in collecting revenue from fines did not justify an "invidious discrimination" against those unable to afford the fines.  *Id.* at 238, 242.  A concurring opinion noted that the majority had not applied ordinary rational-basis review to the Equal Protection Clause challenge. *See id.* at 259 (Harlan, J., concurring in the judgment).  In *Bearden v. Georgia*, 461 U.S. 660 (1983), the Court acknowledged without taking a clear position that the Court's equal protection jurisprudence in collateral detention cases was "substantially similar to asking directly the due process question of whether and when it is fundamentally unfair or arbitrary for the State to revoke probation when an indigent is unable to pay the fine."  *Id*. at 665–66.  The Court reasoned that the answer to that question "cannot be resolved by resort to easy slogans or pigeonhole analysis, but rather requires a careful inquiry into such factors as 'the nature of the individual interest affected, the extent to which it is affected, the rationality of the connection between legislative means and

purpose, [and] the existence of alternative means for effectuating the purpose . . . ." *Id*. at 666–67

(quoting *Williams*, 399 U.S. at 260 (Harlan, J., concurring)); *see also* Agreed Final Judgment,

*Roberson*, Civil No. 84-2974, at 1 (creating "a meaningful review of alternatives to pre-scheduled

bail amounts" to comport with the en banc Fifth Circuit's *Pugh* decision, 572 F.2d at 1057–58).

The defendants argue here that the court should apply rational-basis review and dismiss the

complaint. That approach represents the "pigeonhole analysis" the Supreme Court rejected and

ignores the analysis the Court applied in *Williams* and *Bearden*. *Williams*, 399 U.S. at 238–42;

*Bearden*, 461 U.S. at 666. The "careful inquiry" the Court requires in this type of case calls for a

more demanding review. *Bearden*, 461 U.S. at 666.

Even if the defendants were correct that rational-basis review applies, the court would still

deny the motion to dismiss under Rule 12(b)(6). Rational basis is a factual inquiry. Courts are

properly reluctant to dismiss without permitting plaintiffs to make a factual showing that a

government policy is irrational. *Mahone v. Addicks Util. Dist.*, 836 F.2d 921, 937–38 (5th Cir.

1988) (asserting the discretion of district courts to deny dismissal at the Rule 12(b)(6) stage on

rational-basis review).[16] That analysis requires this court to resolve critical factual disputes about

---

[16] The defendants' reliance on *Welchen v. County of Sacramento*, Civil No. 16-185, 2016 WL
5930563 (E.D. Cal. Oct. 10, 2016)*,* is unavailing. The court in *Welchen* dismissed a similar bail challenge
under Rule 12(b)(6) because it was persuaded that the rational-basis standard applied and "[t]he state's
interest in ensuring criminal defendants appear for trial dates is a legitimate one, and detaining individuals
before their arraignment is rationally related to that legitimate interest." *Id*. at *11. The court relied on *Harris
v. McRae*, 448 U.S. 297, 322 (1980), in holding that rational-basis review is appropriate "[w]here a statutory
classification does not itself impinge on a right or liberty protected by the Constitution . . . ." But in this
circuit, *Pugh* and subsequent cases lead to a different analysis. The en banc *Pugh* court made clear that
"[r]ules under which personal liberty is to be deprived are limited by the constitutional guarantees of all . . . .
The incarceration of those who cannot [meet a money bail requirement], without meaningful consideration
of other possible alternatives, infringes on both due process and equal protection requirements." 572 F.2d
at 1057; *see also id.* at 1058 ("We view such deprivation of liberty of one who is accused but not convicted
of crime as presenting a question having broader effects and constitutional implications than would appear
from a rule stated solely for the protection of indigents."); *Williams v. Farrior*, 626 F.Supp. 983, 985 (S.D.
Miss. 1986) ("For the purposes of the Fourteenth Amendment's Equal Protection Clause, it is clear that a bail
system which allows only monetary bail and does not provide for any meaningful consideration of other

the Harris County bail system.  The parties dispute, for example, whether secured bail ensures attendance at court proceedings, (*compare* Docket Entry No. 54 ¶ 132 *with* No. 80 at 37–38); whether the plaintiffs had an opportunity to raise their inability to pay within 48 hours of arrest, (*compare* No. 54 ¶¶ 21–32 *with* No. 80 at 46–48); and whether a typical misdemeanor defendant is detained solely for inability to pay bail, (*compare* No. 54 ¶¶ 51, 121 *with* No. 80 at 20 n.28).  On the last point alone, the plaintiffs allege hundreds of misdemeanor defendants detained solely by indigence; the defendants allege the number is "very small, if any."  (*Id.*).  These disputes go to the merits of the rationality and legitimacy of the government's bail procedure.  Without a developed factual record these disputes cannot be resolved.  A motion to dismiss is not the right way to resolve these disputes.

The equal protection claim survives the motion to dismiss.

### 3.    Due Process

The defendants argue that the complaint fails to state a due-process claim because the plaintiffs admit that "it usually takes between 8 and 24 hours for a person arrested in Harris County to be given a probable cause hearing," (Docket Entry No. 54 ¶ 51), and "[t]he Supreme Court has set a presumptively reasonable 48-hour probable cause deadline following arrest."  (Docket Entry No. 80 at 35) (citing *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991); *Gerstein v. Pugh*, 420 U.S. 103 (1975).  This argument is unpersuasive.

In *Gerstein*, the Supreme Court held that "the Fourth Amendment requires a timely judicial determination of probable case as a prerequisite to detention."  420 U.S. at 126.  While a rule

---

possible alternatives for indigent pretrial detainees infringes on both equal protection and due process requirements."); *United States v. Flowers*, 946 F.Supp.2d 1295 (M.D. Ala. 2013) ("[I]t violates the Constitution's guarantee of equal protection under the laws to convert a fine-only sentence into a prison term based on inability to pay.").

requiring courts to determine probable cause before every arrest "would constitute an intolerable handicap for legitimate law enforcement," *id*. at 113, the Fourth Amendment's "balance between individual and public interests always has been thought to define the 'process that is due' for seizures of person or property in criminal cases," *id*. at 125 n.27. *Riverside* defined that process by holding that if the probable-cause hearing is held within 48 hours of arrest, the burden is on the plaintiff to show that the time between the arrest and the hearing was unreasonable in the circumstances. After 48 hours, the burden shifts to the government to show the delay was reasonable. 500 U.S. at 57. The *Riverside* Court recognized that under this standard, states could choose to combine probable-cause hearings with other pretrial proceedings if "those proceedings . . . arise very early in the pretrial process—such as bail hearings and arraignments." *Id*. at 58. "Even then," the Court noted, "every effort must be made to expedite the combined proceedings." *Id*. (citing *Gerstein*, 420 U.S. at 124).

The plaintiffs allege that although the Hearing Officers attempt to hold probable-cause hearings within 48 hours after arrest, the hearings are at best fleeting and perfunctory. (Docket Entry No. 54 ¶ 67). The misdemeanor arrestees appear by videolink. (*Id*. ¶ 56). The plaintiffs allege that the Hearing Officers deliberately and inflexibly refuse to consider the inability to meet financial conditions of release. Instead, the Hearing Officers mechanically impose the scheduled bail amounts. (*Id*. ¶¶ 64–73). The arrestees are told not to speak. (*Id*. ¶¶ 23, 70). If this is a "bail hearing" for *Riverside* purposes, it clearly does not include consideration of indigence. Nor is it clear that the *Riverside* 48-hour presumptions would apply to the inquiry into the inability to pay bail or the eligibility for release on nonfinancial conditions. These are both inquiries judicial officers must make "every effort . . . to expedite." *Id*. In the Fourth Amendment's probable-cause context, courts have held state actors to significantly shorter periods to conduct "administrative

30

tasks." *See, e.g.*, *Sanders v. City of Houston*, 543 F.Supp. 694 (S.D. Tex. 1982) (city enjoined from detaining prisoners more than 24 hours to complete administrative tasks). Or courts have found factual disputes that must be resolved before the court could rule on whether a delay was reasonable under due process. *See, e.g., Berry v. Baca*, 379 F.3d 764 (9th Cir. 2004) (jury must determine whether a 29-hour delay after authorized release was reasonable); *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432 (7th Cir. 1986) (jury must decide whether 4-hour delay between arrest and appearance before magistrate was reasonable).

The 48-hour probable-cause-hearing standard announced in *Riverside* is not a safe harbor for the defendants under Rule 12(b)(6).[17] The plaintiffs do not challenge the timing of the probable-cause hearings. They challenge the delay before any judicial officer allows a misdemeanor arrestee an opportunity to raise the inability to pay bail or eligibility for release on a personal bond; they challenge the Hearing Officers' refusal to consider nonfinancial conditions of release; and they challenge the refusal of the County Judges to allow categories of misdemeanor arrestees, including those who are homeless, to be considered for release on nonfinancial conditions. The plaintiffs allege customs or practices of delaying this hearing for up to a week, until indigent defendants have court-appointed counsel who move for a hearing on the inability to pay bail or the eligibility for release without financial conditions. (Docket Entry No. 54 ¶ 104).

In short, the plaintiffs do not challenge the federal, state, and local rules that, as written, require judicial officers to consider inability to pay bail within 24 hours of arrest. Rather, the

---

[17] *Collins v. Ainsworth*, 382 F.3d 529 (5th Cir. 2004), does not support a safe harbor. The Fifth Circuit noted that under Mississippi law, "[t]here is no right to post bail within 24 hours of arrest." *Id*. at 545. The summary judgment evidence showed that the plaintiffs were arrested on Sunday night and able to post bond on Monday morning, and that this delay was reasonable based on the practical need to bring judges to the rural detention center. For that reason, and unlike the allegations in this case, the delay applied equally to all arrestees. Those who could pay bail were not released any sooner than those who could not, and all arrestees were released at the earliest practical opportunity.

plaintiffs allege customs or practices of applying these rules in ways that amount to County policies that violate due process because of timing; and that violate equal protection by discriminating on the basis of wealth, or more precisely, poverty, with an insistence on financial release conditions.[18]

Even if the law were clear that considering inability to pay bail within 48 hours of arrest is sufficient due process, the plausible factual allegations in the complaint make dismissal inappropriate.  At least two of the named plaintiffs allegedly remained in detention for at least four days before they could even raise their inability to pay bail and eligibility for release on a personal bond before a judicial officer.  (Docket Entry No. 54 ¶¶ 25–32).  The plaintiffs allege that hundreds of recorded probable-cause hearings show that Hearing Officers refuse to consider the inability to pay bail or to consider alternatives to release on financial conditions.  Statistical studies show that the County Judges confirm the imposition of prescheduled bail amounts in 99 percent of the misdemeanor-arrest cases.  (*Id*. ¶¶ 51, 97).  Even if 48 hours is the standard for due process—and the parties agree that 48 hours would be the outer limit—the complaint alleges sufficient facts to support a plausible inference that the defendants have violated the plaintiffs' due-process rights.[19]

---

[18]  The claim is similar to that in *Turner v. Rogers*, 564 U.S. 431 (2011), in which the Supreme Court found a Due Process Clause violation after a father was incarcerated for civil contempt without an inquiry into his inability to pay child support and written state law required that such an inquiry be made.  *Id.* at 449.

[19]  As *Bearden*, discussed above, noted, the level of review for due-process challenges to pretrial detention is functionally similar to that for equal-protection challenges.  461 U.S. at 665–66.  The defendants point to *Bell*, 441 U.S. at 520, for the proposition that challenges to pretrial detention merit only rational-basis review.  *Bell* held that challenges to the *conditions* of pretrial detention—such as overcrowding, the quality of food or of medical care, and the like—deserve rational-basis review.  Challenges to the legality of the detention itself merit the more searching review of *Williams*, 399 U.S. at 235, *Tate*, 401 U.S. at 395, *Bearden*, 461 U.S. at 665–66, and *Pugh*, 572 F.2d at 1056.  *See United States v. Salerno*, 481 U.S. 739, 748–51 (1987) (restrictions on pretrial release of adult arrestees must be carefully limited to serve a compelling governmental interest); *see also United States v. Montalvo-Murillo*, 495 U.S. 711, 716 (1990) (release prior to trial is a "vital liberty interest"); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 781 (9th Cir. 2014) (en banc) (applying strict scrutiny to challenge of pretrial detention under the Due Process Clause).

The due-process claim survives the motion to dismiss.

### 4.    The Conclusion on the Constitutional Challenges

The plaintiffs have alleged sufficient facts to support plausible claims that their constitutional rights have been, are, and likely will be violated.  Even if the court reviewed Harris County's policies under the rational-basis standard—and the controlling law indicates that a more demanding review is required—this case turns on factual disputes about the County's pretrial bail system and the legitimacy of the government's interest in detaining indigent misdemeanor defendants who are eligible for release but for their inability to pay the scheduled bail amount. Those disputes preclude granting the motion to dismiss the constitutional claims.

"[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).  Detaining "arrestees charged with serious felonies who are found after an adversary hearing to pose a threat to the safety of individuals or to the community" falls "within that carefully limited exception."  *Id.*  The disputes in this case include whether detaining a misdemeanor arrestee solely because that individual cannot pay the scheduled bail amount to obtain release on bond is rationally related to a legitimate government interest or is sufficiently tailored to a substantial government interest to stand.  A more developed factual record is necessary to answer these questions.

The defendants' motion to dismiss for failure to state a constitutional claim is denied.

### C.    *Younger* Abstention

The defendants argue that all three conditions for *Younger* abstention are met because the plaintiffs "were in ongoing criminal proceedings at the time they filed their Original Complaint," the bail procedure to ensure appearance at trial is an important state interest, and the plaintiffs have an adequate opportunity to challenge their bail in the very proceedings at issue or through filing

habeas corpus petitions.  (Docket Entry No. 80 at 26–30).

Younger abstention typically applies, as Younger itself did, when an ongoing state criminal prosecution is challenged.  Can Younger apply to a case involving pretrial detention proceedings that are not themselves criminal prosecutions, when the underlying prosecutions are concluded?  The Supreme Court has cautioned "that federal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not 'refus[e] to decide a case in deference to the States."  Sprint, 134 S.Ct. at 588 (quoting New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 368 (1989) (NOPSI)).  "Circumstances fitting within the Younger doctrine . . . are 'exceptional'; they include, as catalogued in NOPSI, 'state criminal prosecutions,' 'civil enforcement proceedings,' and 'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.'"  Id. (quoting NOPSI, 491 U.S. at 367–68).

In Pugh v. Rainwater, 483 F.2d 778 (5th Cir. 1973), arrestees filed a class action challenging detention without a probable-cause hearing.  Id. at 780–81.  In deciding that Younger abstention did not apply, the Fifth Circuit reasoned that the suit "sought no relief which would impede pending or future prosecutions on various charges in the state courts" because the class action was not "against any pending or future court proceedings as such."  Id. at 781–82 (quoting Fuentes v. Shevin, 407 U.S. 67, 71 n.3 (1971)).  The challenge to pretrial detention did not affect the merits of any subsequent criminal prosecution, and the allegedly unconstitutional pretrial detention could not be raised as a defense in the criminal proceeding.  As the Fifth Circuit noted, "If these plaintiffs were barred by Younger from this forum, what relief might they obtain in their state court trials?  Since their pre-trial incarceration would have ended as of the time of trial, no remedy would exist.  Their claims to pre-trial preliminary hearings would be mooted by conviction or exoneration."  Id. at 782.

34

On appeal, the Supreme Court agreed that *Younger* was inapplicable because "[t]he [federal] injunction was not directed at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing." *Gerstein*, 420 U.S. at 108 n.9.

The plaintiffs challenge the legality of detaining misdemeanor arrestees who are otherwise eligible for release pending trial or guilty plea without timely judicial consideration of the inability to pay a bail bond.  Resolving this issue does not affect the merits of subsequent criminal prosecutions.  The inability to pay bail cannot be raised as a defense in a subsequent criminal prosecution.  The complaint alleges that many misdemeanor defendants plead guilty to end their pretrial detention.  (Docket Entry No. 54 ¶ 100).  The Fifth Circuit's reasoning applies squarely to a case such as plaintiff Robert Ryan Ford's, in which a misdemeanor defendant moots his own constitutional claims over the delay in obtaining release by pleading guilty to end that delay.  (*See* Docket Entry No. 80 at 23).

Even if *Younger* applied to a case challenging pretrial detention, this case would fail *Younger*'s conditions for abstention.  On the first prong, the defendants insist that although the underlying misdemeanor prosecutions against the named plaintiffs are over, the court should still abstain because those prosecutions were ongoing when this litigation began.  (*Id*. at 26).  In *Ankenbrandt v. Richards*, 504 U.S. 689 (1992), the Supreme Court held that *Younger* abstention did not apply when state proceedings are over before a federal action is filed.  *Id*. at 705.  Most courts do not abstain under *Younger* if there are no ongoing state proceedings when the motion to abstain is filed, even if state proceedings were pending when the case was first filed in federal court.  *See, e.g.*, *Rocky Mountain Gun Owners v. Williams*, — F.App'x —, 2016 WL 6574000, at *3 (10th Cir. Nov. 7, 2016) ("The district court made a clearly erroneous factual finding that the parallel state court proceedings were still ongoing *at the time it granted the Secretary's motion to dismiss on*

Younger *abstention grounds*." (emphasis added)); *Winter v. Wolnitzek*, 834 F.3d 681, 688 (6th Cir. 2016) ("In the absence of an ongoing enforcement action, *Younger* has no role to play, leaving us with authority, indeed an obligation, to resolve the case."); *Banks v. Slay*, 789 F.3d 919, 923 (8th Cir. 2015) (abstention was inappropriate because the state appellate case ended and plaintiffs did not petition the state supreme court); *Mounkes v. Conklin*, 922 F.Supp. 1501, 1511 n.5 (D. Kan. 1996) (if the state pretrial detention proceedings had already terminated when the court ruled, "*Younger* abstention would not apply").   In this case, there is no dispute that the named plaintiffs' underlying state-court cases are over.   At this stage, there are no ongoing state proceedings to which this court can or should defer.

Courts are divided on whether the availability of a habeas corpus petition can make and keep a terminated proceeding "ongoing" for *Younger* purposes.   In a challenge to Indiana's bail system, the court in *Mudd v. Busse*, 437 F.Supp. 505 (N.D. Ind. 1977), found that a state statute providing for motions to reduce bail (with the right of appeal of the decision) as well as habeas corpus proceedings provided adequate state remedies in ongoing proceedings.   *Id.* at 513–16.   But most courts do not consider the availability of a separately filed state action when analyzing *Younger*'s first factor.   *See, e.g., Fernandez v. Trias Monge*, 586 F.2d 848, 852–53 (1st Cir. 1978);   *A.T. v. Cook Cty.*, 613 F.Supp. 775, 778–80 & n.7 (N.D. Ill. 1985);   *Coleman v. Stanziani*, 570 F.Supp. 679, 687 (E.D. Pa. 1983).   Indeed, if *Younger* applied to any state claim that could be filed, the rule that § 1983 has no exhaustion requirement would be effectively overturned.   *See Monroe v. Pape*, 365 U.S. 167, 183 (1961).

The defendants argue that if a class is certified, some absent class members may have ongoing criminal cases when the court is asked to issue an injunction.   (Docket Entry No. 80 at 26). The court has not ruled on the class certification motion.   It is premature to rule on the assumption

that a class action will be certified and meet *Younger*'s first factor.  *See Hicks v. Miranda*, 422 U.S.

332, 349 (1975) (*Younger* abstention may apply if state proceedings are initiated after suit is filed

in federal court).  Other courts have ruled that class certification satisfies the first factor of *Younger*.

*See Mudd*, 437 F.Supp. at 510 ("The definition of the plaintiff class virtually guarantees that some

proceeding involving at least one member of the class is now pending or will be pending in [state

court] at the time an order is entered in this case."), *aff'd*, 482 F.2d 1283 (7th Cir. 1978)

("proceedings are now in process for other members of the plaintiff class").  The second and third

factors, however, must also be satisfied.

On the second factor, a state has a clear interest in ensuring that persons subject to criminal

prosecution appear at hearings.  *See Bell*, 441 U.S. at 534 ("[T]he Government has a substantial

interest in ensuring that persons accused of crimes are available for trials."); *Pugh*, 572 F.2d at 1056

(a state "has a compelling interest in assuring the presence at trial of persons charged with crime").

The plaintiffs argue that the State's interest in ensuring that misdemeanor arrestees appear at court

is not implicated because the relief sought will not significantly diminish the ability to enforce an

appearance.  (Docket Entry No. 92 at 13).  The issue, however, is not how much the State's interests

will be affected, but whether those interests are important.  *See Middlesex*, 457 U.S. at 432

("Proceedings necessary for the vindication of important state policies or for the functioning of the

state judicial system also evidence the state's substantial interest in the litigation." (citing *Trainor*

*v. Hernandez*, 431 U.S. 434 (1977); *Juidice v. Vail*, 430 U.S. 327 (1977)).  In this case, they are.

The third factor, the adequacy of a timely hearing, is precisely what the plaintiffs are

challenging in this case.  But *Younger* abstention "naturally presupposes the opportunity to raise and

have timely decided by a competent state tribunal the federal issues involved."  *Gibson v. Berryhill*,

411 U.S. 564, 577 (1973).  To find that the plaintiffs have an adequate hearing on their constitutional

37

claim in state court would decide the merits.  This factor is not properly included in the abstention analysis here.  *See Rodriguez v. Providence Cmty. Corr., Inc.*, 155 F.Supp.3d 758, 765–66 (M.D. Tenn. 2015) (*Younger* abstention is inappropriate if the state proceeding would come so late that the probationers would first have to suffer the deprivation they allege).  The third factor is not met.

The defendants suggest that *Younger*'s "core policy" is implicated because "the local criminal procedure in Harris County is evolving," and administrative reform may give the plaintiffs an adequate remedy.  (Docket Entry No. 80 at 30).  The defendants note that the Local Rules of Court were amended on August 12, 2016 to state that personal unsecured bonds should be "favored" over secured money bail for twelve common nonviolent misdemeanors.  (*Id*. at 30–31).  Harris County has hired two more Hearing Officers and updated the pretrial-services informational form to collect more detailed financial information about misdemeanor arrestees earlier in the postarrest process.  (*Id.* at 31).  Because *Younger* was centrally concerned with "respect for state functions," they argue, the court should defer to these ongoing reform efforts that "would likely moot Plaintiffs' . . . constitutional claims."  (*Id*. at 30–31 (quoting *Younger*, 401 U.S. at 44)).

The defendants' reliance on *Younger* to defer to local administrative-reform efforts is misplaced.  If the potential for political reform of a challenged practice is enough for abstention, federal courts would decline to decide most cases raising those challenges, no matter how significant.  *See Sprint*, 134 S.Ct. at 593 ("Divorced from their quasi-criminal context, the three *Middlesex* conditions would extend *Younger* to virtually all parallel state and federal proceedings."). Careful case management to allow time for reform, not abstention, is the better response to the defendants' argument.  The defendants' hope for resolution on such a basis is not appropriately

considered a factor supporting dismissal based on *Younger*.[20]

The defendants' motion to dismiss under *Younger* abstention is denied.

## IV.  Section 1983's Application to Particular Defendants

### A.  Does each defendant make policy for Harris County, represent the State of Texas, or act in a personal capacity?

"State law determines whether a particular individual is a county or municipality final decision maker with respect to a certain sphere of activity." *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996).  "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)) (internal quotation marks omitted).  "[S]tate and local positive law, as well as 'custom or usage' having the force of law" determine whether a person is final policymaker. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (quoting *Praprotnik*, 485 U.S. at 124 n.1).  "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing the final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483.

In *McMillian v. Monroe County*, 520 U.S. 781 (1997), the Supreme Court found that an Alabama sheriff alleged to have suppressed exculpatory evidence was not a final county

---

[20] The Second Circuit has extended *Younger*'s comity principles to administrative and legislative regulation of criminal procedure, including bail procedures.  *See Kaufman v. Kaye*, 466 F.3d 83 (2d Cir. 2006) (citing *Wallace v. Kern*, 481 F.2d 621 (2d Cir. 1973); *Wallace v. Kern*, 499 F.2d 1345 (2d Cir. 1975); *Wallace v. Kern*, 520 F.2d 400 (2d Cir. 1975)).  Some courts outside the Second Circuit have found this reasoning persuasive.  *See Mudd*, 437 F.Supp. at 512–13; *Mounkes*, 922 F.Supp. at 1512–13.  The Fifth Circuit has not extended *Younger* this far, and the defendants' reliance on Second Circuit case law does not save their argument.

policymaker under § 1983, but rather "represents the State of Alabama."  *Id.* at 783.  The Court cautioned that "the question is not whether Sheriff Tate acts for Alabama or Monroe County in some categorical, 'all or nothing' manner.  Our cases on the liability of local governments under § 1983 instruct us to ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue."  *Id.* at 785; *see also Pembaur,* 475 U.S. at 483 ("[M]unicipalities often spread policymaking authority among various officers and official bodies.  As a result, particular officers may have authority to establish binding county policy respecting particular matters and to adjust that policy for the county in changing circumstances.").

The Court considered numerous factors to determine whether a sheriff allegedly acting to approve a policy of suppressing exculpatory evidence did so as a state or as a county policymaker.  Support for treating the sheriff as a state policymaker included general factors such as the sheriff's inclusion in the state constitution's executive article, the sheriff's subjection to the same impeachment procedures as state officers, the state-court rulings holding sheriffs liable as state actors for ordinary torts, the governor and state attorney general's power to direct the sheriff's enforcement procedures, and the fact that state statutes directed the sheriff to enforce state law in local counties but withheld authority to enforce criminal law from the counties themselves.  Factors supporting the sheriff's role as a final policymaker for the county included the county's payment of his salary and supply of his equipment, the fact that his jurisdiction was coterminous with county borders, and the fact that the sheriff was elected solely by county voters.  The Court majority decided that the balance tipped in favor of finding the sheriff a state actor for the alleged policy of suppressing exculpatory evidence, noting that "[t]he county's payment of the sheriff's salary does not translate into control over him, since the county neither has the authority to change his salary nor the discretion to refuse payment completely."  *Id.* at 791.  The four dissenters largely agreed on

40

the relevant factors but disagreed about their relative weight.  The dissenters would have treated the final three factors—the county's salary payments and the limit of the sheriff's jurisdiction and constituency to the county—decisive and find that the sheriff was a county policymaker under § 1983.  *Id.* at 804 (Ginsburg, J., dissenting).  The question is fact-intensive and requires careful judgment under applicable law.

Written federal, state, and local law requires Harris County judicial officers to consider a misdemeanor arrestee's inability to pay bail early in the postarrest process, when the defendant first encounters a judicial officer.  In Harris County, that is at the probable-cause hearing before a Hearing Officer.  The written law permits judicial officers to take proof, make findings of inability to pay, and impose nonfinancial release conditions.  TEX. CODE CRIM. PRO. art. 17.15; Agreed Final Judgment, *Roberson*, Civil No. 84-2974; RULES OF COURT 4.2.3.1.3.  The plaintiffs allege that, notwithstanding the facial requirement of the written law, Harris County follows customs or practices of invariably imposing secured money bail according to the prescheduled bail amounts, without considering inability to pay bail or eligibility for release on other conditions for unconstitutionally long periods after arrest.  (Docket Entry No. 54 ¶¶ 63–73).  The complaint alleges that at the brief probable-cause hearings, Harris County Hearing Officers "[a]s a matter of policy and practice . . . make no attempt to determine an arrestee's financial situation, and they make no inquiry into or findings concerning an arrestee's ability to pay the money bail amount that they impose."  (*Id.* ¶ 68).  The plaintiffs allege that the Hearing Officers follow this custom and practice according to "the systemic general policy instructions from Harris County Criminal Courts at Law Judges about how to administer the predetermined [bail] schedule."  (*Id.* ¶ 56).  They further allege that the Harris County Sheriff's Department, "by policy and practice, detains arrestees too poor to afford the money bail amount imposed without inquiry into and findings concerning ability to pay,"

but that the Sheriff "releases arrestees who pay their money bail," generally before or at the booking stage. (*Id.* ¶ 11, 42).

Harris County responds that it cannot be liable under § 1983 because under the *McMillian* factors, the County Judges administering bail procedures are policymakers (if at all) for the State of Texas, not Harris County. (Docket Entry 83 at 12–19). The County argues that it cannot be liable for the Hearing Officers' practices because these are subject to the County Judges' review, so the Hearing Officers cannot be "final" policymakers for the County. (*Id.* at 24–25). The County argues that because the Sheriff does not make bail policy for Harris County, his jail-administration practices cannot be the "moving force" behind the constitutional violations the plaintiffs allege. (*Id.* at 9–11 (citing *Piotrowski*, 237 F.3d at 580)).

The § 1983 policymaking liability of each party is considered in turn.

### 1.    The Harris County Criminal Courts at Law Judges

The complaint alleges what can be organized into three County Judge activities regulating Harris County bail procedures. First, the County Judges, sitting as a board and voting by a two-thirds majority, promulgate written Rules of Court. Some of these written Rules repeat the Texas Code of Criminal Procedure. Some of these Rules the County Judges enact using their discretion to make policy choices about how to implement the bail schedule. These Rules allow pretrial detention without requiring timely opportunities for arrestees to raise, and judicial officers to consider, a misdemeanor defendant's inability to pay and eligibility for nonfinancial conditions of release. Second, the County Judges oversee customs and practices, either through unwritten instructions to the Hearing Officers or knowing acquiescence in, and ratification of, their customs and practices that amend or contravene the rules as written in the Texas Code of Criminal Procedure or the Harris County Rules of Court. Finally, the County Judges affirm the Hearing Officers' bail

42

decisions in individual adjudications.

To preview the court's findings: to the extent the County Judges promulgate written and unwritten rules that are not mandated by State Code or statutes, the County Judges act as final County policymakers in a legislative or administrative capacity; to the extent the County Judges affirm the Hearing Officers in individual adjudications, they act in their judicial capacity and in that role cannot provide a basis to hold the County liable; and to the extent the County Judges act to enforce or contravene article 17.15 of the Texas Code of Criminal Procedure, they act on behalf of the State of Texas in an administrative enforcement role.

These findings are set out below.

### a.    The County Judges make policy for Harris County by enacting written bail procedures.

The Texas Constitution provides for county courts in its judiciary article.  The Constitution vests the State's judicial power "in one Supreme Court, in one Court of Criminal Appeals, in Courts of Appeals, in District Courts, in County Courts, in Commissioners Courts, in Courts of Justice of the Peace, and in such other courts as may be provided by law." TEX. CONST. ART. V, § 1; *see also id.* § 15 ("There shall be established in each county in this State a County Court.").  County judges, like "other county officers," may be removed by the county's district court judges.  *Id.* § 24.  The Texas Legislature may also establish "statutory county courts" in addition to "constitutional county courts" to handle the heavy or specialized work loads in more populous counties.  Harris County has more people than any other county in the State.  The Harris County Criminal Courts at Law are statutory county courts created to take on the work the County's size generates.  TEX. GOV'T CODE § 25.1033.

A statutory county court has the same jurisdiction and is regulated by the same rules as a

constitutional county court.  *Id*. § 25.0003.  The County Commissioners Court, an administrative body made up of Harris County-elected commissioners and a presiding County Judge, sets the County Judges' salaries, fills any County Court vacancy, and provides the County Court's facilities, equipment, and personnel such as clerks, sheriffs, and lawyers.[21]  *Id*. § 25.0005–10; TEX. CONS. ART. V, § 18(b).  Harris County Judges are elected by Harris County voters.  TEX. CONS. ART. V, § 15. The Harris County Criminal Courts at Law have exclusive original jurisdiction over Class A and Class B misdemeanors (which can result in fines greater than $500 or prison sentences) in Harris County.  *See* TEX. GOV'T CODE § 26.045.

"The county judge of a Texas county may possess [§ 1983 municipal] policymaking authority in some matters . . . such as presiding over the county's legislative body, preparing the county budget, and conducting elections, with 'virtually absolute sway over the particular tasks or areas of responsibility entrusted to him by state statute' and accountability to 'no one other than the voters for his conduct therein.'"  *Bigford v. Taylor,* 834 F.2d 1213, 1222 (5th Cir. 1988) (quoting *Familias Unidas*, 619 F.2d at 404.  In *Familis Unidas v. Briscoe*, the Fifth Circuit examined a county judge's implementation of a state statute that required an organization to disclose its members.  The court held that this decision represented the state's, not the county's, policy.  619 F.2d at 404.  But the court noted that the "unique structure of county government in Texas" gives county judges "numerous executive, legislative and administrative chores in the day-to-day governance of the county."  *Id.*  The Texas configuration of the county courts means that, "at least in those areas in which [a judge], alone, is the final authority or ultimate repository of county power," a county judge may be "a policymaker whose official conduct and decisions could be

---

[21]  The presiding judge is the county judge of the constitutional county court, not the statutory county courts at law. TEX. CONS. ART. V, §§ 15–18.

attributed to the county under section 1983." *Bigford*, 834 F.2d at 1222.  In other words, the entity

for which the County Judges act as policymakers—Harris County or Texas—turns on what policy

is at issue and on how state or county law describes which entity or office has power or control over

that issue.

The County Judges argue that they are not policymakers at all, because "the bail procedure

promulgated by the County Criminal Courts at Law Judges merely restates a federal court order [in

*Roberson*] and Texas state law."  (Docket Entry No. 80 at 40).  The County Judges correctly note

that the County Rules of Court substantially repeat the factors that judicial officers must consider

in setting bail under the federal court's *Roberson* order and under article 17.15 of the Texas Code

of Criminal Procedure.  RULES OF COURT 4.2.3.1.  But the County Judges are not limited to these

factors.  The Texas Government Code gives the County Judges broad authority to "adopt rules

consistent with the Code of Criminal Procedure . . . for practice and procedure in the courts."  TEX.

GOV'T CODE § 75.403(f).[22]  State law does not require the policy choices the plaintiffs allege and

challenge here.  State law does not require the County Judges to use only secured money bail based

solely on the scheduled bail amounts, rather than unsecured or personal bonds.  *See* RULES OF

COURT 9.1.  State law does not require district attorneys to apply the bail schedule without

considering ability to pay.  *See id.*, Rule 2.3.  State law does not prevent misdemeanor arrestees from

raising the issue of their inability to pay and eligibility for release on nonfinancial conditions until

---

[22] Harris County's submission of supplemental authority, (Docket Entry No. 114), misses this point. The County suggests that recent resolutions from the Texas Judicial Council on bail policy and practices in the State shows that regulating bail is exclusively a matter of state legislation and policy.  But the fact that the Judicial Council recommends state legislation or a constitutional amendment shows only that the Judicial Council would prefer bail regulation to become regulated exclusively by the State.  "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988).  Under the current Texas Government Code, authority to act has been delegated to county judges, who make local policymaking decisions regulating bail procedures.

45

they have counsel and are before a County Judge rather than a Hearing Officer.  *See id.*, Rule 24.3.

The plaintiffs also challenge unwritten customs or practices alleged to have the force of policy, such as the Hearing Officers' unwavering use of secured money bail rather than any consideration of unsecured or personal bonds for those unable to pay until after the probable-cause hearing when counsel can move to raise inability to pay.  (Docket Entry No. 54 ¶¶ 19, 78–86).  For these procedures at least, the County Judges allegedly make "a deliberate choice to follow a course of action" from among possible alternatives.  *See Pembaur*, 475 U.S. at 483.  In promulgating these County Rules of Court, and in implementing these unwritten customs and practices, the County Judges are not solely or simply implementing Texas state law.  Rather, the allegation is that they are unconstitutionally deviating from the State Code in Harris County, both in written rules and in unwritten customs or practices.[23]

Harris County argues that the Harris County Judges are state actors enforcing state policy because: (1) the State Constitution vests "[t]he judicial power of this State" in county courts; (2) the State vests policymaking authority only in the County Commissioners Court, not the County Courts;

---

[23] For the same reason, the County Judges' argument that "[s]ince Plaintiffs are challenging directly Texas Code of Criminal Procedure Article 17.15, the Texas Attorney General is clearly a necessary and proper party" fails.  (Docket Entry No. 80 at 1 n.1).  The complaint does not challenge the *Roberson* or Code of Criminal Procedure factors as written, or as adopted by the County Rules of Court.  The complaint challenges: (1) the other written procedures the County Judges have promulgated in their discretion within the *Roberson*/Code factors, and (2) the alleged practices of county officers that systematically contravene the rules as written.  Challenged court rules are not "state statutes" for purposes of Federal Rule of Civil Procedure 5.1.  *See, e.g., McKay v. Federspiel*, Civil No. 14-10252, 2014 WL 1400091, at *9 (E.D. Mich. Apr. 10, 2014).

Moreover, even if the plaintiffs were making a facial challenge to the Texas Code of Criminal Procedure, the County Judges have misstated the rule.  Rule 5.1 requires notice to, not joinder of, a state attorney general when a state statute is facially challenged.  The case the County Judges rely on, *NiGen Biotech, LLC v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015), recognized that the joinder of the Texas attorney general in his official capacity was proper under the Eleventh Amendment, not necessary to all challenges of a state statute.

(3) adjudicating state crimes is not County business; and (4) cases decided in other circuits have found county-level judges to be members of the state judiciary.  (Docket Entry No. 83 at 12–18). The County cites *Woods v. City of Michigan City, Ind.*, 940 F.2d 275 (7th Cir. 1991), in which the Seventh Circuit held that Indiana county judges set bond policy on behalf of the state, not on behalf of local counties or cities.[24]  The County defendants also note that the Fifth Circuit has treated Texas district judges as state actors under § 1983.  *See Hamill v. Wright*, 870 F.2d 1032, 1037 (5th Cir. 1989) (Texas district judges were not acting as county policymakers when they failed to appoint counsel in a civil contempt proceeding); *Clanton v. Harris County*, 893 F.2d 757, 758 (5th Cir. 1990) (per curiam) (same).

The plaintiffs rely on the Fifth Circuit's sovereign-immunity analysis under the Eleventh Amendment.  To determine if an official is a state or local actor for sovereign immunity purposes, the Fifth Circuit uses a six-factor test: (1) "whether the state statutes and case law view the agency as an arm of the state"; (2) whether the entity is funded by the county or the state; (3) "the entity's degree of local autonomy"; (4) "whether the entity is concerned primarily with local, as opposed to statewide, problems"; (5) "whether the entity has the authority to sue and be sued in its own name"; (6) "whether it has the right to hold and use property."  *Clark*, 798 F.2d at 744–45.  "[I]t is well established that the second [factor] is the most important."  *Hudson v. City of New Orleans*, 174 F.3d 677, 682 (5th Cir. 1999); *see also Crane v. Texas*, 766 F.2d 193 (5th Cir. 1985) (district attorneys are county actors without Eleventh Amendment immunity, based in part on county-level funding.).

Eleventh Amendment jurisprudence on the issue of state versus county policymaking is

---

[24] *See also Ward v. City of Norwalk*, 640 F.App'x 462, 464 (6th Cir. 2016) ("The Akron Municipal Court is part of the Ohio state court system, established by the Ohio legislature.  It is subject to the supervision of the Ohio Supreme Court.  The municipal court may not be abolished by the city council, nor may the council expand or restrict the court's jurisdiction." (quoting *Foster v. Walsh*, 864 F.2d 416, 418–19 (6th Cir. 1988)).

instructive but not controlling in the § 1983 context.  The source of funds for an entity is the most important Eleventh Amendment factor, "since an important goal of the Eleventh Amendment is the protection of state treasuries."  *Clark*, 798 F.2d at 744.  But the Supreme Court in *McMillian* held that county-level funding did not tip the balance to make a county sheriff a county actor under § 1983.  520 U.S. at 791.  The Fifth Circuit has nonetheless relied on *Clark*'s Eleventh Amendment analysis in examining policymaking authority under § 1983 to find that Texas district judges implement Texas State policy, not county policy, in appointing counsel for criminal defendants. *Hamill v. Wright*, 870 F.2d 1032, 1037 (5th Cir. 1989).  And although *McMillian* dealt with policies on handling evidence, the Court emphasized generally applicable factors such as the sources of authority to act and funds to operate to analyze a sheriff's liability.  520 U.S. at 791.

The balance of *McMillian* factors—informed by the Fifth Circuit's consideration of Eleventh Amendment factors in the *McMillian* analysis—favors treating the County Judges as Harris County policymakers when they promulgate written and unwritten bail procedures for all of the Harris County criminal courts for misdemeanor arrestees.  The Texas Constitution lists county judges with "other county officers" as subject to removal for cause by district judges. TEX. CONS. ART. V § 24. Three of the statutory County Judges in this case sit on a board responsible for appointing, supervising, and terminating Harris County Hearing Officers.  TEX. GOV'T CODE § 54.852.  One of the Harris County Criminal Courts at Law Judges acts as the presiding judge, tasked with serving "as chief administrator of the offices of county court manager and county court coordinators, and of pretrial release services and all other court-related ministerial services in misdemeanor cases as required by the judges having jurisdiction over those cases."  *Id*. § 75.403(d)(3).  Harris County provides the equipment and funds for the Criminal Courts at Law County Judges to operate, and to pay their salaries.  *Id*. § 25.0005, 25.0010.  The County Judges' jurisdiction is geographically

coterminous with Harris County's borders.  Only Harris County voters elect the Harris County Judges.  *Id.* § 25.1033. The County Commissioners Court fills County Court vacancies.  *Id.* § 25.0009.  Case law emphasizes the  "unique structure of county government in Texas" that grants county judges "numerous executive, legislative and administrative chores in the day-to-day governance of the county."[25]  *Briscoe*, 619 F.2d at 404.  Promulgating written rules, procedures, or policies, as well as overseeing unwritten customs or practices regulating bail, in all misdemeanor cases in every Harris County court, is among the County Judges' legislative and administrative powers and duties in Harris County governance.  As to both the written policies and procedures and the informal customs and practices challenged in this case, the County Judges have "virtually absolute sway over the particular tasks or areas of responsibility entrusted to [them] by state statute and accountability to no one other than the voters for [their] conduct therein."  *Bigford,* 834 F.2d at 1222 (internal quotation marks omitted).

Harris County argues that even if the County Judges represent Harris County rather than the State of Texas, the County cannot be held liable for policies the County Judges make in their judicial capacity.  The County points to three cases in which the Fifth Circuit declined to hold municipalities liable for judicial actors' alleged policies because "under Texas law, '[a] local judge acting in his or her judicial capacity is not considered a local government official whose actions are attributable

---

[25]  The last three factors distinguish Texas county government from the Indiana county courts and case law examined in *Woods*, 940 F.2d at 279.  *See, e.g., Parsons v. Bourff*, 739 F.Supp. 1266, 1267 (S.D. Ind. 1989) (vacancy appointment by governor was an important factor for finding that the court clerk acts on the behalf of the state); *Pruitt v. Kimbrough*, 536 F.Supp. 764, 766 (N.D. Ind. 1982) ("County government has no judicial branch under Indiana law . . . . Accordingly, Article 2 of Title 36 of the Indiana Code relating to county government, makes no reference to any county judicial office," and Lake County judges "are appointed initially through a non-partisan selection process by the governor.").

These factors also distinguish Texas county judges from the Texas district judges, who have been found to be state actors under § 1983.  *See Hamill*, 870 F.2d at 1037.  District judges do not preside over the County Commissioners Courts.  Judicial districts may encompass more than one county, and district court vacancies are filled not by a county commissioners court but by the governor.  TEX. CONST. ART. V, § 28; TEX. GOV'T CODE § 24.025.

to the county." *Davis v. Tarrant County*, 565 F.3d 214, 227 (5th Cir. 2009) (quoting *Kruegar v. Reimer*, 66 F.3d 75, 77 (5th Cir. 1995)).  The issue in *Davis* was the Texas district judges' denial of an attorney's application to be included on a list of those eligible for certain court appointments. The Fifth Circuit found that "the act of selecting applicants for inclusion on a rotation list of attorneys eligible for court appointments is inextricably linked to and cannot be separated from the act of appointing counsel in a particular case, which is clearly a judicial act . . . ." *Id.* at 226.  The County argues that this reasoning can be extrapolated to hold that the policy regulating the imposition of bail in every misdemeanor case is inextricable from the judicial act of setting bail in a particular case.  (Docket Entry No. 83 at 19–21).

To support this argument, the County also cites *Johnson v. Moore*, 958 F.2d at 92.  In that case, the plaintiff sued a municipal court judge and the municipality under § 1983, alleging that his constitutional rights were violated when the judge sentenced him to jail without appointing him counsel or obtaining a waiver of his right to counsel. *Id.* at 93.  Affirming dismissal of the plaintiff's § 1983 claims, the panel explained that "[w]e have repeatedly held . . . that a municipal judge acting in his or her judicial capacity to enforce state law does not act as a municipal official or lawmaker." *Id.* at 94 (citing *Bigford* , 834 F.2d at 1221–22; *Carbalan v. Vaughn*, 760 F.2d 662, 665 (5th Cir. 1985); *Briscoe*, 619 F.2d at 404).  The Circuit recognized that its previous decision in *Briscoe* distinguished "administrative duties," which might be actionable as municipal policy under *Monell*, from a judge's "judicial function, in which he or she effectuates state policy by applying state law." *Id.*  The *Johnson* plaintiff did not argue that the municipal judge had jailed him pursuant to "administrative or other non-judicial duties," but only that "the municipal judge [was] a final policymaker whose official actions constitute municipal policy."  *Id.*  The panel rejected the argument, explaining that it "ignores the distinction we have consistently drawn between a judge's

judicial and administrative duties. Only with respect to actions taken pursuant to his or her administrative role can a judge be said to institute municipal policy under . . . *Monell*." *Id.*

Finally, Harris County cites *Harris v. City of Austin*, Civil No. 15-956, 2016 WL 1070863 (W.D. Tex., Mar. 16, 2016), a putative class action against the Austin Municipal Court's alleged practice of failing to hold indigency hearings and provide counsel before jailing indigent defendants who could not pay traffic fines or were unwilling or unable to perform community service. The court noted that "the proposition that a municipality may be held liable based on the actions of a municipal judge where those actions are not an exercise of the judge's 'authority under state law,' but rather, are an exercise of some other type of non-judicial power conferred by the municipality, is unobjectionable." *Id.* at *6. The court found that the challenged Austin Municipal Court Rules were not municipal policy, but rather "the promulgation of rules for the orderly trial of cases," and that these rules were "more judicial than non-judicial in nature." *Id.* at *7.

*Davis, Johnson,* and *Harris* describe different circumstances from those alleged in the complaint here. The *Harris* court noted that the challenged rules in that case were "issued by judicial order signed by the Presiding Judge" and "contemplate the exercise of judicial discretion, as they do not mandate that municipal judges take any particular action with respect to any defendant." 2016 WL 1070863 at *7. The Harris County Criminal Courts at Law Rules of Court are not promulgated by a single judge's signed order. The Rules of Court are promulgated by the County Judges sitting en banc as a board, voting by two-thirds majority. *See* TEX. GOV'T CODE § 75.403(f). The Rules of Court apply not to a single court but to all the courts across one of the largest and most populous counties in the United States. The Rules of Court do not merely regulate "the orderly trial of cases," as the *Harris* court found was true of Austin's municipal court rules. 2016 WL 1070863 at *7. The Rules of Court mandate the use of secured financial bail; prescribe

presumptions in certain misdemeanor cases; provide for the appointment of counsel; promulgate a code of judicial conduct; and instruct sheriffs, district attorneys, and other county officers in how to administer their tasks of imposing and collecting secured financial bail.

The Rules of Court, both as written and as amended by customs or practices, do not merely "contemplate the exercise of judicial discretion," as in *Davis*, *Johnson*, and *Harris*. *Harris*, 2016 WL 1070863, at *7; *cf. Davis*, 565 F.3d at 227; *Johnson*, 958 F.2d at 94. The plaintiffs allege that the written bail schedule and rules have been amended by the customs or practices that require across-the-board rigid application in all courts of secured financial bail without considering eligibility for release on nonfinancial conditions or the inability to pay bail until after counsel is appointed and makes a motion raising these issues. The plaintiffs allege that the County Judges "provide[] blanket generic instructions" knowingly ratifying these customs and practices. (Docket Entry No. 54 ¶ 19). The alleged customs or practices do not give a judge discretion in any case to pick among alternative approaches. The alleged customs or practices impose rules for every case in every court. Even after the written Rules of Court were formally amended to "favor" release on personal recognizance for those arrested for twelve categories of misdemeanors, (Docket Entry No. 80 at 19), the County Judges allegedly continue to follow the customs or practices of requiring district attorneys and Hearing Officers to apply the bail schedule to require financial conditions of release for all misdemeanor defendants, and to impose the prescheduled bail amounts, detaining all those who cannot pay and delaying any opportunity to raise the inability to pay until long after wealthier defendants have posted bond and been released, (Docket Entry No. 54 ¶¶ 71–73, 84–85).

To the extent the plaintiffs rely on the County Judges' decisions to affirm the Hearing Officers' adjudications of individual cases, these actions are taken in the County Judges' judicial capacities and cannot support § 1983 liability against Harris County under the law of the Fifth

Circuit.  *See Davis*, 565 F.3d at 227; *see also DeLeon v. City of Haltom City*, 106 F.App'x 909 (5th Cir. 2004) (per curiam) (municipal judge's decision not to provide an indigency hearing in an individual case did not establish municipal policy under § 1983); *Whisenant v. City of Haltom City*, 106 F.App'x 915 (5th Cir. 2004) (per curiam) (same).  But in: (1) promulgating the written Rules of Court; (2) overseeing and enforcing the alleged unwritten policies; and (3) acquiescing in the Hearing Officers' unwritten customs or practices by refusing to correct them in the written policies, the County Judges act in a legislative or administrative capacity to set policy for Harris County.  The Harris County Rules of Court, and the alleged unwritten amendments to those Rules, are more similar to rules passed by legislative or administrative enactment than they are to court- or judge-specific rules or order involving the exercise of discretion to choose among permissible alternatives, including in the orderly process of trial.  *See Supreme Court of Virginia v. Consumers Union of U.S., Inc*., 446 U.S. 719, 731 (1980) ("Although it is clear that under Virginia law the issuance of the Bar Code was a proper function of the Virginia [Supreme] Court, propounding the Code was not an act of adjudication but one of rulemaking . . . in a legislative capacity.") (discussed further in Part IV.B.1. below); *Degen v. Gen. Coatings, Inc.*, 705 S.W.2d 734, 735 (Tex. App.—Houston [14th Dist.] 1986) ("The promulgation of rules and amendments thereto is a legislative act of the court, and the rules have the force of statutes."); *see also Esteves v. Brock*, 106 F.3d 647, 678 (5th Cir. 1997) ("For those duties that are administrative or managerial in nature, the county may be held liable for the actions of a district attorney who functions as a final policymaker for the county.").

The current pleadings and record provide a plausible basis to find that the County Judges act for Harris County in their allegedly unconstitutional policies, customs, or practices regulating bail for misdemeanor arrestees in Harris County.  The County's motion to dismiss on the this basis

is denied.

      **b.**      **The County Judges represent the State of Texas in their direct enforcement of article 17.15 of the Texas Code of Criminal Procedure.**

The Supreme Court has cautioned that the county-or-state-actor inquiry cannot be conducted in "some categorical, 'all or nothing' manner. Our cases on the liability of local governments under § 1983 instruct us to ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue." *McMillian*, 520 U.S. at 785.  And as the Court recognized in *Pembaur,* states and "municipalities often spread policymaking authority among various officers and official bodies.  As a result, particular officers may have authority to establish binding county policy respecting particular matters and to adjust that policy for the county in changing circumstances."  475 U.S. at 483.

In the "particular matters" of setting county-wide bail procedures in misdemeanor cases, the County Judges act on behalf of Harris County.  But the defendants are correct that the County Rules of Court incorporate a portion of the Texas Code of Criminal Procedure verbatim.  In their arguments for *Younger* abstention, the County Judges emphasize their role in implementing and enforcing the Texas Code of Criminal Procedure. (*See* Docket Entry No. 80 at 40–42).  The County Judges rely on a letter dated August 8, 2016 they sent to all Harris County Hearing Officers.  All sixteen County Judges signed the letter.  It instructed the Hearing Officers to follow article 17.15 of the Texas Code of Criminal Procedure and the federal court's *Roberson* order, which it attached.[26] (Docket Entry No. 80 at 17 and Ex. 4).  They also sent a letter dated November 18, 2016 to all

---

    [26] The court takes notice of this and the following letter as a public record or alternatively under the instruction that "[i]n so attaching [documents to a motion to dismiss], the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated."  *Collins*, 224 F.3d at 499.

counsel who practice in the Harris County Criminal Courts at Law. Again, all sixteen County Judges signed. This letter encouraged attorneys to review bail settings at their clients' initial court appearances. (Docket Entry No. 106 at 19 and Ex. 6). As noted, however, the initial counseled court appearances are usually after the probable-cause hearing and varying periods after wealthier defendants who can pay the scheduled bail amounts do so and are released.

The County Judges are not responsible for promulgating the State Code of Criminal Procedure. In carrying out their duties under the Code, the County Judges are effectively supervised by the State's district court judges, who can remove county judges from office. TEX. CONS. ART. V § 24. To the extent the County Judges have discretion to, and do, promulgate the County Rules of Court and oversee unwritten customs and practices for implementing bail procedures in Harris County, they are acting on the County's behalf. To the extent the County Judges are directly enforcing—or allegedly contravening—article 17.15 of the Texas Code of Criminal Procedure or the *Roberson* order in instructing the Hearing Officers regarding the factors to consider in setting bail, the County Judges act on behalf of the State of Texas, enforcing Texas law.

### c. The County Judges are not proper parties in their personal capacities.

The complaint seeks injunctive and declaratory relief against the County Judges in both their official and personal capacities. (Docket Entry No. 54 ¶ 20). The plaintiffs concede that a claim against a municipal policymaker acting in an official capacity is redundant to a claim against the municipality when it is a party. (Docket Entry No. 92 at 35); *see also Graham*, 473 U.S. at 165–66. By contrast, a claim against State officers acting in their official capacity is not duplicative of a claim against the State because the State has Eleventh Amendment immunity from suit. State actors sued in their official capacity under § 1983 may be proper parties when the claim seeks prospective relief only. *Young*, 209 U.S. at 123. State officers acting in their official capacity are not liable for

damages under § 1983 but may be sued for damages in their personal capacities.  *Will v. Michigan Dep't. of State Police*, 491 U.S. 58 (1989).

The plaintiffs here do not seek damages.  At oral argument, the plaintiffs conceded that the claims against the County Judges in their personal capacities should be dismissed.  (Docket Entry No. 122 at 77, 114–16).  The court agrees.  "[T]he phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury."  *Hafer v. Melo*, 502 U.S. 21, 26 (1991).  The plaintiffs seek prospective relief against the office of the Harris County Criminal Courts at Law Judges.  They do not seek damages from the individuals holding that office.[27]  The claims for relief against the sixteen County Judges in their personal capacities are dismissed.

In summary, County Judges in Texas play a variety of roles, in a variety of circumstances. At times they make executive appointments, at times they administer county business, at times they legislate county policy, and at times they adjudicate individual cases.  In this case, under the facts that the plaintiffs plausibly alleged, the Harris County Criminal Courts at Law Judges represent the State of Texas in enforcing article 17.15 of the Texas Code of Criminal Procedure, and they represent Harris County in making rules for, and in enforcing customs or practices on, bail procedures in the Harris County Courts.

> ### 2. The Harris County Sheriff
>
> #### a. The Sheriff is a County Policymaker to the extent he knowingly enforces invalid orders of detention.

---

[27] Courts outside this circuit have held that injunctive relief is categorically unavailable in personal-capacity § 1983 suits.  *See Hill v. Shelander*, 924 F.2d 1370, 1374 (7th Cir. 1991) ("[I]njunctive relief against a state official may be recovered only in an official capacity suit."); *accord Marsh v. Kirschner*, 31 F.Supp.2d 79, 80 (D. Conn. 1998); *Hernandez v. Kiley*, Civil No. 86-7948, 1987 WL 12194, at *2 (N.D. Ill. June 5, 1987) (plaintiffs must "surrender . . . the request for injunctive relief" if they persist in an a personal capacity suit).

County sheriffs are established under the judiciary article of the Texas Constitution.  Art. V, § 23.  Like "other county officers," county sheriffs may be removed by a state district judge presiding over the sheriff's county.  *Id.* § 24.  A vacancy in the Harris County Sheriff's office is filled by the Harris County Commissioners Court.  *Id.*, § 23.  The Sheriff is paid by the County Commissioners Courts, *id.*, art. XVI, § 61, and elected by county voters, *id.* art. V, § 23.

Under state law, a sheriff is the county policymaker for law enforcement, including for county jails.  *County of El Paso v. Dorado*, 180 S.W.3d 854, 870 (Tex. App.—El Paso 2005, pet. denied).  "[I]t has long been recognized that, in Texas, the county sheriff is the county's final policymaker in the area of law enforcement by virtue of the sheriff's election to office."  *Colle v. Brazos Cty., Tex.*, 981 F.2d 237, 244 n.35 (5th Cir. 1993) (quoting *Turner v. Upton County*, 915 F.2d 133, 136 (5th Cir. 1990)).

The defendants cite case law affirming that sheriffs have qualified immunity for damages suits when they have a good-faith belief that they are executing valid process by holding people in custody.  *See Soto v. Ortiz*, 526 F.App'x 370 (5th Cir. 2013) (citing *Whirl v. Kern*, 407 F.2d 781, 795-96 (5th Cir. 1969); *Douthit v. Jones*, 641 F.2d 345, 346-47 (5th Cir. 1981), *reh'g opinion of* 619 F.2d 527 (5th Cir. 1980)); *Jefferson v. Broadnax*, Civil No. 12-4638, 2014 WL 3747151 (N.D. Tex. July 30, 2014).  But in this case, the plaintiffs seek only prospective relief.  And the plaintiffs allege that the Sheriff knows that the detention orders he enforces are invalid but that he nonetheless detains misdemeanor defendants under those orders.  (Docket Entry No. 54 ¶¶ 9–10).  Those orders, among other things, allegedly keep the defendants in jail for the sole reason that they cannot afford to pay bail, and prevent them from timely raising their inability to pay bail or their eligibility for nonfinancial conditions of release.  (*Id.* ¶¶ 90–95).  The threshold issue is not the Sheriff's qualified immunity to a suit for damages, but his liability for prospective relief against him as a final

57

policymaker for Harris County.

Two cases in this circuit are more instructive than the qualified immunity case law.  In *Doe v. Angelina County*, 733 F.Supp. 245 (E.D. Tex 1990), a county and its sheriff were sued under § 1983 for incarcerating the plaintiff over an unpaid fine for fishing without a license.  *Id.* at 254–56.  The court found that the sheriff had a practice of detaining individuals arrested under a *capias pro fine* if they could not pay the fines on arrest.  *Id.* at 256–57.  The court decided that the sheriff's authority included implementing procedures to process individuals arrested and brought to the county jail on the basis of a *capias*, and that "[t]he sheriff's acquiescence in unsound and legally insufficient procedures effectively created a county policy for which the county is liable."  *Id.* at 257.

In *De Luna v. Hidalgo County*, 853 F.Supp.2d 623 (S.D. Tex. 2012), the court treated arraigning magistrates and the county sheriff together as municipal policymakers for promulgating an unconstitutional policy of converting fine-only offenses into detentions without inquiring into a defendant's ability and good-faith effort to pay.  The *De Luna* court reviewed the rule that deliberate indifference giving rise to liability for a municipal policy, including an unconstitutional custom or practice, "is an objective [standard]; it considers not only what the policymaker actually knew, but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights."  *Id.* at 641 (quoting *Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002)).  On a motion for summary judgment, the court found undisputed facts showing that the sheriff knew from paperwork his office collected that Class C misdemeanor defendants too poor to afford an attorney were not asked whether they could pay their fines and avoid detention.  Instead, they were simply detained.  *Id.* at 640–42.

Sheriff Hickman argues that *De Luna*'s reasoning does not apply because that case dealt with procedures for fines, not bail, and because the court found that the sheriff actually knew that the

court orders he enforced were invalid. (Docket Entry No. 100 at 2–5). But these arguments show why *De Luna*'s reasoning does apply. Fines, as Sheriff Hickman notes, are imposed only after conviction and "are purely punitive." (*Id.* at 3). *De Luna* made clear that a misdemeanor conviction does not strip away due-process rights, including the right to raise the inability to pay a fine-only punishment before that punishment is converted into detention. *See De Luna*, 286 F.Supp. at 647 (citing *Doe*, 733 F.Supp. at 248–49; *Bearden*, 461 U.S. at 665). The due process concerns in *De Luna* apply with greater force to pretrial bail, because those arrested and charged but not convicted "remain clothed with a presumption of innocence and with their constitutional guarantees intact."[28] *Pugh*, 572 F.2d at 1056.

The complaint alleges that the Harris County Sheriff, like the sheriff in *De Luna*, knows that the detention orders he enforces are invalid. The plaintiffs allege that the Sheriff has the same access as the Hearing Officers and County Judges to information showing whether misdemeanor arrestees can afford to pay bail and whether other reasons support their detention. (Docket Entry No. 54 ¶ 40). They allege that the Sheriff or his deputies attend and supervise all probable-cause hearings—which take place by videolink with the defendant at the County Jail—and observe the Hearing Officers' consistent refusal to hear or consider any defendant's inability to pay or nonfinancial conditions of release at those hearings. The complaint alleges that the Sheriff or his deputies instruct the arrestees not to speak at these hearings. (*Id.* ¶¶ 54–56, 102). The complaint also asserts that, in at least some cases, unless there is an offer to pay bail, the Sheriff delays the probable-cause hearing beyond 24 hours and keeps the misdemeanor defendant from communicating

---

[28] *See also U.S. SOI, Varden v. City of Clanton*, Civil No. 15-34, 2015 WL 5387219 (M.D. Ala. Sept. 14, 2015) (rule that the Fourteenth Amendment "prohibits punishing a person for his poverty, and this includes deprivations of liberty based on the inability to pay fixed-sum bail amounts . . . applies with special force" to pretrial defendants).

with family or counsel.  (*Id.* ¶¶ 58, 92–95).  Whether the Sheriff's alleged deliberate indifference gives rise to a municipal policy or custom turns on what the Sheriff "should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Lawson*, 286 F.3d at 264; *see also Dodds v. Logan County Sheriff's Dept*, Civil No. 8-333, 2009 WL 8747487 (W.D. Okla. Aug. 3, 2009) (sheriff liable for "deliberate indifference to the due process rights of arrestees whose bail had been pre-set" by acquiescing in a policy set by local judges); *Blumel v. Mylander*, 954 F.Supp. 1547, 1557 (M.D. Fla. 1997) (sheriff and jailer liable for violating right of pretrial release when they were "actually and constructively aware" the 48-hour requirement had been exceeded).  The parties dispute what the Sheriff knew, knows, or could reasonably be expected to know about misdemeanor defendants' first opportunity to raise their inability to pay or eligibility for release on nonfinancial conditions before a Harris County judicial officer.  Under Rule 12(b)(6), the plaintiffs have plausibly alleged sufficient facts to support a claim for relief against the Sheriff as a County policymaker at this stage of the proceedings.

"The third prong" of municipal § 1983 liability under *Monell* "requires a plaintiff to prove 'moving force' causation.  To succeed, 'a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.'"  *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (quoting *Bryan Cty.*, 520 U.S. at 404).  Harris County argues that Sheriff Hickman is not a municipal policymaker as to the rules, customs, or practices at issue because his decisions are not the "moving force" behind the plaintiffs' alleged injuries.  (Docket Entry No. 84 at 13–14). The County argues that the bail schedule is the policy about which the plaintiffs complain, but "the sheriff does not fix bail."  *Walker v. Hodge*, 4 F.3d 991, 991 n.2 (5th Cir. 1993).

The facial validity of the bail schedule or the amounts of bail is not what the plaintiffs

challenge.  To that extent, the Sheriff's argument is unpersuasive.  The Sheriff does not promulgate the bail schedule.  The Sheriff allegedly does enforce orders to detain defendants who are eligible for release but cannot pay money bail until they appear before a County Judge, have counsel appointed, and—in most cases—plead guilty primarily to get out of jail faster.  (Docket Entry No. 54 ¶¶ 92–98, 101, 128–31).  Like the *De Luna* sheriff's participation in a policy and practice of converting fine-only punishments into unconstitutional orders of detention, the Harris County Sheriff allegedly exercises his discretion: (1) to prevent misdemeanor defendants from timely raising their inability to pay bail before a judicial officer, (*id.* ¶ 23); (2) to prevent access to counsel who could timely raise the inability to pay, (*id.* ¶¶ 92–94); and (3) to detain misdemeanor arrestees who cannot pay bail even when there are no reasons for detention  (*id.* ¶ 10).  The facts as alleged support a causal link between the Sheriff's exercise of his policymaking discretion in the area of County law enforcement and the plaintiffs' alleged injuries of unequal detention without timely or due consideration of their inability to pay bail or eligibility for release on nonfinancial conditions.

In *Familias Unidas v. Briscoe*, the Fifth Circuit noted that a county judge directly implementing a state regulation, "much like that of a county sheriff in enforcing a state law, may more fairly be characterized as the effectuation of the policy of the State of Texas embodied in that statute, for which the citizens of a particular county should not bear singular responsibility."  619 F.2d at 404.  The Circuit has since determined that whether claims against a county-level actor support municipal liability turns on: (1) whether the county defendants comply with a state statute later found to be unconstitutional or whether they fail to comply with a state statute by interpreting it in an unconstitutional way; and (2) whether the state statute is "narrowly drawn, leaving little, if any, room for the exercise of discretion in its implementation."  *Crane*, 759 F.2d 412, 430 n.19 (5th Cir. 1985), *amended on denial of reh'g*, 766 F.2d 193 (5th Cir. 1985).  In the complaint, the

plaintiffs have alleged that the Sheriff knowingly and unconstitutionally applies a constitutional statute—Texas Code of Criminal Procedure article 17.15.  The plaintiffs have alleged that the Sheriff has some discretion to choose not to engage in conduct that the Sheriff knows is unconstitutional.  The complaint states a claim against the Sheriff in his official capacity and alleges facts that are vigorously disputed.  That dispute must be resolved in order to decide that the Sheriff cannot be held liable as a county policymaker for the policies challenged here.

> **b.  The Sheriff represents the State of Texas to the extent he enforces judicial orders of detention.**

Even if the complaint did not sufficiently allege that the Harris County Sheriff knows that the detention orders he enforces are invalid, the complaint states a sufficient claim against Sheriff Hickman for prospective relief in his official capacity as a Texas State law-enforcement officer. County sheriffs are established in the Texas Constitution's judiciary article.  A sheriff can be removed from office by state district judges presiding over the sheriff's county.[29]  The Texas Code of Criminal Procedure provision setting out the factors that guide an officer's discretion to set bail apply to "the court, judge, magistrate, or officer taking the bail."  TEX. CODE CRIM. PRO. art. 17.15. An "officer taking the bail" includes the jailer.  *Id*. art. 17.025.  Although typically "the sheriff does not fix bail," *Walker*, 4 F.3d at 991 n.2, and the Texas Code of Criminal Procedure requires a sheriff to execute "legal process which it is made his duty by law to execute,"  art. 2.16,[30] the five-factor discretionary test for setting bail applies by its terms to the Harris County Sheriff.  The plaintiffs allege that the Sheriff detains misdemeanor defendants on bail before a Hearing Officer sets bail and

---

[29]  The Fifth Circuit has held that district judges are state actors under § 1983 when they execute their duty to appoint counsel.  *See Hamill*, 870 F.2d at 1037.

[30]  *See also* TEX. LOCAL GOV'T CODE § 85.021 ("The sheriff shall execute all process and precepts directed to the sheriff by legal authority.").

does so under conditions that prevent access to counsel or to family absent an offer to pay the scheduled bail amount. (Docket Entry No. 54 ¶¶ 40, 48–51, 90–94).

A substantially similar case arose in a federal court in Louisiana. In *Cain v. City of New Orleans*, Civil No. 15-4479, 2016 WL 2849498 (E.D. La. May 13, 2016), the trial court dismissed a municipal liability claim for detaining defendants who failed to pay court costs without any inquiry into whether the defendants were able to pay or had made good-faith efforts to do so. *Id.* at *8 (granting the sheriff's motion to dismiss); *Cain v. City of New Orleans*, Civil No. 15-4479, 2016 WL 2849478 (E.D. La. May 13, 2016) (granting the city's motion to dismiss). The plaintiffs did not allege that the sheriff's department "detain[ed] indigent debtors on its own initiative." *Cain*, 2016 WL 2849498 at *8. Under the statutes at issue and the facts alleged, the court found that the Louisiana sheriff did not have discretion to set payment conditions or detention arrangements. The sheriff could not be sued as a municipal actor, and his conduct could not support the city's liability under the "moving force" factor of *Monell*. *Id*.

The *Cain* court did not consider the sheriff's liability for prospective relief as a state actor. In another substantially similar case, a district court in the Ninth Circuit ruled that California sheriffs are state actors when detaining misdemeanor defendants on secured financial bail under facially valid detention orders. *See Buffin v. City and Cty. of San Francisco*, Civil No. 15-4959, 2016 WL 6025486 (N.D. Cal. Oct. 14, 2016). In these circumstances, the sheriff was not a municipal policymaker, but he was still subject to prospective relief as a state actor sued in an official capacity under *Ex parte Young*. *Id.* at *9 (citing *Young*, 209 U.S. at 155–56). The relevant Texas and California statutes are similar,[31] and *Buffin*'s reasoning is persuasive here. The parties dispute

---

[31] *Compare* CAL. PENAL CODE § 1268 (defining admission to bail as the order of a competent court or magistrate) *with* TEX. CODE CRIM. PRO. art. 16.16–17 (granting judges of the court of appeals, district courts, and county courts the authority to admit to bail or issue warrants of detention for insufficient bail

whether Sheriff Hickman acts with knowledge of, or with deliberate indifference as to whether, misdemeanor defendants are detained for no reason other than their inability to pay. Based on the current pleadings and record, prospective relief could run against the Sheriff in his official capacity as a State officer tasked by State statutes with detaining misdemeanor arrestees in County Jail. *See also Echols v. Parker*, 909 F.2d 795, 800 (5th Cir. 1990) (a district attorney was a state actor in enforcing a state anti-boycott statute and the state was liable for attorney's fees under § 1988). Factual disputes as to what the Sheriff knew when misdemeanor arrestees were detained in the County Jail solely because they could not afford to pay bail precludes dismissal of the claims against the Sheriff in his official capacity.

### c.     The Sheriff is not a proper party in his personal capacity.

For the same reasons the County Judges are not properly sued in their personal capacities, the plaintiffs' personal-capacity claim against Sheriff Hickman is dismissed.[32] The plaintiffs do not seek damages but rather prospective relief against the Harris County Sheriff's office. To the extent the Sheriff is a final policymaker for Harris County, the suit against him in his official capacity is duplicative of the suit against Harris County. Should the facts show that the Sheriff enforces facially valid process without actual knowledge of, or deliberate indifference as to whether there is, a constitutional violation, the Sheriff in his official capacity is a proper party as a State actor subject to prospective relief under *Ex parte Young*. *See Buffin*, 2016 WL 6025486, at *9. The personal-capacity claim against Sheriff Hickman is dismissed.

---

collected). *Compare* CAL. PENAL CODE § 1269b (requiring judges to set a bail schedule and hold bail hearings and sheriffs to accept bail and release defendants as provided by the judicial warrants) *with* TEX. CODE CRIM. PRO. art. 15.17 (requiring a sheriff to produce a defendant before a magistrate and permitting the magistrate to admit the accused to bail); art. 17.15 (requiring the court, judge, magistrate or officer taking the bail to regulate the amount of bail), art. 17.20 (empowering sheriffs to take bail), art. 17.29 (requiring release of defendants who pay bail).

[32] See Part IV.A.1.c. above.

### 3.      The Harris County Hearing Officers

Five Harris County Hearing Officers are sued in their official and personal capacities.  Harris County argues that the Hearing Officers are not final policymakers because they do not have policymaking authority under state law and because their decisions are subject to review by the County Judges. (Docket Entry No. 83 at 24–25).  The Hearing Officers agree and argue that because they are not final policymakers, they cannot be sued in their official capacity.  (Docket Entry No. 85 at 8–9).

Hearing officers are county magistrate judges.  They are appointed, supervised, and can be removed with or without cause by a board made up of three Harris County Criminal Courts at Law County Judges, three Harris County District Court Judges, and three Harris County Justices of the Peace. TEX. GOV'T CODE § 54.852.  Under Texas law, a Hearing Officer adjudicating individual cases may "commit[] the defendant to jail, discharg[e] the defendant from custody, or admit[] the defendant to bail, as the law and facts of the case require."  TEX. GOV'T CODE § 54.856(a).

Applying the *McMillian* factors leads to the conclusion that, unlike the County Judges, the Hearing Officers are not final policymakers whose acts or omissions could be the basis for Harris County liability under *Monell*.  First, the Hearing Officers are not "final" policymakers.  They are directly supervised by a board of judges that can remove them without cause.  Their decisions to impose the scheduled bail amount in specific cases are reviewed by the County Judges, usually within one business day.  Unless the County Judges acquiesce, the Hearing Officers do not have discretion to deliberate and decide among the alternative bail procedures the Texas Code and Harris County Rules make available to them. *See Pembaur*, 475 U.S. at  482–83.  For purposes of

municipal liability, the Hearing Officers' supervisors—the County Judges—are the proper parties.[33]
*See Burge v. Parish of St. Tammany*, 187 F.3d 452 (5th Cir. 1999)  ("A court's task is to identify those officials or governmental bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation."); *accord Truvia v. Julien*, 187 F.App'x 346 (5th Cir. 2006) (dismissing suit against an assistant district attorney because only the district attorney was a final policymaker of the challenged policy); *see also Rhode v. Denson*, 776 F.2d 107, 110 (5th Cir. 1985) (a constable subordinate to a county judge "*a fortiori* could not alone make policy for [the] County").  The County Judges allegedly know of the Hearing Officers' custom or practice, approve it, and informally direct or implicitly allow it be official County policy.  The Hearing Officers cannot make county policy by their customs or practices; they provide the basis for the County Judges to do so.

Second, to the extent the Hearing Officers do view themselves as having discretion to deviate from the alleged systemwide insistence on financial conditions of release without considering the inability to pay, the Hearing Officers exercise this discretion in adjudicating the cases that come before them.  Their alleged policymaking is inextricable from the exercise of judicial functions in

---

[33]  In their filing of supplemental authority, (Docket Entry No. 118), the County Judges argue that they do not supervise the Hearing Officers because only three County Judges sit on a board with six other judicial officials to appoint hearing officers.  TEX. GOV'T CODE § 54.852.  For the reasons explained above, the court finds that the County Judges' appointment power is one factor of their control.  The board can appoint, oversee, and terminate hearing officers with or without cause, and the board can act with a quorum of six judges, of which the County Judges can make up half.  The County Judges also promulgate the written Rules of Court that direct the Hearing Officers in setting bail, and the complaint alleges that the County Judges promulgate unwritten instructions and acquiesce in the known practices of the Hearing Officers—practices the County Judges could correct in their written Rules but choose not to do so.  (*See, e.g.*, Docket Entry No. 54 ¶¶ 19, 56, 84–85).  The County Judges rely on a letter they wrote to the Hearing Officers on August 8, 2016, to argue that the court should abstain from hearing this case because the County Judges are effectively proceeding to reform the system.  (Docket Entry No. 80 at 17 and Ex. 4).  They now argue that this letter provides no evidence of their supervisory control of the Hearing Officers.  (Docket Entry No. 118 at 3).  The County Judges cannot have it both ways.  If the letter meaningfully instructed the Hearing Officers in their duties under the law, it is at least one additional factor showing that the County Judges act in a supervisory administrative or enforcement-officer role over the Hearing Officers.

individual cases.  *See Davis*, 565 F.3d at 227.  Even taking as true the plaintiffs' allegations that in every case, the Hearing Officers refuse to follow the State Code provisions requiring them to consider a misdemeanor defendant's ability to post bail or eligibility for release on nonfinancial conditions, a judge's decision in particular cases that "deliberate[ly] or mistaken[ly] depart[s] from the controlling law cannot be said to represent county policy."  *Bigford v. Taylor*, 834 F.2d 1213, 1222 (5th Cir. 1988) (internal quotation marks omitted); *see also Eggar v. City of Livingston*, 40 F.3d 312, 315 (9th Cir. 1994) ("It is lamentable, but irrelevant, that [the judge] failed miserably to meet [his] obligation under both state and federal standards: [but] he is simply not a municipal decision maker in this context."); *Harris*, 2016 WL 1070863, at *6 ("[A] municipal judge's illegal pronouncement does not become a non-judicial act merely because it is illegal.").

The official capacity claims against the Harris County Hearing Officers cannot support municipal liability against Harris County and are dismissed.  The Hearing Officers are subject to the supervision of the County and the County Judges, who are already parties.  The defendants concede that the plaintiffs have stated a sufficient claim for declaratory relief against the Hearing Officers in their personal capacities.  (Docket Entry No. 98 at 3).  The Hearing Officers remain parties to this suit only in their personal capacities and only for declaratory relief.

### 4.    Conclusion on Municipal Liability for Harris County

A municipality may be held liable for "deprivations resulting from the decisions of its duly constituted legislative body."  *Bryan Cty.*, 520 U.S. at 403.  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  *Connick*, 563 U.S. at 61.  In this case, the plaintiffs have alleged facts that would show that the Harris County Criminal Courts at Law Judges promulgate written bail procedures and oversee, ratify, and enforce systemwide practices that

amount to the County Judges' use of their policymaking discretion to deny misdemeanor defendants a timely hearing on their inability to pay bail and to deny them any alternative to financial conditions of pretrial release.  The plaintiffs have also alleged facts that would show that the County Sheriff knowingly participates in this system of unconstitutional detention by overseeing and ratifying systemwide practices preventing misdemeanor defendants from timely raising their inability to pay before the first judicial officer they encounter after arrest.

Because the "unique structure of county government in Texas" gives County Judges "numerous executive, legislative and administrative chores in the day-to-day governance of the county," *Briscoe*, 619 F.2d at 404, and because "in Texas, the county sheriff is the county's final policymaker in the area of law enforcement," *Colle*, 981 F.2d at 244 n.35, the County Judges and County Sheriff act on behalf of Harris County in promulgating the policies over which they have final authority.  To be sure, the County Judges repeat the Texas Code of Criminal Procedure article 17.15 language in their written Rules of Court.  RULES OF COURT 4.2.3.1.  To the extent that Harris County officers directly enforce that language, they do not act within their discretion as county policymakers.  But the complaint alleges significant, systemwide policies, both written and unwritten, that contravene the language of the State Code, the written County Rules of Court, as well as the *Roberson* order and case law.  For those policies and practices, Harris County is liable for prospective relief.

The motion to dismiss the claim against Harris County is denied.  To the extent the County Judges and County Sheriff act as final policymakers for Harris County in their official capacities, the claims against them are redundant to the claims against the County.  *See Graham*, 473 U.S. at 159.  But the complaint also alleges facts that would show that the County Judges and County Sheriff may at times act on behalf of the State of Texas.  To the extent that they act on the State's

behalf, the County Judges and Sheriff are liable for prospective relief in their official capacities. *Young*, 209 U.S. at 123.

The claims against the County Judges and County Sheriff in their personal capacities are dismissed. The claims against the Hearing Officers are dismissed except for declaratory relief against them in their personal capacities, which they do not move to dismiss.

### B.    Are the defendants immune from suit or from liability?

#### 1.    Harris County

"[M]unicipalities, unlike States, do not enjoy a constitutionally protected immunity from suit." *Jinks v. Richland Cty.*, 538 U.S. 456, 466 (2003). Municipalities are immune from punitive damage awards, but as to other forms of relief "a municipality, like a private corporation, [is] to be treated as a natural person subject to suit for a wide range of tortious activity . . . ." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 259–60 (1981). The plaintiffs do not seek damages, and Harris County is not immune from prospective relief based on the County Judges and the County Sheriff's acts as County policymakers.

#### 2.    Harris County Officials

The County Judges, County Sheriff, and County Hearing Officers each moved to dismiss under various theories of immunity. (Docket Entry Nos. 80, 82, 84). To the extent the court has found that these officers act in their official capacities as Harris County policymakers, the claim for prospective relief against them is redundant to the claim against the County itself. Prospective relief against a county generally runs against county actors and employees, including county judges and county sheriffs.[34] But county officials may be immune under § 1983 when they either: (1) act in a

---

[34] *See, e.g., De Luna v. Hidalgo County*, 853 F.Supp.2d 623, 626 n.1 (S.D. Tex. 2012); *Brown v. Harris County*, Civil No. 7-644, 2010 WL 774138, at *14 (S.D. Tex. Mar. 2, 2010); *Allen v. County of Galveston*, Civil No. 7-341, 2009 WL 890452, at *4 (S.D. Tex. Mar. 30, 2009); *Delgado v. Webb County*,

legislative capacity on behalf of the State, *Tenney v. Brandhove*, 341 U.S. 367, 379 (1951); or (2) act in a judicial capacity as either state or municipal actors, *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967).  Legislative immunity for state legislators is absolute as to both suits for damages and for prospective relief.  *Supreme Court of Virginia*, 446 U.S. at 734.  Judicial immunity is absolute as to damages suits.  *Pierson*, 386 U.S. at 553–54.  The Federal Courts Improvement Act of 1996, Pub. L. No. 104–317, amended § 1983 to make judicial officers acting in their judicial capacities immune from injunctive relief unless "a declaratory decree was violated or declaratory relief was unavailable."  42 U.S.C. § 1983.

### a.    The County Judges

The County Judges argue that even if they are final policymakers, they exercise "the State's entire legislative power with respect to promulgating the Local Rules of Court," and are legislatively immune from claims for declaratory or injunctive relief.  (Docket Entry No. 80 at 42).  They rely on *Supreme Court of Virginia*, 446 U.S. at 719.  In that case, a consumer organization sued the Virginia Supreme Court and its chief justice seeking a declaration that the court had violated the Constitution by promulgating a code of ethics regulating attorney advertising.  The United States Supreme Court held that in promulgating Virginia's Code of Professional Responsibility, the state supreme court and its members acted in a legislative capacity on behalf of the state and were immune from suit.  *Id.* at 732–34.

The Court first considered whether the state justices acted in their judicial capacities to promulgate the code.  The Court agreed with a dissenting opinion from the panel below that "[d]isciplinary rules are rules of general application and are statutory in character.  They act not on

---

Civil No. 4-182, 2006 WL 133468, at *2 (S.D. Tex. Jan. 17, 2006); *Connor v. Harris County*, Civil No. 88-78, 1992 WL 337420 (S.D. Tex. Sep. 17, 1992).

parties litigant but on all those who practice law in Virginia.  They do not arise out of a controversy which must be adjudicated but instead out of a need to regulate conduct for the protection of all citizens."  *Id.* at 731 (quoting *Consumers Union of U.S., Inc. v. American Bar Ass'n*, 470 F.Supp. 1055, 1064 (E.D. Va. 1979) (Warriner, J., dissenting)).  The Court concluded that the disciplinary rules were legislative, not judicial.  *Id.*

That reasoning applies here.  The Harris County Rules of Court, like the Virginia disciplinary rules, are rules of general application that regulate not just the defendants but all those who participate in the trial of misdemeanor offenses, including clerks, districts attorneys, hearing magistrates, and sheriffs.  They too arise out of the need to regulate conduct to protect all citizens, not just to adjudicate individual controversies.  The Harris County Rules of Court are, like the Virginia Code of Professional Responsibility, a legislative enactment.

The Supreme Court then reasoned that because the Virginia court was "exercising the State's entire legislative power with respect to regulating the Bar, its members are the State's legislators for the purpose of issuing the Bar Code."  *Id.* at 734.  The Court has also extended legislative immunity to local legislators sued for damages in their personal capacities.  *See Lake County Estates v. Tahoe Regional Planning Authority*, 440 U.S. 391, 405 (1979) ("Whatever potential damages liability regional legislators may face as a matter of state law, we hold that petitioners' federal claims do not encompass the recovery of damages from the members of [a regional board] acting in a legislative capacity."); *Bogan v. Scott-Harris*, 523 U.S. 44, 52–54 (1998) (legislative decisions should not "distorted by the fear of personal liability").  The Court has not ruled on whether legislative immunity shields local legislators from prospective relief as well, but its reasoning leads to that conclusion.  *See, e.g.*, *Bogan*, 523 U.S. at 52 ("Regardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial interference . . . .").

71

In this case, the County Judges are not regulating bail procedures for the State of Texas, but only for Harris County.  As local legislators, they have absolute immunity for suits from damages in their personal capacities.  But municipal liability for prospective relief would be meaningless if the ruling did not run against a municipal policymaker.  To the extent that the court finds the County Judges act as Harris County policymakers, the claim for prospective relief against them can be dismissed because they are redundant parties to the County itself, but not because they are legislatively immune to prospective relief.

The Court did not stop at the question of legislative immunity in *Supreme Court of Virginia*. It recognized that the Virginia Supreme Court "performs more than a legislative role with respect to the State Bar Code."  446 U.S. at 734.  Because the state court had independent authority to initiate disciplinary proceedings against attorneys, the Court held that the state-court judges were liable for prospective relief under § 1983 "in their enforcement capacities . . . just as other enforcement officers and agencies" could be liable.[35]  *Id.* at 736.  To the extent the County Judges are state actors in their direct enforcement of the Texas Code of Criminal Procedure article 17.15, they too are liable to prospective relief under § 1983.[36]

Since the Court issued *Supreme Court of Virginia*, Congress has amended § 1983 to prohibit injunctive relief against judges acting in their judicial capacities "unless a declaratory decree was violated or declaratory relief was unavailable."  42 U.S.C. § 1983.  As with legislative immunity, the Supreme Court takes a "functional approach" to judicial immunity.  *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435 (1993).  The "touchstone" for a judicial act is the "performance

---

[35]  And because the state supreme court heard appeals from lower court decisions in disciplinary cases, the Court noted, without deciding, that the state-court judges could be liable for declaratory or injunctive relief "with respect to their judicial acts."  *Supreme Court of Virginia*, 446 U.S. at  735–56.

[36]  See Part IV.A.1.b. above.

of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Id*. at 435–36 (quoting *Burns v. Reed*, 500 U.S. 478, 500 (1991) (Scalia, J., concurring)). In the Fifth Circuit, the test is whether: "(1) the precise act complained of . . . is a normal judicial function; (2) the events involved occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the confrontation arose directly and immediately out of a visit to the judge in his official capacity." *Harper v. Merckle*, 638 F.2d 848, 858 (5th Cir. Unit B 1981) (quoting *McAlester v. Brown*, 469 F.2d 1280, 1282 (5th Cir. 1972)).

For the reasons explained above, the County Judges do not meet the Fifth Circuit's test for judicial capacity when they promulgate written Rules of Court or oversee the unwritten customs and practices that could be corrected through the written Rules but are not. These acts and omissions do not arise out of each judge acting to resolve disputes between parties in each court. Nor are the County Judges immune from either injunctive or declaratory relief when they administer the enforcement of article 17.15 of the Texas Code of Criminal Procedure, and when they deviate from or contravene its requirements. The County Judges' letters to the Harris County Hearing Officers and the criminal defense bar of Harris County are neither judicial nor legislative acts, but rather administrative enforcement actions. The County Judges' alleged unwritten instructions to Hearing Officers to deny personal bonds to certain classes of misdemeanor defendants, such as the homeless, also qualify as the sort of prosecutorial enforcement decision the Supreme Court in *Supreme Court of Virginia* found could be subject to an injunction. 446 U.S. at 736–37; *see also Forrester v. White*, 484 U.S. 219, 229 (1988) (no absolute judicial immunity for administrative acts because "[t]hose acts—like many others involved in supervising court employees and overseeing the efficient operation of a court—may have been quite important in providing the necessary conditions of a sound adjudicative system . . . [but] were not themselves judicial or adjudicative"); *Morrison v.*

73

*Lipscomb*, 877 F.2d 463, 466 (6th Cir. 1989) (chief judge's declaration of a moratorium on issuing writs of restitution was an administrative, not a judicial, act because the moratorium was a general order not connected to any particular litigation and did not alter the rights or liabilities of any party); *Craig v. State Bar of Cal.*, 141 F.3d 1353, 1354 (9th Cir. 1998) (judge's promulgation of general rules on bar admission was nonjudicial (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 485 (1983)).

The County Judges are immune from claims for injunctive relief for their case-by-case review of Hearing Officer decisions in individual adjudications, unless a declaratory decree is violated or unavailable.  These adjudications fit the test for judicial capacity.  *See Cunningham ex rel. Cunningham v. City of W. Point, Miss.*, 380 F.App'x 419, 422 (5th Cir. 2010) (denial of bail in an individual case "was a judicial action"); *see also Green v. Mayfield*, Civil No.8-2287, 2009 WL 230161, at *2 (N.D. Tex. Jan 29, 2009) ("[s]etting bail or bond" in an individual case "'is a judicial function'") (quoting *Walczyk v. Rio*, 496 F.3d 139, 165 (2d Cir. 2007)).  But under § 1983, judges are not immune from a suit seeking a declaratory decree in these circumstances.  *See* 42 U.S.C. § 1983.

The County Judges' motion to dismiss based on immunity is denied.  As policymakers for Harris County, the County Judges are not necessary parties in their official capacities, but are subject to prospective relief imposed against the County.  As enforcers of the State Code, the County Judges are not immune from either injunctive or declaratory relief. In their judicial capacity of reviewing the Hearing Officers' decisions in individual adjudications, the County Judges are immune from injunctive relief but not declaratory relief.

### b.   The County Sheriff

Sheriff Hickman seeks dismissal under *Mays v. Sudderth*, 97 F.3d 107 (5th Cir. 1996).  In

*Mays*, the plaintiff brought a § 1983 damages action against a sheriff for an illegal arrest.  97 F.3d at 109.  The Fifth Circuit ruled that the sheriff shared the same absolute immunity from suit as the judge who issued the arrest order.  *Id.* at 113.  Government officials, the court reasoned, "should not be required to make the Hobson's choice between disobeying the court order or being haled into court to answer for damages."  *Id.* (quoting *Patterson v. Von Riesen*, 999 F.2d 1235, 1240 (8th Cir. 1993).  "[T]o the extent that the cause of action arises from his compliance with a facially valid judicial order issued by a court acting within its jurisdiction," the court held that "an official acting within the scope of his authority is absolutely immune from a suit for damages."  *Id.*  "However, [an officer] enjoys only qualified immunity for those routine duties not explicitly commanded by a court decree or by the judge's instructions."  *Clay v. Allen*, 242 F.3d 679, 682 (5th Cir. 2001) (internal citation omitted).

Immunity under *May*'s judicial-function rule does not apply here.  The plaintiffs do not sue Sheriff Hickman for damages in his personal capacity.  A suit for prospective relief against officers acting in their official capacities is the core exception to official immunity under *Ex parte Young*, 209 U.S. at 123.  Even if Sheriff Hickman could claim quasi-judicial immunity in this case, that immunity would extend only as far as it does for the County Judges and Hearing Officers who issue orders of detention that Sheriff Hickman receives and implements.  As discussed above, judges acting in their judicial capacities are not immune from suits seeking declaratory relief.  Finally, the complaint alleges that the Sheriff performs "routine duties not explicitly commanded by a court decree or by the judge's instructions."  *Clay*, 242 F.3d at 682.  Those routine actions include advising misdemeanor defendants not to speak at their probable-cause hearings, including to raise their inability to pay bail, and keeping misdemeanor defendants from speaking with their families or legal counsel unless there is first an offer to pay bail.  (Docket Entry No. 54 ¶¶ 23, 49–50).  There

75

is no basis to dismiss the Harris County Sheriff for reasons of immunity.

### c.    The County Hearing Officers

For the reasons discussed above, the Hearing Officers acting in their judicial capacities in adjudicating misdemeanor cases are immune from injunctive relief under § 1983 but not from declarative relief.  The plaintiffs sue the Hearing Officers only for declaratory relief.  There is no basis to dismiss them for reasons of immunity.

## V.    Conclusion

In 1871, "Congress enacted § 1983 to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it."  *Hafer*, 502 U.S. at 28 (internal citations and quotation marks omitted).  Because "municipalities often spread policymaking authority among various officers and official bodies," *Pembaur*, 475 U.S. at 483, identifying the proper actors and authorities for § 1983 liability requires a legally and factually detailed inquiry.  Multiple and overlapping authorities may contribute to a policy of denying freedom from pretrial detention to those accused in misdemeanor cases solely because they are too poor to pay a bail bond, or a policy of releasing wealthier misdemeanor defendants while detaining the indigent for days without a hearing on their inability to pay or eligibility for release on nonfinancial conditions.  But the existence of multiple and overlapping authorities cannot, on its own, shield officers or official bodies from liability.  The complaint alleges sufficient facts to plausibly claim that Harris County acts through its County Judges and County Sheriff to detain misdemeanor defendants without a timely inquiry into their inability to pay or their eligibility for release on nonfinancial conditions.  The plaintiffs also state sufficient facts to plausibly allege that the County Judges and Sheriff act on their own to enforce particular provisions of Texas law and are proper parties for prospective relief in

their official capacities.

The defendants' motions to dismiss, (Docket Entry Nos. 80, 83–85), are granted in part and denied in part.  The court dismisses the personal-capacity claims against Sheriff Hickman and the Harris County Courts at Criminal Law Judges, and the official-capacity claim against the Harris County Hearing Officers.  The court denies the motions to dismiss Sheriff Hickman and the County Judges in their official capacities and the motion to dismiss Harris County.  The Hearing Officers did not move to dismiss the claims against them in their personal capacities.

On the basis of the plausible factual allegations in the complaint, (Docket Entry No. 54), Harris County may be sued for the written and customary policies that the County Judges and the County Sheriff promulgate in their official capacities.  To the extent they act administratively to directly enforce article 17.15 of the State Code of Criminal Procedure, the County Judges do not have judicial immunity and can be sued for prospective relief running against them as state enforcement officers.  Similarly, to the extent the record shows that the Sheriff is enforcing the State Code and executing facially valid judicial orders without knowledge or deliberate indifference to their invalidity, he is a proper party as a State officer.

The County Judges and Hearing Officers are judicially immune from injunctive relief to the extent they perform judicial functions in adjudicating individual cases.  They are not immune from declaratory relief.  Nor are the County Judges legislatively immune from injunctive or declaratory relief in their capacities as rulemakers and enforcement officers of the Harris County bail procedures, whether those rules are promulgated formally in writing or informally through custom and practice.  Harris County and the County Sheriff are not immune from either injunctive or declaratory relief.

 The court will hear arguments on February 21, 2016, on the plaintiffs' motions for class

certification and a preliminary injunction, (Docket Entry Nos. 1–2), and on the defendants' motion for partial summary judgment, (Docket Entry No. 101). The defendants' arguments to dismiss under Rule 12(b)(1) standing, *Younger* abstention, and failure to identify a final municipal policymaker are denied with prejudice. But the parties are not foreclosed from providing additional briefing on the constitutional standard of review or the issue of immunity from prospective relief as they argue the likelihood of the plaintiffs' success on the merits.

SIGNED on December 16, 2016, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge