In The United States District Court
For The Southern District of Texas
Houston Division

Maranda Lynn Odonnell, et al., §
§
On behalf of themselves §
and all others similarly §
situated, §
§
Plaintiffs, § Civil Action No.
§
VS. § H-16-1414
§
Harris County, Texas, et al, § { To be construed
§   as a Plaintiff's
Defendants. §   Motion to Compel
§   Permanent Injunction
§   and Relief }

Plaintiff's Order to Show Cause for An
Permanent Injunction and Permanent Restraining

p.1

# ORDER

Upon the complaint, the supporting affidavits of plaintiffs after granting admission into the Plaintiff's Class whether or not class action certification is granted, or this prospective plaintiff is admitted as Plaintiff #5, and the memorandum of law submitted herewith, it is:

ORDERED that defendants that comprise Harris County, Texas, et al., show cause in Chief United States District Judge Lee H. Rosenthal's United States District Court on the _____ day of _____, 2017, at _____ o'clock, why a permanent injunction should not issue pursuant to the appropriate Rule (similiar to Rule 65(a) of the Federal Rules of Civil Procedure enjoining the defendants, their successors in office, agents and employees and all other persons acting in concert and participation with them from violating the 4th, 5th, 6th, 8th and 14th Amendment Rights of all poor, mentall ill and homeless persons similarly situated under Monell v. New York City Dept. of Social Services, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001), Gerstein v. Pugh, 420 U.S. 103, 125, 95 S.Ct. 854

ES-085

43 L.Ed.2d 54 (1975), County of Riverside v. McLaughlin, 500 U.S. 44, 56, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991) and City of Cleburne v. Cleburne Living Ctr. 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed 2d 313 (1985).

It is FURTHER ORDERED that effective immediately, and pending the hearing and determination of this order to show cause, the defendants collectively, Harris County, Texas, et al., and each of their officers, agents, employers, and all persons acting in concert or participation with them, are restrained from violating the above-mentioned rights of plaintiffs as detailed in the original Title 42 U.S.C. §1983 Complaint, and Amended Complaint.

It is FURTHER ORDERED that the order to show cause, and all other papers attached to this application, be served on the aforesaid Plaintiffs by May 15th, 2017 at 9:00 A.M.

*See Plaintiff's Exhibits A, B, C and D attached Houston Chronicle Investigative Reports of this case and A-relevant to issues.

The Honorable Lee H. Rosenthal
Chief United States District Judge

Dated: _____

_Plaintiff's Exhibit -A- Attached_
_Child Molester - Rapist "Free"_

## Ex-HISD worker charged in teen's pregnancy flees

By Margaret Kadifa

A former Houston Independent School District employee is on the run after being accused of impregnating a 13-year-old student.

Mauricio Orlando Mendoza, 37, was arrested and charged in March with aggravated sexual assault of a child.

He had been out on $50,000 bond since March 23, but his bail was revoked March 31 because he was not living at his listed address or not living with the person he said he would be with, according to court documents.

Mendoza has been at-large since. A spokeswoman for the Harris County Sheriff's Office confirmed Thursday that there is an open warrant out on Mendoza.

Mendoza's bond said he would live with his wife at their Houston residence. But within weeks, Mendoza's wife also no longer lived at the location provided to the court and said she did not know Mendoza's whereabouts, according to court documents.


Mendoza

State District Judge Hazel Jones confiscated Mendoza's passport after she heard the allegations against him. Mendoza has lived in the United States with his wife and children for about five years. He is originally from El Salvador, prosecutors said.

Mendoza was an information technology worker in Houston ISD before his arrest March 22. He is accused of having had sex with the 13-year-old girl in his office and the library at Hartman Middle School. The girl tested positive in a pregnancy test in March.

He was arrested after the girl's mother said she found illicit text messages between her daughter and Mendoza in December.

He faced the possibility of life in prison.

*Brian Rogers and Brooke A. Lewis contributed to this report.*

margaret.kadifa@chron.com

- A -

The dangerous and rich go free... in Harris County.

→ Here Judge Jones confiscated Mendoza's passport, action because she already felt he would be a → flight risk. Then gave him a relatively low bond. A 13 year old school girl (a child) is pregnant from this child molester. Why didn't the Judge deny bail! Only 5 yrs. in U.S. from El Salvador. System is Broken Needs Complete Overhall.

*Plaintiff's Exhibit-B - attached*
*※ Argument with Facts in Support*

# Simply indefensible

Time to stop fighting bail reform efforts in Harris County and statewide.

When Robert Durst was arrested in October 2001 for allegedly murdering and dismembering his elderly next-door neighbor on Galveston Island, the millionaire real estate heir and suspect in his wife's disappearance was quickly released on a $300,000 bond.

When Maranda Lynn O'Donnell was arrested in Harris County last year for driving with an invalid license, she was held in jail for two days because she couldn't afford to post a $2,500 bond.

That's how the criminal justice system works in Texas. The dangerous and rich go free. The harmless and poor get stuck behind bars. And Harris County is fighting to defend that system.

While the county waits for Chief U.S. District Judge Lee Rosenthal to make her decision on an injunction against our bail system, our elected officials should lay down their legal arms and begin a mediation process with O'Donnell and the other plaintiffs in the ongoing class action suit facing Harris County.

The statistics alone paint a picture of a criminal justice system that is anything but just. More than 77 percent of the Harris County jail population hasn't even been convicted of a crime. Four out of five people charged with only a misdemeanor will spend time in jail. A quarter of those folks aren't able to pay a $500 bond. This is indefensible.

In fact, plenty of county officials have lined up to testify against the status quo. Sheriff Ed Gonzalez, Precinct 1 County Commissioner Rodney Ellis and Criminal Court at Law No. 16 Judge Darrell Jordan — all Democrats — are aligned with the plaintiffs in the case. On the other side remains the county judge, three county commissioners and 15 misdemeanor court judges — all Republicans.

They claim that the county is well on its way to making necessary reforms and that judicial interference isn't necessary. Plans to change the bail schedule and provide public defenders at bail hearings are steps in the right direction — but at this point it is too little, too late. Only overall structural reform will upend an unconstitutional system that cares less about a defendant's character than the content of her bank account.

While the dividing line in Harris County may be partisan, a similar legislative fight in Austin has united Republicans and Democrats in support of a bill that would restructure a cash bail system statewide.

Texas Supreme Court Chief Justice Nathan Hecht and Court of Criminal Appeals Presiding Judge Sharon Keller have endorsed Houston Democrat state Sen. John Whitmire's SB 1338, calling it a necessary overhaul of an antiquated system, Chronicle reporter Mike Ward wrote Wednesday.

As Whitmire pointed out at the hearing, our current system not only hurts the poor but also costs taxpayers "millions of dollars alone in Harris County."

But what's bad for taxpayers is good for bail bondsmen, who claim they'll go out of business if low-risk offenders can go back to their jobs and families without having to put up cash. Any business model that relies on an unjust system deserves to go bust. After all, they're largely to blame for the slow pace of change in Harris County. Any Republican judge who advocates reform has to worry about a bail-bond-backed primary challenger who will accuse him of being soft on crime.

But we're already soft on crime, just as long as the criminal is rich.

Durst gets out on bond. O'Donnell gets stuck behind bars. This isn't worth defending in Harris County or anywhere in Texas.

*-B-*

*[Handwritten annotations in margins: "Plaintiff's Exhibit →", "Donald", "vs.", "The Homeless Ill of", "Attached -C-", "Trump", "A quote from Sen. John Whitmire.", "'No one's safe in the Harris County Jail.' -C-", "and Mentally", "Houston"]*

# County adds lawyer to fight bail lawsuit

## High-profile, conservative litigator joins 12 other attorneys on defense

**By Mihir Zaveri**

Harris County commissioners Tuesday voted to add a high-profile, conservative litigator to a growing team of attorneys defending the county and several public officials against a civil rights lawsuit alleging the county's bail system unconstitutionally jails the poor.

Charles Cooper, a former clerk for U.S. Supreme Court Justice William Rehnquist and friend of U.S. Attorney General Jeff Sessions, would represent 15 out of 16 county criminal court of law judges in a potential appeal.

### Ready for 'eventualities'

No decision has been made yet in the case nor has it gone to trial. Parties are awaiting a ruling from Chief U.S. District Judge Lee Rosenthal to determine if the current bail system should be suspended before trial. When Rosenthal makes that ruling, either the plaintiffs or the county could appeal.

"It's simply being ready to deal with eventualities," First Assistant County Attorney Robert Soard said of Cooper's retention. "Whether the county decides to appeal, the plaintiffs decide to appeal, it's sometimes good to have these things lined up in advance."

Tuesday's vote to retain Cooper reignited a contentious debate over the county's involvement in the lawsuit. Most members of county commissioners court and several county officials agree that its system can unfairly penalize poor people who cannot make bail payments. The county has even taken steps to rectify the system, such as launching the first program in the state to have public defenders present at most hearings where bail is set.

However, the county has argued in court their bail system is constitutional. *[circled:]* The county already has paid approximately $2 million to two outside law firms in the case, money that reform advocates such as Precinct 1 Commissioner Rodney Ellis said could have been spent on actually implementing reforms being sought in the suit.

Ellis, who has advocated to settle the lawsuit and has criticized the county's bail system, cast the lone vote Tuesday against retaining Cooper. He questioned Cooper's role in defending California's ban against gay marriage before the U.S. Supreme Court.

"He seems like the leading candidate that people go to if you want to fight civil rights," Ellis said.

Cooper did not respond to requests for comment.

Soard said Cooper was specifically requested by the 15 criminal court judges. Cooper was considered earlier this year for the post of U.S. Solicitor General.

He would be paid $550 per hour if and when he is asked to weigh in, which could include advice on whether to file an appeal or make sure paperwork is filed in a timely manner.

Cooper would join approximately 12 other attorneys on the case, including those from outside law firms and also the county attorney's office.

John O'Neill, of Winston & Strawn LLP, who is representing the 15 judges, said the county is retaining appellate counsel to cover the contingency of an appeal by either party.

"If an injunction is granted and she resolves in favor of the plaintiffs or if she rules for the defendant, the plaintiff might appeal," O'Neill said.

### Deaths during pretrial

The suit was filed last spring by two civil rights groups on behalf of Maranda O'Donnell, a single mother who was held for two days, because she could not afford the $2,500 bond on a charge of driving without a valid license

Criminal justice reform advocates say that research shows those jailed and unable to bail out are more likely to plead guilty to crimes they did not commit.

They also pointed to cases like that of Sandra Bland, who failed to make bail after a controversial arrest and committed suicide three days later in the Waller County jail, as examples of tragedies that could be prevented.

Of more than 1,100 people who have died in Texas jails in the past decade, most have been pretrial detainees. In Harris County, *[circled:]* from 2009 to 2015, 55 people died in pretrial detention, including defendants arrested for misdemeanors such as trespassing and driving while intoxicated.

*Gabrielle Banks contributed to this report*

mihir.zaveri@chron.com
twitter.com/mihirzaveri

\* Plaintiff's Exhibit -D- attached

# Judges, lawmakers target cash bail

## Some accused of nonviolent crimes could get reprieve under reform bills

**By Lise Olsen and Gabrielle Banks**

A bipartisan coalition of lawmakers and judges is backing broad pretrial detention reforms in Texas that could eliminate cash bail for nonviolent offenders who are not deemed dangerous or a flight risk.

Legislation introduced this week in Austin would require judges statewide to determine within 48 hours whether a defendant accused of a nonviolent crime might be eligible for a so-called personal bond based on factors such as prior criminal offenses and past failures to appear in court. Personal bonds carry a financial penalty only if a person fails to appear in court.

Now, with Harris County in federal court litigating allegedly unconstitutional cash bail requirements, thousands of defendants statewide remain in jail awaiting trial simply because they are too poor to afford even

Bail continues on A10

**Bail from page A1**

nominal bail for minor crimes like trespassing and shoplifting, and other nonviolent offenses.

Under the legislation, nonviolent defendants who were detained after the first hearing within 48 hours would be re-evaluated within 10 days. Judges would be required to seek alternatives for those deemed mentally ill or disabled.

The legislation, introduced simultaneously by Sen. John Whitmire, D-Houston, and Rep. Andrew Murr, R-Junction, has been hammered out by jurists and legislators following reports that show more than 1,100 people died in Texas jails in the past decade — most of them pretrial detainees such as Sandra Bland, who committed suicide in the Waller County Jail after being locked up following a traffic stop.

Texas Supreme Court Chief Justice Nathan Hecht, who is backing the measures, said he and other members of the National Conference of Chief Justices of the United States generally have concluded that America's bail bond system "simply doesn't make any sense." He said he'd like to see Texas follow the model of New Jersey, Washington, D.C., Kentucky, Arizona and other states in pursuing reforms that restrict or eliminate monetary bail for defendants who pose no real risks.

Hecht said bail reforms elsewhere already have saved taxpayers' money by eliminating unnecessary jail expenses and spared hardships for low-risk defendants who often lose jobs, homes or their health while being locked up awaiting trial.

"There are constitutional problems, there are practical problems, there's a burden on taxpayers — change is just the right thing to do," he said. "We're just talking about low-level crimes – we're not talking about crimes of violence. So across the country, there's been an effort to change bail procedures to get away from high bond and jail time in all of these low-level crimes."

### Opposition to bills

Hecht chairs the Texas Judicial Council, 22-member group that includes Murr and Sharon Keller, the presiding judge of the Texas Court of Criminal Appeals, who serves as vice chair. Hecht said the council studied bail reforms and recommended reforms last fall.

But the Texas bills are expected to face fierce opposition by the bond industry.

"We have a very conservative governor, lieutenant governor, Senate and House," said Michael Kubosh, a Houston City Council member and longtime commercial bondsman. "To get all that through, there's going to be a real battle, and our lobbyists are talking to them. They're not going to want to let crime run rampant and give everybody free bonds."

Kubosh and other industry supporters say bondsmen help make sure low-level defendants appear in court — and track them down when they fail to appear. They say they also get families involved, since relatives often must post cash or property to back bail bonds even when commercial bondsman are involved. He and other advocates are simultaneously monitoring a federal court challenge to a fairly rigid bail schedule used for years by Harris County judges even for low-level misdemeanor offenses.

The bills were introduced a day prior to Harris County Sheriff Ed Gonzalez's testimony in

# Bail bondsmen say they ensure defendants appear in court

*The injunction is necessary.*

✓ *Judge Jordan says "No."*

Houston on Wednesday in the federal civil rights case challenging the constitutionality of imposing monetary bail for minor offenses if defendants cannot afford to pay it. The sheriff is among a group of roughly a half-dozen top county officials — including County Judge Ed Emmett and the new district attorney, Kim Ogg — who say the bail system should be restructured so it doesn't differentiate between rich and poor defendants.

Gonzalez told Chief U.S. District Judge Lee H. Rosenthal the pretrial release program as it is currently operates is arbitrary, unfair to poor defendants and undermines public safety.

"I personally do not believe it's a rational system," said Gonzalez, a former City Council member with nearly two decades of local law enforcement experience. "It should be equal protection for everyone."

Harris County Criminal Court at Law Judge Darrell Jordan, on the bench since January, also testified Wednesday before Rosenthal about his experience as a defense attorney and now as judge who must make dozens of bail decisions each day. He has begun releasing misdemeanor defendants on personal bonds if they have no holds. If they have risk factors or holds he has a conversation to see what they can afford.

Jordan said he's seen in other courts that innocent defendants often plead guilty if they can't make bail, just so they can get out and maintain their livelihoods.

The county is in the process of reforming its system of assessing defendants' flight risk and setting bail. In the meantime, plaintiffs are asking Rosenthal to impose a temporary injunction, making immediate fixes so that bail is made easier for nonviolent defendants. Rosenthal asked Jordan if he believed the county would stop running a system in which people plead guilty because they are poor without an injunction.

His answer: "No."

**'A real serious problem'**

In Harris County, 55 people died in pretrial detention from 2009-2015, including defendants arrested for misdemeanors such as trespassing and driving while intoxicated. Among them was a father detained after returning his kids late to his ex-wife in violation of a civil court order, the Houston Chronicle found.

"Had risk-based pretrial release been used a couple of years ago, it would surely have saved Sandra Bland's life," said Sandra Guerra Thompson, a University of Houston law professor in an email supporting the bills. "It might also have saved the life of Vincent Dewayne Young who committed suicide in the Harris County jail the day before Valentine's Day last month."

Whitmire, sponsor of the reform legislation in the Senate, said he is also proposing to seek a constitutional amendment that would empower Texas judges to deny bond to wealthy criminals considered to be extremely violent and dangerous but who under the current system frequently win release after posting bail as large as $100,000 or more. Typically, Texas judges can deny bond in only capital murder cases. Whitmire's proposal would expand that authority to deny bond.

"We've got a real serious problem in this state that we've got people being held in county jails because they can't come up with money for a bond," he said. "They either sit in an overcrowded jail or something happens to them or they get a payday lender loan or they plead guilty to something they might or might not have done. On the flip side, you've got human traffickers and violent drug dealers that get a high bond but have resources."

If the proposed legislation is approved, risk assessment tools used by large counties such as Travis County, or a model tool developed by the Houston-based Arnold Foundation, could be made available to all Texas judges to allow them to measure the defendant's risk of failing to appear and potential danger to the community.

The legislation also says that defendants are entitled to have lawyers present at pretrial detention hearings — not a common practice today.

On any given day, the Harris County Jail is crowded with 1,500 or more misdemeanor offenders awaiting trial. The county has spent more than $1.2 million in legal fees so far defending county court-at-law judges and hearing officers in the federal civil rights case before Judge Rosenthal.

Kubosh, the commercial bondsman, said he agrees that truly indigent defendants often don't get personal bonds in Harris County. But he argues that bondsmen routinely save the county money by helping ensure that those who are released on commercial bond follow court conditions and by tracking down those who fail to appear. With fewer commercial bonds, he argues, "you're going to see a spike in people thumbing their noses at the courts ... you'll see huge increases in warrants."

*lise.olsen@chron.com*
*gabrielle.banks@chron.com*