## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| MARANDA LYNN ODONNELL, *et al.*, | § | |
| On behalf of themselves and all others | § | |
| similarly situated, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. H-16-1414 |
| VS. | § | |
| | § | |
| HARRIS COUNTY, TEXAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM AND ORDER DENYING STAY

Harris County, five Harris County Hearing Officers, and fifteen Harris County Criminal Court at Law Judges are appealing this court's Order of Preliminary Injunction issued on April 28, 2017.[1]  These defendants[2] now ask the court to stay enforcement of the preliminary injunction pending an appeal.[3]  (Docket Entry No. 311).  The court has carefully considered the motion to stay,

---

[1] That Order, (Docket Entry No. 304), was issued with a detailed Memorandum and Opinion Setting Out Findings of Facts and Conclusions of Law, (Docket Entry No. 302), and a Memorandum and Order Certifying a Rule 23(b)(2) Class, (Docket Entry No. 303).  In December 2016, the court issued a Memorandum and Opinion denying the defendants' motions to dismiss.  (Docket Entry No. 125).  The defendants appeal all of these orders and opinions except for the class certification.  (Docket Entry Nos. 309–10).

[2] Two defendants, the Harris County Sheriff and the presiding judge of County Criminal Court at Law No. 16, do not appeal or join in the motion to stay.  (*See* Docket Entry Nos. 309–11).

[3] This court may stay its order pending appeal under Rule 8 of the Federal Rules of Appellate Procedure and Rule 62 of the Federal Rules of Civil Procedure.  *See* 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2902 (3d ed. 2012) ("A party who prefers to appeal can file a notice of appeal and seek a stay pending appeal as provided in Rule 62(c) and (d) and in Appellate Rule 8(a) and (b). . . . [T]he trial court, under Rule 62(c), and the appellate court, under Rule 62(g), have ample power to make whatever order is appropriate in injunction cases . . . .  [T]he court should not grant a stay in these cases as a matter of course but should consider carefully the harm that a stay might cause to the party who has obtained the judgment and balance this against the harm that denial of a stay would cause to the losing party."); *see also* FED. R. APP. P. 8(a)(1)(A) ("A party must ordinarily move first in the district court for the following relief: a stay of the judgment or order of a district court pending appeal[.]").

examining the harm that granting a stay would cause misdemeanor defendants detained in the Harris County Jail, and balancing this against any harm that denying the stay would cause Harris County and the fifteen County Judges.  The parties have each had, and used, an opportunity to weigh in.[4]

As reviewed at length in the court's Memorandum and Opinion issued on April 28, 2017, Harris County detains over 100 people every day on misdemeanor charges because indigence makes them unable to pay a secured financial condition of release.  (*See* Docket Entry No. 302 at 101–04).  These numerous, ongoing pretrial detention orders, issued without procedural protections or individual consideration, violate the Equal Protection and Due Process Clauses of the United States Constitution.  (*Id*. at 160–69).  The record makes clear that the harm to the plaintiffs if the preliminary injunction is stayed is far greater than any harm to the defendants appealing the order if a stay is denied.

Based on the motion and responses, the lengthy record, and the applicable law, the court denies the motion to stay.  The reasons are explained in greater detail below.

## I.      Background

The background is fully laid out in the court's earlier orders and only briefly summarized here.  The named plaintiffs, Maranda Lynn ODonnell, Robert Ryan Ford, and Loetha McGruder, sued Harris County, the Harris County Sheriff, five Harris County Hearing Officers, and sixteen Harris County Criminal Courts at Law Judges, seeking injunctive and declarative relief under 42 U.S.C. § 1983.  The plaintiffs alleged that Harris County has a custom and practice, amounting to an official policy, of detaining before trial misdemeanor defendants because they are too poor to

---

[4]   The Harris County Sheriff and the presiding judge of County Criminal Court at Law No. 16 filed statements objecting to their codefendants' motion to stay.  (Docket Entry Nos. 313, 324).  The Harris County District Attorney filed an amicus statement objecting to the motion to stay.  (Docket Entry No. 315).  The plaintiffs have also responded in opposition to the motion to stay.  (Docket Entry No. 326).

pay a secured financial condition of release, without procedural protections or individual consideration, in violation of the Equal Protection and Due Process Clauses. (Docket Entry No. 54). After multiple rounds of briefing and two lengthy hearings, the court issued a Memorandum and Opinion on the defendants' motions to dismiss on December 16, 2016. (Docket Entry No. 125). The case proceeded to an eight-day hearing on the defendants' motion for summary judgment and the plaintiffs' motions for class certification and for a preliminary injunction. The court issued lengthy and detailed findings of fact and conclusions of law, including specific findings on the credibility of the witnesses and the reliability of the expert testimony. (Docket Entry No. 302).

The court concluded that, under federal law, jurisdictions may impose secured money bail beyond a defendant's ability to pay: (1) in cases of dangerous felony; (2) after finding that no alternative to secured money bail can reasonably assure the defendant's appearance or public safety; and (3) with the due process needed for a detention order if the secured money bail in fact operates to detain the defendant. (*Id*. at 191). The court found that overwhelming credible evidence established that Harris County has a policy of routinely and systematically detaining indigent misdemeanor defendants before trial on secured money bail that the defendants clearly cannot pay because of their indigence, without procedural protections. The court granted the plaintiffs' motions for class certification and a preliminary injunction and denied the defendants' motion for summary judgment. (*Id*. at 191–93; Docket Entry No. 303).

Texas law prohibits orders of pretrial preventive detention in all but one narrow category of misdemeanor defenses. The court found that, by its policies, Harris County flouts this prohibition by using orders imposing secured money bail as de facto orders of pretrial preventive detention only for indigent defendants. The County does so without the due process protections needed to detain, without individual consideration of each case, and with the intended or evident result that those

3

unable to pay will be detained while those able to pay will be released before trial.  The court concluded that this policy violated equal protection and due process.  (Docket Entry No. 302 at 190).

The court issued an Order of Preliminary Injunction to take effect on May 15, 2017.  (Docket Entry No. 304).  The Order enjoins Harris County and its policymakers—the County Judges in their legislative and rulemaking capacity and the Sheriff in his law-enforcement capacity—from using bail on a secured, rather than unsecured, basis in order to detain misdemeanor defendants too poor to pay the financial condition of release up front.  In compliance with the specificity required by Federal Rule of Civil Procedure 65, the Order supplies detailed procedures for Harris County Pretrial Services to follow in determining indigence and for the Harris County Sheriff to follow in accepting bail on an unsecured, rather than a secured, basis.  (*Id.*).  The defendants who have filed an appeal ask the court to stay its Order pending appeal, or, in the alternative, to stay its Order for thirty days.  (Docket Entry No. 311 at 1, 11).

## II.     The Legal Standard for a Motion to Stay Pending Appeal

"'A stay is not a matter of right, even if irreparable injury might otherwise result.'  It is instead an exercise of judicial discretion, and the 'party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.'"  *Ind. State Police Pension Trust v. Chrysler, LLC*, 556 U.S. 960, 961 (2009) (quoting *Nken v. Holder*, 556 U.S. 418, 427 (2009)).  "A stay is an 'intrusion into the ordinary processes of administration and judicial review . . . .  The parties and the public, while entitled to both careful review and a meaningful decision, are also generally entitled to the prompt execution of orders . . . ."  *Nken*, 556 U.S. at 427 (quoting *Va. Petrol. Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958) (per curiam)).

A court decides whether to grant a stay pending appeal based on: "'(1) whether the stay

4

applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Chafin v. Chafin*, 133 S. Ct. 1017, 1027 (2013) (quoting *Nken*, 556 U.S. at 434); *Moore v. Tangipahoa Parish Sch. Bd.*, 507 F.App'x 389, 392 (5th Cir. 2013) (per curiam) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "The first two factors of the . . . standard are the most critical." *Nken*, 556 U.S. at 434.

The movants have the burden to satisfy the four factors. *See Ruiz v. Estelle*, 666 F.2d 854, 856 (5th Cir. 1982). The movants must make "'a strong showing that [they are] likely to succeed on the merits.'" *Moore*, 507 F.App'x at 392–93 (quoting *Hilton*, 481 U.S. at 776). "[T]he movant need not always show a 'probability' of success on the merits." *Ruiz*, 650 F.2d at 565. "[I]nstead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Id.*; *see also Nken*, 556 U.S. at 434 (noting that the movant must show "[m]ore than a mere possibility of relief"); *Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 23 (5th Cir. 1992) ("[P]resentation of a substantial case is only the threshold requirement. That threshold step alone is not sufficient. . . . [A] 'serious legal question' . . . [and] demonstrat[ing] a heavy weight of equity in favor of the stay [is also required].").

The defendants' stay request is examined under the legal standards and the extensive record evidence.

### III.     Analysis

#### A.     The movants have neither made a strong showing of likely success on the merits nor presented a substantial case involving a serious legal question.

The appealing defendants argue that the relief the plaintiffs seek and that the court has ordered is unavailable under § 1983 because the plaintiffs must first exhaust state-law remedies. (Docket Entry No. 311 at 5–6) (citing *Preiser v. Rodriguez*, 411 U.S. 475 (1973); *Tarter v. Hurley*, 646 F.2d 1010, 1013 (5th Cir. Unit A 1981)).  As the defendants note, these are new arguments; these cases are cited for the first time in the motion to stay.  (Docket Entry No. 311 at 5).  Neither was previously raised despite the fact that the defendants filed over 200 pages of briefing before the preliminary injunction hearing and an additional 150 pages afterward, including two briefs specifically objecting to the plaintiffs' proposed order of injunction.  (*See* Docket Entry Nos. 101, 161, 162 (incorporating Docket Entry No. 26), 164, 166 (incorporating Docket Entry No. 80), 193, 204, 254, 256, 259, 260, 263, 266, 286).  The court considers the defendants' arguments and authorities on this point waived.  As with a motion for reconsideration, a motion to stay should not be used to relitigate matters, submit new evidence, or "raise arguments which could, and should, have been made before the judgment issued."  *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)); *see also* 11 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2810.1 at 127–28.  The waiver undercuts the defendants' ability to show a likelihood of succeeding on these arguments.  "Arguments not raised in the district court cannot be asserted for the first time on appeal."  *Greenberg v. Crossroads Sys, Inc.*, 364 F.3d 657, 669 (5th Cir. 2004).  A party must "press and not merely intimate the argument during the proceedings before the district court."  *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 340 (5th Cir. 2005).

Even if they had not waived the newly asserted argument, the defendants were right not to rely on *Preiser* or *Tarter* in their briefing.  Neither case applies or supports the defendants' position. Neither case shows a likely success on the merits or presents a substantial legal question.

In *Preiser*, the Supreme Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."  411 U.S. at 500.  The Court has since noted that some portions of *Preiser* on which the defendants rely were "dicta" that has turned out to be "an unreliable, if not an unintelligible guide."  *Heck v. Humphrey*, 512 U.S. 477, 482 (1994).  The Fifth Circuit has also recognized that "[a]lthough the principles set forth in *Preiser* are couched in absolute terms, [subsequent decisions] dim its bright-line test by demonstrating that *Preiser* does not preclude all § 1983 challenges that would, if successful, cast doubt on the validity of state administrative decisions bearing on the fact or duration of state prisoners' confinement."  *Serio v. Members of La. Bd. of Pardons*, 821 F.2d 1112, 1116 (5th Cir. 1987) (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974); *Gerstein v. Pugh*, 420 U.S. 103 (1975); *Greenholtz v. Inmates of the Neb. Pen. and Corr. Complex*, 442 U.S. 1 (1979)).

In general, the cases applying *Preiser* hold that its requirement that parties resort to the federal habeas statutes rather than to § 1983 applies most strongly in cases challenging an ongoing detention on the ground that a prisoner's conviction or sentence was legally invalid.  *See, e.g.*, *Boyd v. Biggers*, 31 F.3d 279 (5th Cir. 1994); *Caldwell v. Line*, 679 F.2d 494 (5th Cir. 1982).  A party challenging nonconviction administrative decisions, such as decisions of a parole board, must exhaust habeas remedies "[i]f a prisoner challenges a single hearing as constitutionally defective."  *Serio*, 821 F.2d at 1118.  But "broad-based attacks," such as class actions challenging regulatory procedures that do not "automatically entitle" claimants to release but only "enhance eligibility for accelerated release," may be brought under § 1983 without a habeas exhaustion requirement.  *Id.* at 1119.

7

In this case, the plaintiffs are not challenging the validity of their arrests or of any subsequent convictions. The named plaintiffs do not challenge ongoing confinement. They challenge a systemwide policy as constitutionally defective, not any one hearing. Bail is, as many courts recognize, a regulatory and not a punitive device. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 750 (1987); *State v. Brown*, 338 P.3d 1276, 1291 (N.M. 2014). The plaintiffs challenge the administrative policies and procedures used to set money bail on a secured basis, almost always according to a preset bail schedule, resulting in detention solely for those who cannot pay up front but who are otherwise entitled to release and allowing those who can pay to be released. The plaintiffs mount a broad-based challenge to Harris County's administration of its bail procedures, but they do not seek or assert "entitlement" to pretrial release. Texas law already deems misdemeanor defendants for whom money bail has been set to be entitled to, and eligible for, pretrial release. The class challenge and the court Order do not change the plaintiffs' legal status.

The court's Order rectifies the County's constitutionally flawed procedures for accepting bail from indigent misdemeanor defendants and follows the previously established 24-hour deadlines. The Order neither changes nor accelerates misdemeanor defendants' entitlement to release. Rather, the Order changes the timing for when bail is required from indigent misdemeanor arrestees who would be released if they could pay the bail amount up front—secured money bail—or could be released if the bail is due only after they fail to appear at hearings—unsecured money bail. *See also Walker v. City of Calhoun*, Civil No. 15-170, 2016 WL 361612 at *13–14 (N.D. Ga. Jan. 28, 2016), *vacated on other grounds*, — F.App'x —, 2017 WL 929750. The Order instructs the Harris County Sheriff on the procedures to use in finding the bail condition satisfied, a common duty of sheriffs under Texas law. (*See* Docket Entry No. 302 at 185–86). Misdemeanor defendants who are not now entitled to release, even if they are able to pay, such as those facing pending felony charges,

8

extradition "holds," or nonbailable preventive detention orders, are not entitled to release and do not become entitled to release under the court's Order.  (*See id*. at 186).

In *Tarter*, the district court dismissed a handwritten pro se class action complaint before it was even served on the defendants.  646 F.2d at 1011.  The Fifth Circuit affirmed the dismissal based on comity concerns established in *Younger v. Harris*, 401 U.S. 37 (1971), and *O'Shea v. Littleton*, 414 U.S. 488 (1974), because a systemic excessive bail challenge, "no matter how carefully limited, would require a federal court to reevaluate de novo each challenged bail decision." 646 F.2d at 1013.  By contrast, the court held that an across-the-board order to court clerks to docket pro se motions did not support dismissal based on comity.  Citing Fifth Circuit precedent evaluating the constitutionality of a pretrial bail system, the *Tarter* court recognized that "[t]he changes in Florida's procedures governing the pretrial detention of criminal defendants that resulted from the extensive litigation in *Pugh v. Rainwater* constitutes at least as much of a federal interference in state processes as" the injunction at issue, but *Younger* abstention and exhaustion under the federal habeas statute did not apply in either case.  *Id*. at 1014.

This court has not ordered, and will not undertake, review of individual bail decisions in misdemeanor cases in Harris County.  The plaintiffs do not bring an excessive bail challenge and do not object to the amount of bail Harris County judicial officers impose in particular cases or in all cases.  (*See* Docket Entry No. 302 at 156–58).  The plaintiffs instead raise equal protection and due process challenges to the procedures and policies used for requiring indigent misdemeanor defendants to pay money bail amounts on a secured rather than an unsecured basis.  As in *Pugh v. Rainwater*, 572 F.2d 1053 (5th Cir. 1978) (en banc), the court has evaluated across-the-board procedures and policies, and has ordered the least intrusive means that addresses the constitutional flaws for Harris County to follow in determining and accepting bail in misdemeanor cases.

For these reasons and for the reasons the court identified in denying the defendants' motion to abstain under *Younger*, the defendants' theory of exhaustion is without merit, even if it had not been waived.  (*See* Docket Entry No. 125 at 33–39).

The defendants otherwise take a scattershot approach to arguing that their appeal presents a substantial case on the merits.  They assert that the case "presents serious, novel legal issues" without identifying what legal issues are novel.  (Docket Entry No. 311 at 5).  They mention "questions of abstention, judicial immunity, and federalism," but do not state the questions or how they specifically bear on the Order being appealed.  (*Id.* at 4).  The Order, for instance, does not run against judicial defendants in their judicial capacity, so judicial immunity is not implicated.  As the court explained in its Memorandum and Opinion on the motions to dismiss, abstention is foreclosed by Supreme Court and Fifth Circuit precedent.  (Docket Entry No. 125 at 34–35).  Contentions that "directly contradict Supreme Court precedent, ask the court to reweigh the evidence and make different credibility and reliability findings, or present arguments that are irrelevant to the remedy at issue" do not present a substantial case on the merits in favor of a stay.  *Patino v. City of Pasadena*, — F.Supp.3d —, 2017 WL 201366 (S.D. Tex. Jan. 18, 2017), *stay denied*, — F.App'x —, 2017 WL 477917 (5th Cir. Feb. 3, 2017).

The defendants are right that this case involves important issues.  The defendants are also right that, because the case involves multiple authorities acting in multiple capacities, some of the issues are complex.  (*See* Docket Entry No. 311 at 4; No. 125 at 76).  But merely stating the importance of the issues and the seriousness of the legal questions does not mean that the defendants have presented a substantial case on the merits.[5]  And even if the appealing defendants had presented

---

[5]  The defendants state that "a district court asked to stay an injunction it has just issued will always believe that the appealing party is not likely to prevail on the merits."  (Docket Entry No. 311 at 5).  The assertion proves too much.  Courts frequently assess—and find—a likelihood of success or at least the

a substantial case on the merits, the balance of the equities heavily favors denying the requested stay.

The fact that a court has already determined that equity requires preliminary injunctive relief does

not mean the court always or automatically denies a stay, but the law is clear that when, as here, the

balance of equities tilts heavily against a stay, a strong showing of likelihood of success on the

merits is required.  *See In re First S. Sav. Ass'n*, 820 F.2d 700, 709 n.10 (5th Cir. 1987); *United*

*States v. Transocean Deepwater Drilling, Inc.*, 537 F.App'x 358, 361 (5th Cir. 2013).  The record

undermines this showing.

      The appealing defendants have not shown a strong likelihood of success on the merits.  Nor

have they shown a substantial case involving a serious legal question and that the balance of equities

favors a stay.  To the contrary, the other factors show that the equities weigh heavily against a stay,

as explained below.

      **B.**      **Denying the stay will not injure the defendants.**

      The defendants argue that implementing the court's Order will irreparably harm Harris

County because, when the enforcement of County ordinances is enjoined, the County "necessarily

suffers the irreparable harm of denying the public interest in the enforcement of its laws." *Planned*

*Parenthood of Greater Texas Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013).

The defendants contend that the court's Order prohibits the enforcement of state and federal law

because it deprives the County Judges and Hearing Officers of judicial discretion to set secured bail

beyond a defendant's ability to pay in misdemeanor cases.  (Docket Entry No. 311 at 7–8).

---

presentation of a substantial question involving serious legal issues when deciding requests for a stay or for
a certificate of appealability. *See, e.g.*, *United States v. Transocean Deepwater Drilling Inc.*, Civil No. 11-
3638, 2013 WL 3049299 at *2–3 (S.D. Tex. June 17, 2013).  The legal standard requires courts to carefully
consider arguments that have "patent substantial merit." *First S. Sav. Ass'n*, 820 F.2d at 709 n.10.  The court
has given the parties' arguments that careful consideration, even though the defendants have largely gestured
to arguments rather than stating them.

The court does not enjoin the enforcement of state or federal law.  The plaintiffs do not challenge the Texas Code of Criminal Procedure, the Harris County Rules of Court, or the agreed final judgment in the federal case of *Roberson v. Richardson*.  As explained at length in the court's Memorandum and Opinion, the Texas Constitution and Code prohibit pretrial preventive detention in all but one narrow category of misdemeanor cases.  (Docket Entry No. 302 at 35–38, 50–55).  Texas case law does not permit bail to function as a de facto pretrial preventive detention order in misdemeanor cases.  (*Id*. at 36–38).  Federal precedents on equal protection and due process do not permit the kind of judicial "discretion" that the County defendants appear to seek: the ability to order the detention of those unable to pay secured money bail without a timely individualized inquiry into ability to pay and findings on the record, by a clear evidentiary standard, that no less restrictive alternative is available to meet the government's interests.  (*Id*. at 143–56).

The County Judges and Hearing Officers retain the judicial discretion that Texas and federal law permit.  They may choose whether or not to impose any nonfinancial conditions of pretrial supervision, including protective orders, curfews, geographic restrictions, GPS monitoring, drug testing, or alcohol intake ignition locks.  As directed by the County Judges, Pretrial Services may choose what level of pretrial supervision to apply to misdemeanor defendants.  The judicial officers may choose the amount of bail based on the state-law factors.  They may choose whether or not to forfeit or revoke a bail bond, and they may choose whether or not to collect forfeited bonds.  In most cases, the judicial officers may choose whether to require the bail amount up front as secured money bail or after a failure to appear as an unsecured personal bond.  The only limit to that discretion is the constitutional limit: they may not require the bail amount on a secured basis in order to detain misdemeanor defendants who are otherwise eligible for release but who are indigent and cannot pay the bail up front, while allowing those who can pay to secure prompt release.

12

In short, the court Order does not enjoin the enforcement of Texas or federal law.  The Order enjoins only the County's violations of Texas and federal law.  The public and the County have an interest in seeing the County's laws enforced.  They do not have an interest in seeing the County's laws enforced in an unconstitutional manner, as the plaintiffs have alleged in their as-applied challenge and as the record evidence amply showed.

The defendants next argue that the court's Order will "overwhelm and delay the day-to-day process of providing misdemeanor defendants with an article 17.15 probable cause and bail hearing." (Docket Entry No. 311 at 8).  The defendants do not explain why this is so.  The only relief ordered that applies before a probable cause hearing is the administration of an affidavit of financial condition at the Pretrial Services interview.  Pretrial Services already interviews all detained misdemeanor defendants and was already implementing a plan to administer affidavits of financial condition apart from this court's Order.  (*See* Docket Entry No. 302 at 57, 83, 182).  The defendants have not presented any reason to conclude that the court's Order, which is consistent with their own stated policy, will irreparably derail the pretrial process before probable cause hearings are conducted.

The defendants argue that implementing the court's Order will be costly.  (Docket Entry No. 311 at 8–9).  They note that the Director of Harris County Pretrial Services believes that an increased number of unsecured bonds "would likely overwhelm the system of supervision that is a blanket condition of such release[]" and that some forms of pretrial supervision, such as GPS monitoring, can be costly. (Docket Entry No. 311 at 8–9).  The defendants point only to hearing testimony that the court specifically found unreliable and greatly exaggerated.  (*See* Docket Entry No. 302 at 151–52).  As the court explained, nothing compels the County to require needlessly costly and intrusive "blanket conditions" of supervision, such as drug testing regardless of whether

13

a defendant's charge or criminal history relate to a drug offense.  (*Id*. at 152).  And the undisputed evidence shows that even the more restrictive forms of pretrial supervision required in appropriate cases are far less costly than incarceration.  (*Id*.).  The defendants cannot show that the cost of compliance creates an irreparable injury.  To the contrary, if anything, the record shows that compliance will result in cost savings to the County.

The defendants' consistent argument throughout this litigation has been that virtually no one is detained in Harris County by an inability to pay secured money bail, and that almost all misdemeanor defendants are released, either by pretrial bond or postconviction sentence, within three days of arrest.  *See* (Docket Entry No. 164 at 16); Def. Ex. 37; Hearing Tr. 5:33–34.  If that is true, the defendants cannot be irreparably injured by the court's Order, because it would apply to so few cases.  If the defendants are now reversing their position and arguing that an overwhelming number of misdemeanor defendants are detained by their inability to pay secured money bail, the defendants themselves have shown the evident need for emergency relief from this court.  Either way, a stay of the court's Order is without support.

The defendants have also argued that the reforms they plan to implement on July 1, 2017 moot much of the plaintiffs' requested relief.  (*See* Docket Entry No. 302 at 175–76).  If that is true, the defendants cannot be irreparably injured by the court's Order, because they are already planning to follow all or at least significant portions of it.  The court has, however, found that the reforms, when implemented, will not sufficiently address the constitutional violations.  (*See id*. at 117–23).  But in fashioning the Order, the court took great care to avoid any provision that would conflict with, impede, or delay the laudable reform work the County plans to implement.

This factor does not weigh in favor of a stay.

### C.   Granting a stay would inflict substantial injury on the plaintiffs.

The "grant of a stay of a preliminary injunction pending appeal [would] almost always be logically inconsistent with a prior finding of irreparable harm." *Rodriguez v. DuBuono*, 175 F.3d 227, 235 (2d Cir. 1999). The defendants point to no basis to disturb the court's holding that, absent preliminary relief from this court, the plaintiffs will suffer irreparable injury.

> Misdemeanor defendants detained before trial face significant pressure to plead guilty, and in fact do so at much higher rates than those released before trial, in order to obtain release. Pretrial detention of misdemeanor defendants, for even a few days, increases the chance of conviction and of nonappearance or new criminal activity during release. Cumulative disadvantages mount for already impoverished misdemeanor defendants who cannot show up to work, maintain their housing arrangements, or help their families because they are detained.

(Docket Entry No. 302 at 174–75) (footnotes omitted). These are some of the injuries inflicted on over 100 misdemeanor defendants every day in Harris County.

The defendants argue that the status quo in this case "pre-dates the founding of our country" and is "ubiquitous throughout the country." (Docket Entry No. 311 at 9). These assertions fail to acknowledge that the defendants' use of the term *bail* to mean a monetary amount that must be paid only up front to secure release from detention is not the historical usage. (Docket Entry No. 302 at 23–25). Many jurisdictions have repudiated the use of secured money bail to detain indigent defendants in misdemeanor cases, on the ground that to do otherwise would violate the Constitution. (*Id*. at 38–50).

The court delayed the preliminary injunction hearing for more than two months to allow the County Judges to file their fulsome briefing on the motion to dismiss. (Docket Entry Nos. 46, 57). The court then delayed the preliminary injunction hearing another three months to facilitate settlement negotiations, to allow discovery, and to allow the parties to thoroughly brief the issues and to create a full record. (Docket Entry Nos. 109, 176). Further delay would allow continued

injury, without benefit.  Ample credible, reliable evidence shows that Harris County detains well over 100 misdemeanor defendants a day only because they are too indigent to pay secured money bail.  These defendants are otherwise eligible for release and would be released if they could pay a bondsman the nonrefundable premium of around ten percent of the bond amount.  That cannot continue.  Time is of the essence.  Every day brings about the incarceration of another hundred indigent misdemeanor defendants, in violation of the Constitution.

This factor weighs heavily against a stay.

### D.    The public interest favors denying the stay.

"It is always in the public interest to prevent the violation of a party's constitutional rights." *Simms v. District of Columbia*, 872 F.Supp.2d 90, 105 (D.D.C. 2012) (collecting cases).  The defendants are correct that "the statutory policy of the Texas legislature" is "'in itself a declaration of public interest and policy which should be persuasive.'"  (Docket Entry No. 311 at 10) (quoting *Va. Ry. v. Sys. Fed'n No. 40*, 300 U.S. 515, 552 (1937)).  But, as explained above, this consideration militates against—not for—a stay.  The Texas legislature, indeed the Texas Constitution, does not permit the type of pretrial preventive detention in misdemeanor cases that Harris County systematically and routinely accomplishes, by imposing secured money bail to detain before trial or conviction only those who are too indigent to pay.

The defendants argue that "[a]s the [government] is the appealing party, its interest and harm merges with that of the public." *Planned Parenthood*, 734 F.3d at 419.  But "the government" in this case is not a singular entity pursuing a consistent policy.  One of the County's legislative policymakers with authority over its bail system opposes the appeal and the motion to stay.  (Docket Entry No. 313).  The Harris County Sheriff, the County's policymaker over law enforcement against whom most of the court's relief runs, also opposes the appeal and the stay.  (Docket Entry No. 316).

16

Both of these policymakers testified that an injunction from this court was necessary to stop constitutional violations. (Docket Entry No. 302 at 176). The Sheriff has expressed his readiness and willingness to comply with the court's Order by the May 15 deadline. (Docket Entry No. 316 at 3–4). The Harris County District Attorney has filed an amicus brief opposing "a stay and . . . any maneuvering that postpones implementation of bail reforms that are more than a half century overdue." (Docket Entry No. 315 at 1).

The defendants argue that "[t]he public has an interest in the safety of the community and in having the criminally-accused appear at future court appearances." (Docket Entry No. 311 at 10). That is true, and it is a compelling interest. But as the court reviewed at length in its Memorandum and Opinion, the record shows that the use of secured, rather than unsecured, money bail does not effectively meet that interest. (Docket Entry No. 302 at 87–95, 100–12, 160–67). The County routinely releases misdemeanor defendants who pay a bondsman's nonrefundable premium with no other conditions, even if those defendants present the same risk of failure to appear or criminal behavior as indigent defendants who are detained solely because of their indigence. (*See id.*). The County Judges routinely release indigent defendants who plead guilty by imposing time-served sentences, even if those defendants are "high risk." (*See id.* at 83–87). The court's Order is limited to prohibiting this differential treatment that results in releasing misdemeanor defendants, even high-risk defendants, if they can pay up front, while telling the indigent that they must effectively serve their sentences before any trial or conviction simply because they cannot pay up front.

The court's Order does not disturb orders of pretrial preventive detention in the one category of misdemeanor cases for which Texas law allows it: crimes of family violence after a condition of pretrial release has already been violated. The court's Order does not affect those detained on pending felony convictions or other extradition holds. The court's Order does not prevent the

defendants from completing mental competency evaluations for arrestees before release. The defendants do not provide a basis in the record or in the case law to conclude that the court's Order negatively affects the public's interest in community safety or the appearance of misdemeanor defendants at trial.

In light of the disagreement between public officials, including between key defendants in this suit, and the plaintiffs' clear showing of constitutional violations that are remedied by the court's Order, the public interest weighs heavily against a stay.

## IV.   Conclusion

"Freedom from imprisonment—from government custody, detention, and other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). A system that routinely denies this liberty to misdemeanor defendants only because they are too poor to pay money bail up front requires the emergency relief the court has ordered. For this reason, and for the reasons explained above, the court must also deny the defendants' alternative request to stay its Order for thirty days. That request amounts to depriving thousands of arrestees of their constitutional rights. The defendants have had more than adequate time for their able counsel to present arguments and evidence on the merits of their defense. The court carefully considered the voluminous evidence, followed Supreme Court and Fifth Circuit precedent in issuing its ruling, and gave the defendants adequate time to implement its Order. No further stay is appropriate.

The defendants' arguments for their likely success on the merits of their appeal either contradict Supreme Court precedent, raise new arguments that could have, and should have, been raised during the hearing, or present arguments that are irrelevant to the remedy at issue. The balance of the equities and the other factors heavily favor denying the requested stay, and that is the

18

court's ruling.

The Harris County defendants' motion to stay, Docket Entry No. 311, is denied.

SIGNED on May 11, 2017, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge