# PX 4(A)
# Expert Report of Truman Morrison

FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MARANDA LYNN ODONNELL, et al.   )
                                )
         Plaintiffs,            )
                                )
v.                              )        Case No. 16-cv-01414
                                )        (Consolidated Class Action)
HARRIS COUNTY, TEXAS, et al.    )        The Honorable Lee H. Rosenthal
                                )        U.S. District Judge
         Defendants.            )
                                )

# EXPERT REPORT OF THE HONORABLE TRUMAN A. MORRISON, III

**Background**

1. My name is Truman A. Morrison III. I have been asked to report on the post-arrest policies and practices of Washington, D.C., a jurisdiction that operates effectively and safely without using money bail to make pretrial release and detention decisions. I have never previously served as an expert witness. I am not being compensated for this matter.

2. I am currently a Senior Judge of the District of Columbia Superior Court. I have served 37 continuous years as a trial judge, presiding over civil, criminal, juvenile delinquency, domestic relations, and domestic violence matters. A biography from the D.C. Courts website is attached. Exhibit A.

3. As a Senior Judge, I continue regularly to hear cases, primarily criminal cases.

4. I am a past Chair of the Board of Trustees of the Pretrial Justice Institute.

5. I have been a faculty member for more than 20 years at the annual Trial Advocacy Workshop at Harvard Law School. I also have taught law school classes on trial advocacy at George Washington University and Catholic University Law Schools, and a course entitled "The Craft of Judging" at George Washington University Law School.

6. I was invited to address the Second National Symposium on Pretrial Justice convened by Attorney General Eric Holder. In December 2015, I spoke at the White House Symposium entitled, "A Cycle of Incarceration: Prison, Debt, and Bail Practices."

1

7. For more than 25 years, I have been involved in educating and training other judges in the United States and Europe. For many years, I directed all judicial education efforts in the Washington, D.C. Superior Court. I also started a mentoring program for new judges.

**Material Reviewed**

8. I did not rely on any materials in preparing this report.

**Methodology and Opinions**

9. Since 2006, I have been involved nationally in issues related to the administration of pretrial justice. I have spoken to a wide range of stakeholders in the criminal justice system, including judges, pretrial service professionals, prosecutors, defense attorneys, legislators, and others about pretrial justice issues.

10. I have worked with judges in states around the country, including New Mexico, New Jersey, Minnesota, Colorado, Wisconsin, Illinois, Pennsylvania, Idaho, Connecticut, Arizona, North Carolina, Maryland, and Michigan.

11. I have spent many hours observing bail setting proceedings in many state court jurisdictions in the last several years.

12. As part of my meetings with judges throughout the county, my typical practice before I address the judges of a jurisdiction is to spend at least one full day sitting in local courtrooms and observing the bail setting process. I try to get a sense of whether the judges are making bail-setting decisions within the legal frameworks of the federal Constitution and that locality's statutory and case law and their locally-applicable court rules as I understand them. I then often deliver a presentation on the state of pretrial decision-making in America and try to relate national practices to the practices in the specific jurisdiction where I am speaking. I then invite conversation with the judges in attendance about these issues.

13. My goal is to convince judges to think critically about whether their pretrial decision-making processes are rigorous and law-based best practices and whether they have the decision-making tools they need to do their best work.

14. As part of my site visits, in addition to talking with judges, I frequently meet with other stakeholders in the criminal justice system, including prosecutors, defense attorneys, and pretrial service professionals.

15. I also lecture at conferences around the county. For example, this past September I gave the keynote address to the more than 400 attendees from federal and state pretrial services programs at the annual meeting of the National Association of Pretrial Services Agencies.

16. I am a regular faculty member at a week-long U.S. Justice Department, National Institute of Corrections, Pretrial Executives Workshop that occurs in Colorado twice every year.

2

17. As recent examples of my work, in November 2016, I was invited to Tucson, Arizona by the local court system. Over the course of three days, I watched three different bail-setting court sessions. I met with state court judges, the MacArthur Foundation Justice Challenge Working Group, and pretrial service professionals. The organizers convened a town hall, attended by a large audience, including judges, legislators, representatives of the Governor's office, law enforcement, prosecutors, defenders, pretrial service professionals, and lay community members. I offered a critique of national pretrial judicial decision-making practices and then fielded questions about pretrial justice issues.

18. This past December, I addressed the Cook County Board of Commissioners. They are the elected legislative body responsible for administration of the Chicago criminal justice system. I talked with them about potential reforms in pretrial decision-making practices in Chicago.

19. I have tried to foster a community among the national leaders in the pretrial justice field. I urged the creation of the Pretrial Justice Family, an online community hosted by the Pretrial Justice Institute that has created a forum for communication and collaboration related to pretrial justice. I have ongoing professional relationships with many of the individuals who are working in this field.

20. My research on the legal framework governing pretrial decision-making, my 37 years of experience as a judge in Washington, D.C., and my experiences observing, lecturing, and training judges and other justice-system professionals around the country have led me to conclude that money bail is neither useful nor necessary to ensure safety and court appearance. And that its use fosters outcomes that are predictably all too often unsafe, ineffective, expensive, and unfair.

21. Washington, D.C.'s pretrial system makes release and detention decisions based on the defendant's risk of flight and danger to the community, without the use of money bail. We have high rates of court appearance and low rates of pretrial misconduct.

22. In Washington, D.C., if money bail were to be imposed on a defendant, it would have to be set in an amount that the defendant has the present ability to pay.

23. In practice, financial conditions are almost never used. In Washington, D.C., there are no people in the jail who are there pretrial solely because they cannot afford to pay a secured financial condition of release.

24. In 2015, more than 91% of arrestees were released, and 98% of released arrestees remained free from violent crime re-arrest during the pretrial release period. 89% of released defendants remained arrest-free from all crimes. 88% of defendants released pretrial made *all* scheduled appearances during the pretrial period.

25. Accused persons presenting levels of pretrial risk that cannot be mitigated and managed in our community, after due process appropriate hearings, are preventively detained until

trial with no bond. Rich or poor they await an expedited trial in our jail. Last year we preventively detained under 10% of all arrestees.

26. Washington, D.C. is a big city. We have found strategies that reasonably assure court appearance and public safety without resorting to unnecessary detention based on a person's wealth, and without the accompanying economic and human costs of a pretrial detention system that is based on money.

27. I fully incorporate herein by reference my Declaration, attached as Exhibit B.

I declare under penalty of perjury that the foregoing is true and correct to the best of my ability.

_____          _2/15/2017_
The Honorable Truman A. Morrison            Date

4

**THE HONORABLE TRUMAN A. MORRISON III**
**SENIOR JUDGE**
**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**

Judge Truman A. Morrison III is a Senior Judge of the District of Columbia Superior Court. In 1979, President Carter appointed Judge Morrison to the Superior Court. In his more than 37 continuous years as a trial judge, he has presided over civil, criminal, juvenile delinquency, domestic relations, and domestic violence matters. Judge Morrison continues to sit regularly as a Senior Judge, hearing primarily criminal cases.

Judge Morrison has taught law school classes on trial advocacy at George Washington and Catholic University law schools. He formerly taught a course entitled "The Craft of Judging" at George Washington University Law School. He has been a faculty member for more than 20 years at the annual Trial Advocacy Workshop at The Harvard Law School.

Judge Morrison has been actively involved in judicial education for more than 25 years in this country and in Europe. For many years he directed all judicial education efforts in his large urban court. He pioneered a mentoring program built around peer courtroom observations for new judges.

Since 2006, Judge Morrison has worked nationally on issues related to pretrial justice. He has spoken widely to judges, pretrial service professionals, prosecutors, defense lawyers, legislators, and others about pretrial issues. Judge Morrison spoke at the Second National Symposium on Pretrial Justice convened by Attorney General Eric Holder.

He has worked with judges and others in many jurisdictions including New Mexico, New Jersey, Minnesota, Colorado, Wisconsin, Illinois, Pennsylvania, Idaho, Indiana, Connecticut, Arizona, North Carolina, Maryland, and Michigan. He has long been a faculty member at a week-long, twice-yearly Justice Department workshop for pretrial service executives. He is a recent Chair of The Board of Trustees of The Pretrial Justice Institute.

Judge Morrison has discussed pretrial justice issues nationally. In 2015, he spoke at the White House Symposium entitled "A Cycle of Incarceration: Prison, Debt, and Bail Practices." He has also appeared on national television, including on HBO's John Oliver Show and HBO's documentary series "Vice."

Judge Morrison is a graduate of the University of Wisconsin Law School, and served as law clerk to Chief Judge John W. Reynolds in the U.S. District Court for the Eastern District of Wisconsin. In 1971, he began work at the District of Columbia Public Defender Service. For his last four years at PDS, prior to his appointed to the bench, he served as Chief of the Trial Division.

Judge Morrison lives in downtown Washington, D.C. with his wife Susan W. Shaffer, Esq. He is the proud father of two sons, who lead The Morrison Brothers Band. Judge Morrison frequently finds himself in Nashville attending their performances.

## AFFIDAVIT OF JUDGE TRUMAN MORRISON

The Honorable Truman A. Morrison III, having been duly sworn according to law, deposes and states as follows:

**Background**

1. My name is Truman Morrison. I am a Senior Judge on the Superior Court of the District of Columbia. In 1971 I began work as a lawyer at the District of Columbia Public Defender Service. In 1975, I was named head of the trial division where I supervised 40 lawyers trying cases ranging from delinquency matters to first-degree murder. I worked in that position until my appointment to the District of Columbia Superior Court by President Jimmy Carter in 1979.

2. In my thirty-seven continuous years as a trial judge, I have handled family, domestic violence, civil, and criminal cases. I sit regularly as a Senior Judge, hearing mainly criminal cases.

**Overview**

3. In this affidavit, I will give an overview of the pretrial justice decision-making system in Washington, D.C. I will explain how Washington, D.C.'s pretrial system operates effectively and safely without using money bail to decide detention or release of defendants based on their wealth-status. This overview is based on my 45 years of experience with the court as well as statistics from the District of Columbia's Pretrial Services Agency ("PSA").

4. I am receiving no compensation for my preparation of this affidavit.

**Analysis**

5. Our bail law in Washington, D.C. is rooted in the premise that a defendant's inability to pay money bail should not determine whether he is detained before trial. Release or detention prior to trial is instead to be based upon one's risk.

6. Prior to 1994, Washington, D.C. operated its pretrial decision-making scheme in largely the same way that virtually all jurisdictions now operate: defendants were given arbitrary amounts of money as bail amounts, and those who could afford to pay the amount were released regardless of risk. Those who could not pay remained in jail, also regardless of risk. In other words, the system was totally based on wealth-status.

7. In 1994, the D.C. Code was amended to state that financial conditions could be utilized to reasonably assure appearance only if they do not result in pretrial detention. In other words, if money is used, defendants are entitled to a bond they can meet. It has always been our law that money may never be used to attempt to assure community safety. In practice today, financial conditions are almost never used for any purpose. To my knowledge, we operate the only jail in America that contains no persons detained there prior to trial because they cannot afford to pay bond amounts.

1

8. The District of Columbia now operates an "in or out" pretrial decision-making system. Decisions about release or detention are made transparently with open courtroom discussions of any accused person's actual potential risk. The court employs a preventive detention statute that provides a Due Process-appropriate hearing for fairly determining who is too dangerous or too much of a flight risk to be released. The use of preventive detention has been appropriately limited to less than 10–15% of all defendants. Everyone else is released on his or her promise to appear in court or on conditions supervised by our Pretrial Services Agency. Neither money bond nor private bail bond companies play any role in release decision-making (although both are technically legal in Washington today).

9. The overall process for pretrial defendants in Washington, D.C. is as follows: After an arrest, law enforcement agencies process arrestees at one of the city's local police districts. Arrestees charged with nonviolent misdemeanors may receive a citation release from the police station, with a future court date provided. Otherwise, after processing, arrestees are transferred to the court for an arraignment (for misdemeanors) or presentment (for felonies) hearing. At this initial appearance, the judge considers whether the defendant should be released or briefly detained pending a formal detention hearing within three to five days. After hearing, pretrial detention until trial can be ordered if the judicial officer concludes that a defendant presents an unmanageable risk of flight or harm to the community.

10. Our Pretrial Services Agency conducts a risk assessment for defendants to assist judicial officers in release/detention determinations. The risk assessment process consists of two components: conducting a background investigation and interviewing defendants. PSA interviews defendants and collects and verifies information on each defendant's community ties, criminal history, physical and mental health status, substance abuse, and current supervision status with probation or parole agencies. It also uses a scientifically determined set of factors to assess risk. This process takes place for most defendants within 24 hours of arrest.

11. When ordered to do so, PSA supervises defendants released during the pretrial period by monitoring their compliance with certain conditions of release and helping to assure that they appear for scheduled court hearings. There are a number of programs and supervision conditions that can be assigned to defendants based on their risk and needs. Last year, we released about one third of arrested persons with no special supervision conditions, asking them only to return to court and not break the law.

12. In the District of Columbia, in recent years we release between 85% and 92% of all arrestees, a much higher percentage than all but a few court systems. In the fiscal year 2015, more than 91% were released and 98% of released defendants remained arrest-free from violent crimes during pretrial release. 89% of released defendants remained arrest-free from all crimes. Of those released pretrial, 88% made *all* scheduled court appearances during the pretrial period. The District accomplishes these high rates of non-arrest and court appearances, again, without using money bonds.

13. Our system, simply stated, seeks to scientifically assess risk and then attempts to mitigate that assessed risk in a law-based fashion, maximizing release. For those relatively few persons

for whom risk cannot be effectively mitigated while released, we order bondless detention pending an expedited trial. There is no guesswork as to their status. Rich or poor, they are detained.

14. We have learned that we have numerous tools at our disposal to maximize court appearance and public safety for the vast majority of defendants without resorting to detention. Stay-away orders (for example, in shoplifting, assault, or domestic violence cases); counseling; drug, mental health, and alcohol treatment programs; reporting to pretrial services; mail, phone and text message reminders of court dates; drug testing; and electronic and GPS monitoring can all be employed to reasonably assure high rates of court appearance and public safety.

**Conclusions**

15. Washington, DC operates a substantially safe, effective, transparent, and fair system of pretrial justice decision-making system. We have empirically demonstrated that this can de done over time without the use of money bond.

_____
Truman Morrison

SWORN AND SUBSCRIBED BEFORE ME
This _14_ day of _March_, 2016
Washington, D.C.

_____
NOTARY PUBLIC

Brian K. Price
District of Columbia, Notary Public
My Commission Expires
August 31, 2019

3