**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| MARANDA LYNN ODONNELL, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 16-cv-01414 |
| | ) | (Consolidated Class Action) |
| HARRIS COUNTY, TEXAS, et al. | ) | The Honorable Lee H. Rosenthal |
| | ) | U.S. District Judge |
| Defendants. | ) | |
| | ) | |
| | ) | |

**PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I.    Introduction

The key legal question in this case is whether Defendants violate equal protection and due process by jailing people prior to trial solely because they cannot afford a monetary payment. Because arrestees have both a fundamental right to pretrial liberty and a right to be free from wealth-based jailing, the government may not detain them unless it makes a substantive finding that detention is necessary to serve a compelling government interest, and only if the government provides procedural safeguards to ensure the accuracy of that finding. This Motion seeks partial summary judgment on Plaintiffs' claim that Defendants violate the Constitution by failing to provide the substantive findings and procedural safeguards necessary to justify a de facto or transparent order of pretrial detention. Plaintiffs seek declaratory relief against the judicial officers and declaratory and injunctive relief against the County, its policymakers, and the Sheriff. This Motion requests a declaration as a matter of law against all Defendants and a determination of Defendants' liability as to the injunctive claims, although the contours of a final injunctive remedy should be determined at a later date, follow further proceedings.

1

The resolution of this Motion will determine, as a matter of law, the substantive findings and procedural safeguards required for individualized bail determinations.  But this case also challenges Defendants' policy of determining whether a person is released or detained after arrest and *prior to an individualized hearing* solely on the basis of access to money.  Therefore, after the Court resolves this Motion, two questions will remain for this Court to decide following a trial: (1) Applying strict scrutiny, as required by equal protection and due process, *see infra* Part VII.B.2., has Harris County met its burden, based on the facts presented, to justify its policy of automatically subjecting class members to wealth-based detention prior to an individualized bail hearing?  That is, does Defendants' requirement of predetermined secured financial conditions of release prior to an individualized hearing—which necessarily results in the detention of indigent arrestees— minimize the intrusion on Plaintiffs' constitutional rights only to that which is necessary to serve the government's interests?  And (2) If Harris County has not met its burden to prove that its policy of making release and detention of all misdemeanor arrestees turn on their access to predetermined amounts of money is necessary to serve a compelling interest, then, based on the evidence, what prospective relief should this Court order to protect Plaintiffs' constitutional rights?

## II.    Nature and Stage of Proceedings

Plaintiffs filed this case in May 2016, Dkt. 3, and amended their Complaint on August, 31, 2016, Dkt. 51-1.  Following extensive briefing and argument, this Court largely denied the Defendants' motions to dismiss on December 16, 2016.  Dkt. 125.  The County filed a motion to reconsider, and the Court denied that motion on March 2, 2017.  Dkt. 201.  In January 2017, Plaintiffs filed amended motions for class certification and preliminary injunctive relief.  Dkt. 143, Dkt. 146.  The Court conducted an eight-day evidentiary hearing on those motions in March 2017 and, on April 28, 2017, granted them.  Dkts. 302, 303, 304.  After this Court, the Fifth Circuit, and

the United States Supreme Court denied Defendants' motions to stay the preliminary injunction, the injunction went into effect on June 6, 2017.  *See* Dkt. 327; *ODonnell v. Harris Cty.*, 691 F. App'x. 816 (5th Cir. 2017); Denying Application for Stay Pending Appeal, *Harris Cty. v. ODonnell*, No. 16A1204 (June 7, 2017).   Defendants filed an interlocutory appeal of the preliminary injunction. Dkts. 334, 335.

On February 14, 2018, the Fifth Circuit largely affirmed this Court's legal rulings and upheld its factual findings.  *ODonnell v. Harris Cty.*, 882 F.3d 528, 535 (5th Cir. 2018), *opinion withdrawn and superseded on reh'g*, No. 17-20333, 2018 WL 2465481 (5th Cir. Jun. 1, 2018). The panel held that the County's system violated equal protection, *id.* at 545, and affirmed the core of this Court's state-created-rights analysis, *id.* at 543, but it did not consider the federal due process right to pretrial liberty.  The Fifth Circuit vacated the injunction as overbroad in two respects, but stayed vacatur pending further proceedings in this Court to determine appropriate amended relief.  *Id.* at 549.  The court also dismissed the Sheriff.  *Id.*  Plaintiffs filed a petition for rehearing, asking the court to clarify that the Sheriff remains in the case for injunctive relief as a state actor.  Appellees' Pet. for Panel Reh'g, *ODonnell*, 2018 WL 2465481 (No. 17-20333).  The County also filed a petition for rehearing, asking the court to reconsider the County's liability for the unconstitutional jurisdiction-wide policies promulgated by the Judges en banc.  Pet. for Panel Reh'g by Appellants Harris County et al., *ODonnell*, 2018 WL 2465481 (No. 17-20333).

On February 26, 2018, the Fourteen Judges asked this Court to vacate the injunction and enter sample provisions set forth in the Fifth Circuit decision.  Dkt. 390.  This Court denied the Motion.  Dkt. 392.  On May 3, 2018, the Fourteen Judges sought the same relief from the Fifth Circuit.  Mot. of Appellants Fourteen Judges of Harris County Criminal Courts at Law for Stay of the Prelim. Inj. and Entry of a Modified Inj. Reflecting This Ct.'s Ruling, *ODonnell*, 2018 WL

2465481 (No. 17-20333) (5th Cir. May 3, 2018).   On June 1, 2018, the Fifth Circuit granted

Plaintiffs' petition for rehearing, denied the County's petition for rehearing, and denied the

Fourteen Judges' motion.   The court issued a revised opinion, *ODonnell*, 2018 WL 2465481; Dkt.

397, and issued the mandate, Dkt. 396. This Court ordered the parties to meet and confer and

submit a proposed revised injunction by June 11, 2018.  Dkt. 395.  A status conference is scheduled

for June 14, 2018.  Dkt. 395.

## III.   Statement of the Issues

1.   Whether the Equal Protection and Due Process Clauses protect a constitutional right against wealth-based detention.

2.   Whether the Due Process Clause protects a fundamental right to pretrial liberty.

3.   Whether, before a decision-maker may require secured money bail as a condition of release in an individual case, the decision-maker must inquire into and make findings on the record concerning a person's ability to pay to determine whether the financial condition of release will operate as an order of detention.

4.   Whether strict scrutiny applies to wealth-based detention and to the deprivation of the right to pretrial liberty, such that pretrial detention due to inability to make a monetary payment must be necessary to serve a compelling government interest.[1]

5.   Whether the government must make a substantive finding that detention is necessary because less-restrictive alternatives are not sufficient to serve a compelling interest before issuing either a transparent order of pretrial detention or a de facto order of pretrial detention.

6.   Whether the government must provide procedural safeguards to ensure the accuracy of the finding that pretrial detention is necessary to serve a compelling interest, including:

   a.   Notice of the critical issues to be decided at the hearing;

---

[1] *Salerno* stated that it was important to its analysis that preventive pretrial detention under federal law was limited to "extremely serious" federal felony offenses.  481 U.S. at 740.  Because Texas law does not permit pretrial detention of most misdemeanor arrestees on the grounds of public safety, Plaintiffs have not made, and the Court need not reach, the argument that Plaintiffs are ineligible for preventive pretrial detention on the basis of public safety.

    b.  An adversarial hearing at which the arrestee is represented by counsel[2] and has an opportunity to be heard on legal issues and to present and to confront evidence offered by the government relevant to pretrial release and detention;

    c.  An impartial decision-maker;

    d.  A finding on the record by clear and convincing evidence that no less-restrictive condition or combination of conditions of release is sufficient to serve the government's compelling interests, and a statement of reasons explaining the factual basis for that finding.

## IV.   Standard of Review

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nola Spice Designs, L.L.C. v. Haydel Enters. Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011) (quotation omitted). The court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice*, 783 F.3d at 536.

## V.   Statement of Undisputed Material Facts[3]

Harris County has determined that nearly all Class A and B misdemeanor arrestees are eligible for release after arrest and prior to an individualized hearing. Exhibit 1 (Statement of Undisputed Facts) ¶ 1. The County uses a chart of secured financial conditions (a money bail "schedule") to predetermine how much money a person must pay to secure release prior to a

---

[2] Plaintiffs do not seek summary judgment on the right to counsel in this motion. After further factual development, Plaintiffs will move separately for judgment on that claim. *See infra* Part VII.C.2.c.

[3] These undisputed facts describe the system in place when Plaintiffs filed this lawsuit.

hearing. *Id.* ¶ 2.  All arrestees whose charges are covered by the bail schedule and for whom there is no other independent basis for detention will be released if they can pay the amount required by the bail schedule. *Id.* ¶ 3.

Whether a person is arrested with or without a warrant, she learns the monetary amount required for her release according to the schedule soon after arrest.  *Id.* ¶ 4.  At that point, unless there is some independent basis for detention (*e.g.*, a parole hold, a pending felony charge, or an immigration detainer) a person who pays the predetermined amount is released from custody.  *Id.* ¶ 5.  A person who does not pay the monetary amount remains in custody and will be transported to and booked into the Harris County Jail, if she was not taken there directly.  *Id.* ¶ 6.  This moment of differential treatment—when a person with access to money is released while a person without access to money is detained—typically occurs within hours of an arrest.  *Id.* ¶ 7.

An arrestee who cannot pay for release is taken by Sheriff's deputies to a room in the jail with up to 45 other recently arrested individuals to appear by videolink before a Harris County Criminal Law Hearing Officer.  *Id.* ¶ 8.  Arrestees are not provided with notice of the critical issues to be decided at the hearing.  *Id.*  This appearance is called a "probable cause and bail-setting hearing" (hereinafter: "magistration").  *Id.* ¶ 9.  At magistration, each of which typically last one or two minutes, a Hearing Officer determines whether probable cause exists for warrantless arrests and sets conditions of pretrial release, reviewing the money bail amount previously affixed to the charging document pursuant to the schedule.  *Id.* ¶ 10.  Before the docket begins, Sheriffs' Office personnel instruct arrestees not to speak during the appearance.  *Id.* ¶ 11.  During the hearing, the detainees remain in a room at the jail, while the Hearing Officer and a prosecutor are in a courtroom in the courthouse across the street.  *Id.* ¶ 12.  Although Texas law requires magistrations within 24

6

hours of arrest, magistrations "usually, but far from always, are held within 24 hours of arrest" in Harris County.  *Id.* ¶ 13.

Magistrations begin when the Hearing Officer calls each individual's name and reads the charge.  *Id.* ¶ 14.  When called, each arrestee gets up and stands in the middle of a red square marked on the floor.  *Id.* ¶ 15.  An assistant district attorney then reads the factual allegations giving rise to arrest from the complaint.  *Id.* ¶ 16.  The Hearing Officer decides whether there is probable cause and determines the conditions of pretrial release.  *Id.* ¶ 16.  When requiring secured financial conditions of release, which Hearing Officers do automatically pursuant to the schedule in the vast majority of cases, Hearing Officers do not ask arrestees whether they can afford to pay the monetary amount required for release.  *Id.* ¶ 18.  Hearing Officers do not make findings on the record concerning an arrestee's ability to pay.  *Id.* ¶ 19.  Hearing Officers claim not to "know" whether requiring secured money bail will result in detention.  *Id.* at 1097.  They do not make findings that a particular condition or combination of conditions is the least restrictive necessary to reasonably assure court appearance or community safety.  *Id.* ¶ 20.  And they do not make findings that pretrial detention is necessary to meet a specific, compelling government interest.  *Id.* ¶ 21.  Hearing Officers refuse to hear any evidence or argument on those issues, and Hearing Officers routinely instruct arrestees not to say anything or to stop talking.  *Id.* ¶ 22.  Because Hearing Officers do not preside over courts of record, they believe that they *cannot* hear argument or take evidence at all.  *Id.* ¶ 23.

After the magistration hearing, arrestees who cannot afford secured financial conditions of release are taken to a County Criminal Court at Law, typically the next business day after the magistration, but not always.  *Id.* ¶ 24.  This proceeding is known as "first appearance."  *Id.* ¶ 25.  Arrestees who have magistrations on Fridays, and sometimes those who have magistrations on

Wednesdays or Thursdays, will not be brought to first setting until the following Monday at the earliest. *Id.* ¶ 26. For example, Named Plaintiff Loetha McGruder was arrested on a Thursday, and Named Plaintiff Robert Ryan Ford was arrested on a Wednesday. *Id.* ¶ 27. Both of them waited until the following Monday to be brought to the County Criminal Court at Law for first appearance. *Id.* ¶ 28. At that appearance, Ms. McGruder "was ready to enter a guilty plea because she believed it was the fastest way to be released." *Id.* ¶ 29. Instead, her attorney "convinced her to seek a personal bond," which the judge granted. *Id.* Ms. McGruder was released later that day. *Id.* According to Defendants, Ms. McGruder's case "is the prime example of the system functioning as it should." *Id.* ¶ 30.

Arrestees who are still in detention are typically assigned court-appointed attorneys at the first setting, but not always: arrestees are sometimes brought back to court several days in a row before being appointed an attorney. *Id.* ¶ 31. During the first setting, arrestees are kept outside the courtroom in a group holding cell with other detainees. *Id.* ¶ 32. Attorneys are permitted into the cell area to meet their clients for the first time, surrounded by other detainees. *Id.* ¶ 33. At that first meeting, an attorney will often convey a plea offer to her client from the prosecutor. *Id.* ¶ 34. Unless an arrestee is pleading guilty, the arrestee is typically not brought out into the courtroom from the holding cell. *Id.* ¶ 35. A future court date is set, and the arrestee will remain in custody if she cannot pay the predetermined financial condition of release. *Id.* ¶ 36. If an arrestee is going to plead guilty, she will be brought into the courtroom in metal restraints for the plea colloquy. *Id.* ¶ 37.

Forty percent of misdemeanor arrestees are detained throughout the entire duration of their case. *Id.* ¶ 38. Eighty-four percent of people detained at disposition plead guilty, and they do so in a median of 3.2 days. *Id.* ¶ 39. Sentences are structured to facilitate expeditious release after

8

conviction: 67 percent of arrestees who plead guilty while detained are released within a day, and 83 percent are released within five days. *Id.* ¶ 40. For those unable to pay for release, pleading guilty "is the only way to secure timely release from detention." *Id.* ¶ 41.

Even short periods of pretrial detention lead to job termination, lost housing, separation from children, lapses in medical and mental health care, and pressure to plead guilty. *Id.* ¶ 42. Both the individual and the government have a strong interest in avoiding these harms, in ensuring the accuracy of the pretrial detention determination, and in avoiding wrongful convictions and new crimes. *Id.* ¶ 43. Harris County was the nation's leader in total exonerations in 2015 and 2016. *Id.* ¶ 44. Most of the wrongful convictions that were overturned resulted from guilty pleas by pretrial detainees in "misdemeanor drug offenses that evidence samples conclusively prove the defendant did not commit." *Id.* ¶ 44.

## VI.     Summary of the Argument

"In our society liberty is the norm, and detention prior to trial . . .  is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). But Harris County detains approximately 40 percent of all misdemeanor arrestees—tens of thousands of people every year—for the duration of their cases solely because they cannot pay money bail. This automatic detention of impoverished people is not an "exception" at all, let alone a "carefully limited" one.

Plaintiffs' constitutional claims have both substantive and procedural aspects. *See, e.g.*, *Washington v. Harper*, 494 U.S. 210, 220 (1990) (explaining the interaction between claims that share substantive and procedural aspects). Substantively, Plaintiffs' claims flow from two lines of precedent. First, equal protection and due process forbid jailing a person solely because of her inability to make a payment. *ODonnell,* 2018 WL 2465481, at *9; *Bearden v. Georgia*, 461 U.S. 600, 665 (1983); *Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978); *Frazier v. Jordan*, 457

9

F.2d 726, 728 (5th Cir. 1972).   Second, due process protects a "fundamental" right to pretrial liberty.  *Salerno*, 481 U.S. at 750.

The two substantive constitutional rights at issue—the right against wealth-based detention and the fundamental right to pretrial liberty—cannot be infringed unless the government satisfies strict scrutiny: the government must demonstrate that wealth-based pretrial detention is necessary to serve a compelling interest.[4]   Thus, if requiring a person to make a monetary payment in exchange for release from detention, the government must make findings concerning the person's ability to pay.  If the person cannot pay the amount required, such that the condition of release will function as a de facto detention order, then the government must justify the order to pay unattainable bail in the same way that it justifies a transparent order of detention.

Procedurally, the Constitution requires the government to provide safeguards to protect against the erroneous deprivation of these substantive rights.  *Harper*, 494 U.S. at 228; *ODonnell*, 2018 WL 2465481, at \*5 ("'The first question [in a procedural-due-process analysis] asks whether there exists a liberty interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'") (quoting *Meza v. Livingston*, 607 F.3d 392, 399 (5th Cir. 2010)).  Here, the basic procedures

---

[4] The Fifth Circuit held that "heightened" scrutiny applies to policies infringing the right against wealth-based detention.  *ODonnell*, 2018 WL 2465481, at \*9.  Strict scrutiny and intermediate scrutiny are both forms of "heightened" scrutiny.  *ODonnell*, 251 F. Supp. 3d at 1138 (citing *Lauder, Inc. v. City of Houston*, 751 F. Supp. 2d 920, 933 (S.D. Tex. 2010), *aff'd.*, 670 F.3d 664 (5th Cir. 2012)).  Both require the government to show that its policy is narrowly tailored to a compelling interest. *Id.* Under strict scrutiny, the policy must be necessary to achieve that interest. *Id.* Under intermediate scrutiny, the policy is constitutional only if it "promotes a substantial government interest that would be achieved less effectively absent the regulation."  *Id.* (quoting *Lauder*, 751 F. Supp. 2d at 933).

*Rainwater* did not address whether strict or intermediate scrutiny applies in the context of wealth-based detention.  But *Frazier*, which is binding, explicitly applied strict scrutiny, 457 F.2d at 728, consistent with *Bearden*'s later rejection of wealth-based detention because the government's interest could "be served fully by alternative means," 461 U.S. at 671-72.  This Court need not resolve which form of heightened scrutiny applies if it finds that the practices flunk intermediate scrutiny, or if it concludes that Defendants' policies infringe Plaintiffs' fundamental right to pretrial liberty, because strict scrutiny unquestionably applies when a fundamental right is at issue.

required include notice, an opportunity to be heard and to present and confront evidence at a hearing with counsel, and findings on the record by clear and convincing evidence.

Defendants evade the substantive findings and procedural protections required for lawful pretrial detention by using predetermined secured financial conditions of release to detain arrestees who cannot pay. These policies and practices violate equal protection and due process.

## VII.   Argument

### A. The Constitution Protects a Right Against Wealth-Based Detention and a Right to Pretrial Liberty

The Equal Protection and Due Process Clauses protect a substantive right against wealth-based detention. *Rainwater*, 572 F.2d at 1057 ("The incarceration of those who cannot [pay money bail], without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements."); *Tate v. Short*, 401 U.S. 395 (1971); *Williams v. Illinois*, 399 U.S. at 244; *Bearden*, 461 U.S. at 665; *Frazier*, 457 F.2d at 728 (holding that an order to pay a fine or serve time in jail violates equal protection and due process unless it is "necessary to promote a compelling governmental interest" (quotation and citation omitted)); *see also* Brief of Conference of Chief Justices as Amicus Curiae in Support of Neither Party at 35, *ODonnell*, 2018 WL 2465481 (No. 17-20333), 2017 WL 3536467, at *24  (5th Cir. Aug. 9, 2017) ("[A]ll the concerns that attend post-conviction deprivations based on indigence apply with even greater force where a defendant has not been convicted of a crime. . . .  If a state may not imprison convicted indigent defendants solely 'on account of their poverty,' how can a state constitutionally detain presumably innocent persons for the same reason?").

In *ODonnell*, the Fifth Circuit held that Harris County's practices—in which "poor arrestees . . . are incarcerated where similarly situated wealthy arrestees are not, solely because the indigent cannot afford to pay a secured bond"—creates a "basic injustice."  2018 WL 2465481, at

*9.  The Court concluded that heightened scrutiny applies when the government infringes the right against wealth-based detention and that Harris County failed to justify its practices under that scrutiny.  *Id.*

But the *ODonnell* court did not consider the second substantive constitutional right in this case: the "fundamental" federal right to pretrial liberty, 2018 WL 2465481, at *6 ("Here, our focus is the law of Texas."), which is implicated by the pretrial detention of a presumptively innocent person due to her inability to make a monetary payment.  *Salerno*, 481 U.S. at 750; *see also Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.") (citing *Youngberg v. Romeo*, 457 U.S. 307, 316 (1982)); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (same); *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 780 (9th Cir. 2014) (*en banc*) (applying strict scrutiny to Arizona pretrial detention law because it infringed on the "fundamental" right to pretrial liberty); *In re Humphrey*, 19 Cal. App. 5th 1006, 1049 (Ct. App. 2018) (review pending) (recognizing the "fundamental constitutional right to pretrial liberty"); *Brangan v. Commonwealth*, 80 N.E.3d 949, 961 (Mass. 2017) (holding that the right to pretrial liberty is "fundamental"); *Buffin v. City & Cty. of San Francisco*, No. 15-CV-04959-YGR, 2018 WL 424362, at *6 (N.D. Cal. Jan. 16, 2018) (holding that pretrial detention due to inability to pay "implicates plaintiffs' fundamental right to liberty").  The Conference of Chief Justices, whose membership consists of the highest judicial officer of each state, the District of Columbia, and each U.S. territory and commonwealth, recently affirmed this principle.  Brief of Conference of Chief Justices at 38 ("[T]he right of an accused to freedom pending trial is inherent in the concept of a liberty interest protected by the due process clause of the Fourteenth Amendment." (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1192 (10th Cir. 2010))).

**B. Defendants Violate Equal Protection and Due Process by Requiring Unattainable Financial Conditions Without Making a Finding That Detention is Necessary to Serve a Compelling Government Interest**

Requiring a financial condition of release that a person cannot meet is the equivalent of requiring detention. Binding precedent requires a finding of necessity prior to an order of pretrial detention and rigorous procedural safeguards to ensure the accuracy of that finding. The undisputed facts establish that Defendants impose unattainable financial conditions of release that function as detention orders without providing the substantive findings and procedural safeguards required by the Equal Protection and Due Process Clauses to justify an order of detention. Plaintiffs are therefore entitled to partial summary judgment.

**1. An Unattainable Financial Condition Is the Functional Equivalent of an Order of Pretrial Detention**

As this Court and the Fifth Circuit have held, an order requiring a person to pay an unattainable amount of money to secure release is an order of pretrial detention. *ODonnell*, 2018 WL 2465481, at *9 (holding that Defendants' practices result in the "absolute deprivation of [indigent misdemeanor arrestees'] most basic liberty interests—freedom from incarceration"); *ODonnell*, 251 F. Supp. 3d at 1131, 1156, 1161 (holding that secured money bail set in an amount that an arrestee cannot afford is constitutionally equivalent to an order of detention); *see also, e.g.*, *United States v. Leathers*, 412 F.2d 169, 171 (D.C. Cir. 1969) ("[T]he setting of bond unreachable because of its amount would be tantamount to setting no conditions at all."); *United States v. Mantecon-Zayas*, 949 F.2d 548, 550 (1st Cir. 1991) ("[O]nce a court finds itself in this situation— insisting on terms in a "release" order that will cause the defendant to be detained pending trial— it must satisfy the procedural requirements for a valid *detention* order . . . ."); *State v. Brown*, 338 P.3d 1276, 1292 (N.M. 2014) ("Intentionally setting bail so high as to be unattainable is simply a less honest method of unlawfully denying bail altogether."); *Brangan*, 80 N.E.3d at 963

(unattainable money bail "is the functional equivalent of an order for pretrial detention, and the judge's decision must be evaluated in light of the same due process requirements applicable to such a deprivation of liberty.").

### 2. Wealth-Based Pretrial Detention Requires the Government to Demonstrate Necessity

Because a person's "interest in liberty" is "fundamental," the Supreme Court has held that it is a "'general rule' of substantive due process that the government may not detain a person prior to a judgment of guilt in a criminal trial." *Salerno*, 481 U.S. at 750, 749. Like other constitutional rights, however, the right to pretrial liberty is not absolute: the government may deprive a person of her right to pretrial liberty if the government's interest is sufficiently compelling and the deprivation is narrowly tailored—meaning that pretrial detention is necessary because alternatives are inadequate—to serve that interest. *Salerno*, 481 U.S. at 749, 751 (describing the government interest in preventing serious pretrial crime as "compelling" and the statute as "careful[ly] delineat[ing] . . . the circumstances under which detention will be permitted"); *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (holding that the government may not infringe "'fundamental' liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.").

This Court and every court to consider the question has held that the government must demonstrate that its "infringement [of pretrial liberty] is narrowly tailored to serve a compelling state interest." *Lopez-Valenzuela*, 770 F.3d at 780; *see also Reem v. Hennessy*, No. 17-CV-06628-CRB, 2017 WL 6765247, at *1 (N.D. Cal. Nov. 29, 2017) ("The due process clauses of the Fifth and Fourteenth Amendments bar pretrial detention unless detention is necessary to serve a compelling government interest."); *ODonnell*, 251 F. Supp. 3d at 1156–57 (holding that government action infringing pretrial liberty must be the least restrictive means necessary to serve

court appearance and community safety); *Humphrey*, 19 Cal. App. 5th at 1028, 1037 (holding that a person may be detained only if "no less restrictive alternative will satisfy" the government's interests because pretrial detention is permissible "only to the degree necessary to serve a compelling governmental interest"); *Brangan*, 80 N.E.3d at 962 (holding that pretrial detention is permissible if "such detention is demonstrably necessary" to meet a compelling interest).[5]

Independently, government action that infringes the right against wealth-based detention must likewise satisfy strict scrutiny.  In *Frazier*, the Fifth Circuit held that strict scrutiny was the appropriate constitutional standard when it invalidated a practice requiring an indigent person to either pay a fine or be jailed after conviction because the alternative jail term was not "necessary to promote a compelling governmental interest."  457 F.2d at 728 (quotations omitted). *Frazier* explained that there were "far less onerous alternatives" that would satisfy the "state's interest in collecting its fine revenue." *Id.*; *see id.* at 729–30 (reviewing adequate alternatives available). *Bearden*, while not labeling the level of scrutiny that it applied to wealth-based post-conviction detention, similarly required "careful inquiry" into the state's asserted interests and "the existence of alternative means for effectuating" those interests. 461 U.S. at 666, 667; *see also Rainwater*, 572 F.2d at 1057 (explaining that the same principles apply prior to trial and that the Constitution requires "meaningful consideration of . . . alternatives" to "incarceration of those who cannot" pay a financial condition of release, and a finding that secured money bail "is *necessary* to reasonably assure defendant's presence at trial." (emphasis added)).  Accordingly, if the government's interest in "appearance at trial could reasonably be assured by … alternate [conditions] of release, pretrial confinement for inability to post money bail" is unconstitutional. *Id.* at 1058; *see also Buffin*, 2018

---

[5] Any deprivation of that liberty interest must withstand heightened constitutional scrutiny, which requires that the deprivation be narrowly tailored to advance a compelling government interest. *See, e.g.*, *Zablocki v. Redhail*, 434 U.S. 374, 388 (1978) (noting that when the government's action infringes a fundamental right, "it cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests").

WL 424362, at *8 (holding that "an examination of the *Bearden-Tate-Williams* line of cases persuades the Court that strict scrutiny applies to plaintiffs' Due Process and Equal Protection claims.").

The Fifth Circuit's decision in this case held that "heightened scrutiny" applies to Harris County's wealth-based bail practices, but did not specify in the interlocutory context whether intermediate or strict scrutiny applies when evaluating government conduct infringing the right to wealth-based detention.  *ODonnell*, 2018 WL 2465481, at *9 (holding that "heightened scrutiny" applies).  However, in light of binding Fifth Circuit precedent, *Frazier*, 457 F.2d at 728, and the particular language from this Court's order that the panel emphasized, *see ODonnell*, 2018 WL 2465481 *9 (affirming this Court's equal protection holding because detention due to inability to pay requires "'meaningful consideration of other possible alternatives'" (quoting *Rainwater*, 572 F.2d at 1057)), this Court should hold that strict scrutiny applies to wealth-based pretrial detention. *See supra* note 4; s*ee also ODonnell*, 2018 WL 2465481, at *8 (a court must explain why a "'particular financial requirement is a *necessary* part of the conditions for release' when setting a bond that a detainee cannot pay" (quoting *United States v. McConnell*, 842 F.2d 105, 110 (5th Cir. 1988) (emphasis added)))).  This Court and other courts have similarly used the language of strict scrutiny to describe the findings required to justify an order to pay unattainable financial conditions.  *ODonnell*, 251 F. Supp. 3d at 1140 ("[P]retrial detention of indigent defendants who cannot pay a financial condition of release is permissible only if the court finds, based on evidence and in a reasoned opinion, either that the defendant is not indigent and is refusing to pay in bad faith, or that no less restrictive alternative can reasonably meet the government's compelling interest"); *id.* at 1145 (requiring a finding that wealth-based detention "is the only reasonable way to assure the arrestee's appearance at hearings and law-abiding behavior before trial"); *Brangan*,

16

80 N.E.3d at 965 (holding that an order requiring an unattainable condition must explain why "the defendant's risk of flight is so great that no alternative, less restrictive financial or nonfinancial conditions will suffice to assure his or her presence at future court proceedings"); *Humphrey*, 19 Cal. App. 5th at 1026 (same).[6]

Therefore, pursuant to either the *Bearden-Frazier-Rainwater* wealth-based detention cases or the fundamental right to pretrial liberty articulated in *Salerno*, an unattainable financial condition of release triggers strict scrutiny.  Applying strict scrutiny as required by both lines of precedent, the detention at issue here is unconstitutional unless the government demonstrates that less-restrictive alternatives are inadequate and incapacitation is therefore necessary to serve a compelling government interest in court appearance or community safety.

Defendants do not make the substantive finding required to justify orders of detention.  Ex. 1 ¶¶ 19–21.  Indeed, because Defendants do not inquire into ability to pay, *id.* ¶ 18, they routinely claim not to "know" whether the requirement to pay money as a condition of release in fact operates as an order of detention, *id.* ¶ 19. Plaintiffs are entitled to summary judgment on their claim that Defendants violate equal protection and due process by detaining them without the substantive findings required for a valid order of pretrial detention.

### C. Defendants Do Not Provide Adequate Procedural Safeguards Prior to Ordering Pretrial Detention

Procedural-due-process analysis "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the

---

[6] *Humphrey* reached the same conclusion as this Court: imposing money bail cannot be justified by purported concerns about community safety because "[m]oney bail . . . has no logical connection to protection of the public, as bail is not forfeited upon commission of additional crimes. Money bail will protect the public only as an incidental effect of the defendant being detained due to his or her inability to pay, and this effect will not consistently serve a protective purpose, as a wealthy defendant will be released despite his or her dangerousness while an indigent defendant who poses minimal risk of harm to others will be jailed." *Id.*at 1029; *ODonnell*, 251 F. Supp. 3d at 1109–10.

procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).  Plaintiffs satisfy the first step of the procedural-due-process inquiry because, as explained above, Plaintiffs have been deprived of two substantive liberty interests: the right against wealth-based detention and the "fundamental" "interest in [pretrial] liberty." *Salerno*, 481 U.S. at 750.[7]  The second step of the procedural-due-process analysis—determining the procedures required for a valid pretrial detention order—proceeds under the *Mathews v. Eldridge* three-part balancing test, pursuant to which a court must consider, for each procedure: (1) "the private interest" at issue, (2) "the risk of an erroneous deprivation" absent the additional safeguard, and (3) the state's interest in not providing it. 424 U.S. 319, 335 (1976).

The balancing of the *Mathews* factors here establishes that, at a hearing to determine whether a person will be detained prior to trial, the government must provide notice of the critical issues; an inquiry into ability to pay if a financial condition is contemplated; an adversarial hearing at which the arrestee is represented by counsel and has an opportunity to be heard, to present evidence, and to confront evidence offered by the government; an impartial decision-maker; meaningful consideration of less restrictive alternatives to pretrial detention; and, if the decision-maker issues a transparent or de facto order of detention, findings on the record by clear and convincing evidence that detention is necessary to serve a compelling government interest, and a statement of reasons explaining the decision.

> **1. When requiring financial conditions, the government must conduct an inquiry into ability to pay and make on-the-record findings concerning ability to pay**

---

[7] As the Fifth Circuit noted, Plaintiffs also have a state-created liberty interest in bail by "sufficient sureties." *ODonnell*, 2018 WL 2465481, at *6.

As a threshold matter, when the government contemplates requiring a secured financial condition of pretrial release, it must provide procedures adequate to determine whether the monetary condition will operate as a detention order.  The Supreme Court, the Fifth Circuit, and this Court have already held that, if the government seeks to condition physical liberty on a payment, due process requires notice that financial information will be collected and of the nature and significance of the financial information; an inquiry into the person's ability to pay; and findings on the record as to whether the person has the ability to pay.  *See Turner v. Rogers*, 564 U.S. 431, 447 (2011) (applying the *Mathews* test and holding that, before the state may jail a person for not paying child support, the government must provide notice that ability to pay is a "critical issue," an opportunity to be heard, and "an express finding by the court that the defendant has the ability to pay"); *Bearden*, 461 U.S. at 673 (holding that, before the state can revoke probation for nonpayment, it must inquire into whether the nonpayment was willful); *United States v. Payan*, 992 F.2d 1387, 1396 (5th Cir. 1993) (the "court must inquire into the reasons" the person did not pay and determine whether she willfully refused to pay.); *ODonnell*, 251 F. Supp. 3d at 1144–45 (concluding that Harris County's automatic use of secured money bail, without an inquiry into ability to pay, presents an intolerably high risk of erroneous deprivation of a fundamental right, and that Defendants failed to demonstrate an interest in not providing these procedural safeguards); *id.* at 1161 (requiring an inquiry into ability to pay and notice to arrestees about the significance of the financial information they are asked to provide).  If, after notice and inquiry into ability to pay, the government determines that the person cannot pay the contemplated financial condition, then further procedures are required before the government may detain the person.

## 2. The government must provide additional procedural safeguards to protect against an erroneous deprivation of Plaintiffs' substantive rights

The substantive rights to pretrial liberty and against wealth-based detention require rigorous process to ensure the accuracy of any finding that preventive pretrial detention is necessary and to ensure that detention of the presumptively innocent remains the "carefully limited exception." *Salerno*, 481 U.S. at 755.

In *Salerno*, the Court upheld the procedural protections required by the Bail Reform Act and emphasized that an order of detention under the Act may be issued only after the provision of robust procedural safeguards, including: a "full-blown adversary hearing," *id.* at 750, "findings of fact" by "clear and convincing evidence," and a "statement of reasons for a decision to detain." *Id* at 752. Balancing the individual and government interests at stake, the *Mathews* test makes clear that due process requires safeguards similar to the provisions of the federal statute that the Supreme Court emphasized when it upheld that law.[8]

### a. The government must provide notice, an adversarial hearing, an impartial decisionmaker, and findings on the record

The procedures due process requires prior to the deprivation of *any* liberty interest are well established. Most of them apply even in the post-conviction context, where a person's liberty interest is less than that of the Plaintiffs, who are presumptively innocent. In *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973), the Court explained what due process requires at a probation revocation hearing for a person whose liberty interest has been diminished by a criminal conviction: (a) "notice" of the critical issues to be decided at the hearing; (b) "disclosure" of the evidence presented by the government at the hearing; (c) an "opportunity to be heard in person and to present

---

[8] *Salerno* addressed the procedural protections required for preventively detaining someone charged with certain particularly serious felony offenses, for only in such cases could the balance of interests that might permit deprivation of an individual's "fundamental" right tilt in the government's favor. *Id.* at 747, 750. Plaintiffs did not raise a claim here that due process prohibits pretrial detention of people charged only with misdemeanors. *See supra* n.2.

witnesses and documentary evidence"; (d) "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)"; (e) a "neutral and detached" factfinder; and (f) findings and reasons on the record of "the evidence relied on."  *See also Morrissey v. Brewer*, 408 U.S. 471, 48889 (1972) (holding that "the minimum requirements of due process" require the same six procedural protections in the context of parole revocation of a convicted and sentenced person); *Turner*, 564 U.S. at 447 (requiring "notice to the defendant that 'ability to pay' is a critical issue," the opportunity to be heard, and findings on the record); *see also, e.g.*, *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) ("Parties whose rights are to be affected are entitled to be heard."); *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 617 (1993) ("[D]ue process requires a 'neutral and detached judge in the first instance.'" (quoting *Ward v. Village of Monroeville*, 409 U.S. 57, 61–62 (1972))); *Wolff v. McDonnell*, 418 U.S. 539, 564–65 (1974) (requiring a statement of reasons for revocation of good-time credits).  Because a bail hearing implicates the fundamental right to bodily liberty prior to trial, each of these safeguards is required.

### b.  The government must prove by clear and convincing evidence that the arrestee is either a flight risk or a danger to the community

When the government seeks to infringe the fundamental right to bodily liberty prior to or absent a criminal conviction, the government also bears a heightened evidentiary burden.  As the Supreme Court explained in its seminal procedural due process decision in *Addington v. Texas*, 441 U.S. 418 (1979), the deprivation of the fundamental right to bodily liberty requires a heightened standard of proof beyond a mere preponderance to ensure the accuracy of the decision. Since *Addington*, the Supreme Court has never permitted application of a standard lower than "clear and convincing" evidence in any context in which bodily liberty is at stake.

In *Addington*, the Supreme Court held that, under the Due Process Clause, the standard of proof required before a person can be confined in state custody for mental illness based on the possibility of future dangerousness must be "equal to or greater than" the "clear and convincing" evidentiary standard.  *Id.* at 433.  Applying the *Mathews* balancing test, the Court first articulated the government's interest: "to protect the community from the dangerous tendencies of some who are mentally ill."  *Id*. at 426.  However, the Court explained: "Since the preponderance standard creates the risk of increasing the number of individuals erroneously committed, it is at least unclear to what extent, if any, the state's interests are furthered by using a preponderance standard in such commitment proceedings."  *Id*.  The Court then balanced the important private interests and concluded that "the individual's interest in the outcome of a civil commitment proceeding is of such weight and gravity that due process requires the state to justify confinement by proof more substantial than a mere preponderance of the evidence."  *Id*. at 427.

In determining what the appropriate due process standard was above a mere preponderance, the Court explained that requiring proof "beyond a reasonable doubt" was too stringent, particularly because of the non-punitive nature of the commitment and because, "given the uncertainties of psychiatric diagnosis, it may impose a burden the state cannot meet and thereby erect an unreasonable barrier to needed medical treatment."  *Id*. at 432.  The Court explained that in other contexts, such as deportation and denaturalization, it had consistently required the intermediate "clear and convincing" standard of proof to protect against erroneous deprivations of particularly important individual interests.  *Id*. at 424.  The "clear and convincing" standard enables the government to achieve its interest when it has a convincing basis but rigorously protects the fundamental individual rights at stake.  *See id.*

The Court has reached the same conclusion in every other context in which a person's bodily liberty is at stake. *See Santosky v. Kramer*, 455 U.S. 745, 756 (1982) ("This Court has mandated an intermediate standard of proof—'clear and convincing evidence'—when the individual interests at stake in a state proceeding are both 'particularly important' and 'more substantial than mere loss of money."); *Cruzan by Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261, 282–83 (1990) (explaining that the Court has required the clear and convincing evidence standard in deportation proceedings, denaturalization proceedings, civil commitment proceedings, proceedings for the termination of parental rights, in cases involving allegations of civil fraud, and in a variety of other kinds of civil cases implicating important interests).

In its next seminal case on the evidentiary standard required for deprivation of bodily liberty, the Court struck down, on due process grounds, Louisiana's statutory scheme for perpetuating the confinement of those acquitted on the basis of insanity in criminal trials. *Foucha*, 504 U.S. at 82–83. The Court held that although "[t]he State may [] confine a mentally ill person if it shows by clear and convincing evidence that the individual is mentally ill and dangerous, [h]ere, the State has not carried that burden." *Id*. at 80 (quotation and citation omitted). In reaching this holding, *Foucha* relied on *Salerno*, 481 U.S. at 749, explaining that the Court had upheld the federal statute's preventive detention mechanism in part because it required findings of dangerousness by the longstanding "clear and convincing" standard. *Foucha* held: "Unlike the sharply focused scheme at issue in *Salerno*, the Louisiana scheme of confinement is not carefully limited. Under the state statute, Foucha is not now entitled to an adversary hearing at which *the State must prove by clear and convincing evidence* that he is demonstrably dangerous to the community." 504 U.S. at 81 (emphasis added). *Foucha* concluded with a reminder about the doctrinal importance of the "clear and convincing" standard: "[F]reedom from physical restraint

being a fundamental right," administrative detention must remain the "carefully limited exception" in our society.  *Id.* at 86, 83.

Lower courts, interpreting *Salerno*, have consistently required clear and convincing evidence to justify detaining a person prior to trial.  *Lopez-Valenzuela* stuck down the Arizona pretrial detention statute in part because the Arizona law, unlike the federal Bail Reform Act, did not require the government to prove by clear and convincing evidence that an individual arrestee's detention was necessary.  770 F.3d at 784–85.  As the Ninth Circuit explained, one of the features that *Salerno* explicitly relied on was that the Act required the government "to prove by 'clear and convincing evidence' that the individual presented 'a demonstrable danger to the community' and that 'no conditions of release c[ould] reasonably assure the safety of the community.'"  *Id.* at 785.  Most recently, in *Humphrey*, the California Court of Appeal held under the federal Constitution that "[i]f [a] court concludes that an amount of bail the defendant is unable to pay is required to ensure his or her future court appearances, it may impose that amount only upon a determination by clear and convincing evidence that no less restrictive alternative will satisfy that purpose."  19 Cal. App. 5th at 1037.[9]

The intermediate standard of "clear and convincing" evidence should apply regardless of whether the government seeks to detain a person pretrial based on a purported risk of danger to the community or a purported risk of flight because the private right at stake is the same.  And the Supreme Court has already held in *Santosky*, *Addington*, and *Foucha* that fundamental private

---

[9] Numerous other state courts have held this standard to apply.  *See, e.g.*, *State v. Ingram*, 165 A.3d 797, 803, 805 (N.J. 2017); *State v. Butler*, No. 2011–K–0879, 2011 WL 12678268 (La. App. 4th Cir. July 28, 2011), *writ not considered*, 75 So. 3d 442 (La. 2011); *Wheeler v. State*, 864 A.2d 1058, 1065 (Md. App. 2005); *Brill v. Gurich*, 965 P.2d 404, 409 (Okla. 1998); *Lynch v. United States*, 557 A.2d 580, 581 (D.C. 1989), *and compare Aime v. Com.*, 611 N.E.2d 204, 212-14 (Mass. 1993) (striking down preventive detention statute because it did not require the "clear and convincing" burden of proof), *with Mendonza v. Com.*, 673 N.E.2d 22, 30 (Mass. 1996) (upholding successor statute and holding that "clear and convincing" evidence standard is required for pretrial detention decisions based on a prediction of future dangerousness).

interests require a heightened burden of proof before the government can infringe them, because those interests are "particularly important" and "more substantial than mere loss of money." *Santosky*, 455 U.S. at 756.  There is no compelling reason that "the degree of confidence our society thinks [it] should have in the correctness of factual conclusions," *id*. at 755, should be *lower* when the question is whether a person poses a risk of flight than when the question is whether the person poses a danger to other people in the community.

Analogous case law from the immigration context, where the liberty interest is considered more constrained than in the pretrial context, supports this conclusion.  *See Singh v. Holder*, 638 F.3d 1196, 1203, 1204 (9th Cir. 2011) (requiring clear and convincing evidence regardless of whether the government seeks detention based on flight or dangerousness because "due process places a heightened burden of proof [where] the individual interests at stake . . . are both particularly important and more substantial than mere loss of money."); *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015) (same), vacated and remanded on other grounds, 138 S. Ct. 1260 (2018).

Only one court appears to have addressed in depth whether the standard of proof the government must satisfy to detain someone due to a concern about flight risk is the same as the standard when the concern is community safety.  In *Kleinbart v. United States*, 604 A.2d 861, 868 (D.C. 1992), the D.C. Court of Appeals held that the "clear and convincing" evidence standard should apply to determinations about whether to order pretrial detention based on flight risk.  The court explained that "[a] defendant's liberty interest is no less—and thus requires no less protection—when the risk of his or her flight, rather than danger, is the basis for justifying detention without right to bail." *Id.* at 870.  The court therefore held: "Although the federal Bail Reform Act could be construed—purely as a matter of statutory construction—to require only a preponderance standard in risk of flight cases . . . we believe that *Salerno*'s emphasis on the clear

and convincing evidence standard to sustain the constitutionality of that statute as applied to danger necessarily carries over, as a requirement of due process, to risk of flight cases." *Id*. This analysis has been adopted by the American Bar Association's Criminal Justice Standards.[10]

In *United States v. Motamedi*, 767 F.2d 1403 (9th Cir. 1985), a pre-*Salerno* case, the Ninth Circuit held that the government failed to prove by a "clear preponderance" of the evidence that the defendant was a flight risk and reversed an order of pretrial detention. In the process, the court held that the *statutory* standard for determining flight risk under the Bail Reform Act was a "clear preponderance of the evidence" as opposed to the "clear and convincing" standard later upheld in *Salerno* for the question of dangerousness. *Id*. at 1406. In reversing the lower court's detention order, the Ninth Circuit made "no attempt to analyze the constitutional ramifications of its decision." *Id*. at 1412 (Boochever, J., concurring and dissenting in part). Judge Boochever, however, addressed the constitutional question, applying the *Mathews* balancing test. *Id*. at 1413–15. He explained:

> [T]he consequences to the defendant from an erroneous pretrial detention are certain and grave. The potential harm to society, although also significant, is speculative, because pretrial detention is based on the possibility, rather than the certainty, that a particular defendant will fail to appear. Moreover, society's interest in increasing the probability of detention is undercut by the fact that it has no interest in erroneously detaining a defendant who can give reasonable assurances that he will appear. I conclude therefore that the injury to the individual from an erroneous decision is greater than the potential harm to society, and that under *Addington* due process requires that society bear a greater portion of the risk of error: the government must prove the facts supporting a finding of flight risk by clear and convincing evidence.

---

[10] ABA Standard 10-5.8 explains that the "clear and convincing" standard applies to decisions relating to dangerousness and risk of flight. Courts have long looked to the Standards for guidance when answering constitutional questions about the appropriate balance between individual rights and public safety in the field of criminal justice. *See, e.g.*, *Padilla v. Kentucky*, 559 U.S. 356, 367 (2010); *Strickland v. Washington*, 466 U.S. 668, 688-89 (1984); *United States v. Teague*, 953 F.2d 1525, 1533 n.10 (11th Cir. 1992). Similarly, the Conference of Chief Justices has emphasized the safeguards upheld in *Salerno* and argued that misdemeanor arrestees detained due to inability to pay money bail are entitled to the same procedural safeguards afforded to arrestees who are detained pursuant to transparent orders of detention. *See* Brief of Conference of Chief Justices at 38.

*Id.* at 1415.

Given the importance of this legal question to pretrial justice in this country, the case law on the proper standard of proof when determining flight risk is surprisingly thin, perhaps because appellate courts have difficulty resolving pretrial detention issues before cases become moot. Indeed, the Supreme Court has not ruled on a constitutional issue relating to pretrial detention since *Salerno* in 1987. Although the issue should be uncontroversial in light of *Addington* and *Foucha*, and after balancing the *Mathews* factors, counsel has been unable to find precedent from any circuit addressing the question of whether, as a matter of due process, the "clear and convincing" standard[11] applies to determinations of pretrial detention based on a risk of flight.[12]

Thus, although the constitutional issue of what ultimate standard of proof must apply at a pretrial detention hearing appears to be one of first impression in this Court, the holdings and reasoning in *Addington, Foucha, Santosky, Salerno*, *Lopez-Valenzuela*, *Kleinbart,* and *Humphrey* demonstrate that the deprivation of the fundamental right to bodily liberty requires a heightened

---

[11] *United States v. Cos*, No. CR 05-1619 JB, 2006 WL 4061168, at *4 (D.N.M. Nov. 15, 2006), addressed a different question, not presented here: after what length of time does an initially valid order of pretrial detention cease to satisfy due process? In reaching its holding, the court in *Cos* noted that it could not find federal case law on the burden of proof required in the pretrial detention context: "In researching this issue, the Court has found only one judicial opinion considering which party bears the burden of proof when a court reviews the constitutionality of a pretrial detention." *Id.* (citing *Motamedi*).

[12] Counsel has found a number of federal cases after *Motamedi* that likewise apply a "preponderance" standard to risk of flight determinations as a matter of *statutory interpretation* under the Bail Reform Act, but none of those cases raised, analyzed, or decided the constitutional issue.

In *Querubin v. Com.*, 795 N.E.2d 534 (Mass. 2003), the court considered the standard required for detention based solely on risk of flight and concluded, without balancing the *Mathews* factors, that a preponderance of the evidence is the appropriate standard. *Id.* at 544. That decision is not persuasive, first, because the decision was based on cases relying on statutory interpretation and not constitutional law. Second, *Querubin*'s analysis was slim. The court stated in a footnote that, because pretrial detention is "limited and temporary," a lesser standard of proof is sufficient. *Id.* at 544 n.9. This assertion is unsound both because it is factually wrong (the period of pretrial detention is frequently significant, and in Harris County, is routinely the only time an arrestee spends in jail for a particular offense) and because binding case law on the importance of bodily liberty and the devastating effects of brief periods of pretrial detention does not require extended confinement to trigger the heightened standard. Finally, the Massachusetts court itself held in a different case, *Aime*, that due process requires the "clear and convincing" standard for pretrial detention based on dangerousness. *Aime*, 611 N.E.2d at 214.

standard of proof whether the government is considering alternatives to mitigate a risk of flight or alternatives to mitigate a risk of danger to the community.[13]

This Court has heard undisputed evidence of the effects of even short periods of pretrial detention, which can lead to job termination, lost housing, separation from children, lapses in medical and mental health care, and pressure to plead guilty, Ex. 1 ¶¶ 39–42, thereby coercing an individual into relinquishing the presumption of innocence and all of her other constitutional trial rights.  Both the individual and the government have a strong interest in avoiding these harms, in ensuring the accuracy of the pretrial detention determination, and in avoiding wrongful convictions and new crimes.  Ex. 1 ¶ 43.  Any interest the government might have in making a less reliable pretrial detention decision (and Defendants have not articulated any such interest) is less significant than minimizing pretrial detention and ensuring the integrity of convictions.  Given the impossibility of predicting future behavior, courts have struck a middle ground and followed *Addington*, avoiding the stringent "beyond a reasonable doubt" standard.  The "clear and convincing" standard strikes the correct balance, allowing the government to use pretrial detention in those "carefully limited" circumstances when there is clear evidence to support a finding that total incapacitation is necessary.

### c.  Arrestees must be represented by counsel

Both the Due Process Clause and the Sixth Amendment require that arrestees be represented by counsel at a hearing that can result in their pretrial detention.[14]  Under *Mathews*,

---

[13] Although the formal rules of evidence need not apply at detention hearings, the findings of clear and convincing evidence on which the government relies for the incapacitation of a presumptively innocent person must meet minimal standards of reliability. *See, e.g.*, *United States v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000) ("[W]hile the informality of bail hearings serves the demands of speed, the magistrate or district judge must also ensure the reliability of the evidence, by selectively insisting upon the production of the underlying evidence or evidentiary sources where their accuracy is in question." (quotation omitted)); *United States v. Accetturo*, 783 F.2d 382, 389 (3d Cir. 1986); *United States v. Acevedo-Ramos*, 755 F.2d 203, 207-08 (1st Cir. 1985); *Reem*, 2018 WL 1258137, at *3.

[14] After this Court's injunction, Harris County began a pilot program to provide counsel at bail hearings, and Defendants report that the addition of counsel has significantly improved their ability to make accurate determinations.

the risk of an erroneous deprivation of liberty without the assistance of counsel is intolerably high and outweighs any state interest, which is purely financial, in not providing counsel (indeed, Harris County is already providing lawyers in a pilot program, *see supra* n.14).  Further, under the Sixth Amendment, pretrial detention hearings are a "critical stage" of the criminal prosecution.  Indeed, as this Court recognized based on the evidence at the preliminary injunction hearing, the pretrial detention decision is one of the most important decisions in a criminal case, often determining the outcome of the case.  Ex. 1 ¶ 44.  Following additional discovery and development of the factual record, Plaintiffs will move for summary judgment on the issue of whether due process and the Sixth Amendment protect the right to counsel at hearings that result in pretrial detention.  Plaintiffs do not seek a ruling on the right to counsel in this motion.

### 3.   Defendants Do Not Provide the Required Procedural Safeguards

Defendants violate due process by failing to provide the procedural safeguards required to ensure the accuracy of their pretrial detention decisions.  Defendants do not provide notice of the critical issues to be decided at the hearing.  Ex. 1 ¶ 8.  Defendants do not provide an opportunity to be heard, including an opportunity to present and confront evidence and make legal argument.  *Id.* ¶¶ 11, 16–23.  They make no inquiry into or findings on the record concerning ability to pay or the availability of alternative conditions of release.  *Id.* ¶¶ 16–23.  And Defendants do not employ any standard, let alone the heightened evidentiary standard required by due process.  *Id.* ¶¶ 16–23.  Defendants' de facto pretrial detention orders violate procedural due process.

### VIII.   The Issues Remaining for Trial

This Motion asks the Court to resolve the purely legal question of what substantive findings and procedural safeguards are required to justify an order of pretrial detention issued after an individualized proceeding.  But this case also challenges Defendants' policy, applied *prior to the*

*individualized hearing*, of releasing people who can pay predetermined amounts of money, which are required automatically upon arrest, and detaining people who cannot.  Whether this policy is constitutional hinges on whether Defendants demonstrate that, as compared to alternatives, secured money bail is the most effective way of serving a compelling interest, and that the automatic post-arrest (and pre-hearing) detention of arrestees who cannot access the predetermined amounts is necessary to achieve that benefit.  At the evidentiary hearing, Defendants failed to do so.

The initial period of wealth-based detention flows from Harris County's policy decision to use a predetermined chart of monetary sums to determine on a jurisdiction-wide basis who is released and who is detained prior to an individualized hearing.  Because Defendants' pre-hearing policy results in the automatic detention of every indigent arrestee, it would be constitutional only if the predetermined amounts of money minimized detention to that which is necessary to secure compelling benefits.  At the preliminary injunction hearing, the parties put on extensive evidence, and this Court concluded that the County had failed to meet its burden to demonstrate that secured financial conditions are more effective than alternatives at reasonably assuring appearance or community safety.  *ODonnell*, 251 F. Supp. 3d at 1119–20 (considering the available data in Harris County, "[s]ecured money bail in Harris County does not meaningfully add to assuring misdemeanor defendants' appearance at hearings or absence of new criminal activity during pretrial release.");[15] *id.* at 1120 ("[U]nsecured appearance bonds are equally effective as secured money bail, at both assuring appearance at trial as well as law-abiding behavior before trial."); *see ODonnell*, 2018 WL 2465481, at *9 (upholding this Court's factual findings).  The Court further

---

[15] *See also ODonnell*, 251 F. Supp. 3d at 1131 ("Harris County does not compile comparative data on failures to appear by release on different bond types.").  Defendants have represented to Plaintiffs' counsel that, as of May 2018, they have still not reliably collected, analyzed, or disclosed this information.  They continue to rely on bond-forfeitures as an proxy for failures to appear.  *See id.* at 1118 (data on "bond forfeitures" and other types of bond "failure" "is not consistently kept or recorded.").

found that automatically requiring secured money bail was actually *contrary* to the government's stated interests because it "increases the likelihood that misdemeanor defendants will commit future crimes or fail to appear at future court hearings," *ODonnell*, 251 F. Supp. 3d at 1121, and concluded that automatic detention prior to an individualized bail determination causes other harms, coercing guilty pleas and irreparably damaging lives, *id.* at 1122, 1124.

Defendants intend to offer more recent evidence, collected since this Court's injunction went into effect to contest these factual findings at trial and will again attempt to justify the automatic post-arrest detention of indigent arrestees because of the supposed benefits that they get from secured financial conditions of release. Whether the secured bail schedule is the least restrictive means of achieving a compelling government interest therefore hinges on a factual question: do secured financial conditions serve compelling interests better than less-restrictive alternatives?

Following a determination of that fact, Plaintiffs will ask this Court to hold that Harris County's predetermined secured money bail schedule, which it applies automatically upon arrest and which operates to detain indigent arrestees, fails strict scrutiny because there are alternative mechanisms that would serve the government's interests at least as well as a policy that ensures the automatic detention of tens of thousands of misdemeanor arrestees each year.[16]

## IX.    Conclusion

This Court should grant Plaintiffs' Motion for Partial Summary Judgment on their legal claim that, at an individualized hearing, it violates equal protection and due process to require unattainable financial conditions of release without the substantive findings and procedural

---

[16] The court may convert the preliminary injunction record into a trial record, and may schedule additional court proceedings for the parties to introduce recent evidence and data generated since the March 2017 evidentiary hearing. *See* Fed. R. Civ. P 65 (a)(2).

safeguards required to justify a detention order.  All Defendants are liable for declaratory relief, and the Sheriff, the County, and its policymakers are liable for injunctive relief.  The precise injunctive remedy should be crafted following further proceedings.

Respectfully Submitted,

By:  */s/ Neal S. Manne*_____
Neal S. Manne
Texas Bar No. 12937980
nmanne@susmangodfrey.com
Lexie G. White
Texas Bar No. 24048876
lwhite@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone:  (713) 651-9366
Facsimile:  (713) 654-6666

*/s/ Michael Gervais*
Michael Gervais
mgervais@susmangodfrey.com
SUSMAN GODFREY, LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 336-8330

*/s/ Susanne Pringle*
Susanne Pringle
Texas Bar No. 24083686
springle@fairdefense.org
Texas Fair Defense Project
314 E. Highland Mall Blvd.
Suite 180
Austin, Texas 78752
Telephone:  (512) 637-5220
Facsimile:  (512) 637-5224

*/s/ Alec Karakatsanis*
*/s/ Elizabeth Rossi*
Alec George Karakatsanis
D.C. Bar No. 999294
alec@civilrightscorps.org
Elizabeth Rossi*
elizabeth@civilrightscorps.org

32

Civil Rights Corps
910 17th Street NW, Suite 200
Washington, DC 20006
Telephone: (202) 681-2721
*Admitted pro hac vice*

*Admitted solely to practice law in Maryland; not admitted in the District of Columbia. Practice is limited pursuant to D.C. App. R. 49(c)(3).

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 8th of June, 2018, I electronically filed the foregoing with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the Court.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*Elizabeth Rossi*
Elizabeth Rossi*

*Admitted solely to practice law in Maryland; not admitted in the District of Columbia. Practice is limited pursuant to D.C. App. R. 49(c)(3).