**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION**

| | |
|---|---|
| MARANDA LYNN ODONNELL, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 16-cv-01414 |
| ) | (Consolidated Class Action) |
| HARRIS COUNTY, TEXAS, et al. ) | The Honorable Lee H. Rosenthal |
| ) | U.S. District Judge |
| Defendants. ) | |
| ) | |

## PLAINTIFFS' BRIEF IN SUPPORT OF THE AMENDED PRELIMINARY INJUNCTION ORDER PROPOSED BY PLAINTIFFS AND DEFENDANT JUDGES NO. 14 AND NO. 16

This Court should enter the revised preliminary injunction proposed by Defendant Judge No. 14 Michael Fields, Defendant Judge No. 16 Darrell Jordan, and Plaintiffs because it comports with the Fifth Circuit's opinion and this Court's factual findings, is clear and administrable, and protects Plaintiffs from irreparable constitutional harm prior to adjudication on the merits.[1] The Fourteen Judges' proposed relief does none of those things: it fails to implement fully the Fifth Circuit's equal protection holdings; it does not protect Plaintiffs' fundamental right to pretrial liberty, which the Fifth Circuit opinion did not address; and it is ambiguous. Defendants have told this Court that those ambiguities will allow them to "return" to their old practices. Dkt. 390 at 2.

The Fields/Jordan/Plaintiffs order, Dkt. 401-1, has the support of the District Attorney and the Public Defender (Ex. 8), both of whom agree that the order meets the government's interests

---

[1] At the preliminary injunction stage, Plaintiffs sought limited relief to cure ongoing constitutional violations causing irreparable harm. They did not press their claims that procedural due process requires the findings justifying pretrial detention to be made by "clear and convincing" evidence or that arrestees are entitled to representation by counsel at hearings to determine pretrial release or detention. In light of the relief Plaintiffs have sought at this preliminary stage, the Fields/Jordan/Plaintiffs order is adequate. Plaintiffs are moving separately for summary judgment on the entirety of their claims, including those aspects for which they did not seek preliminary relief, at the appropriate times.

1

in court appearance and community safety while protecting the constitutional rights of indigent arrestees, and that it will be straightforward to implement.

Plaintiffs understand that there are many ways that this Court could remedy the constitutional violations in this case to prevent the irreparable harm that this Court has found. If this Court crafts relief different from that proposed, the Court must ensure, at a minimum, that the revised order: 1) requires the substantive findings necessary to justify an order of detention after an individualized hearing; 2) prevents wealth-based detention prior to an individualized hearing on this factual record; 3) is unambiguous and administrable; and 4) contains specific provisions to guard against efforts to undermine its effectiveness.

I.    **A Revised Injunction Must Protect Plaintiffs' Federal Constitutional Rights by Requiring a Finding that Pretrial Detention Is Necessary After an Individualized Hearing.**

As described more fully in Plaintiffs' Motion for Partial Summary Judgment, Dkt. 400 at 9–11, which Plaintiffs incorporate, Plaintiffs' constitutional claims have "both substantive and procedural aspects." *Washington v. Harper*, 494 U.S. 210, 220 (1990). Substantively, Plaintiffs' claims flow from two lines of precedent. First, equal protection and due process protect a right against wealth-based detention. *Bearden v. Georgia*, 461 U.S. 600, 665 (1983); *Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978); *Frazier v. Jordan*, 457 F.2d 726, 728 (5th Cir. 1972). In *ODonnell*, the Fifth Circuit held that Harris County's practices—in which "poor arrestees . . . are incarcerated where similarly situated wealthy arrestees are not, solely because the indigent cannot afford to pay a secured bond"—creates a "basic injustice," *ODonnell v. Harris County*, 2018 WL 2465481, at *9 (5th Cir. Jun. 1, 2018), that "violates the equal protection clause," *id.* at *10. Second, due process protects a right to pretrial liberty that is "fundamental." *Salerno*, 481 U.S. at 750; *see also Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *Lopez-Valenzuela v.*

*Arpaio*, 770 F.3d 772, 780 (9th Cir. 2014) (*en banc*); *In re Humphrey*, 19 Cal. App. 5th 1006, 1049 (Ct. App. 2018); *Brangan v. Commonwealth*, 80 N.E.3 949, 961 (Mass. 2017). The Fifth Circuit in *ODonnell* did not address the federal substantive right to pretrial liberty, choosing instead to analyze the state-created liberty interest in being "bailable by sufficient sureties," *ODonnell*, 2018 WL 2465481 at \*6–7; *id.* at \*6 ("Here, our focus is the law of Texas.").[2]

Under either line of federal precedent, the government must make a substantive finding that pretrial detention is necessary before a class member may be detained.[3] *See* Dkt. 400 at 13–17; *cf. ODonnell*, 251 F. Supp. 3d at 1145 (describing the same findings required for "detention orders in general" and "detention orders based on [inability to pay]"). This Court's initial injunction did not set forth a findings requirement because it required all arrestees to be released in light of Defendants' testimony[4] that they could not provide the findings required by due process to justify an order of pretrial detention. Because the revised injunction will not require the release of all indigent misdemeanor arrestees, it must identify the substantive finding required to justify an order of wealth-based or transparent pretrial detention.

First, *ODonnell*'s equal-protection holding and other binding precedent compel an injunction that requires a substantive finding that pretrial detention is necessary prior to issuing a de facto order of pretrial detention. *See* Dkt. 400 at 15–17. The *ODonnell* court properly applied

---

[2] Procedurally, the Constitution requires the government to provide safeguards to protect against the erroneous deprivation of substantive rights. *Harper*, 494 U.S. at 228; *ODonnell*, 2018 WL 2465481, at \*5. Although the Fifth Circuit addressed the procedures required to protect Plaintiffs' substantive right against wealth-based detention and state-created liberty interest in bail by sufficient sureties, the Fifth Circuit did not have occasion to address the procedural safeguards necessary to protect the fundamental federal right to pretrial liberty.

[3] The two substantive constitutional rights at issue—the right against wealth-based detention and the fundamental right to pretrial liberty—cannot be infringed unless the government satisfies strict scrutiny. *See* Dkt. 400 at 13–17. The Fifth Circuit held that "heightened" scrutiny applies, but did not specify which form of heightened scrutiny: intermediate or strict. At this stage, because the County failed to demonstrate any "link" between money bail and court appearance or community safety, the County's policies fail under even the less stringent standard of "intermediate" scrutiny. *ODonnell*, 2018 WL 2465481, at \*10 (quoting *ODonnell*, 251 F. Supp. 3d at 1151).

[4] *ODonnell*, 251 F. Supp. 3d. at 1093; *see* Dkt. 218-1 at 3–4; Dkt. 218-4 at 7.

3

*Bearden*, *Frazier*, and *Rainwater* (rejecting Defendants' argument that those cases must be confined to the post-conviction context, 2018 WL 2465481, at *9 n.6) to hold that heightened scrutiny applies to wealth-based detention. Those cases all hold that wealth-based detention is unconstitutional absent a finding that detention is necessary because alternatives are insufficient to serve the government's interests. *ODonnell* therefore explained that the County's "discriminatory action" of detaining arrestees "solely due to . . . indigency" violated equal protection because the amounts were determined "without any '*meaningful consideration of other possible alternatives.*'" 2018 WL 2465481, at *9 (quoting *Rainwater*, 572 F.2d at 1057); *ODonnell*, 251 F. Supp. 3d at 1145–46 (holding that the government "must make findings on the record that either the arrestee has the ability to pay the amount needed for release, or that the government has no reasonable alternative to imposing detention for the failure to pay").

Second, separate from and in addition to binding precedent protecting the right against wealth-based detention, the fundamental right to pretrial liberty requires a finding of necessity before the government may infringe on it. Although the Fifth Circuit did not address this fundamental right, due process requires such a substantive finding when the government infringes an arrestee's right to pretrial liberty. Dkt. 400 at 14–15; *cf., e.g.*, *ODonnell*, 251 F. Supp. 3d at 1145 (noting that "the federal case law defining due process for detention orders in general" requires the factfinder "to find that a secured financial condition is the only reasonable way to assure the arrestee's appearance at hearings and law-abiding behavior before trial."). And the Fifth Circuit left this holding undisturbed.[5] Indeed, *ODonnell* favorably cited *United States v.*

---

[5] The Fifth Circuit quoted this Court's conclusion regarding the procedural protections and substantive content of the on-the-record findings necessary to justify an order of pretrial detention, *ODonnell*, 2018 WL 2465481, at *7 (quoting *ODonnell*, 251 F. Supp. 3d at 1145), and then made just "two modifications" to the "procedural floor" (that an individualized hearing be held in 48 instead of 24 hours, and that the on-the-record findings need not be written), leaving undisturbed the rest of this Court's conclusions about what due process requires, including the substance of the findings required, *id.* at *8.

4

*McConnell*, 842 F.2d 105, 110 (5th Cir. 1988), for the proposition that on-the-record findings must include an explanation of the "reasons for concluding that the particular financial requirement is a *necessary* part of the conditions of release when setting a bond that a detainee cannot pay." *ODonnell*, 2018 WL 2465481, at *8 (emphasis added, quotations removed). Although its sample order is silent on the issue of substantive findings, this Court's prior undisturbed analysis makes clear that the government must make a finding that less-restrictive alternatives are not available and that detention is therefore, as the Fifth Circuit explained when citing prior precedent, "necessary" to meet a compelling interest, *id.* (quoting *McConnell*, 842 F.2d at 110), prior to issuing an order to pay an unattainable financial condition. In any event, the Supreme Court has held that due process protects a right to pretrial liberty that is "fundamental," *Salerno*, 481 U.S. at 750, and that, as a "general rule," cannot be infringed unless the government demonstrates that it is necessary to meet a compelling government interest. *See* Dkt. 400 at 14–15.

Defendants have nonetheless insisted that no substantive findings are required to justify a de facto order of pretrial detention. Dkt. 390 at 2. This assertion conflicts with this Court's undisturbed legal analysis and with *Salerno*, *Bearden, Frazier, Rainwater*, the Fifth Circuit's decision in *ODonnell*, and, as Plaintiffs have explained in depth, the holdings of every federal and state court to consider the question. Dkt. 400 at 14–17. All of these cases establish that wealth-based pretrial detention is invalid absent consideration of alternatives and a finding that detention is necessary because available alternatives do not adequately serve the government's interests.

Because the revised order is narrower than this Court's initial injunction and will no longer require the release of all indigent misdemeanor arrestees after 24 hours, it must identify the specific substantive finding necessary to justify an order of de facto or transparent pretrial detention at an individualized hearing.

## II. Defendants Have Not Justified Their Use of Automatic Wealth-Based Pretrial Detention Prior to an Individualized Hearing Under Either Strict or Intermediate Scrutiny

A revised injunction must also prohibit automatic secured financial conditions *prior* to an individualized hearing on the factual record in this case. As the Fifth Circuit affirmed, this Court's core factual finding at the evidentiary hearing was that "the County [] failed to establish any 'link between financial conditions of release and appearance at trial or law-abiding behavior.'" *ODonnell*, 2018 WL 2465481, at *10 (quoting *ODonnell*, 251 F. Supp. 3d at 1152). In fact, this Court found that automatically requiring secured money bail from all arrestees harms those interests. *ODonnell*, 251 F. Supp. 3d at 1121 (finding that pretrial detention for even short periods due to inability to pay "increases the likelihood that misdemeanor defendants will commit future crimes or fail to appear at future court hearings").

Applying those factual findings to the legal precedent requiring that Defendants' wealth-based detention policy satisfy heightened scrutiny, this Court held that Defendants failed to meet their burden to justify automatically requiring secured financial conditions of release from all arrestees. *Id.* at 1151–52 (holding that "[e]ven applying the less stringent standard of intermediate scrutiny" . . . Harris County failed to demonstrate that "requiring a secured money bail is at least more effective than less restrictive alternative at meeting the County's interests, even if it is not the least restrict means to do so"). Because Defendants have not demonstrated that secured financial conditions serve any compelling interest that is not equally served by less-restrictive alternatives, they cannot justify on this factual record the *automatic requirement* of secured money bail from every arrestee—a policy that necessarily causes the detention of tens of thousands of indigent arrestees—prior to an individualized hearing.[6]

---

[6] Defendants dispute this factual finding and intend to supplement the factual record at trial with new factual assertions from the past year purporting to show that secured financial conditions are the most effective way of promoting the

As Plaintiffs have explained when setting forth the issues remaining for trial, Dkt. 400 at 29–31, unless Defendants obtain benefits in appearance or public safety from those released pursuant to predetermined amounts of secured money bail, and unless those benefits are unavailable through alternatives, then infringing on the constitutional rights of the poor by automatically detaining them after arrest—which is the unavoidable cost of a policy of demanding predetermined monetary amounts from all arrestees—is not narrowly tailored to a compelling government interest. Thus, if secured money bail functions no more effectively as a condition of release than unsecured money bail or non-financial alternatives,[7] which is what the factual record demonstrates, *ODonnell*, 251 F. Supp. 3d at 1151–52, there can be no justification for automatically requiring secured money bail from every arrestee. Defendants must therefore employ other criteria that are objective and non-discriminatory to determine who is released and who is detained prior to an individualized hearing.

Defendants nonetheless appear to believe that their proposed order would allow them to return to automatically jailing all indigent arrestees for up to 48 hours solely because they cannot pay a predetermined amount of money, Dkt. 390 at 3–4, despite failing to demonstrate that secured financial conditions of release are more effective than less-restrictive alternatives. Defendants essentially argue for a 48-hour safe harbor, during which they would be free to infringe with impunity on indigent arrestees' substantive rights. But that scenario—a two-day safe harbor when equal protection and due process do not apply—defies the concept of heightened scrutiny, is

---

[7] government's interests in court appearance and community safety, and that releasing people on unsecured bond, as required by this Court's injunction, has caused a public safety "threat," Dkt. 390 at 6. Plaintiffs will explain why Defendants' data and analysis are again neither credible nor reliable. *See, e.g.*, Ex. 1 (Declaration of Stephen Demuth). For now, though, the relevant facts are those that this Court found at the preliminary injunction hearing.

[7] *ODonnell v. Harris County*, 251 F. Supp. 3d 1052, 1110 (S.D. Tex. 2017) ("Secured money bail ensures better results than unsecured appearance bonds only when the secured money bail operates as an order of detention because the defendant cannot pay. Those who are detained because they cannot pay secured money bail necessarily make their court appearances and do not re-offend. But that success is because of the detention, not because of the financial security. And it applies only to those who cannot pay the secured financial conditions of release.").

inconsistent with the panel's equal protection holding, *supra* Part I, and violates this Court's holding, which has never been challenged or disturbed, that "the 48-hour probable-cause-hearing standard . . . is not a 'safe harbor'" allowing Defendants to discriminate among different classes of arrestees. *ODonnell v. Harris County*, 227 F. Supp. 3d 706, 732 (S.D. Tex. 2016).

Forty-eight hours of wealth-based detention cannot be squared with this Court's equal-protection holdings, and is certainly not required by the panel's decision. Indeed, the panel's holding on the timing question was narrow: it was confined to *procedural due process*. The panel held that procedural due process "entitles detainees to a hearing within 48 hours." *ODonnell*, 2018 WL 2465481, at *8. Plaintiffs have never contended that procedural due process requires a bail hearing more quickly than that, only that if Defendants make *all* arrestees eligible for immediate release—which is the upshot of the County's secured bail schedule—they cannot deny release *only* to those who are too poor to afford the scheduled amounts of money. (Plaintiffs have not, for example, objected to the requirement in the Fields/Jordan/Plaintiffs proposal that authorizes up to 48 hours of detention for certain categories of arrestees.) Similarly, nothing in the panel's opinion or federal law would tolerate Defendants' promulgating a new Local Rule providing for immediate release of white, male, or Christian arrestees and up to 48 hours of detention for black, female, or Muslim arrestees. If Harris County sought to engage in that kind of discrimination, even for 48 hours, it would need to meet appropriate scrutiny to show that it was necessary. The general principle requiring prompt proceedings for those detained is not a free pass to discriminate within that period without demonstrating good reasons.

### III. The Fields/Jordan/Plaintiffs Order Implements the Fifth Circuit's Equal-Protection Holding, Protects Plaintiffs' Rights, and is Administrable

The Fields/Jordan/Plaintiffs proposal protects Plaintiffs' constitutional rights. The proposal contemplates that some arrestees may be detained after arrest based on narrow and

defensible policy determinations, rooted in Judge Fields' and Judge Jordan's judicial experience and in the experience of the District Attorney's Office, about which arrestees may pose particular risks that are best addressed by a judicial officer. In fact, the Fields/Jordan/Plaintiffs order authorizes detention for up to 48 hours—to allow time for arrestee to be presented to a judicial officer for appropriate conditions of release—for precisely the groups of people the Fourteen Judges purport to be most concerned about, including people who miss court dates in open cases;[8] people charged with family violence offenses;[9] and people who are arrested for new crimes while on pretrial release.[10] *See* Dkt. 401-1 (Fields/Jordan/Plaintiffs Order) Provisions 1(a)–(e). In contrast, the Fourteen Judges' preferred practice is to release people who can access money, regardless of the risk they pose, and even though there is no evidence that payment will mitigate any purported risk. Accordingly, the Fields/Jordan/Plaintiffs order better addresses the other Defendants' purported "public safety" concerns.

The parties involved in adversarial litigation every day in the Harris County courts, the District Attorney and Public Defender, both agree that the Fields/Jordan/Plaintiffs order promotes public safety better than a system that allows anyone with access to money to be released. And the proposed order complies with the Fifth Circuit's procedural holding that arrestees who are not promptly released after arrest receive an individualized hearing within 48 hours. The

---

[8] Defendants have expressed concerns about people who repeatedly miss court dates. *See, e.g.*, Dkt. 390 at 6 (the Fourteen Judges claiming that this Court's injunction is causing a "public safety threat" because people who miss court dates are rearrested are then released again before they appear before the Judges).

[9] Robert Arnold, *Legal battle continues over bail reform in Harris County* (Oct. 10, 2017), available at https://www.click2houston.com/news/investigates/legal-battle-continues-over-bail-reform-in-harris-county.

[10] Video of Harris County Commissioners Court Meeting, Aug. 1, 2017, available at http://www.harriscountytx.gov/CourtVideoArchive.aspx (Commissioner Cagle expressing concerns that a person arrested on June 14 was released pursuant to the injunction and rearrested for trespassing); Meagan Flynn, *For Decades, Harris County's Bail System Trapped the Poor. Is that Finally Changing?* (Jun. 27, 2017), available at http://www.houstonpress.com/news/harris-countys-bail-system-which-keeps-poor-locked-up-may-soon-change-9551646 (Defendant Judge Paula Goodhart expressing concern with "the revolving door of release").

Fields/Jordan/Plaintiffs order therefore implements the Fifth Circuit's equal protection holding and binding case law, protects Plaintiffs' constitutional rights, and is easily administrable, while addressing the government's concerns for court appearance and community safety. This section explains how the revised order would work in practice.

### A. The initial release-or-detention decision is made on the basis of objective criteria

The Fields/Jordan/Plaintiffs Order maintains Defendants' existing determination that nearly all misdemeanor arrestees are eligible for release as soon as practicable after arrest, with the exception of five categories of arrestees, who may be detained so that they can be presented to a judicial officer for an individualized determination of conditions of release.[11] *See* Provision 1(a)–(e). Those categories are: individuals who are (1) arrested for violating a protective order, (2) arrested and charged pursuant to §22.01 of the Texas Penal Code with assaulting a family member, (3) arrested and charged with any new offense while on pretrial release, (4) arrested for missing a court date while on pretrial release, and (5) to be evaluated for competency under procedures set forth in Article 16.22 of the Texas Code of Criminal Procedure. Provisions 1(a)–(e).[12]

Accordingly, under the Fields/Jordan/Plaintiffs order, the initial decision to release or detain a person is not based on whether the person can access a predetermined sum of money. Instead, it is based on law enforcement justifications and a determination that certain categories of arrestees may pose a sufficient risk of nonappearance or new criminal activity that a judicial officer should have an opportunity to make an individualized decision about conditions of release, including supervision.

---

[11] The Order authorizes appropriate officials to recommend an arrestee who falls within one of the five categories for release on unsecured bond prior to an individualized hearing (footnote 2), and further states that any judicial officer tasked with determining conditions of release must have complete discretion to release any arrestee prior to an individualized hearing (Provision 2).

[12] The term "release" in the order refers to release from custody in the misdemeanor case. Nothing in the order interferes with the ability to detain people for whom there are other lawful bases for detention, such as a pending hold.

### B.  Secured Money bail may not be required prior to an individualized hearing

The proposed order provides that secured financial conditions may not be required automatically as a condition of release prior to an individualized hearing.  If an arrestee does not fall within one of the categories set forth in Provision 1(a)–(e), she will be released on unsecured bond, with or without non-financial conditions, as soon as practicable after arrest, and informed of her court date.[13]  Although a judicial officer is free to require secured money bail as a condition of release at a later date—or even order the person detained pending trial—no monetary condition of release can be required *automatically* prior to an individualized hearing to determine ability to pay and whether detention is necessary.  The Fifth Circuit's holding that heightened scrutiny applies, combined with this Court's factual finding that there is no demonstrated "link" between money bail and court appearance or community safety, *ODonnell*, 2018 WL 2465481, at *10 (quoting *ODonnell*, 251 F. Supp. 3d at 1151), compels this provision, which eliminates automatic wealth-based detention prior to an individualized hearing.

### C.  If requiring secured money bail in any case, the government must provide the procedural protections and substantive findings necessary to protect Plaintiffs' substantive due process rights

The Fields/Jordan/Plaintiffs Order does not eliminate money bail. Nor does it eliminate pretrial detention.  Judicial officers may still require money bail as a condition of release, and they may even require an arrestee to pay an unattainable amount of money bail that results in detention.  However, money bail may be required as a condition of release only *after* the government has provided notice to the arrestee that financial information will be collected and of the nature and

---

[13] Although the Fields/Jordan/Plaintiffs Order does not contemplate it, Plaintiffs would not object to an injunction that requires Defendants to promulgate a schedule of standard reasonable non-financial conditions that are automatically required, that do not result in detention due to inability to pay, and that can be modified at the arrestee's request at a later hearing. Nor would Plaintiffs object to an injunction requiring Defendants to promulgate a schedule setting forth *both* secured money bail amounts *and* alternative non-financial conditions that would allow arrestees to choose between paying a secured financial condition *or* accepting non-financial conditions of release (so long as any conditions of release could subsequently be modified).

significance of the information (Provision 5(a)), and, as with the Fourteen Judges' proposal, after an inquiry into the amount of money the arrestee can afford to pay within 24 hours of arrest (Provision 5(b)). The purpose of these provisions is to eliminate the automatic wealth-based detention that this Court and the Fifth Circuit held Defendants did not justify under heightened scrutiny and to ensure that the judicial officer has all of the information necessary to determine whether an order to pay secured bail will result in detention.

If an order requiring money bail as a condition of release would operate as a detention order because the arrestee cannot access the money, the government must provide further safeguards and make substantive findings to protect against the erroneous deprivation of Plaintiffs' substantive rights to pretrial liberty and against wealth-based detention. *See* Provision 5(a)–(d). Procedural due process requires the arrestee to have an opportunity to be heard concerning her ability to pay and the adequacy of nonfinancial conditions. *See* Provision 5(c). She must also have an opportunity to present evidence and make legal arguments concerning these issues, and to contest any evidence presented or argument made by the government. *See* Provision 5(c).[14] To protect Plaintiffs' substantive constitutional rights, before Defendants may issue a de facto or transparent order of pretrial detention, they must consider less-restrictive alternatives to detention and make a substantive finding that no less-restrictive condition or combination of conditions could serve the government's compelling interests, and pretrial detention is therefore necessary to satisfy the government's interest in appearance or safety. *See* Provision 5(d). These findings and the reasons for them must be made on the record, Provision 5(d), and, as with the Fourteen Judges' proposal, be reviewable at an adversarial bail review hearing before a County Criminal Court at Law Judge

---

[14] As noted, Plaintiffs do not press at the preliminary injunction stage their argument that pretrial detention decisions must be based on "clear and convincing" evidence after a counseled hearing. Dkt. 400 at 5 n.2, 21–29.

within one business day, Provision 6. Although the proposed order, consistent with the Fifth Circuit's decision, does not require the findings to be written, practically speaking, the County will likely use an electronic entry system[15] that will be employed to make on-the-record findings and provide a statement of reasons. The form will be sufficiently simple to allow the Sheriff to readily determine whether the required findings and procedures were provided.[16]

### D. The Sheriff must not enforce unconstitutional orders

The Fields/Jordan/Plaintiffs order also provides that the Sheriff "must not enforce any order requiring secured money bail that is not accompanied by a record showing that the procedures and findings described in Section 5(a)–(d) were provided," *see* Provision 7, and that the County and the Sheriff "must not enforce any directive or requirement to pay money bail if issued prior to the individualized hearing," *see* Provision 8. These provisions are essential to protecting Plaintiffs' fundamental right to pretrial liberty and right against wealth-based detention. In contrast, the Fourteen Judges' proposal authorizes (but does not require) the Sheriff to decline to enforce orders that do not comply with constitutional requirement. That proposal would give the Sheriff discretion to permit or prohibit constitutional violations, thereby introducing uncertainty and the potential for the order to be applied inconsistently among arrestees.

### E. For arrestees who are not promptly released, Defendants must provide an individualized hearing within 48 hours of arrest

---

[15] The Fifth Circuit's statement about "written findings" was based on the erroneous belief that this Court had ordered all bail determinations to be in writing, thus creating a significant logistical burden to produce tens of thousands of written findings. *ODonnell*, 2018 WL 2465481, at *8 ("We decline to hold that the Constitution requires the County to produce 50,000 written opinions per year to satisfy due process"). In fact, however, this Court only ordered written findings *when a person was detained*, *see ODonnell*, 251 F. Supp. 3d at 1154, which would likely be very rare under the Fields/Jordan/Plaintiffs order, especially given that Texas law does not permit pretrial detention of misdemeanor arrestees except in a narrow category of cases.

[16] Instead of requiring money bail as a condition of release, a judicial officer may determine, following an individualized hearing, that non-financial conditions of release are adequate to meet the government's interests. If non-financial conditions are accompanied by a fee, the judicial officer must ensure that an arrestee's inability to pay the fee does not result in her detention. Provision 5(d) ("No arrestee may be kept in jail due to her inability to pay the cost of a non-financial condition of release. . . .").

The findings and procedures described in Provisions 5(a)–(d) must be provided within 48 hours of arrest for any person who is not promptly released on unsecured bail. If an arrestee is in the County's custody 48 hours after arrest and no conditions of release have yet been determined, the Sheriff must release the person on unsecured bail. Provision 9. The Order further requires the County to implement procedures to ensure release by the 48th hour.[17] *See* Provision 9.

## IV.     Defendants' Proposed Order Is Inadequate to Protect Plaintiffs' Rights

The other Defendants' proposed orders, in contrast to the Fields/Jordan/Plaintiffs order, could be interpreted to allow up to 48 hours of wealth-based detention and does not specify the content of the findings required to justify an order of pretrial detention. These two ambiguities, combined with Defendants' misunderstanding of the Fifth Circuit's decision, present an intolerable threat to Plaintiffs' constitutional rights.

Defendants' proposed order is ambiguous in at least two key respects. The first ambiguity is that it could, albeit need not, be read to authorize up to 48 hours of wealth-based detention. That would conflict with the panel's equal-protection holding and this Court's factual findings, which the Fifth Circuit upheld: that heightened scrutiny applies to wealth-based detention and that secured financial conditions do not advance either court appearance or safety. If there is no link between secured money bail and any government interest, there can be no justification for automatically requiring it as a condition of release knowing that it will mean 48 hours of detention for the poor. The revised injunction must clearly state that secured financial conditions may not be required automatically as a condition of release prior to an individualized hearing.

---

[17] The Sheriff's computer system is programmed to alert jail staff when an arrestee is in custody 18 hours after arrest to ensure that the jail begins processing the person for release to comply with the current injunction's 24-hour release requirement. A similar alert would be created to meet the 48-hour requirement.

The other key ambiguity is that Defendants' proposed order creates significant inconsistency and uncertainty by not identifying the content of the findings that substantive due process requires to justify an order of detention, even though the Fifth Circuit's decision clearly identified a substantive right and required heightened scrutiny of any government action infringing it. The Fourteen Judges' proposal requires a judicial officer to merely provide a "reasoned decision" for requiring a particular amount of money as a condition of release. Fourteen Judges' Reply in Support of Their Mot. for Stay of the Prelim. Inj. and Entry of a Modified Inj. Reflecting This Ct.'s Ruling at 4, *ODonnell*, 2018 WL 2465481 (2018), No. 17-20333. Thus, as written, *any* reason might suffice: a Hearing Officer could justify her decision—and potentially not violate the order—if she states on the record that the de facto detention order is imposed, for example, "because you are homeless." But heightened scrutiny requires consideration of less-restrictive alternative conditions and a finding that detention is *necessary* to meet a particular, identified interest because no other condition is adequate. The revised injunction must require this specific substantive finding whenever a transparent or de facto detention order is issued.

Defendants mistakenly believe that the Fifth Circuit required this Court to limit its revised preliminary injunction "to procedural requirements," Dkt. 390 at 2, and that this Court therefore should *not* specify the content of the substantive findings in its revised order. But the opposite is true: the Circuit recognized a substantive right. Plaintiffs agree that the Fifth Circuit held that the scope of this Court's initial relief was too broad (based on the panel's conception of what *state* law protects) because it required the release of *every* misdemeanor arrestee who could not afford a secured bail amount. This relief was broader than Plaintiffs' substantive theories under the federal Constitution, and also broader than required by this Court's holding that federal law permits

detention if specific substantive findings are made.[18]   A narrower injunction—such as the Fields/Jordan/Plaintiffs order—that is consistent with Plaintiffs' theories and this Court's undisturbed conclusions would allow pretrial detention, but only after a finding that detention is required because no other alternative exists to serve a compelling interest.  Defendants point to no portion of the Fifth Circuit opinion that rejects this Court's unassailable holding that an order of de facto pretrial detention based on an unattainable monetary amount must be justified by certain findings under federal law.  *ODonnell*, 251 F. Supp. 3d at 1145; *see also Reem v. Hennessy*, 2017 WL 6765247, at *1, 3 (N.D. Cal. Nov. 29, 2017); *In re Humphrey*, 19 Cal. App. 5th at 1028,1037; Dkt. 400 at 14–17.  The Fifth Circuit simply prohibited this Court from requiring the release of all arrestees within 24 hours *regardless of the findings made*.

Defendants are also wrong to interpret the Fifth Circuit's decision as having "squarely rejected Plaintiffs' central constitutional claim," Dkt. 390 at 1, given that the Fifth Circuit affirmed this Court's equal-protection holding without reservation and did not address at all, let alone reject, Plaintiffs' other constitutional theory: that the federal Constitution protects the fundamental due process right to pretrial liberty.[19]   The Fifth Circuit's decision to strike down Harris County's practices on a narrower procedural-due-process ground—that Harris County failed to provide the safeguards necessary to protect a state-created liberty interest—does nothing to call into question

---

[18] Plaintiffs explicitly did not make a claim in this lawsuit that certain offenses are categorically not serious enough to merit pretrial detention, although they have noted that *Salerno* upheld pretrial detention only in cases involving allegations of extremely serious felony offenses. *E.g.*, Dkt. 189 at 8; Dkt. 268 at 4 n.14.

[19] The Fourteen Judges claim the panel "expressly" rejected a "novel constitutional right to affordable bail." Dkt. 390 at 1-2.  But neither Plaintiffs nor this Court claimed such a right.  And at no point have Plaintiffs or this Court asserted a "fundamental substantive due process right to be free from any form of wealth-based detention." *Id.* at 1-2.  To the contrary, Plaintiffs acknowledge that the fundamental rights at stake are *not* absolute and, as this Court recognized, can be overcome if the government makes the substantive findings and provides the rigorous procedures that due process requires.  Brief for Appellees at 57, *ODonnell v. Harris County*, No. 17-20333 (5th Cir. Aug. 2, 2017).

Plaintiffs' claims.[20] A revised injunction must implement the Circuit's equal-protection holding and this Court's factual findings, including that there is no "link," *ODonnell*, 2018 WL 2465481, at *10 (quoting *ODonnell*, 251 F. Supp. 3d at 1151), between secured financial conditions and court appearance or public safety, and it should also protect the substantive right to pretrial liberty under federal law that the Fifth Circuit did not address. Thus, this case is not only about "procedures," and the revised injunction must identify the content of the substantive findings that must be made to justify an order of de facto or transparent pretrial detention.

Finally, Defendants admit that, if their proposal were entered, they would "return as quickly as possible" to the pre-injunction status quo, Dkt. 390 at 3 ("Harris County must return as quickly as possible to a world consistent with the Fifth Circuit's revised injunction."), in which "Hearing Officers and County Judges almost always set a bail amount that detains the indigent," *ODonnell*, 2018 WL 2465481, at *7. In light of Defendants' misunderstanding of the issues and their stated intention to "return" to the prior system, this Court must ensure that its revised order unambiguously protects Plaintiffs' rights. Defendants' proposed order does not do that.

## V.    This Court's Injunction Has Caused No Harm to Defendants

When Plaintiffs filed this lawsuit, Defendants were violating the constitutional rights of tens of thousands of people every year, detaining 40 percent of all misdemeanor arrestees throughout the duration of their cases, the vast majority because they could not pay predetermined amounts of money. *ODonnell*, 251 F. Supp. 3d at 1130–31. This Court found that, in 2015 and 2016, of people detained at disposition, 84 percent pled guilty in a median of 3.2 days, *id.* at 1105,

---

[20] The Fourteen Judges assert (without citation) that "Plaintiffs sought" an injunction that required release of any arrestee claiming indigence within 24 hours. Dkt. 390 at 1. Plaintiffs did not seek such an injunction. A revised injunction that prohibits automatic wealth-based detention and permits detention following rigorous procedures and findings—as does the Fields/Jordan/Plaintiffs order—is consistent with the Fifth Circuit's holding. Such an injunction need not require the release of any arrestee within 24 hours.

and guilty pleas were structured to ensure the swift release of detained defendants following conviction: 67 percent of people who pled guilty while detained were released within one day of conviction, and 83 percent were released within five days, *id.* at 1114. This "sentence first, conviction after" system "pressure[d] misdemeanor defendants to plead guilty at or near their first appearances because that [wa]s the only way to secure timely release from detention." *Id.* at 1105; *see also id.* at 1157–58; *id.*at 1107. Defendants' coercive practices made Harris County the national leader in total exonerations in 2015 and 2016, most of which resulted from "misdemeanor drug offenses that evidence samples conclusively prove the defendant did not commit." *Id.* at 1105. In addition to an increased likelihood of conviction, people detained due to inability to pay were more likely to be sentenced to jail and faced longer jail sentences. *Id.* at 1106. "Cumulative disadvantages mount for already impoverished misdemeanor defendants who cannot show up to work, maintain their housing arrangements, or help their families because they are detained." *Id.* at 1158; *id.* at 1122. These harms were experienced disproportionately by people of color. *Id.*

At the evidentiary hearing, Defendants failed to identify any benefits of their money-based practices, let alone benefits that could justify the harms. This Court reviewed evidence from jurisdictions around the country and found that pretrial detention due to inability to pay "increases the likelihood that misdemeanor defendants will commit future crimes or fail to appear at future court hearings." *Id.* a 1121; *id.* at 1120 ("[U]nsecured appearance bonds are equally effective as secured money bail, at both assuring appearance at trial as well as law-abiding behavior before trial"). Defendants were unable to produce any evidence from Harris County showing that the County was an exception to the empirical data from other jurisdictions. Indeed, Defendants had not bothered to collect or analyze the data necessary to determine whether their money-based practices were more effective than alternatives at reasonably assuring appearance and community

safety.[21]  *See id.* at 1119–20 ("Harris County has not compiled the data it has to compare failure-to-appear or new-criminal-activity rates by bond type.").  And, considering the experts' analysis of the data that *was* available, the Court concluded that "those released on personal bond have substantially similar—or even somewhat better—pretrial failure rates as those released on surety bonds."  *Id.*  In sum, this Court held that "[s]ecured money bail in Harris County does not meaningfully add to assuring misdemeanor defendants' appearance at hearings or absence of new criminal activity during pretrial release."  *Id.* at 1119–20.  The Fifth Circuit upheld these factual findings.  *ODonnell*, 2018 WL 2465481, at *13.

This Court's injunction largely cured the civil and human rights crisis occurring in the Harris County jail when Plaintiffs sued.  Preliminary data analysis and information provided by the Sheriff shows that, in the year since this Court's injunction went into effect, more than 11,000 people have been released from the Harris County jail who otherwise would have been detained due to their inability to pay secured money bail.  Expert Report of Dr. Stephen Demuth, Ex. 1 ¶ 1.[22]  Because the vast majority of misdemeanor arrestees are released within 24 after arrest, the misdemeanor legal system looks very different now:

|  | **Pre-injunction** (Jan. 1, 2015 – Jan. 31, 2017) | **Post-injunction** (June 7, 2017 – April 30, 2018) |
|---|---|---|
| **Cases released prior to disposition** (Ex. 1 ¶¶ 6–7) | 66% (sometimes days or weeks after arrest) | 92% (generally within 24 hours of arrest)[23] |
| **Cases ending in guilty pleas** (Ex. 1 ¶¶ 6–7) | 58% | 47% |
| **Cases ending in dismissal** (Ex. 1 ¶¶ 6–7) | 33% | 46% |

---

[21] Defendants have represented that they still have not reliably collected or analyzed this information.

[22] Dr. Demuth submitted expert analysis in the Fifth Circuit on May 23, 2018.  That report is Exhibit 4 to this Brief.

[23] Investigation will be necessary to determine why 8 percent of arrestees are detained. For example, some of these individuals may have refused to complete a financial affidavit or been subject to holds in other pending cases.

| | | |
|---|---|---|
| **Cases ending in deferred adjudication** (Ex. 1 ¶¶ 6–7) | 8% | 6% |
| **Cases avoiding conviction** (Ex. 1 ¶ 9) | 41% | 52% |

The system looks especially different for indigent arrestees. A comparison of case outcomes for those pre- and post-injunction groups shows that, since the injunction went into effect, poor people arrested in Harris County are much less likely to plead guilty and much more likely to have their cases dismissed, and their cases take much longer to resolve (likely because they are not coerced into pleading guilty to obtain quick release from jail):[24]

| | **Detained at disposition pre-injunction** (Jan. 1, 2015 – Jan. 31, 2017) | **Released on unsecured bond post-injunction** (June 7, 2017 – April 30, 2018) |
|---|---|---|
| **Cases ending in guilty pleas** (Ex. 1 ¶ 8) | 81% | 57% |
| **Cases ending in dismissal** (Ex. 1 ¶ 8) | 16% | 38% |
| **Cases ending in deferred adjudication** (Ex. 1 ¶ 8) | 2% | 5% |
| **Median time to disposition** (Ex. 1 ¶ 14) | 3.3 days | 73 days |

Moreover, and contrary to Defendants' rhetoric, people released on unsecured bond are not evading justice. Ex. 1 ¶¶ 16–22. In fact, a greater percentage of cases released on unsecured bonds since June 7, 2017, had been resolved as of April 30, 2018, than had cases released on any other type of bond. *Id.* ¶ 16. In the eleventh-month period post-injunction, the data show, *id.*:

| **Bond type** | **Among cases filed since June 7, 2018, the percentage resolved as of April 30, 2018** |
|---|---|
| Unsecured | 57% |

---

[24] "Although not perfectly comparable, it is not unreasonable to assume that most post-injunction unsecured bond cases would have remained detained until disposition during the pre-injunction period." Ex. 1 ¶¶ n.5.

| | |
|---|---|
| Personal-pretrial | 50% |
| Surety | 40% |
| Cash | 34% |
| Early presentment | 32% |

These percentages are lower because they include cases that were filed up through the end of April 2018 and which have not had enough time to be resolved (considering the 90-day median time to disposition for 92 percent of arrestees). *Id.* ¶ 17. It may therefore be more useful to consider cases filed in June 2017, *see id.* ¶ 18:

| Bond type | Among cases filed in June 2017, the percentage resolved as of April 30, 2018 |
|---|---|
| Unsecured | 79% |
| Personal-pretrial | 76% |
| Surety | 71% |
| Cash | 77% |

This data shows that misdemeanor arrestees are not evading justice, and, to the contrary, a greater proportion of people released on unsecured bond in June 2017 had resolved their cases as of April 30, 2018, as compared to people released on surety bonds that same month. These results are consistent with analysis of cases filed in other months. *Id.* ¶¶ 20–22.

Despite these important improvements, Defendants have claimed that the preliminary injunction is inflicting "grievous irreparable harm" on Harris County. Mot. of Fourteen Judges of Harris Cty. Crim. Cts. at Law for Stay of the Prelim. Inj. and Entry of a Modified Inj. Reflecting This Ct.'s Ruling at 2, *ODonnell*, 2018 WL 2465481 (2018), No. 17-20333. The Fourteen Judges have supported that charge with alarmist rhetoric and a single factual claim: that "about half[] of

unsecured bonds issued pursuant to the preliminary injunction have been forfeited because the arrestee has failed to appear." *Id.* at 11 (emphasis omitted); *accord id.* 14. But that statistic is both irrelevant and unreliable.[25]

First, the "bond forfeiture" rate is not the same as the "failure to appear" rate, which is the relevant statistic. *See ODonnell*, 251 F. Supp. 3d at 1117–19. Second, the bond-forfeiture rate can be easily manipulated because the Judges themselves control both the timing and frequency of court settings and whether and when a bond is forfeited.[26] Indeed, there are indications that the judges and other Harris County officials have used various policies and practices to deliberately increase the likelihood that an arrestee released on unsecured bond pursuant to the injunction will not appear. For example, because of policies proposed by the Fourteen Judges, people released pursuant to the injunction are much more likely to be scheduled to appear in court the next day after their bond is granted (often mere hours after being released from the jail in the middle of the night). Ex. 1 (Demuth Expert Report) ¶¶ 23–29; Ex. 2 (J. Jordan) ¶¶ 24–33; Ex. 3 (J. Fields). ¶¶ 20–26; Ex. 4 (Demuth Analysis, filed May 23, 2018 in the Fifth Circuit) ¶¶ 12–16; Flynn, *supra* n.10. Moreover, officials have deliberately funneled the arrestees who are most at risk of non-appearance as determined by the County's pretrial assessment tool into the group of arrestees released pursuant to the injunction, while releasing those who present a lower risk of non-appearance on other forms of bond. Ex. 2 ¶¶ 43–47; Ex. 3 ¶¶ 34–38; Ex. 4 ¶ 10; Flynn, *supra* n.10. Officials have then deliberately applied *different* policies to those arrestees released pursuant to

---

[25] This is not the first time in this litigation that Defendants have presented flawed statistics. Some repeatedly made factual representations that this Court deemed not credible. *See, e.g.*, *ODonnell*, 251 F. Supp. 3d at 1119-1120 & n.68.

[26] *See* Decl. of Darrell Jordan, County Criminal Court at Law Judge 16, ¶¶ 3–5, 23–66, attached as Ex. 2; Decl. of Michael Fields, County Criminal Court at Law Judge 14, ¶¶ 3–4, 20–49, attached as Ex. 3; Expert Analysis of Dr. Stephen Demuth ¶¶ 2, 16, 18, 23–24, attached as Ex. 4 ("Demuth Analysis"); Ed Wells Declaration, ¶ 4, attached as Ex. 5 (stating that a bond is forfeited when a person misses court only if "the judge does not find grounds to excuse the failure to appear"); Judge Natalie Fleming Declaration, ¶ 7, attached as Ex. 6 (stating that a bond is forfeited when a person misses court only if "the judge decides not to excuse the failure to appear").

*this Court's injunction*: they have refused to provide pretrial supervision services for, or impose other appropriate non-monetary conditions on, higher-risk arrestees released pursuant to the injunction—arrestees who are (by definition) the ones most in need of supervision or other conditions. Ex. 2 ¶¶ 48–49; Ex. 3 ¶¶ 39–41; Ex. 4 ¶ 11; Gabrielle Banks & Mihir Zaveri, *Dozens of jail inmates miss out on pretrial help as county struggles with bail order*, Houston Chronicle (July 12, 2017);[27] Flynn, *supra* n.10.[28] Such conduct—which the Harris County District Attorney has called an attempt to "deliberately undermine" the federal order and evidence of a "'[c]lear[] … hope … that the reformed bail process fails,'" Banks & Zaveri, *supra*; *see also* Flynn, *supra* n.10—undermines Defendants' attempts to claim that the injunction has caused a "crisis" in Harris County.

And these are only some of the factors that have inflated "bond-forfeiture" rates in Harris County since the injunction went into effect. Judge Fields, Judge Jordan, and Dr. Demuth more fully detailed the systemic problems post-injunction in filings submitted to the Fifth Circuit on May 21, 2018 and attached here as Exhibits 2, 3, and 4, including systemically misinforming people of their court dates and where to appear, refusing to accept a fully funded state-of-the-art two way text messaging reminder service, entering forfeitures for arrestees who did not appear only because they were in ICE custody, and general confusion after Hurricane Harvey. In sum,

---

[27] Available at https://www.chron.com/news/houston-texas/article/Dozens-of-jail-inmates-miss-out-on-pretrial-help-11281893.php

[28] *See also*, ABC13, *Harris County reforms bail bond system to be more fair to defendants who cannot afford bail* (Aug. 3, 2017) (people released pursuant to the injunction "are inherently higher-risk defendants" because people who are lower-risk are released on pretrial release bonds), available at http://abc13.com/society/harris-county-help-defendants-who-cannot-afford-bail/2271980/; Video of Harris County Commissioners Court Meeting, Aug. 1, 2017 at 26:47 (Chief Public Defender Alex Bunin stating, for people released by the Sheriff, "there's not necessarily a system . . . to make sure they get to court"), available at http://www.harriscountytx.gov/CourtVideoArchive.aspx; *id.* at 9:53 (Major Gregory Summerlin explaining that "[t]he higher risk folks who don't have any money, they're [released] under the injunction. They're high risk to begin with. If they were low-risk they would have gotten a pretrial release bond—the magistrate would have granted them a bond during the probable cause hearing.").

Defendants' own conduct has caused elevation in the "bond forfeiture rate," and the "bond forfeiture rate" is not a sound proxy for the rate of nonappearance, which is what matters.[29]

The revised injunction must protect the important improvements to Harris County's system that have occurred in the last year and should reflect lessons learned since the injunction went into effect. Dr. Demuth proposes several strategies for addressing non-appearance rates and notes the difficulty of comparing the efficacy of secured money bail to the efficacy of other alternatives in a system that still does not track court appearances. He proposes the following provisions to mitigate these issues.

1. The County should provide two-way text-messaging reminders to all people who are released after arrest.[30] Such reminders are a cost-efficient and highly effective strategy for mitigating the risk of nonappearance. Ex. 1 ¶ 51.

2. The Fourteen Judges now require those "booked" into the jail to appear for court the very next day after release (something that they do not require of arrestees who are able to pay for secured release prior to formal booking or of the lowest risk arrestees who are released on personal bonds during the early presentment process). The County should eliminate the next-day court setting for people who are released from jail, regardless of whether they are "booked." The data reflect the reality that it is extremely difficult for people to appear in court the day after they are released from the jail (which often comes late into the night). Ex. 1 ¶ 49; *see also id.* ¶¶ 23–29.

3. The County should reliably track court settings and whether a person appeared so that it can begin to accurately assess its system. Ex. 1 ¶ 53.

4. The Judges and Hearing Officers should be informed on a regular basis of how frequently they reject the assessment tool's recommendation of release on a personal bond, the percentage of cases receiving each of the different bond types, and the percentage of each bond type that are forfeited or revoked. Ex. 1 ¶ 54.

---

[29] The relevant question is nonappearance, but Defendants have informed Plaintiffs and the Fifth Circuit that, despite previously suggesting to this Court that they would begin to collect this data, they are not tracking that data. Although the County produced data in response to a discovery request by Plaintiffs for data showing court settings for each case and whether the arrestee appeared or did not appear, the County later informed Plaintiffs that "the best measure of FTA is bond forfeiture." Email from County attorney Phil Morgan to Elizabeth Rossi, attached as Ex. 7. Court Manager Ed Wells issued a sworn statement in the Fifth Circuit stating that "Harris County does not record a more reliable metric for 'failure to appear' [than bond forfeiture]." Ex. 5 ¶ 4.

[30] Ex. 9 (County Amended Response to Interrogatory No. 14) (stating that the County's text-message reminder service "has the capability to engage in two-way text messaging, but currently Harris County is not" making use of it).

5. The County and the Judges should work together with pretrial services staff to develop a set of policies that will maximize liberty and court appearance based on best practices in the pretrial services field. Ex. 1 ¶ 55.

## VI. Conclusion

The Fields/Jordan/Plaintiffs order should be entered because it fully comports with the Fifth Circuit's decision, protects Plaintiffs' constitutional rights, is clear and easily administrable, and has the support of key local stakeholders, including the County's top law enforcement official. The recommendations by Dr. Demuth reflect some of the lessons learned over the last year and, if implemented, would help the County create a system that provides support to the people who most need it while maximizing liberty, court appearance, and community safety.

Respectfully Submitted,

*/s/ Alec Karakatsanis*
*/s/ Elizabeth Rossi*
Alec George Karakatsanis
alec@civilrightscorps.org
Elizabeth Rossi[31]
elizabeth@civilrightscorps.org
Civil Rights Corps
910 17th Street NW, Suite 200
Washington, DC 20006
Telephone: (202) 681-2721

*/s/ Susanne Pringle*
Susanne Pringle
Texas Bar No. 24083686
springle@fairdefense.org
Texas Fair Defense Project
314 E. Highland Mall Blvd.
Suite 180
Austin, Texas 78752
Telephone: (512) 637-5220
Facsimile: (512) 637-5224

*Attorneys for Plaintiffs*

*/s/ Neal S. Manne*
Neal S. Manne
State Bar No. 12937980
nmanne@susmangodfrey.com
Lexie G. White
Texas Bar No. 24048876
lwhite@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

*/s/ Michael Gervais*
Michael Gervais
mgervais@susmangodfrey.com
SUSMAN GODFREY, LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 336-8330

---

[31] Admitted solely to practice law in Maryland; not admitted in the District of Columbia. Practice is limited pursuant to D.C. App. R. 49(c)(3).

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of June, 2018, I electronically filed the foregoing with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the Court.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*Elizabeth Rossi*
Elizabeth Rossi*

*Admitted solely to practice law in Maryland; not admitted in the District of Columbia. Practice is limited pursuant to D.C. App. R. 49(c)(3).