**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

_____

)
MARANDA LYNN ODONNELL, et al.,   )
 )
     Plaintiffs,           )
 )      No. 4:16-CV-01414
vs.                      )      (Consolidated Class Action)
 )      Honorable Lee H. Rosenthal
HARRIS COUNTY, TEXAS, et al.,    )      U.S. District Judge
 )
     Defendants.       )
_____ )

**FOURTEEN JUDGES' RESPONSE TO THE COURT'S PROPOSED
AMENDED PRELIMINARY INJUNCTION**

Defendants Judges of Harris County Criminal Courts at Law 1–13 and 15 ("Fourteen Judges") respectfully respond to certain aspects of this Court's proposed amended preliminary injunction. *See* Tentative Order of Preliminary Injunction (June 18, 2018), Doc. 414-1 ("Proposed Injunction"). The Fourteen Judges continue to believe that any significant deviation from the Fifth Circuit's model injunction is unwarranted and that the Court, accordingly, should enter the Fifth Circuit's model injunction as-is. That said, the Court has ordered that the parties' "comments are to be limited to substantive issues that are most significant." Memorandum and Opinion at 1 (June 18, 2018), Doc. 414. Consistent with this Court's instructions, the Fourteen Judges' identify below only the most significant provisions to which we object in the order in which they appear in the proposed injunction, and we elaborate upon these objections in the pages that follow:

1. **The duty to submit the required financial affidavit to the Sheriff.** Section 4 of the proposed injunction requires that "[t]he completed affidavit or declaration for each misdemeanor arrestee must be delivered to the Harris County Sheriff's Office before each affiant's or declarant's individualized hearing in accordance with Section (6)." Proposed Injunction at 3.

2.     **The apparent requirement that Harris County provide two individualized hearings within 48 hours of arrest.** The proposed injunction appears to require two hearings within 48 hours. Section 6 provides that arrestees "who have been deemed eligible for release at a live (including videolink) probable cause and bail-setting hearing … are entitled to a hearing within 48 hours of arrest." Proposed Injunction at 3. Section 7 similarly requires that arrestees "who have been deemed eligible for release at a live (including videolink) probable cause and bail-setting hearing" and "who are entitled to a presumption of a personal bond under the initial bail schedule," must be released "until their hearing under Section (6)." Proposed Injunction at 5.

3.     **The requirement that Harris County provide counsel at the arrestee's individualized hearing.** Section 6 of the proposed injunction requires that, at the individualized hearing, "[t]he County must continue providing public defenders to represent misdemeanor defendants who have not knowingly, intelligently, and voluntarily waived their right to representation for the hearing." Proposed Injunction at 4.

4.     **The duty to provide arrestees a "timely" hearing before a County Judge.** Section 6 of the proposed injunction states that, for those arrestees who the decisionmaker declines to release on personal bond or affordable bail, "the County must timely provide that arrestee with a formal adversarial bail review hearing before a County Judge." Proposed Injunction at 4. While it is unclear what "timely" means, the Fourteen Judges object to this requirement to the extent it requires the County Judge hearing within less than two business days after the individualized Hearing Officer hearing.

5.     **The duty to apply strict scrutiny at bail hearings.** Section 6 of the proposed injunction requires that the factual findings at an individualized hearing must expressly reflect application of a strict scrutiny standard to decide whether to require secured money bail, i.e., the magistrate must find "that alternative conditions of release were considered, that no less-restrictive condition or combination of conditions could reasonably assure appearance and public safety, and that imposing the prescheduled or other secured financial condition of release is necessary to satisfy the government's interests." Proposed Injunction at 4.

6.     **The Sheriff's duty not to enforce orders requiring secured money bail.** Section 6 of the proposed injunction provides that the Sheriff "is enjoined" from enforcing a secured bail order if the order is not accompanied by a record showing "that the Hearing Officer provided the required individual assessment and that there was an opportunity for formal review." Proposed Injunction at 4.

7.     **The mandatory release on a personal bond of arrestees who cannot afford secured money bail.** Section 7 of the proposed injunction requires Harris County to release arrestees "who are entitled to a presumption of a personal bond under the initial bail schedule" but who have not been released, after a live probable cause hearing, on unsecured personal bond or bail they can afford. Proposed Injunction at 5.

8.      **The mandatory release of arrestees who are detained more than 48 hours without an individualized hearing.** Section 8 of the proposed injunction provides that arrestees who are detained for more than 48 hours before an individualized hearing "must promptly be released by the Harris County Sheriff on an unsecured personal bond," no matter why the person was not given an individualized hearing within 48 hours. Proposed Injunction at 6.

9.      **The requirement that the provisions of the proposed injunction apply equally to arrestees who are re-arrested after failing to appear.** Section 15 of the proposed injunction provides that it "applies to misdemeanor arrestees who are rearrested on misdemeanor charges only or on warrants for failing to appear while released before trial on bond (either secured or unsecured)." Proposed Injunction at 7.

10.     **The prohibition against amending the Local Rules.** Section 16 of the proposed injunction provides that "[t]he County Judges must not promulgate or implement any policy, written or unwritten, that permits the setting of secured financial conditions that operate to detain, rather than release, indigent misdemeanor arrestees before trial, or that otherwise conflict with this Order." Proposed Injunction at 7–8.

11.     **The Court's revision of language in the Fifth Circuit's proposed injunction.** In several respects identified below, the proposed injunction revises language used in the Fifth Circuit's model injunction. The Fourteen Judges object to the extent this Court's revisions are meant to alter the meaning of the Fifth Circuit's model order.

## ANALYSIS

## I.      The Fourteen Judges' General Objections to the Court's Proposed Injunction.

At this preliminary injunction stage, the Fifth Circuit held that Plaintiffs had only raised claims seeking, and this Court may only order, "nondiscretionary *procedural* safeguard[s]," *ODonnell v. Harris County*, 2018 WL 2465481, at *5 (5th Cir. June 1, 2018) (emphasis added), designed to ensure individualized consideration of whether a particular bail setting provides sufficient sureties that an arrestee will appear at trial and will not pose a threat to public safety while at large. This Court's proposed injunction, however, is inconsistent with the Fifth Circuit's mandate, and contradicts both the Fifth Circuit's opinion and the controlling caselaw, because it provides *substantive* rather than *procedural* relief, and because it requires the *release* of arrestees who cannot afford money bail. The Court of Appeals unambiguously held that substantive relief— and in particular, any order requiring release of an arrestee—was not narrowly tailored to remedy

the constitutional violations this Court had found. And it carefully, and conspicuously, framed its model injunction to avoid conflict with the limitations on federal judicial authority established in *O'Shea v. Littleton*, 414 U.S. 488 (1974); *Tarter v. Hury*, 646 F.2d 1010 (5th Cir. 1981); and *Preiser v. Rodriguez*, 411 U.S. 475 (1973). Accordingly, the Fourteen Judges object to each of the eleven provisions identified above on all of the following grounds.

*First*, the Court's provision of *substantive* rather than *procedural* relief, including the Court's requirement of strict scrutiny at bail determinations, violates *Younger v. Harris*, 401 U.S. 37 (1971), by impermissibly intruding in state criminal proceedings. The Fifth Circuit held that the model preliminary injunction it carefully framed would not violate *Younger* because Plaintiffs sought only "improvement of pretrial procedures and practice" and the imposition of "nondiscretionary procedural safeguards." *ODonnell*, 2018 WL 2465481, at *5 (brackets omitted). The proposed injunction, however, seeks to impose not only procedural safeguards but also substantive relief against the perceived imposition of bail in excess of what arrestees can afford. The Supreme Court and the Fifth Circuit have squarely held that *Younger* bars systemic constitutional challenges under the Fourteenth Amendment to the imposition of excessive bail. *O'Shea*, 414 U.S. at 491–92; *Tarter*, 646 F.2d at 1013. *Tarter* specifically emphasized that *Younger* abstention applies to such claims because "the amount of bail prescribed for each criminal defendant depends on the peculiar facts and circumstances of his case," and "the setting of bail requires *ad hoc decisions committed to the discretion of judges*." *Tarter*, 646 F.2d at 1013 (emphasis added). This Court's proposed injunction supplants that discretion by imposing a strict-scrutiny standard of review and a release order that abrogates judges' discretion in setting bail.

*Second*, the Court's proposed injunction violates *Preiser* because it requires the County to release at least two categories of arrestees: (1) arrestees who are entitled to a presumption of release

4

on personal bond but whom a magistrate has determined the only "sufficient surety" is a secured bail amount the arrestee is unable or unwilling to pay, and (2) arrestees detained for more than 48 hours before they receive an individualized hearing. *Preiser* held that a prisoner seeking release from confinement may obtain such relief only through a petition for habeas corpus; such claims are not cognizable under 42 U.S.C. § 1983. Specifically, *Preiser* held that "the writ of habeas corpus evolved as a remedy available to effect discharge from any confinement contrary to the Constitution or fundamental law," whether "imposed pursuant to conviction" or "prior to trial." 411 U.S. at 485–86. Because habeas has "been accepted as the specific instrument to obtain release from [unlawful] confinement," it displaces the general cause of action granted by Section 1983 for constitutional torts. *Id.* at 486. *See also Heck v. Humphrey*, 512 U.S. 477, 481 (1994). By requiring Harris County to release arrestees in this Section 1983 action, the Court's proposed injunction plainly exceeds the limitations on federal court power set forth in *Preiser*.

*Third*, the Court's proposed provisions calling for substantive relief against the imposition of bail set in excess of what arrestees can afford—including the Court's proposed imposition of strict scrutiny and release of certain arrestees who cannot afford secured money bail—is available only under the Eighth Amendment, but Plaintiffs have not brought an Eighth Amendment claim. The Fifth Circuit held that Plaintiffs' claims relevant to the preliminary injunction did not have to be brought under the Eighth Amendment because *Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978) (en banc), held that the Fourteenth Amendment prohibits the incarceration of those who cannot afford money bail "without meaningful consideration of other possible alternatives"—i.e., without sufficient *procedural* protections. *See ODonnell*, 2018 WL 2465481, at *5. The substantive relief provided by this Court's proposed injunction limits the County's ability to impose bail in excess of what arrestees can afford. As Plaintiffs have conceded, their claims for

such substantive relief are "materially identical" to an Excessive Bail claim under the Eighth Amendment. Brief for Appellees at 30. When a plaintiff's claim falls within a specific "source[ ] of constitutional protection against … governmental conduct," the "claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized … standard" fashioned from the Fourteenth Amendment. *Graham v. Connor*, 490 U.S. 386, 394 (1989). Accordingly, the Fourteenth Amendment may not be invoked to grant relief that is available only, if at all, under the Eighth Amendment.

*Fourth*, Plaintiffs have waived and forfeited at this preliminary injunction stage any claim based on *substantive* due process rather than *procedural* due process, and the mandate rule additionally bars the Court from basing preliminary relief on substantive due process. When this Court entered the preliminary injunction, it squarely held that "plaintiffs' claims and the court's conclusions do not rely on substantive due process." Memorandum and Opinion Setting Out Findings of Fact and Conclusions of Law at 157 (Apr. 28, 2017), Doc. 302 ("PI Mem."). The Fifth Circuit likewise read this Court's decision and Plaintiffs' claims to sound only in "procedural due process and equal protection," *not* substantive due process. *ODonnell*, 2018 WL 2465481, at *1; *see also, e.g.*, *id.* at *3. Indeed, the Fifth Circuit necessarily *rejected* the substantive due process argument that Plaintiffs made the centerpiece of their appellate briefing, for the Fifth Circuit went out of its way to observe that this Court's preliminary injunction requiring the release of arrestees "makes some sense if one assumes a fundamental substantive due process right to be free from any form of wealth-based detention," but that "[t]he sweeping injunction is overbroad" because "no such [substantive due process] right is in view." *Id.* at *11. Recognizing a substantive due process right at this stage would also violate the mandate rule, which bars litigation of issues "foregone on appeal or otherwise waived, for example because they were not raised in the district

court." *United States v. Lee*, 358 F.3d 315, 321 (5th Cir. 2004). In short, Plaintiffs have waived or forfeited any substantive due process claim at the preliminary-injunction stage a substantive due process claim, and it is too late for them to raise such a claim at this stage of the proceeding.

*Fifth*, because the proposed injunction provides greater substantive and procedural rights than what the Fifth Circuit held was necessary to cure the constitutional violations, the proposed injunction transgresses both the Constitution's limitations on a federal court's power to enter equitable relief against a State and the Fifth Circuit's mandate enforcing those limitations. Injunctions against state or local governments "must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Lewis v. Casey*, 518 U.S. 343, 357 (1996). *See also Horne v. Flores*, 557 U.S. 433, 448 (2009). The Fifth Circuit held that the "equitable remedy necessary to cure the constitutional infirmities arising under both [the Due Process and Equal Protection] clauses" consists of "notice, an opportunity to be heard and submit evidence within 48 hours of arrest, and a reasoned decision by an impartial decisionmaker." *ODonnell*, 2018 WL 2465481, at *10. The proposed injunction, however, goes far beyond that procedural relief in numerous respects, including in the eleven respects identified above and discussed below. If this Court were to provide preliminary relief beyond that which the Fifth Circuit has ruled is necessary to cure the constitutional violations, this Court would "abuse[ ] its discretion" by "issu[ing] an injunction that 'is not narrowly tailored to remedy the specific action which gives rise to the order as determined by the substantive law at issue.' " *ODonnell*, 2018 WL 2465481, at *3 (quoting *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016)).

## II.    The Fourteen Judges' Specific Objections to the Court's Proposed Injunction.

In addition to the objections set forth above, the Fourteen Judges further explain as follows their objections to certain provisions of this Court's proposed injunction:

1.       **The Duty To Submit the Required Financial Affidavit to the Sheriff.**

The proposed injunction states that "[t]he completed [financial] affidavit or declaration for each misdemeanor arrestee must be delivered to the Harris County Sheriff's Office before each affiant's or declarant's individualized hearing in accordance with Section (6)." Proposed Injunction at 3. The Fifth Circuit's injunction, however, does not require that the arrestee's financial affidavit be delivered to the Sheriff before the arrestee's hearing. Moreover, the Fourteen Judges are unable to identify any constitutional right of the Plaintiffs that this requirement vindicates.

2.       **The Apparent Requirement that Harris County Provide Arrestees With Two Individualized Hearings Within 48 Hours of Arrest.**

This Court's proposed injunction appears to require Harris County to provide not one but two separate hearings to arrestees within 48 hours of arrest. Section 6 of the proposed injunction states that arrestees "who have been deemed eligible for release at a live (including videolink) probable cause and bail-setting hearing" are then "entitled to a hearing within 48 hours of arrest," and that this second hearing must comply with the procedural requirements set forth in Section 6. Proposed Injunction at 3. Section 6 thus appears to distinguish between (1) an initial "probable cause and bail-setting hearing," and (2) a later "hearing within 48 hours of arrest," which must be provided only if the arrestee is "deemed eligible for release" at the initial hearing. Section 7 similarly contemplates that arrestees "who have been deemed eligible for release at a live (including videolink) probable cause and bail-setting hearing" and "who are entitled to a presumption of a personal bond," "must be released … until their hearing under Section 6." Proposed Injunction at 5. Thus Section 7, like Section 6, appears to contemplate two separate hearings within 48 hours of arrest.

Neither the Fifth Circuit's opinion nor the Constitution requires two separate hearings within 48 hours of arrest. The Fifth Circuit held that "the equitable remedy necessary to cure the constitutional infirmities arising under both clauses" includes "*an* opportunity to be heard and submit evidence within 48 hours of arrest." *ODonnell*, 2018 WL 2465481, at *10 (emphasis added). Consistent with this holding, the Fifth Circuit's model injunction requires only a single "hearing within 48 hours of arrest in which an impartial decision-maker conducts an individual assessment of whether another amount of bail or other condition provides sufficient sureties." *Id.* at *12. *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), likewise only requires a single hearing, for it held that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with" the Constitution. *Id.* at 56. One hearing within 48 hours of arrest is sufficient to provide the individualized consideration that the Fifth Circuit required, and a second hearing would go well beyond that which is necessary to cure the constitutional violations.

Moreover, by mandating *two* hearings within 48 hours, the Court would presumably mandate that one of those hearings occur *in less than 48 hours*, and perhaps even within 24 hours. But the Fifth Circuit, consistent with *County of Riverside*, squarely held that the Constitution does not require an individualized hearing sooner than 48 hours after arrest, and there is no basis for this Court to require a hearing on a shorter timeframe.

### 3.    The Requirement that Harris County Provide Counsel at the Arrestee's Individualized Hearing.

This Court's proposed injunction states that "[t]he County must continue providing public defenders to represent misdemeanor defendants who have not knowingly, intelligently, and voluntarily waived their right to representation for the hearing" described under Section 6. Proposed Injunction at 4. The right to counsel was not at issue during the preliminary injunction

hearing: Plaintiffs did not seek a right to counsel, and this Court did not address the right to counsel. On appeal, not only did Plaintiffs not raise the right to counsel, but they expressly conceded that the question whether the County must provide counsel was "not before th[e] [appellate] court." Brief for Appellees at 42 n.6. The Fifth Circuit's model preliminary injunction does not require representation of counsel at the individualized hearing that due process and equal protection require. To be sure, the County has chosen as a matter of policy to provide counsel in these proceedings. But there is no legal or factual basis for this Court to mandate counsel at this preliminary stage of the case and thus foreclose the County's prerogative to change its policy if experience suggests that a change is warranted. Indeed, not even Plaintiffs' own pending motion for summary judgment seeks a right to counsel; instead, Plaintiffs admit they will press this claim only "[f]ollowing additional discovery and development of the factual record …." Plaintiffs' Motion and Memorandum in Support of Motion for Partial Summary Judgment at 29 (June 8, 2018), Doc. 400 ("Plaintiffs' Partial MSJ").

### 4.   The Duty To Provide Arrestees a "Timely" Hearing Before a County Judge.

The proposed injunction provides that if a magistrate declines to grant an arrestee either a personal bond or a secured money bond set in an amount the arrestee claims he can afford, "the County must timely provide that arrestee with a formal adversarial bail review hearing before a County Judge." Proposed Injunction at 4. The Fifth Circuit's opinion and proposed injunction does not include a time limit on when the County must "provide the arrestee with a formal adversarial bail review hearing before a County Judge." *ODonnell*, 2018 WL 2465481, at *12. It is unclear what "timely" means in this Court's proposed order; the Fourteen Judges request that the Court specify an injunctive deadline of no less than two business days after the initial hearing officer, though consistent with their local rules, the Fourteen Judges will continue to strive to provide an

initial appearance before a County Judge for arrestees who are not released on pretrial bond by the next business day.

### 5.    The Duty To Apply Strict Scrutiny at Bail Hearings.

The Court's proposed injunction states that, at the individualized hearing to be held within 48 hours of arrest, magistrates may not impose secured money bail in excess of what an arrestee can afford unless the magistrate finds "that alternative conditions of release were considered, that no less-restrictive condition or combination of conditions could reasonably assure appearance and public safety, and that imposing the prescheduled or other secured financial condition of release is necessary to satisfy the government's interests." Proposed Injunction at 4.[1]

Requiring strict scrutiny—or any substantive standard of review for that matter—for bail determinations violates the Fifth Circuit's decision, violates *Younger*, violates *Preiser*, and is barred by the Eighth Amendment. Plaintiffs' initial preliminary injunction request was based only on a claim of *procedural*, not substantive, due process. This Court recognized that Plaintiffs have not brought a substantive due process claim at this stage, the Fifth Circuit held that no such right is in view, and the Fifth Circuit's mandate prohibits imposition of preliminary relief based on any such substantive right. Moreover, the Fifth Circuit held that Plaintiffs' equal protection claim was fully vindicated by purely procedural remedies—notice, an opportunity to be heard, and an individualized assessment by a neutral decisionmaker. *ODonnell*, 2018 WL 2465481, at *10.

---

[1] This Court's memorandum opinion states that "the parties appeared to agree" at the hearing that "[t]he term 'sufficient sureties' means both protecting the misdemeanor arrestee's constitutionally protected rights and reasonably assuring appearance at hearings and trial and public safety." Memorandum and Opinion at 2. The Fourteen Judges agreed that the Fifth Circuit said as much, *ODonnell*, 2018 WL 2465481, at *6, but the Fourteen Judges have never agreed that this holding somehow, implicitly and *sub silentio*, speaks to the entirely unrelated issue of whether strict scrutiny is required for bail determinations. As discussed in the text, the Fifth Circuit's opinion affirmatively prohibits strict scrutiny.

Accordingly, this Court cannot grant substantive relief in the form of a strict scrutiny standard of review at bail hearings.

The Fifth Circuit did not require that imposition of secured money bail satisfy strict scrutiny at individualized bail determinations; to the contrary, it held that the "equitable remedy necessary to cure the constitutional infirmities arising under [the Due Process and Equal Protection] clauses" requires only "a reasoned decision by an impartial decisionmaker" as to "whether another amount of bail [other than the prescheduled amount] or other condition provides sufficient sureties." *ODonnell*, 2018 WL 2465481, at *10, *12. The Fifth Circuit stressed that magistrates retain their judicial discretion under Texas law to set bail, and it required only that the bail determinations "tak[e] into account the various factors required by Texas state law (only one of which is ability to pay)." *Id.* at *10. Consistent with this ruling, the Fifth Circuit's model injunction—a model injunction that, it must be stressed, fully remedies the constitutional infirmities at issue—requires only that "an impartial decision-maker conducts an individual assessment of whether another amount of bail or other condition provides sufficient sureties." *Id.* at *12. Awarding further relief would violate the Constitution's limitations on federal judicial power to enjoin state and local government actors. Indeed, imposing strict scrutiny at the individualized bail hearing has no relationship with the purpose of that hearing, which is simply "ensuring that there is individualized consideration" of the proper bail amount, again, "taking into account the various factors required by Texas state law (only one of which is ability to pay)." *Id.* at *10, 12; *see also* Proposed Injunction at 4 (defining the purpose of the individualized hearing as simply requiring "individualized consideration").

In their pending motion for summary judgment, Plaintiffs have rested their claim for strict scrutiny on supposed substantive due process rights to pretrial freedom and against wealth-based

detention. *See* Plaintiffs' Partial MSJ at 10. But as previously discussed, to this point, "plaintiffs' claims and the court's conclusions do not rely on substantive due process," PI Mem. at 157, and the Fifth Circuit expressly refused to recognize a substantive due process right, so Plaintiffs cannot raise substantive due process at this time. In any event, this claim fails under settled precedent. *Pugh v. Rainwater*, 572 F.2d 1053, 1056 (5th Cir. 1978) (en banc), squarely rejected the argument that "in the case of indigents," the Constitution "require[s] a presumption against money bail and favoring [nonfinancial] forms of release." Because *Rainwater* rejected a presumption against secured money bail, it necessarily rejected Plaintiffs' claim to heightened scrutiny and a least-restrictive-means analysis. After all, "[s]trict and intermediate scrutiny … in effect set up a presumption of invalidity that the defendant must rebut," *Hassan v. City of New York*, 804 F.3d 277, 299 (3d Cir. 2015), and shift to "the State … the burden of justifying its" actions, *Board of Trs. of SUNY v. Fox*, 492 U.S. 469, 480 (1989).

Plaintiffs have made no showing that the substantive due process right they assert—a right, more carefully described, *see Reno v. Flores*, 507 U.S. 292, 302 (1993), as an unconditional right to pretrial liberty—is "deeply rooted in this Nation's history and tradition." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997). Plaintiffs have not identified a single decision from the Fifth Circuit or the Supreme Court recognizing a right to strict scrutiny at bail determinations.[2] To the contrary, the Fifth Circuit in *Rainwater* stated unequivocally that "[t]he right to release before trial is *conditioned upon* the accused's giving adequate assurance that he will stand trial and submit

---

[2] Strict scrutiny cannot be justified under procedural due process either, for that guarantees only *procedures*, not a substantive standard of review. Nor can it be required by the Equal Protection Clause. The only equal protection violation the Fifth Circuit found was the County's "lack of individualized assessment and mechanical application of the secured bail schedule." *ODonnell*, 2018 WL 2465481, at *10. Remedying that problem, as the Fifth Circuit held, requires only individualized hearings, not strict scrutiny at bail determinations. *Id.* at *10–11. Nor can the Equal Protection Clause otherwise require a heightened substantive standard at bail hearings.

to sentence if found guilty." 572 F.2d at 1057 (emphasis added) (quoting *Stack v. Boyle*, 342 U.S. 1, 4 (1951)). And in *United States v. Salerno*, 481 U.S. 739 (1987), the Supreme Court made clear that "pretrial detention" does *not* "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* at 751 (quotation marks omitted).

Indeed, if Plaintiffs are correct that any order that operates as a *de jure* or *de facto* detention order requires, as a matter of substantive due process, a least restrictive alternative analysis and finding, current federal sentencing practices are unconstitutional. Federal sentencing law requires that sentences must be "sufficient, but not greater than necessary" to achieve the statutorily prescribed objectives of federal criminal law (i.e., retribution, deterrence, incapacitation, and rehabilitation). 18 U.S.C. § 3553(a). Under Plaintiffs' theory of substantive due process, federal judges would be constitutionally obligated to make an explicit "not greater than necessary" finding for each sentence. But the Supreme Court has held that the judge need only make findings sufficient to show "that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). In *Rita*, the Court upheld a sentence based on the judge's finding that it was "appropriate" because the record showed that he had given individual consideration to the matter. *Id*. at 358. Bail decisions, like sentencing decisions, are committed to the sound discretion of the court, and least restrictive alternative findings are not required for either.

6. **The Sheriff's Duty Not To Enforce Orders Requiring Secured Money Bail.**

The Court's proposed injunction states that the Sheriff "is enjoined" from enforcing a secured bail order if the order is not accompanied by a record adequate to show that the Hearing Officer provided the required individual assessment and that there was an opportunity for formal

review. Proposed Injunction at 4. This requirement departs from the Fifth Circuit's opinion and analysis in two key respects.

First, the Fifth Circuit's injunction states only that the Sheriff is "authorized"—not enjoined or required—"to decline to enforce orders requiring payment of prescheduled bail amounts as a condition of release" where the record does not indicate the arrestee received the requisite individualized hearing. *ODonnell*, 2018 WL 2465481, at *12. The Fifth Circuit thus ensured that the Sheriff has the discretion not to immediately release every single arrestee detained beyond 48 hours without an individualized hearing. There may be compelling reasons not to immediately release the arrestee because an individualized hearing could not be had in light of exigent circumstances. For example, some arrestees who are under the influence of drugs or are disruptive cannot be brought into court to have a meaningful hearing within 48 hours of arrest, which is likely partly why the Fifth Circuit did not require absolute release within 48 hours of arrest. The proposed injunction is inconsistent with the Fifth Circuit's order by requiring automatic release. Indeed, the proposed injunction would even provide arrestees with an *incentive* to be disruptive, such that they cannot be given a hearing within 48 hours and thus may be entitled to release pursuant to the Court's proposed injunction.

Second, the proposed order appears to contemplate release of arrestees pending the formal review by the County Judge even in cases where the Hearing Officer has conducted the required individualized assessment and has concluded, in the exercise of his or her judicial discretion, that secured money bail is necessary to provide sufficient surety. To the extent the proposed order enjoins the Sheriff from enforcing secured money bail orders during the period after the 48-hour hearing but before there is "an opportunity for formal review," Proposed Injunction at 4, generally

on the next business day, the Fourteen Judges respectfully submit that the requirement is unwarranted.

7.    **The Mandatory Release On a Personal Bond of Arrestees Who Cannot Afford Secured Money Bail.**

The proposed injunction requires Harris County to release certain arrestees who claim they cannot afford money bail. Section 7 of the proposed injunction states that arrestees "who have been deemed eligible for release at a live (including videolink) probable cause and bail-setting hearing," and "who are entitled to a presumption of a personal bond under the initial bail schedule," "must be released" on either personal bond or a secured money bond they can afford. Proposed Injunction at 5.[3]

Assuming that Section 7 does require the release of certain arrestees, this renewed release order is inconsistent with the Fifth Circuit's mandate. The Fifth Circuit held that the "sweeping [prior] injunction is overbroad" *precisely because* "it amounts to the outright elimination of secured bail for indigent misdemeanor arrestees." *ODonnell*, 2018 WL 2465481, at *11. The new release order does precisely that, except that it applies to a subset—seven specified categories— of arrestees. For the same reason that the Fifth Circuit vacated this Court's earlier release order, this new release order is likewise barred. The outright elimination of secured money bail for arrestees "who are entitled to a presumption of a personal bond," Proposed Injunction at 5, "makes some sense if one assumes a fundamental substantive due process right to be free from any form

---

[3] The Fourteen Judges note that the number of arrestees covered by Section 7 will be a null set if the Court is not requiring two hearings within 48 hours. Section 7 requires the release of certain arrestees "until their hearing under Section (6)." *Id.* But the release requirement of Section 7 is triggered only once an arrestee has received a "live (including videolink) probable cause and bail-setting hearing." *Id.* Assuming the "live (including videolink) probable cause and bail-setting hearing" is the same as the "hearing under Section (6)," then there will be no individuals who simultaneously *have already had* and *are awaiting* their individualized hearing.

of wealth-based detention," but "no such right is in view," *ODonnell*, 2018 WL 2465481, at *11. The Fifth Circuit's model injunction, therefore, does not require arrestees to be released; it requires only that they receive an individualized hearing.

The proposed injunction states that the purpose of the release order "is to address and prevent the problem of misdemeanor arrestees who will presumptively be released on a secured bond from being detained longer than those able to pay secured money bail while awaiting their constitutionally protected hearing under Section (6)." Proposed Injunction at 5. But this release order cannot be justified under the equal protection violation that the Fifth Circuit found. Rather, the equal protection that the Fifth Circuit found was the County's alleged "custom and practice" of a "lack of individualized assessment and mechanical application of the secured bail schedule." *ODonnell*, 2018 WL 2465481, at *10. The new problem that this Court wishes to address is one that has never previously been presented in this case—not at the preliminary injunction hearing, not on appeal, not even in the parties' subsequent filings in this Court—until Plaintiffs' counsel introduced this issue for the very first time from the podium at the June 14, 2018, hearing in this Court. While it is certainly true that "[t]he Fifth Circuit did not" explicitly "address" what should happen to these arrestees, Memorandum and Opinion at 4, that is because that issue has never been raised until now. It cannot provide the basis for preliminary injunctive relief.

The Court's opinion suggests that the renewed release order of proposed Section 7 is justified by the Equal Protection Clause. Specifically, the Court suggests that the County's bail system discriminates on the basis of wealth because "[t]hose within one of the seven categories who can afford to pay the initial bail amounts are released," while "[t]hose who cannot afford to pay secured money bail amounts are detained until their hearing, for up to 48 hours …." Memorandum and Opinion at 5. This reasoning proves too much, as the Court acknowledged at

the June 14 hearing. At the hearing, counsel for Plaintiffs argued that the Court could require the automatic release of arrestees who cannot afford money bail because the Fifth Circuit held that this Court did not clearly err in concluding that secured money bail is not more likely to result in appearance at trial than is unsecured bail. Hearing Tr. at 17. The Court, however, correctly noted that this argument "would seem, if you push on it not very hard, to say nobody can be subjected to secured money bail, and that is not what the Fifth Circuit said I could do." *Id.* at 18:7–10. In other words, the claimed equal protection violation that forms the basis for the immediate release of those presumptively eligible for release, after an individualized hearing, on personal bond would necessarily justify the release of *all* arrestees, but "that is not what the Fifth Circuit said [this Court] could do." *Id.*

Nor can the County's designation of arrestees in seven specified categories as "presumptively" eligible for personal bonds justify automatic release. Presumptive is not the same as conclusive, and after individualized review, some significant portion of arrestees in these categories are determined to be ineligible for a personal bond. And the Fifth Circuit held that Harris County is entitled to 48 hours to provide the required individualized assessment to decide whether or not the presumption holds in each particular case.

In any event, the equal protection argument fails for several reasons. First, any difference in treatment between those who can and cannot afford money bail is simply a *disparate impact* of a facially neutral policy, and disparate impact alone cannot give rise to liability under the Equal Protection Clause. *See, e.g.*, *Washington v. Davis*, 426 U.S. 229, 239 (1976). Moreover, binding precedent requires the application only of rational basis review to an indigent's equal protection challenge to a statute that resulted in the prolonged detention on account of inability to afford bail. *See, e.g.*, *McGinnis v. Royster*, 410 U.S. 263, 270 (1973); *Smith v. United States Parole Comm'n*,

752 F.2d 1056, 1058 (5th Cir. 1985). And under rational basis review, Plaintiffs cannot make an adequate showing to justify the release of misdemeanor arrestees who claim they cannot afford money bail, particularly in light of the alarming failure-to-appear rates that have resulted from this Court's preliminary injunction. *See, e.g.*, Declaration of Ed Wells (June 11, 2018), Doc. 402-5. In any event, the jurisdiction-wide proof of failure-to-appear rates that Plaintiffs have relied upon is legally insufficient to prove discrimination in any particular case, *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987), and thus it cannot justify the release of any individual arrestee.

The Fourteen Judges further object to Section 7 of the proposed order to the extent it requires Harris County to release these arrestees "on a personal bond." Proposed Injunction at 5. A personal bond may be issued only by a magistrate who determines, in the exercise of his or her judicial discretion, after an individualized hearing, that the personal bond provides sufficient sureties that the arrestee will appear at trial and will not threaten public safety while at large. The Court would thus be enjoining judicial officers in their judicial capacity, which it cannot do. *ODonnell*, 2018 WL 2465481, at *12; 42 U.S.C. § 1983 (prohibiting injunctive relief against judicial officers for acts taken in their judicial capacity unless a declaratory decree is violated or declaratory relief is unavailable).

### 8. The Mandatory Release of Arrestees Who Are Detained More Than 48 Hours Without an Individualized Hearing.

Several provisions of the Court's proposed injunction require the mandatory release of arrestees who do not receive an individualized hearing within 48 hours. Section 8 of the proposed injunction states that certain arrestees "who have not appeared at a live (including videolink) probable-cause and bail-setting hearing within 48 hours of arrest must promptly be released by the Harris County Sheriff on an unsecured personal bond." Proposed Injunction at 6. Section 9 similarly requires that the County "implement procedures to ensure the release of each

misdemeanor arrestee who is eligible for release by the 48th hour." *Id.* Moreover, the proposed injunction describes the purpose of the 48-hour requirement as "intended to address and prevent the endemic problem of misdemeanor arrestees being detained longer than those able to pay secured money bail, which can last until case disposition, or can pressure misdemeanor arrestees to plead guilty to secure faster release from pretrial detention." *Id.*

The Fourteen Judges submit that these provisions of the proposed injunction are impermissible for many of the same reasons already discussed. *Preiser* prohibits this Court from ordering the release of arrestees under Section 1983. *Younger* and the Eighth Amendment likewise bar this relief. Moreover, as also previously discussed, the Fifth Circuit pointedly did *not* require automatic release as the remedy whenever an individualized hearing is not held within 48 hours. In fact, the Fifth Circuit's reporting requirement contemplates the practical reality that some arrestees might have to be detained without a hearing beyond 48 hours of arrest, for it requires reporting to this Court "of misdemeanor defendants identified above for whom a timely individual assessment has not been held," and it further states that "*[a] pattern* of delays might warrant further relief from the district court." *ODonnell*, 2018 WL 2465481, at *12 (emphasis added).

The Fifth Circuit clearly concluded that the 48-hour time limit is not a rigid, absolute requirement to be enforced with a release order no matter the justification for the delay. That holding is consistent with the Supreme Court's holding that detention without a probable cause hearing beyond 48 hours is constitutionally permissible where the government demonstrates "the existence of a bona fide emergency or other extraordinary circumstance." *County of Riverside v. McLaughlin*, 500 U.S. 44, 57 (1991).

9.  **The Requirement That the Provisions of the Proposed Injunction Apply Equally to Arrestees Who Are Re-Arrested After Failing to Appear.**

The Court's proposed injunction provides that it "applies to misdemeanor arrestees who are rearrested on misdemeanor charges only or on warrants for failing to appear while released before trial on bond (either secured or unsecured)." Proposed Injunction at 7. The proposed injunction thus requires Harris County magistrates, when determining bail at the individualized hearing, to blind themselves to the fact that a misdemeanor arrestee has repeatedly failed to appear in court or has re-offended while on pretrial release. The Fifth Circuit's order contains no such requirement, and it certainly does not require perpetuation of the revolving door whereby arrestees may continually fail to appear yet may still be released pursuant to this Court's order.

10.  **The Prohibition Against Amending the Local Rules.**

The Court's proposed injunction states that "[t]he County Judges must not promulgate or implement any policy, written or unwritten, that permits the setting of secured financial conditions that operate to detain, rather than release, indigent misdemeanor arrestees before trial, or that otherwise conflict with this Order." Proposed Injunction at 7–8. This requirement is not present in the Fifth Circuit's model order, it is inconsistent with the Fifth Circuit's holding that no relief can be ordered against the County Judges in their judicial and legislative capacities, *ODonnell*, 2018 WL 2465481, at *12, and it exceeds that which is necessary to remedy the constitutional violation. Moreover, the proposed injunction appears to contemplate prohibiting Harris County from amending its bail schedule in any way if imposing secured money bail would have even the *effect* of detaining an arrestee who cannot afford money bail.

**11.     The Court's Revision of Language in the Fifth Circuit's Proposed Injunction.**

In several respects, language in the Court's proposed injunction revises language in the Fifth Circuit's opinion. In many of these instances, it is unclear whether the Court's revision to the Fifth Circuit's opinion reflects a substantive or merely stylistic change. For example:

- The Court's proposed injunction states that the purpose of the individualized hearing is to prevent the imposition of unaffordable secured money bail "unless each misdemeanor arrestee has received adequate process to ensure individualized consideration of whether any secured financial condition of release is needed to provide sufficient sureties." Proposed Injunction at 4. This language departs from the Fifth Circuit's opinion and model injunction, which state that the purpose of the individualized hearing is to ensure "*individualized consideration of whether another amount or condition provides sufficient sureties.*" *ODonnell*, 2018 WL 2465481, at *12 (emphasis added).

- The Court's proposed injunction states that a magistrate must make findings on the record if he or she "declines to lower secured bail from the prescheduled amount to an amount the arrestee is able to pay, or to impose alternative conditions of release, *including an unsecured personal bond with nonfinancial conditions of release* …." Proposed Injunction at 4 (emphasis added). This language departs from the Fifth Circuit's opinion and model injunction, which state that the duty to make findings on the record is triggered where the factfinder simply "declines to lower bail from the prescheduled amount to an amount the arrestee is able to pay …." *ODonnell*, 2018 WL 2465481, at *12.

- The Court's proposed injunction states that individuals who are subject to holds "must be deemed by the Harris County Sheriff to have satisfied their bond conditions for purposes of the hold at the earlier of: (1) their live (including videolink) probable cause and bail-setting hearing; or (2) 24 hours after arrest." Proposed Injunction at 7. The Fifth Circuit's injunction, by contrast, states that for these individuals, "the Sheriff must treat the limitations period on their holds as beginning to run the earliest of: (1) after the probable cause hearing; or (2) 24 hours after arrest." *ODonnell*, 2018 WL 2465481, at *13.

- The Court's proposed injunction states that "[t]his court does not order relief against the Hearing Officers or against the County Judges in their judicial capacities, but rather does so in their rulemaking capacities." Proposed Injunction at 8. The Fifth Circuit's injunction, by contrast, states that "[t]he court does not order relief against the Hearing Officers or against the County Judges in their judicial or legislative capacities." *ODonnell*, 2018 WL 2465481, at *12.

To the extent the language in the proposed injunction does not change the substantive meaning and requirements prescribed by the Fifth Circuit, the Fourteen Judges see no need to edit

the Fifth Circuit's language. To the extent the language in the proposed injunction is designed to alter the meaning and requirements of the Fifth Circuit's model injunction, the Fourteen Judges object on the ground that these alterations are not supported by the Fifth Circuit's decision.

## CONCLUSION

The Fourteen Judges respectfully submit that this Court should enter the Fifth Circuit's model injunction as-is without any changes.

Date: June 25, 2018                                 Respectfully submitted,

/s/ Charles J. Cooper                               /s/ Sheryl A. Falk
Charles J. Cooper                                   Sheryl A. Falk
District of Columbia Bar No. 248070                 Attorney-in-Charge
ccooper@cooperkirk.com                              Texas State Bar No. 06795350
Michael W. Kirk                                     sfalk@winston.com
District of Columbia Bar No. 424648                 Robert L. Green
William C. Marra                                    Texas State Bar No. 24087625
District of Columbia Bar No. 1019098                Corinne Stone
COOPER & KIRK, PLLC                                 Texas State Bar No. 24102541
1523 New Hampshire Ave., NW                         WINSTON & STRAWN LLP
Washington, D.C. 20036                              1111 Louisiana St., 25th Floor
Telephone: (202) 220-9600                           Houston, TX 77002
                                                    Telephone: (713) 651-2600

*Counsel for Defendants Fourteen Judges of Harris County Criminal Courts at Law*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 25, 2018, I electronically filed the foregoing document with the Clerk of Court through the CM/ECF system for service this day via transmission of Notice of Electronic Filing generated by ECF to all counsel of record.

*/s/ Charles J. Cooper*
Charles J. Cooper