**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| MARANDA LYNN ODONNELL, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 16-cv-01414 |
| | ) | (Consolidated Class Action) |
| HARRIS COUNTY, TEXAS, et al. | ) | The Honorable Lee H. Rosenthal |
| | ) | U.S. District Judge |
| Defendants. | ) | |
| | ) | |

**PLAINTIFFS' RESPONSE TO COURT ORDER
CONCERNING THE PROPOSED TENTATIVE INJUNCTION**

Plaintiffs have two substantive concerns with the Court's tentative injunction. Each concern is curable with minor modifications to the tentative injunction's provisions.

**I.    Plaintiffs' Substantive Concerns**

**A. The Court's Analysis in its Memorandum Opinion is Correct, and the Tentative Order Must Be Adjusted to Conform to the Analysis**

The Court's memorandum opinion, Dkt. 414, got it right.  Detaining arrestees because they cannot pay predetermined secured bail amounts prior to an individualized hearing is unconstitutional on the factual record in this case.  The memorandum opinion correctly reached this conclusion by applying heightened scrutiny to this Court's affirmed factual findings.  The memorandum opinion therefore states that the "County's policy [of detaining indigent people in the seven 'Presumptive PB' categories until an individualized hearing] discriminates on the basis of wealth," and that the revised injunction must prevent that violation. Dkt. 414 at 5.  The tentative order, however, does not do that.  Instead, it authorizes up to 24 hours of wealth-based detention: after arrest and prior to a magistration hearing.

1

Although the tentative order, Dkt. 414-1, correctly requires an individualized hearing within 48 hours of arrest for people who fall within the thirteen categories of arrestees for whom no initial money bail amount or other conditions of release are determined prior to an individualized hearing, the tentative order's treatment of people within the seven "Presumptive PB" categories fails to implement the memorandum opinion and would allow the County to continue violating the Constitution.  Pursuant to the County's bail schedule, people who fall within the seven Presumptive PB categories can pay predetermined amounts of secured money bail immediately after arrest and be released.  Those who cannot afford the predetermined amount will be kept in jail and will presumptively receive a personal bond at the magistration hearing, which typically takes place within 24 hours of arrest.  Thus, all indigent people in the seven categories will be detained until a magistration hearing solely because they cannot pay, while people who can afford to pay the predetermined amount of money will be released.  The tentative injunction therefore does not cure the constitutional violations that the memorandum opinion correctly prohibits: the order must not allow the County to continue a policy "discriminates on the basis of wealth."  Dkt. 414 at 5.

To address the constitutional violation caused by the current system in which people in the "Presumptive PB" categories who can pay are released while those who cannot are detained, the Court's order must require the post-arrest / pre-hearing release of arrestees who fall within the "Presumptive PB" categories on the current bail schedule.  As the Court noted at oral argument, the County can then require those "Presumptive PB" arrestees to appear for an individualized bail hearing—within 48 hours, or within whatever other period of time Defendants deem reasonable. At the individualized hearing, Provision 6 of the order will apply and, notwithstanding the presumption of release on personal bond, the judicial officer may

2

require a secured financial condition of release—even an unattainable one—if Defendants provide the required procedural protections and, after considering alternatives, make a finding that detention is necessary.   The difference will be that the indigent are not jailed as they await that hearing.

There are several ways to cure the constitutional violation identified by this Court's memorandum opinion. The most straightforward way would be for the Court to require the County to release on personal bond the people who fall within the seven "Presumptive PB" categories and permit the County and the Judges, if they choose, to require those people to return to Court within 48 hours (or some other period of time determined by Defendants) of their release from the jail for an individualized bail hearing.[1]   The County could even allow arrestees who fall within those seven "Presumptive PB" categories to pay the preset monetary amount as a way to avoid a future bail hearing. Under that approach, as the Court suggested at oral argument, Tr. Hrg. 6/14/18 at 41, 47-48, arrestees who are able to pay the scheduled amount can do so, although making the payment does not affect whether they are released (they would still be released if they could not pay).  Instead, making the payment allows them to avoid the future bail hearing, as it already does under the County's Local Rules.  Those who do not pay would undergo an individualized bail hearing if the County deems it appropriate.   Among these discretionary options for the County, the important thing for equal protection and due process is that indigent arrestees in the "Presumptive PB" category not be detained prior to the Paragraph (6) hearing while the County releases similarly situated wealthier arrestees who can pay.

---

[1] It can take 24 to 48 hours to be released from jail after a person is ordered released.  Therefore, whatever time period is ordered must begin when the person actually leaves the jail.  Because the people will not be in custody, there is no constitutional need for that period to be 48 hours, and Defendants are free to use their discretion in setting it.

The County or the Court could devise another alternative for curing the violation. But the key point is that the revised injunction must ensure that the County eliminates the wealth-based detention caused by automatically requiring secured financial conditions of release because this Court and the Fifth Circuit held that, on this factual record, automatically requiring predetermined amounts of money fails heightened scrutiny.

There is a related problem with the sequence of post-arrest events contemplated by the tentative order as currently written.  It would require release *after* magistration (which occurs typically within 24 hours of arrest) of everyone within the Presumptive PB categories, and then require those individuals to *return* within the *next* 24 hours (still within the first 48 hours of arrest) for a *second* hearing.  The tentative order would currently allow wealth-based detention for arrestees within the seven "presumptive PB" categories prior to magistration, require their release *after* magistration, and then (if the magistrate did not order the person released on attainable secured bail or unsecured bail) require them to *return to court within 48 hours of arrest* for the individualized hearing described in paragraph (6).  Such a sequence fails to cure the constitutional violation, as explained above, and is needlessly complicated.  First, as noted, it allows the purely wealth-based detention that the memorandum opinion concludes is unconstitutional.  Second, the requirement to return for a second hearing within 48 hours of arrest imposes significant logistical burdens on the arrestees who will be given personal bonds— as well as on the County and the courts—that will make it difficult for those individuals to appear in court.  The County itself has highlighted those difficulties.  Tr. Hrg. 6/14/18 at 66.[2]  As for the arrestees who would be released pursuant to the tentative injunction, the two-hearing

---

[2] Counsel for the County stated, "[S]ome of the same reasons that there were some issues with the order that's currently in place—logistically and practically, I think it might be very difficult for people who are immediately released on personal bond to come back within 48 hours . . . to make their first appearance. . . .  And we don't want to set them up for failure is my point.  So, while in theory I think that sounds wonderful, I just don't know if that would work."

requirement means that the people with the least resources and the most challenges getting to Court must return to court potentially just hours after release from jail.[3]  This policy will have the same negative effects as Defendants' current "next day setting" policy, which applies to people booked into the jail and which has disproportionately affected people released pursuant to the original injunction.  Dkt. 402-4 ¶¶ 12–14; Dkt. 402-1 ¶¶ 23–30. This Court should contemplate the County providing just *one* bail hearing for these "Presumptively PB" arrestees instead of two hearings in quick succession.[4]

Not only is the two-hearing provision unnecessary and logistically challenging but, based on Plaintiffs' understanding of the data, the County likely cannot comply with it: it routinely takes 24 hours to reach magistration (this Court found that it took longer than 24 hours in approximately 10% of the cases) and another 12–24 hours for a person ordered released at magistration to walk out of the jail.[5]  The tentative order's timing requirements are incompatible with processing delays at the jail.

Moreover, in addition to the concerns with requiring two hearings in quick succession with release delayed until after the first hearing, the Fifth Circuit decision does not require a 48-hour hearing for arrestees *who are released*.  Thus, under Plaintiffs' proposal to release those in

---

[3] Dr. Demuth's analysis found that the people released pursuant to this Court's injunction were those who were still being detained on unaffordable money bail after magistration, and that those individuals are deemed to be in need of greater assistance by the County's risk assessment tool.  Dkt. 402-4 ¶¶ 10–11.

[4] A second hearing is unnecessary for another reason: even if the County could justify on this record a twenty-four-hour period within which wealthy arrestees are released while indigent arrestees are detained (and it cannot), the procedures and findings that Paragraph 6 requires to protect Plaintiffs' rights can—and must—be afforded at the magistration hearing.  There is no need to come back for a second hearing because, at the first hearing before a Hearing Officer, the government can provide the required procedures and findings. Dkt. 402-6 ¶ 23 (Declaration of Judge Natalie Fleming) ("In particular, we will be able to comply with the Court's requirements that Hearing Officers hear evidence and make findings on the record.").

[5] For example, Named Plaintiff Robert Ryan Ford was ordered released during a 9 a.m. court setting and was released from the jail after midnight.  *ODonnell v. Harris County*, 251 F. Supp. 3d 1052, 1062 (S.D. Tex. 2017). Named Plaintiff Loetha McGruder was ordered released during a 9 a.m. court setting and was released from the jail that evening around 7:30 p.m.  *Id.* at 1063.

the County's seven presumptive categories unless and until the County holds an individualized hearing, the County may decide to bring people automatically released (because they fall into the seven Presumptive PB categories) back to court relatively quickly after arrest so that individualized conditions can be imposed as contemplated in Paragraph (6).  But there is no need, under the Constitution, for that individualized hearing to occur within 48 hours of arrest for people who are *released*.  Indeed, under the current system, the County has chosen not to burden itself with 48-hour hearings for the vast majority of those who are released. The tentative order's 48-hour requirement only makes sense, and is only required by the Fifth Circuit, for those arrestees who are not released prior to an individualized hearing (i.e. arrestees in the other thirteen boxes who have not been released, even after magistration).  While the Court rightly requires the 48-hour hearing for those in the other thirteen categories, this Court should permit, but not require, the County to hold such an individualized hearing within 48 hours for those who are released.

### B.  The Tentative Injunction Frames the Rights at Issue Too Narrowly

The tentative injunction continues to frame the right at stake as the right to bail by sufficient sureties under *state* law.  Plaintiffs note that the rights at stake in this case are the federal constitutional right to be free from wealth-based detention and the fundamental right to bodily liberty prior to trial.  It is federal law under each independent line of precedent that requires a finding that detention is necessary because no less restrictive alternative could serve the government's interests in appearance or community safety.[6]

---

[6] Under the *Bearden-Tate-Williams-Frazier-Rainwater* precedent, the constitutional right against wealth-based detention requires a finding that no alternative short of detention adequately serves the government's interests.  This Court and the Fifth Circuit, applying this precedent, have both found an equal protection violation in this case. Because the requirement that the government make a finding of "necessity" to justify pretrial detention derives from the Equal Protection Clause of the Fourteenth Amendment, it is incomplete to frame the substantive finding as deriving solely from state law.

Plaintiffs understand that the substance of the finding required by federal law is consistent with this Court's findings requirement in the tentative order.  Plaintiffs merely note that the source of the substantive finding should be federal rather than state law.  *See supra* note 6.

## II.    Conclusion

Plaintiffs are available for a status conference should the Court deem it necessary to discuss these matters further before entering its revised injunction.

Respectfully Submitted,

*/s/ Alec Karakatsanis*
*/s/ Elizabeth Rossi*
Alec George Karakatsanis
alec@civilrightscorps.org
Elizabeth Rossi[7]
elizabeth@civilrightscorps.org
Civil Rights Corps
910 17th Street NW, Suite 200
Washington, DC 20006
Telephone: (202) 681-2721

*/s/ Susanne Pringle*
Susanne Pringle
Texas Bar No. 24083686
springle@fairdefense.org
Texas Fair Defense Project
314 E. Highland Mall Blvd.
Suite 180
Austin, Texas 78752
Telephone: (512) 637-5220
Facsimile:  (512) 637-5224

*/s/ Neal S. Manne*
Neal S. Manne
State Bar No. 12937980
nmanne@susmangodfrey.com
Lexie G. White
Texas Bar No. 24048876
lwhite@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone:  (713) 651-9366
Facsimile:  (713) 654-6666

*/s/ Michael Gervais*
Michael Gervais
mgervais@susmangodfrey.com
SUSMAN GODFREY, LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 336-8330
*Attorneys for Plaintiffs*

---

The same is true of the "fundamental" right to pretrial liberty.  Substantive due process does not create an absolute right to pretrial release in all cases, as some of the Defendants have mischaracterized the argument.  Rather, analogous to *Bearden*, due process merely creates a liberty interest in a person's physical body that, like almost every constitutional right, is not absolute.  The important interest in bodily liberty can be overcome prior to criminal trial if detention is necessary.  *See United States v. Salerno*, 481 U.S. 739, 749, 750 (1987) (Rehnquist, J.) (upholding pretrial detention if it is narrowly limited and if the government makes a substantive finding of necessity and provides procedural safeguards because it is a "'general rule' of substantive due process that the government may not detain a person prior to a judgment of guilt in a criminal trial").

[7] Admitted solely to practice law in Maryland; not admitted in the District of Columbia.  Practice is limited pursuant to D.C. App. R. 49(c)(3).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 25th day of June, 2018, I electronically filed the foregoing with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the Court.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.


*/s/ Michael Gervais*
Michael Gervais