United States District Court
Southern District of Texas
**ENTERED**
June 29, 2018
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MARANDA LYNN ODONNELL, *et al.*, | § | |
| On behalf of themselves and all others | § | |
| similarly situated, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. H-16-1414 |
| VS. | § | |
| | § | |
| HARRIS COUNTY, TEXAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

In May 2016, while detained in the Harris County Jail on misdemeanor charges, Maranda

Lynn ODonnell, Robert Ryan Ford, and Loetha McGruder sued Harris County, the Harris County

Sheriff, Harris County Hearing Officers, and Harris County Criminal Courts at Law Judges, under

42 U.S.C. § 1983, alleging that they were detained because they were too poor to pay the amount

needed for release on the secured money bail imposed without individualized consideration based

on the County's policies and practices.  (Docket Entry Nos. 3, 41, 54).  The defendants moved to

dismiss, and the court: (1) dismissed the claims against the Harris County Sheriff and sixteen County

Judges in their personal capacities; and (2) denied the motions to dismiss the claims against the

County, the personal-capacity claims against five Harris County Hearing Officers, and the official-

capacity claims against the Sheriff and the County Judges.  (Docket Entry No. 125).

In March 2017, the court held an eight-day preliminary injunction hearing.  (Docket Entry

Nos. 222, 223, 228, 229, 230, 246, 247, 251).  On April 28, 2017, the court granted the plaintiffs'

motion for a preliminary injunction, (Docket Entry Nos. 143, 302), entered a preliminary injunction

order against Harris County and its final policymakers for pretrial bail in misdemeanor cases, (Docket Entry No. 304), denied the defendants' motion to stay, (Docket Entry Nos. 252, 305), and granted the plaintiffs' motion for class certification, (Docket Entry Nos. 146, 303).  The defendants appealed from the court's motion-to-dismiss order, the April 28 memorandum and opinion, and the preliminary injunction order.  (Docket Entry Nos. 125, 302, 304, 309, 310).

On appeal, the Fifth Circuit affirmed in part and vacated in part this court's memorandum and opinion and preliminary injunction, and did so again after motions for reconsideration were filed and fully briefed.  *ODonnell v. Harris Cty., Texas*, 882 F.3d 528 (5th Cir. 2018), *opinion withdrawn and superseded on reh'g sub nom. ODonnell v. Harris Cty.*, 892 F.3d 147 (5th Cir. 2018).  The Circuit held that the preliminary injunction order was overbroad and that its relief should be more narrowly tailored to remedy the bail system's procedural deficiencies:

> The fundamental source of constitutional deficiency in the due process and equal protection analyses is the same: the County's mechanical application of the secured bail schedule without regard for the individual arrestee's personal circumstances. Thus, the equitable remedy necessary to cure the constitutional infirmities arising under both clauses is the same: the County must implement the constitutionally-necessary procedures to engage in a case-by-case evaluation of a given arrestee's circumstances, taking into account the various factors required by Texas state law (only one of which is ability to pay).
>
> . . .
>
> We will vacate the injunction and remand to allow the court to craft a remedy more finely tuned to address the harm.

*ODonnell*, 892 F.3d at 163–64.

On remand, the parties submitted proposed amended preliminary injunction orders and presented oral argument in support of their positions.  (Docket Entry Nos. 401, 403, 413).  The court entered a tentative amended preliminary injunction order with a memorandum and opinion that explained the changes between the original preliminary injunction order and the tentative order.

(Docket Entry No. 414).  The parties submitted comments and arguments.  (Docket Entry Nos. 420, 421, 422, 424).

Based on the Fifth Circuit rulings, the applicable law, the record evidence, and the parties' arguments and comments, this court enters an amended preliminary injunction order in a separate order.  The amended order narrows the previous order to avoid the overbreadth the Fifth Circuit found.  The amended order lengthens the maximum time between arrest and the hearing and individual assessment from 24 to 48 hours.  The amended order does not forbid pretrial detention of those unable to pay secured money bail after an adequate hearing and individual assessment. Section (7) of this order narrowly addresses only the status of misdemeanor arrestees who are presumptively eligible for release on a personal bond and who would be released after arrest and before a hearing and individual assessment if they paid the prescheduled secured bail amount, but who cannot do so because they cannot afford to pay.  Section (7) does not apply to all misdemeanor arrestees, or even all indigent misdemeanor arrestees.  It applies only to those misdemeanor arrestees whom whom local law has already determined to be eligible for release on a personal bond and who are subject to no other basis for detention.  Finally, the amended order adopts many of the parties' comments and requests for clarification.

The reasons for the ordered relief are explained in detail below.

## I.      Analysis of the Parties' Specific Comments and Arguments

### A.      Sections (1)–(3)

No substantive changes have been made to Sections (1)–(3).

### B.      Section (4)

The defendants argue that there is no requirement to deliver completed financial affidavits

or declarations to the Harris County Sheriff's Office.  (Docket Entry No. 420).  The Fifth Circuit suggested including the following language: "Pretrial Services must deliver completed affidavits to the Harris County Sheriff's Office before a declarant's probable cause hearing." *ODonnell*, 892 F.3d at 164.  The amended preliminary injunction order states: "The completed affidavit or declaration for each misdemeanor arrestee must be delivered to the Harris County Sheriff's Office before each affiant's or declarant's hearing and individual assessment held in accordance with Section (6)."  This provision is consistent with the Fifth Circuit's opinion.

### C.    Section (5)

Section (5) has been altered to reflect changes to the mental-illness and intellectual-disability exception provided in Section (11), and the addition of the medical-condition exception provided in Section (12). Sections (11) and (12) are discussed in greater detail below.

### D.    Section (6)

Each party commented that the Fifth Circuit's opinion requires only one hearing within 48 hours of arrest to provide each misdemeanor arrestee with an individual assessment of whether financial or nonfinancial conditions of release will provide sufficient sureties.  (Docket Entry Nos. 420 at 8; 421 at 4–5; 422 at 1); *ODonnell*, 892 F.3d at 160 ("[T]he federal due process right entitles detainees to a hearing within 48 hours.").  The court agrees.  Section (6) of the amended preliminary injunction now makes this clear:

(6)    All misdemeanor arrestees in the custody of Harris County:

•    who are not subject to formal holds, such as a federal immigration detainer or an outstanding warrant from another county or municipal authority; who are not subject to a pending finding of mental illness or intellectual disability; who are not subject to family violence detention procedures governed by Texas Code of Criminal Procedure Articles 17.152–153; and who are not subject to a medical condition

4

that prevents participation in the pretrial bail system;

• who have executed an affidavit or declaration of financial condition in accordance with Section (3) showing an inability to pay the prescheduled or other secured financial conditions of release; and

• who have not been granted release on an unsecured personal bond with nonfinancial conditions of release,

are entitled to a hearing and individual assessment within 48 hours of arrest.

• At the hearing, an impartial decisionmaker must conduct an individual assessment of whether the prescheduled or other amount of secured money bail, or other financial condition of release, will provide sufficient sureties, or whether a personal bond, or other nonfinancial conditions of release, will reasonably do so.

• The purposes of this requirement are to provide each misdemeanor arrestee timely protection of the liberty interest in being bailable by sufficient sureties and to prevent the automatic imposition of prescheduled or other secured money bail. Instead, each misdemeanor arrestee must receive adequate process to ensure individualized consideration of whether any secured financial condition of release provides sufficient sureties.

• At the hearing, each misdemeanor arrestee, or the arrestee's counsel, must have the opportunity to present evidence and make arguments concerning the arrestee's ability to afford a prescheduled or other secured financial condition of release, to respond to any evidence presented, and to respond to any argument made by the prosecution or by law enforcement.

• If the decisionmaker declines to lower the secured bail amount from the prescheduled amount to an amount the arrestee is able to pay, or to impose alternative conditions of release, including an unsecured personal bond with nonfinancial conditions of release, then the decisionmaker must either provide written factual findings or state the factual findings on the record explaining the reasons for the decisions, and the County must provide that arrestee with a formal adversarial bail review hearing before a County Judge within one business day.

• The Harris County Sheriff is authorized to decline to enforce any order requiring payment of secured prescheduled bail amounts or other financial conditions of release for misdemeanor arrestees if the

order is not accompanied by a record adequate to show that a Hearing Officer provided the required individual assessment and that there was an opportunity for formal adversarial bail review before a County Judge within one business day.

• All nonfinancial conditions of release ordered by the Hearing Officers, including protective orders, drug testing, alcohol-intake ignition locks, or GPS monitoring, will remain in effect.

The defendants commented on or contest four other aspects of Section (6). First, they argue that there is no legal basis to require that misdemeanor arrestees be afforded counsel at the individual-assessment hearing. (Docket Entry No. 420 at 9). The requirement that the County provide public defenders to represent misdemeanor arrestees at these hearings was included in the tentative order at the County's request. (Docket Entry No. 401-3 at 3). Because ordering the County to provide public defenders to represent misdemeanor arrestees at their hearings and individual assessments does not remedy an identified constitutional violation, the requirement is not presently included in the amended preliminary injunction order.

Second, the defendants asked for clarification as to when the County must provide an arrestee with a formal adversarial bail review hearing after declining to lower the secured bail amount or to impose alternative conditions of release. (Docket Entry No. 420 at 10). The defendants request an injunction that sets a deadline of no less than two business days after the individual-assessment hearing. *Id.* The court agrees that a specified deadline is helpful, but believes that one business day is sufficient. The amended injunction order states: "the County must provide that arrestee with a formal adversarial bail review hearing before a County Judge within one business day."

Third, the defendants contest the duty to apply strict scrutiny at bail hearings. (Docket Entry No. 420 at 11). The tentative order required that a decisionmaker provide factual findings stating either that the arrestee had the ability to pay the secured financial condition of release or that a

6

secured financial condition of release was necessary, and the least restrictive condition, to assure appearance and public safety if the decisionmaker declined to lower secured bail from the prescheduled amount to an amount the arrestee was able to pay, or to impose alternative conditions of release.  The defendants are correct that the necessity requirement is not "narrowly tailored . . . to remedy the specific action," and, on the present record, could be overbroad as a result.  *John Doe # 1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004).

"[T]he scope of injunctive relief is dictated by the extent of the violation established." *ODonnell*, 892 F.3d at 163 (citing *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).  In defining the scope of injunctive relief in this case, the Fifth Circuit held that "the constitutional defect in the process afforded was the *automatic* imposition of pretrial detention . . . ."  *Id.* at 160 (emphasis in original). The Circuit held that "the equitable remedy necessary to cure the constitutional infirmities arising under [the Equal Protection and Due Process Clauses] is the same: the County must implement the constitutionally necessary procedures to engage in a case-by-case evaluation of a given arrestee's circumstances . . . ."  *ODonnell*, 892 F.3d at 163.

The plaintiffs have conceded that the necessity requirement is substantive, not procedural, which places that requirement beyond what the Fifth Circuit remand order appears to allow.  (Docket Entry No. 402 at 4).  To ensure consistency with the Fifth Circuit's opinion, the amended preliminary injunction order requires the decisionmakers to "explain[] the reasons for the decisions" to decline to lower secured bail to an amount the arrestee is able to pay, or to impose alternative conditions of release.  *ODonnell*, 892 F.3d at 160 ("[R]equiring magistrates to specifically enunciate their individualized, case-specific reasons for [imposing pretrial detention on indigent misdemeanor arrestees] is a sufficient remedy.").

7

Fourth, the defendants contest the provision in the tentative order preventing the Harris County Sheriff from enforcing secured bail orders unaccompanied by an adequate record. (Docket Entry Nos. 420 at 14; 422 at 6). The Fifth Circuit held that the Sheriff "is legally obliged to execute all lawful process," and suggested the following language: "The Harris County Sheriff is therefore authorized to decline to enforce orders requiring payment of prescheduled bail amounts as a condition of release for said defendants if the orders are not accompanied by a record showing that the required individual assessment was made and an opportunity for formal review was provided." *ODonnell*, 892 F.3d at 165.

The amended preliminary injunction order adopts similar language to ensure consistency with the remand order:

> The Harris County Sheriff is authorized to decline to enforce any order requiring payment of secured prescheduled bail amounts or other financial conditions of release for misdemeanor arrestees if the order is not accompanied by a record adequate to show that a Hearing Officer provided the required individual assessment and that there was an opportunity for formal adversarial bail review before a County Judge within one business day.

The amended preliminary injunction order does not require that misdemeanor arrestees be released pending the formal adversarial bail review hearing before a County Judge within one business day.

## E.    Section (7)

The defendants contest the mandatory post-arrest release of certain misdemeanor arrestees. (Docket Entry Nos. 420 at 16; 422 at 4). They argue that Section (7) is inconsistent with the Fifth Circuit's mandate, comparing it to an "outright elimination of secured bail for indigent misdemeanor arrestees." (Docket Entry No. 420 at 16); *ODonnell*, 892 F.3d at 163. The plaintiffs point out that the defendants' characterization of this provision is overbroad, and that this Section is narrowly

aimed at addressing a problem that arose after the Fifth Circuit proceedings.

Section (7) of the amended preliminary injunction order provides:

(7)     All misdemeanor arrestees in the custody of Harris County:

- who are not subject to formal holds, such as a federal immigration detainer or an outstanding warrant from another county or municipal authority; who are not subject to a pending finding of mental illness or intellectual disability; who are not subject to family violence detention procedures governed by Texas Code of Criminal Procedure Articles 17.152–153; and who are not subject to a medical condition that prevents participation in the pretrial bail system;

- who have executed an affidavit or declaration of financial condition in accordance with Section (3) showing an inability to pay the prescheduled or other secured financial conditions of release;

- who have not been granted release on an unsecured personal bond with nonfinancial conditions of release;

- who would otherwise be released after arrest and before a hearing and individual assessment within 48 hours of arrest in accordance with Section (6) after paying a prescheduled or other secured bail amount if not for their inability to pay the prescheduled or other secured financial conditions of release,

must promptly be released by the County on a personal bond with nonfinancial conditions of release.

- "Promptly" means on the same time frame of release that a misdemeanor arrestee who is able to pay secured money bail would receive.  Verification of references must not delay release.

- The County may require misdemeanor arrestees who are released on unsecured personal bonds under this Section to return for a hearing and individual assessment under Section (6), within 48 hours of arrest or at a later time, but the County cannot detain those arrestees until a hearing and individual assessment have been held in accordance with Section (6).

- The purpose of this requirement is to address and prevent the problem of misdemeanor arrestees who are not able to pay secured money bail from being detained longer than those able to pay secured money bail

9

before receiving a hearing and individual assessment in accordance with Section (6).

Section (7) prohibits the detention of a narrow category of misdemeanor arrestees on the basis of wealth. It does not, as the defendants argue, eliminate secured bail for all indigent misdemeanor arrestees. This order is much narrower, in that it does not apply to all misdemeanor arrestees, or even all indigent misdemeanor arrestees, but only those deemed by local law as eligible for release on personal bond. And it does not forbid pretrial detention after an adequate hearing and individual assessment. But it does prevent detaining the misdemeanor arrestees whom the County has already determined are presumptively releasable on a personal bond because they are not able to post bond before the hearing and individual assessment. Section (7) does not apply to misdemeanor arrestees who are not eligible for presumptive pretrial release on personal bond based on the nature of the offense and on the absence of other circumstances warranting detention.

The court's prior memorandum and opinion explained why the County's current money bail policy discriminates on the basis of wealth: "under the current system, those who are able to pay secured money bail go free immediately, while those who cannot pay are detained for up to 48 hours" before their hearing and individual assessment. (Docket Entry No. 414 at 5). This practice violates equal protection. As the defendants note, "the equal protection that the Fifth Circuit found was the County's alleged 'custom and practice' of a 'lack of individualized assessment and mechanical application of the secured bail schedule.'" (Docket Entry No. 420 at 17). Automatically imposing a post-arrest bail amount on those who are presumptively eligible for release on personal bond, without a hearing and individual assessment, when an arrestee who can post bond is promptly released, is such an equal protection violation. The misdemeanor arrestees within one of the categories of those presumptively eligible for pretrial release on a personal bond, who are able to pay

the initial secured bail amounts, are released before their hearing and individual assessment, while the misdemeanor arrestees who are not able to pay initial bail amounts are detained until a hearing and individual assessment, up to 48 hours after arrest.

Section (7) does not eliminate the County's ability to impose secured bail or other secured financial conditions on those presumptively eligible misdemeanor arrestees who are released on an unsecured personal bond after arrest. It provides that the County may require those misdemeanor arrestees to return for a hearing and individual assessment within 48 hours of arrest, or at a later time. The rationale underlying the order is consistent with the Fifth Circuit's holding that the County cannot detain misdemeanor arrestees who would be released if they were able to pay money bail until it affords those arrestees a hearing and individual assessment in accordance with Section (6).

The County defends its practice of using bail schedules. (Docket Entry No. 422 at 5). The constitutionality of bail schedules generally is not at issue. Section (7) remedies the specific practice of detaining certain misdemeanor arrestees on the basis of wealth until a hearing and individual assessment. The County argues that "[n]othing in the Fifth Circuit opinion implies that prior to the individualized assessment a jurisdiction cannot allow a person who has the means to post what the courts have deemed a sufficient financial security to ensure appearance . . . via a bail schedule." *Id.* at 5–6. The issue is not whether a person should be able to post secured money bail, but whether a person who cannot pay an automatically imposed secured money bail should be detained because that person does not have the ability to pay. As stated above, wealth-based discriminatory practices, "with their lack of individualized assessment and mechanical application of the secured bail schedule," violate the Equal Protection Clause. *ODonnell*, 892 F.3d at 163. Section (7) is consistent with the Fifth Circuit's opinion.

F.      Section (8)

The defendants challenge the mandatory release of misdemeanor arrestees who have not received a hearing and individual assessment within 48 hours of arrest under Section (6). (Docket Entry No. 420 at 19). They argue that "the Fifth Circuit clearly concluded that the 48-hour time limit is not a rigid, absolute requirement to be enforced with a release order no matter the justification for the delay," citing the Fifth Circuit's reporting-requirement suggestion: "To enforce the 48-hour timeline, the County must make a weekly report to the district court of misdemeanor defendants identified above for whom a timely individual assessment has not been held." *ODonnell*, 892 F.3d at 166.

If a hearing and individual assessment are not completed within 48 hours after arrest in accordance with Section (6), the hearing and individual assessment are not timely. The Fifth Circuit's suggestions are silent as to whether misdemeanor arrestees who have not received a hearing and individual assessment must continue to be detained. Release of those arrestees is not inconsistent with the Fifth Circuit's opinion. Rather, it addresses the Circuit's concern about "the endemic problem of misdemeanor arrestees being detained until case disposition and pleading guilty to secure faster release from pretrial detention." *Id.*

Section (8) of the amended preliminary injection order states:

(8)     All misdemeanor arrestees in the custody of Harris County:

•       who are not subject to formal holds, such as a federal immigration detainer or an outstanding warrant from another county or municipal authority; who are not subject to a pending finding of mental illness or intellectual disability; who are not subject to family violence detention procedures governed by Texas Code of Criminal Procedure Articles 17.152–153; and who are not subject to a medical condition that prevents participation in the pretrial bail system; and

- who have not appeared at a hearing and individual assessment within 48 hours of arrest in accordance with Section (6),

must promptly be released by the County on an unsecured personal bond.

- "Promptly" means on the same time frame of release that a misdemeanor arrestee who is able to pay a secured money bail would receive.  Verification of references must not delay release.

- If the City of Houston Police Department has detained a misdemeanor arrestee for more than 48 hours after arrest, the arrestee must be promptly released on unsecured or nonfinancial conditions when the Sheriff takes custody of that arrestee.  That is, the arrestee must be released on unsecured or nonfinancial conditions on the same time frame as if the arrestee paid a secured bond amount when the Sheriff took custody of the arrestee.

- The County may require misdemeanor arrestees who are released on unsecured personal bonds under this Section to return for a hearing and individual assessment in accordance with Section (6), but the County cannot detain those arrestees after the 48th hour after their arrest until a hearing and individual assessment have been held in accordance with Section (6).

Section (8), like Section (7), provides that the County may require misdemeanor arrestees who are released after 48 hours after arrest without a hearing and individual assessment to return for a hearing and individual assessment in accordance with Section (6).  But the County cannot continue to detain misdemeanor arrestees past the Fifth Circuit's 48-hour limit unless the procedural protections in Section (6) are afforded.

## G.    Section (9)

No substantive changes have been made to Section (9).

## H.    Section (10)

Section (10) provides the reporting requirements the County must follow.  Two substantive changes are reflected in the amended preliminary injunction order.  First, when the County submits

its weekly report of misdemeanor arrestees for whom a hearing and individual assessment has not

been held within 48 hours of arrest, the County must identify which misdemeanor arrestees fall

within the mental-illness or intellectual-disability exception or the medical-condition exception of

Sections (11) and (12).  The amended preliminary injunction order states:

> The report must identify whether a misdemeanor arrestee, for whom a hearing and individual assessment within 48 hours of arrest has not been held, has not received a hearing and individual assessment because he or she falls within either: (a) the mental-illness or intellectual-disability exception provided in Section (11); or (b) the medical-condition exception provided in Section (12).

The purpose of this requirement is to assure accurate information on how often the Section

(11) and Section (12) exceptions are invoked to justify the lack of a hearing and individual

assessment within 48 hours of arrest.

Second, Section (10) orders the weekly reporting to begin on August 18, 2018.  The County

states that a joint processing center will open on August 18, 2018 that should "substantially shorten

the time between when arrestees are arrested and when they appear before a Hearing Officer."

(Docket Entry Nos. 417 at 2; 422 at 8).  The County asks that the reporting requirements not start

until the center opens, so that the old data systems do not have to be reprogrammed for the limited

time between when the amended preliminary injunction order takes effect and when the center, with

its new data system, opens.  (Docket Entry No. 422 at 8).  The court agrees.

The amended preliminary injunction order takes effect on Monday, July 30, 2018.  The joint

processing center opens on August 18, about three weeks later.  The County does not have to rewrite

its data programs for such a short period.  However, the County must, at a minimum, continue its

recordkeeping and retention practices needed to provide information on implementation.

**I.      Section (11)**

The County asserts that Section (11), numbered Section (13) in the tentative order, should be modified to more accurately reflect Article 16.22 of the Texas Code of Criminal Procedure. (Docket Entry No. 422 at 8).   The court agrees.   Article 16.22 does not use the term "mental capacity."   Rather, it uses "mental illness" and "intellectual disability."   TEX. CODE. CRIM. P. § 16.22(a)(1).   To more closely align Section (11) with Texas law, the amended preliminary injunction order states:

> Misdemeanor arrestees in the custody of Harris County who do not appear mentally able to understand or to execute an affidavit or declaration of financial condition in accordance with Section (3), may be evaluated under the procedures governed by Texas Code of Criminal Procedure Article 16.22.   If the evaluation results in a finding that no mental illness or intellectual disability exists that would prevent the execution of an affidavit or declaration of financial condition, the misdemeanor arrestee is covered by the relief this court orders, with the exception that the 48-hour deadline begins to run from the time of the finding rather than from the time of arrest. As under Article 16.22, nothing in this Order prevents a misdemeanor arrestee from being released on secured bail or an unsecured personal bond pending the evaluation.

In order to monitor the frequency at which the mental-illness or intellectual-disability exception is invoked, the County must identify, in its weekly report under Section (10), when a misdemeanor arrestee for whom a hearing and individual assessment within 48 hours has not been held has not received a hearing and individual assessment because he or she falls within the mental-illness or intellectual-disability exception.

**J.      Section (12)**

Section (12) recognizes instances in which misdemeanor arrestees are unable to participate in the pretrial bail system due to a medical condition, whether at the affidavit-or-declaration-of-financial-condition stage or at the hearing-and-individual-assessment stage.   The 48-hour deadline for the misdemeanor arrestees to whom this exception applies "begins to run from the time the condition ceases to prevent execution of an affidavit or declaration or attendance at a hearing and

individual assessment in accordance with Section (6), rather than from the time of arrest."  For

example, if a misdemeanor arrestee is hospitalized and is unable to attend his or her hearing and

individual assessment, the 48-hour deadline will begin as soon as he or she is released from the hospital.

In order to monitor the frequency at which the medical-condition exception is invoked, the

County must identify, in its weekly report under Section (10), when a misdemeanor arrestee has not

received a hearing and individual assessment within 48 hours of arrest because he or she falls within

the medical-condition exception.

### K.      Sections (13)–(15)

No substantive changes have been made to Sections (13), (14), and (15), numbered Sections

(11), (12), and (14) in the tentative order.

### L.      Section (16)

Section (16) of the amended preliminary injunction order, numbered Section (15) in the

tentative order, provides: "This Order applies to misdemeanor arrestees who are rearrested on

misdemeanor charges only or on warrants for failing to appear while released before trial on bond

(either secured or unsecured)."  The defendants argue that this Section "requires Harris County

magistrates, when determining bail at the individual hearing, to blind themselves to the fact that a

misdemeanor arrestee has repeatedly failed to appear in court or has re-offended while on pretrial

release." (Docket Entry No. 420 at 21).  The court disagrees.  Section (16) does not order an

impartial decisionmaker to consider or disregard any particular facts.  It requires only that

misdemeanor arrestees who are rearrested on misdemeanor charges only or on warrants for failing

to appear while on pretrial release receive the same procedural protections that they would have

received if they were being arrested for the first time.  Those protections include a hearing and

16

individual assessment in accordance with Section (6).  The decisionmaker is free to consider the fact that the arrestee has been rearrested or has failed to appear when conducting an individual assessment of whether the prescheduled or other amount of secured money bail, or other financial conditions of release, will provide sufficient sureties.

### M.      Section (17)

The defendants challenge the provision stating that "[t]he County Judges must not promulgate or implement any policy, written or unwritten, that permits the setting of secured financial conditions that operate to detain, rather to release, indigent misdemeanor arrestees before trial, or that otherwise conflict with this Order."  (Docket Entry No. 420 at 21).

The defendants are correct.  The provision is inconsistent with the Fifth Circuit's opinion, which permits setting secured money bail or other financial conditions of release after a hearing and individual assessment within 48 hours of arrest.  Section (17) of the amended preliminary injunction order, numbered Section (16) in the tentative order, states: "The County Judges need not amend the County Rules of Court as written.  If they choose to amend the County Rules of Court, they must not create or implement rules or policies that conflict with this Order."

### N.      Section (18)

No substantive changes have been made to Section (18), numbered Section (17) in the tentative order.

## II.      Analysis of the Parties' General Comments and Arguments

### A.      Framing of the Rights at Issue

The plaintiffs argue that the rights at stake are framed too narrowly in the tentative order. (Docket Entry No. 421 at 6).  They assert that federal law provides the source for a requirement that

detention be imposed only after a finding of necessity. *Id.* at 7. Basing relief on substantive due process is improper at this stage. As this court noted in its April 28, 2017 memorandum and opinion, "the plaintiffs' claims and the court's conclusions do not rely on substantive due process." (Docket Entry No. 302 at 157). Similarly, the Fifth Circuit's analysis and suggestions recognized only procedural due process and equal protection violations. *ODonnell*, 892 F.3d at 163.

This court is not expanding the finding of the source of the constitutional right at this time. Any change in that analysis must await the evidence and findings from the permanent injunction trial that has been scheduled.

### B.   *Younger*

The defendants argue that the tentative order, particularly the necessity requirement at bail determinations, violates *Younger v. Harris*, 401 U.S. 37 (1971), because it impermissibly intrudes in state criminal proceedings. (Docket Entry No. 420 at 4). Even if the amended preliminary injunction order retained the necessity requirement, which it does not, the defendants' argument would still be unpersuasive.

*Younger* abstention is warranted when three factors are satisfied: "(1) the dispute must involve an ongoing state judicial proceeding, (2) an important state interest in the subject matter of the proceeding must be implicated, and (3) the state proceeding must afford an adequate opportunity to raise the constitutional challenge." *M.D. v. Perry*, 799 F. Supp. 2d 712, 715 n.3 (S.D. Tex. 2011) (citing *Middlesex Cty. Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (internal quotation marks omitted). This court held, and the Fifth Circuit affirmed, that the third factor is not satisfied in this case. (Docket Entry No. 125 at 37–38); *ODonnell*, 892 F.3d at 156.

In *Gerstein v. Pugh*, 420 U.S. 103 (1975), the Supreme Court held that *Younger* did not apply

18

to an injunction that "was not directed at . . . state prosecutions . . . , but only at the legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecution." *Id.* at 108 n.9; *Fuentes v. Shevin*, 407 U.S. 67, 71 n.3 (1971). This lawsuit challenges a pretrial bail system that detains misdemeanor arrestees who would be released if they paid a prescheduled or other secured bail amount. The plaintiffs do not seek "relief which would impede pending or future prosecutions on various charges in the state courts." *Pugh v. Rainwater*, 483 F.2d 778, 781 (5th Cir. 1973). A misdemeanor arrestee's detention status will not impact future criminal prosecutions, nor can it be raised as a defense in a future criminal prosecution. Because the relief sought by the plaintiffs—"the adequacy of the state court review of bail-setting procedures"—"is not properly reviewed by criminal proceedings in state court," *Younger* is inapplicable. *ODonnell*, 892 F.3d at 156–57.

## C.   *Preiser*

The defendants argue that an injunction requiring the County to release arrestees violates *Preiser v. Rodriguez*, 411 U.S. 475 (1973). (Docket Entry No. 420 at 4). The Fifth Circuit affirmed this court's holding that the defendants' *Preiser* argument was waived at the preliminary injunction stage. *ODonnell*, 892 F.3d at 157 n.3 ("The County neither mentioned *Preiser* nor pressed the habeas argument until its motion for a stay of the injunction. The closest the County came to preserving this argument was one sentence in its response to ODonnell's motion for preliminary injunction. This passing reference is insufficient to preserve the argument, especially given that it is dispositive of the case at the threshold stage."). But even if the defendants' *Preiser* argument was preserved, the amended order is consistent with it.

The defendants argue that a misdemeanor arrestee seeking release from pretrial jail "may

obtain such relief only through a petition for habeas corpus; such claims are not cognizable under 42 U.S.C. § 1983." (Docket Entry No. 420 at 5). In *Preiser*, the Supreme Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." 411 U.S. at 500. But, as this court noted in its memorandum and order denying the defendants' motion to stay, (Docket Entry No. 327), "[t]he Court has since noted that some portions of *Preiser* on which the defendants rely were 'dicta' that has turned out to be 'an unreliable, of not an unintelligible guide.'" *Id.* at 7 (citing *Heck v. Humphrey*, 512 U.S. 477, 482 (1994)). As the cases after *Preiser* have shown, "*Preiser* does not preclude all § 1983 challenges that would, if successful, cast doubt on the validity of state administrative decisions bearing on the fact or duration of state prisoners' confinement." *Serio v. Members of La. State Bd. of Pardons*, 821 F.2d 1112, 1116 (5th Cir. 1987) (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974); *Gerstein*, 420 U.S. at 107 n.6; *Greenholtz v. Inmates of Neb. Pen. & Corr. Complex*, 442 U.S. 1 (1979)).

"[C]laims that would merely enhance eligibility for accelerated release" may be brought under § 1983, while "those that would create entitlement to such relief" must be brought in a habeas action. *Serio*, 821 F.2d at 1119. Determining whether success of a § 1983 claim would "automatically terminate or shorten the period of . . . confinement" requires a court to "rigorous[ly] analy[ze] . . . the system being challenged and the types of allegations made." *Id.* at 1116–17 (quotation and citations omitted). "Distinctions must be made not only between claims seeking hearings and those seeking release, but also claims seeking to establish parole 'eligibility' rather than parole 'entitlement' and claims seeking to restore good-time credits that affect a prisoner's

entitlement to early release rather than merely his eligibility for parole consideration." *Id.* at 1117 (citations omitted).

The plaintiffs do not challenge ongoing confinement, or the validity of their arrest or their convictions.  Nor do they bring a "narrow attack[] on the procedure followed in a single hearing." *Id.* at 1118.  The plaintiffs' "broad-based attack," *id.*, challenges the "administrative policies and procedures used to set money bail on a secured basis, almost always according to a preset bail schedule, resulting in detention solely for those who cannot pay up front but who are otherwise entitled to release and allowing those who can pay to be released."  (Docket Entry No. 327 at 8).

A thorough review of the system the plaintiffs challenge, and the allegations they make, shows that the plaintiffs do not seek "entitlement" to pretrial release.  The plaintiffs challenge the automatic imposition of secured money bail without a hearing and individual assessment of ability to pay and other factors.  The relief that this court orders does not "automatically entitle one or more claimants to immediate or earlier release," but only requires that constitutionally protected procedures must be satisfied before a misdemeanor arrestee is detained before trial.  *Serio*, 821 F.2d at 1119.

More fundamentally, an arrestee who is "released" on secured money bail, on an unsecured personal bond, or without any financial condition pending trial, is still confined and retains the same status as a detained arrestee charged and standing for trial.  *Preiser*, 411 U.S. at 486 n.7 (a person "released on bail or in his own recognizance, is 'in custody' within the meaning of the federal habeas corpus statute"); *Hensley v. Mun. Court, San Jose Milpitas Judicial Dist., Santa Clara Cty., Cal.*, 411 U.S. 345, 353 (1973) (a state defendant "released on bail or on his own recognizance  pending trial . . . must still contend with the requirements of the exhaustion doctrine if he seeks habeas corpus

relief in the federal courts"); *Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 300 (1984) ("Our cases make clear that the use of habeas corpus has not been restricted to situations in which the applicant is in actual, physical custody." (citation omitted)).  Like the defendants in *Hensley* and *Lydon*, misdemeanor arrestees in Harris County who are released on secured or unsecured bond are "subject to restraints 'not shared by the public generally.'"  *Hensley*, 411 U.S. at 351; *Lydon*, 466 U.S. at 301.  They are obligated to appear at trial, and "cannot come and go as [they] please[]." *Hensley*, 411 U.S. at 351; *Lydon*, 466 U.S. at 301.  And in Texas, as in California and Massachusetts, "[d]isobedience itself is a criminal offense."  *Hensley*, 411 U.S. at 351; *Lydon*, 466 U.S. at 301; *see* TEX. PENAL CODE § 38.10 (bail-jumping and failure-to-appear charges range from Class A misdemeanors to third degree felonies).

The plaintiffs do not challenge the "fact or duration" of their confinement, but rather the "conditions" of confinement.  *Serio*, 821 F.2d at 1116. Under the amended preliminary injunction order, misdemeanor arrestees remain in confinement, whether detained or released on financial or nonfinancial conditions of release.  The plaintiffs' challenge does not seek the same type of relief afforded by habeas.  Nor does the amended preliminary injunction order grant habeas relief through the procedural vehicle of § 1983.  *Preiser* does not bar the relief the court orders.

### D.    The Eighth Amendment

The defendants argue that the relief the plaintiffs seek is available only under the Eighth Amendment. (Docket Entry No. 420 at 5).  This argument appears to be inconsistent with the Fifth Circuit's opinion.  *ODonnell*, 892 F.3d at 157 ("It is certainly true that, when a constitutional provision specifically addresses a given claim for relief under 42 U.S.C. § 1983, a party should seek to apply that provision directly. . . . But we have already concluded that "[t]he incarceration of those

22

who cannot [pay money bail], without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements." (citation omitted)).

The defendants' argument also relies on the faulty premise that "[t]he substantive relief provided by the Court's proposed injunction limits the County's ability to impose bail in excess of what arrestees can afford." (Docket Entry No. 420 at 5). The County is not limited from imposing unaffordable bail under the amended preliminary injunction order. What the County cannot do is discriminate on the basis of wealth or detain misdemeanor arrestees under an automatically imposed bail schedule without a hearing and individual assessment. The amended preliminary injunction order does not create a substantive right to "affordable bail." Rather, it requires the procedural protections that the Fifth Circuit identified as necessary to protect due process and equal protection requirements. This is not an Eighth Amendment case. (*See also* Docket Entry Nos. 125 at 24; 302 at 156).

## III.     Conclusion

For the reasons explained above, the amended preliminary injunction order is "narrowly tailor[ed] . . . to remedy the specific action which gives rise to the order." *Veneman*, 380 F.3d at 818. Consistent with the Fifth Circuit's opinion, the amended preliminary injunction order provides only procedural relief in order to remedy the equal protection and due process violations committed by the defendants.

The accompanying amended preliminary injunction order is entered by the court pursuant to its equitable power under Rule 65 of the Federal Rules of Civil Procedure. It will take effect on **July 30, 2018**. Consistent with the Fifth Circuit's guidance, the current preliminary injunction order, (Docket Entry No. 304), remains in effect and will not dissolve until the amended preliminary

injunction order takes effect.  *ODonnell*, 892 F.3d at 164, 166 (suggesting that the amended preliminary injunction order take effect within 30 days and staying vacatur of the current injunction "so as to maintain a stable status quo").

SIGNED on June 29, 2018, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge