## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| ——————————————————— | ) |  |
| MARANDA LYNN ODONNELL, et al., | ) |  |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) | No. 4:16-CV-01414 |
| v. | ) | (Consolidated Class Action) |
|  | ) | Honorable Lee H. Rosenthal |
| HARRIS COUNTY, TEXAS, et al., | ) | U.S. District Judge |
|  | ) |  |
| Defendants. | ) |  |
| ——————————————————— | ) |  |

### FOURTEEN JUDGES' MOTION FOR A PARTIAL STAY OF THE
### REVISED PRELIMINARY INJUNCTION PENDING APPEAL

Charles J. Cooper
District of Columbia Bar No. 248070
ccooper@cooperkirk.com
Michael W. Kirk
District of Columbia Bar No. 424648
William C. Marra
District of Columbia Bar No. 1019098
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
Telephone: (202) 220-9600

Sheryl A. Falk
Attorney-in-Charge
Texas State Bar No. 06795350
sfalk@winston.com
Robert L. Green
Texas State Bar No. 24087625
Corinne Stone
Texas State Bar No. 24102541
WINSTON & STRAWN LLP
1111 Louisiana St., 25th Floor
Houston, TX 77002
Telephone: (713) 651-2600

*Counsel for Defendants Fourteen Judges of Harris County Criminal Courts at Law*

July 10, 2018

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... ii

NATURE AND STAGE OF THE PROCEEDING....................................................1

STATEMENT OF THE ISSUE.............................................................................3

STANDARD OF REVIEW ..................................................................................3

SUMMARY OF ARGUMENT .............................................................................3

ARGUMENT ...................................................................................................4

I.     The Fourteen Judges Are Likely to Succeed on the Merits ............................4

       A.     The Revised Injunction Violates the Fifth Circuit's Decision and Mandate ..........4

       B.     The Revised Injunction Violates *Younger* ................................................6

       C.     The Revised Injunction Violates *Preiser* ................................................7

       D.     The Revised Injunction Violates the Eighth Amendment .....................................10

       E.     The Revised Injunction Exceeds Limitations On a Federal Court's
              Power to Enter Equitable Relief Against State Officers and Institutions .............12

       F.     The Mandatory Release of Arrestees Who Cannot Afford Bail
              Violates the Constitution.............................................................................13

       G.     The Mandatory Release of Arrestees Detained More than 48 Hours
              Violates the Constitution.............................................................................17

II.    The Fourteen Judges Will Suffer Irreparable Harm Absent a Stay, and the
       Public Interest Favors Entry of a Stay .............................................................19

III.   Plaintiffs Will Not Suffer Irreparable Harm .......................................................20

CONCLUSION.................................................................................................21

## **TABLE OF AUTHORITIES**

**Cases**                                                                                   **Page**

*Adams v. Cody*, 2016 WL 6585753 (E.D. La. Aug. 24, 2016) ....................................10

*Bice v. Louisiana Pub. Def. Bd.*, 677 F.3d 712 (5th Cir. 2012) .....................................7

*Carson v. Johnson*, 112 F.3d 818 (5th Cir. 1997).........................................................16

*County of Riverside v. McLaughlin*, 500 U.S. 44 (1991).........................................5, 15, 18

*Curry v. Fannin*, 2017 WL 6820154 (N.D. Ala. Dec. 6, 2017)....................................10

*Despain v. Johnston*, 731 F.2d 1171 (5th Cir. 1984).......................................................6

*Edwards v. Balisok*, 520 U.S. 641 (1997)........................................................................9

*Graham v. Broglin,* 922 F.2d 379 (7th Cir. 1991) .........................................................10

*Graham v. Connor*, 490 U.S. 386 (1989) .......................................................................10

*Heck v. Humphrey*, 512 U.S. 477 (1994) ......................................................................8, 9

*Lewis v. Casey*, 518 U.S. 343 (1996)..............................................................................12

*McCleskey v. Kemp*, 481 U.S. 279 (1987) ......................................................................16

*McGinnis v. Royster*, 410 U.S. 263 (1973) .....................................................................16

*Nettles v. Grounds*, 788 F.3d 992 (9th Cir. 2015)..........................................................10

*ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018)....................................*passim*

*O'Shea v. Littleton*, 414 U.S. 488 (1974) .....................................................................6, 7

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott,*
     734 F.3d 406 (5th Cir. 2013) ................................................................................19, 20

*Plyler v. Moore*, 129 F.3d 728 (4th Cir. 1997) ..............................................................10

*Preiser v. Rodriguez*, 411 U.S. 475 (1973)............................................................7, 8, 10

*Pugh v. Rainwater*, 572 F.2d 1053 (5th Cir. 1978)..........................11, 12, 14, 15, 16

*Serio v. Members of La. State Bd. of Pardons*, 821 F.2d 1112 (5th Cir. 1987).............9

*Simon v. Woodson*, 454 F.2d 161 (5th Cir. 1972)..........................................................12

*Smith v. United States Parole Comm'n*, 752 F.2d 1056 (5th Cir. 1985) .......................16

*Stack v. Boyle*, 342 U.S. 1 (1951) ....................................................................12, 15, 16

*Tarter v. Hury*, 646 F.2d 1010 (5th Cir. 1981) ..............................................................6

*United States v. McConnell*, 842 F.2d 105 (5th Cir. 1988) ...........................................12

*Veasey v. Perry*, 769 F.3d 890 (5th Cir. 2014) .............................................................19

*Washington v. Davis*, 426 U.S. 229 (1976)....................................................................16

*Wilkinson v. Dotson*, 544 U.S. 74 (2005) ........................................................................8

*Williams v. Illinois*, 399 U.S. 235 (1970) ......................................................................17

*Wood v. Collier*, 836 F.3d 534 (5th Cir. 2016) ............................................................. 3

*Younger v. Harris*, 401 U.S. 37 (1971) ......................................................................... 6

## Constitutions, Statutes, and Rules

18 U.S.C. § 3142(f)(2)(B) .............................................................................................. 19

TEX. CONST. art. I, § 11 ................................................................................................ 19

TEX. CODE CRIM. PROC.

    art. 17.03 .................................................................................................................. 20

    art. 17.03(a) .............................................................................................................. 19

    art. 17.09 .................................................................................................................. 20

    art. 17.15 .................................................................................................................. 20

    art. 17.27 .................................................................................................................. 20

Harris County Criminal Courts at Law Local Rule 4.2.3.1 ......................................... 20

## Other

3 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND ........................ 10

Pursuant to Federal Rule of Civil Procedure 62(c), Defendants Judges of Harris County Criminal Courts at Law 1–13 and 15 ("the Fourteen Judges") respectfully move for this Court to stay Sections 7, 8, 9, and 16 of its Amended Order of Preliminary Injunction (June 29, 2018), Doc. 427 ("Revised Injunction"), pending the Fourteen Judges' appeal of the revised preliminary injunction. In the alternative, we respectfully request that the Court stay Sections 7, 8, 9, and 16 of its revised preliminary injunction long enough to give us a reasonable time to prepare, and the Court of Appeals a reasonable time to consider and rule upon, a stay application submitted to that Court. We additionally seek expedited consideration of this motion.[1]

## NATURE AND STAGE OF THE PROCEEDING

On April 28, 2017, this Court entered a preliminary injunction requiring Harris County to release, within 24 hours of arrest, misdemeanor arrestees who claim they cannot afford money bail. Order of Preliminary Injunction (Apr. 28, 2017), Doc. 304. The preliminary injunction went into effect in June 2017.

On June 1, 2018, the Fifth Circuit held that the preliminary injunction "amounts to the outright elimination of secured bail for indigent misdemeanor arrestees," and that the "sweeping injunction is overbroad" and must be vacated. *ODonnell v. Harris County*, 892 F.3d 147, 163 (5th Cir. 2018). The Court held that "the equitable remedy necessary to cure the constitutional infirmities arising under [the due process and equal protection] clauses is the same: the County must implement the constitutionally-necessary procedures to engage in a case-by-case evaluation of a given arrestee's circumstances, taking into account the various factors required by Texas state

---

[1] The Fourteen Judges have conferred with the other parties concerning the relief sought in this motion. Defendants Harris County and the Five Hearing Officers do not oppose the relief sought in this motion. Plaintiffs oppose the relief sought in this motion and intend to file a response. Defendant Judge Fields is opposed to a stay but will not file a response. Defendant Sheriff Ed Gonzalez is opposed to a stay. Defendant Judge Jordan did not respond to a request for his position.

law (only one of which is ability to pay)." *Id.* The Court further held that "[t]hese procedures are: notice, an opportunity to be heard and submit evidence within 48 hours of arrest, and a reasoned decision by an impartial decisionmaker." *Id.* The Court then set forth a highly detailed model injunction that "represents the sort of modification that would be appropriate here," although the Court "le[ft] the details to the district court's discretion." *Id.* at 164.

On June 29, 2018, this Court entered a revised preliminary injunction, which will take effect on July 30, 2018. *See* Revised Injunction at 9. For purposes of this motion, the three most important features of the revised injunction are the following. *First*, although the Fifth Circuit vacated the preliminary injunction because it required Harris County to release arrestees who cannot afford secured money bail, *ODonnell*, 892 F.3d at 163, Section 7 of the revised injunction requires Harris County to release arrestees who cannot afford secured money bail, so long as they are presumptively eligible for a personal bond under local law, Revised Injunction at 4–5. *Second*, although the Fifth Circuit did not require Harris County to release arrestees who are detained for more than 48 hours without an individualized hearing, *ODonnell*, 892 F.3d at 160, 165–66, Sections 8 and 9 of the revised injunction require the County to release those arrestees, Revised Injunction at 6. *Third*, although the Fifth Circuit did not require Harris County to release *any* arrestees, much less those with a history and pattern of failing to appear in court, Section 16 of the revised injunction expressly creates a revolving door, requiring Harris County even to immediately release arrestees who meet the criteria set for release forth in Sections 7, 8, and 9 even if they had been rearrested "on misdemeanor charges … or on warrants for failing to appear while released before trial on bond (either secured or unsecured)." *Id.* at 8.

## STATEMENT OF THE ISSUE

Should this Court stay Sections 7, 8, 9, and 16 of its Revised Injunction, pending appeal of the revised preliminary injunction?

## STANDARD OF REVIEW

"In determining whether to grant a stay pending appeal, this Court weighs: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Wood v. Collier*, 836 F.3d 534, 538 (5th Cir. 2016) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)).

## SUMMARY OF ARGUMENT

This Court should stay Sections 7, 8, 9, and 16 of its revised preliminary injunction, pending appeal of the revised injunction. The Fourteen Judges are likely to succeed on the merits of their appeal because the Court's revised injunction violates the Fifth Circuit's mandate and controlling caselaw in several respects, chiefly by repeating the principal infirmity of the Court's original injunction: ordering the release of arrestees who cannot afford money bail or are not given an individualized hearing within 48 hours of arrest. The Fourteen Judges will suffer irreparable harm absent a stay, and the public interest favors a stay, because the injunction suspends the application of Texas law and threatens public safety. And a stay cannot possibly affect Plaintiffs' rights because the Fifth Circuit has already held that Plaintiffs' constitutional rights would be fully preserved pending trial *without* the release orders embodied in Sections 7, 8, 9, and 16 of the revised injunction.

## ARGUMENT

**I.      The Fourteen Judges Are Likely to Succeed on the Merits.**

**A.      The Revised Injunction Violates the Fifth Circuit's Decision and Mandate.**

The Fourteen Judges are likely to succeed on appeal because this Court's revised preliminary injunction contradicts the Fifth Circuit's opinion, model injunction, and mandate. For at least four reasons, the revised injunction goes far beyond the procedural relief that the Fifth Circuit held was cognizable at this stage and was necessary to preserve Plaintiffs' rights pending trial:

*First*, the revised injunction requires the outright release of arrestees, even though the principal infirmity with the initial preliminary injunction was that it required Harris County to release arrestees, and even though the Fifth Circuit squarely held that Plaintiffs are *not* entitled to a release order. *ODonnell*, 892 F.3d at 163. The Fifth Circuit held that the liberty interest at issue in this case—a right, under Texas law, to bail on sufficient sureties—"*does not create an automatic right to pretrial release*." *Id.* at 158 (emphasis added). Instead, the Court of Appeals held that the "constitutional deficiency in the due process and equal protection analyses is the same: the County's mechanical application of the secured bail schedule without regard for the individual arrestee's personal circumstances." *Id.* at 163. And the Fifth Circuit remanded with instructions that this Court "craft a revised injunction—one that is narrowly tailored to cure the constitutional deficiencies the district court properly identified," i.e., mechanical application of the bail schedule without an individualized assessment. *Id.* at 166–67. Sections 7, 8, 9, and 16 violate the Fifth Circuit's mandate by re-imposing an overly broad substantive release order rather than entering the narrow procedural remedy required by the mandate.

*Second*, the revised injunction grants relief in Section 7 to resolve a new claim that Plaintiffs never raised prior to the hearing on the revised preliminary injunction following the remand from the Fifth Circuit. Accordingly, Plaintiffs forfeited or waived this claim, and it thus cannot form the basis for relief now. As this Court's memorandum opinion acknowledges, Plaintiffs themselves have conceded that the relief ordered in Section 7 was not requested during the preliminary injunction stage but rather is "aimed at addressing a problem that arose after the Fifth Circuit proceedings." Memorandum and Opinion at 9 (June 29, 2018), Doc. 426 ("Opinion"); *see also* Memorandum and Opinion at 4 (June 18, 2018), Doc. 414 (conceding that "[t]he Fifth Circuit did not address" their new claim concerning arrestees identified on the bond schedule as presumptively eligible for a personal bond). New arguments cannot form the basis for relief at this preliminary injunction stage, as this Court recognized when it held that "[b]asing relief on substantive due process is improper at this stage." Opinion at 18.

*Third*, Sections 8 and 9 of the revised injunction require the County to release arrestees who are detained for 48 hours without an individualized hearing, but the Fifth Circuit's opinion and injunction do not require such release and in fact specifically contemplate that some arrestees may be detained beyond 48 hours due to exigent circumstances. *ODonnell*, 892 F.3d at 164, 166. Indeed, *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), held that arrestees do *not* have an automatic right to release if they have been detained for 48 hours without a probable cause hearing, *id.* at 57, and the Fifth Circuit here forbade "an expansion of the right already afforded detainees under the Fourth Amendment by *McLaughlin*," *ODonnell*, 892 F.3d at 160. Yet the revised injunction expands the right afforded under *McLaughlin*.

*Fourth*, although the Fifth Circuit did not authorize any injunctive relief requiring the release of any arrestee, Section 16 of the revised injunction creates a revolving door by requiring

Harris County to repeatedly release arrestees who have a proven track record of failing to appear and are rearrested "on misdemeanor charges … or on warrants for failing to appear while released before trial on bond." Revised Injunction at 8.

> **B.   The Revised Injunction Violates *Younger*.**

The Fourteen Judges are also likely to succeed in their appeal because this Court's provision of substantive rather than procedural relief violates *Younger v. Harris*, 401 U.S. 37 (1971). The Fifth Circuit's holding that there was no *Younger* problem was premised on its understanding that Plaintiffs sought only "improvement of pretrial procedures and practice" and the imposition of "nondiscretionary procedural safeguards." *ODonnell*, 892 F.3d at 156 (brackets omitted). The revised injunction, however, imposes not only procedural safeguards but also substantive relief in the form of the right to release. The Supreme Court and the Fifth Circuit have squarely held that *Younger* bars systemic challenges to the imposition of excessive bail. *O'Shea v. Littleton*, 414 U.S. 488, 491–92, 502 (1974); *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. 1981). *Tarter* specifically emphasized that *Younger* abstention applies to such claims because "the amount of bail prescribed for each criminal defendant depends on the peculiar facts and circumstances of his case," and "the setting of bail requires ad hoc decisions committed to the discretion of judges." *Tarter*, 646 F.2d at 1013. Section 7 of the revised injunction effectively strips Harris County magistrates of their discretion to consider whether the bail schedule's presumption holds in individual cases covered by Section 7, thus requiring the mechanical application of the bond schedule that the Court of Appeals condemned.

"To overcome the presumption in favor of abstention" in the face of pending state criminal proceedings, "the federal plaintiff must show that he had *no opportunity* to litigate the federal issue in state court." *Despain v. Johnston*, 731 F.2d 1171, 1178 (5th Cir. 1984) (emphasis added).

Because Plaintiffs did not attempt to bring their claims in state court, they bear the burden of establishing that they had no opportunity to do so. *Bice v. Louisiana Pub. Def. Bd.*, 677 F.3d 712, 718–19 (5th Cir. 2012). Plaintiffs have not met that burden. Nor could they: Texas law provides misdemeanor arrestees with numerous opportunities to challenge the imposition of secured money bail and the timeliness of misdemeanor bail proceedings, including at their hearings before a Hearing Officer and County Judge, and through state habeas review.

This Court stated that *Younger* does not bar the relief afforded in its revised injunction because the relief Plaintiffs seek will not "impede pending or future prosecutions." Opinion at 19. But releasing individuals on unsecured bail surely will impede pending prosecutions by lessening individuals' incentives to appear for trial. In any event, the Supreme Court has squarely rejected such a narrow view of the impact federal injunctions have on state court proceedings. Acknowledging that the relief sought in *O'Shea* was not the same as "the request for injunctive relief from an ongoing state prosecution against the federal plaintiff" at issue in *Younger*, the Supreme Court detailed at length the ways in which injunctive relief directed at pre-trial procedures would still violate the principles of comity that demand abstention. *O'Shea*, 414 U.S. at 501–02.

## C.    The Revised Injunction Violates *Preiser.*

The Fourteen Judges are also likely to succeed in their appeal because the Court's revised injunction violates *Preiser v. Rodriguez*, 411 U.S. 475 (1973), by requiring the County to release (1) arrestees who are entitled to a presumption of release on personal bond under the bond schedule but cannot afford secured money bail, and (2) arrestees who are detained for more than 48 hours before they receive an individualized hearing. *Preiser* held that a prisoner seeking release from confinement may obtain such relief only through a petition for habeas corpus; such claims are not cognizable under 42 U.S.C. § 1983. Specifically, *Preiser* held that "the writ of habeas corpus

evolved as a remedy available to effect discharge from any confinement contrary to the Constitution or fundamental law," whether "imposed pursuant to conviction" or "prior to trial." *Preiser*, 411 U.S. at 485–86. Because habeas has "been accepted as the specific instrument to obtain release from [unlawful] confinement," it displaces the general cause of action granted by Section 1983 for constitutional torts. *Id.* at 486. *See also Heck v. Humphrey*, 512 U.S. 477, 481 (1994).

This Court stated that the Fourteen Judges have waived *Preiser* by not raising the argument in response to Plaintiffs' initial preliminary injunction motion. Opinion at 19. But the Court has also acknowledged Plaintiffs' concession that the claim justifying the relief granted in Section 7 was *not* raised during the earlier preliminary injunction proceedings but rather is a new "problem that arose after the Fifth Circuit proceedings." Opinion at 9. If Plaintiffs can raise new claims in favor of new relief, we must be allowed to raise our own arguments in response, regardless of whether such arguments were advanced in response to Plaintiffs' earlier claims. Either neither party can raise new arguments, in which case the Court cannot enter the relief provided in Section 7, or both parties can raise new arguments, in which case *Preiser* bars the relief ordered in Section 7.

This Court also questioned whether *Preiser*'s rule was holding or dicta, Opinion at 20, but *Preiser*'s statement of its holding speaks for itself:

> [W]e hold today that when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.

411 U.S. at 500. The Supreme Court has reaffirmed this rule numerous times. *E.g.*, *Wilkinson v. Dotson*, 544 U.S. 74, 78, 79 (2005); *Heck*, 512 U.S. at 481. The Court reads *Heck* as calling *Preiser*'s rule into doubt, but that is not so. While the *Heck* Court declined to follow dicta in *Preiser*

discussing whether *damages* are available under Section 1983 (*contra Preiser*'s dicta, *Heck* held that in certain circumstances they would be), that issue has no relevance in this case. *Heck*, 512 U.S at 482. Indeed *Heck*, like the cases before and after it, reaffirmed *Preiser*'s central holding that "a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release" may proceed only in habeas. *Id.* at 481.

This Court also relied on the fact that Plaintiffs bring a "broad-based attack" on general rules and procedures rather than a "narrow attack on the procedure followed in a single hearing." Opinion at 21 (quotation marks and brackets omitted). But even in broad-based attacks, "resolution of the factual allegations and legal issues necessary to decide the Section 1983 claim may, in effect, automatically entitle one or more claimants to immediate or earlier release." *Serio v. Members of La. State Bd. of Pardons*, 821 F.2d 1112, 1119 (5th Cir. 1987). "Such claims must also be pursued initially through habeas corpus." *Id.*

This Court stated that *Preiser* does not bar the relief ordered in Section 7 because the Court's order "does not 'automatically entitle one or more claimants to immediate or earlier release' …." Opinion at 21. But the Court's injunction expressly requires that certain arrestees "must promptly be released." Revised Injunction at 5, 6. Indeed, although this Court similarly stated that its initial preliminary injunction did not require release, Memorandum and Order Denying Stay at 8 (May 11, 2017), Doc. 327, the Fifth Circuit disagreed and recognized that the initial preliminary injunction did in fact require "the release of numerous detainees," *ODonnell*, 892 F.3d at 155. Even to the extent that the relief ordered in Section 7 can properly be characterized as "procedural," that does not remove it from *Preiser*'s ambit, because the relief ordered in Section 7 "necessarily impl[ies] the invalidity of" the detention because it requires the release of certain individuals. *See Edwards v. Balisok*, 520 U.S. 641, 646–47 (1997).

Finally, the Court pointed out that individuals released on bail are still confined for purposes of the habeas statute. Opinion at 21–22. But habeas is the exclusive remedy for claims seeking "release" from confinement due to inability to pay bail. *See, e.g.*, *Curry v. Fannin*, 2017 WL 6820154, at *4 (N.D. Ala. Dec. 6, 2017), *report and recommendation adopted,* 2018 WL 317710 (N.D. Ala. Jan. 8, 2018); *see also Plyler v. Moore*, 129 F.3d 728, 733 (4th Cir. 1997); *Graham v. Broglin,* 922 F.2d 379, 381 (7th Cir. 1991); *Adams v. Cody*, 2016 WL 6585753 (E.D. La. Aug. 24, 2016); 3 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND *133 ("[T]he court upon an *habeas corpus* may examine into [the] validity [of every commitment]; and *according to the circumstances of the case may* discharge, *admit to bail,* or remand the prisoner."). Indeed, claims seeking release of any sort, even if only into a "different form of custody," are barred by *Preiser*. 411 U.S. at 486 & n.7; *see also Nettles v. Grounds*, 788 F.3d 992, 998 (9th Cir. 2015), *on reh'g en banc,* 830 F.3d 922 (9th Cir. 2016).

**D.    The Revised Injunction Violates the Eighth Amendment.**

The Fourteen Judges are also likely to succeed in their appeal because the revised injunction's provisions ordering the release of arrestees is available only, if at all, under the Eighth Amendment, but Plaintiffs have not brought an Eighth Amendment claim. As Plaintiffs have conceded, their claims for substantive relief are "materially identical" to an Excessive Bail claim under the Eighth Amendment. Brief for Appellees at 30, No. 17-20333 (5th Cir. Aug. 2, 2017). When a plaintiff's claim falls within a specific "source[ ] of constitutional protection against … governmental conduct," the "claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized … standard" fashioned from the Fourteenth Amendment. *Graham v. Connor*, 490 U.S. 386, 394 (1989).

This Court suggested that our argument under the Eighth Amendment "appears to be inconsistent with the Fifth Circuit's opinion." Opinion at 22. But the Fifth Circuit held that Plaintiffs' claims relevant to the preliminary injunction did not have to be brought under the Eighth Amendment only because *Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978) (en banc), held that those who cannot afford money bail may not be detained "without meaningful consideration of other possible alternatives"—i.e., without sufficient *procedural* protections. *ODonnell*, 892 F.3d at 157. Even if the Eighth Amendment does not bar requests for *procedural* relief, it does bar requests for *substantive* relief. An order of release, of course, provides substantive relief because it does not condition the deprivation of liberty on Harris County's provision of certain procedures but rather automatically entitles the specified arrestees to be released.

This Court also suggested that the relief afforded in the revised preliminary injunction is not barred by the Eighth Amendment because "[t]he County is not limited from imposing unaffordable bail under the amended preliminary injunction order," but rather that "[w]hat the County cannot do is discriminate on the basis of wealth or detain misdemeanor arrestees under an automatically imposed bail schedule without a hearing and individual assessment." Opinion at 23. To the extent the Court required only "a hearing and individual assessment," *id.*, the Eighth Amendment does not bar this relief—but the revised injunction additionally requires release.

The Court's revised injunction acknowledges that the purpose of Section 7 is to address alleged wealth-based discrimination, i.e., "the problem of misdemeanor arrestees who are not able to pay secured money bail from being detained longer than those able to pay secured money bail before receiving a hearing and individual assessment in accordance with Section (6)." Revised Injunction at 5. The Eighth Amendment forecloses relief based on this supposed "problem" because the Eighth Amendment provides that this is not a constitutional problem at all. The reason

is straightforward. The Supreme Court has upheld "the modern practice of requiring a bail bond or the deposit of a sum of money subject to forfeiture serves as additional assurance of the presence of an accused." *Stack v. Boyle*, 342 U.S. 1, 5 (1951). The use of secured money bail is therefore constitutional. Moreover, the Fifth Circuit has already held that it is constitutional for government to impose bail in excess of what arrestees can afford, *see, e.g.*, *United States v. McConnell*, 842 F.2d 105, 107 (5th Cir. 1988); *Simon v. Woodson*, 454 F.2d 161, 166 (5th Cir. 1972), and it has upheld the use of bail schedules that include secured financial conditions of release, *Rainwater*, 572 F.2d at 1057. Because, in any money bail system, some but not all arrestees will be able to afford bail, the Eighth Amendment *necessarily contemplates and permits* circumstances where arrestees who post bail are released while those who cannot post bail are not released. Plaintiffs' claims thus depend upon finding constitutional infirmity with a practice that the Eighth Amendment permits, and it is therefore barred under *Graham*.

### E.   The Revised Injunction Exceeds Limitations On a Federal Court's Power to Enter Equitable Relief Against State Officers and Institutions.

The Fourteen Judges are also likely to succeed in their appeal because, by providing greater relief than what the Fifth Circuit held was necessary to cure the constitutional violations, the revised injunction transgresses the Constitution's limitations on a federal court's power to enter equitable relief against State officers and institutions. Injunctions against state or local governments "must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Lewis v. Casey*, 518 U.S. 343, 357 (1996). *See also* Opinion at 7.

The Fifth Circuit held that the "equitable remedy necessary to cure the constitutional infirmities arising under both [the Due Process and Equal Protection] clauses" consists only of procedures, i.e., "notice, an opportunity to be heard and submit evidence within 48 hours of arrest, and a reasoned decision by an impartial decisionmaker." *ODonnell*, 892 F.3d at 163. The revised

injunction, however, goes beyond that procedural relief, particularly by requiring the release of certain arrestees who cannot afford bail and arrestees who do not receive a hearing within 48 hours of arrest. By providing relief beyond that which the Fifth Circuit has ruled is necessary to cure the constitutional violations, this Court "abuses its discretion" by "issu[ing] an injunction that 'is not narrowly tailored to remedy the specific action which gives rise to the order as determined by the substantive law at issue.' " *Id.* at 155 (quoting *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016)).

F.     **The Mandatory Release of Arrestees Who Cannot Afford Bail Violates the Constitution.**

Section 7 of this Court's revised injunction requires Harris County to release arrestees who are presumptively entitled to a personal bond but do not post secured money bail to secure their release prior to an individualized hearing. Section 16 makes clear that this relief applies even to individuals who are arrested after failing to appear for an outstanding charge. This release order is invalid, not only for the reasons already discussed, but also because the release order fails on the merits.

The release order cannot be justified under substantive due process because this Court has acknowledged that "[b]asing relief on substantive due process is improper at this stage." Opinion at 18. The Fifth Circuit unambiguously held that no "fundamental substantive due process right to be free from any form of wealth-based detention … is in view," and injunctive relief granting release of indigent misdemeanor defendants is "overbroad." *ODonnell*, 892 F.3d at 163.

The release order also cannot be justified under procedural due process, because that constitutional guarantee requires only procedures, not a substantive right to release. Moreover, the only liberty interest cognizable at this stage is the liberty interest, created under Texas law, to "a right to bail on 'sufficient sureties.' " *Id.* at 158. This right, the Fifth Circuit held, "*does not create*

*an automatic right to pretrial release*." *Id.* (emphasis added). This Court's decision, however, creates such an automatic right to pretrial release.

Nor can the release order be justified under equal protection principles. As this Court has acknowledged, Opinion at 2, the Fifth Circuit recognized only one equal protection violation at this stage, i.e., the "lack of individualized assessment and mechanical application of the secured bail schedule." *ODonnell*, 892 F.3d at 163. The Fifth Circuit's model injunction was thus narrowly tailored to address this problem by requiring procedural protections to ensure individualized assessment. The revised injunction, however, addresses a new and entirely different claim, i.e., the alleged "problem of misdemeanor arrestees who are not able to pay secured money bail from being detained longer than those able to pay secured money bail before receiving a hearing and individual assessment ...." Revised Injunction at 5. And the Court has acknowledged that "[t]he Fifth Circuit did not address" this problem, Memorandum and Opinion at 4 (June 18, 2018), Doc. 414; *see also* Opinion at 8–9, but the Fifth Circuit's narrow mandate required this Court to enter a revised preliminary injunction "that is narrowly tailored to cure the constitutional deficiencies" that this Court had found (i.e., the mechanical application of the bail schedule without individual assessment), *ODonnell*, 892 F.3d at 166.

This Court nevertheless suggested that the release order is justified by the Equal Protection Clause because arrestees "who are able to pay the initial secured bail amounts, are released before their hearing and individual assessment, while the misdemeanor arrestees who are not able to pay initial bail amounts are detained until a hearing and individual assessment, up to 48 hours after arrest." Opinion at 10–11. But any claim based on this feature of Harris County's bond schedule is foreclosed by *Rainwater*. The en banc Court of Appeals upheld the constitutionality of bail schedules that permit "speedy and convenient release for those who have no difficulty in meeting[ ]

its requirements." 572 F.2d at 1057. The *Rainwater* Court was untroubled by the brief detention of arrestees who *do* have "difficulty in meeting[ ] its requirements," requiring only "meaningful consideration of other possible alternatives" for those who cannot afford money bail. *Id.* And *McLaughlin*, 500 U.S. at 57, and *ODonnell*, 892 F.3d at 160, establish that the County has, at a minimum, 48 hours after arrest to provide the individualized assessment, during which the arrestee may be detained.

The Court's equal protection rationale also proves too much, as the Court acknowledged at the June 14 hearing. At that hearing, counsel for Plaintiffs argued for the first time that the Court could require the automatic release of arrestees who are entitled to a presumption of personal bond but who cannot afford money bail. Hearing Tr. at 17. The Court, however, correctly recognized that this argument "would seem, if you push on it not very hard, to say nobody can be subjected to secured money bail, and that is not what the Fifth Circuit said I could do." *Id.* at 18:7–10. In other words, the claimed equal protection violation that forms the basis for the immediate release of those presumptively eligible for release would necessarily justify the release of *all* arrestees, but "that is not what the Fifth Circuit said [this Court] could do." *Id.*

Nor can the County's designation of arrestees in seven specified categories as "presumptively" eligible for personal bonds justify automatic release. Presumptive is not the same as conclusive, and after individualized review, some significant portion of arrestees in these categories are determined to be ineligible for a personal bond. And as just noted, the Fifth Circuit held that Harris County is entitled to 48 hours to provide the required individualized assessment to decide whether the presumption holds in each particular case. The Court was thus mistaken when it asserted that Harris County has "already determined" that the arrestees at issue here are "eligible for release on a personal bond …." Opinion at 3. These arrestees have been "admitted to

bail," but they do not have a "right to release" unless they first provide sufficient sureties. *Stack*, 342 U.S. at 1.

The equal protection argument fails for several other reasons too. First, the Eighth Amendment permits the supposed discrimination underlying the relief order in Section 7, and the Fourteenth Amendment cannot be used to overrule the Eighth. Second, any difference in treatment between those who can and cannot afford money bail is simply a *disparate impact* of a facially neutral policy, and disparate impact alone cannot give rise to liability under the Equal Protection Clause. *See, e.g.*, *Washington v. Davis*, 426 U.S. 229, 239 (1976). Third, even if ODonnell's disparate impact claim were cognizable, only rational basis review applies, because "[n]either prisoners nor indigents constitute a suspect class," *Carson v. Johnson*, 112 F.3d 818, 821–22 (5th Cir. 1997), and arrestees do not have a fundamental right to pretrial release without first "giving adequate assurance" and posting sufficient surety that they will stand trial, *Stack*, 342 U.S. at 4; *Rainwater*, 572 F.2d at 1057. Fourth, binding precedent requires the application only of rational basis review to an indigent's equal protection challenge to a statute that resulted in the prolonged detention on account of inability to afford bail. *See, e.g.*, *McGinnis v. Royster*, 410 U.S. 263, 270 (1973); *Smith v. United States Parole Comm'n*, 752 F.2d 1056, 1058–59 (5th Cir. 1985). Fifth, under rational basis review, Plaintiffs cannot make an adequate showing to justify the release of misdemeanor arrestees who claim they cannot afford money bail, particularly in light of the alarming failure-to-appear rates that have resulted from this Court's preliminary injunction. *See, e.g.*, Declaration of Ed Wells (June 11, 2018), Doc. 402-5 ("Wells Decl."). Sixth, the jurisdiction-wide proof of failure-to-appear rates that Plaintiffs have relied upon is legally insufficient to prove discrimination in any particular case, *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987), and thus it cannot justify the release of any individual arrestee.

The Constitution does not require the abolition of money bail—a liberty *promoting* device fought for since the days of Magna Carta—simply because not everyone can afford to provide money bail as sufficient sureties for his or her release. Nor does the Constitution require that those who *can* provide sufficient sureties in the form of secured money bail must sit in jail for some period of time to create an "equality" with those who cannot afford money bail or otherwise provide sufficient sureties.

Indeed, the revised injunction itself raises a serious question under the Equal Protection Clause. The revised injunction expressly treats arrestees differently according to wealth, requiring that (1) arrestees in the seven presumptive personal bond categories who cannot pay the amount of bail corresponding to their dangerousness and flight risk must be promptly released, while (2) otherwise similarly situated arrestees in the same seven categories who are able to pay remain detained unless and until someone posts bond on their behalf. Revised Injunction at 5–6. To borrow the Supreme Court's language from another context, such an injunction codifies "inverse discrimination since it would enable an indigent to avoid both the [bond amount] and [detention] for nonpayment whereas other defendants" must pay bond or be detained. *Williams v. Illinois*, 399 U.S. 235, 244 (1970).

### G. The Mandatory Release of Arrestees Detained More than 48 Hours Violates the Constitution.

Sections 8 and 9 of the revised injunction require that the County release arrestees who have not been given an individualized hearing within 48 hours of arrest. Section 16 makes clear that this relief applies even to individuals who are arrested after failing to appear for an outstanding charge. In addition to being impermissible for the reasons already discussed, this release order fails on the merits.

*McLaughlin* holds that arrestees have a right to a probable cause hearing soon after arrest, and that "judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*." *McLaughlin*, 500 U.S. at 56. *McLaughlin* then specifically considered the relief that should obtain if a hearing is not held within 48 hours of arrest, and it did *not* require release. Instead, "[w]here an arrested individual does not receive a probable cause determination within 48 hours, … the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." *Id.* at 57. And even then, *McLaughlin* did not suggest that the failure to demonstrate extraordinary circumstance somehow required *automatic release*. *See id.*

This Court suggested that the Fifth Circuit was "silent as to whether misdemeanor arrestees who have not received a [timely] hearing and individual assessment must continue to be detained." Opinion at 12. To the contrary, the Fifth Circuit made clear that these arrestees cannot be released. The Fifth Circuit emphasized that "*McLaughlin* explicitly included bail hearings within this [48 hour] deadline." *ODonnell*, 892 F.3d at 160. And the Court then specifically held that it would *not* adopt "an expansion of the right already afforded detainees under the Fourth Amendment by *McLaughlin*." *Id.* Indeed, the Fifth Circuit's reporting requirement contemplates the practical reality that some arrestees might be detained without a hearing beyond 48 hours of arrest, for it requires reporting to this Court "of misdemeanor defendants identified above for whom a timely individual assessment has not been held," and it further states that "*[a] pattern* of delays might warrant further relief from the district court." *Id.* at 166 (emphasis added). This Court's release order thus violates the constitutional rules set forth in *McLaughlin* and the Fifth Circuit's decision in this case. Indeed, if the Constitution requires release whenever a hearing is not held at the 48-

hour mark, then the Bail Reform Act unconstitutional, for that statute permits pretrial detention for up to five days or more before a detention hearing is held. 18 U.S.C. § 3142(f)(2)(B).

## II.    The Fourteen Judges Will Suffer Irreparable Harm Absent a Stay, and the Public Interest Favors Entry of a Stay.

The equities favor granting the requested relief for at least three reasons. *First*, Sections 7, 8, 9, and 16 of the revised injunction threaten public safety and the orderly administration of justice. These provisions of the revised injunction order the release of certain arrestees without any review or individualized assessment by a magistrate. Since the preliminary injunction has taken effect, 44.65% of arrestees released on unsecured bonds pursuant to the preliminary injunction have had bonds forfeited for failure to appear, compared to only 9.85% of arrestees who provided a secured money bond. Wells Decl., tbl. 1. These failure-to-appear rates make it more difficult for Harris County to bring criminals to justice, they undermine the County's ability to operate a functioning criminal justice system, and they endanger public safety.

*Second*, Sections 7, 8, 9, and 16 of the revised injunction unnecessarily enjoin the enforcement of state law, and "[w]hen a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013); *see also Veasey v. Perry*, 769 F.3d 890, 895 (5th Cir. 2014). The revised preliminary injunction enjoins the enforcement of Texas law in many ways, chiefly in the following ways:

- The Texas Constitution requires that arrestees for non-capital offenses "shall be bailable by sufficient sureties." TEX. CONST. art. I, § 11. This constitutional guarantee "does not create an automatic right to pretrial release." *ODonnell*, 892 F.3d at 158. However, the revised injunction creates an automatic right to release that is forbidden under Texas law.

- Texas law grants Hearing Officers and County Judges discretion to determine whether bail shall be secured or unsecured. TEX. CODE CRIM. PROC. art. 17.03(a). The injunction overrides this provision by requiring outright release on unsecured bond.

- Texas law requires Hearing Officers and County Judges to set bail by "taking into account the various factors required by Texas state law (only one of which is ability to pay)." *ODonnell*, 892 F.3d at 163; *see also* TEX. CODE CRIM. PROC. art. 17.15; Harris County Criminal Courts at Law Local Rule 4.2.3.1. Again, the injunction overrides these provisions by requiring release.

- Texas law permits bail in excess of what an arrestee can afford, because it provides that if the required "security be not given, the magistrate shall make an order committing the accused to jail to be kept safely until legally discharged." TEX. CODE CRIM. PROC. art. 17.27; *see also id.* art. 17.09. But the injunction prohibits, for many arrestees, bail in excess of what the arrestee can afford.

- Under Texas law, a personal bond may be issued only by a magistrate who determines, in the exercise of his or her judicial discretion, that the personal bond provides sufficient sureties that the arrestee will appear at trial and will not threaten public safety while at large. *See* TEX. CODE CRIM. PROC. art. 17.03. But the revised injunction requires the County to release arrestees on a personal bond even if a magistrate has not determined that the personal bond provides sufficient sureties.

*Third*, a stay of the injunction pending appeal will protect the public interest. "As the State is the appealing party, its interest and harm merges with that of the public." *Planned Parenthood*, 734 F.3d at 419. Accordingly, the public interest favors an order staying Sections 7, 8, 9, and 16 of the Court's preliminary injunction.

## III.   Plaintiffs Will Not Suffer Irreparable Harm.

Granting a stay of Sections 7, 8, 9, and 16 of the revised preliminary injunction will not prejudice the Plaintiff Class. The Fifth Circuit has already held that procedural relief in the form of individualized consideration fully "cure[s] the constitutional infirmities arising under [the due process and equal protection] clauses" in this case, and the Court's model injunction included no provisions requiring the release of any arrestee. *ODonnell*, 892 F.3d at 163. Accordingly, the Plaintiff Class cannot possibly suffer any prejudice if this Court places those class members exactly where the Fifth Circuit has held they are entitled to be pending a trial on the merits.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court stay Sections 7, 8, 9, and 16 its Revised Injunction pending appeal. In the alternative, we respectfully request that the Court stay Sections 7, 8, 9, and 16 of its revised preliminary injunction long enough to give the Fourteen Judges a reasonable time to prepare, and the Court of Appeals a reasonable time to consider and rule upon, a stay application submitted to that Court. We also respectfully request that the Court consider this motion on an expedited basis.


Date: July 10, 2018                                      Respectfully submitted,

*/s/ Charles J. Cooper*                                  */s/ Sheryl A. Falk*
Charles J. Cooper                                        Sheryl A. Falk
District of Columbia Bar No. 248070                      Attorney-in-Charge
ccooper@cooperkirk.com                                   Texas State Bar No. 06795350
Michael W. Kirk                                          sfalk@winston.com
District of Columbia Bar No. 424648                      Robert L. Green
William C. Marra                                         Texas State Bar No. 24087625
District of Columbia Bar No. 1019098                     Corinne Stone
COOPER & KIRK, PLLC                                      Texas State Bar No. 24102541
1523 New Hampshire Ave., NW                              WINSTON & STRAWN LLP
Washington, D.C. 20036                                   1111 Louisiana St., 25th Floor
Telephone: (202) 220-9600                                Houston, TX 77002
                                                         Telephone: (713) 651-2600

*Counsel for Defendants Fourteen Judges of Harris County Criminal Courts at Law*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 10, 2018, I electronically filed the foregoing document with the Clerk of Court through the CM/ECF system for service this day via transmission of Notice of Electronic Filing generated by ECF to all counsel of record.

_/s/ Charles J. Cooper_
Charles J. Cooper
