United States District Court
Southern District of Texas

**ENTERED**

July 27, 2018

David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MARANDA LYNN ODONNELL, *et al.*, | § | |
| On behalf of themselves and all others | § | |
| similarly situated, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. H-16-1414 |
| VS. | § | |
| | § | |
| HARRIS COUNTY, TEXAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER DENYING MOTION TO STAY**

Fourteen Harris County Criminal Court at Law Judges—Paula Goodhart, Bill Harmon, Natalie C. Fleming, John Clinton, Margaret Harris, Larry Standley, Pam Derbyshire, Jay Karahan, Analia Wilkerson, Dan Spjut, Diane Bull, Robin Brown, Don Smyth, and Jean Hughes (Jean Spradling)—are appealing this court's Amended Preliminary Injunction Order issued on June 29, 2018. (Docket Entry No. 434). That Order, (Docket Entry No. 427), was issued with a Memorandum and Opinion, (Docket Entry No. 426), setting out the court's reasons for the rulings.

The fourteen County Judges now ask the court to stay enforcement of Sections (7), (8), (9), and (16) of the Amended Preliminary Injunction Order during the appeal. (Docket Entry No. 435 at 5). Alternatively, the fourteen County Judges ask the court to stay Sections (7), (8), (9), and (16) pending a ruling on the stay application by the Fifth Circuit. *Id.* Harris County and the five Hearing Officers do not oppose the relief sought by the fourteen County Judges. *Id.* at n.1. Judge Michael Fields, Sheriff Ed Gonzales, and the plaintiffs oppose a stay. *Id.* Judge Darrell Jordan's position is unknown. *Id.* The fourteen County Judges ask the court to consider their stay motion on an expedited basis. *Id.* at 1. The court agreed, and ordered the plaintiffs to accelerate their response,

1

which they did.  (Docket Entry Nos. 438, 446).

This case presents difficult issues and a complex combination of lofty jurisprudential and constitutional questions with intensely practical concerns.  The issues, questions, and concerns have been ably presented, thoroughly examined and analyzed by this court, and reviewed twice on appeal, with one opinion.  The fourteen County Judges have not made a strong showing that they are likely to succeed on the merits of their current appeal.  The plaintiffs, in contrast, have shown that the harm to them from staying Sections (7), (8), (9), and (16) of the Amended Preliminary Injunction Order would be far greater than the harm to the defendants if the stay is denied.

Based on the motion and response, the record, and the applicable law, the court denies the motion to stay.  The reasons for this ruling are explained in detail below.

## I.      The Legal Standard

A court may stay an order pending appeal under Rule 8 of the Federal Rules of Appellate Procedure and Rule 62 of the Federal Rules of Civil Procedure.  *See* 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2902 (3d ed. 2012) ("A party who prefers to appeal can file a notice of appeal and seek a stay pending appeal as provided in Rule 62(c) and (d) and in Appellate Rule 8(a) and (b). . . . [T]he trial court, under Rule 62(c), and the appellate court, under Rule 62(g), have ample power to make whatever order is appropriate in injunction cases . . . .); *see also* FED. R. APP. P. 8(a)(1)(A) ("A party must ordinarily move first in the district court for the following relief: a stay of the judgment or order of a district court pending appeal.").

"'A stay is not a matter of right, even if irreparable injury might otherwise result.'  It is instead an exercise of judicial discretion, and the 'party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.'"  *Ind. State Police Pension*

*Tr. v. Chrysler, LLC*, 556 U.S. 960, 961 (2009) (quoting *Nken v. Holder*, 556 U.S. 418, 427 (2009));
*see* 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND
PROCEDURE § 2902 (3d ed. 2012) ("[T]he court should not grant a stay in these cases as a matter of
course but should consider carefully the harm that a stay might cause to the party who has obtained
the judgment and balance this against the harm that denial of a stay would cause to the losing
party."). "A stay is an 'intrusion into the ordinary processes of administration and judicial
review . . . . The parties and the public, while entitled to both careful review and a meaningful
decision, are also generally entitled to the prompt execution of orders . . . ." *Nken*, 556 U.S. at 427
(quoting *Va. Petrol. Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958) (per
curiam)).

A court decides whether to grant a stay pending appeal based on: "(1) whether the stay
applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the
applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially
injure the other parties interested in the proceeding; and (4) where the public interest lies." *Chafin
v. Chafin*, 133 S. Ct. 1017, 1027 (2013) (quoting *Nken*, 556 U.S. at 434); *Moore v. Tangipahoa
Parish Sch. Bd.*, 507 F. App'x 389, 392 (5th Cir. 2013) (per curiam) (quoting *Hilton v. Braunskill*,
481 U.S. 770, 776 (1987)). "The first two factors of the . . . standard are the most critical." *Nken*,
556 U.S. at 434.

The movants have the burden to satisfy all four factors. *See Ruiz v. Estelle*, 666 F.2d 854,
856 (5th Cir. 1982). The movants must make "a strong showing that [they are] likely to succeed on
the merits." *Moore*, 507 F. App'x at 392–93 (quoting *Hilton*, 481 U.S. at 776). This need not
"always show a 'probability' of success on the merits," *Ruiz*, 650 F.2d at 565, "instead, the movant
need only present a substantial case on the merits when a serious legal question is involved and

show that the balance of the equities weighs heavily in favor of granting the stay." *Id.*; *see also Nken*, 556 U.S. at 434 (the movant must show "[m]ore than a mere possibility of relief"); *Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 23 (5th Cir. 1992) ("[P]resentation of a substantial case is only the threshold requirement.  That threshold step alone is not sufficient. . . .  [A] 'serious legal question' . . . [and] demonstrat[ing] a heavy weight of equity in favor of the stay [is also required].").

## II.   Analysis

### 1.   The Movants Have Not Made A Strong Showing That They Are Likely To Succeed On The Merits Of Their Appeal

The fourteen County Judges argue that they are likely to succeed on appeal on six grounds: (a) the Amended Preliminary Injunction Order violates *Younger v. Harris*, 401 U.S. 37 (1971); (b) the Order violates *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); (c) the Order violates the Eighth Amendment; (d) the Order exceeds the limit on a federal court's power to enter equitable relief against state officers and institutions; (e) Section (7) cannot be constitutionally justified; and (f) Sections (8) and (9) violate *McLaughlin* and the Fifth Circuit's June 1, 2018 opinion in this case. (Docket Entry No. 435 at 8–23).  None of these arguments sufficiently show a likelihood of success on the merits.  Each is addressed in turn.

#### a.   *Younger*

The fourteen County Judges argue that the Amended Preliminary Injunction Order violates *Younger v. Harris*, 401 U.S. 37 (1971), and subsequent cases because it imposes "substantive" relief in the form of a right to pretrial release.  (Docket Entry No. 435 at 8).  The County Judges argue that Section (7) "strips Harris County magistrates of their discretion to consider whether the bail schedule's presumption holds in individual cases covered by Section (7)." *Id.*; *Tarter v. Hury*, 646 F.2d 1010 (5th Cir. 1981).

4

The County Judges' position rests on two incorrect premises.  First, the Amended Preliminary Injunction Order does not create or impose a right to release from pretrial detention.  Rather, it prohibits detention solely on the basis of wealth.  This is not a distinction without a difference.  A system detaining all misdemeanor arrestees until a hearing and individual assessment before a magistrate within 48 hours of arrest would not violate the Equal Protection Clause.  But a system allowing the release of only misdemeanor arrestees who can pay a prescheduled or other secured bail amount, and detaining those who cannot, without a hearing or individual hearing, violates equal protection.  *ODonnell v. Harris County*, 892 F.3d 147, 163 (5th Cir. 2018).

Second, the Amended Preliminary Injunction Order does not limit, and has no bearing on, the Harris County magistrates' discretion to determine whether a presumption of release applies to those who fall within Section (7).  Section (7) requires the release of a narrowly defined group of qualifying misdemeanor arrestees.  Harris County's bail rules, not this court, have defined that group.  But even as to this limited group, at the hearing and individual assessment, the magistrate is fully empowered to exercise the discretion needed to decide whether detention is required to provide sufficient sureties.  That term is defined to include "both the misdemeanor arrestee's interest in pretrial freedom and the County's interest in reasonably assuring appearance at hearings and trial and the absence of new criminal activity."  (Docket Entry No. 427 at 2).

Section (7) states: "The County may require misdemeanor arrestees who are released on unsecured personal bonds under this Section to return for a hearing and individual assessment under Section (6), within 48 hours of arrest or at a later time, but the County cannot detain those arrestees until a hearing and individual assessment have been held in accordance with Section (6)."  (Docket Entry No. 427 at 5).  Misdemeanor arrestees who fall within Section (7) are released precisely because a magistrate has not yet determined whether, and on what terms, release is appropriate,

5

based on a hearing and individual assessment.  As the court clarified, the Sheriff is authorized to issue unsecured bonds under Sections (7) and (8).  (Docket Entry No. 443 at 1–2).  At the point of the hearing and individual assessment, the Amended Preliminary Injunction Order does not require the continued release of those who were detained because of their indigence.

The County Judges are correct that *Tarter* held that *Younger* bars injunctions against bail in excess of what misdemeanor arrestees can afford, which "would require a federal court to reevaluate de novo each challenged bail decision." *Tarter*, 646 F.2d at 1013 ("Because the amount of bail prescribed for each criminal defendant depends on the peculiar facts and circumstances of his case, the setting of bail requires ad hoc decisions committed to the discretion of judges.").  But the Amended Preliminary Injunction Order does not address bail-amount-decisions.  Rather, it enjoins the County from using a preset bail schedule to detain misdemeanor arrestees who cannot pay, while releasing those who can, solely on the basis of poverty, without considering each misdemeanor arrestee's "peculiar facts and circumstances," and without providing each misdemeanor arrestee with the constitutionally required procedural protections.  The bail-amount determinations are squarely kept within the discretion of the court, judge, magistrate, or officer taking the bail.  TEX. CRIM. PROC. CODE § 17.15.  The bail decision is made only for indigent misdemeanor arrestees who would be promptly released from detention if they had the means to pay, and only until a hearing and individual assessment.

The injunction does not require the federal court to evaluate individual bail decisions.  Rather, it requires Harris County to ensure that bail is not being used systematically to detain misdemeanor arrestees on the basis of wealth.  *ODonnell*, 892 F.3d at 156 ("The injunction sought by ODonnell seeks to impose 'nondiscretionary procedural safeguard[s],' which will not require federal intrusion into pre-trial decisions on a case-by-case basis." (quoting *Tarter*, 646 F.2d at

1013–14)).

The County Judges argue that the plaintiffs fail to overcome *Younger*'s presumption of abstention because the plaintiffs could have brought their claims in state court.  (Docket Entry No. 435 at 10–11).  The defendants are incorrect.  This court held, and the Fifth Circuit affirmed, that the relief the plaintiffs seek—"the improvement of pretrial procedures and practice" and "the adequacy of the state court review of bail-setting procedures"—is "not properly reviewed by criminal proceedings in state court."  *ODonnell*, 892 F.3d at 156–57.  Because "[t]he injunction [is] not directed at . . . state prosecutions," but instead at the legality of a pretrial bail system that detains misdemeanor arrestees who would be released if they were able to pay a secured bail amount, state criminal court is not an adequate venue in which the plaintiffs can raise their constitutional challenges.  *Gerstein v. Pugh*, 420 U.S. 103, 108 n.9 (1975).

The County Judges also argue that releasing misdemeanor arrestees on unsecured bond will impede pending prosecutions by "lessening individuals' incentives to appear for trial."  (Docket Entry No. 435 at 11).  The County Judges do not cite cases to support that argument, and the record does not support their alarmist description.  The Amended Preliminary Injunction Order does not prevent setting secured bail if it is necessary to provide sufficient sureties, including the County's interest in reasonably assuring appearance at hearings and trial and the misdemeanor arrestee's interest in pretrial liberty.  To the extent that the County Judges are concerned that misdemeanor arrestees may fail to appear at a hearing or individual assessment, that concern is mitigated by the fact that unsecured bonds routinely have nonfinancial conditions attached to encourage attendance at hearings and trial.  (Docket Entry No. 443 at 1).  For those misdemeanor arrestees with no money or assets, the threat of bond forfeiture and a judgment for the full bond amount provide little by way of meaningful incentive.  The fact that there is an ongoing dispute between the parties on the

efficacy of unsecured bonds to secure reappearance does not make it more likely that the County Judges will succeed on the merits.

The County Judges rely on *O'Shea v. Littleton*, 414 U.S. 488 (1974), to argue that injunctive relief directed at pretrial procedures violates principles of comity and warrants abstention. (Docket No. 435 at 11). This argument is unpersuasive. Enforcing the injunction contemplated in *O'Shea* would have required "the continuous supervision by the federal court over the conduct of the petitioners in the course of future criminal trial proceedings . . . ." *O'Shea*, 414 U.S. at 501; *id.* at 500 ("Apparently the order would contemplate interruption of state proceedings to adjudicate assertions of noncompliance by petitioners. This seems to us nothing less than an ongoing federal audit of state criminal proceedings . . . ."). The concerns about the contemplated injunction in *O'Shea* do not apply to the Amended Preliminary Injunction Order. As the Fifth Circuit held, the relief ordered "will not require federal intrusion into pre-trial decisions on a case-by-case basis. . . . Such relief does not implicate our concerns for comity and federalism." *ODonnell*, 892 F.3d at 156–57.

### b.    *Preiser*

The fourteen County Judges argue that they are likely to succeed in their appeal because the Amended Preliminary Injunction Order violates *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). (Docket Entry No. 435 at 7). The argument is unpersuasive.[1] Their argument conflates release from postarrest confinement, as ordered by the Amended Preliminary Injunction Order, and release from custody, which is the "traditional function of the writ" of habeas corpus. *Preiser*, 411 U.S. at 484.

---

[1] The plaintiffs note that they will argue in their summary judgment reply brief that the defendants' "failure to raise the *Preiser* defense . . . waives the argument for the entire case . . . ." (Docket Entry No. 446 at 10). The court does not need to address the waiver issue at this time because the argument fails on its merits.

The ordered relief grants the first, not the second.

In *Preiser*, the Supreme Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Id.* at 500.  Physical imprisonment is not limited to custody behind bars.  "In 1963, the Court held that a prisoner released on parole from immediate physical confinement was nonetheless sufficiently restrained in his freedom as to be in custody for purposes of federal habeas corpus." *Id.* at 486 n.7 (citing *Jones v. Cunningham*, 371 U.S. 236 (1963)).  A person who "is released on bail or on his own recognizance[] is 'in custody' within the meaning of the federal habeas corpus statute." *Id.*; *Hensley v. Mun. Court, San Jose Milpitas Judicial Dist., Santa Clara Cty., Cal.*, 411 U.S. 345, 353 (1973) (a state defendant "released on bail or on his own recognizance pending trial . . . must still contend with the requirements of the exhaustion doctrine if he seeks habeas corpus relief in the federal courts"); *Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 300 (1984) ("Our cases make clear that the use of habeas corpus has not been restricted to situations in which the applicant is in actual, physical custody." (citation omitted)).  As the court held in its June 29, 2018 Memorandum and Opinion:

> Like the defendants in *Hensley* and *Lydon*, misdemeanor arrestees in Harris County who are released on secured or unsecured bond are "subject to restraints 'not shared by the public generally.'" *Hensley*, 411 U.S. at 351; *Lydon*, 466 U.S. at 301.  They are obligated to appear at trial, and "cannot come and go as [they] please[]." *Hensley*, 411 U.S. at 351; *Lydon*, 466 U.S. at 301.  And in Texas, as in California and Massachusetts, "[d]isobedience itself is a criminal offense." *Hensley*, 411 U.S. at 351; *Lydon*, 466 U.S. at 301; *see* TEX. PENAL CODE § 38.10 (bail-jumping and failure-to-appear charges range from Class A misdemeanors to third degree felonies).

(Docket Entry No. 426 at 22).

The County Judges argue that release "of any sort" is barred by *Preiser*.  (Docket Entry No.

435 at 14).  They cite *Nettles v. Grounds*, 788 F.3d 992 (9th Cir. 2015), in which the Ninth Circuit stated that "a prisoner is deemed to be seeking 'release' from custody even when the prisoner will not gain freedom, but will be released into a different form of custody."  *Id.* at 998; (Docket Entry No. 435 at 14).  *Nettles* relied on *Preiser*'s conclusion that "a petitioner's challenge to his custody is that . . . he is unlawfully confined in the wrong institution, . . . his grievance is that he is being unlawfully subjected to physical restraint, and in each case habeas corpus has been accepted as the specific instrument to obtain release from such confinement."  *Preiser*, 411 U.S. at 486 (citing *In re Bonner*, 151 U.S. 242 (1984); *Humphrey v. Cady*, 405 U.S. 504 (1972)).

The County Judges' reliance on *Nettles* is misplaced.  First, the Ninth Circuit reheard *Nettles* en banc, and removed the language cited by the County Judges in that opinion.  *See Nettles v. Grounds*, 830 F.3d 922 (9th Cir. 2016) (en banc), *cert. denied*, 137 S. Ct. 645 (2017).  Second, and more important, *Preiser* and the cases it cites concern habeas petitions for immediate release from confinement in the wrong institution, not release from one form of custody to another.

In *Bonner*, the petitioner filed a habeas action challenging his custody in an Iowa on the ground that the sentencing court had no authority to sentence him to imprisonment in the state prison.  *Bonner*, 151 U.S. at 254.  The Supreme Court issued a writ of habeas corpus, releasing the petitioner from the custody of the Iowa prison warden.  *Id.* at 262.  In *Humphrey*, the petitioner was convicted under the Wisconsin Sex Crimes Act and committed to the "sex deviate facility" for a potentially indefinite period instead of a sentence.  *Humphrey*, 405 U.S. at 506.  Under the Wisconsin statute the Department of Health and Social Services could petition for and obtain five-year commitment renewals without limitation.  *Id.* at 507.  When his one-year maximum sentence expired, the petitioner was subjected to a five-year commitment renewal.  *Id.*  He filed a habeas petition challenging the original commitment procedures and the commitment renewal procedures.

*Id. Bonner* and *Humphrey* are both examples of habeas challenges to custody on the ground that the petitioner was "unlawfully confined in the wrong institution." *Preiser*, 411 U.S. at 486. In both cases, the petitioner sought immediate release from custody, not transfer into another form of custody.

The plaintiffs in this case seek release from postarrest, pretrial confinement, to release on a personal bond, which may include nonfinancial conditions. Actions that seek release from one form of custody to another may fall within habeas, but only when the "relief [sought] is a determination [of entitlement] to . . . a speedier release from that imprisonment . . . ." *Preiser*, 411 U.S. at 500; *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005) (actions lying at the core of habeas corpus seek either immediate release from prison or the shortening of a term of confinement). Habeas is not the proper instrument to seek release from one form of custody into another with the same duration, which is what misdemeanor arrestees receive if they are released under the Amended Preliminary Injunction Order. The plaintiffs do not seek relief obtained exclusively by habeas, and the Amended Preliminary Injunction Order does not grant habeas relief to misdemeanor arrestees under the guise of § 1983.

The County Judges argue that the Amended Preliminary Injunction Order requires release or creates an entitlement to release. (Docket Entry No. 435 at 13). It does not. As discussed above and at length in the June 29, 2018 Memorandum and Opinion, the Order does not create or impose a right to release. It prohibits wealth-based discrimination in release from pretrial detention. The relief does not "automatically entitle one or more claimants to immediate or earlier release." *Serio v. Members of Louisiana State Bd. of Pardons*, 821 F.2d 1112, 1119 (5th Cir. 1987). Indigent misdemeanor arrestees must be released only if the County has not provided a hearing and individual assessment and if the County would release other, similarly situated, misdemeanor arrestees who

differ only in that they can afford to pay the prescheduled or other secured bail amount.

### c.   The Eighth Amendment

The fourteen County Judges argue that the release of qualified misdemeanor arrestees under the Amended Preliminary Injunction Order is available only under the Eighth Amendment. (Docket Entry No. 435 at 14). The Fifth Circuit held that the plaintiffs' claims "do not run afoul of *Graham*" because "[t]he incarceration of those who cannot [pay money bail], without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements." *ODonnell*, 892 F.3d at 157 (quotations omitted) (quoting *Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978) (en banc)). This is not an Eighth Amendment case.

The County Judges argue that the Amended Preliminary Injunction Order orders substantive relief from a bail amount beyond what a misdemeanor arrestee can afford, triggering the Eighth Amendment. (Docket Entry No. 435 at 15). As explained above, the Order does not create a right to affordable bail. Misdemeanor arrestees who are detained according to a preset secured bail amount, before a hearing and individual assessment, are detained "without meaningful consideration of other possible alternatives." *Pugh*, 572 F.2d at 1057. Misdemeanor arrestees who are detained during that period solely because of their indigence are discriminatorily deprived of their liberty interest in being bailable by sufficient sureties, while others who are able to pay bail are promptly released. *See ODonnell*, 892 F.3d at 158. Misdemeanor arrestees who are not provided constitutionally required procedures within 48 hours of arrest are similarly deprived of their liberty interest in being bailable by sufficient sureties. *Id.* In both cases, the release granted by the Amended Preliminary Injunction Order "condition[s] the deprivation of liberty on Harris County's provision of certain procedures . . . ." (Docket Entry No. 435 at 15).

The County Judges argue that "[b]ecause, in any money bail system, some but not all

arrestees will be able to afford bail, the Eighth Amendment *necessarily contemplates and permits* circumstances where arrestees who post bail are released while those who cannot post bail are not released." (Docket Entry No. 435 at 16 (emphasis in original)). The court agrees. But the constitutionality of secured bonds or bail beyond what a misdemeanor arrestee can afford is not at issue. The Amended Preliminary Injunction Order allows the County to set bail in excess of what a misdemeanor arrestee can afford to pay: (1) after the hearing and individual assessment; or (2) before the hearing and individual assessment, in a nondiscriminatory manner.

###    d.    Limits on the Court's Power

The fourteen County Judges argue that the Amended Preliminary Injunction Order provides greater relief than the Fifth Circuit held was necessary to cure the defendants' constitutional violations. (Docket Entry No. 435 at 16). The County Judges assert that the Order "transgresses the Constitution's limitations on a federal court's power to enter equitable relief against State officers and institutions . . . ." *Id.*

An injunction is overbroad if it is not "narrowly tailor[ed] . . . to remedy the specific action which gives rise to the order" as determined by the substantive law at issue. *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016) (quoting *Doe v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004)). The Fifth Circuit held that the Harris County bail system violated both due process and equal protection. *ODonnell*, 892 F.3d at 157–163. To "cure the constitutional infirmities arising under both clauses," the Circuit held that:

> the equitable remedy necessary . . . is the same: the County must implement the constitutionally-necessary procedures to engage in a case-by-case evaluation of a given arrestee's circumstances, taking into account the various factors required by Texas state law (only one of which is ability to pay). These procedures are: notice, an opportunity to be heard and submit evidence within 48 hours of arrest, and a reasoned decision by an impartial decisionmaker.

*Id.* at 163.  The Circuit offered suggestions on how this court could modify the original injunction, "leav[ing] the details to the district court's discretion."  *Id.* at 164–67.

The Amended Preliminary Injunction Order requires the implementation of procedures necessary to protect misdemeanor arrestees' constitutional rights.  In doing so, it also provides for protection of those rights when the County's procedures discriminate on the basis of wealth.  Affirming this court's equal protection analysis, the Fifth Circuit stated:

> [T]he essence of the district court's equal protection analysis can be boiled down to the following: take two misdemeanor arrestees who are identical in every way—same charge, same criminal backgrounds, same circumstances, etc.—except that one is wealthy and one is indigent.  Applying the County's current custom and practice, with their lack of individualized assessment and mechanical application of the secured bail schedule, both arrestees would almost certainly receive identical secured bail amounts.  One arrestee is able to post bond, and the other is not.  As a result, the wealthy arrestee is less likely to plead guilty, more likely to receive a shorter sentence or be acquitted, and less likely to bear the social costs of incarceration.  The poor arrestee, by contrast, must bear the brunt of all of these, simply because he has less money than his wealthy counterpart.

*Id.* at 163.

The Amended Preliminary Injunction Order ensures that the equal protection violation identified by the Fifth Circuit is cured in two scenarios: first, before the County has had an opportunity to provide the constitutionally required procedural protections; and second, when the County has failed to provide the constitutionally required procedural protections within the 48-hour deadline the Fifth Circuit approved.  The Amended Preliminary Injunction Order, relying on the Fifth Circuit's equal protection analysis, cures the equal protection violations that may arise in those scenarios by ordering that misdemeanor arrestees may not be detained without procedural protections, simply because of their poverty.

The Amended Preliminary Injunction Order does not create an entitlement to release, which would extend beyond the Fifth Circuit's suggested relief and would likely be overbroad.  *Scott*, 826

F.3d at 211.  If Harris County detained all misdemeanor arrestees before or after a hearing and individual assessment held within 48 hours, the County would not violate equal protection, and misdemeanor arrestees would not have a claim for release on an unsecured bond under the Amended Preliminary Injunction Order.  But when the bail system allows certain misdemeanor arrestees to be released after posting bail set by a predetermined schedule, before a hearing and individual assessment, while detaining only those who cannot afford to pay, or when misdemeanor arrestees are denied a hearing and individual assessment within the 48-hour time limit and kept detained, while other similarly situated arrestees are released because they can post bail, the system is constitutionally deficient under the Fifth Circuit's opinion and requires remedy.  Based on the extensive record evidence, this court's findings and conclusions, and the Fifth Circuit's opinion, it was well within this court's equitable power and the discretion the Fifth Circuit recognized to narrowly tailor the injunctive relief to cure the constitutional deficiencies.  *Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("The remedy of course must be limited to the inadequacy that produced the injury in fact that the plaintiff has established.").

Under the County Judges' rationale, the County would be free to continue its practice of "automatic[ally] imposi[ng] . . . pretrial detention on indigent misdemeanor arrestees" before a hearing and individual assessment.  *ODonnell*, 892 F.3d at 160.  Under the Amended Preliminary Injunction Order, the County can set bail for any misdemeanor arrestee, but only if it does so in a nondiscriminatory way.  The relief is limited to addressing the constitutional deficiencies that this court and the Fifth Circuit recognized.  By addressing those deficiencies, the Order implements the procedural protections required by the Fifth Circuit, in a manner consistent with its opinion.

   e.  **Section (7)**

The fourteen County Judges argue that the Amended Preliminary Injunction Order providing

the release of a limited number of misdemeanor arrestees in certain situations cannot be justified under substantive due process, procedural due process, or equal protection.  (Docket Entry No. 435 at 17–21).

The County Judges argue that substantive due process is an improper basis for the relief ordered.  *Id.* at 17.  That is true, but the relief is not based on substantive due process.  For the reasons discussed at length above, the Order does not create or impose a substantive right to pretrial release on personal bond.  The Order requires procedures to cure the County's equal protection violations.  Release under the Order is not an entitlement because the County has the discretion to determine whether a misdemeanor arrestee should be detained after being provided with the constitutionally required procedural protections.  No misdemeanor arrestee has an absolute right to be released after a hearing and individual assessment.

The County Judges correctly note that the Fifth Circuit recognized the "lack of individualized assessment and mechanical application of the secured bail schedule" as the underlying equal protection violation.  *Id.* at 18.  The relief ordered in the Amended Preliminary Injunction Order is warranted by the lack of individual assessment.  The County cannot mechanically apply secured bail before a hearing and individual assessment on a preset, across-the-board basis and detain those misdemeanor arrestees who cannot pay.  The equal protection violation identified by the Fifth Circuit is the same violation that the Amended Preliminary Injunction Order addresses.

The County Judges argue that *Pugh v. Rainwater*, *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), and the Fifth Circuit's opinion permit a misdemeanor arrestee to be detained for up to 48 hours after arrest, during which a hearing and individual assessment must be provided.  (Docket Entry No. 435 at 18–19).  That is correct.  The Amended Preliminary Injunction Order does

16

not create an entitlement to release before a hearing and individual assessment.  Under the Order, the County is free to detain misdemeanor arrestees until a hearing and individual assessment 48 hours after arrest.  But the County cannot detain some misdemeanor arrestees and release others based solely on who can pay the preset bail amount and who cannot.  The cases the County Judges cite do not permit discriminatory detention within 48 hours after arrest.

The County Judges argue that the court's Section (7) equal protection analysis "would necessarily justify the release of *all* arrestees . . . ."  *Id.* at 19.  It would not.  The Amended Preliminary Injunction Order does not eliminate secured money bonds.  Release under Section (7) applies only to the limited number of qualified misdemeanor arrestees who are already deemed releasable by the County—not this court—but who are not released because they are unable to post the preset amount.  Misdemeanor arrestees who fall within one of the presumptively releasable categories are given the opportunity to be released.  Limiting that opportunity to misdemeanor arrestees who can afford to pay a secured preset bail amount discriminates on the basis of wealth. The equal protection analysis does not apply to misdemeanor arrestees who are not given the opportunity to pay a secured preset bail amount because they are charged with an offense that requires detention for all misdemeanor arrestees until a hearing and individual assessment.  Those misdemeanor arrestees do not suffer from wealth-based discrimination because their detention is based on the crime charged, not solely on their ability to pay.

The County Judges make several additional arguments that Section (7) is not justified under the Equal Protection Clause.  *Id.* at 20.  They assert that the Eighth Amendment permits discriminating on the basis of wealth before a hearing and individual assessment, and that the Fourteenth Amendment cannot overrule the Eighth.  *Id.*  As stated above, and as confirmed by the Fifth Circuit, this is not an Eighth Amendment case.  *ODonnell*, 892 F.3d at 157.  There is no

conflict between the Eighth Amendment and the Amended Preliminary Injunction Order because the Order does not create a right to affordable bail.

The County Judges argue that "any difference in treatment between those who can and cannot afford money bail is simply a *disparate impact* of a facially neutral policy, and disparate impact alone cannot give rise to liability under the Equal Protection Clause." (Docket Entry No. 435 at 20 (citing *Washington v. Davis*, 426 U.S. 229, 239 (1976)). The Fifth Circuit disagreed:

> [T]he district court did not conclude that the County policies and procedures violated the equal protection clause solely on the basis of their disparate impact. Instead, it found the County's custom and practice purposefully 'detain[ed] misdemeanor defendants before trial who are otherwise eligible for release, but whose indigence makes them unable to pay secured financial conditions of release.' The conclusion of a discriminatory purpose was evidenced by numerous, sufficiently supported factual findings, including direct evidence from bail hearings. This custom and practice resulted in detainment solely due to a person's indigency because the financial conditions for release are based on predetermined amounts beyond a person's ability to pay and without any 'meaningful consideration of other possible alternatives.'"

*ODonnell*, 892 F.3d at 161 (citation omitted). This court's discriminatory purpose findings apply equally to the custom and practice of detaining misdemeanor arrestees because of their indigence before a hearing and individual assessment.

The County Judges argue that the plaintiffs' equal protection claim should be reviewed under the rational basis standard. (Docket Entry No. 435 at 20). The Fifth Circuit rejected that argument, concluding that intermediate scrutiny is appropriate. *ODonnell*, 892 F.3d at 161–62.

The County Judges once again assert that the Constitution does not require the abolition of money bail. (Docket Entry No. 435 at 21). The court agrees. The Amended Preliminary Injunction Order does not eliminate secured money bail. It conditions the imposition of money bail on the provision of a constitutionally required hearing and individual assessment and the absence of wealth-based discrimination.

18

The County Judges argue that the Amended Preliminary Injunction Order inversely discriminates on the basis of wealth, because misdemeanor arrestees who fall within Section (7) "must be promptly released, while . . . otherwise similarly situated arrestees in the same seven categories who are able to pay remain detained unless and until someone posts bond on their behalf." *Id.* at 21. The Order does not advantage indigent misdemeanor arrestees more than those who are able to pay bail. Misdemeanor arrestees who fall within Section (7) must be released "on the same time frame of release that a misdemeanor arrestee who is able to pay secured money bail would receive." (Docket Entry No. 427 at 5). Those misdemeanor arrestees cannot, as the County Judges suggest, avoid accountability to pay bond amounts. Misdemeanor arrestees released under personal bonds and secured bonds alike are liable for their bond amounts. Arrestees released on a secured money bond must pay some amount as a condition of release, but they do not forfeit the amount paid as long as they appear at their hearings and trial dates. Arrestees released on a personal bond are subject to the same financial liability if they fail to appear. (*See, e.g.*, Docket Entry No. 316-2). The Amended Preliminary Injunction Order provides equal opportunity for these indigent misdemeanor arrestees within the category of arrestees that the County has presumed releasable and has provided the opportunity to be released by paying a secured preset bail amount.

### f.       Sections (8) and (9)

The fourteen County Judges argue that Sections (8) and (9) violate *McLaughlin* and the Fifth Circuit's opinion. (Docket Entry No. 435 at 21–23). They do not. In *Gerstein*, the Supreme Court permitted warrantless arrests as long as the people arrested without a warrant were promptly brought before a neutral magistrate for a probable cause determination. *Gerstein*, 420 U.S. at 114. In *McLaughlin*, the Court held that "judicial determinations of probable cause within 48 of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*." *McLaughlin*, 500 U.S.

at 53. The Court stated:

> Where an arrested individual does not receive a probable cause determination within 48 hours, the calculus changes. In such a case, the arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance. The fact that in a particular case it may take longer than 48 hours to consolidate pretrial proceedings does not qualify as an extraordinary circumstance. Nor, for that matter, do intervening weekends. A jurisdiction that chooses to offer combined proceedings must do so as soon as is reasonably feasible, but in no event later than 48 hours after arrest.

*Id.* at 57.

Contrary to the County Judges' position, neither *McLaughlin* nor the Fifth Circuit's opinion prohibits the release of eligible misdemeanor arrestees who have not received a hearing and individual assessment within 48 hours of arrest. The Fifth Circuit's review of *McLaughlin* focused on the time limit in which a hearing and individual assessment must be held. *ODonnell*, 892 F.3d at 160 ("[W]e find that the district court's 24-hour requirement is too strict under federal constitutional standards. . . . We conclude that the federal due process right entitles detainees to a hearing within 48 hours. Our review of the due process right at issue here counsels against an expansion of the right already afforded detainees under the Fourth Amendment by *McLaughlin*."). When the Fifth Circuit stated that it would not expand the right recognized in *McLaughlin*, the Court was referring to the right to a hearing and individual assessment within a specified time period. *Id.* at 160. *McLaughlin* did not require the continued detention of detainees who were not provided a probable cause determination within 48 hours of arrest.

*McLaughlin* does not prohibit the release of misdemeanor arrestees who have not received the constitutionally required hearing and individual assessment within a 48-hour period. To the contrary, other members of the Court read the majority opinion as establishing a deadline for probable cause determinations that, if not met, would generally result in the detainee's release. *See*

*McLaughlin*, 500 U.S. at 67 (Scalia, J., dissenting) ("So as far as I can discern . . . , the Court simply decided that . . . it is not so bad for an utterly innocent person to wait 48 hours in jail *before being released*." (emphasis added)).   Indeed, as the majority noted, the named plaintiffs "either received probable cause determinations or were released."   *Id.* at 51 (maj. op.).

The County Judges cite the Fifth Circuit's suggested reporting requirements and argue that they "contemplate[] the reality that some arrestees might be detained without a hearing beyond 48 hours of arrest . . . ."   (Docket Entry No. 435 at 22).   That is true.   The Amended Preliminary Injunction Order does not require the release of all misdemeanor arrestees who have not received a hearing and individual assessment within 48 hours of arrest.   As in *McLaughlin*, which made exceptions for certain emergency situations, the Order recognizes a mental-illness or intellectual-disability exception in Section (11) and a medical-condition exception in Section (12).   *McLaughlin*, 500 U.S. at 57.   But continued detention is permissible only under limited circumstances.   The existence of exceptions does not swallow the general rule that, in the absence of exceptions, misdemeanor arrestees must be released within 48 hours of arrest if they have not received a hearing and individual assessment.   The Fifth Circuit's suggestion that "[a] pattern of delays might warrant further relief" is consistent with the Amended Preliminary Injunction Order's allowance for justified delays and intolerance of unjustifiable delays.   *ODonnell*, 892 F.3d at 166.   The Amended Preliminary Injunction Order prevents continued, unlawful detention, in furtherance of the Circuit's intention to end "the endemic problem of misdemeanor arrestees being detained until case disposition and pleading guilty to secure faster release from pretrial detention."   *Id.*

The fourteen County Judges have not shown a strong likelihood of success on the merits. This factor strongly weighs against a stay.

### 2. The Movants' Arguments For Irreparable Injury And The Public Interest

Though traditionally two separate factors, *see Chafin*, 133 S. Ct. at 1027, the parties' briefs combine the movants'-harm-absent-a-stay factor and the public-interest factor. (Docket Entry Nos. 435 at 23–24, 446 at 17–20).   The fourteen County Judges make three arguments.  First, they argue that Sections (7), (8), (9), and (16) "threaten public safety and the orderly administration of justice," citing a statistic on the bond-forfeiture rate. (Docket Entry No. 435 at 23 ("Since the preliminary injunction has taken effect, 44.65% of arrestees released on unsecured bonds pursuant to the preliminary injunction have had bonds forfeited for failure to appear, compared to only 9.85% of arrestees who provided a secured money bond.")).  Second, the County Judges assert that the Amended Preliminary Injunction Order enjoins the enforcement of state law and harms the public interest, because "[w]hen a statue is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." *Id.*; *Planned Parenthood of Greater Texas Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013).  Third, the County Judges argue that their interest and the public interest are indistinguishable, because when "the [government] is the appealing party, its interest and harm merges with that of the public." *Planned Parenthood*, 734 F.3d at 419.  Neither of these arguments is persuasive.

This court found, and the Fifth Circuit affirmed, that "[s]ecured money bail in Harris County does not meaningfully add to assuring misdemeanor defendants' appearance at hearings or absence of new criminal activity during pretrial release." (Docket Entry No. 302 at 109–10); *ODonnell*, 892 F.3d at 166 (affirming this court's factual findings).  The probative value of the bond-forfeiture rate is vigorously disputed by the plaintiffs and not supported by the existing record. (Docket Entry No. 446 at 18 ("[B]ond-forfeiture rates do not reveal useful information about nonappearance, let alone information useful for comparing between different bonds.").  The County Judges and other defendants will have an opportunity to contest the factual findings at the merits trial set for early

22

December 2018.  (Docket Entry No. 423); *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d

262, 268 (5th Cir. 2012) ("[T]he findings of fact and conclusions of law made by a court granting

a preliminary injunction are not binding at trial on the merits." (quoting *Univ. of Tex. v. Camenisch*,

451 U.S. 390, 395 (1981))).

The County Judges list five ways in which they believe the Amended Preliminary Injunction

Order enjoins the enforcement of Texas law.  (Docket Entry No. 435 at 23–24).  None is correct.

The Order does not create an automatic right to release and does not override the County Judges'

and Hearing Officers' discretion to determine whether bond should be secured or unsecured.  Under

the Order, the Hearing Officers and County Judges retain discretion to determine whether to set a

secured bond or unsecured bond, after a hearing and individual assessment.  The Sheriff, in contrast,

is authorized to release qualified misdemeanor arrestees on unsecured bonds, but doing so does not

require the discretionary assessment that is routinely and exclusively exercised by magistrates under

the Texas Code of Criminal Procedure.  The Order does not prohibit the setting of bail as long as

constitutionally required procedures are provided, and the Order does not create a right to affordable

bail.  The County can set bail in excess of what a misdemeanor arrestee can afford, but only after

a hearing and individual assessment.  Finally, Texas law does not prohibit the Sheriff from releasing

qualified misdemeanor arrestees on unsecured bonds.  Article 17.03 provides that "a magistrate may,

in the magistrate's discretion, release the defendant on personal bond without sureties or other

security."  TEX. CODE CRIM. PROC. art. 17.03.  It does not grant the exclusive authority to release

a misdemeanor arrestee on a personal bond to a magistrate, nor does it govern the release of

misdemeanor arrestees on personal bond in nondiscretionary situations.  The Amended Preliminary

Injunction Order does not improperly enjoin the enforcement of state law.

The County Judges' argument that their interest merges with the public interest was

addressed by the court in its first order denying stay.  (Docket Entry No. 327 at 16–17).  The court

held that treating the defendants' interest as identical to that of the public was unwarranted because

"'the government' in this case is not a singular entity pursuing a consistent policy."  *Id.* at 16.  The

same is true today.  One defendant, Sheriff Ed Gonzalez, is opposed to a stay.  (Docket Entry No.

435 at 5 n.1).  Another defendant, Judge Michael Fields, a nonappealing County Judge, is opposed

to a stay.  *Id.*  At the time the fourteen County Judges moved for a stay, a third defendant, Judge

Darrell Jordan, a nonappealing County Judge, had not identified his position on the stay motion.

*Id.*  Based on Judge Jordan's positions on other aspects of this litigation, and the fact that he objected

to the defendants' motion to stay the original Preliminary Injunction Order, the court infers that he

opposes a stay as well.  (*See, e.g.*, Docket Entry Nos. 313, 401-1, 402, 409, 450).  Additionally, "[i]t

is always in the public interest to prevent the violation of a party's constitutional rights."  *Jackson*

*Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014) (citing *Awad v. Ziriax*, 670

F.3d 1111, 1132 (10th Cir. 2012).  Because the government defendants themselves disagree on

identifying the interests implicated and harms caused by the Amended Preliminary Injunction Order,

and because the ordered relief prevents the violation of misdemeanor arrestees' constitutional rights,

this factor strongly weighs against a stay.

### 3.    Substantial Injury To The Plaintiffs

The "grant of a stay of a preliminary injunction pending appeal [would] almost always be

logically inconsistent with a prior finding of irreparable harm."  *Rodriguez v. DuBuono*, 175 F.3d

227, 235 (2d Cir. 1999).  The fourteen County Judges argue that the individual assessment alone

would fully cure the constitutional violations.  It would not.  The individual assessment by itself

does not adequately protect against the constitutional violations identified.  The requested stay

would lift the safeguards needed to prevent the continued operation of a bail system that

discriminates on the basis of wealth, subjecting members of the plaintiff class to unconstitutional detention.

As the court found in its April 28, 2017 Memorandum and Opinion: "Pretrial detention of misdemeanor defendants, for even a few days, increases the chance of conviction and of nonappearance or new criminal activity during release. Cumulative disadvantages mount for already impoverished misdemeanor defendants who cannot show up to work, maintain their housing arrangements, or help their families because they are detained." (Docket Entry No. 302 at 174–75) (footnotes omitted). A stay pending the appeal, or even a stay pending a stay-application ruling in the Fifth Circuit, would substantially injure the plaintiffs. This factor strongly weighs against a stay.

## III.    Conclusion

The fourteen County Judges have not met their burden of making a strong showing that they are likely to succeed on the merits of their appeal. The County Judges will not suffer irreparable harm absent a stay, but the plaintiffs will suffer substantially if Sections (7), (8), (9), and (16) of the Amended Preliminary Injunction Order are stayed. The defendants have operated under the original Preliminary Injunction Order for more than a year without suffering irreparable harm. The Amended Preliminary Injunction Order will not affect that calculus because it is more narrowly tailored than the original Preliminary Injunction Order. In contrast, every additional day of unlawful detention causes significant harm to the plaintiffs. The public interest is furthered by preventing that harm. The balance of the equities heavily weighs against a stay, and that is the court's ruling.

The fourteen County Judge's motion to stay, (Docket Entry No. 435), is denied. The amended scheduling and docket control order, (Docket Entry No. 423), controls the summary judgment motions and merits trial deadlines. The Amended Preliminary Injunction Order, (Docket Entry No. 427), takes effect on **Monday, July 30, 2018**. The current preliminary injunction order,

(Docket Entry No. 304), remains in effect until then.

SIGNED on July 27, 2018, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge

26