## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

| | |
|---|---|
| MARANDA LYNN ODONNELL, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 16-cv-01414 |
| | ) (Consolidated Class Action) |
| HARRIS COUNTY, TEXAS, et al. | ) The Honorable Lee H. Rosenthal |
| | ) U.S. District Judge |
| Defendants. | ) |
| | ) |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO SUMMARY JUDGMENT MOTIONS OF THE HEARING OFFICERS AND HARRIS COUNTY AND REPLY TO RESPONSE TO PLAINTIFFS' SUMMARY JUDGMENT MOTION

## <u>TABLE OF CONTENTS</u>

Page

I.  Defendants Do Not Dispute the Facts that are Material to Plaintiffs' Motion ...................... 4

II.  The Court Should Deny the Hearing Officers' Motion for Summary Judgment ................... 6

A.  The Hearing Officers' Statement of "Undisputed" Facts About the Current System Is Premature Because Discovery on this Issue is Just Beginning ................................................... 7

B.  Plaintiffs' Challenge Is Not Moot ................................................................................ 7

C.  The Hearing Officers' Summary Judgment Motion Fails on the Merits .......................... 10

III.  The Court Should Deny Harris County's Motion for Summary Judgment ..................... 15

A.  The Bail Schedule and Related Post-Arrest Policies Are Harris County Policies ........... 15

B.  The Individualized Bail Hearing ................................................................................. 17

IV.  The Court Should Grant Plaintiffs' Motion for Summary Judgment .............................. 17

A.  There Is No Dispute of Material Fact Concerning the Pre-Injunction System ................ 17

B.  Defendants Have Not Mooted Plaintiffs' Challenge ...................................................... 18

C.  Defendants' Arguments on the Merits Fail ................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*Allen v. Burke,*
690 F.2d 376 (4th Cir. 1982), *aff'd sub nom. Pulliam v. Allen*, 466 U.S. 522 ...................... 16

*Caliste v. Cantrell,*
No. 17-6197, 2018 WL 1365809 (E.D. La. Mar. 16, 2018) ................................. 14

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) .......................................................................................................... 9

*City News and Novelty v. City of Waukesha,*
531 U.S. 278 (2001) ........................................................................................................ 10

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
528 U.S. 167 (2000) ........................................................................................................ 10

*Golden v. Zwickler,*
394 U.S. 103 (1969) ........................................................................................................ 22

*K.P. v. LeBlanc,*
627 F.3d 115 (5th Cir. 2010) ........................................................................................... 11

*Knox v. Serv. Emps. Int'l Union, Local 1000,*
567 U.S. 298 (2012) ................................................................................................... 10, 11

*Brandon E. ex rel. Listenbee v. Reynolds,*
201 F.3d 194 (3d Cir. 2000) ............................................................................................ 16

*Meltzer v. Bd. of Pub. Instruction of Orange Cnty., Fla.,*
548 F.2d 559 (5th Cir. 1977) ........................................................................................... 22

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville,*
508 U.S. 656 (1993) ......................................................................................................... 11

*ODonnell v. Harris County, Tex.,*
227 F. Supp. 3d 706 (S.D. Tex. 2016) ............................................................................. 15

*ODonnell v. Harris Cty.,*
892 F.3d 147 (5th Cir. 2018) ........................................................................................ 8, 17

*ODonnell v. Harris Cty.*
No. 17-20333, Dkt. 00514496398 (5th Cir. June 1, 2018) .............................................. 17

*ODonnell v. Harris Cty.*,
  No. CV H-16-1414, 2017 WL 784899 (S.D. Tex. Mar. 1, 2017) ......................................... 17

*Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*,
  551 U.S. 701 (2007) ................................................................................................... 10, 11

*Pulliam v. Allen*,
  466 U.S. 522 (1984) ............................................................................................................ 16

*Sprint Commc'ns, Inc. v. Jacobs*,
  571 U.S. 69 (2013) .............................................................................................................. 10

*Ward v. City of Norwalk*,
  640 Fed. App'x 462 (6th Cir. 2016) .................................................................................... 16

*Ex Parte Young*,
  209 U.S. 123 (1908) ............................................................................................................ 13

Rules

D.C. App. R. 49(c)(3) ............................................................................................................. 24

Rule 56(e) ................................................................................................................................... 7

Rule 56(f)(6) .............................................................................................................................. 9

Plaintiffs submit this consolidated response to the summary judgment motions of the Hearing Officers, Dkt. 429, and Harris County, Dkt. 430 ("Defendants").  Plaintiffs also reply to those Defendants' response, Dkt. 433, to Plaintiffs' partial summary judgment motion.

## I.   Defendants Do Not Dispute the Facts that are Material to Plaintiffs' Motion

Defendants make a threshold objection that Plaintiffs' statement of undisputed facts cites only to this Court's preliminary injunction opinion.  This argument is a distraction and makes no difference to the issues before the Court.

As an initial matter, Plaintiffs cited this Court's opinion for convenience because that opinion meticulously cites the relevant portions of the testimony and record that Defendants claim Plaintiffs should have cited instead.  To satisfy Defendants' concerns, Plaintiffs have annotated their statement of undisputed facts not just with citations to this Court's citation to the record, but with the record cites themselves in the same source document.  *See* Dkt. 465-1.  No rule forbids a movant from cross-referencing a source that collects the relevant record citations, as Plaintiffs did in citing this Court's opinion, and Defendants have cited no authority to support their contention that a cross-reference is improper.[1]

More importantly, there is no dispute of material fact relevant to Plaintiffs' summary judgment motion.  As the Fourteen Judges point out when seeking summary judgment on the merits, no fact in dispute is relevant to the purely legal disagreements between the parties about what federal law requires at a bail hearing.  *See* Dkt. 432 at 19.  The summary judgment motions rightly battle over what substantive findings and procedural safeguards are required for pretrial detention, but no disagreements of fact bear on the answer to that question.  All parties agree (and

---

[1] In fact, because the preliminary-injunction record becomes part of the trial record, the opinion citing to the record of what the parties already introduced is the *best* source to cite as an indication of what Plaintiffs would put forth at trial.

all parties have explicitly asserted throughout this case, albeit with contrasting legal conclusions) that, at the time this lawsuit was filed and until the preliminary injunction was entered, bail hearings in Harris County were as they are described in Plaintiffs' undisputed statement of facts. Save for one assertion not required to decide Plaintiffs' motion,[2] Defendants do not dispute a single fact concerning how the system operated pre-injunction—indeed, most of those facts were taken from Defendants' admissions.  Most crucially, no party disputes that Defendants did not provide (1) notice of the critical issues to be decided at the hearing; (2) inquiry into ability to pay; (3) an opportunity for an arrestee to confront evidence and to present evidence and argument; (4) any evidentiary standard, let alone the "clear and convincing" standard; (5) and a finding on the record that pretrial detention was necessary.  Dkt. 400 at 4-5 (identifying these as the legal disputes); Dkt. 432 at 19 (stating that these legal claims do not involve factual disputes); Dkt. 433 (asserting factual disputes only about current practices).  Thus, there is no dispute of *fact* under Rule 56(e) that Defendants were not providing the substantive findings and procedural safeguards that Plaintiffs claim are required.  These issues are ripe for immediate legal resolution by the Court.

Instead of identifying disputes about material facts, Defendants submit new declarations and argue that their system has *changed*.  The difference between the parties is a legal disagreement about whether the Court must consider only the constitutionality of way the system will function now and when all of the changes are in place and not how the system functioned for years before this lawsuit, during this lawsuit, and prior to this Court's preliminary injunction order.  This Court has already rejected Defendants' argument and held that "[t]he proper inquiry at the trial will be

---

[2] Defendants object to relying at this stage on one of this Court's factual findings that is not relevant to Plaintiffs' summary judgment motion: that Hearing Officers automatically followed the secured bail schedule in the vast majority of cases.  Dkt. 433 at 3.  Although this Court's factual findings are unassailable on that point, Plaintiffs need not rely on this fact for the purposes of this motion because whether the reliance on the predetermined schedule was automatic or not, all parties agree that the relevant substantive findings and procedural safeguards were not provided.

whether the plaintiffs' challenges of the County's practices—as they were before the preliminary injunction was entered—actually succeed on their merits." Dkt. 423 at 4. As explained below, this Court's conclusion is correct under longstanding mootness precedent. *See infra* Section II.B.

In any event, Defendants' changes to the system do not purport to address Plaintiffs' constitutional claims. This Court concluded that Defendants' proposed changes (which they emphasize again at length) do not cure the constitutional violations, and the Fifth Circuit agreed. *ODonnell v. Harris Cty.*, 892 F.3d 147, 159 n.5 (5th Cir. 2018) ("[W]e agree with its conclusions that the County's proposed remedies, which are beginning to be implemented, fail to address the constitutional violations at issue."). To be clear: none of the Defendants assert that they provide the procedural safeguards that Plaintiffs seek, and all of the Defendants argue that they do not and need not make any finding of necessity prior to ordering detention. There is no dispute concerning the material facts necessary to deciding Plaintiffs' motion.

Unlike the Hearing Officers and the County, the Fourteen Judges understand the lack of disputed facts relevant to these questions and thus seek summary judgment on the legal disagreements. Dkt. 432 at 19. The Hearing Officers and County are therefore wrong to attempt to avoid purely legal rulings on central issues in this case both because they have not mooted Plaintiffs' claims and because even the "current" post-injunction practices, assuming Defendants describe them accurately, do not resolve Plaintiffs' claims if Plaintiffs' claims have merit.

**II.      The Court Should Deny the Hearing Officers' Motion for Summary Judgment**

The Hearing Officers' motion misunderstands Plaintiffs' claims, hornbook precedent on the concept of "mootness," and the appropriate function of summary judgment. The Hearing Officers' cross-motion for summary judgment is predicated on new assertions of fact about their "current" practices. *See* Dkt. 429. Their motion fails as a matter of law both because the Hearing

Officers have not mooted Plaintiffs' challenge to their longstanding practices, *see infra* Section II.B, and because the Hearing Officers are wrong as a matter of law that their current practices satisfy the Constitution, *see* Dkt. 465, at 6-29.  But it also fails for a threshold reason: it is premature.

### A.   The Hearing Officers' Statement of "Undisputed" Facts About the Current System Is Premature Because Discovery on this Issue is Just Beginning

While Plaintiffs may not eventually have many factual disputes with Defendants concerning the mechanics of how the post-arrest system functions post-injunction, discovery is still ongoing. Plaintiffs have not yet had an opportunity to depose the relevant officials, ask them questions through written discovery, or review documents relating to how the system is evolving. Obtaining and evaluating this information will be important to Plaintiffs' arguments at trial concerning what permanent relief is warranted, and Plaintiffs do not—and cannot—yet know whether they dispute Defendants' factual assertions. *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("Any potential problem with such premature motions can be adequately dealt with under Rule 56(f)(6), which allows a summary judgment motion to be denied, or the hearing on the motion to be continued, if the nonmoving party has not had an opportunity to make full discovery."). Thus, even if the Hearing Officers' motion did not fail as a matter of law, it would need to be denied or held in abeyance until Plaintiffs had completed discovery and are in a position to evaluate whether any fact asserted is contested.

### B.  Plaintiffs' Challenge Is Not Moot

The Hearing Officers seek to avoid a legal ruling on Plaintiffs' constitutional claims against them by arguing that their practices have "evolved."  Dkt. 429 at 4.  They claim that the Court should not issue a final ruling on the constitutionality of their challenged conduct prior to the preliminary injunction.  Dkt. 429 at 6.  Instead, the Hearing Officers ask this Court to rule that

their *current* practices are constitutional as a matter of law.  Some of these arguments sound like mootness arguments.  To the extent Defendants are arguing that the case is moot, they are incorrect.

This Court must reach the merits of Plaintiffs' claims that Defendants' conduct at the time this case was filed is unconstitutional unless there is no longer a live controversy between the parties.  *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (explaining the general maxim that a federal court's obligation to exercise its federal question jurisdiction over a case or controversy is "virtually unflagging").  Although the Hearing Officers do not cite the proper legal test, their argument appears to be that their "voluntary cessation" of the illegal practices has terminated any case or controversy such that Plaintiffs' claims are moot.

There is a high bar for Defendants to moot a case through voluntary cessation, and Defendants cannot meet it. The Supreme Court has held that "voluntary cessation of a challenged practice rarely moots a federal case." *City News and Novelty v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001); *see Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012); *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007).  The Hearing Officers bear a "formidable burden" to demonstrate that the challenged conduct could not be expected to recur such that Plaintiffs cannot reasonably claim to present a controversy with Defendants.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000); *Parents Involved*, 551 U.S. at 719 (holding that municipal government failed to meet "heavy burden" to show mootness). The Hearing Officers have not even attempted to meet their "heavy burden."

As a threshold matter, Defendants do not get to the stage at which they have a "heavy burden" because they have not ceased the challenged conduct.  Defendants cannot claim to have ceased the challenged conduct voluntarily if their new practices do not provide what Plaintiffs

argue the Constitution requires.  *See, e.g., Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993); *K.P. v. LeBlanc*, 627 F.3d 115, 121 (5th Cir. 2010). The Hearing Officers concede that they are still not determining arrestees' ability to pay or providing the substantive findings required to justify an order of pretrial detention (much less making those findings of necessity by clear and convincing evidence), and they contest Plaintiffs' constitutional claim that counsel is required at pretrial detention and release hearings. Dkt. 433 at 6.  As a result, Plaintiffs' claim is not mooted by voluntary cessation, and this Court correctly rejected the Hearing Officers' argument.  Dkt. 423 at 4 (holding that the question to be decided is whether the practices that Plaintiffs challenged are constitutional).

Moreover, even if Defendants' "evolved" system vindicated Plaintiffs' claims, Defendants would still not satisfy the high standard for voluntary cessation because of their vigorous defense of their prior practices.  Not only do Defendants not cite the voluntary cessation legal standard, but they do not cite any case in which a federal court has held a case or controversy to be mooted while Defendants persist in arguing that they have *not* violated a plaintiff's constitutional rights. The law is exactly the reverse.  As this Court explained in its scheduling order, Dkt. 423 at 3-4, the Supreme Court has held that defendants cannot claim mootness through voluntary cessation at the same time as they "vigorously defend" the constitutionality of their challenged conduct. *Parents Involved,* 551 U.S. at 719*; Knox*, 567 U.S. at 307.  And everyone involved in this litigation can attest that Defendants' defense of their challenged conduct has been consistent and spirited. Indeed, even while in one filing implying that there exists no controversy, the Hearing Officers join in the Fourteen Judges' legal arguments to the contrary, including that there is no right to pretrial liberty, no right against wealth-based detention, and no need for an in-person bail hearing

*at all*, let alone one that provides the safeguards Plaintiffs seek.  Dkt. 433 at 9 (incorporating legal arguments of the Fourteen Judges); Dkt 432 at 31-59.

In light of Defendants' vigorous defense of their policies and practices, it makes sense that they have failed to cease their illegal conduct.  On the page of their brief directly following their implied claim of mootness, Dkt. 429 at 12, the Hearing Officers argue that they *disagree with Plaintiffs* that a finding of necessity is required because all that the Constitution requires, they argue, is that they "consider" alternatives.  That they "consider" alternatives as required by *Robserson* and state law was their mantra prior to and during the preliminary injunction hearing as well.  Later, they reiterate that they merely must make a "careful look" and an "individualized" determination.  Dkt. 429 at 14-15.  They dispute that they must justify pretrial detention with a finding that the government's interests could not be accomplished by other means.

Therefore, what the Hearing Officers are *really* saying is not that the case is moot, but that they want the Court to deny Plaintiffs' summary judgment motion on its merits because Plaintiffs are wrong as a matter of law about what the Constitution requires at bail hearings.

### C.  The Hearing Officers' Summary Judgment Motion Fails on the Merits

The Hearing Officers incorporate the Fourteen Judges' arguments contesting the constitutional merits of Plaintiffs' claims.  Dkt. 429 at 12.  Plaintiffs respond to those arguments separately in their reply/response to the Fourteen Judges.

In addition, the Hearing Officers further argue that relief against them "accomplishes nothing."  Dkt. 429 at 14.  The Hearing Officers explain this argument by claiming that Plaintiffs seek to reform "policies" and that they do not have any control over policies.  Dkt. 429 at 14.  This argument fails for several reasons.

First, each individual Hearing Officer presides over thousands of bail hearings every year. Their most recent briefs state that they disagree that there is any right to pretrial liberty or against wealth-based detention at all and that, as a result, federal law does not require them to make any finding that detention is necessary or provide any procedural safeguards because a bail hearing is not even necessary.  Dkt. 433 at 11; *id.* at 9 (incorporating legal arguments of the Fourteen Judges, including that all arrestees can be detained prior to trial solely on a non-adversarial finding of probable cause that a crime has been committed).  An articulation of what the Constitution requires at those hearings will ensure that the Hearing Officers protect the constitutional rights of the many indigent class members who appear before them.[3]

Second, the individual hearing officers may not be "policymakers," but they enforce those policies.  As with any state or local government actor enforcing unconstitutional policies and practices (even if they are someone else's idea, as with the Sheriff here), prospective relief is appropriate as to them for reasons Plaintiffs have explained in detail.  Dkt. 93 at 24; *see also Ex Parte Young*, 209 U.S. 123 (1908).  As the Hearing Officers themselves say: "The Hearing Officers will follow whatever standards the relevant policymakers require, but it is not the Hearing Officers' place to decide as a matter of policy (or substantive law) what standard governs the bail determination."  Dkt. 429 at 15.  Civil rights defendants who vow to follow the directives of other state actors may be enjoined if those state actors ask them to enforce unconstitutional policies.

Third, and most obviously, Plaintiffs do not challenge only municipal policies in this case. All Defendants have argued repeatedly that Hearing Officers exercise their *own* independent

---

[3] For example, the Hearing Officers have, throughout this case, spoken with vehemence about the need to detain Ms. ODonnell prior to trial after her arrest for driving with a suspended license.  Dkt. 101 at 24 ("Even if personal bonds were the norm, in no rational world would Ms. ODonnell qualify for one.").  It is imperative that these Hearing Officers, who will be presiding over thousands of similar cases, receive guidance on what substantive and procedural requirements must be provided before they detain misdemeanor arrestees.

discretion at bail hearings.  Plaintiffs' declaratory claims against them are therefore different in important ways from their claims against Harris County.  Even if Harris County did not have illegal policies and practices and even if Hearing Officers were not instructed to apply certain policies to certain categories of arrestees in order to save their jobs as Plaintiffs have alleged and as the Hearing Officers testified to a state ethics tribunal, the Hearing Officers would still be subject to declaratory relief relating to *their own conduct* when presiding over bail hearings.[4]  The claims against the Hearing Officers in their judicial capacity are quintessential claims under Section 1983 for declaratory relief and identical to similar claims in other cases.  *Caliste v. Cantrell*, No. 17-6197, 2018 WL 1365809 (E.D. La. Mar. 16, 2018) (certifying similar class action for declaratory relief under Section 1983 against the magistrate who sets bail in Orleans Parish, Louisiana).  Indeed, Plaintiffs' claims for declaratory relief against the Hearing Officers who preside over their bail hearings are arguably the most straightforward of their claims in this case.

The Hearing Officers' brief does, however, highlight an important issue.  Although it makes little substantive difference on the merits in a purely declaratory-relief case, Defendants misinterpret one passage of this Court's opinion on Defendants' motions to dismiss.  The Court wrote that "The official capacity claims against the Harris County Hearing Officers cannot support municipal liability against Harris County and are dismissed . . . . The Hearing Officers remain parties to this suit only in their personal capacities and only for declaratory relief." *ODonnell v. Harris County, Tex.*, 227 F. Supp. 3d 706, 754 (S.D. Tex. 2016).  Because this section of the

---

[4] The County is wrong to suggest that there is something inconsistent between the Hearing Officers both exercising discretion and being subject to County policies.  Those things are not mutually exclusive.  Indeed, Defendants make this point themselves when they claim that state law requires certain policies, such as confining judicial discretion to five specific factors.  A local government can take its authority consistent with state law to establish Local Rules that constrain the discretion of Hearing Officers.  If those policies and practices are unconstitutional, the County will be liable for them.  But those same Hearing Officers can still be subject to declaratory relief for discretionary actions that they take within that framework. Indeed, a federal declaratory judgment may actually *help* them if their testimony at the hearing was accurate that they fear for their jobs if they deviate from the policy preferences of the County Judges.

opinion was discussing only official-capacity claims that would support municipal liability against Harris County, Plaintiffs interpret this passage as allowing their declaratory-judgment claims to proceed against the judicial officers for acts taken in a judicial capacity. *Id.* ("[P]laintiffs have stated a sufficient claim for declaratory relief against the Hearing Officers in the personal capacities.").  Because these claims against the Hearing Officers in their judicial capacity under Section 1983 are also "official," Plaintiffs respectfully request that this Court clarify that its earlier ruling was limited to those official capacity claims that were redundant of claims against the County (i.e. the non-judicial ones).

This clarification matters because the Hearing Officers now argue that declaratory relief against them "will have no real consequences" because any judgment in an individual capacity lawsuit will not run to their successors. Dkt. 429 at 15 ("Because the Hearing Officers remain in this case solely in their individual capacity, the 'office' of Hearing Officer will not be required to take any action. Any declaratory relief issued against a Hearing Officer in their individual capacity will not bind any of the Hearing Officers' successors.").  Of course, the Hearing Officers are wrong that even this relief has no consequence: the individual Hearing Officers, each of whom has been in office for many years and each of whom conducts thousands of bail hearings every year, will be subject to the declaratory relief.  But it is for the reason the Hearing Officers highlight—that Plaintiffs seek relief that will run against Defendants' successors—that Plaintiffs sought relief against the Hearing Officers in their official judicial capacities in the first place.

Although, as this Court explained, the official capacity claims against the Hearing Officers are redundant of claims against Harris County with respect to the County *policies* challenged in this case, Plaintiffs' claims against the Hearing Officers in their *judicial* capacities for declaratory relief remain. And these claims are properly characterized as "official-capacity" claims. In *Pulliam*

*v. Allen*, 466 U.S. 522 (1984), the Supreme Court affirmed a judgment against judicial officers, for acts taken in their judicial capacities, that entered against the officers in their "official capacity." *Allen v. Burke*, 690 F.2d 376, 377 (4th Cir. 1982), *aff'd sub nom. Pulliam v. Allen*, 466 U.S. 522. Although Congress later modified Section 1983 to make clear that judges are not immediately subject to injunctive relief in their judicial capacities—thus abrogating part of *Pulliam*'s holding—later courts have made clear that these amendments did nothing to alter declaratory judgment claims. *E.g.*, *Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194, 198 (3d Cir. 2000) (explaining that "the amendment's purpose was to overrule the Supreme Court's decision in *Pulliam v. Allen*, 466 U.S. 522 (holding that judicial immunity was not a bar to awards of attorney's fees and costs or to demands for injunctive relief), not to alter the landscape of declaratory relief."). And other courts (including in an opinion on which this Court relied in its motion-to-dismiss ruling) have characterized post-amendment declaratory-judgment suits against judicial officers as "official capacity" suits as well. *See, e.g.*, *Ward v. City of Norwalk*, 640 Fed. App'x 462, 467 (6th Cir. 2016) ("Moreover, sovereign immunity does not bar plaintiffs' declaratory judgment claim against Judge Ridge and Clerk Boss in their official capacities.").

The Hearing Officers therefore should not be dismissed in their official capacity for claims for declaratory relief against them in their judicial capacity. Indeed, Defendants themselves have repeatedly argued that the Hearing Officers are *not* redundant with Harris County for any actions taken in a judicial capacity. Defendants should not be permitted to attempt to evade the important declaratory relief entered in this case simply by terminating the individual Hearing Officers against whom declaratory relief has been entered so that they could pursue an argument that the relief does not run to any successors in office. Plaintiffs respectfully request that the Court clarify this portion

of its earlier opinion, even though, for the reasons described, Defendants' argument that there is no point in declaratory relief is without merit regardless.

**III.     The Court Should Deny Harris County's Motion for Summary Judgment**

Harris County also moves for summary judgment, arguing that no Harris County policy is implicated by Plaintiffs' claims.  This Court should continue to reject that argument.

### A.   The Bail Schedule and Related Post-Arrest Policies Are Harris County Policies

Harris County first argues that "[u]se of a bail schedule prior to the individualized hearing is an issue of judicial policy and state law."  Dkt. 430 at 4.  This argument fails for several reasons.  First, the argument that the post-arrest pre-hearing policies are "judicial" or required by state law contradicts rulings by this Court and the Fifth Circuit that the challenged policies and practices are attributable to Harris County.  *E.g.*, *ODonnell*, 892 F.3d at 155 ("[W]e agree with the district court that the County Judges are policymakers for the municipality.").  That ends the matter.

Despite those holdings, this section of Harris County's motion, although it relies on the same cases that it has cited throughout this litigation, does not mention that each court in this case has rejected the same argument.   After this Court rejected the argument the first time, it rejected the County's motion for reconsideration.  *ODonnell v. Harris Cty.*, No. CV H-16-1414, 2017 WL 784899, at *1 (S.D. Tex. Mar. 1, 2017).  Similarly, after the Fifth Circuit rejected the argument, it denied the County's petition for rehearing.  Order Den. Defs.' Pet. for Reh'g, *ODonnell v. Harris Cty.* No. 17-20333, Dkt. 00514496398 (5th Cir. June 1, 2018).  And this Court and the Fifth Circuit had good reason to hold that the post-arrest policies reflected in the local Rules are Harris County policies: Nothing in state law requires a jurisdiction-wide policy requiring detention or release or secured bail prior to a judicial hearing.   State law leaves those questions up to County policymakers.  Plaintiffs are not "actually challenging Texas law."  Dkt. 430 at 6.  Harris County's

policymakers (here, the Defendant Judges) can choose among options consistent with state law. Plaintiffs allege that the policies and practices that the Judges have chosen are unconstitutional.[5]

Second, Harris County continues to misstate Plaintiffs' claims.  Plaintiffs are not arguing in this case that the federal Constitution requires class members to be released.  *But see* Dkt. 430 at 6 (asserting that Plaintiffs seek a "Constitutional or statutory requirement to release low-risk defendants").  For example, Plaintiffs did not object to the aspect of this Court's preliminary injunctive relief based on the current policies, which require 13 of the 20 categories of arrestees to be detained prior to a bail hearing and which allows arrestees to be detained after that hearing.

Third, Harris County's claim that Plaintiffs are attempting to "circumvent the legislative process" by singling out "one of Texas's 254 counties," Dkt. 430 at 7, is mistaken.  Harris County cites laws and rules from other states, purportedly for the proposition that other states have made some statewide bail policy decisions by legislation or constitutional amendment.  It follows here, they argue, that Plaintiffs should seek bail reform from the Texas legislature or via court rulemaking.  Dkt. 430 at 6-7.  It is not surprising that state constitutions and statutory schemes regulate the important issue of bail.  Texas also does so. But *this* lawsuit is about how one jurisdiction has chosen among options available under Texas state law and engaged in specific illegal practices.  Not only is it common for states to allow local governments to choose to do things differently within certain parameters, but in our legal system, when one of those local governments chooses an unconstitutional option among available options, it is appropriate for a person or group of people injured by the choice to seek a federal judicial remedy.  The County

---

[5] Harris County cites *Pugh* to argue that any illegalities in this case are problems of state law, not municipal policy. Not only has the Fifth Circuit rejected this argument, but whether a policy or practice is attributable to a state or local government is a question of *state* law that turns on the particular facts of a case.  Citation to *Pugh*, which involved statewide Rules of Criminal Procedure in *Florida* is therefore irrelevant to the point for which it was cited.

does not cite any *Monell* case law or contest the legal rulings on municipal liability that have gone against them on this issue at every stage of this case.

### B.  The Individualized Bail Hearing

Harris County next argues that none of its policies are implicated at bail hearings.  This argument fails for two reasons.  First, this Court found that Plaintiffs had proven a number of County policies to exist at bail-setting hearings, including instructing arrestees not to speak at the hearings, denying personal bonds to the homeless, not providing defense lawyers at the hearings, and, despite what the law requires, following a predetermined chart to determine conditions of release.  *See* Dkt. 125.  Summary judgment for the County is not appropriate for that reason alone.

Second, it is undisputed that the Judges, voting together, have the authority to promulgate Rules of Court that govern the bail setting process so long as those Rules are not inconsistent with state law.  These rules may (and already do) create presumptions, legal standards, and procedural safeguards for individualized bail hearings before magistrates.  As the Fifth Circuit held, the Judges would be well within their authority under state law to have refused to acquiesce in the Hearing Officers' practices and to mandate through local rule that the individualized bail hearings comply with the Constitution by providing the required findings and safeguards.[6]  The policymakers did not and have not done that, and therefore the County is liable.

## IV.    The Court Should Grant Plaintiffs' Motion for Summary Judgment

Defendants' response in opposition to Plaintiffs' motion, Dkt. 433, makes largely the same mistakes of fact and law as their separate summary judgment motions.

### A.  There Is No Dispute of Material Fact Concerning the Pre-Injunction System

---

[6] Under the Fifth Circuit's opinion, an injunction against the Sheriff not to enforce unconstitutional orders would be against the Sheriff in his capacity as a state actor and not a County policymaker.

Defendants first repeat their argument that Plaintiffs' statement of undisputed facts is defective because of its citations.  Dkt. 433 at 1.  For the reasons discussed *supra* Section I, this argument is both wrong (Plaintiffs used this Court's opinion as a cross reference to citations in the record and have nevertheless reproduced the document with the relevant citations in one place) and irrelevant (because there is no dispute of material fact as to the pre-injunction system).  All parties agree that, before the lawsuit was filed and until the preliminary injunction was entered, Defendants provided none of the substantive findings or procedural safeguards that Plaintiffs' motion argues are required.  No material fact relevant to the decision of Plaintiffs' motion remains, as the Judges themselves point out.  Dkt. 432 at 19.

### B.  Defendants Have Not Mooted Plaintiffs' Challenge

Defendants' real argument, which they make next, is that the only relevant facts are what their "current" practices are, now that they have "evolved."  But this argument also fails for the reasons discussed *supra* Section II.B.

Although Defendants again do not cite or apply the legal test under Supreme Court and Fifth Circuit precedent for the rare circumstances in which voluntary cessation moots a federal case, the new argument in their response brief make clear that they are implying that Plaintiffs' challenge is moot.  Defendants therefore fault Plaintiffs for not providing "a single shred of evidence," Dkt. 433 at 5, about their "current" practices.  These arguments are meritless.

It is black-letter law that it is not Plaintiffs' burden to offer such evidence.  Rather, the "heavy burden" is on Defendants.  *See supra* Section II.B.  In any event, Defendants cannot meet that burden when they "vigorously defend" the constitutionality of their system and, more importantly, when not even Defendants claim that their new practices are different in ways that would fix the constitutional violations.  *Id.*  Therefore, the insistence that Plaintiffs and the Court

focus on evolving practices is not only legally incorrect, but makes no practical difference to the case because the same legal disputes would still need to be resolved since Defendants' much-discussed changes, as they describe them, *do not cure the constitutional violations Plaintiffs allege*.

Defendants dispute the substantive findings and procedural safeguards required for pretrial detention—they even join in full the Fourteen Judges' argument that every person charged with a crime in the United States may be constitutionally detained automatically and without any hearing *at all* so long as probable cause exists. Dkt. 433 at 9 (incorporating legal arguments of the Fourteen Judges); Dkt 432 at 31-59. That position is the definition of an active controversy between the Plaintiff class and Defendants. This Court was correct to reject Defendants' mootness arguments. Dkt. 423 at 4.

Moreover, the point of Plaintiffs' summary judgment motion was not to proffer evidence that Plaintiffs do not possess about evolving practices. Plaintiffs must take discovery and analyze data on what those practices are. Instead, Plaintiffs explained that the focus of their summary judgment motion is on the legal requirements at a hearing that determines pretrial release or detention hearing, Dkt. 400 at 2, 29-31, and further explained that one of the main focuses of the *trial* would be to assist the court in crafting injunctive relief based on more recent evidence of how the system is functioning, for example after the new risk assessment tool and the opening of the joint processing center. There are many ways that Harris County can operate its system, and it may adopt different a one in the future. The key is that any system protects the basic constitutional rights about which Plaintiffs seek summary judgment as a matter of law. It will be important for the Court to hear evidence about Defendants' current system, not for purposes of determining Defendants' liability, but rather to determine the contours of appropriate injunctive relief that is flexible and as consistent as possible with the new infrastructure developed by the County.

Finally, the cases cited by Defendants are no help.  Dkt. 433 at 5-7.  *Golden v. Zwickler*, 394 U.S. 103, 108 (1969), is hornbook law that the Article III case or controversy requirement precludes prospective relief if there is no active controversy between the parties.  It is irrelevant here because the parties continue to dispute what the law requires and Defendants "new" proffered practices do not resolve Plaintiffs' claims.  Defendants also cite *Meltzer v. Bd. of Pub. Instruction of Orange Cnty., Fla.*, 548 F.2d 559, 565 n.10 (5th Cir. 1977), but the proposition for which they cite it is merely that the Article III case or controversy requirement exists throughout a case.  Neither of those cases helps Defendants prove that *this* case somehow lacks a controversy *now*.

### C.  Defendants' Arguments on the Merits Fail

Defendants adopt by reference all of the Fourteen Judges' arguments on the merits.  Plaintiffs respond to those arguments separately.  But Defendants briefly make three additional arguments about Plaintiffs' substantive and procedural due process claims.  Each argument fails.

First, Defendants argue that Plaintiffs' "substantive due process" claim[7] fails because (1) Defendants now inquire into ability to pay, Dkt. 433 at 10; and (2) the Constitution does not require Defendants to determine whether an arrestee can pay the amount of money required, or, if the person cannot, whether detention is "necessary."  Dkt. 433 at 11-12 ("[W]hether a person can *actually* afford $1,000 or whether detention is "necessary" are immaterial." (emphasis in original)).

As an initial matter, Defendants' arguments rely on their factual assertions of their "evolved" practices and are therefore irrelevant to Plaintiffs' motion.  There is no dispute that, under the system challenged by Plaintiffs, which Defendants continue to defend, there was no inquiry into ability to pay or the provision of any financial affidavit.

---

[7] Defendants continue to confuse Plaintiffs' "substantive" constitutional claims—which arise under *both* Equal Protection and Due Process—with Plaintiffs' substantive due process claim.  Dkt. 465 at 12.

More fundamentally, although couched as a factual dispute, Defendants are making the legal argument that the Constitution requires only a "meaningful consideration" of alternatives and not any substantive finding of "necessity." Dkt. 433 at 11. That argument fails as a matter of law, and Plaintiffs address it in response to the Fourteen Judges' merits arguments. Dkt. 465 at 17-20. For present purposes, it is important to highlight only one aspect of this argument: Defendants' claim that a person can be detained prior to trial because she cannot pay $1,000 even if the government's interests could be served by less restrictive alternatives. Dkt. 433 at 12. Plaintiffs disagree. Plaintiffs claim that federal law prohibits the government from detaining a person prior to trial if the government's interests could be served by alternative means. That is the crux of an important controversy between the parties. There are no disputed facts relevant to that question.

Second, Defendants argue that Plaintiffs' procedural due process claims fail because the "current" system that they are operating provides sufficient safeguards. This argument fails for the several reasons already discussed: (1) As explained, Defendants' current practices, however they have "evolved," are not the subject of the summary judgment motion because Plaintiffs' claims are not moot. *See supra* Section II.B; (2) There is no dispute as to the facts relevant to Plaintiffs' motion, as Defendants do not dispute the facts relevant pre-injunction time period. *See supra* Section I; (3) Defendants' assertions are premature because Plaintiffs have not had an opportunity to explore and test them in discovery. *See supra* Section II.A; (4) Defendants concede that they are not providing the procedural safeguards that Plaintiffs argue are required, including the evidentiary standard[8] required by the Due Process Clause. Plaintiffs address the merits of the procedural due process claims in their concurrently filed response to the Fourteen Judges.

---

[8] All of the Defendants confuse the substantive legal standard (a finding that pretrial detention is necessary because alternatives are not sufficient) with the procedural evidentiary standard used to ensure confidence in the accuracy of that substantive legal conclusion (clear and convincing evidence).

Date: August 3, 2018

Respectfully Submitted,

/s/ Alec Karakatsanis
/s/ Elizabeth Rossi
/s/ Charles Gerstein
Alec George Karakatsanis
alec@civilrightscorps.org
Elizabeth Rossi*
elizabeth@civilrightscorps.org
Charles Gerstein
charlie@civilrightscorps.org
Civil Rights Corps
910 17th Street NW, Suite 200
Washington, DC 20006
Telephone: (202) 681-2721


/s/ Susanne Pringle
Susanne Pringle
Texas Bar No. 24083686
springle@fairdefense.org
Texas Fair Defense Project
314 E. Highland Mall Blvd.
Suite 180
Austin, Texas 78752
Telephone: (512) 637-5220
Facsimile: (512) 637-5224


/s/ Neal S. Manne
Neal S. Manne
Texas Bar No. 12937980
nmanne@susmangodfrey.com
Lexie G. White
Texas Bar No. 24048876
lwhite@susmangodfrey.com
Joseph S. Grinstein
Texas Bar No. 24002188
jgrinstein@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666


/s/ Michael Gervais
Michael Gervais
mgervais@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Fl.
New York, New York 10019
Telephone: (212) 336-8330


Attorneys for Plaintiffs

---

* Admitted solely to practice law in Maryland; not admitted in the District of Columbia. Practice is limited pursuant to D.C. App. R. 49(c)(3).

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of August, 2018, I electronically filed the foregoing with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the Court.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Charles Gerstein*
Charles Gerstein