**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION**

| | | |
|---|---|---|
| **MARANDA LYNN ODONNELL, et al.** | § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § § | **Case No. 16-cv-01414** **(Consolidated Class Action)** |
| **HARRIS COUNTY, TEXAS, et al.** | § § | **The Honorable Lee H. Rosenthal** **U.S. District Judge** |
| **Defendants.** | § § § | |

## MOTION FOR LEAVE TO FILE BRIEF FOR *AMICI CURIAE*

Pursuant to Fed. R. of App. P. 29, Movant seek leave to file the attached brief as *amici curiae* in opposition to parts of the *Proposed Consent Decree and Settlement Agreement* ("Settlement Agreement") reached in this case. Movant is the Harris County Deputies' Organization, Fraternal Order of Police Lodge #39 ("HCDO FOP 39"), a law enforcement labor union that represents law enforcement employees in Harris County, Texas.  HCDO FOP 39 believes that public safety concerns and the rights of victims have not been properly considered in the Settlement Agreement reached by the parties and it believes that the interest of these important groups must be considered. The *amicus brief* would provide a helpful perspective of law enforcement employees and Harris County Employees on the public safety impact of the *Consent Decree* and the effect to victims of crime.

Respectfully submitted,

/s/ *J. Marcus Hill*

1

J. Marcus "Marc" Hill
Of Counsel HCDO FOP 39
Texas Bar No. 09638150
U.S. D.C., SD TX: 4640
1770 St. James Place, Ste 115
Houston, Texas 77056
2116 Church Street
Galveston, Texas 77550
Phone: 713-688-6318
Fax: 713-688-2817
marc@hillpclaw.com


Robin E. McIlhenny
HCDO FOP 39
Texas Bar No. 24072992
U.S. D.C., SD TX: 1552147
robin@hcdo.com
5100 Westheimer Rd. Suite 105
Houston, Texas 77056
P: (713) 659-0005
F: (281) 205-0426
***Attorneys for* Amici Curiae**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed this document on this **20th day of August, 2019,** and that a true and correct copy of the foregoing was served on all counsel of record *via* **CM/ECF** system for the United States District Court for the Southern District of Texas, and/or by facsimile (pursuant to written agreement of counsel), hand delivery, or certified mail – return receipt requested.


/s/ *J. Marcus Hill*
J. Marcus "Marc" Hill

## TABLE OF CONTENTS

I.  TABLE OF AUTHORITIES ................................................................. ii

II.  INTEREST OF AMICUS CURIAE .................................................... 1

III. SUMMARY OF THE ARGUMENT .................................................. 2

IV.  ARGUMENT AND AUTHORITIES ............................................... 5

   A. Texas state law requires a judge to utilize discretion when issuing PR bonds and the *Consent Decree* runs contrary to that mandate .................................. 5

     i.   Local rules cannot go beyond the boundaries of the Tex. Code of Crim. Proc. and usurp the Legislature. .................................................. 6

     ii.  Rule 9 does not comport with the Texas Code of Criminal Procedure ...... 10

   B. Local Rule 9 as written in the *Consent Decree* is impermissible and should not be implemented ........................................................................ 12

     i.   The Parties have misled the public on the scope of Rule 9 and the lack of discretion within the rule is impermissible. ...................................... 13

     ii.  Rule 9 has no mechanism for an Individual's criminal history to be factored ................................................................................ 19

     iii. Concerns regarding the Rule 9 not protecting public safety are based on law enforcement experience. .......................................................... 20

     iv.  CCCL Judges must utilize their discretion when issuing PR bonds .......... 24

   C. This settlement is in violation of the standards of *Reed*, because the Parties are improperly asking this Court to implement a political decision designed to circumvent the taxpayers and voters of Harris County. ................................. 25

     i.   The *Consent Decree* is in violation of the *Reed* factors because it is the product of collusion, and well-meaning collusion is still collusion ........... 27

     ii.  The Harris County Voter is a Third-Party in this case that the Parties have colluded to obstruct ................................................................. 33

     iii. The Parties have created an impermissible liability .................................. 34

     iv.  The *Consent Decree* must be modified by the parties to comply with the Fifth Circuits ruling in *Odonnell v. Goodhart* and *Odonnell v. Salgado* .... 36

V. CONCLUSION ............................................................................. 37

# I.   TABLE OF AUTHORITIES

Black's Law Dictionary Online, (2nd ed.)...............................................................29

*Consent Decree*, Dkt 617-1.............................................................................. passim

*Ex parte Granviel*, 561 S.W.2d 503 (Tex. Crim. App. 1978) ...................................6

*Ex parte Smalley*, 156 S.W.3d 608 (Tex. App.—Dallas 2004, pet. dism'd) ............6

Fed. R. of App. P. 29(E) ..........................................................................................1

*Joint Motion in Support of Consent Decree*, Dkt 617 .........................................4, 15

*ODonnell v. Goodhart*, 900 F.3d 220 (5th Cir. 2018) ........................... 4, 31, 32, 33

*ODonnell v. Harris Cty.* (ODonnell I), 892 F.3d 147 (5th Cir. 2018).......... 4, 12, 14

*ODonnell v. Salgado*, 913 F.3d 479 (5th Cir. 2019)...........................................4, 33

*Reed v. Gen. Motors Corp*., 703 F.2d 170 (5th Cir. 1983) .....................................29

*State Farm Fire and Cas. Co. v. Gandy*, 925 S.W.2d 696 (Tex. 1996) .................36

*Tex. & P. Ry. Co. v. Gay*, 30 S.W. 543 (Tex. 1895)...............................................30

TEX. CODE OF CRIM. PROC. §17.15 .......................................................................10

Tex. Code of Crim. Procedure Chapter 17 .........................................................7, 9

Tex. Gov't Code § 75.403(f) ....................................................................................13

TEX. PEN. CODE § 22.01(b)(2) ......................................................................... 17, 18

TEX. PEN. CODE § 22.07(c)(1) ......................................................................... 17, 19

*Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511
   S.W.3d 28 (Tex. 2017)......................................................................................6, 13

## II.   INTEREST OF AMICUS CURIAE

1.      The Harris County Deputies' Organization, Fraternal Order of Police Lodge #39, (HCDO FOP 39) is a law enforcement labor organization representing members employed in law enforcement within Harris County, Texas or honorably retired from law enforcement entities in Harris County, Texas. HCDO FOP 39 specifically represents employees of the Harris County Sheriff's Office to include employees who work directly in the Harris County Jail, employees of all eight Harris County Constable Offices, employees of Harris County Juvenile Probation, law enforcement employees of the Harris County District Attorney's Office, law enforcement employees of the Metropolitan Transit Authority of Harris County, law enforcement employees of Spring ISD, law enforcement employees of Houston ISD, law enforcement employees of Cy-Fair ISD, and other law enforcement employees in Harris County. HCDO FOP 39 represents the interests of its members in Harris County, Texas and on the State level. HCDO FOP 39 is affiliated with the Texas Fraternal Order of Police as well as the National Fraternal Order of Police. No affiliated entity contributed or consulted in the writing of this brief.

2.      In compliance with Fed. R. of App. P. 29(E), no counsel for a party authored this brief in whole or in part. No entity or person other than HCDO FOP 39 and its counsel made any monetary contribution intended to fund the preparation or submission of this brief. HCDO FOP 39 operates a PAC fund that does make

political contributions to named parties as part of the advocacy of its membership. HCDO FOP 39 does not employ lobbyists.

### III.   SUMMARY OF THE ARGUMENT

3.      As described in the Joint Motion and Memorandum in Support of *Joint Motion for Preliminary Approval of Proposed Consent Decree and Settlement Agreement and for Approval of Class Notice*, (*Joint Motion in Support of Consent Decree*), the Parties state that the Consent Decree shall:

[1] The proposed consent decree directs compliance with the bail policies set forth in Local Rule 9, which the Parties jointly negotiated and which the Judges promulgated, to protect the rights at issue in this case, id. ¶ 30, while providing means for Defendants to update Rule 9 as necessary to ensure compliance with the Fourteenth Amendment rights recognized in this case and consistent with other state and federal law, id. ¶¶ 31–32. [2] It directs Defendants to provide arrestees representation by counsel at bail hearings and to ensure the adequacy and effectiveness of that representation through written policies and investment in defense services. Id. ¶¶ 37–45. [3] It directs the County to study the causes of non-appearance and develop a plan for mitigating them, including updating court date notification forms, creating systems for text-message and telephone reminders of court dates, launching a website providing

people access to information about their upcoming appearances, studying the leading causes of nonappearance in Harris County, and allocating money to fund evidence-based solutions to mitigate those causes, reduce unnecessary jailing, and improve court appearance rates. Id. ¶¶ 46–56. [4] It sets forth uniform and transparent court policies on court appearance, waivers of appearance at unnecessary settings, rescheduling appearances, and the issuance, recall, and execution of warrants for nonappearance, and it directs the recording and reporting of data that can be used to understand and improve the system, id. ¶¶ 57–72. [5] It requires training for Defendants and their employees and agents who will be charged with implementing Rule 9, id. ¶¶ 73–79, and [6] data collection and reporting regarding pretrial release and detention in the County, id. ¶¶ 80–89. [7] To ensure that residents of Harris County have opportunities to monitor the new system and provide input, the Consent Decree requires community meetings two times per year, id. ¶¶ 91–92. [8] Finally, the decree provides for the appointment of a Monitor, who will be in place for at least seven years, to track and report on compliance with the agreement, id. ¶¶ 95– 133, and for this Court's continuing jurisdiction to enforce it, id. ¶¶ 134–140.

*Joint Motion in Support of Consent Decree*, pg. 39, Dkt 617 (Numbering added for

reference).

4.      This is a summary of eight conditions agreed upon by the parties and extensively outlined in the *Consent Decree* attached as Exhibit 1 of the *Joint Motion in Support of the Consent Decree*. The *amici curiae*, object to certain provisions of decree to include clauses 1, 3, and 4, above. These provisions go beyond the Fifth Circuit mandate in *Odonnell I*, *Odonnell v. Goodhart*, and *Odonnell v. Salgado*, and, are therefore impermissible settlement conditions for Harris County to enter into as analyzed under the *Reed* factors established by the Fifth Circuit. *See ODonnell v. Harris Cty.* (ODonnell I), 892 F.3d 147 (5th Cir. 2018); *ODonnell v. Goodhart*, 900 F.3d 220 (5th Cir. 2018); *ODonnell v. Salgado*, 913 F.3d 479 (5th Cir. 2019). Additionally, although the Parties proclaim that public safety is a factor in this agreement, any and all discretion of the CCCL Judges to balance public safety concerns conferred to them by state law has been stripped away by Local Rule 9 (Rule 9). *See Consent Decree,* pg. 16-23, Dkt 617-1. The County, its political subdivisions, the CCCL Judges, and the Sheriff have bargained away the constitutional rights of the citizens of Harris County and have made concessions and agreements in this settlement that go beyond the original intent of this lawsuit and are beyond the jurisdiction of this Court. Finally, the *amici curiae* believe that this agreement has been created through collusion and negotiations by the Parties were not done in good faith.

5.     The *amici curiae*, as a law enforcement labor organization made up of both Harris County employees and law enforcement personnel with jurisdiction in Harris County, believe that they are bound by this agreement and will be responsible for implementing this agreement even if portions of this agreement run against their duties as peace officers and against their duties to uphold state law.

## IV.    ARGUMENT AND AUTHORITIES

### A. Texas state law requires a judge to utilize discretion when issuing PR bonds and the *Consent Decree* runs contrary to that mandate

6.     It is within the purview of the Legislature to delegate the power to establish rules, regulations, or minimum standards reasonably necessary to carry out the expressed purpose of a legislative act. *See Ex parte Granviel*, 561 S.W.2d 503, 514 (Tex. Crim. App. 1978). Delegation of rule-making authority by the Legislature may involve the exercise of discretion, but that discretion must be exercised within the standards formulated for guidance on the matter being regulated. *See Ex parte Smalley*, 156 S.W.3d 608, 610 (Tex. App.—Dallas 2004, pet. dism'd). While a rule is presumed valid, a party can challenge the rule and show the rule: (1) contravenes specific statutory language; (2) runs counter to the general objectives of the statute; or (3) imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions. *See Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 33-34 (Tex. 2017). The basic procedural framework governing the administration of bail in

Harris County is set by the Tex. Code of Crim. Proc. and any local rules adopted by county court at law judges must be consistent with this Code. *See* Tex. Gov't Code § 75.403(f). Therefore, the local rules can be valid, but must comport to the boundaries set by the Legislature. In this case, the *Consent Decree* and Local Rule 9 as stated within it, run contrary to State Law and should be struck. *See Consent Decree,* pg. 16-23, Dkt 617-1.

> **i.   Local rules cannot go beyond the boundaries of the Tex. Code of Crim. Proc. and usurp the Legislature.**

7.      The Texas Legislature has created laws concerning the issuance of bail in the State of Texas. The Tex. Code of Crim. Procedure Chapter 17 states in part:

> Art. 17.01. DEFINITION OF "BAIL".  "Bail" is the security given by the accused that he will appear and answer before the proper court the accusation brought against him, and includes a bail bond or a personal bond.
>
> Art. 17.03. PERSONAL BOND.  (a)  Except as provided by Subsection (b) or (b-1), a magistrate may, in the magistrate's discretion, release the defendant on personal bond without sureties or other security.
>
> (b)  Only the court before whom the case is pending may release on personal bond a defendant who:
>
> (1)  is charged with an offense under the following sections of the Penal Code:
>
> (A)  Section 19.03 (Capital Murder);
> (B)  Section 20.04 (Aggravated Kidnapping);
> (C)  Section 22.021 (Aggravated Sexual Assault);
> (D)   Section 22.03 (Deadly Assault on Law Enforcement or

6

Corrections Officer, Member or Employee of Board of Pardons and Paroles, or Court Participant);

(E)   Section 22.04 (Injury to a Child, Elderly Individual, or Disabled Individual);

(F)  Section 29.03 (Aggravated Robbery);

(G)  Section 30.02 (Burglary);

(H)  Section 71.02 (Engaging in Organized Criminal Activity);

(I)  Section 21.02 (Continuous Sexual Abuse of Young Child or Children); or

(J)  Section 20A.03 (Continuous Trafficking of Persons);

(2)   is charged with a felony under Chapter 481, Health and Safety Code, or Section 485.033, Health and Safety Code, punishable by imprisonment for a minimum term or by a maximum fine that is more than a minimum term or maximum fine for a first-degree felony; or

(3)  does not submit to testing for the presence of a controlled substance in the defendant's body as requested by the court or magistrate under Subsection (c) of this article or submits to testing and the test shows evidence of the presence of a controlled substance in the defendant's body.

(b-1) A magistrate may not release on personal bond a defendant who, at the time of the commission of the charged offense, is civilly committed as a sexually violent predator under Chapter 841, Health and Safety Code.

(c)   When setting a personal bond under this chapter, on reasonable belief by the investigating or arresting law enforcement agent or magistrate of the presence of a controlled substance in the defendant's body or on the finding of drug or alcohol abuse related to the offense for which the defendant is charged, the court or a magistrate shall require as a condition of personal bond that the defendant submit to testing for alcohol or a controlled substance in the defendant's body and participate in an alcohol or drug abuse treatment or education program if such a condition will serve to reasonably assure the appearance of the defendant for trial.

(d)  The state may not use the results of any test conducted under this chapter in any criminal proceeding arising out of the offense for which the defendant is charged.

(e)  Costs of testing may be assessed as court costs or ordered paid directly by the defendant as a condition of bond.

(f)  In this article, "controlled substance" has the meaning assigned by Section 481.002, Health and Safety Code.

(g)  The court may order that a personal bond fee assessed under Section 17.42 be:

(1)  paid before the defendant is released;
(2)  paid as a condition of bond;
(3)  paid as court costs;
(4)  reduced as otherwise provided for by statute; or
(5)  waived.

Art. 17.38. RULES APPLICABLE TO ALL CASES OF BAIL. The rules in this Chapter respecting bail are applicable to all such undertakings when entered into in the course of a criminal action, whether before or after an indictment, in every case where authority is given to any court, judge, magistrate, or other officer, to require bail of a person accused of an offense, or of a witness in a criminal action.

Art. 17.40. CONDITIONS RELATED TO VICTIM OR COMMUNITY SAFETY. (a)  To secure a defendant's attendance at trial, a magistrate may impose any reasonable condition of bond related to the safety of a victim of the alleged offense or to the safety of the community.

Art. 17.15. RULES FOR FIXING AMOUNT OF BAIL.  The amount of bail to be required in any case is to be regulated by the court, judge, magistrate or officer taking the bail; they are to be governed in the exercise of this discretion by the Constitution and by the following rules:

    1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

8

2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

8.     The Parties in the *Consent Decree* have knowingly usurped Texas Law by creating their own legislation as to how bail standards will be issued in Harris County. Chapter 17 of the Tex. Code of Crim. Proc. contains several provisions that run contradictory with the Parties' *Consent Decree*. The *Rules for Fixing Amount of Bail* mandates that bail, including personal recognizant bail, must be governed by the discretion of the judge or magistrate and outlines five rules that must be followed to issue any bail that includes a consideration of the safety of the victim of the offense and the community. TEX. CODE OF CRIM. PROC. §17.15. Concerns of public safety and the rights of the victims of the crimes is purposefully ignored in this *Consent Decree* and there is no mechanism for violent misdemeanors or violent offenders that are not included in the Local Rule 9 "carve out" to be individually evaluated to determine if they are a continuing threat to the public or their victims. None of these considerations were considered by the Parties. The Defendants, as political representatives, have bargained away their rights and duties under the law and have created a system whereby CCCL Judges give up their discretionary

9

responsibilities. The *Consent Decree* places CCCL Judges in violation of state law, as they were at the beginning of this litigation.

### ii. Rule 9 does not comport with the Texas Code of Criminal Procedure

9.      This brief is not designed to trivialize the policy concerns that go into setting an equitable bail system, but this litigation does not allege that the Texas Rules of Crim. Proc. related to bail are unconstitutional, but, rather, that Harris County Misdemeanor Courts were not adequately following those procedures thereby creating an unconstitutional system. As discussed *supra*, the Texas Legislature has designed a bail system that provides for the balancing of public safety with individual rights of liberty by creating procedures for a magistrate or judge to conduct an individual hearing and determine, based on his or her discretion, what amount, if any, bail needs to be set to balance the concerns of the public, the court, and the individual. There is no allegation in this litigation that the State's bail procedures are unconstitutional.  Under the bail rules, a person can commit capital murder and receive a personal bond at the discretion of the judge hearing the case. There are at least two individuals right now in Harris County on bond who are charged with capital murder. It is within the discretion of the judge in that case to set bail for those individuals. The purpose of the Texas Legislature in mandating that each judge utilize their own discretion in setting bail amounts is that 1) the individual

circumstances of the case are evaluated, 2) the constitutional rights of the individual are maintained, and 3) the threat to the public from that individual (if any) is evaluated. The Judge is then responsible to the voter for how he or she utilizes their own discretion in each case and the voters can approve or disapprove of it through their vote.

10.     The complaint in the litigation before this Court is that Harris County had created a system that the "fundamental source of constitutional deficiency in the due process and equal protection analyses is the same: the County's mechanical application of the secured bail schedule without regard for the individual arrestee's personal circumstances." *Odonnell v. Harris Cnty.*, at 163. In effect, Harris County was ignoring the Legislature's mandate to have individualized hearings to ascertain the proper amount of security or conditions for bail, if any, or to issue PR bonds. This did not adequately protect the individual's liberty interest under equal protection and due process as discussed by the Fifth Circuit and this system was contrary to State Law.

11.     Under the *Consent Decree*, however, the Parties are attempting to swing the pendulum the other way, whereby PR bonds are automatic and there still are no individualized hearings. Under this scenario, there is no protection for public safety. Individuals are released without any consideration if they are a threat to society. The rules the Legislature has set out requires an individualized hearing for

11

bail, so that public safety and the individual's liberty can both be protected and considered. The proposed local rules are inconsistent with the Tex. Code of Crim. Proc., impose additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions by removing the individualized hearing process and imposing new substantive rights. *See* Tex. Gov't Code § 75.403(f); *and See Tex. State Bd. of Exam'rs of Marriage & Family Therapists at 33-34.* Without the individualized hearing, the bail system will fail because on the one end an automatic money bond system is unconstitutional and on the other, an automatic PR bond system is against State Law. The real issue in this case is the continued insistence of CCCL Judges to usurp their constitutionally mandated discretion in favor of rules that create a blanketed automated system when all parties to the criminal justice system deserve a personal evaluation.

### B. Local Rule 9 as written in the *Consent Decree* is impermissible and should not be implemented

12.     The CCCL Judges have already implemented Rule 9; however, its continued implementation is a mandatory component of this settlement agreement making any changes to the rule subject to this Court's jurisdiction as well as the parameters of the *Consent Decree*. This ultimately acts as a veto against the public from electing different judges to modify Rule 9 in the future. In Rule 9, the CCCL Judges have abdicated their constitutionally mandated discretion in determining bail conditions for each individual arrestee by creating a system of automatic PR bond

release. As the Fifth Circuit stated in *Odonnell I*, the issue in this litigation is that the CCCL Judges created an unconstitutional money bail system by not using their discretion in determining bond conditions per individual. *ODonnell*, 892 F.3d 147 (5th Cir 2018). It, therefore, cannot be a permissible solution to rectify that wrong by allowing the CCCL Judges to continue to not use their discretion in determining bond conditions. This new arrangement creates disparate groups in different ways by not considering public safety in the issuance of PR Bonds as mandated by Texas Law.

> i. **The Parties have misled the public on the scope of Rule 9 and the lack of discretion within the rule is impermissible.**

13.     The parties stated in the *Joint Motion in Support of the Consent Decree* that Local Rule 9 is a mandatory component of the *Consent Decree.* The Parties summarize Rule 9 as:

- Rule 9 requires the prompt pretrial release of all misdemeanor arrestees on a personal (unsecured) bond as soon as practicable after arrest unless they fall into a carve-out category. (Rule 9.2)
- The carve-out categories include:

  - Individuals arrested for domestic violence, or for violating a protective order in a domestic violence case (Rule 9.4.1);

  - Individuals arrested for assault or terroristic threat (Rule 9.4.2);

  - Individuals arrested for a second or subsequent DUI (Rule 9.4.3);

- o  Individuals arrested and charged with a new offense while on pretrial release (Rule 9.4.4);

- o  Individuals arrested on a warrant issued after a bond forfeiture or bond revocation (Rule 9.4.5);

- o  Individuals arrested while on any form of community supervision (Rule 9.4.6).

*Joint Motion*, pg. 25..

14.     This "carve out" as described above is vastly different then the Rule 9 printed in the *Consent Decree* that is actually intended to be binding on the Parties. In the *Consent Decree*, Rule 9 states:

> 9.4     All misdemeanor arrestees must be released on a personal bond or on non- financial conditions as soon as practicable after arrest, except those who fall within the following categories, who may be detained for up to 48 hours for an individualized hearing:
>
> 9.4.1    Individuals arrested and charged under Penal Code § 25.07;
>
> 9.4.2    Individuals arrested and charged under Penal Code § 22.01, against a person described in Penal Code § 22.01(b)(2), or individuals arrested and charged under Penal Code § 22.07(c)(1);
>
> 9.4.3    Individuals arrested and charged under Penal Code § 49.04 and who the State gives notice may be subject to Penal Code § 49.09(a) for a conviction that became final within the past five years;
>
> 9.4.4    Individuals arrested and charged with any new offense while on any form of pretrial release;
>
> 9.4.5    Individuals arrested on a capias issued after a bond forfeiture or bond revocation; and

14

> 9.4.6    Individuals arrested while on any form of community supervision for a Class A or B misdemeanor or a felony offense.

*Consent Decree,* pg. 17-18..

15.    The two descriptions do not comport. The Parties state that all individuals charged with assault and terroristic threat will have a hearing on bond and bond conditions (presumably with public safety being a factor). However, in Rule 9.4.2, only "[i]ndividuals arrested and charged under Penal Code § 22.01, against a person described in Penal Code § 22.01(b)(2), or individuals arrested and charged under Penal Code § 22.07(c)(1)" are subject to the "carve out." *Consent Decree,* pg. 18. Penal Code § 22.01(b)(2) applies to "a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code." TEX. PEN. CODE § 22.01(b)(2). This is more commonly known as assault family violence or domestic violence. Penal Code § 22.07(c)(1) applies to terroristic threat that "is committed against a member of the person's family or household or otherwise constitutes family violence." TEX. PEN. CODE § 22.07(c)(1). Again, this carve out will only apply to terroristic threats specifically involving a family violence.

16.    Under the canons of rule construction, every word must be given meaning and every mark of punctuation must be given effect. If the Parties had intended for individuals who commit any type of misdemeanor assault and terroristic

threat to be carved out, they would have simply written 9.4.2 to say: "Individuals arrested and charged under Penal Code § 22.01 or individuals arrested and charged under Penal Code § 22.07." There would be no ambiguity and the meaning would be clear. Instead, the Parties chose to include additional limitations on what would have been the clear and unambiguous language. For assaults the Parties include the clause, "[i]ndividuals arrested and charged under Penal Code § 22.01, against a person described in Penal Code § 22.01(b)(2)." *Consent Decree,* pg. 18. Section 22.01(b)(2) of the Penal Code increases an assault from a misdemeanor to a felony when the assault is against a family member AND "(A), it is shown at trial of the offense that the defendant has been previously convicted under chapter 22, or (B), the offense is committed by intentionally, knowingly, or recklessly applying pressure to the neck area or blocking a person's mouth or nose." TEX. PEN. CODE § 22.01(b)(2). The language the Parties have chosen is silent as to whether subsection (A) or subsection (B) apply. It can be presumed, however, it does not apply, because then the offense would be a felony, which is beyond the scope of Rule 9, making the language absurd. Since, a rule cannot be constructed in an absurd fashion, it must be assumed that only the use of the definition of who the offense is against is to apply. That definition being the definition of family member for the purposes of a domestic violence assault. Therefore, the rule reads plainly as follows, "individuals arrested and charged with assault against a family member, […]."

16

17.     The comma before "against a family member" as written in Rule 9 is not to denote another item in the carve out list, but, instead, is a break between the clauses. Under the canon of rule construction, clauses cannot be given a superfluous meaning. To read the assault portion of the rule as to apply to all types of assaults – and this already includes domestic assault – makes the Section 22.01(b)(2) language superfluous as it would already be included under Section 22.01. Section 22.01(b)(2) does not actually include any reference to the offense of assault and therefore, the Parties must include a reference to 22.01 to include the actual elements of the assault offense even though assaults against a family member is already incorporated into Section 22.01.

18.     The second half of Rule 9.4.2 refers to the crime of terroristic threat. This offense is very simply defined as a person threatening violence unto another or the public by placing them in fear of serious bodily injury. Rule 9.4.2 specifically states that automatic PR Bonds will not be given to "[…] individuals arrested and charged under Penal Code § 22.07(c)(1)." TEX. PEN. CODE § 22.07(c)(1); *Consent Decree,* pg. 18. Penal Code § 22.07(c)(1) is an enhancement clause and specifically only covers threats against family members. The plain language of Penal Code § 22.07(c)(1) is a person threatens to place a member of that person's family or household in fear of imminent serious bodily injury. The rule specifically and purposefully excludes other enhancements in the Code to include 22.07(c)(2) when

17

the terroristic threat is made against a public servant as well as excluding a general offense of terroristic threat. *See* TEX. PEN. CODE § 22.07(c).

19.     Read together, the plain language of Rule 9.4.2 is as follows: Individuals arrested and charged with assault against a family member or individuals arrested and charged with terroristic threat against a family member. Further, Penal Code § 22.07(c)(1) does not need a reference to Penal Code § 22.07 like Penal Code § 22.01(b)(2) because Section 22.07(c)(1) already refers to the elements of the offense by referencing (a)(2) of the same section. The Parties have clearly intended in the application of Rule 9 that only assaults and terroristic threats that are against family members are carved out despite the Parties summations to this Court that Rule 9 will create carve outs for all individuals charged with assault and all individuals charged with terroristic threat.

20.     Besides the fact that Rule 9 in application leaves out assaults and terroristic threats that the Parties purport to the Court and to the public would not be eligible for automatic PR bonds, there are additional violent offenses that are not incorporated into Rule 9 that place the public and victims in danger, including, deadly conduct, unlawful possession of a firearm, other violations of protective orders that do not involve family members, and other acts that put the public at increased danger such as false reporting of bombs and hoax bombs and other derivative crimes. There are other offenses that based on the circumstances in which

18

they were committed, could pose a significant threat to the public such as criminal mischief, theft, criminal trespass, and public lewdness. There are other misdemeanors where the offender in most circumstances poses a danger to themselves such as public intoxication and public disturbance; however law enforcement is disallowed by Rule 9 from holding individuals who are intoxicated unit they have sobered unless they are charged with driving under the influence and there is no mechanism in Rule 9 to assist an individual who is in a mental health crisis or needs mental health intervention.

21.    Rule 9 significantly narrows what the public understood to be the limits of bail reform and purposefully discounts public safety. The Parties have made public statements that automatic PR bonds would not be issued to violent offenders but Rule 9 will not fulfill that promise in practice. An individual can commit an assault and any number of violent crimes against a person and receive an automatic PR bond. Public safety is not served by this process and it is not accountable to the victims of these offenses or to the public at large.

### ii.    Rule 9 has no mechanism for an Individual's criminal history to be factored

22.    Rule 9 does not have a trigger for a bond hearing based on an individual's criminal history. An individual can be convicted on an offense and then arrested for the same offense and still qualify for an automatic PR bond without the rights of the victims or public safety being considered. It is also true that an

individual can have a lengthy criminal history that includes violent offenses but that individual would be granted an automatic PR bond without the CCCL Judges utilizing their discretion on that individual. This is another example at how Rule 9 and the *Consent Decree* disregards the rights of the public and public safety.

### iii.    Concerns regarding the Rule 9 not protecting public safety are based on law enforcement experience.

23.    The *amici curiae* have these concerns based on law enforcement experience. The *amici curiae* additionally represent residence of Harris County that do not believe that the Parties have adequately informed the public of the very intended results of the *Consent Decree*. It is easy to pluck from the headlines instances in Harris County where the public would expect their safety would be evaluated before a PR Bond was issued but, in many cases daily, violent offenders are receiving automatic PR bonds without there being an evaluation from a Judge as to the individual's danger to the community.[1]

24.    In July 2016, a truck and a sedan approached that intersection at W. Greens Road and Cutten Road in the Willowbrook area of Harris County. The truck

---

[1] The examples in this section are based on reports from the news media and public records and are not based on cases any one member has handled or based on facts only available to law enforcement. These are historical examples of real incidents in Harris County that are typical of misdemeanor arrests made by law enforcement but then are discussed as to how Rule 9 would now apply to these cases. The *amici curiae* believe that it would be fair to the public for a report to be generated of one week of misdemeanor arrests in Harris County to list the offense arrested for, whether the person had a criminal history that included violent offenses, and whether the individual received an automatic PR bond or met with a hearing officer or judge. Rule 9 has already been in place in Harris County and the data should be available to Harris County. Based on our collective experience in law enforcement on the streets and in the county jail, we believe that the number of violent offenders that received automatic PR bonds would shock the public and better inform them of how the *Consent Decree* would be implemented moving forward.

blew through the red light and the sedan honked its horn at the truck in a warning to other drivers. The driver of the truck proceeded to tailgate and follow the sedan dangerously. The incident ended when the truck cut off the sedan by going the wrong way down the street. The driver exited the vehicle with a handgun in his hand and pointed the gun at the sedan. He slammed his fists into the sedan's hood leaving dents. The incident was captured on video. The driver of the sedan was in fear of his life. The two drivers did not know each other. The driver of the truck was charged with criminal mischief and terroristic threat. He has a criminal history of two previous assaults linked to fights instigated by him in 2013 and 2014. Both cases were completed in 2015 and he was not on probation or bond at the time of the road rage incident. If this incident were to take place today in Harris County under the current Rule 9, the driver would receive an automatic PR bond without an assessment of his potential danger to the community and there would be no mental health assessment given to him. His criminal history would not be evaluated when he was issued a PR bond and no conditions would be placed on him to restrict his access to firearms. He would be free within hours of his arrest to drive his truck on the roads of Harris County.

25.    In February 2019, a man at his residence in Harris County got into an argument with a neighbor. The argument became heated to the point where the resident got a shotgun and fired into the ground four times near the neighbor, putting

him in fear of his life and putting the neighbor in danger of bodily injury. When law enforcement arrived, it was discovered that the resident was intoxicated. The resident was charged with deadly conduct. In this incident, the resident would receive an automatic PR bond. It would be impermissible for law enforcement to hold him for eight hours to allow him to sober up because it is only specifically permissible to do so under Rule 9 on offenses of driving under the influence. Within hours of his arrest, he would be returned to close proximity of his victim without any evaluation of his mental condition or if he posed a danger to himself or others.

26.     In January 2018, two men got into a verbal altercation in Harris County. They were both adult family members that did not share a residence. One of the men escalated the fight by pulling a knife and coming from the victim from behind trying to assault him. The victim escaped uninjured. The man with the knife was charged with deadly conduct. Under Rule 9 as written, the suspect would have received an automatic PR Bond without an evaluation if he posed a continuing danger to the public, his family, or to himself.

27.     In late July 2019, a man was sitting in the public area of an apartment complex in Cypress. He was a resident of the complex. He held a shotgun and would rack the gun as residents walked by. He also pointed the gun at several people. Many people feared for themselves and their families. The man was charged with deadly conduct and under Rule 9, he would recieve an automatic PR bond to return to the

22

apartment complex hours after his arrest. There was no assessment made on his continued danger to his neighbors or the public. There was no evaluation of his mental health and there were would be no bond conditions to restrict his ability to be in possession of firearms.

28.     In May 2018, a Harris County neighborhood was placed on lockdown when it was reported that there were bomb making materials inside a home and neighbors believed the resident was currently mixing dangerous items. Law enforcement was able to remove from the home several different types of materials that could be used to make a bomb. The resident of the home had a history of domestic violence calls but had no pending charges or probation. He was charged with deadly conduct. The man would receive an automatic PR bond upon his arrest and would return the same day to the neighborhood he gripped in fear for several hours. There would have been no evaluation if this man was a danger to his neighbors, the community, or to himself.

29.     In February 2018, in Katy, a man was involved in a road rage incident with a teenage driver. The man followed the teenager in his car, tailgating him. The incident escalated when the man intentionally side swiped the teenager's vehicle, breaking the side mirror. When the teenager stopped his car, the man got out of his vehicle and punched the teenager in the stomach before driving off. The man was charged with criminal mischief and misdemeanor assault. Under Rule 9, this driver

would receive an automatic PR bond. There is no trigger in Rule 9 for when someone is simultaneously charged with multiple misdemeanors. His mental health would not have been evaluated nor would there be any kind of assessment whether he posed a danger to the public. He would have been freed within hours of his arrest to drive the streets of Harris County.

30.     In June 2017, a man was arrested at Discovery Green in downtown Houston after he was found to be watching children on the playground and masturbating. Pictures of him were taken by victims and given to police as evidence of his arrest. Under Rule 9, there would be no evaluation of this man's continued danger to the public and his criminal history, which included eleven other offenses at the time of this charge, would not have been considered when he was issued a PR bond.

31.     Rule 9 as written is not fair or just to the victims of crime or to the community. The examples above certainly are not exhaustive and, unfortunately, they are not rare within the Harris County metropolitan area. Law enforcement works very hard to keep the community safe but Rule 9 does nothing to serve the citizens of Harris County that find themselves to be the victims of violent crimes.

### iv.     CCCL Judges must utilize their discretion when issuing PR bonds

32.     The CCCL Judges should have to use their Constitutionally and Legislatively given discretion in determining PR bonds for individuals arrested and

they should follow the law and consider the risk to the community each individual may pose. By bargaining away that discretion, when the voters elect new CCCL Judges after the implementation of this agreement due to the onslaught of violent crime in Harris County, the new CCCL Judges will have to sue in order to regain their Constitutionally held discretion.

33.     The *amici curiae* strongly advocate that any rule adopted should force the CCCL Judges to make judicial findings as required by law and have the flexibility to evaluate the dangers of offenses that occur against individuals and the public. If automatic PR bonds are found to be legally permissible, there should be more offenses included into the Rule 9 carve out so that it includes all violent offenses and offenses that have a high potential of posing harm to the public and the offender. Additionally, there should be a mechanism where a law enforcement officer or employee of the district attorney's office can flag individuals they believe pose a danger to themselves or others based of their offenses, criminal history, and circumstances of the incident and those individuals should have a bail hearing within a specified period of time.

**C. This settlement is in violation of the standards of *Reed*, because the Parties are improperly asking this Court to implement a political decision designed to circumvent the taxpayers and voters of Harris County.**

34.     The Parties in the *Consent Decree* have created a long list of allegations and harms that they are attempting to address in the agreement that go beyond the

25

scope of this litigation. The constitutional violation at issue in this case is the automatic money bail schedule. The *Consent Decree* contains complaints against ICE detainment, allegations that judges manipulated the judicial system, arguments about wealth disparately, arguments about racial inequality in the justice system, and coercive actions by the government against its citizens. These issues are complicated and nuanced; however, these issues do not allow Harris County and its associated entities to go beyond what they are legally able to in a settlement agreement outside the regular political process. This *Consent Decree* is a plain attempt to circumvent the ability of voters to determine when the government can go beyond the protections outlined in the Constitution and unapologetically goes beyond the jurisdiction of this Court to bind the County for years passed regular voting systems. In order to protect the citizens of Harris County, the Court should strike the *Consent Decree* and instruct the Parties to settle on issues tied solely to the actual constitutional harm complained of in this litigation – the CCCL Judges failing to use their constitutional discretion per individual arrestee and implementing a harmful automatic money bail system.

35.    In order to prevent class action settlement agreements from being abusive, the Fifth Circuit defines reasonableness by a six factor test drawn from *Reed v. Gen. Motors Corp.*:

> (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration

26

of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles to prevailing on the merits; (5) the possible range of recovery and the certainty of any damages; and (6) the respective opinions of the participants, including class counsel, class representatives, and the absent class members.

*Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).

36.     The *Consent Decree* violates factors 1, 4, and 5 of the *Reed* test, and, therefore, should be struck and the Parties should be instructed by this Court to come to an agreement that follows previous Fifth Circuit mandates and only addresses the constitutional harm at direct issue.  While *Reed* traditionally focuses on protecting the class in distributing funds, it should be applied here to make sure that the Harris County Defendants have the authority to settle this case in this manner, in protection of the residences of Harris County.

>    **i.    The *Consent Decree* is in violation of the *Reed* factors because it is the product of collusion, and well-meaning collusion is still collusion.**

37.     Collusion has been defined by Black's Legal Dictionary as a, "A secret arrangement between two or more persons, whose interests are apparently conflicting, to make use of the forms and proceedings of law in order to defraud a third person, or to obtain that which justice would not give them, by deceiving a court or its officers." Black's Law Dictionary Online, (2nd ed.). The idea that the Parties on the opposite end of a Court case would work together in secret is not a

27

new or novel concept. The Texas Supreme Court has been concerned with parties manipulating the court system as far back as 1895 when it addressed the issue of collusion in *Tex. & P. Ry. Co. v. Gay*, 30 S.W. 543, 544 (Tex. 1895) (A court appointed receiver charged with aiding a widow and her minor child was in fact an employee of the railroad company responsible for her husband's death and failed to effectuate her claims against the receiver's employer. The railroad company colluded to get a favorable receivership appointment in order to protect their liability in creating the need for the receivership thereby guaranteeing themselves remedy they were not otherwise entitled to).

38.     In order to prove collusion, there must be a showing of facts that go towards proving the likelihood of collusion. In this case, collusion occurred after the November 2018 county-wide election when the new political establishment in Harris County sought to use this litigation to further policy goals outside traditional political avenues to its implementation. The Parties in this case have colluded because they are seeking in this agreement remedies that are beyond the scope of the original litigation and creating remedies that they would not otherwise be entitled to through this litigation process.

39.     This Court issued an injunction in this case that was appealed by the Defendant CCCL Judges. Instructions were set by the Fifth Circuit for the District Court to use as a model. Another injunction was issued by the District Court and

that, also, was appealed to the Fifth Circuit and a stay was issued. In the August 14,
2018 ruling, the Fifth Circuit stated that the four sections of the injunction that were
added beyond the perimeters supplied by the *Odonnell I* court were impermissible.
*Odonnell v. Goodhart*, at 222. These sections were 7, 8, 9, and 16 on the District
Court Injunction. Section 7 stated that the "County cannot hold indigent arrestees
for the 48 hours preceding their bail hearing if the same individual would have been
released had he been able to post bond." *Id.* Section 8 required the County to release,
on unsecured personal bond, all misdemeanor arrestees who had not had a hearing
and individual assessment within 48 hours. *Id.* at 223. Section 9 designed procedures
to implement Section 8. Section 16 was designed to grant relief to "misdemeanor
arrestees who are rearrested on misdemeanor charges only or on warrants for failing
to appear while released before trial on bond (either secured or unsecured)." *Id.*
(internal cites are omitted).

40.    As part of the discussion, the Fifth Circuit noted that the issue in this
case "was the *automatic* imposition of bail. Individualized hearings fix that problem,
so immediate release is more relief than required and thus violates the mandate rule
and is not required by the Constitution." *Id.* at 225. The Fifth Circuit stated that
Section 7 was not constitutionally required. Further the Fifth Circuit went on to note,
"[s]ections 8, 9, and 16 are likewise not constitutionally required." *Id.* at 228. The
District Court described those sections as consistent with *ODonnell I*, concluding

that the production of a report of those awaiting a hearing does not preclude the remedy of release. *ODonnell I* expressly provided only procedural relief could be granted. *Id.* at 225. "Because the new injunction again orders release of an indigent arrestee with no strings attached and before an opportunity for the County to provide the strings, the injunction circumvents the purpose of bail and ultimately eliminates secured bail, all in violation of *ODonnell I*." *Id*. The grant of automatic release smuggles in a substantive remedy via a procedural harm. That goes too far. "The due process and equal protection relief found sufficient in *Odonnell I* did not contemplate release, and it follows that such relief is improper." *Id.* at 228. The Fifth Circuit ultimately held that the motion to stay filed by the fourteen CCCL Judges (in place prior to the election) was granted as these four provisions went beyond the scope of this litigation and beyond what is constitutionally required.

41.     Then, the November 2018 election occurred and a new wave of judges, commissioners, and other officials were elected as is noted in the in the *Consent Decree*. One of the first things these officials did was file to dismiss the appeal underlying *Odonnell v. Goodhart*, in order to try and vacate the Fifth Circuit opinion disallowing automatic release as a remedy. Normally parties do not seek to vacate opinions that they have won. The Fifth Circuit addressed the motion to vacate. In a two page opinion, the Fifth Circuit dismantled the motion to vacate as "seriously flawed" to seek on the grounds of an election and that the "Supreme Court has held

flatly to the contrary." *Odonnell v. Salgado*, at 481-483. The Fifth Circuit's holding is clear and leaves no room for ambiguity.  "As a result of the dismissal, the published opinion granting the stay is this court's last statement on the matter and, like all published opinions, binds the district courts in this circuit." *Id.* at 482. The Fifth Circuit's opinion on this matter is that Section 7, 8, 9, and 16 were not constitutionally required and thereby go beyond the scope of this litigation and are impermissible.

42.     The logic underlying *Odonnell v. Goodhart* and *Odonnell v. Salgado* is clear, the government cannot agree to substantive remedies that go beyond what is constitutionally required and that the government cannot seek to undermine the stated position of the Courts by virtue of elections. Political bodies of the State cannot bargain away their legal responsibilities. Unhappy with this result, the Harris County Defendants, under new elected officials, are now trying yet again to circumvent the Courts and their own mandated responsibilities by making these impermissible rules binding on the County by agreeing to them in the filed *Joint Motion in Support of Consent Decree* and *Consent Decree*. The *Consent Decree* is a blatant attempt to circumvent the Courts and to bargain away the Defendants' political responsibilities. The Harris County Defendants are now making decisions based purely on political motivations that now align with the same political aims as the Plaintiffs, but the Defendants are taking their agenda out of the political arena

31

impermissibly in order to circumvent the regular political processes that would be in place for them to implement these policies.

43.     The *Consent Decree* contains the following provisions that are in violation of *Odonnell v. Goodhart*. Paragraphs 30-36, outlines the bail model and rules that are nearly identical to Section 7, 8, and 9 discussed above that was found to be impermissible by the Fifth Circuit. Additionally, paragraphs 46-72 are an extreme version of Section 16 that was also struck by the Fifth Circuit. For example, paragraph 50 requires the County to adopt a text-message-based and telephone-based reminder services of hearings; paragraph 52 requires the County to hire researchers to study causes of nonappearance and recommend cost-effective policy solutions and programmatic interventions to mitigate the causes of nonappearances; paragraph 52 requires the County to allocate $250,000 annually for an indefinite period towards assisting and supporting indigent misdemeanor arrestees in making court appearances; and paragraph 54 requires the County to allocate at least $850,000 per year for seven years towards mitigating the causes of nonappearance in the County. *Consent Decree,* pg. 27-37. None of these paragraphs would be held as a valid judgment against the Defendants by the Fifth Circuit because it is well beyond what is constitutionally required as discussed above. The Fifth Circuit has conclusively stated they would not support such an award and, therefore, it should not be permitted in a settlement involving a government entity. This also does not

factor in whether these costs are unfunded debts impermissible under the Texas Constitution.

44.     For these reasons, the *Consent Decree* before this Court is in violation of factors 1, 4, and 5 of *Reed* test. The Parties have colluded in order to create an agreement that goes beyond the bounds of this litigation in order to circumvent the political process that would traditionally be utilized to effectuate these political agenda goals.

### ii.     The Harris County Voter is a Third-Party in this case that the Parties have colluded to obstruct

45.     One of the more common types of collusion documented in Texas case law is in the context of insurance cases when plaintiffs and defendants collude together to effectuate recovery beyond what they would win under litigation knowing a third-party insurance company would be responsible for the payout. *See State Farm Fire and Cas. Co. v. Gandy*, 925 S.W.2d 696 (Tex. 1996). In the context of this *Consent Decree*, the taxpayers act as the insurance company of the Defendants, being the political entities authorized by the taxpayers. Harris County and its associated governmental entities have no way to generate funds save to tax its residents; therefore, the unspoken party in this case are the taxpayers of Harris County who have a stake in this litigation and are additionally made up of Class Members.

46.     The Harris County Defendants settled this *Consent Decree* in part

because the Class Counsel, Susman Godfrey, agreed not to collect the fees to which it is entitled in this case ($2,161,262) in consideration of the County's promise to allocate that amount of money towards its efforts to meet the needs of class members, as described in the *Consent Decree*. Most, if not all, of the items the *Consent Decree* contemplates requiring funding by the Defendants goes beyond the Fifth Circuit ruling. The money is taxpayer money and this *Consent Decree* is mandating how it shall be utilized outside of the political process. The Defendants have a duty to the residents of Harris County and that duty should be addressed by this Court. When there is a non-party third party who could ultimately be responsible for paying the settlement, the parties have a huge incentive to settle the case for reasons beyond reasonable because, ultimately, the parties do not bear the burden of the settlement. In this case the Defendants have bargained away the legal responsibilities they have towards the Harris County voter. This is analogous to insurance settlements in that both parties are bargaining away the resources of a third-party beyond what they would reasonably be able to gain through litigation and this is something Texas Courts look at with caution to insure a proper settlement was conducted that considers the rights of the third-party that would ultimately hold the liability of the agreement.

### iii.    The Parties have created an impermissible liability

47.    Under the law, this *Consent Decree* cannot give individuals new

property rights that go beyond what the Constitution requires. Under our system of government, that ability lies only with the Texas Legislature. For example, should this *Consent Decree* go into effect and the County's new notification system goes down, individuals affected by it would now have new legal defenses as to why they missed their hearing and new § 1983 actions against the County. This is an unfunded liability that is not cured by a short force majeure clause.

48.    Further, all these new rights in the *Consent Decree* are not subject to revocation by the voters, but rather subject to a third-party Monitor. The voters of Harris County have no mechanism to vote in officials that will have the ability to change this notification system and if the voters try, the Monitor can veto them. The only solution is more costly litigation, which undercuts the given rationale for why Harris County parties agreed to this settlement.

49.    This *Consent Decree* contains elements that exist purely to circumvent the ability of voters to determine how they are governed. By using this Court to create new substantive policies, the County sets a very dangerous precedent. Just because Commissioner's Court approved the *Consent Decree* is not the same as Commissioner's Court passing these policies in open session, subject to public comment, with administrative and judicial oversight, and subject to the consequences of the policies through the voting process.

iv.   The *Consent Decree* must be modified by the parties to comply with the Fifth Circuits ruling in *Odonnell v. Goodhart* and *Odonnell v. Salgado*.

50.   The portions of the *Consent Decree* that addressed the automatic imposition of money bail and ensured individualized hearings with counsel to fix that problem are valid for Harris County Defendants to settle, but, requiring the County to create numerous new substantive rights and to fund these rights without having Harris County voter approval are impermissible under the law. The Fifth Circuit made it clear the money bail system was unconstitutional because the CCCL Judges were not using their constitutional discretion to properly evaluate bail for each individual, causing individuals to languish in jail. Now, the Parties have gone the complete opposite way by automatically giving individuals PR bonds, the CCCL Judges still are not using their constitutional discretion to properly evaluate bail for each individual but are putting the burden on the community for violent offenders to be left unevaluated. The Parties have not really solved the base issue of this litigation but have merely flipped the politics of the issue. They now expect the Harris County taxpayer to fund a multi-year liability without proper approval.

51.   The *Consent Decree* before the Court cannot be approved as written and, therefore, should be rejected. The Parties should be sent back to the negotiating table and instructed that they must follow Fifth Circuit mandates when reaching this agreement. The Defendants should be reminded that they represent all the citizens

of Harris County.

## V.    CONCLUSION

52.    For the reasons given above this Court should strike the *Consent Decree*

and require the Parties to either continue litigating the case or to settle the case in a

manner that comports to Constitutional requirements.

Respectfully submitted,

/s/ *J. Marcus Hill*
J. Marcus "Marc" Hill
Of Counsel HCDO FOP 39
Texas Bar No. 09638150
U.S. D.C., SD TX: 4640
1770 St. James Place, Ste 115
Houston, Texas 77056
2116 Church Street
Galveston, Texas 77550
Phone: 713-688-6318
Fax: 713-688-2817
marc@hillpclaw.com


Robin E. McIlhenny
HCDO FOP 39
Texas Bar No. 24072992
U.S. D.C., SD TX: 1552147
robin@hcdo.com
5100 Westheimer Rd. Suite 105
Houston, Texas 77056
P: (713) 659-0005
F: (281) 205-0426
**Attorneys for** **Amici Curiae**

37