# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| **MARANDA LYNN ODONNELL,** *et al.* <br><br> *Plaintiffs* <br><br> **vs.** <br><br> **HARRIS COUNTY, TEXAS,** *et al.*, <br><br> *Defendants.* | **CIVIL ACTION NO. 4:16-CV-1414** |

## Brief of Amicus Curiae
## Harris County Precinct 3 Commissioner Steve Radack

## Table of Contents

Table of Authorities ……………………………………………………………. 2

Statement of Interest ……………………………………………………………..3

Summary of the Argument………………………………………………………….3

Reasons for Amending the Proposed Consent Decree……………………………...3

Conclusion....……………………………………………………………………9

1

# Table of Authorities

## Cases

*Horne v. Flores*, 557 U.S. 433, 448–50, 129 S. Ct. 2579, 2594–95, 174 L. Ed. 2d 406 (2009)  p.5

*Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ………………………………………….p. 4

*O Donnell v. Harris County*, 251 F. Supp. 3d 1052 (S.D. Tex. 2017) …………………….…...p. 7

*O Donnell v. Harris County*, 892 F.3d. 147 (5th Cir. 2018) …………………………………….p. 6

*United States v. City of Miami*, 664 F.2d 435, 439 (5th Cir. 1981) …………………………….p.3

## Statutes

Texas Penal Code §§ 12.03 Misdemeanor Classification …………………………………….. p. 7

Texas Penal Code – partial listing of Class A Misdemeanor Offenses § 42.105 Cockfighting; § 42.075 Disclosure of Confidential Information Regarding Family Violence or Victims of Trafficking Shelter Center; § 38.123 Unauthorized Practice of Law; § 38.17 Failure to Stop or Report Aggravated Sexual Assault of Child; § 22.012 Indecent Assault;  § 71.021 Violation of Court Order Enjoining Organized Criminal Activity; § 38.13 Hindering Proceedings by Disorderly Conduct; § 38.111 Improper Contact with Victim; § 36.09 Offering Gift to Public Servant; § 38.171 Failure to Report Felony; § 36.04 Improper Influence; § 42.08 Abuse of Corpse; § 43.02. Prostitution (with one prior conviction); § 38.05 Hindering Apprehension or Prosecution; § 46.06 Unlawful Transfer of Certain Weapons; § 42.10  Dog Fighting; § 38.07 Permitting or Facilitating Escape; § 42.09 Cruelty to Livestock Animals; § 43.24 Sale, Distribution, or Display of Harmful Material to Minor; § 38.04 Evading Arrest or Detention; § 47.03 Gambling Promotion; § 25.06 Harboring Runaway Child; § 39.03 Official Oppression; § 43.23 Obscenity; § 47.04 Keeping a Gambling Place; § 38.10 Bail Jumping and Failure to Appear; § 22.05 Deadly Conduct;  § 21.07 Public Lewdness; § 46.02 Unlawful Carrying Weapons…………………………………… pp 8-9

Texas Penal Code § 12.43 Punishment Enhancement for Repeat Offenders ………………… p. 9

## Brief of Amicus Curiae Commissioner Steve Radack

### Statement of Interest

Commissioner Radack is not supporting the position of either of the litigants on the merits, at this stage of the proceedings. He supports the Harris County Court at Law Judges' Administrative Order Number 2019-01, Amending Local Rule 9.1 (Document 557-1) – period.

### Summary of Argument

The core of Commissioner Radack's objections are threefold: (1) collusion between the parties to the proposed consent decree, (2) overreach and prohibitive costs of the current proposed consent decree, and, (3) legitimate law enforcement concerns for the safety and security of the general population of Harris County.

### Reasons for Amending the Parties Proposed Consent Decree

"A consent decree, although founded on the agreement of the parties, is a judgment."[1] Thus, a court "must not merely sign on the line provided by the parties. Even though the decree is predicated on consent of the parties, the judge must not give it perfunctory approval."[2] When presented with a proposed consent decree, a court must ascertain that the settlement is "fair, adequate and reasonable" and is not

---

[1] *United States v. City of Miami*, 664 F.2d 435, 439 (5th Cir. 1981) (citing *United States v. Kellum*, 523 F.2d 1284, 1287 (5th Cir. 1975)).

[2] *Id.* at 440–41.

the product of "fraud, collusion, or the like."[3] "The court must also consider the nature of the litigation and the purposes to be served by the decree. If the suit seeks to enforce a statute, the decree must be consistent with the public objectives sought to be attained by Congress."[4]

**Collusion – winning by losing.**

Democrats swept the 2018 elections to the Harris County Courts-at-Law, unseating 14 incumbents. They also gained a 3/2 majority in the Harris County Commissioners' Court. Elections have consequences. The relevant consequence was the adoption of Harris County Court at Law Judges' Administrative Order Number 2019-01, Amending Local Rule 9.1 (Document 557-1), specifically citing the case-at-bar in their Order:

> "Amended Rule 9.1 is intended to remedy the constitutional violations identified by the federal district court in *O Donnell v. Harris County*, 251 F. Supp. 3d 1052 (S.D. Tex. 2017) and the Fifth Circuit in *O Donnell v. Harris County*, 892 F.3d. 147 (5th Cir. 2018)."

Similarly, the Harris County Commissioners Court voted, 3 to 2, to approve the current proposed Consent Decree – which grants the plaintiffs excess procedures, personnel, and funding. The following links to news accounts show members of

---

[3]     *Id.* at 441; *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).

[4]     *Id.*

Commissioners' Court extoling the plaintiffs' positions, and offering expansion of remedies far beyond the scope of the original relief sought – including Commissioner Ellis' remark in open Court that " . . . felonies are next."[5]

https://www.youtube.com/watch?v=6Sva5vhRpFI

https://www.youtube.com/watch?v=m0o85KRYwLE

https://www.youtube.com/watch?v=p5yknAPpkX8

Also, see Exhibit A, an interview with Commissioner Ellis in the National Association of Counties Newsletter, dated August 19, 2019, publicly presuming this Court's approval – after admitting support for, and collusion with the plaintiffs in drafting the expanded Consent Decree – even comparing the proposed agreement to *Brown v. Board of Education*.[6]

> *But see Horne v. Flores*, 557 U.S. 433, 448–50, 129 S. Ct. 2579, 2594–95, 174 L. Ed. 2d 406 (2009):
>
> Finally, the dynamics of institutional reform litigation differ from those of other cases. **Scholars have noted that public officials sometimes consent to, or refrain from vigorously opposing, decrees that go well beyond what is required by federal law.** See, *e.g.*, McConnell, Why Hold Elections? Using Consent Decrees to Insulate Policies from Political Change, 1987 U. Chi. Legal Forum 295, 317 (noting that government officials may try to use consent decrees to "block ordinary avenues of political change" or to "sidestep political constraints");

---

[5] Third clip, at 2:02 of 2:20.

[6] Ex. A. p. 1.

Horowitz, Decreeing Organizational Change: Judicial Supervision of Public Institutions, 1983 Duke L.J. 1265, 1294–1295 ("Nominal defendants [in institutional reform cases] are sometimes happy to be sued and happier still to lose"); R. Sandler & D. Schoenbrod, Democracy by Decree: What Happens When Courts Run Government 170 (2003) (**"Government officials, who always operate under fiscal and political constraints, 'frequently win by losing' " in institutional reform litigation**).

See also, Exhibit B, The Commissioner's Court of Harris County, Texas, Transcript of Proceedings, Regular Meeting, July 30, 2019, page 3, Commissioner Ellis' Comments:

> I want to thank Alec whose last name I'm going to pledge to figure out how to pronounce it after this lawsuit. I just call him Alec Karakatsanis . . . .

> But some of my colleagues were wondering --- did I encourage him to sue. Yes I did. And I wished that I'd been on this commission and would have been bold enough to suggest that he sue Harris Count back then when I was a Senator. But I thank him for doing it. I appreciate Neil Manning. . . .

As the Court knows, Alec Karakatsanis and Neal Manne are the attorneys for the plaintiffs. There is no better example to show the lack of arms-length negotiation of this proposed Consent Decree. The Court should trim the collusion fat and limit the Consent Decree to remedies necessary to cure Constitutional violations.

**Overreach and prohibitive costs of the current proposed consent decree.**

Constitutional violations that led to the filing of this original suit were resolved by the adoption and implementation of the new Rule 9.1 (Document 557-1). A Court decree that orders Harris County to abide by this new Amended Rule 9.1, prevents any backtracking. *This is all the law requires.*

The multi-million-dollar boon incorporated into the proposed Consent Decree, Document 617-1, p. 30, captioned "Determination and Mitigation of Actual Causes of Nonappearance in Harris County" is a glaring example of colluded political excess incorporated into this proposed consent decree. This prospective provision exceeds the need and scope of indigent inmate bail reform – and costs the citizens of Harris County millions of dollars to fix a problem that has been fixed by Amended Rule 9.1.

Sufficient reform was enacted by Amended Rule 9.1, " . . . to remedy the constitutional violations identified by the federal district court in *O'Donnell v. Harris County*, 251 F. Supp. 3d 1052 (S.D. Tex. 2017) and the Fifth Circuit in *O'Donnell v. Harris County*, 892 F.3d. 147 (5th Cir. 2018)."

3. **The parties' proposed Consent Decree poses legitimate law enforcement concerns for the safety and security of the general population of Harris County.**

Catch-and-release has a component of peril to the public – as recently demonstrated by Exhibit C, Julian Gill's article in the Houston Chronicle, dated August 18, 2019, **"Pasadena slaying spotlights debate over bail reform."**

> In the wake of Guajardo's arrest in the slaying, Pasadena Police Chief Josh Bruegger declared in a YouTube video he was "outraged" because Guajardo was released on a personal bond when he allegedly killed his wife, adding that "bail reform seems to have neglected the rights of crime victims and overall safety of the public."
>
> Houston Police Chief Art Acevedo and Houston Police Officers Union President Joe Gamaldi also cited the case to cast doubt on the county's misdemeanor bail system.

True, one incident is not statistically significant, unless it happens to your family member. Then, one is far too many. There is the possibility of balancing the genuine interests of the general public with reasonable bail restrictions that do not offend the Constitutional rights of inmates – and it should be done.

The plaintiffs distort "presumption of innocence" to contend that indigent misdemeanants often plead guilty unnecessarily – because they cannot post bail. What no one knows, or can know, is how many of these plead guilty because they are guilty – and for no other reason. Common sense dictates that there are some.

The proposed consent decree dictates equal treatment of misdemeanants, regardless of class.[7] The Texas Penal Code, however, divides misdemeanants into three distinct classes.[8] Class "A" offenses include: § 42.105 Cockfighting; § 42.075 Disclosure of Confidential Information Regarding Family Violence or Victims of Trafficking Shelter Center; § 38.123 Unauthorized Practice of Law; § 38.17 Failure to Stop or Report Aggravated Sexual Assault of Child; § 22.012 Indecent Assault; § 71.021 Violation of Court Order Enjoining Organized Criminal Activity; § 38.13 Hindering Proceedings by Disorderly Conduct; § 38.111 Improper Contact with Victim; § 36.09 Offering Gift to Public Servant; § 38.171 Failure to Report Felony; § 36.04 Improper Influence; § 42.08 Abuse of Corpse; § 43.02. Prostitution (with one prior conviction); § 38.05 Hindering Apprehension or Prosecution; § 46.06 Unlawful Transfer of Certain Weapons; § 42.10 Dog Fighting; § 38.07 Permitting or Facilitating Escape; § 42.09 Cruelty to Livestock Animals; § 43.24 Sale,

---

[7]   Doc 617-1, Proposed Decree, p. 13, Sec. IV, h, "Indigent" refers to **any misdemeanor arrestee** who cannot afford to pay the cost of secured bail or a fee or cost associated with a condition of pretrial release . . . "

[8]   V.T.C.A., Penal Code § 12.03.
(a) Misdemeanors are classified according to the relative seriousness of the offense into three categories:
    (1) Class A misdemeanors;
    (2) Class B misdemeanors;
    (3) Class C misdemeanors.
(b) An offense designated a misdemeanor in this code without specification as to punishment or category is a Class C misdemeanor.
(c) Conviction of a Class C misdemeanor does not impose any legal disability or disadvantage.

Distribution, or Display of Harmful Material to Minor; § 38.04 Evading Arrest or Detention; § 47.03 Gambling Promotion; § 25.06 Harboring Runaway Child; § 39.03 Official Oppression; § 43.23 Obscenity; § 47.04 Keeping a Gambling Place; (ironically) § 38.10 Bail Jumping and Failure to Appear; § 22.05 Deadly Conduct; § 21.07 Public Lewdness; § 46.02 Unlawful Carrying Weapons.

There are more, but they belabor the point – Class A misdemeanors include many crimes of violence and dangerous criminal activities.

The consent decree does not balance indigent offenders' rights with a respect for the fundamental human rights of victims, and the public-at-large. Automatic early release of indigent offenders is laudatory in principle but ignores the practical reality of serious, ongoing criminal activity and retaliation.

The National Association of Counties Newsletter, dated August 19, 2019[9] compares this proposed consent decree to the bail reforms in Cook County. This is no endorsement – since certain areas of Chicago are like war zones. But it does emphasize an often-overlooked fact, acknowledged by Commissioner Ellis' comparison of this case to *Brown v. Board of Education*. Many indigent misdemeanants return to underprivileged, high-crime minority communities. There are areas in South Houston that are infested with gangs, open street drug use, street prostitution, theft, assaults, and other open-obvious misdemeanor crimes.

---

[9] Exhibit A, p. 3.

Yet, many hard-working, God-fearing, law-abiding people also live in these underprivileged communities. It is their voice that has been ignored in this drawn-out debate over revolving-door misdemeanant bond issues. Simply put, the wealthy communities in Houston/Harris County will feel little, if any, impact from indiscriminate release of misdemeanants. But the poor, mostly minority communities will. See Chicago.

Texas Penal Code § 12.43, enhances punishments for repeat misdemeanor offenders. The consent decree's personal recognizance scheme does not.

Law enforcement's concerns were underscored by Alex Guajardo's senseless murder of Caitlynne Ross Infinger, and her unborn child. After three days in jail for punching Infinger in the face, a Magistrate issued a protective order and released Guajardo on a personal bond. Two days after his release Guajardo stabbed Infinger about 20 times in the belly and killed her.

Caitlynne is the first – but will not be the last system-victim. There must be a better screening process that balances early release and the possibility of retaliation.

## Conclusion

This is not a "one size fits all" proposition. Law enforcement's concerns are legitimate and should be considered before any final decree is signed. "Street sense" sometimes balances impersonal statistical analyses. There is no perfect system, but this can be better.

11

A Court decree that orders Harris County to abide by Amended Rule 9.1 prevents any backtracking. *This is all the law requires.* All else is superfluous, collusive, and should be legislated, not decreed.

The Court should either strike the proposed Consent Decree and continue arms-length litigation addressing the issues of all affected parties, or, trim this Decree to fit Constitutional parameters.

Respectfully submitted,

s/ *Fred A. Keys, Jr.*
Fred A. Keys, Jr.
State Bar No. 11373900
Fred Keys Consulting LLC
P.O. Box 854
5 Rattlesnake Court
Sonoita, Arizona 85637
(713)880-8805
fred@FKCLLC.com

## Certificate of Service

I certify that on August 22, 2019, a true and correct copy of this Notice of Appearance of Counsel was served by electronic notice to all parties of record.

/s *Fred A. Keys, Jr.*
FRED A. KEYS, JR.