# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

| | | |
|---|---|---|
| MARANDA LYNN ODONNELL, et al. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Case No. 16-cv-01414 |
| v. | § | (Consolidated Class Action) |
| | § | The Honorable Lee H. Rosenthal |
| HARRIS COUNTY, TEXAS, et al. | § | U.S. District Judge |
| | § | |
| Defendants. | § | |

## MOTION FOR LEAVE TO FILE BRIEF FOR *AMICUS CURIAE*

Movant respectfully requests leave to file the attached brief as *amicus curiae* in opposition to the Joint Motion and Memorandum in Support of Joint Motion for Preliminary Approval of Proposed Consent Decree and Settlement Agreement, as well as the Consent Decree attached to the Joint Motion. *See* Aug. 8, 2019 Order (Dkt. 624); Aug. 8, 2019 Transcript (Dkt. 625). Movant is Commissioner R. Jack Cagle, who serves as Harris County Precinct 4 Commissioner on the Harris County Commissioners Court. Commissioner Cagle believes that the proposed Consent Decree is improperly overbroad and unreasonable, and raises serious federalism concerns. Instead of focusing on the rights of indigent pretrial arrestees who cannot afford to pay bail, the proposed Consent Decree interjects a federal court into overseeing purely local administrative decisions on extensive data collection and spending on a projected $97 million dollar criminal justice program. In addition, Commissioner Cagle believes that the interests of potential victims have not been properly considered in the agreement, contrary to state law. The *amicus* brief would provide helpful perspective from a Harris County Commissioner on the implications of the Consent Decree on local government and the interest of the public.

1

Respectfully submitted,

THE LANIER LAW FIRM, P.C.

By: _/s/         W. Mark Lanier_
     W. MARK LANIER
     State Bar No.: 11934600
     Kevin P. Parker
     State Bar No.: 15494020
     10940 W. Sam Houston Pkwy N., Suite 100
     Houston, Texas 77064
     Telephone: (713) 659-5200
     Fax: (713) 659-2204
     wml@lanierlawfirm.com
     Kevin.parker@lanierlawfirm.com

*Attorneys for Amici Curiae,*
*Commissioner R. Jack Cagle*

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing document on this **22nd day of August, 2019,** and that a true and correct copy of the foregoing was served on all counsel of record *via* **CM/ECF** system for the United States District Court for the Southern District of Texas.

                                            _/s/     W. Mark Lanier_
                                            W. MARK LANIER

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

    I.      INTEREST OF AMICUS CURIAE..................................................................................1

    II.     INTRODUCTION ........................................................................................................1

    III.    ARGUMENT ...............................................................................................................3

          A.     Legal Standard ................................................................................................3

          B.     The Decree is Not Reasonably Tailored to Serve its Intended Purpose ......4

          C.     The Consent Decree Raises Serious Federalism Concerns..........................9

          D.     The Effect of the Decree on Potential Victims is Unreasonable ................12

    IV.    CONCLUSION...........................................................................................................13

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Brooks v. State Bd. of Elections*,
848 F. Supp. 1548 (S.D. Ga. 1994)...................................................................................................5

*Brown v. Plata*,
563 U.S. 493 (2011).............................................................................................................................5

*Burt v. Cty. of Contra Costa*,
No. 73-CV-00906-JCS, 2014 WL 253010 (N.D. Cal. Jan. 22, 2014) .........................................10

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ...........................................................................................................3

*Davis v. City & Cnty. of San Francisco*,
890 F.2d 1438 (9th Cir. 1989) ...........................................................................................................5

*Dayton Bd. of Ed. v. Brinkman*,
433 U.S. 406 (1977).............................................................................................................................5

*Duran v. Elrod*,
760 F.2d 756 (7th Cir. 1985) ...............................................................................................9, 11, 12

*Frazar v. Ladd*,
457 F.3d 432 (5th Cir. 2006) .............................................................................................................6

*Frew v. Hawkins*,
540 U.S. 431 (2004)...............................................................................................................4, 7, 8, 10

*Hesselbein v. Clinton*,
999 F.2d 320 (8th Cir. 1993) .....................................................................................................11, 12

*Horne v. Flores*,
557 U.S. 433 (2009)..........................................................................................................4, 8, 9, 10, 11

*Jackson v. Los Lunas Cmty. Program*,
880 F.3d 1176 (10th Cir. 2018) ..................................................................................................7, 11

*John B v. Emkes*,
710 F.3d 394 (6th Cir. 2013) .............................................................................................................7

*John Doe #1 v. Veneman*,
380 F.3d 807 (5th Cir. 2004) .............................................................................................................5

*Jones v. Gusman*,
296 F.R.D. 416 (E.D. La. 2013)..................................................................................................6

*LaShawn v. Fenty*,
701 F. Supp. 2d 84 (D.D.C. 2010)............................................................................................10

*Milliken v. Bradley*,
433 U.S. 267 (1977)................................................................................................................4, 9

*Missouri v. Jenkins*,
515 U.S. 70 (1995)......................................................................................................................7

*N.Y. State Ass'n for Retarded Children Inc. v. Carey*,
706 F.2d 956 (2d Cir. 1983).......................................................................................................7

*ODonnell v. Harris Cnty.*,
251 F. Supp. 3d 1052 (S.D. Tex. 2017) .....................................................................................7

*ODonnell v. Harris Cnty., Texas*,
882 F.3d 528 (5th Cir.), *opinion withdrawn and superseded on reh'g sub nom.*
892 F.3d 147 (5th Cir. 2018) .....................................................................................................7

*Paradise v. Wells*,
686 F.Supp. 1442 (M.D. Ala. 1988) ..........................................................................................3

*Plyler v. Evatt*,
846 F.2d 208 (4th Cir. 1988) ...................................................................................................12

*Rufo v. Inmates of Suffolk Cnty. Jail*,
502 U.S. 367 (1992)...............................................................................................................5, 10

*Stone v. City & Cnty. of San Francisco*,
968 F.2d 850 (9th Cir. 1992) ...................................................................................................10

*Stuart v. Roache*,
951 F.2d 446 (1st Cir. 1991)......................................................................................................5

*Thompson v. U.S. Dep't of Housing & Urban Dev.*,
404 F.3d 821 (4th Cir. 2005) ...................................................................................................11

*United States v. City of Miami*,
664 F.2d 435 (5th Cir. 1981) ...........................................................................................4, 5, 6 12

*Williams v. City of New Orleans*,
694 F.2d 987 (5th Cir. 1982), *on reh'g sub nom.* 729 F.2d 1554 (5th Cir. 1984) .....................3, 12

**Statutes**

TEX. CODE OF CRIM. PROC. §56.02 ................................................................................................13

18 U.S.C. § 3626................................................................................................................6

**Miscellaneous Authority**

Anthony Disarro, SIX DECREES OF SEPARATION, 60 Am. Univ. L. Rev. 275, 303 (2010)...............6

# I. INTEREST OF AMICUS CURIAE

Commissioner R. Jack Cagle serves as the Precinct 4 Commissioner on the Harris County Commissioners Court. The Harris County Commissioners Court serves as the main governing body for Harris County. Its duties include adopting the County budget, setting tax rates, calling for bond elections, setting boundaries for voting precincts, and overseeing county courthouses. No affiliated entity contributed or consulted in the writing of this *amicus* brief.

No counsel for a party authored this brief in whole or in part. No entity or person other than Commissioner Cagle and his counsel made any monetary contribution intended to fund the preparation or submission of this brief.

# II. INTRODUCTION

This litigation concerns alleged procedural due process and equal protection violations arising from Harris County's bail policies and procedures. The Parties submitted a Joint Motion for Preliminary Approval of Proposed Consent Decree and Settlement Agreement, as well as an expansive Consent Decree ("Decree") setting forth numerous conditions "agreed upon" by 3 of 5 members of the Harris County Commissioners Court and the Plaintiffs. The *amicus curiae* objects to the proposed Decree for several reasons.

*First*, the Decree is not reasonably tailored to serve its intended purpose—curing the alleged constitutional violations at issue. The Fifth Circuit has twice established the appropriate remedy in this case: notice, an opportunity to be heard and submit evidence within 48 hours of arrest, and a reasoned decision by an impartial decision-maker. Contrary to the Fifth Circuit's instructions, the Decree improperly reaches far beyond what is required by federal law and commandeers millions of taxpayer dollars for unrelated expenditures. To illustrate, paragraph 50 requires the County to adopt a text-message-based and telephone-based reminder services of

hearings; paragraph 52 requires the County to hire researchers to study causes of nonappearance and recommend cost-effective policy solutions and programmatic interventions to mitigate the causes of nonappearances; paragraph 52 requires the County to allocate $250,000 annually for an indefinite period toward assisting and supporting indigent misdemeanor arrestees in making court appearances; and paragraph 54 requires the County to allocate at least $850,000 annually for at least seven years toward mitigating the causes of nonappearance in the County. These demands are unconnected to remedying the actual constitutional harm complained of in this litigation—the County Judges' purported failure to utilize their constitutional discretion per individual arrestee and the implementation of a harmful automatic money bail system.

*Second*, enforcement of the Decree is improper because its objectives have been attained through the implementation of amended Local Rule 9.1, and it is unlikely that the prohibited conditions or actions will recur. Harris County specifically implemented amended Local Rule 9.1 to ameliorate and prevent the alleged federal violations at issue. The Decree is therefore superfluous and unnecessary. And its imposition is improper.

*Third*, the Decree raises serious federalism concerns and threatens to restrict the ability of local elected officials to address the priorities and concerns of their constituents. Its expansive mandates and uncertain timeframe would also bind future elected officials who were not parties to the Decree. Its enforcement would thereby effectively limit the democratic process by restricting the array of resources available to local officials for the enactment of other policies.

*Fourth*, because the Decree dictates areas of core County responsibility that are unrelated to the federal issues in this case, its enforcement would necessarily interject a federal court into local affairs that would continually command the Court's valuable time and resources. Alternatively, resolution of local issues by County legislative bodies rather than the federal

judiciary promotes judicial economy and affords appropriate deference to federalism concerns. *Fifth*, the Decree would have an unreasonable effect on third parties, as it would force potential victims to provide taxes for excessive expenditures on indigent misdemeanor arrestees that have nothing to do with curing the constitutional violations in this case.

The *amicus curiae*, as Harris County Precinct 4 Commissioner, believes that he is bound by this agreement and will be responsible for implementing this agreement even if portions of this agreement contravene his understanding of his duties to the citizens of Precinct 4 and Harris County.

### III. ARGUMENT

#### A. Legal Standard

Although judicial policy favors voluntary settlement of class-action cases, *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977), "the settlement process is more susceptible than the adversarial process to certain types of abuse and, as a result, a court has a heavy, independent duty to ensure that the settlement is 'fair, adequate, and reasonable.'" *Paradise v. Wells*, 686 F.Supp. 1442, 1444 (M.D. Ala. 1988). A consent decree has the binding force of a judgment and "reaches into the future and has continuing effect by virtue of its injunctive provisions[.]" *Williams v. City of New Orleans*, 694 F.2d 987, 995–96 (5th Cir. 1982), *on reh'g sub nom.* 729 F.2d 1554 (5th Cir. 1984). The district court's role in entering a consent decree is analogous, though not identical, to its function in scrutinizing class action settlements to ascertain that they are fair, adequate, and reasonable. *Cotton*, 559 F.2d at 1330. As the Fifth Circuit has explained:

> Because the consent decree does not merely validate a compromise but, by virtue of its injunctive provisions, reaches into the future and has continuing effect, **its terms require more careful scrutiny**. Even when it affects only the parties, the court should, therefore, examine it carefully to ascertain not only that it is a fair settlement but also that it does not put the court's sanction on and power behind a decree that violates Constitution, statute, or jurisprudence. This

> requires a determination that the proposal represents a reasonable factual and legal determination based on the facts of record, whether established by evidence, affidavit, or stipulation. If the decree also affects third parties, the court must be satisfied that the effect on them is neither unreasonable nor *proscribed*.

*United States v. City of Miami*, 664 F.2d 435, 441 (5th Cir. 1981) (en banc) (footnote omitted and emphasis added). In addition, the Court must consider the nature of the litigation and the purposes the decree seeks to serve. *Id.*

The United States Supreme Court has established that a consent decree "entered in federal court must be directed to protecting federal interests." *Frew v. Hawkins*, 540 U.S. 431, 437 (2004). The consent decree must "be remedial in nature" and thus "designed as nearly as possible to restore the victims of [illegal] conduct to the position they would have occupied in the absence of such conduct." *Milliken v. Bradley*, 433 U.S. 267, 280 (1977). In addition, the nature and scope of the remedy provided by a federal consent decree depends on the nature and scope of the federal-law violation. *Id*. at 280, 282. As such, a "federal-court decree[ ] must directly address and relate to the [federal-law] violation itself[,]" and it must be "tailored to cure the condition that offends" federal law. *Id*. at 282 (internal quotation marks omitted). Courts must be wary that "federal-court decrees exceed appropriate limits if they are aimed at eliminating a condition that does not violate federal law or does not flow from such a violation." *Horne v. Flores*, 557 U.S. 433, 450 (2009). Finally, federal courts "must take into account the interests of state and local authorities in managing their own affairs," consistent with the demands of federal law. *Milliken.* at 280–81.

**B. The Decree is Not Reasonably Tailored to Serve its Intended Purpose.**

The Parties submit that the proposed Decree "is *tailored* to remedy the systemic and longstanding constitutional violations found by the Court in this litigation[.]" Consent Decree at ¶ 10 (emphasis added). To the contrary, the Decree is exceedingly overbroad and superfluous in

light of the prior implementation of amended Local Rule 9.1 in February 2019. It improperly reaches far beyond what is required by federal law and effectively commandeers millions of taxpayer dollars for expenditures that are unrelated to remedying the constitutional violations at issue. And because the Decree purports to dictate core local matters and budget priorities, it implicates serious federalism concerns.

It is well established that "[t]he power of the federal courts to restructure the operation of local and state governmental entities is not plenary. . . . Once a constitutional violation is found, a federal court is required to tailor the scope of the remedy to fit the nature and extent of the constitutional violation." *Brown v. Plata*, 563 U.S. 493, 571 (2011) (quoting *Dayton Bd. of Ed. v. Brinkman*, 433 U.S. 406, 419–420 (1977)). A district court must therefore "narrowly tailor an injunction to remedy the specific action which gives rise to the order." *John Doe #1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004). And because a consent decree "is subject to the rules generally applicable to other judgments and decrees[,]" *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 378 (1992), courts have extended the narrowly-tailored requirement for injunctive relief to consent decrees aimed at remedying constitutional violations. *See, e.g.*, *City of Miami*, 664 F.2d at 461 ("[T]he decree would appear to meet the Supreme Court's standard that the proposed relief be closely tailored to remedy the effects of past discrimination"); *Davis v. City & Cnty. of San Francisco*, 890 F.2d 1438, 1447 (9th Cir. 1989) ("A consent decree may be struck down if it is not 'narrowly tailored' to meet its objectives."); *Brooks v. State Bd. of Elections*, 848 F. Supp. 1548, 1572 (S.D. Ga. 1994) ("The next inquiry is whether the provisions of the consent decree are 'narrowly tailored' and necessary to achieve the State's interest."); *Stuart v. Roache*, 951 F.2d 446, 453 (1st Cir. 1991).

The legislative history underlying the Prison Litigation Reform Act (PLRA) also provides important guidance in this case, as Congress has overtly admonished pervasive federal court involvement in the management and operation of penitentiaries. Congress recognized and codified the distinction between consent decrees and settlement agreements in the PLRA, which provides for the termination of federal consent decrees[1] of which it cannot be said that "the relief is narrowly drawn, extends no farther than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *See* Anthony Disarro, SIX DECREES OF SEPARATION, 60 Am. Univ. L. Rev. 275, 303 (2010); 18 U.S.C. § 3626. Congress enacted the PLRA upon determining that, "contrary to principles of federalism and comity, federal courts were frequently enforcing requirements for operation of state and municipal prisons that went beyond what was required to comply with federal law." *Id. See also Frazar v. Ladd*, 457 F.3d 432, 438 n.19 (5th Cir. 2006) ("Congress sought to curtail federal courts' long-term involvement in prison reform and halt federal courts from providing more than the constitutional minimum necessary to remedy federal rights violations."). Courts considering consent decrees in PLRA cases therefore assess whether the decree satisfies the narrow-tailoring requirement. *See, e.g.*, *Jones v. Gusman*, 296 F.R.D. 416, 453 (E.D. La. 2013) ("The Court concludes that the consent judgment is narrowly drawn with respect to constitutional standards.").

Moreover, "[i]n assessing the propriety of giving judicial imprimatur to the consent decree, the court must also consider the nature of the litigation and the purposes to be served by the decree." *City of Miami*, 664 F.2d at 441. Here, the Parties state the Decree is "intended to

---

[1] The PLRA defines consent decrees as "any relief entered by the court that is based in whole or in part upon the consent or acquiescence of the parties" and expressly excludes "private settlements" from that definition. 18 U.S.C. § 3626(g)(1).

6

implement and enforce fair and transparent policies and practices that will result in meaningful, long lasting reform to the County's system of pretrial detention and safeguard against future violations of the rights of indigent misdemeanor arrestees." Consent Decree at ¶ 12. The Decree's sweeping span likens this case to institutional reform litigation, in which injunctions are "future-oriented plans designed to achieve broader public policy objectives in a complex, ongoing fact situation." *N.Y. State Ass'n for Retarded Children Inc. v. Carey*, 706 F.2d 956, 970 n.17 (2d Cir. 1983). In such cases, courts have repeatedly held that federal consent decrees "may be kept in place only as long as necessary to cure an unlawful condition." *See, e.g.*, *Missouri v. Jenkins*, 515 U.S. 70, 88–89 (1995); *Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1192-93 (10th Cir. 2018); *John B v. Emkes*, 710 F.3d 394, 398 (6th Cir. 2013). To that end, a "federal court must exercise its equitable powers to ensure that when the objects of the decree have been attained, responsibility for discharging the State's obligations is returned promptly to the State and [local] officials." *Frew*, 540 U.S. at 442.

While the proposed Decree purports to remedy the constitutional violations at issue, it improperly reaches far beyond a reasonable and necessary solution. Indeed, the Fifth Circuit has **twice established the appropriate remedy** in this case: "notice, an opportunity to be heard and submit evidence within 48 hours of arrest, and a reasoned decision by an impartial decision-maker."[2] The court even went so far as to provide specific examples of "a remedy more finely tuned to address the harm." 892 F.3d at 164. In addition, the Fifth Circuit observed that proposed changes in Texas state laws, which this Court addressed in *ODonnell v. Harris Cnty.*, 251 F. Supp. 3d 1052, 1127–28 (S.D. Tex. 2017), "would provide a more adequate remedy." 892 F.3d

---

[2] *ODonnell v. Harris Cnty., Texas*, 882 F.3d 528, 546 (5th Cir.), *opinion withdrawn and superseded on reh'g sub nom.* 892 F.3d 147, 165 (5th Cir. 2018).

7

at 159, n.5. It noted that, "[s]hould these provisions become law, *the need for the court's intervention must be revisited.*" *Id.* (emphasis added).

In response to *ODonnell*, the Harris County Criminal Court at Law Judges crafted and adopted amended Local Rule 9.1 in early 2019. The amended rule was specifically "intended to remedy the constitutional violations identified in [*ODonnell v. Harris County*]." *See* Am. Local Rule 9.1, p. 1. Notably, Rule 9.1 incorporated much of the proposed State legislation identified in *ODonnell* and already approved by the Fifth Circuit, such as imposing the least restrictive conditions on pretrial release, deciding those conditions by clear and convincing evidence, and making written findings and issuing reasoned opinions at bail hearings. *See, e.g.*, Am. Local Rule 9.1 at ¶¶ 9-11. As such, it substantially diminishes—if not entirely alleviates—the need for this Court's intervention. *See ODonnell*, 892 F.3d at 159, n.5. Indeed, enforcement of a federal decree is improper where the objectives of the decree have been attained and it is unlikely that the prohibited conditions or actions will recur. *Frew*, 540 U.S. at 442; *Horne*, 557 U.S. at 450. Because amended Local Rule 9.1 was implemented to cure and prevent the violations *ODonnell* identified, enforcement of the proposed Decree is improper. To the extent Defendants seek to redirect taxpayer funds toward extraneous assistance for indigent misdemeanor arrestees, they should follow the channels that are quintessential to the County's democratic process.

Further, this Court explicitly warned the Parties at a recent status conference against including "bells and whistles" in their proposed Decree. Apr. 16, 2019 Status Conference Transcript 9:4-5 (Dkt. 593). Yet, the proposed Decree includes all of the bells and whistles, with the kitchen sink thrown in for good measure. Far from the appropriate "notice, an opportunity to be heard and submit evidence within 48 hours of arrest, and a reasoned decision by an impartial decision-maker" remedy the Fifth Circuit identified, the Decree allocates substantial public

funds, estimated to be $97 million dollars, to superfluous activities that have nothing to do with remedying the violations at issue. For instance, the Decree incredibly assigns $250,000 annually for "assistance and support" to indigent arrestees, including "transportation to court, medical and mental health care, safe and affordable shelter, communication, translation and interpretation, drug treatment, and other services[,]" such as child care. Consent Decree, pp. 31-32, nn.79, 80. Of course, the United States Supreme Court has never identified a constitutional right to transportation or child care to effectuate court appearances. The Decree plainly purports to rectify conditions that do not violate federal law or flow from the bail violations at issue. *See Horne*, 557 U.S. at 450. *See also Milliken*, 433 U.S. at 280. Not only is the Decree unreasonable, but its enforcement would conflict with the Supreme Court's admonition that consent decrees should do no more than remedy a violation of federal law.

### C. The Consent Decree Raises Serious Federalism Concerns.

Enforcement of the Decree would also threaten the public interest by effecting an unwarranted judicial usurpation of local government responsibilities. As noted above, the Decree dictates sweeping County actions and expenditures that are not tailored, reasonable, or necessary to remedy the constitutional violations identified in this case. And, because the Decree purports to regulate core local matters for an extended period of time, its enforcement would necessarily interject this Court into local affairs and bind future local governmental officials who were not parties to the Decree.

"Federal courts must be wary of entanglement in the intramural struggles of state or local government." *Duran v. Elrod*, 760 F.2d 756, 759 (7th Cir. 1985). The Decree implicates serious federalism concerns because it reaches far beyond the federal issues central to this litigation and impermissibly regulates peripheral areas of core County responsibility. *See Horne*, 557 U.S. at

9

448. Federalism concerns are ***particularly heightened*** when "a federal court decree has the effect of dictating state or local budget priorities." *Id.*; *see also Rufo*, 502 U.S. at 393 n.14 ("[P]rinciples of federalism and simple common sense require the court to give significant weight to the views of the local government officials who must implement any modification."); *Frew*, 540 U.S. at 906 ("[P]rinciples of federalism require that state and local officials with front-line responsibility for administering the program be given latitude and substantial discretion."). Accordingly, "federal courts should always seek to minimize interference with legitimate state activities in tailoring remedies." *Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 861 (9th Cir. 1992).

Although the Parties may contractually agree to do more than federal law requires, "decrees that go well beyond what is required by federal law" (like here) restrict the ability of local elected officials to address the priorities and concerns of their constituents. *Horne*, 557 U.S. at 449. Numerous courts have noted that "[i]f not limited to reasonable and necessary implementations of federal law, remedies outlined in consent decrees . . . may improperly deprive future officials of their designated legislative and executive powers." *Id.*; *see also Frew*, 540 U.S. at 441; *Burt v. Cty. of Contra Costa*, No. 73-CV-00906-JCS, 2014 WL 253010, at *19 (N.D. Cal. Jan. 22, 2014); *LaShawn v. Fenty*, 701 F. Supp. 2d 84, 95–96 (D.D.C. 2010). This concern is especially relevant here, where the political agenda of the current majority of elected local officials conveniently aligns with the aims of the Plaintiffs, and their funding priorities of this costly agreement will shift resources from hurricane recovery funds when Harris County has still not recovered from Hurricane Harvey. In the event of another Harvey-type disaster, these voluntary priorities, which should be decided at the local level, could substantially change to take care of the pressing and immediate needs of the citizenry. But the Decree demands Monitor

oversight for a minimum of seven years, thus posing a substantial danger of constraining the ability of future local officials to fulfill their duties. *See Horne*, 557 U.S. at 449. As one court noted:

> Admittedly, the acquiescence of state or local governmental officials to the terms of a consent decree might diminish federalism concerns at the inception of the decree. But where, as here, a consent decree remains in effect for [a lengthy time period], enforcement of the decree necessarily interjects a federal court into local affairs and binds local governmental officials who were not parties to the consent decree. The federal court, thereby, effectively limits the democratic process by restricting the array of resources available to the governmental officials for the enactment of other policies.

*Jackson*, 880 F.3d at 1199.

Moreover, the expanse of the Decree is particularly troublesome because a federal court is not well-suited to resolve the County-level, managerial disputes that will inevitably arise during its operation. Indeed, courts have specifically recognized federal judges' limited knowledge regarding the management of county jails, explaining that "managerial judgments generally are the province of other branches of government than the judicial[.]" *Duran*, 760 F.2d at 759. Relatedly, Congress expressly sought to curtail federal courts' long-term involvement in prison reform through the enactment of the PLRA. And in other cases entailing broad relief through a consent decree, such as institutional reform cases, courts bemoan the fact that "the district court becomes in many ways more like a manager or policy planner than a judge[.]" *Thompson v. U.S. Dep't of Housing & Urban Dev.*, 404 F.3d 821, 827 (4th Cir. 2005). *See also Hesselbein v. Clinton*, 999 F.2d 320, 326 (8th Cir. 1993) ("Although a consent decree may save federal judicial resources in the short term, its entry is often only the beginning of extended judicial involvement.").

Here, too, entry of the Decree would undoubtedly and continually command this Court's valuable time and resources. The Decree provides that "[a]ny party is free to seek intervention by

11

the Court in the event the parties and the Monitor are unable to resolve any disagreements about the implementation of any provision of this Consent Decree." Consent Decree at ¶ 114. Given that the Decree regulates a litany of core County issues, such as local budgetary decisions, its implementation threatens to transform this Court into a referee over millions of dollars' worth of disputed, County-level decisions. Because "a federal court's interest in remedying violations of state [and local] law is decidedly minor . . . expending significant federal judicial resources enforcing consent decree provisions that concern only issues of [local] law is rarely justifiable." *Clinton*, 999 F.2d at 326. Instead, the resolution of local issues by the County legislative bodies promotes judicial efficiency and affords appropriate deference to federalism concerns.

### D. The Effect of the Decree on Potential Victims is Unreasonable.

The Court should also strike the Decree because it would have an unreasonable effect on third parties, namely potential victims. Courts must "safeguard the interests of those individuals who [are] affected by the decree but were not represented in the negotiations." *Williams v. Cty. of New Orleans*, 729 F.2d 1554, 1560 (5th Cir. 1984). Courts must therefore carefully scrutinize consent decrees to ensure that the potential effect on third parties "is neither unreasonable nor proscribed." *Id.* (quoting *City of Miami*, 664 F.2d at 441). Of course, this case involves more than just the interest of the litigating Parties. It engages the public's interest in being secure in their persons and property. *See Duran*, 760 F.2d at 762 (holding district court erred in failing to consider interest of potential victims of inmates released by consent decree); c*f. Plyler v. Evatt*, 846 F.2d 208, 211 (4th Cir. 1988) (identifying public interest "in having lawful sentences carried out and in not having parolees put at large without sufficient supervision"). The Decree completely ignores the rights that victims are entitled to, such as the right to have the magistrate

take the safety of the victim or his family into consideration in fixing the amount of bail for the accused, according to Article 56.02 of the Texas Code of Criminal Procedure.

Moreover, the Decree would force potential victims to provide tax money for excessive expenditures to ensure arrestees' appearance in court, while denying the same resources to victims who may need the same assistance. It is certainly unreasonable to force potential victims (as well as the general public) to expend money for "assistance and support" to arrestees that is well beyond what is required or necessary to cure wealth based detention. Particularly where, as here, the Decree circumvents the political process to mandate the spending of substantial taxpayer funds.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny the Joint Motion and decline to enter the Consent Decree, and should direct the Parties to modify the Decree such that the relief granted matches the relief sought.

Respectfully submitted,

THE LANIER LAW FIRM, P.C.

By: _/s/         W. Mark Lanier_
W. MARK LANIER
State Bar No.: 11934600
Kevin P. Parker
State Bar No.: 15494020
10940 W. Sam Houston Pkwy N., Suite 100
Houston, Texas 77064
Telephone: (713) 659-5200
Fax: (713) 659-2204
wml@lanierlawfirm.com
Kevin.parker@lanierlawfirm.com

*Attorneys for Amici Curiae,*
*Commissioner R. Jack Cagle*