IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States ~~~~
Southern ~~~~
F~ ~

AUG 22 ~~~

David J. Bradley, ~~~~

| | | |
|---|---|---|
| MARANDA LYNN O'DONNEL, et al. | § § § | |
| Plaintiffs, | § § | Case No. 4:16-cv-01414 |
| v. | § § | (Consolidated Class Action) |
| | § | The Honorable Lee. H. Rosenthal |
| HARRIS COUNTY, TEXAS, et al. | § § | U.S. District Judge |
| Defendants. | § | |

## MOTION OF HARRIS COUNTY DOMESTIC VIOLENCE COORDINATING COUNCIL FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF IN OPPOSITION TO PROPOSED CONSENT DECREE

Pursuant to Fed. R. of App. P. 29, Movant seeks leave to file the attached *amicus curiae* brief in opposition to parts of the Proposed Consent Decree and Settlement Agreement ("Consent Decree") (Doc. 617-1) reached in this cause. Movant is the Harris County Domestic Violence Coordinating Council (hereinafter "HCDVCC"), a non-profit organization brings together stakeholders in the fight against family violence, including law enforcement, shelters, lawyers, etc., to create a community wide approach to end family violence and hold batterers accountable. HCDVCC believes that the safety of victims of family violence has not been properly considered in the Consent Decree reached by the parties. HCDVCC strongly believes that the safety of victims of family violence is of paramount importance and must be considered. The *amicus* brief would provide a helpful perspective of the community that works with and serves family violence victims on the safety impact of the Consent Decree and the effects it will have on victims of family violence.

Movant respectfully requests that this Court grant leave for the *amicus* to file the brief attached as Exhibit A.

Respectfully submitted,

The Harris County Domestic Violence
Coordinating Council
2990 Richmond, Suite 555
Houston, Texas 77027
Tel: 281-400-3680
Email: info@hcdvcc.org

/s/Barbie Brashear
Executive Director

/s/Amy Smith
Deputy Director

***Amicus Curiae***

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of August 2019, I filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Texas. I electronically sent a copy of the motion and brief to the attorneys of record in this case.

/s/Barbie Brashear
Executive Director

/s/Amy Smith
Deputy Director

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| MARANDA LYNN O'DONNEL, et al. | § § | |
| Plaintiffs, | § § | Case No. 4:16-cv-01414 |
| v. | § § | (Consolidated Class Action) |
| | § | The Honorable Lee. H. Rosenthal |
| HARRIS COUNTY, TEXAS, et al. | § § | U.S. District Judge |
| Defendants. | § | |

## HARRIS COUNTY DOMESTIC VIOLENCE COORDINATING COUNCIL'S *AMICUS CURIAE* BRIEF IN OPPOSITION TO PROPOSED CONSENT DECREE

The Harris County Domestic Violence Coordinating Council (hereinafter "HCDVCC") submits this *amicus* brief related to the proposed consent decree (Doc. 617-1) in the above-styled matter and in support thereof submits the following:

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................................3
STATEMENT OF INTEREST ..............................................................................................4
SUMMARY OF ARGUMENT...............................................................................................5
ARGUMENT ...........................................................................................................................6
   I. Waiver of Appearance ...................................................................................................6
   II. Rescheduling Regular Setting.......................................................................................7
   III. Warrants for Nonappearance .....................................................................................8
   IV. Prohibition on Requiring Appearance Less Than 72 Hours Post Release..............9
   V. Notice Requirements for Required...............................................................................9
CONCLUSION .....................................................................................................................10

# TABLE OF AUTHORITIES

**Statutes, Rules, Constitution**

Tex. Fam. Code § 71.004 ...................................................................................................4

Tex. Code Crim. Pro. Art 17.292 .......................................................................................4

Tex. Const. art. 1, § 30 .......................................................................................................5

Tex. Code Crim. Pro. Art. 56.02(a)(15)..............................................................................8

**Research and Statistics**

Harris County District Attorney's Office ...........................................................................4

Houston Police Department ...........................................................................................4, 5

National Domestic Violence Hotline..................................................................................4

Harris County Sheriff's Office ...........................................................................................5

Texas Council of Family Violence State Plan....................................................................9

## STATEMENT OF INTEREST

HCDVCC was created in 1996, in response to the community's recognition that we, as a community, needed to increase collaboration to better allocate resources to serve victims and end family violence.[1] HCDVCC brings together all stakeholders in the fight against family violence, including law enforcement, shelters, lawyers, etc., to create a community wide approach to end family violence and hold batterers accountable. Based on these collaborations and ongoing partnerships with the Harris County District Attorney's Office and local law enforcement, HCDVCC has intimate knowledge of the reality of family violence in Harris County, including how the criminal justice system is a key player in keeping victims safe.

Amicus has a strong interest in this case because its outcome will impact a large number of victims of family violence. In 2018 the Harris County District Attorney's Office filed approximately 6,098 misdemeanor family violence cases.[2] The Houston Police Department reported that in 2018 approximately 5,000 Magistrate's Emergency Order of Protection[3] (hereinafter "MOEP") were entered into their database.[4]

The dangers faced by a victim of family violence are exponentially higher when he or she presses charges against the batterer and attempts to leave[5], which is why the criminal justice system must take measures to ensure victim safety. Despite the efforts of law enforcement,

---

[1] The Texas Family Code defines family violence as "an act by a member of a family or household against another [family or household member] that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury assault, or sexual assault..." The statute also includes child abuse and dating violence within the definition. Tex. Fam. Code §71.004

[2] Statistics provided by the Harris County District Attorney's Office

[3] Tex. Code of Crim. Pro. art. 17.292 authorizes a magistrate to enter a Magistrates Emergency Order of Protection for victims of family violence offenses. The MOEP can be requested by the victim, law enforcement, or the prosecuting attorney or issued on the magistrate's own motion. The MOEP must be issued at the time the defendant appears before a magistrate for arraignment.

[4] Statistics provided by the Houston Police Department. It's important to note that this figure only reflects the number of orders that were entered in the City of Houston, not the rest of Harris County.

[5] National Domestic Violence Hotline, https://ncadv.org/why-do-victims-stay

advocacy groups, and others, over 90 people were killed in 2018 in Harris County as a direct result of family violence.[6]

Pursuant to Fed. R. of App. P. 29(e), no counsel for a party authored the brief in whole or in part; a party or a party's counsel contribute money to fund preparation or submission of the brief; and no person, other than the *amicus curiae*, contributed money intended to fund preparing or submitting the brief.

Pursuant to Fed. R. of App. P. 32(g)(1), the brief contains 2,098 words, which is within the limits set by the Court.

## SUMMARY OF ARGUMENT

The criminal justice system has made great strides in recent years, in part due to the zealous advocacy of HCDVCC and collaboration of all the stakeholders, to ensure victims are protected as their abusers are prosecuted for their crimes. The consent decree would greatly undermine the progress we as a community have made towards increasing victim safety and holding batterers accountable.

The Texas Constitution affords crime victims with the right "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process; and the right to be reasonably protected from the accused throughout the criminal justice process."[7]

The consent decree for the reasons stated below violates the rights guaranteed to crime victims in the Texas Constitution. The consent decree, which was intended to correct improper bail practices, has gone far beyond its intended purpose. The privileges afforded to defendants in

---

[6] Statistics provided by the Houston Police Department and Harris County Sherriff's Office
[7] Tex. Const. art. 1, §30

the consent decree place victims in greater danger and strip the criminal justice system of its ability to respond quickly and effectively to violations of bond conditions or MOEPs.

## ARGUMENT

### I. Waiver of Appearance

Pursuant to the consent decree, defendants have expanded access to avoid appearances before the criminal court.

First, Paragraph 65(c) of the consent decree authorizes the criminal court at law judge to waive a defendant's appearance at any court appearance. There are no limits on the court's discretion to waive the defendant's appearance, which could result in the defendant's appearance being waived in perpetuity.

Second, Paragraph 65(a) of the consent decree affords defense counsel an absolute right to waive the defendant's appearance at a "regular setting", which is defined as any setting other than trial, bond violation hearings, suppression hearings, plea settings, or a pretrial hearing where defendant has had sufficient notice that his or her appearance is required. Defense counsel can waive the defendant's appearance before or during the setting. The victim is not entitled to receive notice of these waivers.

The ability of a defendant to avoid appearing in court will negatively impact family violence victims and their safety. Waiver of the defendant's appearance inhibits the ability of the criminal justice system to hold defendants accountable. For example, updates on compliance with bond conditions and admonishments for failure to comply with bond conditions would be prevented.

## II. Rescheduling Regular Settings

The consent decree also permits expands the ability of defendants to reschedule a regular setting.

First, Paragraph 66(a) permits a defendant to reschedule any "regular setting" in advance of the court date. If a defendant fails to appear at a regular setting, then the defendant can appear on or before the next week's Open Hours Court to reschedule the missed setting without any adverse consequences. The ability of a defendant to miss a "regular setting" and obtain a reset in Open Hours Court has no limitations and affords defendants the ability to prolong cases indefinitely.

Allowing defendants wide and unchecked control over rescheduling procedures removes any assurance of protection given to victims, who have put their trust and their safety into the hands of the criminal courts.

Perpetrators of family violence thrive on the ability to exert power over their victims and to control every aspect of the victim's life. The provisions in the consent decree effectively turn the criminal justice system, which is supposed to hold criminal accountable, into a weapon for defendants to use against their victims. By prolonging a court case and unilaterally resetting hearings, potentially at the last minute and without notice to the victim, the defendant can continue to terrorize the victim, possibly into perpetuity. Perpetrators of family violence are masters at manipulation, and the consent decree will be the latest tool in their arsenal of power and control.

Furthermore, this provision is in conflict with the requirements of Texas Code of Criminal Procedure, which states that child victims, those under 17 years of age, of family violence, assault, or sexual assault have a right to have the court consider how he or she will be

impacted a continuance requested by the defendant.[8] The reason for granting or denying a continuance must be stated on the record. The consent decree allows for defendants to reschedule hearings on their own whim and without the approval of the court. The ability of the defendant to reschedule court hearings, without any consideration of how the victim will be impacted, only reinforces the stereotype that the criminal justice system cannot or will not hold perpetrators of family violence accountable.

### III. Warrants for Nonappearance

The consent decree also greatly decreases the ability of the criminal justice system to issue warrants for defendants who miss court dates, thereby removing any sense of accountability for the defendant. Paragraph 67(b) states that a court may issue a warrant if a defendant fails to appear only after the defendant has missed a regular setting and failed to request to reschedule the setting at the Open Hours Court the following week. The court has complete discretion to issue a warrant based on nonappearance at a regular setting.

If a defendant missing a first setting or a required setting, then the court may only issue a warrant after determining if the defendant had actual notice of the setting and if the defendant has good cause for failing to appear. The court has complete discretion to determine what constitutes "good cause" for missing a court appearance. By diminishing the consequences for failing to appear at court dates, perpetrators of family violence can avoid additional bond conditions or questioning regarding his behavior towards the victim and potential violations of the MOEP. As stated above, perpetrators of family violence are masters at manipulation, and would not hesitate to use their skills to circumvent the procedures designed to hold the accountable pretrial.

---

[8] Tex. Code Crim. Pro. art. 56.02(a)(15)

## IV. Prohibition on Requiring Appearance Less Than 72 Hours Post Release

The consent decree in Paragraph 62 states that a defendant cannot be required to appear less than 72 hours after his or her release from jail, unless the defendant or defense counsel requests a setting. The consent decree states that this provision to minimize disruption in the defendant's life, but it does not consider the impact that this rule will have on victim safety. According to the Texas Council on Family Violence, Harris and surrounding counties have approximately 698 shelter beds.[9] A victim stays, on average, 41 days at a shelter. Due to the length of stays and lack of capacity, the shelters turn away on average 77.5% of victims seeking shelter.[10] A defendant is able to exit the jail facility, go to his victim's house, and violate the MOEP, while knowing that he will not be held responsible for 72 hours, at the earliest. Victims of violence are in extreme danger following a defendant's release from jail, as many defendants first action is to take whatever steps necessary to get the victim to recant.

## V. Notice Requirements for Required Setting

Paragraph 65(b) permits a Court to convert a regular setting into a required setting, where the defendant's appearance cannot be waived, with 7 days written notice to the defendant or the defendant's lawyer. For defendants who are not represented, it is incumbent on the Court to ensure that the defendant receives proper notice. As repeatedly discussed above, perpetrators of family violence are masters avoiding consequences of their actions, including evading service. If a defendant violates bond conditions or a MOEP, the Court cannot take the immediate action necessary to ensure the victim's safety. Instead, the Court must provide 7 days written notice, which will likely mean the defendant has ample additional time to harass, threaten, coerce, and intimidate his or her victim.

---

[9] Texas Council on Family Violence State Plan, https://tcfv.org/stateplan/index.html
[10] Id.

HCDVCC Amicus Brief
O'Donnell v Harris County
Page 9 of 10

# CONCLUSION

The provisions of the consent decree go far beyond the intended purpose of this lawsuit. These provisions give perpetrators of family violence wide latitude to manipulate the criminal justice system to avoid accountability and further terrorize their victims. By entering the consent decree without ensuring there are adequate protections for victims, the Court is grant permission for defendants to engage in further harassment and terror.

We respectfully request the Court consider the very real impact that the consent decree will have on victims' safety and the potential for further harm that results from these provisions.

Respectfully submitted,

The Harris County Domestic Violence
Coordinating Council
2990 Richmond, Suite 555
Houston, Texas 77027
Tel: 281-400-3680
Email: info@hcdvcc.org

/s/Barbie Brashear
Executive Director

/s/Amy Smith
Deputy Director

***Amicus Curiae***