# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **MARANDA LYNN ODONNELL, et al.** | § | **CIVIL ACTION NO.** |
| | § | **4:16-cv-01414** |
| **v.** | § | |
| | § | |
| **HARRIS COUNTY, TEXAS, et al.,** | § | |

---

## *AMICUS CURIAE* BRIEF OF
## HARRIS COUNTY DISTRICT ATTORNEY

---

The Harris County District Attorney submits this *amicus curiae* brief related to the proposed settlement agreement in the above-styled matter.

## I.     Introduction.

On May 19, 2016, Maranda ODonnell filed a lawsuit challenging Harris County's policies and practices of imposing secured money bail on indigent misdemeanor defendants.  *See* Doc. 3.  In subsequent pleadings, ODonnell and two other plaintiffs (Robert Ryan Ford and Loetha McGruder) requested that the Court preliminarily enjoin Harris County, the Harris County Sheriff, and the Harris County Criminal Court at Law Judges from maintaining a "wealth-based post-arrest detention scheme."  Doc. 143 at 2.

1

On March 3, 2017, the District Attorney, although not a party to the lawsuit, supported the plaintiffs' position, emphasizing that "[h]olding un-adjudicated misdemeanor offenders in the Harris County Jail solely because they lack the money or other means of posting bail is counterproductive to the goal of seeing that justice is done" and that "[i]t makes no sense to spend public funds to house misdemeanor offenders in a high-security penal facility when the crimes themselves may not merit jail time." Doc. 206 at 1-2. Accordingly, the District Attorney called for "substantial and immediate reform to the bail system to ensure equal protection of all defendants without regard to their social status or financial inability to pay." *Id.* at 3.

On April 28, 2017, this Court granted preliminary injunctive relief in favor of the plaintiffs, detailing its reasoning in a memorandum opinion with findings of fact and conclusions of law related to the issues in the instant case. *See* Doc. 405. The Court concluded:

> Harris County's policy is to detain indigent misdemeanor defendants before trial, violating equal protection rights against wealth-based discrimination and violating due process protections against pretrial detention without proper procedures or an opportunity to be heard.

*Id.* at 192. And the Court specifically described what had to change:

> What the County is enjoined from doing is setting the amount of bail on a secured basis in a way that detains, rather than releases, misdemeanor defendants who would be released if they could pay but who are unable to do so, in violation of the Constitution.

*Id.* at 188.

2

## II.  District Attorney's Substantial Interest in the Proposed Settlement

Although she is not a party to the lawsuit, the District Attorney has a substantial interest in the parties' proposed consent decree (Doc. 617-1, hereinafter "Proposed Settlement") in two respects:

*First,* the District Attorney has a constitutional and statutory duty to represent the people of the State of Texas in criminal cases pending in Harris County and to see that justice is done in those proceedings.  *See* TEX. CONST. art. V, § 21; TEX. GOV'T CODE §43.180; TEX. CODE CRIM. PROC. art. 2.01. This duty necessarily includes (a) bringing defendants' criminal cases to resolution, to the extent that justice dictates; (b) vindicating the interests of victims of crime to restitution and closure; and (c) protecting the public safety by prosecuting cases against those criminally charged through rehabilitative measures to prevent future criminal misconduct, or by the incapacitation of the defendant for a just period in confinement.  To the extent that the Proposed Settlement impairs or diminishes her constitutional duty to bring criminal cases in Harris County to a timely and just conclusion, the District Attorney, and the people of the State of Texas, whose interests' she represents, are directly affected by it.

*Second,* although the Proposed Settlement purports to bind not only the parties, but "those who are in active concert or participation with the Parties or the

Parties' officers, agents, servants, employees, or attorneys" [1] – a phrase that reasonably could be interpreted to include the District Attorney and her prosecutors – there is no clarity on what role, if any, the District Attorney and her staff have in the new procedures.  In fact, despite the attendance of the District Attorney's staff at numerous settlement conferences and meetings, the Proposed Settlement includes no substantive mention of the District Attorney, her prosecutors, and the role they serve in the Intake and bail process at all.[2]  Neither does it include a single mention of the concerns outlined in this amicus brief that were raised during said meetings. It is fundamentally unfair to expose the District Attorney and her employees to federal sanctions for noncompliance with the proposed settlement absent appropriate clarity on her rights and responsibilities under the Proposed Settlement.

*Third,* as a stakeholder in the Harris County criminal justice system, the District Attorney brings to this Court's attention the fact that the Proposed Settlement implements procedures inconsistent with Texas law and collectively

---

[1]     *See* Proposed Settlement at ¶ 16.

[2]     Consider Paragraphs 57 through 72 of the Proposed Settlement, which deal with court policies and procedures concerning nonappearance of defendants for scheduled court hearings. A careful reading of these policies and procedures reveals that there are no references at all to what role court prosecutors have in compelling the appearance of the non-appearing defendant. Currently, prosecutors move to forfeit bond, as well as to advocate for appropriate measures to secure the appearance of the defendant in court and the safety of the public and any victims. Under the Proposed Settlement, however, the process of compelling a defendant to appear in county court appears to be exclusively managed by the court, the defendant, and his or her attorney.

4

renders prosecution of misdemeanor offenses unnecessarily and unlawfully difficult, if not impossible.

## III.    Proposed Settlement Imposes Collateral and Unnecessary Burdens

Since this Court's ruling in April of 2017, the Harris County criminal justice system has substantially changed bail practices.  With the implementation of Local Rule 9, the Harris County Criminal Courts at Law adopted bail reforms consistent with the Court's directives.[3]

By any reasonable measure, the specific constitutional deficiency raised in the instant lawsuit has now been resolved by the implementation of Local Rule 9.  The District Attorney has no objection to a settlement approved by this Court requiring and monitoring the continued enforcement of that rule.

The Proposed Settlement seeks relief far beyond the scope of the original controversy, however.  The parties have asked this Court to affirm and supervise a comprehensive restructuring of Harris County's pretrial systems which far exceed the implementation of Rule 9.  The Proposed Settlement states:

---

[3]    *See* Rule of Court 9.1, Harris County Criminal Courts at Law (current through July 1, 2019) (www.ccl.hctx.net/attorneys/rules/Rules.pdf):

> Pursuant to *ODonnell v. Harris County*, 251 F. Supp. 3d 1052 (S.D. Tex. 2017), and the Fifth Circuit in *ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018), the Harris County Criminal Court at Law Judges ("CCCL Judges") order these policies be applied to all persons arrested for a misdemeanor offense. This rule is designed to vindicate the federal constitutional rights at issue in *ODonnell v. Harris County* arising from the federal Due Process and Equal Protection Clauses.

> In addition to allocating the necessary resources for full and effective implementation of Local Rule 9, the County is committed to establishing pretrial systems and supports that will facilitate the release of misdemeanor arrestees through the least restrictive means necessary; to collecting and publicly releasing comprehensive pretrial data that will promote meaningful evaluation of the County's pretrial practices, facilitate transparent decision-making, and protect against the development of unwritten customs that do not comply with this Consent Decree; and to rigorously studying its pretrial systems and best practices to inform implementation of cost-effective, nonfinancial programs aimed at achieving misdemeanor arrestees' appearance at trial and law-abiding behavior before trial through the least restrictive means necessary.

Proposed Settlement at ¶ 14.

As the sole and exclusive representative of the people of the State of Texas in criminal judicial proceedings in Harris County, and a vital stakeholder in the criminal justice system, the District Attorney is rightly concerned that the Proposed Settlement:

- Accords unfettered and unreviewable discretion to misdemeanor judges and magistrates to delay (or outright excuse) misdemeanor defendants from appearing in court, contrary to Texas law.

- Increases institutional dysfunction in the criminal justice system by disproportionately favoring convenience to misdemeanor defendants without regard to the impact on victims, witnesses, and the other stakeholders and the State's efforts to produce them for hearings and trials.

- Increases the capability of the defendant to challenge and defeat motions by the State of Texas by and through the District Attorney to set bail at any amount, increase the amount of bail recommended, or impose conditions of bail through exclusion of any mention or committed support for the District

Attorney in the Proposed Settlement, while guaranteeing such support for the defendant, Public Defender and all support services in Section VII. [4]

- Imposes post-release policies through federal court settlement instead of through democratic processes, essentially foreclosing state and local government from developing constitutionally sound new policies as circumstances change and limited county resources dictate.

To be clear, it may be that, through the normal channels of policymaking in the Texas Legislature, the Harris County Commissioners Court, or the rulemaking of the local judiciary, the elected representatives of the people would deem the post-release policies in the Proposed Settlement to be sound and worthwhile reforms and enact them into the rule of law. But there is *no constitutional imperative* that requires the imposition of the measures contemplated and outlined in the Proposed Settlement, whether by judgment after trial or by agreed settlement.

## IV.   Post-Release Nonappearance Provisions

A criminal defendant has no constitutional right not to appear for a court proceeding. In fact, the Fifth Circuit has recognized that the State has a "compelling

---

[4]     *See* Proposed Settlement at ¶ 37 ("The Parties further agree that … access to early and effective support staff to assist defense counsel in gathering and presenting information relevant to the bail decision and appropriate conditions of release, are important to supporting defense counsel's ability to make the best available arguments for release") and ¶ 38 ("The County will provide the funding and staffing necessary to ensure the PDO is both able to provide zealous and effective representation to misdemeanor arrestees at bail hearings as required by Local Rule 9 and this Consent Decree and also meet its obligations to provide zealous and effective representation to indigent defendants at all other stages of the representation process. To this end, any such funding provided must be at or above the PDO's Fiscal Year 2019-20 approved budget.")

interest in assuring the presence at trial of persons charged with a crime." *Pugh v. Rainwater*, 572 F.2d 1053, 1056 (5th Cir. 1978) (en banc); *see also Falk v. United States*, 15 App. D.C. 446, 454 (1899):

> It does not seem to us to be consonant with the dictates of common sense that an accused person, being at large upon bail, should be at liberty, whenever he pleased, to withdraw himself from the courts of his country and to break up a trial already commenced. The practical result of such a proposition, if allowed to be law, would be to prevent any trial whatever until the accused person himself should be pleased to permit it.

Unjustified delays from a defendant's failure to appear for a scheduled court proceeding risk prejudice similar to that caused by denial of a speedy trial:

> The inability of courts to provide a prompt trial has contributed to a large backlog of cases in urban courts which, among other things, enables defendants to negotiate more effectively for pleas of guilty to lesser offenses and otherwise manipulate the system.  In addition, persons released on bond for lengthy periods awaiting trial have an opportunity to commit other crimes. …. Moreover, the longer an accused is free awaiting trial, the more tempting becomes his opportunity to jump bail and escape.  Finally, delay between arrest and punishment may have a detrimental effect on rehabilitation.

*Barker v. Wingo*, 407 U.S. 514, 519-520 (1972).

Such delays deprive all parties of a timely resolution of the criminal case while evidence is available and memories are fresh.  They diminish public confidence in the criminal justice system's ability to render justice in a timely and responsive manner.  They deny closure and justice to the greater law-abiding community, and can prevent recovery of restitution by crime victims.

Because the appearance of defendants in court to answer their charges is a fundamental interest of the State, Chapters 22 and 23 of the Texas Code of Criminal Procedure *require* magistrates to use their authority to compel such appearances:

- If a defendant "is bound by bail to appear and fails to appear in any court in which such case may be pending and at any time when his personal appearance is required under this Code, or by any court or magistrate, *a forfeiture of his bail and a judicial declaration of such forfeiture shall be taken* in the manner provided in Article 22.02 of this Code and entered by such court." TEX. CODE CRIM. PROC. art. 22.01.

- A judgment of forfeiture "*shall be entered*" if the name of the defendant has been called distinctly at the courthouse door, and the defendant did not appear within a reasonable time, unless good cause has been shown why the defendant did not appear. TEX. CODE CRIM. PROC. art. 22.02.

- A capias "*shall be immediately issued for the arrest of the defendant*" if a forfeiture of bail is declared by a court. TEX. CODE CRIM. PROC. art. 23.05.

The repeated use of the word "shall" in these statutes indicates a mandatory duty to act; the context in which the word appears does not require a different construction. *See* TEX. GOV'T CODE § 311.016(2) (the term "'shall' imposes a duty" "unless the context in which the word . . . appears necessarily requires a different construction or unless a different construction is expressly provided by statute"); *see also State ex rel. Healey v. McMeans,* 884 S.W.2d 772, 774 (Tex. Crim. App. 1994) (an act is ministerial "when the law clearly spells out the duty to be performed . . . with such certainty that nothing is left to the exercise of discretion or judgment"); *State ex rel. Vance v. Routt*, 571 S.W.2d 903, 908 (Tex. Crim. App. 1978) (holding that article 22.02 of the Code of Criminal Procedure "mandates the entry of judgment

9

in the full amount of the bond except where exoneration is proper under Art. 22.13 [] or remittitur is discretionary under Art. 22.16 []. On the basis of the facts and the applicable law, the entry of judgment in this case was strictly ministerial in nature."). *See generally* Tex. Att'y Gen. Op. JC-0277 (2000) ("We believe that, once a judge has found that a defendant has failed to appear as required by a bail bond, chapter 22 does not give the judge the discretion to refrain from entering a judgment nisi.")

None of the parties allege that these statutory procedures violate the United States Constitution or that the State's application of these statutory procedures requires federal court intervention.  Nonetheless, the Proposed Settlement would cast aside these procedures, contrary to Texas law, imposing unreasonable institutional roadblocks to ensuring the regular and timely appearance of a defendant in court, to the detriment of the interests of the people of the State of Texas by and through the District Attorney, as detailed below:

***Unfettered Court Discretion to Waive Defendant's Appearances.*** Under the Proposed Settlement, a county criminal court at law judge is authorized to "waive a misdemeanor defendant's appearance at *any* court appearance at which that [judge] is presiding."  Proposed Settlement at ¶ 65(c).  Taken to its logical conclusion, this

rule gives a judge the authority to waive a defendant's appearance in perpetuity, contrary to Texas law.[5]

It would also accord a judge the practical ability to supersede his or her own judgment over the District Attorney's exclusive discretion regarding which criminal offenses should be subject to prosecution. If a judge decided that the prosecution of a certain criminal offense offended his or her sensibilities, this proposed rule would allow the judge to excuse any such charged defendant from ever having to appear in court.

***Unfettered Discretion to Refuse to Issue Warrant for Arrest of Non-Appearing Defendant.*** Under the Proposed Settlement, there is no requirement that a county criminal court at law judge issue a warrant authorizing the defendant's arrest if the defendant does not appear for a regular setting, first appearance, or a required setting, contrary to Texas law.[6] Proposed Settlement at ¶¶ 67(b) and 68.

---

[5]    *See* TEX. CODE CRIM. PROC. art. 28.01, § 1 ("The defendant must be present at the arraignment, and his presence is required during any pre-trial proceeding.") Even if one assumes, *arguendo*, that not all post-release county court settings are "pre-trial proceedings," Paragraph 65(c) nonetheless expansively allows the judge to waive the misdemeanor defendant's appearance at *all* court appearances, including court settings in which the defendant's appearance is statutorily required under Article 28.01.

[6]    Paragraph 68(a)(i) and (ii) does require the county court judge to inquire into the issues of whether the defendant had actual notice of the court setting and whether there was good cause for the absence, as Texas law currently requires, but upon the court's determination of proper notice and no good cause for the defendant's absence, the proposed rule does not thereafter require the judge to enter a judgment of forfeiture and issue a capias, as Texas law also currently requires.

*Expanded Right to Reschedule Court Hearings.* The Proposed Settlement also accords counsel for the defendant an absolute right to waive a misdemeanor arrestee's appearance at a "regular setting." *See* Proposed Settlement at 65(a) ("Upon request by counsel, before or during a regular setting, a misdemeanor arrestee's appearance at any regular setting *shall* be waived."). The Proposed Settlement allows a misdemeanor arrestee to "reschedule any regular appearance in advance of the court date by using the rescheduling procedures described in this Consent Decree." *See* Proposed Settlement at 66(a). And the Proposed Settlement allows "[a]ny person who has missed a court appearance [to] appear at Open Hours Court to reschedule the missed court appearance, subject to the other provisions in this Consent Decree." *See* Proposed Settlement at ¶ 64.

A defendant knowledgeable of the procedures in the Proposed Settlement could go an *indefinite period* without showing up for court. As a matter of right under the Proposed Settlement, a defendant's lawyer can request at any "regular setting" to have (at least) the defendant's first two appearances waived, and can thereafter use the new electronic system to reset the defendant's appearances at any future "regular setting." When those procedures are exhausted (if ever), if the defendant misses a required appearance, he or she may then use the Open Hours Court to reschedule the missed date. When the defendant thereafter fails again to appear for the setting rescheduled in Open Hours Court, the defendant can then

12

attend the next Open Hours Court and again reschedule the court appearance.  There is a real danger of 'exploding' dockets as a result of the latitude accorded to defendants under the Proposed Settlement.[7]  The Proposed Settlement clearly favors convenience to misdemeanor defendants without regard to the impact on victims, witnesses, and or any other stakeholders.  It could render the State's efforts to produce witnesses for hearings and trials untenable by potentially delaying such contested matters indefinitely.

***No Limit on Number of Times Case May Be Rescheduled Without Defendant's Appearance.***  According to the settlement, "A misdemeanor arrestee who has not sought a waiver of appearance and is not in custody may reschedule through counsel any regular appearance in advance of the court date two times per case for any reason with no adverse consequences."  *See* Proposed Settlement at ¶ 66(b).

At first glance, the language of Subparagraphs 66(b) and 66(c) suggests that a defendant can only reschedule his or her case twice.  This is not true.  Subparagraph 66(b) does not *limit* the court's discretion to reschedule appearances; it establishes a *right* for the defendant to reschedule his or her appearances at least two times.

---

[7]  And dockets are *already* exploding.  In the first seven months of 2019, the county criminal court at law dockets have grown from 25,265 pending cases to 29,359 cases, an increase of *16 percent*.  The provisions in the Proposed Settlement permitting defendants and their counsel to reschedule court appearances as a matter of right will only exacerbate this existing problem.

Subparagraphs 65(c) and 66(c) make it clear that issuance of a warrant for non-appearances thereafter is entirely within the discretion of the judge. *See* Proposed Settlement at ¶ 66(c) ("After a misdemeanor arrestee reschedules twice, any subsequent nonappearance at a regular setting *may* result in a warrant being issued if the court finds that notice of that setting was provided in accordance with this Consent Decree, and does not make a finding of good cause."); ¶ 65(c) ("Notwithstanding any other provision in this Consent Decree, a CCCL Judge may, on his or her own motion, waive a misdemeanor arrestee's appearance at any court appearance at which that CCCL Judge is presiding.")  As such, a judge has the discretion to reschedule the case an infinite number of times beyond the first two required resets.[8]

***72 Hour Delay in First Appearance Creates Public Safety Issues.***  Paragraph 62 of the Proposed Settlement states:

> To ensure that people released from custody after arrest have an adequate opportunity to address the disruption to their lives caused by the arrest, absent a request made by arrestees or their counsel, no misdemeanor arrestee may be required to appear in court less than 72 hours of being released from jail for proceedings in the same misdemeanor case in which they were arrested and released.

---

[8]     And note that even if the judge issues a warrant after the defendant has exhausted the right to two resets, Paragraph 69(a) reasonably can be read to give the fugitive defendant an *additional two resets as a matter of right* before being arrested on any non-appearance warrant. *See* Proposed Settlement at ¶ 69(a) ("A misdemeanor arrestee may reschedule a first setting or a regular setting after a warrant for nonappearance has issued twice without risking arrest. In such circumstances, the warrant for nonappearance shall be recalled.")

Paragraph 62 poses public safety issues because it unreasonably constrains a court from taking appropriate measures to protect the victims of crime. For example, if, at the time of the defendant's release for domestic violence, stalking, harassment, or similar assaultive misdemeanor conduct, a magistrate had failed to include a condition of release to protect the victim, Paragraph 62 constrains the court from taking such protective measures until 72 hours after the defendant's release. Very dangerous behavior can happen in the immediate aftermath of an arrest for domestic violence, stalking, or any other type of victim-centric crime.[9]

Similarly, if a magistrate fails to require a defendant charged with driving while intoxicated – particularly repeat offenders – from having a Guardian Interlock device installed on the defendant's car, there is no way to remedy that problem *for three days*. The inflexibility of Paragraph 62 prioritizes concerns about the "disruption to [defendants'] lives caused by the arrest" over the serious and exigent public safety consequences related to inadequate conditions of release.

---

[9]      *See, e.g.,* Debra Pogrund Stark & Jessica Choplin, *Seeing the Wrecking Ball in Motion: Ex Parte Protection Orders and the Realities of Domestic Violence*, 32 WISC. JOURNAL OF LAW, GENDER & SOCIETY 13, 27 n.69 (Spring 2017) ("Statistics collected by the government reflect that abuse not only continues after separation from an abusive intimate partner, but actually increases. According to the Bureau of Justice Statistics' National Crime Victimization Survey, about 75% of the visits to the emergency rooms by battered women occur after separation and about 75 percent of the calls to law enforcement for intervention and assistance in domestic violence occur after separation from batterers.")

***Court's Discretion to Compel Defendant's Appearance Unreasonably Limited.*** In language similar to the inflexible language in Paragraph 62, Paragraph 65(b) forbids a court from converting an easily rescheduled "regular setting" into a "required setting" without giving the defendant seven days notice, regardless of the circumstances of the defendant's conduct. Proposed Settlement at ¶ 65(b).

A defendant who engaged in non-criminal violations of the original terms of release (*e.g.,* improper contact with victim, continued possession of firearms in a Domestic Violence situation, positive testing for dangerous drugs or alcohol, removal of ankle monitor, removal of Guardian Interlock) would be allowed at least seven days of continued misconduct before being examined by the trial court. This is significant – for example, a human trafficker would have seven days to reconnect with his victims and convince them to drop charges without fear of punishment.[10]

To be clear, this provision applies even when the supervising court *knows* that the defendant is intentionally disregarding the conditions of release. **There is no**

---

[10]    *See generally* John Elrod, *Filling the Gap: Refining Sex Trafficking Legislation to Address the Problem of Pimping,* 68 VANDERBILT L. REV. 961, 971 (April 2015) ("Because traffickers and pimps often recruit their victims under the guise of romantic relationships, a victim may be unwilling to testify against a trafficker even after being trafficked. Further, a victim may often fear retribution for testifying against her trafficker.")

As long as the human trafficker does not expose himself to new criminal charges by offering, conferring or agreeing to confer a benefit to his victim, coercing his victim, or harming or threatening to harm the victim, *see* TEX. PENAL CODE §§ 36.05, 36.06 (tampering with witness and obstruction or retaliation statutes), the only protection a human trafficking victim has from his or her pimp is an appropriate bond condition that the supervising court will actually enforce.

Under the Proposed Settlement, however, help from the trial court would not be possible for *seven days.*

16

**exception to Paragraph 65(b).**  And, as noted above, a defendant who understands the limits of the supervising court's authority can expose crime victims and the general public to continued high-risk and even lethal behavior during that seven-day waiting period.

## IV.   Reasons for Concern

It is not sufficient for the Harris County judiciary to respond to the foregoing concerns with assurances that they will not use the discretion accorded them in the Proposed Settlement in an unreasonable manner.  There are many instances of the defendant judiciary exercising unreasonable discretion in the management of defendants' release pending court proceedings.

Consider the following representative cases:

**Jamai Washington, Jr.**  On July 24, 2019, Washington was charged in Cause No. 2270263 with having committed criminal trespass on June 9, 2019.  On the date of this offense, Washington had two open misdemeanor cases – a February 2, 2019 criminal trespass, and a February 7, 2019 indecent exposure – and an open felony case for failure to register as a sex offender.  Washington also had a history of convictions that includes robbery (Cause No. 1277496), felony assault (Cause No. 1499255), misdemeanor assault (Cause Nos. 1397826, 1545064, 1700739, and 1984567), indecent exposure (Cause Nos. 2024086, 2109031, 2132083, 2166370, 2210188), public lewdness (Cause No. 2116687), harassment (Cause No. 1894089)

17

and *ten* prior criminal trespass convictions (Cause Nos. 1595551, 1711698, 1730231, 1901400, 1921958, 1958452, 2029498, 2045385, 2116270, 2128828). Notwithstanding this criminal history, a misdemeanor judge authorized Washington's release on a general order bond.

**Ralph Waites**. On May 21, 2019, Waites was charged with theft in Cause No. 2260770. Despite a substantial criminal history, including felony aggravated assault (Cause No. 1257250), misdemeanor assault (Cause Nos. 2122113, 2178757), and *four* prior theft convictions (Cause Nos. 1653046, 1736011, 1588121, 1616791), he was released on a general order bond with no conditions. On May 29, 2019, Waites was charged with evading arrest (Cause No. 2262000) and posted a $500 surety bond. On June 7, 2019, Waites was charged with another evading arrest (Cause No. 2263377) and theft (Cause No. 2263376), and a misdemeanor judge authorized Waites's release on personal bonds in each case. Although these bonds would later be revoked, a misdemeanor judge authorized Waites's release again on personal bonds in those cases on July 15, 2019. On July 14, 2019, Waites was charged with criminal trespass (Cause No. 2268883) and a misdemeanor judge authorized Waites's release on personal bond.

**Deonte Ramel Thomas.** On March 26, 2019, Thomas was charged in Cause No. 2266534 with having committed his second driving while intoxicated offense and in Cause No. 2253063 with felony possession of a controlled substance. He also

18

had a pending misdemeanor driving while intoxicated case in Fort Bend County. A misdemeanor judge authorized Thomas's release on personal bond. While out on the personal bond, Thomas committed two more driving while intoxicated offenses – on June 29, 2019 (Cause No. 2266534) and on July 11, 2019 (Cause No. 2268347).

**Rodderick Cooper.**  On May 8, 2019, Cooper allegedly assaulted Manijah Williams and was charged with misdemeanor domestic violence assault (Cause No. 2259028) and felony violation of a protective order (Cause No. 1630814). Despite having pending felony charges alleging that he had twice assaulted Williams on October 29, 2018 and February 20, 2019 while she was pregnant, the misdemeanor court granted Cooper a personal bond with another magistrate's order for emergency protection. (Cooper is currently being held without bond on the pending felony case, however.)

**Alex Guajardo.**  On May 6, 2019, Guajardo was charged with having committed a second driving while intoxicated offense (Cause No. 2258815) and failure to stop and give information (Cause No. 2258816). In both cases, a misdemeanor judge authorized Guajardo's release on a general order bond. While out on bond, Guajardo allegedly committed a domestic violence assault against his wife, Caitlynne Guajardo. After Guajardo was charged with assault in Cause No. 2271361, a misdemeanor judge authorized his release on personal bond with an magistrate's order for emergency protection. While out on bond for the

aforementioned, Guajardo allegedly murdered Ms. Guajardo on August 3, 2019 and was charged with capital murder.  On August 11, 2019, Guajardo received a general order bond for the aforementioned misdemeanor cases (even as he stands charged with capital murder).

## V.    Conclusion

No one disputes the severe impact that court proceedings have on the lives of *everyone* in the criminal justice system – defendants, victims, and lay witnesses all have to heed the imperatives of a defendant's constitutional rights to trial and to confront his or her accusers.  There should be an ongoing conversation between the stakeholders in the criminal justice system on how best to minimize the impact of such proceedings on the participants while vindicating these important constitutional rights.

However, to impose federal supervision and structure on the Harris County system where it is not required by the Constitution – and in a manner that is inconsistent with Texas law and that elevates the interests of the arrested defendant at the expense of victims, witnesses, and the community as a whole – unnecessarily constrains current and future efforts to improve the system.

Accordingly, this Court should closely examine the scope of this Proposed Settlement and limit the relief to the core subject matter of the pending complaint. Justice demands no less than that – and no more than that.

Respectfully submitted,

/s/    **Kim Ogg**

KIM OGG
State Bar No. 15230200
FED ID: 635102
District Attorney, Harris County, Texas
500 Jefferson, Suite 600
Houston, TX 77002
(713) 274-5800

## CERTIFICATE OF SERVICE

I hereby certify that all interested parties have been served this date, August

22, 2019, by email notice via electronic case filing (ECF).

/s/    **Kim Ogg**

KIM OGG

21