IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

## HOUSTON DIVISION

| | |
|---|---|
| MARANDA LYNN ODONNELL, et al., on behalf of themselves and all others similarly situated, Plaintiffs, vs. HARRIS COUNTY, TEXAS, et al., Defendants. | CIVIL ACTION NO. H-16-1414 |

## HOUSTON AREA POLICE CHIEFS ASSOCIATION AND TEXAS SCHOOL DISTRICT POLICE CHIEF'S ASSOCIATION'S STATEMENT REGARDING PROPOSED CONSENT DECREE

COMES NOW HOUSTON AREA POLICE CHIEFS ASSOCIATION AND TEXAS SCHOOL DISTRICT POLICE CHIEF'S ASSOCIATION, and submit their joint statement in response to the proposed Consent Degree in the above-styled matter and his interest in this matter pursuant to the provision in the proposed Consent Decree, which states: it "is binding on those who are in active concert or participation with the Parties or the Parties' officers, agents, servants, employees or attorneys," which could reasonably be interpreted to include a law enforcement agency such as my Police Department and its staff. *Proposed Consent Decree* at ¶ 16.

*I. The Consent Decree fails to provide proper due process to those affected by its implementation.*

We recently received a copy of the proposed Consent Decree and notice of a hearing in Federal Court on September 19, 2019, concerning the decree.

We believe any signing of this Consent Decree should be rejected at this point to allow for sufficient notice to, and a better opportunity to be heard by, any potentially affected third parties. This proposed Consent Decree is a serious matter which could have a major impact on the operation of our departments and others. We are very concerned about its possible impact on public safety, police officers, budgetary burdens and other issues. We believe actions of the Texas Legislature should also be considered.

## II. The Consent Decree gives little consideration to the future safety of victims and communities.

The proposed Consent Decree presents significant concerns with respect to the safety of victims and communities. The unreasonable process of obtaining a warrant for an arrestee who consistently fails to appear before the court creates an unreasonable obstruction to law enforcement in preventing that same arrestee from potentially reoffending.

The proposed Consent Decree states that a misdemeanor arrestee may reschedule a first or regular setting after a warrant for nonappearance has issued twice without risking arrest. In such circumstances, the warrant for nonappearance shall be recalled. *Consent Decree* at ¶ 69(a). The decree fails to take into account that while many defendants simply fail to appear and continue about their daily affairs, others become fugitives bent on avoiding the justice system entirely. The reality of this provision is that an arrestee can potentially not appear in court for weeks on end simply by *rescheduling*, thereby creating ample opportunity for the arrestee to commit another similar or more dangerous offense. This will most certainly impact the safety of local communities and victims, while making law enforcement's job more challenging than it already is.

Moreover, this proposed decree does very little to mitigate frequent nonappearance by arrestees. Most of the provisions that speak to the process of issuing a warrant after

2

nonappearances create no real sense of urgency or consequence for the arrestee to actually appear and they establish a perpetual environment where the arrestee plays the only dominant role in the judicial process, instead of striking the balance of interests shared among the arrestee, the courts, law enforcement and the public.

As the proposed settlement agreement currently stands, in a routine misdemeanor arrest, an arrestee can potentially perform all of the following actions from the time they are arrested to the time they actually appear in court: a) waive their initial appearance, b) reschedule twice for any reason with no consequences, whether or not a waiver of appearance was had, c) receive a warrant for rescheduling twice, but can be recalled if good cause is provided, d) again reschedule a hearing during the week of "Open Hours Court", without arrest or adverse consequences, e) can reschedule a first setting or regular setting after a warrant for nonappearance has issued twice without arrest and entitled to recall of the warrant and lastly, if the arrestee still hasn't made an appearance, and f) appear in the assigned court or "Open Hours Court," with the ability to be seen that day or a later date. *Proposed Consent Decree* at ¶ 65(a), 66(a)(b), 67(a), 68(a), 69(a)(b).

How does this delayed process safeguard the public's interest in keeping their communities safe from individuals that are at large and have engaged in serious misdemeanor crimes, such as unlawful carrying of a weapon?

### III. *The Consent Decree is a financial burden to Our Police Departments and endangers the public.*

Of utmost concern to our departments is that the proposed Consent Decree's remedies are so extensive and that, without proper evaluation, they impose significant detrimental impact on our police budgets for overtime and pay for police officers to attend evidentiary bail hearings, taking time from other police functions. The cost of this to our governmental entities is likely to be enormous and will certainly unnecessarily and significantly increase law enforcement

expenditures by thour police departments. Attendance at these evidentiary bail hearings will also take police officers off the streets and out of our schools, thereby further endangering the public and our students. Again, this was all done without any consultation or inclusion of the members of the Houston Area Police Chiefs Association and the Texas School District Police Chief's Association in the process that led to the consent decree.

### *IV.  The Consent Decree neutralizes the purpose and effectiveness of bail.*

Many of the stakeholders involved in the administering of criminal justice, inclusive of law enforcement, are proponents of this Court's finding that indigent misdemeanor arrestees should not be detained purely because of their inability to pay bail. *ODonnell v. Harris Cty.*, 892 F.3d 147,158 (5th Cir. 2018). However, this same Court has also emphasized that since bail is not purely defined by what the detainee can afford, the constitutional provision forbidding denial of release on bail for misdemeanor arrestees does not create an automatic right to pretrial release. *Id.*

An important factor that courts have indicated should be assessed in conjunction with a detainee's ability to pay bail is the nature and circumstances of the alleged offense and the safety of the alleged victim and community. *Ex parte Anderer*, 61 S.W.3d 398 (Tex. Crim. App. 2001). This proposed decree provides very nominal consideration to this point by demonstrating a position that an arrestee is essentially entitled to automatic release for just about any crime, unless it falls within a very narrow categorized list of offenses. *Proposed Consent Decree* at ¶ 30. Given this, the security of bail as an effective deterrent mechanism for high risk individuals is no more and arrestees will be given a blanket cover that they are "not a threat to public safety."

### *V.  The Consent Decree needs more stringent, accountable pretrial release policies to prevent putting the public at risk.*

4

Public safety and victims' rights must always be a primary consideration any time criminal justice and pretrial release reforms are on the table. The proposed Consent Decree permits a judge to modify conditions of a pretrial release of an arrestee in situations where an arrestee has missed prior scheduled court appeareances and even encourages, where practicable, avoidance of arrest, booking and jailing. *Proposed Consent Decree* at ¶ 69(b).

This is a precarious proposition to take as allowing judges to modify pretrial conditions to potentially provide even more flexibility for the arrestee further exacerbates the problem of an arrestee's nonappearance in court and is not consistent with the guidance set forth in Article 17.40 of the Texas Code of Criminal Procedure. If the arrestee is already failing to appear in court, creating an environment where judges are constantly making allowances for the arrestee would logically provide no incentive for him to appear, thereby giving him an opportunity to engage in more criminal activity and potentially put the public at greater risk. Pretrial conditions that would require reasonable supervision and monitoring of the arrestee throughout the pretrial process would do more in making a significant impact to public safety than what is currently being proposed.

## *VI. Conclusion*

Bail reform policies must always ensure that indigent individuals that are arrested are provided their equal protection/due process rights and not fall victim to "wealth-based detention." However, a just and meaningful model of bail reform should incorporate advocacy for officer and public safety, while providing courts with safe alternatives in dealing with defendants who pose a real danger to communities.

In the interest of justice, including due process, a settlement, if any, in this cause should not be considered or approved by the Court, unless and until all affected governmental entities,

officials, and employees have had a fair opportunity to evaluate this entire matter pending before the Court. This proposed Consent Decree should be rejected at this point.

Respectfully submitted,

DAVID KIMBERLY
President of,
Houston Area Police Chiefs Association,
Texas School District Police Chiefs Ass'n
7407 Louetta Rd, Spring, TX 77379
Ph. 832-249-4266