IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARANDA LYNN ODONNELL, et al. | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 16-cv-01414 |
| | ) (Consolidated Class Action) |
| HARRIS COUNTY, TEXAS, et al. | ) The Honorable Lee H. Rosenthal |
| | ) U.S. District Judge |
| Defendants. | )<br>)<br>) |

## DECLARATION OF JUDGE DARRELL JORDAN

**Introduction**

1. My name is Darrell William Jordan. I was elected by the citizens of Harris County, Texas to serve as Judge of Harris County Criminal Court at Law No. 16. On January 1, 2017, I began my term as Judge of Court No. 16. Today I am the Presiding Judge of the Harris County Criminal Courts at Law ("CCCL").

2. I have previously testified in this litigation about my experience with the Harris County misdemeanor bail and pretrial system as a judge and defense counsel. I testified live at the preliminary injunction, and I submitted a sworn declaration regarding missed appearances by persons released on personal bonds.

3. I submit this Declaration to support the proposed Consent Decree and to address some of the issues raised by those objecting to the Consent Decree, notably District Attorney Kim Ogg.

**The pretrial appearance procedures are necessary to implement the bail reforms, and they comply with Texas law.**

4. As I testified in person and by declaration, many former CCCL judges punished failures to appear at hearing or late appearances by doubling or even tripling secured bond amounts. This meant that if you appeared at the end of a docket call after your name was called, you could be hit with a bond amount you could not afford and be returned to jail to await your trial.

5. After adopting Rule 9, the current defendant CCCL judges worked among themselves and with Plaintiffs' counsel to adopt common-sense procedures addressing court appearances by misdemeanor defendants out on bond.

1

6. The first rule we adopted was to allow the accused a minimum of 72 hours to appear at his first hearing. This rule is a protective measure to eliminate the past practice of making all defendants released on a personal bond appear the next day, whereas defendants who posted a surety bond were given a 7-day setting. In my experience, it can take many hours for an arrestee to be released from jail after receiving his bond. Often, defendants are released in the middle of the night or the early hours of the morning and have to be at a 9:00 am hearing. They do not have the ability even to go home and shower and change clothes for their first court appearance.

7. The 72-hour rule does not mean arrestees cannot be subjected to pretrial release conditions. Indeed, the examples the District Attorney raises include carve-outs that require the arrestee to appear before a magistrate to consider appropriate conditions before receiving a bond. Someone with a second DUI can be ordered to have that locking device installed, before her first appearance before a judge. Someone who commits domestic violence or even threatens it can be subjected to a protective order and a monitoring device before his first appearance before the judge assigned to his case. Members of the DA's office are present at these individualized hearings to argue for conditions they believe necessary to protect the public or the defendant.

8. We also adopted rules to make more consistent how defendants are treated when they miss court appearances. Under the adopted procedures, defendants can reschedule ordinary hearings twice without being taken back to jail. After their initial appearance, virtually all defendants are represented by attorneys – retained or appointed – and their attorneys can handle run-of-the-mill matters. Defendants cannot, without consequence, miss required appearances, including bail forfeiture hearings and trials. The judge, in her discretion, may also notify the defendant that his appearance is required for any other hearing.

9. The CCCL Judges fully understand that bond forfeiture is required for a defendant's failure to appear at a required hearing. The law, however, leaves it to the judge's discretion *when* to declare a bond forfeited for non-appearance and issue a warrant. There were widely varying practices involving whether to inquire into a person's good cause, whether to ensure that the person had received notice, what conditions a judge would consider the person to have willfully failed to appear, and when a judge would forfeit a bond after a failure to appear. In the past, some judges would forfeit a defendant's bond as soon as he failed to respond at docket call. Others would wait until the end of docket call or the next day. These disparate practices allowed for manipulation of statistics proffered to this Court, as well as pervasive confusion, unfairness, and disparate treatment. They also allowed for thousands of outstanding bench warrants and people afraid to come to court to finish their important business, a consequence that harms everyone involved in the Harris County misdemeanor system.

10. The current CCCL judges decided to create a weekly Open Hours Court to allow defendants the opportunity to come into court after missing an appearance and get the person's case back on schedule. It is our belief that it is better to have misdemeanor defendants in the system, so their cases can proceed to resolution, than to have them stay away from court fearing arrest. Under the new rules we adopted, a defendant is allowed until the Open Hours Court of the week following his missed hearing to get his hearing rescheduled. He doesn't have to wait until the Open Hours Court, but may – guided by his lawyer – appear before the judge assigned to his case. If the defendant does not appear at the Open Hours Court or otherwise, the next day the judge will declare the bond forfeited and issue a warrant, provided she finds the defendant

2

had notice of the missed hearing and does not find the defendant had good cause for being absent. Many judges follow similar practices already, the rules make these better practices more uniform, such that justice is more equal and predictable.

11. It is important to understand what happens when a bond is forfeited and a defendant is rearrested. Under the old regime, in which I practiced as defense counsel, judges would routinely double or triple the secured bond amount. Those who couldn't pay the increased amount stayed in jail; those who could afford it walked free. Under the Constitution and this Court's rulings, that cannot happen. Even if rearrested, Texas law does not allow judges to order misdemeanor defendants to be held in jail without bail for a missed appearance or a bond forfeiture. However, one of the carve outs under Rule 9 is being arrested while out on bond including for violation of bond conditions (such as making court appearances). These arrestees must appear before a magistrate in an individualized hearing to determine if other bond conditions such as monitoring are appropriate in light of the prior failure to appear.

12. I, and many other CCCL judges already have been following appearance procedures like those in the proposed Consent Decree. For example, I do not require defendants to be present in court, except for pleas, trials, and to hear alleged violations of bond conditions. My clearance rate has been very high, despite an increase in the number of new misdemeanor cases filed in my court. In most months in 2019, my clearance rate has been over 100% -- that is, I conclude more cases than are filed. (In the only two months I did not, I was away from the court on U.S. Army reserve duty and attending judicial conferences.) As Presiding Judge, I have seen other CCCL judges following similar procedures with similar results. In my relatively brief experience as Presiding Judge, I see that CCCL judges who are already following these procedures are not seeing their caseloads increase, even as the District Attorney files more misdemeanor cases. In my longer experience as defense counsel, I learned saw that misdemeanor defendants want to conclude their cases quickly, even if it means beginning (and ending) a jail sentence earlier. Rule 9 and the new rescheduling procedures make the system more efficient, more predictable, as well as more just and equitable.

**Secured bonds do not prevent crimes by defendants out on bond.**

13. The District Attorney, along with other amici objecting to the proposed Consent Decree, offer a handful of tragic cases in which misdemeanor defendants out on personal bond commit terrible crimes. The unspoken "moral" of these stories is that the crime would not have happened if the defendant had been given a secured bond amount that he could not afford and therefore had remained in jail because he was poor.

14. This simply is not allowed under Texas law.

15. Texas law does not allow misdemeanor defendants to be held in jail without bail – the sole exception being committing violence against a family member while under a protective order for such domestic violence. All other misdemeanor defendants must be given a bond.

16. Being richer does not make you safer. Being poor does not make you more dangerous. Our court records are filled with examples of people who committed similar crimes after having been given a secured money bond.

17. The District Attorney and other amici present no evidence as to whether these misdemeanor defendants would have bonded out of jail and committed the same subsequent crimes. They know, but do not present to the Court, a litany of the horrible crimes committed by misdemeanor arrestees released on secure money bonds. They present no evidence on whether a misdemeanor arrestee is more likely to commit a subsequent crime while on a personal bond or a secured money bond. The anecdotal stories, while designed to inflame passions and upset the public, shed no light on the important issues before this Court. Indeed, this Court found, and the 5th Circuit affirmed the finding (as it did all of the Court's findings of fact) that reliable empirical studies indicate that holding misdemeanor arrestees in jail because they are too poor to post bond *increases* crime, rather than decreasing it.

18. In Rule 9, the CCCL judges exercising their administrative powers, agreed that most misdemeanor defendants should be given personal bonds and that their constitutional rights and public safety demanded that they be given personal bonds promptly. However, we recognized certain types of cases in which we want defendants to appear before a magistrate to determine what non-monetary conditions should attach to their bonds. These include violence against a family member or even threatening such violence. We expect many of those bonds to be conditioned on staying away from the victim and perhaps including monitoring. They include repeat DUI defendants, who should have to have locking devices installed on their cars. They include persons who are arrested while out on bond in any other case or on probation or parole. The magistrate should consider appropriate non-monetary conditions for repeat offenders. These non-monetary conditions apply to rich and poor alike. You don't remain in jail if you are poor; you can't buy your way out of conditions if you are rich.

**Conclusion**

Rule 9 and the new rescheduling procedures cure prior constitutional violations and fix a broken system that was subject to abuse. They move us further to a day when we can offer equal justice for rich and poor misdemeanor defendants. I urge the Court to approve the proposed Consent Decree.

I declare under penalty of perjury that the foregoing is true and correct to the best of my ability.

_____  _____8/30/19_____
Judge Darrell Jordan             Date