IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARANDA LYNN ODONNELL, *et al.*, <br> *Plaintiffs,* <br><br> v. <br><br> HARRIS COUNTY, TEXAS, *et al.*, <br> *Defendants.* | Civil Action No. 16-cv-01414 <br> (Consolidated Class Action) <br> The Honorable Lee H. Rosenthal <br> U.S. District Judge |

### WRITTEN STATEMENT OF INTENT TO APPEAR
### AT THE FINAL FAIRNESS HEARING

In anticipation of the final fairness hearing scheduled for October 28, 2019, the Office of the Attorney General of Texas urges this Court to reject the proposed Consent Decree because it needlessly strips away magistrate discretion in affixing bail and endangers public safety. What's more, the posture of this case raises serious concerns about whether subject matter jurisdiction currently exists. As explained below in more detail, any of these reasons is sufficient to decline acceptance of the proposed Consent Decree at this time.

Adam Biggs, Special Litigation Counsel, intends to appear and provide the following views of the Office of the Attorney General of Texas at the final fairness hearing.

1

**The proposed Consent Decree prevents judges from using their discretion to conduct case-by-case assessments in affixing bail, which contravenes Texas law and erodes public safety.**

Texas law is clear: magistrates exercise wide discretion over the amount of bail to affix in any particular case.[1] Magistrates must perform an individualized assessment of each defendant's circumstances to ascertain the proper amount owed or determine whether a personal recognizance bond (PR bond) is appropriate.[2] In making this determination, magistrates must consider, among other items, whether the bond amount is sufficient to ensure the defendant appears for court; the nature and the circumstances of the crime; and the safety of victims and the community.[3] Simply put, magistrates must carefully balance the concerns of the public, the court, and the defendant before them.

The proposed Consent Decree and Local Rule 9, however, strip away this discretion and preclude individualized assessments for the majority of crimes. Instead of allowing for case-by-case determinations, these provisions require immediate release of all misdemeanor arrestees on a PR bond or a $100 unsecured "General Order Bond" without consideration of the crime, public safety, or the arrestee's prior criminal history. Alex Bunin, the Chief Public Defender for Harris County, has recently explained how this system functions on the ground: "[E]veryone [arrested] is presumed eligible for a personal bond except if they're carve-out

---

[1] Tex. Code Crim. Proc. Art. 17.15.
[2] *Id.*
[3] *Id.*

offenses." Those presumed eligible for "early release" never receive an individualized bail hearing before a magistrate, but instead are immediately released based solely on the fact that their crime is not included on the arbitrary list in Local Rule 9. Mr. Bunin also admitted that this revolving-door policy applies not only to misdemeanors but also to some felonies.

The list of crimes eligible for an individualized bail hearing under the carve-out provision is extremely limited.[4] And the proposed Consent Decree and Local Rule 9 require immediate release for the following serious crimes without a defendant ever stepping foot in front of a magistrate:

- Assault causing bodily injury;
- Burglary of a vehicle;
- Unlawfully carrying a weapon;
- Indecent exposure;
- Riot;
- Cruelty to animals;
- Driving while intoxicated (first offense); and
- Public lewdness.

The blanket issuance of PR bonds for these serious crimes, without the opportunity for individualized consideration of the circumstances of the offense or the arrestee's prior criminal history, is contrary to Texas law and endangers public safety.

Compounding these concerns, the proposed Consent Decree and Local Rule 9 limit a judge's ability to issue a bench warrant when a defendant skips a court appearance. If a defendant does not appear at a regular setting, the proposed Consent

---

[4] The crimes eligible for a bail hearing under the carve-out provision are: assault with family violence, violation of a family violence protective order, terroristic threat involving family violence, driving while intoxicated (second or subsequent offense), new arrests while on bond, and probation violations.

Decree prohibits that judge from immediately issuing a warrant for the defendant. Instead, the judge must reschedule the appearance for the next week's "Open Court Hours."[5] If the defendant appears at "Open Court Hours" the next week, all is forgiven. It is only after the defendant also skips that appearance, well over a week after his first missed court date, that the judge can then issue a warrant. This timing requirement ties judges' hands, delays the resolution of cases, and undermines the very purpose of bail by allowing criminal defendants to avoid their court settings for up to two weeks while leaving courts no ability to secure their appearance.

The dangers posed by the proposed Consent Decree and Local Rule 9 have already begun to play out in the streets of Houston.[6] On September 2, 2019, Tina Kingshill was sitting in her car after canvassing for a local election when Brandon Bell approached her, pointed a gun in her face, and told her to "[g]et out of the car. I got this gun and I will shoot you." Bell then drove off with the vehicle.

---

[5] Open Court Hours is not a creature of Texas law. It is unclear whether the proposed Consent Decree requires the county to establish a new court that is open around the clock to allow defendants to reset missed court dates or whether an existing criminal court will hold open court hours in their courtrooms. If the county is agreeing to create a new court out of thin air, this would violate state law because as only the Texas Legislature can create a new court.

[6] *3 teens charged in connection with carjacking campaign volunteer in Sunnyside*, available at https://www.click2houston.com/news/local/3-teens-charged-in-connection-with-carjacking-campaign-volunteer-in-sunnyside (last visited October 18, 2019); *Teen accused of shooting HPD officer during crime spree was out on bond*, available at https://www.click2houston.com/news/local/teen-accused-of-shooting-hpd-officer-during-crime-spree-was-out-on-bond (last visited October 18, 2019); *"Chaotic scene": Crime spree leads to 1 officer shot, 1 suspect dead, HPD chief says*, available at https://www.click2houston.com/news/local/officer-shot-in-se-houston-police-say (last visited October 18, 2019); *Timeline of HPD police officer shot, priest beaten during night of violence on Houston's south side*, available at https://abc13.com/timeline-hpd-officer-shot-priest-beaten-during-violent-night/5537063/ (last visited October 18, 2019); *Man fatally shot in crime spree linked to earlier attack on woman block-walking for candidate*, available at https://www.chron.com/houston/article/City-Council-block-walker-robbed-in-Sunnyside-14440733.php (last visited October 20, 2019).

Police arrested Bell the next day for the carjacking. At the time of his booking, Bell was charged only with trespass to a motor vehicle, a misdemeanor not eligible for an individualized bail hearing under Local Rule 9. Accordingly, officials immediately released Bell on a "General Order Bond" at no cost. No magistrate ever performed an individualized assessment to determine if a PR Bond was appropriate or secured bail was necessary, and no magistrate was allowed to consider the circumstances of the crime, criminal history, Ms. Kingshill's safety, the safety of the community, or Bell's ability to make bail. Instead, officials presumed Bell eligible for unsecured release and set him free based solely on his promise to appear in court.

On the day he was set to appear in court on the misdemeanor, the Harris County District Attorney charged Bell with aggravated assault for the carjacking. Unsurprisingly, Bell skipped court, likely to avoid being rearrested on the felony charge. Instead of immediately issuing a warrant and revoking his unsecured bond, the judge, in accordance with Local Rule 9, rescheduled Bell's appearance for September 18, 2019.

Bell took advantage of this freedom. Just three days after Local Rule 9 allowed him to skip his court date, Bell committed another carjacking at gunpoint. After the car he stole ran out of gas, he fled on foot; eventually, he encountered a priest whom he assaulted and robbed. Bell tried to shoot the priest, but miraculously, when he pulled the trigger, the gun jammed. After assaulting the priest, Bell then carjacked another woman and stole her phone. His crime spree ended when he engaged police in a shootout that ended with a veteran officer being shot three times and Bell's death.

5

This unfortunate situation may not have ever occurred if Local Rule 9, the core of the proposed Consent Decree, did not require Bell's automatic release based simply on the title of the offense charged and prevent the judge from issuing a timely warrant. In the absence of Local Rule 9, a magistrate could have used his discretion to decide how much bail to affix, if any, or if a PR bond was even appropriate. And the judge would have made this decision after considering all the factors laid out in Texas law, including the circumstances of the crime, the safety of the victim and the community, and Bell's ability to make bail.

To be clear, no one is proposing that society incarcerate every offender to prevent crime. However, examples of failures like this clearly demonstrate that blanket rules are not an acceptable substitute for judicial discretion and that imposing such restrictions here will greatly undermine future efforts to identify and appropriately handle the next Brandon Bell.

### Subject matter jurisdiction appears to be absent.

"A consent decree, although founded on the agreement of the parties, is a judgment."[7] And because federal courts have limited jurisdiction, a court must assure itself that it has subject matter jurisdiction before taking this ultimate judicial act, even if the issue of subject matter jurisdiction is not raised by the parties.[8] Article III's case-or-controversy requirement mandates the existence of a case or controversy throughout the duration of a case. Article III standing consists of three elements: (1)

---

[7] *United States v. Miami*, 664 F.2d 435, 439 (5th Cir. 1981) (citing *United States v. Kellum*, 523 F.2d 1284, 1287 (5th Cir. 1975)).

[8] *Smith v. Tarrant Cty. Coll. Dist.*, 694 F. Supp. 2d 610, 615 (N.D. Tex. 2010) (citing *Save the Bay, Inc. v. U.S. Army*, 639 F.2d 1100, 1102 (5th Cir.1981)).

an injury in fact, that is, an invasion of a legally protected interest which is concrete and particularized, and actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) redressability, that is, the injury must be likely to be redressed by a favorable decision.[9] "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."[10]

Here, there are fundamental questions about whether a live case or controversy currently exists between these parties. Plaintiffs filed this lawsuit because Harris County's *past* bail practices allegedly included the mechanical application of a bail schedule without consideration of a defendant's ability to make bail. Those bail practices no longer exist and the current process far surpasses what the Constitution requires. Considering Defendants' laudatory statements about the current system, it is extremely unlikely that Harris County will revert to its prior practices. Accordingly, Plaintiffs' complaints regarding the prior bail system are now moot and any alleged injuries stemming from the current processes are illusory. Because there are currently no unconstitutional bail practices in Harris County, there is no live case or controversy, and, thus, the Court lacks jurisdiction to enter the proposed Consent Decree.

---

[9] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also O'Shea v. Littleton*, 414 U.S. 488 (1974); *City of L.A.* v. *Lyons*, 461 U.S. 95 (1983).
[10] *Yarls v. Bunton*, 905 F.3d 905, 909 (5th Cir. 2018).

## Conclusion

The core of this lawsuit stemmed from allegations that Harris County officials mechanically applied a bail schedule and neglected their duties under Texas law to conduct case-by-case assessments of defendants' circumstances. But in their eagerness to correct that problem, the parties have overcorrected it—and created new problems. These officials are asking this Court to implement a blanket rule that eliminates judicial discretion in making bail determinations and requires immediate release and PR bonds for a large swath of crimes without any case-by-case consideration. That tradeoff endangers public safety and sweeps far wider than any judgment this Court could have potentially entered after a trial on the merits.

For these reasons, the Office of the Attorney General of Texas respectfully requests this Court decline to enter the proposed Consent Decree at this time and instead order the parties to devise a system that comports with Texas law, allows for *every* defendant to receive a case-by-case assessment, and that sweeps only as broad as necessary to resolve any underlying Constitutional violations.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**JEFFREY C. MATEER**
First Assistant Attorney General

**DARREN L. MCCARTY**
Deputy Attorney General for Civil Litigation

**THOMAS A. ALBRIGHT**
Chief for General Litigation Division

*/s/ Adam Arthur Biggs*
**ADAM ARTHUR BIGGS**
State Bar No. 24077727
Southern District ID: 2964087
Special Litigation Counsel
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2120 | Fax (512) 370-0667
Adam.Biggs@oag.texas.gov

### CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2019, a true and correct copy of the foregoing document has been electronically filed with the Clerk of the Court using the electronic case filing system with the Court which automatically provided notice to all attorneys of record.

*/s/ Adam Arthur Biggs*