**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION**

| | |
|---|---|
| MARANDA LYNN ODONNELL, et al. )<br><br>Plaintiffs, )<br><br>v. )<br><br>HARRIS COUNTY, TEXAS, et al. )<br><br>Defendants. ) | Case No. 16-cv-01414<br>(Consolidated Class Action)<br>The Honorable Lee H. Rosenthal<br>U.S. District Judge |

**PLAINTIFFS' MOTION TO STRIKE MORALES OBJECTION
(DKT. 669) AND FOR OTHER MISCELLANEOUS RELIEF[1]**

In a brief that is copied in significant part from the amicus brief of the Professional Bondsmen of Harris County (Dkt. 635-1), attorney Kenneth W. Good—who has represented bail bond companies in this litigation and in a state court lawsuit also seeking to block the relief provided in the consent decree—purports to object on behalf of Gilbert Morales who, counsel asserts with no support, is a class member in this litigation.[2]

The brief was filed on October 18, 2019, a full week after the deadline for class members to file objections to the Consent Decree and Settlement Agreement ("proposed agreement"). *See* Dkt. 651 at 39 (Memorandum Opinion and Order, setting October 11, 2019 as the deadline for class members to file objections); Dkt. 651-1 (approved Notice).[3] To the extent Morales purports

---

[1] Defendants do not oppose Plaintiffs' Motion. Plaintiffs sought to confer with counsel for the purported objector. Counsel did not respond. Plaintiffs assume Gilbert Morales opposes the Motion to Strike.

[2] *Compare* Ex. 1 (Dkt. 631-2, Amicus Brief of the Professional Bondsmen of Harris County in Opposition to the Proposed Consent Decree, highlighted to show the sections of the brief that are identical to sections of the Morales Brief), *with* Ex. 2 (Dkt. 669, Morales Brief, highlighted to show the sections of the brief that are identical to sections of the Professional Bondsmen's amicus brief).

[3] *See also* Dkt. 659-1 (Declaration of Assistant County Attorney Melissa Spinks attesting that notice was provided as required by the Court in Dkt. 651).

to be stating a formal "objection" to the settlement, his filing is untimely and Plaintiffs ask the Court to enter an Order striking it on that basis.

In addition to (1) untimeliness, there are several other bases to strike the objection, including that (2) Morales lacks standing to object; (3) his objections are made in bad faith;[4] (4) Morales identifies no reason the settlement is not fair and reasonable to the class; and (5) Morales's arguments are, as this Court held in rejecting the same arguments when they were made by the for-profit bail industry amicus, substantively meritless.

In addition, Plaintiffs request permission to depose Morales before the hearing, or to subpoena him to appear at the hearing for cross-examination by Plaintiffs.

## I.     Morales's Objections Should Be Struck as Untimely

The Court need not consider an untimely objection. *In re NFL Players' Concussion Injury Litig.*, 821 F.3d 410, 435 n.11 (3d Cir. 2016) (confirming a district court's broad discretion "to manage the proceedings in a class action," including to reject untimely objections); *In re Centocor, Inc. Secs. Litig.*, 1993 WL 189937 at *3 n.5, (E.D. Pa. June 2, 1993) (declining to consider an objection filed four days late); *see also Farber v. Crestwood Midstream Partners L.P.*, 863 F.3d 410, 417 (5th Cir. 2017) (holding that the appellate court lacks jurisdiction over an appeal by a non-party, non-intervenor, who "waived his right to appeal by filing an untimely, procedurally deficient objection"); *id.* at n.12 (citing cases holding that untimely objectors waive their right to appeal).[5] Moreover, timeliness is determined by the Notice (Dkt. 651-1) and the Memorandum

---

[4] Morales's counsel, Kenneth Good, has previously represented interests in this litigation that are contrary to Morales's by filing a motion to intervene on behalf of the bail industry (Dkt. 202). Good also filed a still-pending lawsuit in state court challenging Rule 9, *see McCleveland v. Salgado*, Cause No. 2019-11296. Mr. Good's co-counsel in that litigation is Kevin Pennell, who filed an amicus brief on behalf of the Professional Bondsmen of Harris County in this litigation, *see* Dkt. 631, and will be speaking on behalf of the for-profit bail industry at the fairness hearing, *see* Dkt. 670 (Notice of Intent to Appear); Dkt. 692 (authorizing Pennell to speak at the hearing).

[5] *In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 631 F.3d 913, 916–17 (8th Cir. 2011) ("A shareholder—or an unnamed class member for that matter—must file a timely objection pursuant to district court procedure, or else he

2

and Order approving notice (Dkt. 651). The Court's decision to allow the public to make *statements* at the fairness hearing in support of or opposition to the proposed agreement (Dkt. 662) did not extend the objection deadline for class members to object to whether the proposed agreement is fair, reasonable, and adequate relief for them.

Morales identifies no equitable basis for excusing his untimeliness; indeed, he neither asks the Court to extend the deadline to object nor even acknowledges that his objection is untimely. *See In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20, 2010*, 2016 WL 6215974, at *20 (E.D. La. Oct. 25, 2016) (holding that "the objection is untimely and need not be considered" where purported class member filed an untimely objection and failed to move for an extension of the deadline or to seek leave to file out-of-time); *Roberts v. Heim,* 1991 WL 427888 at *1, (N.D.Cal. Aug. 28, 1991) (finding "no legitimate excuse" for filing objections two weeks late).

There is no basis to excuse Morales's untimely filing. His lawyer—who first entered an appearance in this case more than two years ago, in March 2017, when he filed a motion to intervene on behalf of two commercial bail bond companies in Harris County, *see* Dkt. 202— receives electronic notices of all filings in the case,[6] and is obviously closely tracking its progress: Mr. Good filed a lawsuit in state court in February 2019 seeking to enjoin Rule 9 prior to its implementation. *See McCleveland v. Salgado*, Cause No. 2019-11296. Moreover, neither Morales nor his counsel asserts that he was, in fact, unaware of the proposed agreement or the deadline for filing an objection, or that the manner of Notice was deficient. Nor could they. The parties'

---

loses any right he would have otherwise had to appeal a settlement agreement."); *In re Plastics Additives Antitrust Litig.*, No. 08-3358, 2009 WL 405522, at *1 (3d Cir. Feb. 19, 2009) ("For an unnamed class member to have standing to appeal a decision in a class action, he or she must have properly raised objections to that decision during the pendency of the litigation."); *see also In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1251, 1257–58 (10th Cir. 2004); *Grinberg v. Maria's Holding Corp.*, 2013 WL 6061764, at *6 & n.9 (Cal. Ct. App. Nov. 18, 2013).

[6] The docket for this case notes that Mr. Kenneth Good is "Attorney to be Noticed."

extensive Notice procedures satisfied due process: Notice was published widely, in both English and Spanish, including in the Houston Chronicle and more than 20 community newspapers, as well as on several County websites and in multiple County buildings. Dkt. 651 at 50–52 (stating that the proposed Notice procedures satisfied due process); Dkt. 659-1 (Declaration attesting to the provision of Notice in accordance with the Court's order). In short, Morales makes no attempt to justify his untimeliness and does not even ask the Court to excuse it. There is no equitable basis for doing so. And his objection should therefore be struck.

## II.     Morales Lacks Standing to Object

Morales lacks standing to object to the Consent Decree and Settlement Agreement because he (A) was not a class member when he filed his objection, and (B) fails to show that he is aggrieved by the settlement.

### A.  Morales lacks standing because he was not in the class when he filed his objection

This Court certified a transitory class under Rule 23(b)(2). *See* Dkt. 303 at 7 ("[T]he Rule 23(b)(2) class is the paradigm vehicle for addressing transient claims 'capable of repetition yet evading review.'" (quoting *Gerstein v. Pugh*, 420 U.S. 103, 110–11 & n.11 (1975)). Accordingly, the only people in the class at any given time are the misdemeanor arrestees who, at that time, are in Harris County custody, as the named Plaintiffs were when they each sought relief. Morales asserts that, at some time in the past, he "was arrested on a misdemeanor charge and was granted a PR bond," Dkt. 669 at 5, but provides no other information or evidence on the basis of which this Court could find standing.[7] Morales was not in custody on October 18, 2019, when he filed

---

[7] Public court records—which Morales does not provide to the Court—confirm that a person named Gilbert Morales "was arrested on a misdemeanor charge and was granted a PR bond." Plaintiffs assume that by "PR bond," Morales means "unsecured bond," as "personal recognizance bonds" do not exist in Texas. *See* Dkt. 302 at 127. Plaintiffs also assume that the "Gilbert Morales" who filed the objection is the one who was arrested in Harris County in 2019. There are other people by that name who were arrested for misdemeanors in Harris County in previous years. Again, Morales has provided and proffered no evidence that would allow the parties or the Court a basis to make any of these determinations, exacerbating the untimeliness of his objection.

his objection. Ex. 3 (Gilbert Morales online Harris County court records). Therefore, Morales was not in the class when he filed his objection. In a class action, "only class members have standing to object to a settlement." *Feder v. Elec. Data Sys. Corp.*, 248 Fed. Appx. 579, 580 (5th Cir. 2007); *see also Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989) (holding "that non-class members have no standing to object, pursuant to a Rule 23(e) notice directed to class members, to a proposed class settlement"); *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 855 (E.D. La. 2007) (objector "lacks standing to file an objection as he is not a class member"). Morales lacks standing because he is not a class member.

There may be other reasons related to standing to strike Morales's objection, but he has provided no information or evidence to evaluate his claim. *See Feder*, 248 Fed. Appx. at 580–81 (holding that the objector failed to "provide[] enough evidence to show that he is a class member with standing to object"); *id.* at 581 (objector "bears the burden of proving standing"; requiring "proof of his class membership"); *see also Brown v. Hain Celestial Grp., Inc.*, No. 3:11-CV-03082-LB, 2016 WL 631880, at *10 (N.D. Cal. Feb. 17, 2016) (stating that one objector's claim "almost certainly" should be struck because he "provided no proof that he is a class member"). Because Morales has declined to provide the Court with any basis to conclude that he is a class member with standing to object, and the only evidence available shows that he is *not* a class

---

According to those public records and recorded provided by the Sheriff's office, a Gilbert Morales has been arrested twice in Harris County this year. (1) He was arrested on February 12, 2019, before Rule 9 even went into effect, for misdemeanor driving while license suspended (second offense), and was released the next day on a personal bond, which was granted at early presentment. *See* Dkt. 302 at 61 (describing the County's prior early presentment process); Dkt. 557 (stating that Local Rule 9 would go into effect on February 16, 2019). (2) On September 8, Morales was stopped by an officer with the Harris County Sheriff's Office. A background check revealed that Morales had a warrant for *felony* theft that had been issued in Fort Bend County. Morales was taken to the Joint Processing Center at the Harris County Jail pursuant to the Fort Bend County felony warrant. He then posted a $10,000 surety bond and was released from Harris County custody. He was not subject to misdemeanor bail policies during that time. Ex. 3 (Harris County court records); Ex. 4 (Fort Bend County arrest and release records).

member now and was not a class member when he filed his objection, Morales's objection should be struck. *See* Exs. 3, 4 (showing that Morales was not in custody on October 18, 2019).

Plaintiffs note that, as a member of the public who previously went through the misdemeanor system—assuming he is the same Gilbert Morales who appears in court records as having been arrested in February 2019, which Plaintiffs cannot determine—Plaintiffs have no objection to the Court's granting his request to make a statement, not under oath, at the fairness hearing in the same manner as the other non-class community members.

### B. Morales lacks standing because he is not aggrieved by the settlement in his capacity as a purported class member

Morales would not have standing even if he *were* a class member.  Being a class member is insufficient to establish standing to object to a proposed class settlement; an objecting class member must also show that he or she is "aggrieved" by the settlement. *In re First Capital Holdings Corp. Fin. Prod. Sec. Litig.*, 33 F.3d 29, 30 (9th Cir. 1994) ("Simply being a member of a class is not enough to establish standing. One must be an aggrieved class member" to satisfy "Article III requirements"); *Feder*, 248 Fed. Appx. at 580 (noting that standing requires "proof of injury"); *Ass'n For Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 475 (S.D. Fla. 2002) ("Objectors' failure to show a concrete, particular injury-in-fact that is actual or imminent and not merely conjectural requires that their objections be overruled for lack of standing."); *see also Glasser v. Volkswagen of Am., Inc.*, 645 F.3d 1084, 1088 (9th Cir. 2011) ("In the class action context, an appealing objector must prove that he has suffered an injury as a result of the settlement or fee award he appeals.").

Morales has not identified any way in which he is even arguably aggrieved by the settlement or consent decree in his capacity as a purported class member. Morales would fare well under the new system if he were arrested today for driving on a suspended license, as a "Gilbert

Morales" was in February: he would be released promptly on a General Order Bond. *See* Dkt. 657-1 ¶ 30 (Amended Consent Decree). If the prior bail schedule applied, however, he would have been released only if he could afford to pay the amount required by the bail schedule, and had access to that cash, or to someone who could post the bond on his behalf. If he paid a non-refundable fee to a bonding agent like those represented by Mr. Good, he would lose that money forever, regardless of the outcome of his case. If Morales were required to see a judicial officer before release, his release would be delayed, if it happened at all. The proposed settlement ensures that people who are in the position Morales was in last February—and that named Plaintiff Maranda ODonnell was in during May 2016, when she was arrested for driving on a suspended license—obtain prompt release on an unsecured bond, a policy that promotes pretrial liberty, community safety, *and* court appearance. The new system promotes the interests of people like Morales. He does not identify—as to himself or the class more broadly—*any way* that the proposed agreement harms him, or any way it is not fair and reasonable to class members or himself.

Typically, objectors to class action settlements assert to a court that the plaintiffs failed to settle the case on terms fair to absent class members. For example, objectors sometimes argue that the named plaintiffs settled the case for too little money, or the attorneys took too large a fee from the class recovery, or settled for less injunctive relief than they should have. Not so Morales. Morales's complaint is that the Plaintiffs here secured *too much* relief for the class: he wants the consent decree scrapped and for the class to secure fewer rights. Morales is thus not "aggrieved" by the proposed consent decree—he wants the class to be "aggrieved" by voiding the decree. In the end, Morales's gripes with the settlement relate to whether the proposed agreement is good public policy and whether the proposed consent decree exceeds the scope of permissible governmental action. Morales's complaints in this regard may be appropriate fodder for a public

comment at the fairness hearing, but they do not confer upon him standing as a concerned citizen. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). Morales's mere status as a purported class member—without any showing that the settlement aggrieves him in his capacity as a class member—does not give him "standing" to advocate more broadly for purported (but unidentified) legal reforms different from what the class negotiated. *See Knisley v. Network Assocs., Inc*., 312 F.3d 1123, 1128 (2002) (class member does not have standing to pursue legal "crusades" against class action law if class member did not submit a claim form).

It is for this reason that Morales's objection also fails to comply with Rule 23(e)(5)(A), which is an additional basis for striking his objection. Rule 23(e)(5)(A) provides: "Any class member may object to the proposal if it requires court approval under this subdivision (e). <u>The objection must state whether it applies only to the objector, to a specific subset of the class, or to the entire class</u>, and also state with specificity the grounds for the objection." (emphasis added). Morales's objection does not so state, because doing so would reveal that his objections do not contain any articulation of how he is aggrieved by the proposed agreement as a purported class member or how different relief would better promote the interests of the class.

## III.    Morales's Objections Are Made in Bad Faith

Portions of Morales's brief are copied word-for-word from the amicus brief filed by the Professional Bondsmen of Harris County in Opposition to the Proposed Consent Decree. Dkt. 631-2.[8] Even where the language is not identical, the arguments largely are. For example, Morales

---

[8] Attorney Good even copied typographical errors from the Bondsmen's brief into Morales's brief. *See, e.g.* Dkt. 631-2 at 6, and Dkt. 669 at 10 ("regarding serving citation"; should be "regarding serving *a citation*" or "regarding serving *citations*"); and Dkt. 631-2 at 10, and Dkt. 669 at 12 ("the directives give to this Court"; should be "the directives *given* to this Court"). On the other hand, he edited certain words within paragraphs that were otherwise copied wholesale. *Compare* Dkt. 669 at 16 ("In addition, the proposed Consent Decree seeks to turn the process of setting bail *on its face*."), *with* Dkt. 631-2 at 14 ("In addition, the proposed Consent Decree seeks to turn the process of setting bail *on its head*.").

argues that the Consent Decree violates Texas law by: (1) eliminating the bail schedule, Dkt. 669 at 14–15, 18 (*compare* Dkt. 631-2 at 11, 16); (2) requiring that most misdemeanor arrestees be released after arrest, before seeing a judicial officer, and without being required to make a payment, Dkt. 669 at 15–16 (*compare* Dkt. 631-2 at 11, 16); (3) requiring actual notice of the court date and a finding of good cause—basic elements of due process—before forfeiting a bond, Dkt. 669 at 17 (*compare* Dkt. 631-2 at 13); and (4) requiring application of the clear-and-convincing-evidence standard, instead of the preponderance standard, to the factual findings at a bail hearing, *id.* at 18 (*compare* Dkt. 631-2 at 12). This Court rejected these same arguments when they were made by the previous amici. *See* Dkt. 651 at 35–38.

It is obvious that the objection filed on behalf of Morales is simply recycling the bail industry's arguments. First, Morales's lawyer represents the bail industry. Attorney Good has filed a motion to intervene in this case on behalf of two local commercial bonding companies. Dkt. 202. He also filed a lawsuit earlier this year on behalf of several bail bond companies against Sheriff Gonzalez and the Sixteen County Criminal Court at Law Judges, seeking to enjoin implementation of Rule 9. *See McCleveland v. Salgado*, Cause No. 2019-11296.[9] Second, Mr. Good apparently participated in drafting the amicus briefs filed by Equal Justice Now (Dkt. 635-1) and the Professional Bondsmen of Harris County (Dkt. 631-2). Curiously, the metadata in certain of the PDFs that were filed by those two amici indicate that "Ken W. Good" is the "Author" of the document. *See* Ex. 5. Moreover, as noted above, much of Morales's brief repeats verbatim the arguments in the Professional Bondsmen's brief. It is easy for that to happen when the same person is (without disclosing it) writing all of the various briefs.

---

[9] Mr. Good's co-counsel in the *McCleveland* case is Kevin Pennell, who represents the Professional Bondsmen of Harris County as amici in this litigation, Dkt. 631, and has filed a Notice to Appear at the fairness hearing on October 28 on the Bondsmen's behalf, *see* Dkt. 670.

Perhaps it is moot if the objection is struck, as it should be for multiple reasons.  Or perhaps the Court should engage in further inquiry to determine whether and to what extent counsel for Morales participated in drafting the bail industry's recent amicus briefs, and whether he has attempted to conceal his involvement in those filings from this Court even as he files meritless objections, on behalf of a purported class member, that parrot the arguments of the bail industry.[10]

Even on this record, however, Morales's objection should be rejected because it was filed in bad faith. "[W]hen assessing the merits of an objection to a class action settlement, courts consider the background and intent of objectors and their counsel, particularly when indicative of a motive other than putting the interest of the class members first." *Dennis v. Kellogg Co.*, 2013 WL 6055326, at *4 (S.D. Cal. Nov. 14, 2013); *see also In re: Law Office of Jonathan E. Fortman, LLC*, 2013 WL 414476, at *1 (E.D. Mo. Feb. 1, 2013) (same). Here, the "background" of Attorney Good is "indicative" of a motive to manufacture a basis for his *other* current clients in this same dispute—various for-profit bail bond companies—to present their arguments on appeal: In the event the Court issues final approval of the settlement, Mr. Good and his bail-bond-company clients know they will lack standing to appeal. This Court should reject the bail industry's attempt to turn their arguments, which this Court has already rejected, into an objection by a purported class-member-objector.

---

[10] If the Court is not inclined to strike and overrule the objection (as untimely and for other reasons) prior to the hearing, Plaintiffs respectfully request the opportunity to explore the potential conflict of interest through immediate, expedited discovery to determine what relief may be warranted. *See* 2 McLaughlin on Class Actions § 6:10 (16th ed.) ("[T]he district court has discretion to require objectors to provide discovery relevant to the court's consideration of the settlement and any objection thereto. For example the district court may require objectors to sit for deposition and to respond in writing to questions. . . . The district court unquestionably has authority to award sanctions against counsel who assert frivolous objections to a proposed settlement."); *In re Polyurethane Foam Antitrust Litigation*, 2015-2 Trade Cas. (CCH) ¶ 79379, 2015 WL 7313403, *1, *5 (N.D. Ohio 2015) (imposing Rule 11 sanctions of $10,000 on individual who was "not a class member . . . could not reasonably believe he is a class member, and . . . maintains his Objection for an improper purpose"); *In re Ivan F. Boesky Securities Litigation*, 948 F.2d 1358, 1368 & n.2 (2d Cir. 1991) (stating that counsel for an objector who pursues a "strategy of tactical disruption and delay . . . should be aware of Rule 11).

**IV.     Morales's Objections Are Meritless**

For all of the foregoing reasons, the Court need not and should not reach the merits of Morales's objections. In the event the Court does so, each of them must be rejected.

The question for the Court at the fairness hearing is whether the settlement is "fair, reasonable, and adequate" to the Class. Fed. R. Civ. P. 23(e)(2); *United States v. City of New Orleans*, 731 F.3d 434, 438–39 (5th Cir. 2013) (a court must find that a consent decree is fair, reasonable, and adequate before entering it as a judgment). Morales fails to identify *any* way in which the proposed settlement is not fair, reasonable, and adequate to the class. He does not articulate any provision or any relief that he proposes hurts the class in any way, nor does he propose any alternative provision of an agreement that would be better for the class.

Even if he had articulated how the proposed agreement hurts any class member, "[t]he trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (quotations omitted). And, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id*.

In any event, Morales's first two objections make no sense in light of basic class action law. First, Morales appears to argue that because the Parties have reached agreement on a Consent Decree, they are no longer "minimally adverse" and therefore this Court lacks jurisdiction to enter or enforce the proposed agreement. Dkt. 669 at 8–10. That argument constitutes a challenge to the notion of a every Consent Decree or Settlement Agreement, through which a case or controversy disappears as a result of the parties reaching an agreement. But Consent Decrees are well-established, common, and encouraged. *See Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 507

11

(5th Cir. 1981) (noting the "overriding public interest in favor of settlement" (quotations omitted));

4 NEWBERG ON CLASS ACTIONS § 11:55 (4th ed.). To the extent Morales is parroting other

amici's baseless argument that the proposed agreement was not the product of arm's length

negotiations, this Court has already properly rejected it. Dkt. 651 at 16 ("There has been, and could

not be, any suggestion of fraud or collusion in this case.").

   Second, Morales presents a variation of his jurisdictional argument, asserting that there are

no "justiciable claims" because, having executed a Consent Decree, the parties are no longer

adverse to each other. Dkt. 669 at 9–11. He again challenges the notion of a Consent Decree,

insisting that the parties must instead "execute a settlement agreement and dismiss the case"

because they are no longer "adverse." *Id.* at 11. The first case Morales cites, *Lord v. Veazie*, 49

U.S. 251 (1850), addresses the basic requirement that there be a live controversy between parties,

and that the Court may not issue advisory opinions, but it has nothing to do with Consent Decrees.

The second case Morales cites, *Vermont v. New York*, 417 U.S. 270 (1974), was presented to the

Supreme Court pursuant to its original jurisdiction over disputes between two states. The Court

rejected the states' proposed Consent Decree because it would have required appointment of a

Special Master who "would police the execution of the settlement set forth in the Decree and *pass*

*on to this Court his proposed resolution of contested issues*," and the Court concluded that it lacked

power under Article III to act "in an arbitral rather than a judicial manner." *Id.* at 277 (emphasis

added). The Court did not reject the concept of Consent Decrees to resolve civil rights cases.

Morales provides no other basis for concluding that a lack of justiciable claims precludes approval

of the Consent Decree.

   Third, Morales asserts that the Consent Decree is "overbroad," Dkt. 669 at 11–13, but he

bases his arguments on false premises. Plaintiffs did not, as he says, "plead only violations of

12

procedural due process," and the Fifth Circuit did not, as he says, reject the notion of substantive constitutional rights. *See id.* at 11, 12. Plaintiffs brought substantive claims: this Court has already held as such, *see* Dkt. 651 at 26 (holding that "each provision [of the Consent Decree] 'spring[s] from,' and works to resolve, the plaintiffs' constitutional claims" (quoting *Smith*, 906 F.3d at 335)). And the Fifth Circuit concluded only that Plaintiffs did not raise a *substantive due process* claim at the preliminary injunction stage—not that Plaintiffs did not raise the claim in the case. *ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018) (striking down Harris County's misdemeanor bail system on equal protection and procedural due process grounds).

Next, Morales asserts that the final judgment should be limited to the scope of *preliminary* relief. He cites no legal authority for the assertion, nor could he. Plaintiffs did not litigate all of their claims at the preliminary injunction stage—for example, Plaintiffs did not litigate the right to counsel or the requirement to apply a clear-and-convincing-evidence standard to findings at bail hearings, and the Fifth Circuit concluded that Plaintiffs did not preserve a substantive due process claim in the preliminary injunction proceedings. In any event, Plaintiffs are not limited at settlement to the relief they could attain at a preliminary stage of the litigation.

Most importantly, to the extent the parties negotiated relief beyond what Plaintiffs could have secured by litigating this case through trial, that is no basis for rejecting the agreement. As this Court has explained in detail, *see* Dkt. 651 at 24–28, "a consent decree can sweep more broadly than can other forms of court-ordered relief." *Smith*, 906 F.3d at 335; *see also Local No. 93*, 478 U.S. at 525 ("[A] federal court is not necessarily barred from entering a consent decree merely because the decree provides broader relief than the court could have awarded after trial."); *see also In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 179, 185 (2d Cir. 1987) ("[A] district court may

provide broader relief in an action that is resolved before trial than the court could have awarded after trial." (alterations and quotation omitted)).

Finally, Morales argues that Rule 9 and the court appearance provisions of the Consent Decree violate Texas law. Plaintiffs have addressed each of the arguments Morales raises here, and the Court has already rejected them. Dkt. 651 at 33–39. Plaintiffs will not waste the Court's time rehashing those issues.

This Court should reject the purported objection as untimely.  In addition, the Court should explain that Morales is not a class member; is not aggrieved even if he were a class member; fails to provide basic documentation and evidence that would enable the court to evaluate his claims; fails to comply with Rule 23; explains no basis on which the agreement is not fair, reasonable, and adequate to the class; makes his objection in bad faith; and raises no valid substantive legal arguments. A proposed order is attached.

Date: October 23, 2019

Respectfully Submitted,

/s/ Alec Karakatsanis
/s/ Elizabeth Rossi
Alec George Karakatsanis
alec@civilrightscorps.org
Elizabeth Rossi
elizabeth@civilrightscorps.org
Civil Rights Corps
910 17th Street NW, Suite 200
Washington, DC 20006
Telephone: (202) 681-2721

/s/ Neal S. Manne
Neal S. Manne
Texas Bar No. 12937980
nmanne@susmangodfrey.com
Lexie G. White
Texas Bar No. 24048876
lwhite@susmangodfrey.com
Joseph S. Grinstein
Texas Bar No. 24002188
jgrinstein@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

/s/ Michael Gervais
Michael Gervais
mgervais@susmangodfrey.com
SUSMAN GODFREY L.L.P.

14

1900 Avenue of the Stars, #1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of October 2019, I electronically filed the foregoing with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Elizabeth Rossi*
Elizabeth Rossi