IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARANDA LYNN ODONNELL, et al, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | No. 4:16-cv-01414 |
| | § | |
| HARRIS COUNTY, TEXAS, et al., | § | |
| Defendants. | § | |

---

### OBJECTIONS TO PROPOSED CONSENT DECREE BY CLASS MEMBER GILBERT MORALES

---

**COMES NOW**, Gilbert Morale, Class member and files the following objections and brief in opposition to the Proposed Consent Decree filed by the parties and in support thereof submits the following:

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

MORALES IS A MEMBER OF THE CLASS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

NATURE AND STAGE OF THE PROCEEDINGS. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.      Article III Jurisdiction.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.     Lack of Justiciable Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III.    Over Broad . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V.     The Proposed Consent Decree Violates Texas Law. . . . . . . . . . . . . . . . . . . . . 9
         A.    Overview of Texas Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
         B.    Setting Bail at $100.00 Without Seeing A Magistrate is Arbitrary
             and Capricious. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
         C.    The Proposed Consent Decree Requires that Almost All
             Misdemeanor Defendants be Released Without Seeing a
             Magistrate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
         D.    The Proposed Consent Decree Puts the Cart Before the Horse.. . . . . . . . . . 12
         E.    The Proposed Consent Decree Violates Chapter 22 of the Texas
             Code of Criminal Procedure. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
         F.    The Proposed Consent Decree Attempts to Change Texas Law on
             the Standard of Review Regarding Bail Decisions. . . . . . . . . . . . . . . . . 13
         G.    The Proposed Consent Decree Establishes a Right To Release
             Contrary to the Opinions Issued by the 5th Circuit. . . . . . . . . . . . . . . . . 14

VI.    The Proposed Consent Decree Grants Relief Not Sought or Authorized. . . . . . . . . 14

VII.   Adoption by Reference of All Other Objections Filed by Any Other Party
       or Amicus. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

**Cases**

Ex parte Brown,
    959 S.W.2d 369 (Tex. App.–
    Fort Worth 1998, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Lord v. Veazie,
    49 U.S. 251 (1850) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Raines v. Byrd,
    52 U.. 811 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Terrazas v. Clements,
    581 F. Supp.1319 (N.D. Tex. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. City of Alexandria,
    614 F.2d 1358 (5th Cir.1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. City of Miami,
    664 F.2d 435 (5th Cir.1981) (en banc)
    (opinion of Rubin, J.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Johnson,
    319 U.S. 302 (1943). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Windsor,
    135 S.Ct. 2675 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Vermont v. New York,
    417 U.S. 270 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Rules, Statutes and Periodicals**

Caudillo v. State,
    541 S.W.2d 617 (Tex. Crim. App. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Tex. Code Crim. Pro. art 22.13. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Tex. Code Crim. Pro. art. 14.06. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Tex. Code Crim. Pro. art. 15.17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

TEX. CODE CRIM. PRO. art. 17.15. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 12

Tex. Code Crim. Pro. art. 22.16. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Tex. Code Crim. Pro. ch. 14. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Tex. Const. art. I, §11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14

U.S. Const. Art. III, §2, cl. 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## MORALES IS A MEMBER OF THE CLASS

Morales is a member of the class before the court. Mr. Morales was arrested on a misdemeanor charge and was granted a PR bond. Because of Mr. Morales experiences he objects to the proposed Consent Decree based upon the grounds set forth below.

## NATURE AND STAGE OF THE PROCEEDINGS

This proceeding has been before the United States Court of Appeals for the Fifth Circuit on two occasions. In the first appeal, the Court of Appeals reversed the preliminary injunction issued by this Court on the grounds that it was over broad and in essence sought to end misdemeanor bonds in violation of state law. In the second appeal, the Court of Appeals issued a partial stay of the Court's second preliminary injunction on the grounds that there was a substantial likelihood on the merits that the defendants would prevail. The Court of Appeals held that a misdemeanor defendant did not have a right to release and that this Court's order sought to get rid of surety bonds contrary to Texas law.

In November of last year there was an election. The judges defending this case were defeated and replaced. Once the new judges took office, they filed a motion dismissing the second appeal even though a stay had been issued stating that they had a substantial likelihood of success on the merits. Once the appeal was dismissed, the plaintiffs filed a motion to vacate the opinions issued by the Court of Appeals. On January 14, 2019, the Court of Appeals issued an order denying the motion to vacate the opinions. Further, the court of appeals stated, "[a]s a result of the dismissal, the published opinion granting the stay is this court's last statement of the matter and, like all published opinions, binds the district courts in this circuit." Cause No. 18-20466; *Odonnell v. Salgado*, et al; In the United States Court of Appeals for the Fifth Circuit (January 14, 2019).

- 1 -

According to the express opinion issued by the Court of Appeals, the decisions released by the 5th Circuit remain binding authority in this district.  Mr. Morales maintains that the settlement violates these authorities in numerous respects and cannot be allowed to stand.  As discussed in more detail below, to allow this proposed Consent to Decree to be entered would fly in the face of the directives of the Court of Appeals.

## STATEMENT OF THE ISSUES

The questions addressed in this brief are whether the trial court may enter the proposed Consent Decree in this matter, and whether the proposed Consent Decree is improper because it seeks relief that was not plead or that the trial court is not authorized to enter.  The Court has stated in its memorandum opinion that it is not the job of the Court to determine whether the proposed Consent Decree violates Texas law.  Morales maintains that this is not correct.  Further, Morales maintains that the proposed Consent Decree will not resolve this litigation in any fair way; but instead, weaponizes the Court to make political changes (which seeks to change the law in Harris County for a period of seven years and to enforce the changes under the Supremacy Clause of the United States Constitution.

## SUMMARY OF ARGUMENT

The plaintiffs and the defendants maintain that they have reached a settlement of this matter.  However, instead of entering into a settlement and dismissal of the underlying case, the parties ask this Court to enter a proposed Consent Decree.  Strong questions have arisen about whether the Court continues to have jurisdiction over this matter.  This cannot be more clear than in this case.  On the one hand, the Court has held that the parties may increase the standards required by Texas law and the Texas Constitution; but on the other hand, the defendants respond to their critiques that

the funding needed to implement the proposed settlement is "required" by Texas law. The defendants have ignored the fact that they have agreed, through settlement, to impose additional requirements over and above the laws enacted by the Texas Legislature and the even higher than the requirements of the Texas Constitution. Morales maintains that the parties cannot agree in a settlement to change the law. Further, this court cannot authorize the parties to change the law in Texas.

In addition, the proposed Consent Decree is over broad just as the prior preliminary injunctions issued by the Court which were reversed or stayed by the Court of Appeals. Next, the proposed Consent Decree seeks to award relief for claims that were not plead and to which the plaintiffs are not entitled to relief and seeks to change the law in Texas. Further, the proposed Consent Decree violates Texas law in multiple ways. Next,, the proposed Consent Decree seeks to create a new system of forfeiting bonds and issuing a warrant contrary to Texas law and the new proposed system will make it impossible for the criminal justice system to function for those individuals who seek to manipulate the system. Consequently, Morales maintains that the proposed Consent Decree is not fair. It is not fair to victims of crimes. It is not fair to the Criminal Justice System and will make it more difficult for courts to resolve cases. Also, the proposed Consent Decree is not fair to class members. Finally, the proposed consent Decree violates Texas law. The Court should decline to enter the proposed Consent Decree.

## ARGUMENT

### I. Article III Jurisdiction

Article III's case-or-controversy requirement allow federal courts to exercise jurisdiction over only "actual" disputes "arising between adverse litigants." U.S. Const. Art. III, §2, cl. 1; *Raines v.*

*Byrd*, 52 U.. 811, 818 (1997). In theory, federal courts "refus[e] to entertain cases" which do not involve "a collision of actively asserted and differing claims"or "the honest and actual antagonistic assertion of rights.*" United States v. Johnson*, 319 U.S. 302, 305 (1943). In *Johnson* the Supreme Court explained, "[T]he adjudicatory process is most securely founded when it is exercised under the impact of a lively conflict between antagonistic demands, actively pressed, which make resolution of the controverted issue a practical necessity." A case which begins as a justiciable dispute later may become nonjusticiable if the parties are no longer adversarial or antagonistic toward each other or their dispute is otherwise mooted.

The majority opinion in *United States v. Windsor*, 135 S.Ct. 2675 (2013), in which the Court invalidated section 3 of the Defense of Marriage Act ("DOMA"), largely treated Article III's adverseness requirement as a prudential, rather than jurisdictional, limitation. *Id.* at 2683-89. The plaintiff in *Windsor* sued to obtain a tax refund that the Internal Revenue Service ("IRS") had denied her because §3 prevented the Court from recognizing her same-sex marriage. *Id.* at 2683. Although the Obama Administration required federal agencies to enforce section 3's definition of marriage as a union between one man and one woman, it prohibited DOJ from defending the provision's constitutionality in court.

The Supreme Court commented that the DOJ's failure to contest the plaintiff's constitutional arguments raised "prudential" concerns because the litigants' agreement on the main issue in the case could lead to a "friendly, non-adversary proceeding." The Court held that those concerns were overcome, however, because the U.S. House of Representative's Bipartisan Legal Advisory Group had intervened to defend section 3's constitutionality. The Court also expressed concern that declining to hear the case would lead to a substantial amount of unnecessary litigation in the lower

courts. Justice Antonin Scalia, joined by Chief Justice John Roberts and Justice Clarence Thomas, vigorously dissented, arguing that Article III's adverseness requirement was jurisdictional.

Notwithstanding *Windsor*, it is likely that Article III's adverseness requirement remains at least partly jurisdictional. The majority opinion held that a justiciable case existed, despite the Government's agreement with the plaintiff's constitutional arguments, because the IRS refused to "give . . . effect" to those arguments through its continued refusal to provide the tax refund that the plaintiff claimed. Thus, even though the majority opinion frames the jurisdictional issue in terms of standing, it seems to suggest that the parties must be at least minimally adverse to each other—even if only with regard to the plaintiff's ultimate relief—for a federal court to be able to exercise jurisdiction over a matter. The facts of this case are extreme and raise concerns such as those expressed by Justice Byron White in a dissenting opinion in *Maryland v. United States*, 746 U.S. 1001, 1002 (1983), "I am troubled by the notion that a district court, by entering what is in essence a private agreement between parties, invokes the Supremacy Clause powers of the Federal Government to pre-empt state regulatory laws."

## II.    Lack of Justiciable Claims

The cases addressing Article III jurisdiction to issued consent decrees, have periodically addressed justiciablility concerns. This issue was first raised in 1850 in *Lord v. Veazie*, 49 U.S. 251, 254 (1850) where the Court dismissed an appeal because there was "no real dispute" between the litigants and their interests "were not adverse." The Court of Appeals explained, "It is the office of courts of justice to decide the rights of persons and of property, when the persons interested cannot adjust them by agreement between themselves-and to do this upon the full hearing of both parties." The Court concluded that a ruling entered in the absence of adverseness between the parties "in the

eye of the law is no judgment of the court. It is a nullity . . . ."  When litigants have reached the point where they are able to seek a consent decree, by definition, they can determine their rights "by agreement between themselves,"and one of the key conditions of justiciablility identified in *Lord* is lacking.

The Court also alluded to justiciability concerns regarding consent decrees in *Vermont v. New York*, 417 U.S. 270 (1974)  an original jurisdiction case arising from an interstate water dispute.  *Id.* at 270-71.   After litigating for over two months about a polluted sludge bed in Lake Champlain and Ticonderoga Creek, the State litigants agreed to resolve the case by entering into a consent decree. The proposed Consent Decree called for immediate action to remediate the pollution, as well as the appointment of a special "South Lake Master" to adjudicate any future disputes that arose concerning it.  *Id.* at 271.   The Court declined "to approve the Proposed Decree." *Id*. at 274.   The Court observed, "Article III speaks of the `judicial power' of this Court, which embraces application of principles of law or equity to facts, distilled by hearings or by stipulations. Nothing in the Proposed Decree . . . speaks in terms of `judicial power.'" The Court went on to suggest that it would be more appropriate for the parties to settle the dispute through either an interstate compact or a traditional settlement agreement.  *Id.* at 277-78.

In the present case, the Plaintiffs and the Defendants are no longer adverse to each other.  The Plaintiffs and Defendants have joined forces to attempt to weaponize this Court through a proposed Consent Decree to prevent political changes for a period of seven years.  This is improper.  The Court should not allow the parties to use it in such a fashion.  The Court should refuse to execute the proposed Consent Decree and require the parties to execute a settlement agreement and dismiss the case.

## III.    Over Broad

In paragraph 10 of the proposed Consent Decree it states as follows:

This Consent Decree is tailored to remedy the systemic and longstanding constitutional violations found by the Court in this litigation; to safeguard arrestees' equal protection and due process rights, including the fundamental interest in pretrial liberty and the right against wealth-based detention; to promote court appearance and public safety; to require investments necessary for new systems to function efficiently in a large jurisdiction; and to promote transparency, rigorous analysis, and accountability throughout the pretrial process so that constitutional practices will endure. It is crafted to protect against a reversion to the prelitigation system of mass, non-individualized pretrial detention of misdemeanor arrestees without lawful justification.

Proposed Consent Decree p. 11.

The plaintiffs plead only violations of procedural due process.  The Court attempted to expand the case to include substantive due process in the Second Preliminary Injunction and the 5th Circuit issued a stay of this portion of the order.  Further, the Court of Appeals held that substantively bail was constitutional in Texas.  The plaintiffs asked the court of appeals to vacate this opinion.  However, the court of appeals denied the motion and expressly held that the opinion on the motion for stay and the previous opinion would remain in effect and would be the law of the district applicable to trial courts.  The opinion on the motion for stay held that since the court found only procedural issues, the remedy had to be limited to additional procedures (such as a hearing) to remedy the procedural error found.  Further, the court of appeals had that once a procedural remedy is provided, the appropriate review reverted to a rational basis review for any remaining issues.

The proposed Consent Decree simply ignores both opinions issued by the 5th Circuit and seeks to greatly expand this Court's First and Second preliminary injunctions that were set aside or stayed by the court of appeals.  The proposed Consent Decree seeks to require a PR bond for all defendants arrested on a misdemeanor charge in Harris County.  The Court of Appeals has held hat

- 7 -

such a preliminary injunction would be improper. Therefore, a proposed Consent Decree which attempts to do the same is also improper.

The Court has stated in its memorandum opinion that it is not the Court's place to ensure that the proposed Consent Decree complies with state law. With respect, this statement is not consistent with other authorities in this area. As the court stated in *Terrazas v. Clements*, 581 F. Supp.1319, 1322-23 (N.D. Tex. 1983):

> [T]he consent decree proposed by the State's Motion clearly affects the rights of third parties since it involves the adoption of a reapportionment plan for all the Senate districts in the State. Further, the proposed decree contemplates that it will remain in effect for all state senatorial elections until following publication of the federal decennial census of 1990 or until such earlier date as a valid plan is enacted by the State of Texas and becomes effective. Under these circumstances, this Court is obligated to examine the proposed consent decree carefully to ascertain not only that it is fair, adequate and reasonable as to the parties and affected third parties but also that it does not violate the United States Constitution or any other applicable federal or state law. *See United States v. City of Miami*, 664 F.2d 435, 441 (5th Cir.1981) (en banc) (opinion of Rubin, J.); *United States v. City of Alexandria*, 614 F.2d 1358, 1361 (5th Cir.1970).

In the present case, the Plaintiffs and the Defendants are asking the Court to grant substantive relief when a claim for substantive due process was not plead and the Court of Appeals held that substantively bail was constitutional. Therefore, the relief sought by agreement of the parties is relief that the Court of Appeals expressly stated was not available.

Since the plaintiffs plead a claim alleging procedural due process violations because individuals claiming poverty did not have an opportunity to seek a deviation from the bail schedule used by the county, the remedy is a hearing to give the arrestees that opportunity. This is not the remedy that is set out in the proposed Consent Decree. Instead, the parties seek to simply release essentially all misdemeanor arrestees irrespective of whether they are claiming poverty and

irrespective of whether they are seeking a PR bond. No risk assessment is done of these individuals. They do not see a magistrate or a judge to set bail. They are all given a PR bond in the amount of $100.00.

## V. The Proposed Consent Decree Violates Texas Law

### A. Overview of Texas Law

The setting of bail is regulated by article I, section 11 of the Texas Constitution which states that all prisoners shall be bailable by sufficient sureties. Tex. Const. art. I, §11. Article 17.15 of the Texas Code of Criminal Procedure states that the amount of bail to be required in any case is to be regulated by the court, judge, magistrate or officer taking the bail. Tex. Code Crim. Pro. art 17.15. The article also states that the standard for setting bail is subject to the magistrate's discretion set by the Texas Constitution and by the rules set out in article 17.15. *Id.* The rules state that: (1) bail shall be sufficient high to give reasonable assurance that the undertaking will be complied with; (2) the power to require bail is not to be used as an instrument of oppression; (3) the nature of the offense and the circumstances under which it was committed are to be considered; (4) the ability to make bail is to be regarded and proof may be taken on this point; and (5) the future safety of a victim of the alleged offense and the community shall be considered. TEX. CODE CRIM. PRO. art. 17.15. Case law has consistently stated that the decision regarding a proper bail amount lies within the sound discretion of the trial court. *Ex parte Brown*, 959 S.W.2d 369, 372 (Tex. App.– fort Worth 1989, no pet.). However, this discretion is limited. The trial court does not have the discretion to set differential amounts for bonds depending on whether the arrestee posts a cash bond or a surety bond. *See Professional Bondsmen of Texas v. Carey*, 762 S.W.2d 691, 693 (Tex. App.– Amarillo 1988, pet. denied); *see also* Texas Atty. Gen. Opinion JM-363 (1985). Once an arrestee fails to appear for

- 9 -

court, the trial court has the discretion to require that any future bond be limited to a cash bond. Tex. Code Crim. Pro. art. 23.05.

If a county has a personal bond office, the bond office may gather information about the accused and provide a report to the trial court recommending that the arrestee be released on a PR bond. Tex. Code Crim. Pro. art. 17.43. Individuals released through a PR bond office may be charged a fee in the amount of 3% of the bond or $20.00 whichever is higher. *Id.*

Further, Chapter 22 of the Texas Code of Criminal Procedure sets out the rules regarding what the trial court must do if the arrestee fails to appear. Article 22.01 states that whenever the defendant fails to appear, the trial court "shall" issue a judicial declaration as provided by article 22.02. Tex. Code Crim. Pro. art. 22.01. Article 22.02 states that the name of the defendant will be called distinctly from the courthouse door and if the defendant does not appear within a reasonable time, a judgment nisi (or conditional judgment) "shall" be entered. *Id.* at art. 22.02. Articles 22.03-22.08 set out the rules regarding serving citation regarding the judgment nisi. *Id.* at articles 22.03-22.08. The defenses to the bond forfeiture are set out in article 22.13 of the Texas Code of Criminal Procedure. In *Hartley v. State*, 382 S.W.2d 483 (Tex. Crim. App. 1964), the Texas Court of Criminal Appeals held that no other defenses other that those set out in article 22.13 would exonerate a bond. *Id.* Claims for remittitur can be submitted based upon article 22.16 of the Texas Code of Criminal Procedure (mandatory and discretionary remittitur before judgment).

**B.  Setting Bail at $100.00 Without Seeing A Magistrate is Arbitrary and Capricious**

A central portion of the proposed Consent Decree is that almost all misdemeanor arrestees never see a magistrate. These defendants are automatically released on a $100.00 bond. This violates Texas law. Article 17.15 of the Texas Code of Criminal Procedure states that a magistrate

- 10 -

must consider the factors set out above.

A bail schedule sets different bail amounts based upon the criminal history and the specific charge against the defendant. If a defendant has a more significant criminal history, then the bail is set higher pursuant to the schedule. The federal courts have recognized that the use of bail schedules facilitate the release of a large number people quickly from a jail. Conversely, the policy that which the parties seek in the proposed Consent Decree sets all bonds at the same amount irrespective of the ability to pay, irrespective of the nature of the offense and irrespective of the future safety of a victim. Such a policy does not comply with article 17.15 of the Texas Code of Criminal Procedure. The plaintiffs and the defendants appear to know this and are attempting to get around this issue by seeking to change the law of Texas through this Court's proposed Consent Decree. This would be improper. The Court cannot change the law of Texas.

### C. The Proposed Consent Decree Requires that Almost All Misdemeanor Defendants be Released Without Seeing a Magistrate

Chapter 14 of the Texas Code of Criminal Procedure authorizes arrest without a warrant in certain circumstances. Tex. Code Crim. Pro. ch. 14. An arresttee detained without a warrant must within 48 hours of arrest be taken before a magistrate for the magistrate to perform the duties set out in article 15.17 of the Texas Code of Criminal Procedure. *Id.* at art. 14.06. Article 15.17 states the magistrate shall allow the person arrested reasonable time and opportunity to consult counsel and shall, after determining whether the person is currently on bail for a separate criminal offense, admit the person arrested to bail if allowed by law. *Id.* at 15.17. If the arrestee is charged with an offense that involves a misdemeanor punishable by fine only, the magistrate may release the arrestee without bond and order the accused to appear at a later date. *Id.* at (b).

- 11 -

In the proposed Consent Decree an arrestee is not taken before a magistrate unless they fall within 7 categories of misdemeanors. The remaining 85% to 95% of misdemeanor arrestees do not see a magistrate. Instead, they are released on a PR bond sent at $100.00 which is an arbitrary amount in violation of 17.15 of the Texas Code of Criminal Procedure. The use of a bail schedule was previously authorized by a federal court because it facilitated the release of large groups of people and bail was sent based upon the criminal charge filed and whether the arrestee had a previous criminal history. The procedure set out in the proposed Consent Decree does not take into consideration the factors set out in 17.15 of the Code of Criminal Procedure. Instead, the proposed Consent Decree sets an arbitrary amount of $100.00 irrespective of the charge and the arrestees' criminal history. Also, all discretion is taken away from the magistrates and they never see these arrestees. This is improper.

### D. The Proposed Consent Decree Puts the Cart Before the Horse

In addition, the proposed Consent Decree seeks to turn the process of setting bail on its face. The task of the trial court is to set bail. Thereafter, the defendant may decide whether to post a surety bond, a cash bond or to seek a PR bond. The PR bond department is required after bail is set to review candidates and make reports to the trial court on whether certain defendants should be granted a PR bond and whether they will likely appear for court. The trial court may not restrict the type of bond that may be filed except in a few circumstances. In the present case, the proposed Consent Decree seeks to exclude the private surety bail bondsmen from posting any bonds for 85% of the misdemeanor arresttees. This violates Texas law and also violates the directives give to this Court by the 5th Circuit in the two opinions issued by the court of appeals which held, in part, that the Court's first preliminary injunction and second preliminary injunction were improperly

attempting to put the private surety bond system out of business.

    **E.**    **The Proposed Consent Decree Violates Chapter 22 of the Texas Code of Criminal Procedure**

Further, the proposed Consent Decree attempts to change the law in Texas regarding the requirements that a court must follow when the arrestee fails to appear for court. Chapter 22 of the Texas Code of Criminal Procedure requires that any time there is a failure to appear, the trial court is required to issue a judgment nisi. The resolution of the failure to appear is governed by any defenses claimed in article 22.13 and any claim for remittitur set out in article 22.16 of the Texas Code of Criminal Procedure. Tex. Code Crim. Pro. art 22.13; Tex. Code Crim. Pro. art. 22.16. The proposed Consent Decree states that a bond cannot be forfeited unless the arrestee was given actual notice of the hearing where he failed to appear. This is a change to Texas law as well. In Texas, when a bond states that the defendant is required to appear "instanter" then the arrestee is subject to call of the court at any time with or without any additional requirement of notice. *Caudillo v. State*, 541 S.W.2d 617 (Tex. Crim. App. 1976). The proposed Consent Decree sets out additional proof requirements before a bond may be forfeited that are not currently required by Texas law. The proposed Consent Decree violates Chapter 22 because it states that a trial court attempts to change Texas law regarding forfeitures.

    **F.**    **The Proposed Consent Decree Attempts to Change Texas Law on the Standard of Review Regarding Bail Decisions**

In section 9.12.7 of the proposed Consent Decree the parties attempt to change Texas constitutional law to set up a clear and convincing evidence standard before a surety bond can be required. This is improper. As set out above, the duty of the trial court is to set bail and the defendant has the right to chose the vehicle that will be used to satisfy the bail requirement. Further,

the clear and convincing evidence standard violates Texas case law and the Texas Constitution. Case law states that setting bail is left to the sound discretion of the trial court. *Ex parte Brown*, 959 S.W.2d 369, 372 (Tex. App.– Fort Worth 1998, no pet.). Therefore, the standard of review would be abuse of discretion not clear and convincing evidence. Further, Article I, Section 11b states expressly that a defendant may be denied bail for violating a condition of release and the evidentiary standard is a preponderance of the evidence. Tex. Const. art. I, §11b.

The proposed Consent Decree violates Texas law and the Texas Constitution by attempting to change the evidentiary standard in setting bail.

### G. The Proposed Consent Decree Establishes a Right To Release Contrary to the Opinions Issued by the 5th Circuit

The 5th Circuit has held on two occasions in direct appeals of this matter that a violation of procedural due process does not create a right to release; but instead, created a right to a hearing. The proposed Consent Decree seeks to implement a right to release in violation of the 5th Circuit opinions. The Sheriff is required to release individuals on something referred to as "General Order Bonds." There is nothing under Texas law that recognizes such a process or such a bond.

## VI. The Proposed Consent Decree Grants Relief Not Sought or Authorized

The proposed Consent Decree seeks a great deal of relief to which the plaintiffs are not entitled and which they did not plead. The plaintiffs claimed that poor arrestees' rights were being violated because they did not have an opportunity to seek a deviation from the bail schedule. The 5th Circuit has held that the remedy for such violation would be a hearing to seek a deviation for people who claimed poverty. The proposed Consent Decree does not seek this remedy for 85% of misdemeanor arrestees. Instead, everyone is released on a PR bond without any investigation regarding poverty. The arrestees are released without seeing a magistrate and their PR bonds are

set based upon an arbitrary number not based upon the statutory requirements. Also, the parties have included numerous other items in the requested Consent Decree seeking an order to require the county to adopt text messaging and telephone notification systems. Further, the proposed Consent Decree requires that the county conduct a study regarding the causes of failures to appear and the county must implement the recommendations of the study even though the plaintiffs did not allege any violation of constitutional law or any impropriety at all relating to failures to appear. Further, through the proposed Consent Decree the parties seek to compel the county to provide free day care, rides to court and free telephones if recommended in the report in an attempt to increase appearance rates (even though they have always claimed the use of PR bonds were no different than surety bonds). Additionally, the proposed Consent Decree seeks to compel or require that the county and the misdemeanor judges allow each defendant up to 4 failures to appear without penalty even though the plaintiffs have not plead or alleged any constitutional violations in this area. Further, the proposed Consent Decree seeks to require the creation of website where misdemeanor arrestees can access their court dates, times, location as something required by the alleged constitutional violations. However, they plaintiffs never plead any alleged constitutional violation based upon failures to appear. Further, pursuant to the proposed Consent Decree the county is required to create an Open Hours Court. It is unclear whether this will be a new court. This is important because only the Texas Legislature has the authority to create a court.

## VII. Adoption by Reference of All Other Objections Filed by Any Other Party or Amicus

Morales hereby adopts all other objections by reference set out by any other party or Amicus including but not limited to public safety concerns.

## CONCLUSION

This Court should deny the proposed Consent Decree as drafted by the parties.

Respectfully submitted,

By:      */s/ Ken W. Good*
         Ken W. Good
         Texas Bar Number: 08139200
         Email: keng@tyler.net

**THE GOOD LAW FIRM**
Law Office of Ken W. Good, PLLC
5353 W. Alabama #690
Houston, Texas 77056
Telephone: (903) 579-7507
Facsimile: (866) 381-0455

**COUNSEL FOR CLASS MEMBER**
**GILBERT MORALES**

October 18, 2019

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoingg instrument has this day been

forwarded by electron service, unless otherwise noted below, on this the 18th day of October 2019.


                */s/ Ken W. Good*
                **KEN W. GOOD**