

M. Elaine Nugent-Borakove, President | Barry Mahoney, President Emeritus

June 1, 2020

Dear Judge Hidalgo and Commissioners:

For the past five years, the Justice Management Institute (JMI) has provided technical assistance to Harris County as part of the MacArthur Foundation's Safety and Justice Challenge, and we have been with the jurisdiction throughout numerous changes and challenges. Many of the challenges have manifested over time, and with the additional strain of the COVID-19 pandemic, the Harris County criminal justice system is on the brink of collapse.

The jail serves as a barometer for the danger that the county's justice system is facing. After taking steps to reduce the jail population to approximately 7,500 inmates in response to the virus outbreak, the jail population has been steadily climbing and is now above 8,100. The jail population is growing by more than 115 individuals per week because the number of people coming into the facility is outpacing the number of people released. At this alarming rate, the jail population will exceed 9,000 incarcerated individuals by the middle of summer and 10,000 by roughly Labor Day. The accelerated jail population is clearly an indication that your criminal justice system is quickly faltering.

The primary problem is the system's inability to handle the volume of felony cases. Again, using the jail as a barometer, a remarkable 90% of the incarcerated persons have a case in the District Court, and a vast majority of those cases are pretrial status (87%). For the past ten years, except in 2017, the District Courts have disposed of fewer felony cases than filed. From 2010 to 2016, the felony backlog increased by more than 2,300 cases per year, and after Hurricane Harvey (2018 and 2019), the backlog skyrocketed to an average of 7,632 cases per year. As a result, the District Court has more than <u>36,000</u> active felony pending cases as of May 1, 2020. Meanwhile, for the first quarter of this year, the court was disposing of only 2,700 cases per month. Hypothetically, if the District Courts did not add any new cases from this point forward it would take thirteen-plus months, or until August 2021, to finally catch up on all the old felony cases. Of course, new felony cases are coming in all the time, and they continue to do so even during the pandemic when felony case processing in the District Court has essentially come to a halt.[1] The pre-existing problem is only going to get substantially worse.

---

[1] In fact, new felony filings in Harris County during the first four months of the year indicate that new felony filings are on pace for their highest level since 2008.

The Justice Management Institute  •  3033 Wilson Boulevard, Suite 700  •  Arlington, VA 22201  •  Phone: (703) 414-5477  •  Fax: (703) 997-7096

Aggressive and immediate action is needed by Harris County elected justice officials to address the crisis and create balance. The solution demands a candid conversation by the elected justice officials and a pragmatic understanding that:

1. Even if the criminal justice center fully reopened and was fully accessible, the backlog of criminal cases would still take years to go away;
2. Even if new judgeships were added to the District Court, the backlog of criminal cases would still take years to go away;
3. Even if Harris County added more district attorneys, court clerks, public defenders, etc., the backlog of criminal cases would still take years to go away.

Simply put, the backlog has become too great to overcome under traditional approaches and adding resources will not solve the problem any time soon. The criminal cases that are piling up are getting older, and with each passing day the likelihood of the case being "winnable" if taken to trial is decreasing, and the best possible outcome is probably a plea deal. This situation isn't effective justice, this isn't a fair way to treat victims, and this isn't fair to the individuals whose lives are on hold or who are sitting in jail waiting for the court system to adjudicate their case.

Given the gravity of the circumstances, every entity in the criminal justice system must make uncomfortable, but necessary changes. The recommended approach by JMI is to dismiss all non-violent felony cases older than nine months, with exceptions like DWI, and direct your justice system resources on adjudicating the backlog of violent cases and newer cases. Widespread dismissal of non-violent felonies may seem unfathomable, but in reality, only 42% of all disposed felony cases in 2019 were due to a conviction, excluding probation violations, and the rest were dismissed (34%), deferred (23%), or acquitted (3%). Furthermore, even when individuals were convicted on non-violent felony charges, the most likely outcome was release back into the community on probation.

Purging the older non-violent felony charges will free up your system's limited resources to tackle the violent felony caseload, the cases that concern the public the most. It will provide prosecutors time to review and evaluate the strength of the cases to make appropriate determinations, and it will open the District Court dockets to bring these cases forward in a timely manner. Ideally, violent felony cases will be processed faster due to the greater availability of existing resources, thus reducing the backlog even more.

To ensure that the backlog of felony cases is appropriately targeted, all of these cases should be moved to a group of judges (i.e., a felony backlog track) who will be responsible for guiding them toward disposition. The remaining judges should receive all new felony case filings and process them under written case guidelines that include scheduling orders and time standards (i.e., new caseload track).[2] Over time, as the backlog felony caseload shrinks, the judges assigned to that track should be re-assigned to the new caseload track.

---

[2] All specialty courts should be suspended until the court system is operating efficiently.

The Justice Management Institute  •  3033 Wilson Boulevard, Suite 700  •  Arlington, VA 22201  •  Phone: (703) 414-5477  •  Fax: (703) 997-7096

The same approach as outlined above should also be applied in some variation to the County Courts, who are also facing a growing backlog of unresolved pending cases.  Video conferencing should also be maximized, especially during the COVID-19 outbreak and beyond, to ensure cases are being docketed and advanced toward disposition.

In addition, Harris County should continue to expand the offenses for which people would be eligible for either police or prosecutor diversion.  Lastly, Harris County should simultaneously work to add new judgeships, prosecutors, public defenders, etc. gradually over time based on the results of a quantitative workload assessment.

Failure to take immediate and aggressive action places Harris County at high risk for a lawsuit and the possibility of federally imposed conditions and oversight of the county, courts, and/or jail. Leadership and action are desperately needed during this time to avoid this outcome.


Sincerely,

*[signature]*

M. Elaine Borakove
President