# EXHIBIT B

SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
SUITE 5100
1000 LOUISIANA STREET
HOUSTON, TEXAS 77002-5096
(713) 651-9366
FAX (713) 654-6666
WWW.SUSMANGODFREY.COM

————————

| | | |
|---|---|---|
| SUITE 1400<br>1900 AVENUE OF THE STARS<br>LOS ANGELES, CALIFORNIA 90067-6029<br>(310) 789-3100<br>———— | SUITE 3000<br>401 UNION STREET<br>SEATTLE, WASHINGTON 98101-2683<br>(206) 516-3880<br>———— | ONE MANHATTAN WEST<br>NEW YORK, NEW YORK 10001-8602<br>(212) 336-8330<br>———— |

NEAL S. MANNE
DIRECT DIAL (713) 653-7827

E-MAIL NMANNE@SUSMANGODFREY.COM

July 11, 2025

*Via Email: bgarrett@law.duke.edu*
Professor Garrett

*Via Email: sguerrat@central.uh.edu*
Professor Thompson

Dear Professor Garrett and Professor Thompson,

Plaintiffs oppose the request by a small minority of the Defendant County Criminal Court at Law Judges – Judges Paula Goodhart, Jessica Padilla, Leslie Johnson, and Linda Garcia (collectively, "the Four Judges") – to modify the *ODonnell* Consent Decree ("the Proposed Modification"), which has benefited the County for nearly six years. The Proposed Modification will *require* cash bail for certain misdemeanor offenses without any inquiry into ability to pay, including for the indigent. It will end the existing General Order Bond system—the heart of the Consent Decree, and its most important and successful provision. And it will remove the Consent Decree's bedrock requirement to release individuals who are being unconstitutionally detained. These radical changes from the status quo would eliminate the cornerstones of the constitutionally compliant pretrial practices agreed to in 2019 and ordered by Judge Rosenthal, paving the way for the same wealth-based detention the Consent Decree was meant to prevent. In addition, years of studying the post-arrest process make clear that the Proposed Modification would be almost impossible to implement bureaucratically: it would exacerbate overcrowding, delays, illness, and death throughout the jail, cost taxpayers millions of dollars every year, and make the public less safe.

Professor Garrett
Professor Thompson
July 11, 2025
Page 2

### I.    Plaintiffs Sued to Stop Defendants' Unconstitutional Pretrial Detention Practices.

When Plaintiffs sued in 2016, Harris County had "a consistent and systematic policy and practice of imposing secured money bail as de facto orders of pretrial detention in misdemeanor cases." *ODonnell v. Harris Cnty., Texas*, 251 F. Supp. 3d 1052, 1059 (S.D. Tex. 2017). The *ODonnell* Defendants determined initial cash bail amounts according to a fixed secured bail schedule. Those who could pay were "released within hours of arrest." *Id.* at 1124. Those who could not were funneled to a brief, assembly-line proceeding in the jail, where the initial scheduled bail amount was typically confirmed in an appearance lasting a minute or two. *Id.* at 1096. The County did not provide counsel, and Hearing Officers routinely instructed people arrested not to speak. *Id.* at 1092. Anyone who still could not pay appeared in court a few days later and typically pleaded guilty to the charge to secure immediate release. *See id.* at 1105 ("Harris County maintains a 'sentence first, conviction after' system that pressures misdemeanor defendants to plead guilty at or near their first appearances because that is the only way to secure timely release from detention."). Collectively, these unconstitutional bail practices "systematically detain[ed] misdemeanor defendants who [were] otherwise eligible for release before trial but whose indigence ma[de] them unable to pay a secured financial condition of release," *id.* at 1156, resulting in "tens of thousands of constitutional violations," *id.* at 1109 n. 99. Judge Goodhart actively defended the prior unconstitutional system and opposed the eventual relief in *ODonnell. Id.* at 1110.

### II.    The *ODonnell* Consent Decree Ushered in a New, Constitutional System.

The *ODonnell* Consent Decree was necessary to abate these unconstitutional practices. The cornerstone of the new practices is the General Order Bond.[1] Under Rule 9.4, which was devised by the judges as the workable way to remedy the constitutional violations based on extensive study of how the post-arrest bureaucracy functions, people arrested for a misdemeanor are released on an unsecured bond *unless* they fall within certain narrow categories, referred to as the

---

[1] The Consent Decree incorporates Rule 9, Consent Decree ¶ 30, but permits modification to Rule 9 with "approval from the Court," *id.* ¶ 33. Any modification must comply with the substantive standards set forth in ¶ 31.

Professor Garrett
Professor Thompson
July 11, 2025
Page 3

"carveout" categories, set forth in Rule 9.4.1–9.4.6. Rule 9 thus eliminated the cash bail schedule and its automatic wealth-based detention, and replaced it with pre-hearing release based on the offense charged, not the ability to pay an arbitrary amount of money. It then reserved resources and space for prompt adversarial hearings for the most serious cases, where all forms of release, including secured money bail, could be considered. This system was specifically designed based on the evidence that it would not be possible to provide the constitutionally required prompt adversarial hearings if the system was forced to conduct such individualized review for everyone. Today, about two-thirds of misdemeanor arrestees are promptly released on General Order Bonds, and the system is able to devote its scarce judicial, prosecutorial, defense, and jail resources to constitutionally compliant hearings in cases involving more serious charges.

People whose charges fall within the carveout categories—which include people on community supervision and those charged with more serious misdemeanors—are detained pending a judicial officer's individual bail decision, either *in camera* without a hearing (a procedure known as "Early Presentment") or at an in-person hearing within 48 hours. Rule 9.5; Rule 9.8. Hearing Officers now spend much more time on each case. People are afforded counsel and the opportunity to make legal arguments and present evidence. Rule 9.12. If secured money bail is contemplated, the judicial officer must determine whether a financial condition will keep the person in jail. Rule 9.12.5. An unaffordable secured bail amount is prohibited unless a judicial officer determines by clear and convincing evidence that detention is necessary. Rule 9.12.8. If any one of these requirements is not met, the Sheriff must release the person. Rule 9.15–9.16, 9.18.

### III. The Proposed Modification Will Transform the Pretrial Process, Violate Plaintiffs' Constitutional Rights, and Cause Other Severe Harms.

The Four Judges offer no persuasive justification for why the drastic changes that they propose are warranted or wise. In a call with all Parties, the Four Judges and their representatives claimed that these changes are required to comply with state law. Plaintiffs disagree that state law requires eliminating the General Order Bond system. The legislature certainly knew how to require individuals to appear before a magistrate prior to release on bail—it just adopted such a requirement for felonies but chose not to require it for misdemeanors. *See* Enrolled S.B. 9, § 11 (2025) (amending article 17.21). Nor do the Four Judges explain why, even if state law did

Professor Garrett
Professor Thompson
July 11, 2025
Page 4

contradict the federal consent decree agreed to by the parties and ordered by a federal court as necessary to cease federal constitutional violations, state law should override the mandates of a federal consent decree. Indeed, the Proposed Modification will reinstate many of the same practices the federal court previously condemned as causing mass constitutional violations. The proposed changes include:

Requiring wealth-based detention for certain misdemeanors.

The Proposed Modification incorporates Article 17.03 of the Texas Code of Criminal Procedure, which (as of September 1, 2025) will prohibit release on unsecured or personal bond for any person arrested and charged with one of several misdemeanors. *See* Enrolled S.B. 9, § 7 (2025).[2] This will categorically prohibit release without secured financial conditions, no matter the circumstances, for certain misdemeanor offenses. Any arrested person who cannot pay a secured monetary amount would be detained prior to trial automatically. It will have the same effect as the Hearing Officer who told Maranda ODonnell she did not "qualify" for a personal bond, and instead set an unaffordable cash bail resulting in her detention. *ODonnell*, 251 F. Supp. 3d at 1062. Those who can pay will be released, and those who cannot pay will be confined in jail without the findings and safeguards that the Constitution requires for an order of pretrial detention. This will *require* the very constitutional violations struck down by Judge Rosenthal and that the Consent Decree was designed to avoid.[3]  Ironically, prior to this lawsuit, those constitutional violations were mostly unwritten patterns and practices, and the four Judges now propose putting those very same direct constitutional violations in writing. To the extent a provision of state law requires federal constitutional violations that the Consent Decree forbids, that state law cannot be enforced.

Ending the use of General Order Bonds.

The Proposed Modification will eliminate the use of General Order Bonds and instead require the County to detain each and every person arrested for a misdemeanor—approximately 26,000 *more* people every year than they detain

---

[2] Specifically, S.B. 9 as enacted prohibits unsecured release for anyone charged with Class A misdemeanor terroristic threat, violation of certain protective orders, or unlawful possession of a firearm. *See* Enrolled S.B. 9, § 7 (2025).

[3] The Proposed Modification will also make the Consent Decree subject to all "other Texas law" without regard to whether that law – whether currently in effect or something that is enacted in the future – might be unconstitutional.

Professor Garrett
Professor Thompson
July 11, 2025
Page 5

right now—until they can be evaluated for release by a Hearing Officer, either at Early Presentment or at an Article 15.17 magistration hearing that occurs up to 48 hours after arrest. This would mark a sea change that would be impossible to accomplish within the current bureaucracy. Indeed, the Proposed Modification would require more than a *twelve-fold* increase in the number of cases going to Early Presentment.[4] These are more judicial determinations than were being attempted even under the old pre-lawsuit system, when the crushing number of cases led to "tens of thousands of constitutional violations," *ODonnell*, 251 F. Supp. 3d at 1150 n.99, because the system could not provide adequate adversarial hearings. The judges have presented no evidence that such a profound change could even be workable.

If permitted, this change will make tens of thousands of people who could be safely and promptly released vulnerable to illegal detention. The Four Judges say they are confident the Hearing Officers will use Early Presentment to release *all* of the same people currently being released on General Order Bonds (all 26,000 people released on General Order Bonds each year) after individualized consideration, and so we should "not worry" about the change. But they have also asserted that they cannot control or predict how the Hearing Officers will make bail decisions. And, if the same people will be promptly released under the Proposed Modification, there would be no policy reason to undertake the massive change. Indeed, the available evidence proves the Hearing Officers will behave very differently. Even when there is a "presumption" of pretrial release, Hearing Officers use their discretion to impose secured bail. *See id.* at 1113 (noting that Hearing Officers imposed secured bail in most cases even after the Judges changed the rules to include a presumption of release on a personal bond for twelve misdemeanor offense categories); *id.* at 1159 ("The record evidence shows that despite changing the County Rules of Court to presume release on personal bonds is appropriate in twelve offense categories, Hearing Officers and County Judges continue to detain misdemeanor defendants, including the indigent, at the same rate as they did in the two years before the rule change."). No reason exists to believe things will be different this time around.

---

[4] This number is based on the Monitors' data review of Early Presentment from January through May of 2025. In that period there were 768 individuals with carveout cases that received personal bonds at Early Presentment and 11,134 individuals released on GOBs.

Professor Garrett
Professor Thompson
July 11, 2025
Page 6

Eliminating the 48-hour release requirement.

Compounding the constitutional problems described above, the Proposed Modification will also eliminate Rule 9's requirement to release anyone who remains in custody 48 hours after arrest without a constitutional bail hearing, and anyone who is detained on cash bail without a finding of necessity following a bail hearing. Without this release requirement, there is no enforceable limit on when a person must receive a bail hearing, what bond amount or conditions of release a judicial officer can order, what evidence and reasoning must accompany a de facto detention order, or how a person can seek to have that order reviewed by a County Criminal Court at Law Judge. In other words, there is no mechanism for remedying violations of the Decree and the Constitution that cause irreparable harm. A Hearing Officer could, for example, order onerous reporting and testing conditions and a $10,000 personal bond for a homeless individual at Early Presentment without that person being represented or having an opportunity to present argument and evidence, and without any findings that detention is necessary. *See ODonnell*, 251 F. Supp. 3d at 1109 ("The rigid demand for secured, rather than unsecured, money bail from a homeless individual is indistinguishable from an order that a misdemeanor defendant so indigent as to be homeless be detained because of that indigence."); *id.* at 1101 n.50 (summarizing examples of hearings in which homeless and impoverished individuals were denied release). Short of finding a civil attorney and moving for contempt, the unconstitutionally detained person would have no recourse. And even that would force them to endure the very harm the Consent Decree is designed to prevent.

****

In addition to violating both the Constitution and the spirit of the Consent Decree, the Proposed Modification will overwhelm the system, causing dangerous spillover effects. It will triple the number of misdemeanor arrestees in the system, requiring the jail and a variety of departments involved in the pretrial process to absorb more people than they have ever handled, even under the pre-litigation system, and will impose exorbitant costs on everyone involved in the County's sprawling pretrial bureaucracy.

As the Defendants have explained throughout this litigation, even small changes to the Harris County pretrial bureaucracy have significant implications for multiple agencies and the health and safety of people both inside and outside the jail. This is no small change. The Sheriff's staff will be responsible for supervising, treating,

Professor Garrett
Professor Thompson
July 11, 2025
Page 7

and managing thousands more people. Public defenders will have less time to counsel clients, interview witnesses, and argue for release. Prosecutors will have less time to review criminal histories and make reasoned bail arguments. Harried Hearing Officers will have to rush through even more cases, with less time to hear and consider arguments and evidence regarding release. Pretrial Services will have to supervise more people as more low-level misdemeanor arrestees are ordered to comply with onerous conditions.

The ensuing backlog will reverberate beyond misdemeanors and will affect the County's capacity to handle those charged with felony offenses as well. Based on experience before the Consent Decree, and the evidence introduced at the preliminary injunction hearing, the Proposed Modification will result in Class Members, and other people arrested in Harris County, being detained for over 48 hours awaiting individualized review. The only way the system can accommodate individualized consideration of more than 26,000 additional people every year will be to short-change the constitutional rights of everyone.

### IV.    Conclusion

Plaintiffs oppose the Proposed Modification because it will violate the constitutional rights of class members by permitting the exact unconstitutional practices the Consent Decree was enacted to prevent. It is ill-conceived, impractical, and will be devastating to the tens of thousands of people who endure Harris County's pretrial bureaucracy every year. Class Counsel understand that the Harris County Sheriff, the Harris County Attorney, the Twelve County Criminal Court at Law Judges not seeking modification, the Chief Public Defender, and the Harris County District Attorney all support the continuation of current Rule 9 and the *ODonnell* reforms.

The Monitors should reject the Four Judges' proposed undermining of *ODonnell* and Rule 9.

Sincerely,

Neal Manne

Neal S. Manne

Professor Garrett
Professor Thompson
July 11, 2025
Page 8


Alec George Karakatsanis (*pro hac vice*)
alec@civilrightscorps.org
Elizabeth Rossi (*pro hac vice*)
elizabeth@civilrightscorps.org
Jeremy D. Cutting (*pro hac vice*)
cody@civilrightscorps.org
CIVIL RIGHTS CORPS
1601 Connecticut Ave NW, Suite 800
Washington, DC 20009
Telephone: (202) 681-2721

Dustin Rynders
Texas Bar No. 24048005
dustin@texascivilrightsproject.org
Travis Fife
Texas Bar No. 24126956
travis@texascivilrightsproject.org
TEXAS CIVIL RIGHTS PROJECT
2100 Travis Street
Houston, TX 77002
Telephone: (512) 474-5073

cc:    Rachel.Fraser@harriscountytx.gov
        allanvanfleet@gmail.com
        Seth.Hopkins@harriscountytx.gov
        Arlisa.Certain@harriscountytx.gov
        jonathan.fombonne@harriscountytx.gov