IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARANDA LYNN ODONNELL, ET AL. | |
| *Plaintiffs* | |
| vs. | CIVIL ACTION NO. 4:16-CV-01414 |
| HARRIS COUNTY, TEXAS, ET AL. | |
| *Defendants.* | |

**DEFENDANT HARRIS COUNTY'S RESPONSE TO THE ATTORNEY GENERAL OF
TEXAS'S MOTION TO INTERVENE**

Respectfully submitted,

**CHRISTIAN D. MENEFEE**
Harris County Attorney

**JONATHAN FOMBONNE**
First Assistant County Attorney

**SETH HOPKINS**
Special Assistant County Attorney
Texas Bar No. 24032435
Seth.Hopkins@HarrisCountyTx.gov

**RACHEL FRASER**
Assistant County Attorney
Harris County Attorney's Office
1019 Congress Plaza, 15th Floor
Houston, Texas 77002
Telephone: (713) 274-5134

ATTORNEYS FOR HARRIS COUNTY

**TABLE OF CONTENTS**

TABLE OF CONTENTS………………………………………………………. i

TABLE OF AUTHORITIES…………………………………………………... ii

INTRODUCTION AND SUMMARY OF THE ARGUMENT………………………… 1

FACTS…………………………………………………………………….. 2

ARGUMENT………………………………………………………………... 8

I.   THE ATTORNEY GENERAL IS NOT ENTITLED TO INTERVENE UNDER FEDERAL RULE OF CIVIL PROCEDURE 24(a)(2)……………… 8

   A. Standard for an intervention of right……………………………………… 8

   B. The Attorney General's application is not timely………………………… 8
     1. The Attorney General waited nearly 10 years to file this motion…….. 9
     2. The Attorney General's delay prejudices the parties………………….. 10
     3. The Attorney General would not be prejudiced if intervention is denied…... 10
     4. There are no unusual circumstances…………………………………….. 11

   C. The Attorney General does not have an adequate interest in this litigation……………………………………………………………… 11

   D. This action would not impair or impede the Attorney General's interests… 13

   E. The parties adequately represent the State's interest……………………… 13

II.  THE ATTORNEY GENERAL IS NOT ENTITLED TO INTERVENE UNDER FEDERAL RULE OF CIVIL PROCEDURE 24(b)(1)(B)………….. 15

   A. Standard for a permissive intervention…………………………………… 15

   B. The Attorney General's application is not timely………………………… 15

   C. The Attorney General does not have a claim or defense with a question of law or fact in common with this case……………………………………… 16

   D. Permissive intervention will unduly delay or prejudice the adjudication of the original parties' rights……………………………………………… 16

CONCLUSION AND PRAYER……………………………………………….. 17

CERTIFICATE OF SERVICE…………………………………………………. 18

i

# TABLE OF AUTHORITIES

## Cases

*Edwards v. City of Houston*, 78 F.3d 983 (5th Cir. 1996) ............................................................ 9, 12

*Haspel & Davis Milling & Planting Co. Ltd. v. Board of Levee Commissioners of The Orleans Levee District & State Of Louisiana*, 493 F.3d 570 (5th Cir. 2007) ............... 8, 13, 14

*Heaton v. Monogram Credit Card Bank of Georgia*, 297 F.3d 416 (5th Cir. 2002) ....................... 8, 15

*Hill v. Texas Water Quality Board*, 568 S.W.2d 738 (Tex. App.—Austin 1978, writ ref'd n.r.e.) . 13

*Hopwood v. State of Texas*, 21 F.3d 603 (5th Cir. 1994) ............................................................ 13, 14

*McDonald v. E. J. Lavino Co.*, 430 F.2d 1065 (5th Cir. 1970) ....................................................... 9

*New Orleans Public Service, Inc. v. United Gas Pipe Line Company*, 732 F.2d 452 (5th Cir. 1984) .. 15

*Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir. 1977) ............................................................... 15

*State v. Naylor*, 466 S.W.3d 783 (Tex.2015) ................................................................................... 13

*United States ex rel. Hernandez v. Team Fin., LLC*, 80 F.4th 571 (5th Cir. 2023) ........................... 8

*United States v. U.S. Steel Corp.*, 548 F.2d 1232 (5th Cir. 1977) .................................................... 9

## Statutes

Senate Bill 6 .................................................................................................................................. 9, 15

Tex. Penal Code § 25.07 .................................................................................................................... 5

Texas Government Code § 74.093 ................................................................................................ 11, 16

**Rules**

Fed. R. Civ. P. 24(a) .................................................................................................16

Fed. R. Civ. P. 24(a)(2) .................................................................................... 1, 8, 13

Fed. R. Civ. P. 24(b)(3) ...........................................................................................15

Fed. R. Civ. P. 24(b) ...............................................................................................16

Fed. R. Civ. P.24(b)(1)(B) ................................................................................. 1, 15

Local Rule 1.1 ......................................................................................................... 11

Local Rule 9 ........................................................................................................ 5, 11

Local Rule 9.4 ...........................................................................................................5

TO THE HONORABLE JUDGE LEE ROSENTHAL:

Defendant Harris County files this Response to the Attorney General of Texas's Motion to Intervene, and respectfully represents as follows:

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Since this Court signed the Consent Decree (Doc.708), misdemeanor arrests and convictions have fallen in Harris County, those accused of minor crimes who pose no risk to the public are not taken from their families, jobs, and homes, and forced to sit in jail waiting for trial, and the taxpayers have thousands fewer people to house, feed, care for, and guard. The Texas Attorney General—who has never participated in this case—seeks to intervene and nullify the Consent Decree based on a local rule that he believes conflicts with state law.

The Attorney General is not entitled to intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(2) or as a matter of discretion under Federal Rule of Civil Procedure 24(b)(1)(B) for several reasons. Both rules require that the Attorney General demonstrate that he sought intervention in a timely manner after he knew or should have known that he might have an interest in this case. While the Attorney General claims to have a *parens partiae* interest in issues related to bail throughout the state, he made no effort to intervene in 2016 when plaintiffs filed suit seeking to end money bail for misdemeanors in the state's largest county. After the parties litigated for three years and were on the eve of settling, the Attorney General filed an "Intent to Appear at the Final Fairness Hearing" urging this Court to reject the Consent Decree and advising that his office would "appear and provide the following views of the Office of the Attorney General of Texas…"[1] Nevertheless, the Attorney General still did not intervene.

---

[1] Doc.689.

The Attorney General waited for the parties to spend six years and millions of dollars reconfiguring the Jail, Pretrial Services, Sheriff's Office, Public Defender's Office, District Attorney's Office, Managed Assigned Counsel's Office, and the courts to handle approximately 50,000 misdemeanor arrestees in accordance with the Consent Decree. He also waited for the parties to develop programs to provide legal counsel and education based on the Consent Decree. The Attorney General's decision to try to undo this work so late in the process will cause considerable prejudice to the parties and the public.

The Attorney General has not shown that he has an adequate interest in this litigation or that denying intervention will impair his interest. The Attorney General has also not shown that the State's interest is inadequately represented, and at most, he asserts that he would make different procedural decisions if permitted to intervene. Finally, the Attorney General is not entitled to permissive intervention for the same reasons he is not entitled to intervention as a matter of right. His application is untimely, he has no claim or defense with a common question of law or fact to this case, and intervention would unduly delay and prejudice the parties.

## FACTS

In March 2017, this Court held an eight-day hearing that resulted in a preliminary injunction requiring changes to how misdemeanor arrestees are processed in Harris County.[2] The Court noted that 75 percent of people locked up in Texas local jails had not been found guilty of any crime and that holding them cost taxpayers $1 billion per year.[3]

This system isolated low-risk Texans charged with minor, non-violent misdemeanors from their children and families and placed them in jeopardy of losing their jobs and homes as they

---

[2] Docs.302 & 304 (amended at Doc.427).
[3] Doc.302 at 3.

2

waited in jail for a trial where many were found not guilty.[4] They were labeled "high risk" based on criteria such as their gender, age, and whether they had a roommate or landline phone,[5] and courts had a difficult time obtaining accurate information when making these decisions.[6] Incarcerating Texans for minor, unproven charges also hurt Harris County taxpayers, who were forced to house, feed, provide medical care, and guard people who posed no risk to the public.

Because the Jail and courts often worked at capacity, it was not possible to physically deliver people to judges for a probable cause hearing within the time allowed by Texas law, and judges held probable cause hearings *in absentia* in what they referred to as "paper hearings."[7] Detainees were supposed to then see a hearing officer to set bail within a day of their probable cause hearing, but in 2016, more than 26,000 misdemeanor arrestees—over 51 percent of those still detained—waited more than 48 hours before their bail was set. Over 6,800 people waited longer than 96 hours.[8]

Although hearing officers worked 24 hours per day, seven days per week,[9] the weight of their dockets meant that the average bail hearing lasted only one to two minutes, which prevented them from giving each person individualized consideration of the factors required by state law[10] or providing any reasons for their decision.[11] Detainees almost never had counsel at their probable cause or bail hearings, and sheriff deputies were responsible for advising them not to incriminate

---

[4] In Harris County, between a third and a half of misdemeanor charges that make it to trial result in a not-guilty verdict. Monitor's Eighth Report at 46,
https://oca.harriscountytx.gov/Portals/oca/Documents/ODonnell/ODonnell%20Monitor%20Eighth%20Report%20v.14.pdf?ver=sfDgLP0Wwes%3d (Retrieved on September 12, 2025).
[5] Doc.302 at 58.
[6] Doc. 302 at 60.
[7] Doc. 302 at 16 & 64.
[8] Doc.708 at 5.
[9] Doc. 302 at 63
[10] Doc.302 at 63. For example, Plaintiff Maranda ODonnell was given a 50-second bail hearing with no explanation for her bail amount. Doc. 302 at 11, 20-22.
[11] Doc.302 at 64-65.

themselves in front of the judge.[12] When detainees attempted to speak, they were "commanded not to, shouted down, or ignored."[13] In lieu of following the criteria required by state law, hearing officers followed a preprinted bail schedule in 88.9 percent of misdemeanor cases.[14] If bail was set higher than a person could afford, his only recourse was to plead guilty or wait for an attorney to file a formal motion for bail review—which could take weeks.[15] As a result, indigent misdemeanor detainees were pressured to plead guilty, though many were likely innocent.[16]

This Court's Findings of Fact and Conclusions of Law examined bail practices around the country[17] and found that the system employed by the judges in Harris County violated the Equal Protection and Due Process Clauses of the United States Constitution.[18] This Court ordered defendants to release all misdemeanor arrestees who met certain criteria on unsecured money bail and for Harris County to provide weekly reports on compliance with the injunction.[19]

The defendants in this case unsuccessfully appealed to the Fifth Circuit Court of Appeals. On November 21, 2019, prior to the entry of a permanent injunction, the parties entered into a 52-page Consent Decree that modified how people accused of low-risk misdemeanors are processed.[20]

---

[12] Doc. 302 at 64.

[13] Doc. 708 at 5.

[14] Doc.708 at 4.

[15] Doc. 708 at 5;. Doc. 302 at 15-16. If an arrestee still could not make bail, he could remain incarcerated until his trial. Between eight and 55 percent of misdemeanor cases take more than a year to resolve. Monitor's Eighth Report at 44, https://oca.harriscountytx.gov/Portals/oca/Documents/ODonnell/ODonnell%20Monitor%20Eighth%20Report%20v.14.pdf?ver=sfDgLP0Wwes%3d (Retrieved September 13, 2025).

[16] As noted in footnote 4, between a third and a half of misdemeanor charges that make it to trial in Harris County result in a not-guilty verdict.

[17] Doc.302 at 31-50

[18] Doc. 302 at 7.

[19] Doc. 427 at 6-7.

[20] Doc. 708.

The Consent Decree also obligated Harris County to fund programs to improve court appearance rates, promote transparency, and collect criminal justice data in the nation's third-largest county.[21]

The Criminal Courts at Law adopted Rule 9 under the authority granted to them by the Code of Criminal Procedure and the Government Code.[22] While Rule 9 reduces or eliminates secured money bail for most misdemeanors, Rule 9.4 gives judges and hearing officers discretion to impose bail on anyone accused of a wide range of "carve out" misdemeanors, including violating court orders or conditions of bond in cases involving family violence, child abuse, sexual assault, indecent assault, stalking, or trafficking under Tex. Penal Code § 25.07. Judges and hearing officers also have discretion to impose bail for certain types of assault, for charges of enhanced driving while intoxicated, for those accused of a new offense while on pretrial release or community supervision, or when the accused had a bond forfeited or revoked.[23]

The Consent Decree has improved conditions for residents and taxpayers in Texas's largest county. Ten years ago, 63 percent of the 59,231 misdemeanor arrestees stayed in jail until their cases were resolved, while five years after the Consent Decree began, that figure dropped to 10 percent.[24] While the jail is still crowded, the Consent Decree has resulted in thousands fewer detainees to feed, house, treat, and guard at any given time. If this changed, Harris County would face an immediate surge in the jail population and far-reaching consequences for public safety.

---

[21] See, e.g., "*ODonnell* Consent Decree dashboard", https://oca.harriscountytx.gov/ODonnell (retrieved September 12, 2025) (includes eight Monitor reports totaling 849 pages and video from 10 public hearings).

[22] See Local Rule 1.1, https://ccl.hctx.net/attorneys/rules/Rules.pdf (Retrieved on September 12, 2025).

[23] See Harris County Criminal Courts at Law Local Rule 9.4, https://ccl.hctx.net/attorneys/rules/Rules.pdf (Retrieved on September 12, 2025).

[24] Monitor's Eighth Report at 30, https://oca.harriscountytx.gov/Portals/oca/Documents/ODonnell/ODonnell%20Monitor%20Eighth%20 Report%20v.14.pdf?ver=sfDgLP0Wwes%3d (Retrieved on September 12, 2025). As noted in footnote 15, between eight and 55 percent of misdemeanor cases take more than a year to resolve.

The administration of justice has also improved. The District Attorney's Office brings a small percentage of its strongest misdemeanor cases to trial, and between a third and a half of them result in acquittals.[25] In 2015, 68 percent of arrestees pleaded guilty without exercising their right to a trial[26]—often under pressure to get out of jail faster.[27] By 2023, only 24 percent of arrestees pleaded guilty.[28] At the same time, the Consent Decree resulted in Harris County initiating new programs to increase court appearance rates, such as text reminders which have resulted in a 52 percent reduction in arrestees missing their court dates.[29]

The data shows that the Consent Decree has not only saved money, but potentially reduced crime. Six years ago, this Court endorsed a study that concluded that the policies in effect prior to the Consent Decree required Harris County to pay to keep an additional 40,000 people in jail for an additional 400,000 days at a cost of $20 million between 2008 and 2013.[30] The study estimated that 6,000 detainees were pressured into pleading guilty, and that rather than reduce crime, keeping misdemeanor detainees in jail longer caused them to commit 1,600 more felonies and 2,400 more misdemeanors after they were released.[31]

This study was prophetic. Since the Consent Decree was enacted, the number of people arrested for misdemeanors in Harris County dropped from 49,228 in 2015 to 42,448 in 2024.[32]

---

[25] *Id.* at 45.

[26] *Id.*

[27] Doc. 302 at 15-16.

[28] Monitor's Eighth Report at 45, https://oca.harriscountytx.gov/Portals/oca/Documents/ODonnell/ODonnell%20Monitor%20Eighth%20Report%20v.14.pdf?ver=sfDgLP0Wwes%3d (Retrieved on September 12, 2025).

[29] *Id.* at 62.

[30] Doc.708 at 7.

[31] Doc. 708 at 7-8.

[32] Monitor's Eighth Report at 20, https://oca.harriscountytx.gov/Portals/oca/Documents/ODonnell/ODonnell%20Monitor%20Eighth%20Report%20v.14.pdf?ver=sfDgLP0Wwes%3d (Retrieved on September 12, 2025).

Those going through the system are not more likely to commit a crime today than they were before the Consent Decree. In 2015, 23 percent of misdemeanor arrestees were charged with a new crime within a year of their release. In 2023, 22 percent of misdemeanor arrestees were charged with a new crime within a year.[33]

The Consent Decree has also helped mitigate the danger to detainees and law enforcement personnel caused by overcrowding in the Jail. Ten years ago, 49 percent of misdemeanor arrestees were released on bond before their first court setting (usually about a week after arrest). Today, 80 percent of misdemeanor arrestees are released on bond before their first court setting.[34] Between 40,000 and 50,000 people are arrested for misdemeanor offenses in Harris County every year, and the Jail census would increase by thousands if the Consent Decree was not in effect.[35]

Removing the Consent Decree would also inundate judges and hearing officers with caseloads reminiscent of the past. This would place hearing officers at risk of being unable to provide meaningful bail hearings that consider the factors cited by the Attorney General in Senate Bill 6 and Senate Bill 9. This would also place judges at risk of being unable to hold probable cause hearings within 24 hours as required by Tex. Gov't Code § 54.858. If that happens, Texas law will still require that misdemeanor arrestees unable to pay bond be released on personal bond. Tex. Code Crim. Proc. 17.033(a). The difference is that the Attorney General's proposal would release them based on court workflows rather than the arrestees' charges or history.

---

[33] *Id.* at 48.

[34] *Id.* at vi.

[35] There are other factors that have recently kept the Jail census high. For example, the State has been slow to transfer those convicted of crimes from Harris County to prison facilities, which results in Harris County having to house thousands of people who belong in State custody.

## ARGUMENT

## I.

## THE ATTORNEY GENERAL IS NOT ENTITLED TO INTERVENE UNDER FEDERAL RULE OF CIVIL PROCEDURE 24(a)(2).

**A.    Standard for an intervention of right.**

The Attorney General seeks to intervene under one of two theories. First, it seeks intervention of right under Federal Rule of Civil Procedure 24(a)(2). To meet its burden of intervening as a matter of right, the Attorney General must show (1) his application to intervene was timely, (2) he has an interest relating to the property or transaction which is the subject of the action, (3) he is so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest, and (4) his interest is inadequately represented by the existing parties to the suit. Fed. R. Civ. P. 24(a)(2); *Haspel & Davis Milling & Planting Co. Ltd. v. Board of Levee Commissioners of The Orleans Levee District & State Of Louisiana*, 493 F.3d 570, 578 (5th Cir. 2007). "Failure to satisfy any one requirement precludes intervention of right." *Id.*

**B.    The Attorney General's application is not timely.**

The Fifth Circuit assesses timeliness by considering four factors: (1) the length of time the movant waited to file after it should have known of its interest in the case, (2) the prejudice to the existing parties from any delay, (3) the prejudice to the movant if the intervention is denied, and (4) any unusual circumstances. *Heaton v. Monogram Credit Card Bank of Georgia*, 297 F.3d 416, 422-423 (5th Cir. 2002); *United States ex rel. Hernandez v. Team Fin., LLC*, 80 F.4th 571, 578 (5th Cir. 2023). All four factors establish that the Attorney General's motion was not filed timely.

**1.  The Attorney General waited nearly 10 years to file this motion.**

This case was filed on May 19, 2016, and the parties litigated through 747 docket entries and an eight-day hearing that this Court described as "difficult and complex."[36] The matter was appealed and finally settled. Nine and a half years after the case was filed and six years after the Consent Decree was signed, the Attorney General seeks to intervene to nullify the entire order based on his allegation that four sections conflict with Senate Bill 6—a state law passed four years ago. The Attorney General inexplicably waited until the parties expended significant time and funds to rework the logistics of the nation's third-largest jail. That is simply too late.

The Fifth Circuit has held that "intervention attempts after final judgments are ordinarily looked upon with a jaundiced eye. Interventions after judgment have a strong tendency to prejudice existing parties to the litigation or to interfere substantially with the orderly process of the court." *United States v. U.S. Steel Corp.*, 548 F.2d 1232, 1235 (5th Cir. 1977), quoting *McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1072 (5th Cir. 1970) (cleaned up).

When determining the timeliness of a party's motion to intervene, the clock begins on "the applicant's receipt of actual or constructive knowledge of his interest in the litigation." *Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996). In this case, the clock likely began soon after this case was filed in 2016, when the Attorney General would have learned that plaintiffs sought to end misdemeanor money bail in the state's largest county. The clock certainly began before October 21, 2019, when the Attorney General filed an "Intent to Appear at the Final Fairness Hearing" where he urged this Court to reject the Consent Decree and advised that his office would "appear and provide the following views of the Office of the Attorney General of Texas…"[37] By the time

---

[36] Doc. 302 at 4.
[37] Doc. 689.

9

the Legislature passed Senate Bill 6 in August 2021, the Attorney General was not only aware of his alleged interest in this litigation, but also the alleged conflict with state law. Despite all of this, the Attorney General's only justification for waiting until now to intervene is his unexplained belief that the parties might someday "defend against" the Consent Decree that they signed.[38]

**2. The Attorney General's delay prejudices the parties.**

The Attorney General's motion is also untimely because it would prejudice the other parties. As noted, the parties are six years into a Consent Decree that required extensive public investment. The Monitor explained in a letter attached to the Attorney General's Motion:

> The proposal dramatically impacts the handling of tens of thousands of cases each year in Harris County. Yet, the proposal contains no information about how it would impact County budgets. The Consent Decree was the product of lengthy deliberations, including regarding the cost of its many changes, for a range of stakeholders. The proposal would impact Pretrial Services, the Sheriff's Office, the Public Defender's Office, the District Attorney's Office, and Managed Assigned Counsel's Office, in addition to the CCCL.[39]

These departments have been adjusting their staffing, physical layout of their facilities, and processes to comply with the Consent Decree and fundamentally change how 50,000 misdemeanor arrestees per year are handled. Every year, these changes are further refined, and it becomes far more difficult, disruptive, expensive, and prejudicial to return the system to where it was a decade ago.

**3. The Attorney General would not be prejudiced if intervention is denied.**

The Attorney General would not be prejudiced if intervention is denied. As discussed in the Facts section above, the parties are six years into the Consent Decree,[40] and the Attorney

---

[38] Doc.740-1 at 7.
[39] Doc.740-4 at 6.
[40] Doc. 708 at 46.

General has not shown any harm from the parties' actions or presented evidence of any threat to public safety in the future. In contrast, there would be a severe and immediate threat to public safety if the Jail were flooded with tens of thousands of additional detainees taken from their jobs and homes and needing to be housed, fed, and guarded by Harris County.

### 4. There are no unusual circumstances.

The Attorney General has not identified any unusual circumstances to justify the decade-long delay in seeking to intervene.

### C.    The Attorney General does not have an adequate interest in this litigation.

This Court made clear that: "[t]his Consent Decree is enforceable only by the parties"[41] and established a protocol for the parties to amend the Consent Decree if necessary. The Court also ordered that:

> If any term, condition, or provision of this Consent Decree, or the application thereof to any person or circumstance, is to any extent held by this Court to be invalid, void, or unenforceable, that term, condition or provision must be severed and will be inoperative, and the remainder of this Consent Decree will remain operative and binding on the parties.[42]

The parties have not sought to modify the Consent Decree.[43] Harris County's primary role is to provide support and resources,[44] while the Criminal Court Judges are responsible for making any modifications to Rule 9 under Texas Government Code § 74.093, and paragraphs 31-33 of the Consent Decree.[45] The Attorney General lodges no complaint about those portions implemented

---

[41] Doc. 708 at 15.
[42] Doc. 708 at 16.
[43] Four of the 16 Criminal Court at Law judges requested modification, but the majority have not.
[44] Doc. 708 at ¶ 25.
[45] See also Local Rule 1.1, https://ccl.hctx.net/attorneys/rules/Rules.pdf (Retrieved on September 12, 2025).

by Harris County, and he only claims an interest in preventing what he believes is a conflict between state law and the following parts of Local Rule 9 that four of the 16 judges identified:

9.2   To the extent Local Rule 9 conflicts with any other local rule, Local Rule 9 controls. ~~Except for situations described in Local Rule 9.4.1-9.4.6, all misdemeanor arrestees will have unsecured bail amounts set initially at no more than $100 and be promptly released on a personal bond with or without other non-financial conditions as soon as practicable after arrest. Consistent with Texas law, a judicial officer is not required to sign a personal bond prior to the person's release.~~

9.4   ~~Subject to Texas law, Aa~~ll misdemeanor arrestees must be ~~considered for~~ release~~d~~ on a personal bond or on non-financial conditions as soon as practicable after arrest, except those who fall within the following categories, who may be detained for up to 48 hours for an individualized hearing:

9.5   Any person arrested for the reasons described in Local Rule 9.4.1-9.4.6 may be kept in custody pending an individualized hearing before a judicial officer. Any judicial officer who makes decisions about conditions of release, including the Harris County Criminal Law Hearing Officers, must ~~—subject to Article 17.03 of the Texas Code of Criminal Procedure and other Texas law—~~have complete discretion to release on a personal bond any misdemeanor arrestee prior to an individualized hearing.

~~For all misdemeanor arrestees to whom Local Rules 9.4.1-9.4.6 do not apply, a criminal law hearing officer or judge shall review and consider: (1) the public safety report; (2) factors required for setting the amount of bail listed in Article 17.15 of the Texas Code of Criminal Procedure; and (3) unsecured bail and release on a personal bond with or without other non-financial conditions. A criminal law hearing officer or judge shall devote a defined portion of each shift to such review and consideration, which shall occur as soon as practicable after arrest and shall not result in a decision contrary to Texas law.~~

9.18  If an arrestee is in the Sheriff's custody 40 hours after arrest and no conditions of release have been determined, the Sheriff must present the arrestee to a judicial officer for a bail hearing. ~~If the person does not appear before a judicial officer within 48 hours of arrest, by general order of the judges, the Sheriff must deliver to the arrestee a "General Order Bond" issued by one or more of the CCCL Judges and release the arrestee.~~[46]

For the Attorney General to have an interest sufficient to intervene, he must have a "direct, substantial, legally protectable interest in the proceedings" that "substantive law recognizes as belonging to or being owned by the applicant." *Edwards*, 78 F.3d at 1004 (cleaned up). The Attorney General does not have an absolute right to intervene in any federal civil case that implicates state law, and the Fifth Circuit has rejected a state's request to intervene to prevent a local government's consent judgment from violating the state's constitution and statutes. *Haspel*

---

[46] See Doc.740-2. The four judges who created this document advised the Monitor that they were willing to concede that the section requiring the release of anyone detained more than 48 hours without a bail hearing should remain in Rule 9. See Doc.740-4 at 4-5.

*& Davis*, 493 F.3d 570, 577 (5th Cir. 2007). See also, *State v. Naylor*, 466 S.W.3d 783 (Tex.2015) (rejecting the Texas Attorney General's attempt to intervene in a family law matter to protect the State's interest in enforcing the law); *Hill v. Texas Water Quality Board*, 568 S.W.2d 738 (Tex. App.—Austin 1978, writ ref'd n.r.e.) (Texas law does not authorize the Attorney General to bring suit to correct another government agency's unlawful acts.)

While the Attorney General has an interest in enforcing state law, he has not identified an interest to modify a federal consent decree under the circumstances at bar. In the alternative, if this Court finds that there is an interest, it should find that the interest is limited to the alleged conflicts with State law that the Attorney General identified in Doc.740-2.

**D.    This action would not impair or impede the Attorney General's interests.**

The Attorney General must also show that if his motion to intervene is denied, it would "impair or impede" his own interests. Fed. R. Civ. P. 24(a)(2). The Attorney General has not shown how his interests have been impeded over the last six years or how they will be impeded in the future. Further, the Attorney General has not shown how intervening in this case will give him the authority to force state judges to amend their local rules or prevent Harris County from maintaining the services provided under the Consent Decree.

**E.    The parties adequately represent the State's interest.**

The Attorney General also has the burden of establishing that no party is adequately representing his interests in this case. *Haspel & Davis*, 493 F.3d at 578-579, citing *Hopwood v. State of Texas*, 21 F.3d 603, 605 (5th Cir. 1994). While the burden is "minimal . . . it cannot be treated as so minimal as to write the requirement completely out of the rule" and "when the party seeking to intervene has the same ultimate objective as a party to the suit, the existing party is presumed to

adequately represent the party seeking to intervene unless that party demonstrates adversity of interest, collusion, or nonfeasance." *Haspel & Davis*, 493 F.3d at 578-579.

In *Hopwood*, the Fifth Circuit held that when a government agency is involved in litigation, there is a "much stronger showing of inadequacy [of representation] required" because the government is presumed to speak for the public and "the applicant for intervention must demonstrate that its interest is in fact different…" *Hopwood*, 21 F.3d at 605. Harris County and the judges are public entities, and the Attorney General must meet this higher burden to intervene.

In *Haspel & Davis*, the State of Louisiana was not permitted to intervene in a case where a political subdivision risked violating the state constitution and a state statute. The Fifth Circuit held that the political subdivision represented the interests of the state even if it did not directly represent the state. *Haspel & Davis*, 493 F.3d at 578-579.

The Defendants have the same interest as the Attorney General in protecting the public and complying with federal and state law. They vigorously defended this case for three years through appeal and agreed to the Consent Decree only when it was apparent that the Court would impose a permanent injunction. Still, the Attorney General accused Harris County of colluding with plaintiffs because Harris County did not take the same course of action that the Attorney General would have taken in this case.[47] There is no requirement that a party do what a would-be intervenor requests. That is especially true in this case, where Harris County is not the proper party to amend Local Rule 9 to avoid the alleged conflict the Attorney General complains about.

---

[47] Doc. 740-1 at 4-6.

14

## II.
## THE ATTORNEY GENERAL IS NOT ENTITLED TO INTERVENE UNDER FEDERAL RULE OF CIVIL PROCEDURE 24(b)(1)(B).

**A.     Standard for a permissive intervention.**

Federal Rule of Civil Procedure 24(b)(1)(B) allows a party to intervene if he "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention is "wholly discretionary" and can be denied even if there is a common question of law or fact. *New Orleans Public Service, Inc. v. United Gas Pipe Line Company*, 732 F.2d 452, 470-471 (5th Cir. 1984).  Rule 24(b) also requires that courts "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). As with interventions under Rule 24(a), a permissive intervention must be timely. *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir. 1977).

**B.     The Attorney General's application is not timely.**

The standard for timeliness is the same under Rule 24(a) and Rule 24(b), and this Circuit considers four factors to determine whether a party timely sought to intervene:  (1) the length of time the movant waited to file after it should have known of its interest in the case, (2) the prejudice to the existing parties from any delay, (3) the prejudice to the movant if the intervention is denied, and (4) any unusual circumstances. *Heaton v. Monogram Credit Card Bank of Georgia*, 297 F.3d 416, 422-423 (5th Cir. 2002).

As explained on pages 9-11, the Attorney General waited nearly 10 years after this lawsuit was filed and six years after it filed a notice with this Court of its objections to the proposed Consent Decree to seek intervention. The Attorney General could easily have intervened when suit was filed in 2016, during discovery, when it made its concerns with the Consent Decree known to the

Court in 2019, or when Senate Bill 6 was passed in 2021. Instead, it waited until the parties spent years changing their processes, personnel, and even renovating their physical buildings to accommodate a different way of processing approximately 50,000 arrestees per year.

For the reasons explained, this delay is unacceptable, unjustified, and would cause significant prejudice to Harris County. Conversely, the Attorney General has not explained what prejudice it would suffer from not intervening in a Consent Decree that has been in effect for six years, has not affected public safety, and will soon end.

## C. The Attorney General does not have a claim or defense with a question of law or fact in common with this case.

The Attorney General alleges that it has a common question of law and fact with this case because "[o]nly the Attorney General will provide a state-wide perspective and an adversarial presentation" for judges to use "bail procedures across the State"[48] The Attorney General seems to suggest that its role is to assure that judges around the state use the same bail procedures. However, Texas Government Code § 74.093 authorizes judges to create local rules for their courts—not the Attorney General. In fact, if the Attorney General were granted permission to intervene, it is unclear how he would accomplish his objective of requiring the Criminal Judges to modify their local rules.

## D. Permissive intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Finally, the Attorney General would undoubtedly generate new litigation in a case that has been closed for years. Presumably, the Consent Decree would remain in effect until that litigation

---

[48] Doc.740-1 at 8.

ends, by which time many of the Attorney General's complaints would likely be moot. This process would unduly confuse, delay, and prejudice the parties without accomplishing anything practical.

## CONCLUSION AND PRAYER

The Attorney General fails to satisfy any of the elements necessary for either intervention as a matter of right or permissive intervention for the reasons provided. Defendant Harris County respectfully requests that the Attorney General of Texas's Motion to Intervene be denied, and for such other relief to which it may be entitled.

Respectfully submitted,

**CHRISTIAN D. MENEFEE**
Harris County Attorney

**JONATHAN FOMBONNE**
First Assistant County Attorney

**SETH HOPKINS**
Special Assistant County Attorney
Texas Bar No. 24032435
Seth.Hopkins@HarrisCountyTx.gov

**RACHEL FRASER**
Assistant County Attorney
Harris County Attorney's Office
1019 Congress Plaza, 15th Floor
Houston, Texas 77002
Telephone: (713) 274-5134

ATTORNEYS FOR HARRIS COUNTY

17

## CERTIFICATE OF SERVICE

I certify that on the 15th day of September, 2025, a true and correct copy of the foregoing document was delivered to all counsel of record via the CM/ECF system and served by electronic notice to all parties of record. I also certify that I served an email copy of this document to the following unrepresented parties by agreement as follows:

| | |
|---|---|
| The Honorable Paula Goodhart<br>Harris County Criminal Court at Law No. 2 | Paula_Goodhart@ccl.hctx.net |
| The Honorable Leslie Johnson<br>Harris County Criminal Court at Law No. 3 | Leslie_Johnson@ccl.hctx.net |
| The Honorable Jessica Padilla,<br>Harris County Criminal Court at Law No. 14 | Jessica_Padilla@ccl.hctx.net |
| The Honorable Linda Garcia<br>Harris County Criminal Court at Law No. 16 | Linda_Garcia@ccl.hctx.net |

_____
Seth Hopkins