UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARANDA LYNN ODONNELL, ET AL. | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| HARRIS COUNTY, TEXAS, ET AL. | § | Case No. 16-cv-01414 |
| | § | |
| *Defendants*. | § | |
| | § | |
| | § | |
| | § | |
| | § | |

---

**OMNIBUS REPLY IN SUPPORT OF THE ATTORNEY GENERAL OF TEXAS'S MOTION TO INTERVENE**

---

The Attorney General of Texas, Ken Paxton, hereby files this Omnibus Reply in support of his Corrected Motion to Intervene ("Motion").

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

JOE NWAOKORO
Attorney-in-Charge
Assistant Attorney General
Texas Bar No. 24032916
Southern Dist. No. 30168
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667
Joe.Nwaokoro@oag.texas.gov

**COUNSEL FOR THE ATTORNEY GENERAL OF TEXAS**

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................. 5

II.   ARGUMENT ................................................................................................... 6

   A.   The Court should permit intervention under Federal Rule of Civil Procedure 24(a)(2). 6

   B.   The Attorney General has important interests that relate to the subject of this action. .. 6

   C.   Disposition of this action will impair the Attorney General's interests......................... 7

   D.   The parties cannot adequately represent the Attorney General's interests. ................... 8

   E.   The request to intervene is timely.................................................................... 11

   F.   Intervention is not futile; the Consent Decree should be vacated under Rule 60(b). ... 13

   G.   Alternatively, the Court should permit intervention under Rule 24(B)(1)(B). ............. 16

III.  CONCLUSION.............................................................................................. 16

## TABLE OF AUTHORITIES

**Cases**

*Addington v. Texas*,
    441 U.S. 418 (1979)........................................................................................... 6

*Berger v. N. Carolina State Conf. of the NAACP*,
    597 U.S. 179 (2022)...................................................................................... 9, 11

*Brown v. Philadelphia Housing Authority*,
    350 F.3d 338 (3d Cir. 2003)...................................................................... 14, 16

*Brumfield v. Dodd*,
    749 F.3d 339 (5th Cir. 2014) ............................................................................ 8

*Daves v. Dallas County*,
    144 S. Ct. 548 (2024)..................................................................................... 12

*Daves v. Dallas County*,
    64 F.4th 616 (5th Cir. 2023) (*en banc*) .................................................. 5, 6, 7, 15

*Edwards v. City of Houston*,
    78 F.3d 983 (5th Cir. 1996).......................................................................... 9, 12

*Field v. Anadarko Petroleum Corp.*,
    35 F.4th 1013 (5th Cir. 2022) .......................................................................... 8

*Hall v. Louisiana*,
    884 F.3d 546 (5th Cir. 2018) ..................................................................... 14, 15

*Haspel & Davis Milling & Planting Co. Ltd. v. Board of Levee Commissioners of The Orleans
    Levee District & State Of Louisiana*,
    493 F.3d 570 (5th Cir. 2007) ........................................................................... 8

*Hopwood v. State of Texas*,
    21 F.3d 603 (5th Cir. 1994) ......................................................................... 8, 9

*Kelly v. Robinson*,
    479 U.S. 36 (1986)......................................................................................... 7

*La Union del Pueblo Entero v. Abbott*,
    29 F.4th 299 (5th Cir. 2022) ........................................................................... 8

*Rufo v. Inmates of Suffolk County Jail*,
    502 U.S. 367 (1992)...................................................................................... 13

*Russell v. Harris County*,
    145 S. Ct. 269 (2024)..................................................................................... 12

*Sierra Club v. Espy*,
    18 F.3d 1202 (5th Cir. 1994) ..................................................................... 11, 12

*Stallworth v. Monsanto Co.*,
    558 F.2d 257 (5th Cir. 1977) .......................................................................... 11

*U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership*,
    513 U.S. 18 (1994)........................................................................................ 14

*Valero Terrestrial Corp. v. Paige*,
    211 F.3d 112 (4th Cir. 2000) .......................................................................... 14

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*,
    834 F.3d 562 (5th Cir. 2016) .......................................................................... 10

**Statutes**

Fed. R. Civ. P. 12(h)(3)........................................................................................... 14

Fed. R. Civ. P. 24(a)(2) ................................................................................................ 6, 13

Fed. R. Civ. P. 60(b) ......................................................................................... 6, 13, 14, 15

## I.    INTRODUCTION

In approving the Consent Decree, the Court was emphatic that it must comply with State law: "The [consent] decree *must comply with Texas law*, but it does not have to repeat every state-law requirement." Dkt. 707 at 37 (emphasis added). The Court cautioned that "the absence of an explicit requirement to follow state law does not equate to an implicit command to violate it." *Id*. To avoid any doubt whatsoever, the Court reiterated that "the proposed consent decree *does not require officials to violate state statutes*." *Id*. at 39 (emphasis added).

As shown in the Attorney General's Motion and the parties' responses, that is not the case. No one disputes that the Consent Decree directly conflicts with State law (S.B. 6 and S.B. 9). Since the Attorney General filed his Motion, Harris County judicial officers have been threatened with contempt for complying with State law (S.B. 9) and their oath of office. *See* Exh. A.

The parties' responses underscore why the Motion should be granted and the Consent Decree vacated. Plaintiffs take no position on the Motion as it relates to conflicts between the Consent Decree and State law, but oppose it only in relation to the Motion's invocation of the Fifth Circuit's decision in *Daves v. Dallas County*, 64 F.4th 616, 631 (5th Cir. 2023) (*en banc*) to raise *Younger* abstention and mootness.[1] *See generally* Dkt. 751.

Twelve Harris County Criminal Court at Law Judges also do not oppose the Motion but instead "welcome a definitive judicial determination of the viability of the Consent Decree and whether it supersedes conflicting State law." Dkt. 749 at 2. Four Harris County Criminal Court at Law Judges (Judges Paula Goodhart, Jessica Padilla, Leslie Johnson, and Linda Garcia) support the Attorney General's Motion. *See* Exh. B.

---

[1] Plaintiffs do not deny a conflict between the Consent Decree and S.B. 6.

Harris County, joined by Sheriff Ed Gonzalez, opposes the Motion. *See* Dkts. 748 & 750. For the reasons discussed below, the Court should grant the Motion and vacate the Consent Decree under Rules 60(b)(5) and 60(b)(6).

## II.    ARGUMENT

### A. The Court should permit intervention under Federal Rule of Civil Procedure 24(a)(2).

Under the Federal Rules of Civil Procedure, a non-party must be allowed to intervene (1) when it has an interest regarding the action and (2) disposing of the action may practically "impair or impede" that interest, (3) unless the parties "adequately represent" that interest. Fed. R. Civ. P. 24(a)(2). The Attorney General may intervene as of right in this matter because he satisfies all three requirements.

### B. The Attorney General has important interests that relate to the subject of this action.

In their response, Plaintiffs "acknowledge[d] the Attorney General's general interest in enforcing state law." Dkt. 751 at 23. Harris County similarly admits that "the Attorney General has an interest in enforcing state law," Dkt. 748 at 13, even as it incredulously questions the Attorney General's interest in this case, notwithstanding that the Fifth Circuit has clearly identified the State's interest in this matter: "The injunctions issued in Houston and Dallas plainly show federal court involvement to the point of ongoing interference and 'audit' of *state criminal procedures*." *Daves,* 64 F.4th at 631 (emphasis added).

The State unquestionably has an interest in the operation of its criminal justice system, in public safety, and in enforcing its laws. *See Addington v. Texas*, 441 U.S. 418, 426 (1979); *see also Kelly v. Robinson*, 479 U.S. 36, 49 (1986). *Daves* held that "states have a vital interest in regulating their pretrial criminal procedures including assessment of bail bonds." *Daves*, 64 F.4th

at 627 n. 21. Indeed, *Daves* cited this case as one of those "asking federal courts to judicially order and enforce state court bail reforms." *Id*. at 623. The Fifth Circuit would not express concern about unwarranted intrusion into "state criminal procedures" and principles of comity in its *Younger* analysis if the State's interests were not implicated.

Furthermore, since the Attorney General filed his Motion, Plaintiffs' counsel sent a letter warning Harris County's Criminal Law Hearing Officers that they would face a contempt finding if they violated the Consent Decree by complying with S.B.9. *See* Exh. A. The import of the letter is to caution Hearing Officers against complying with State law they were sworn to uphold. Because this suit implicates the Attorney General's interest in public safety, in implementing the State's criminal justice system, and in enforcing state laws, this prong is met.

### C. Disposition of this action will impair the Attorney General's interests.

This prong is met for the same reasons above. It is undisputed that this case implicates the enforcement of state law, such as S.B. 6 and S.B. 9, the operation of its criminal justice system, and public safety. Plaintiffs' counsel's letter (Exh. A) reinforces this point: Harris County's judicial officers are being admonished to ignore and defy State law and daily violate their oath of office. If intervention is denied, Harris County, the largest county in Texas, would constitute its own legal enclave with different rules and where judges openly defy State law. By acknowledging the Attorney General's interest in enforcing state law, Dkt. 751 at 23, Plaintiffs concede that such interest will be impaired if intervention is denied.

Amazingly, Harris County, a recipient of the letter attached as Exhibit A, claims that the Attorney General has not shown how his interests have been or will be impeded in the future or shown how intervening will "give him the authority to force state judges to amend their local rules or prevent Harris County from maintaining the services provided under the Consent Decree."

First, the Attorney General has a constitutional and statutory duty to represent the State.

Second, intervention is not about asking the Court for authority that the Attorney General does not already have, but rather to ensure that justice is done, consistent with respect for the State's rights and interests. Third, as stated in the Motion, the Consent Decree impairs the State's interests; *Daves* mandates vacatur.

Denial of the Motion will impair or impede the Attorney General's ability to protect the State's interests and his performance of his constitutional and statutory duties because the Consent Decree conflicts with state law. Accordingly, the State's "interest may be impaired if denied intervention." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 307 (5th Cir. 2022); *see Field v. Anadarko Petroleum Corp.*, 35 F.4th 1013, 1020 (5th Cir. 2022) (it is sufficient for intervention "if [the State] cannot intervene, there is a possibility that [its] interest could be impaired or impeded"). The mere *possibility* of impairment suffices.

**D. The parties cannot adequately represent the Attorney General's interests.**

The showing under the inadequate representation prong is "not a substantial one." *Brumfield v. Dodd,* 749 F.3d 339, 345 (5th Cir. 2014). Only Harris County claims that this prong is not met, even as it concedes that the burden is "minimal.[2]" Dkt. 748 at 13-14. After correctly reciting that the standard is "minimal", it nonetheless relies on *Hopwood v. State of Texas*, 21 F.3d 603, 605 (5th Cir. 1994) for the argument that a stronger showing of inadequate representation is required when a governmental agency is involved in litigation, and because "Harris County and the judges are public entities," the Attorney General must meet this heightened standard.

However, the Supreme Court has held that a heightened standard is inappropriate where the State is the intervener: "a presumption of adequate representation is inappropriate when a duly authorized state agent seeks to intervene to defend a state law." *Berger v. N. Carolina State Conf.*

---

[2] Citing *Haspel & Davis Milling & Planting Co. Ltd. v. Board of Levee Commissioners of The Orleans Levee District & State Of Louisiana*, 493 F.3d 570, 578-579 (5th Cir. 2007) (citation omitted).

*of the NAACP*, 597 U.S. 179, 197 (2022). "Any presumption against intervention is especially inappropriate when wielded to displace a State's prerogative to select which agents may defend its laws and protect its interests." *Id*. "[A] State's chosen representatives should be greeted in federal court with respect, not adverse presumptions." *Id*. That should be the case here; the Attorney General should be greeted with respect, not subject to "adverse presumptions."

Furthermore, setting aside whether Harris County is even a "governmental agency," it fails to point out that in *Hopwood*, the State of Texas was adequately representing the interests of private litigants; thus, the public interest was already being represented statewide, which is not the case here. Permitting local officials to intervene to assert a different position from the State is altogether different from permitting a state official to represent the State's interests. Moreover, the presumption that Harris County referred to is "restricted … to those suits involving matters of sovereign interest." *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996). In *Edwards*, the court declined to apply the presumption of adequacy to the City of Houston because it lacked a sovereign interest. *Id*. Similarly, Harris County lacks a sovereign interest. The entire premise of the "heightened showing" requirement is the State's sovereign interest over its political subdivisions and its *parens patriae* interest in speaking for its citizens. Therefore, the government legal representative presumption does not apply and Harris County's arguments to the contrary have no basis in this circuit's precedent.

The Fifth Circuit imposes two presumptions of adequate representation: "when 'the would-be intervenor has the same ultimate objective as a party to the lawsuit' [and] 'when the putative representative is a governmental body or officer charged by law with representing the interests of the [intervenor].'" *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 569 (5th Cir. 2016) (citation omitted). Even assuming for the sake of argument that Harris County

shares the ultimate objective with the Attorney General, it does not and cannot argue that it is charged by law with representing the interests of the Attorney General.  None of the parties shares the Attorney General's statutory and constitutional duty.

Additionally, Harris County's response, actions, and public statements undermine any argument for adequate representation.  First, even as Harris County claims to share "the same interest as the Attorney General in protecting the public and complying with federal and state law," it chose inaction after learning that the Consent Decree violated – and would require judicial officers to violate – S.B. 6 and S.B. 9.  It cast its role as a bystander, claiming that the "parties have not sought to modify the Consent Decree" and its "primary role is to provide support and resources, while the Criminal Court Judges are responsible for making any modification to Rule 9."  Dkt. 748 at 11.

As discussed above, the Court approved the Consent Decree with the explicit understanding that it would be subject to State law: "But the absence of an explicit requirement to follow state law does not equate to an implicit command to violate it … . *The decree must comply with Texas law*, but it does not have to repeat every state-law requirement."  Dkt. 707 at 37 (emphasis added).  The Court reiterated this point, cautioning that "the proposed consent decree *does not require officials to violate state statutes*."  Dkt. 707 at 39 (emphasis added).  Yet, that is precisely what it does.

Second, Harris County's public statements in response to the Motion reflect hostility to, and misalignment with, the Attorney General's interest.  In response to the Motion, Harris County Attorney Christian Menefee leveled baseless political attacks against the Attorney General, claiming that "the timing of Paxton's motion suggests the attorney general is 'bending to the will of Donald Trump.'"  *See* Nicole Hensley*, Attorney General Ken Paxton seeks to undo*

*misdemeanor bail reform consent decree*, Houston Chronicle (August 26, 2025), available at https://www.houstonchronicle.com/news/houston-texas/crime/article/paxton-misdemeanor-consent-decree-21015147.php (last visited September 21, 2025).  Thus, rather than heed the Supreme Court's admonition that a "State's chosen representatives should be greeted in federal court with respect, not adverse presumptions," *Berger*, 597 U.S. at 197, Harris County chose the latter.

Finally, the response of the overwhelming number of parties who do not oppose but instead welcome the Attorney General's intervention as it relates to conflicts between the Consent Decree and State law underscore the point that none can adequately represent his interests.

### E.  The request to intervene is timely.

Plaintiffs and defendant Harris County challenge the timeliness of the Motion (Plaintiffs as it relates solely to S.B. 6 and vacatur based on *Younger* abstention and mootness).  Dkt. 748 at 8-10; Dkt. 751 at 12-17.  However, both measure timeliness from a strict chronological prism, ignoring this circuit's precedent that timeliness "is *contextual*; absolute measures of timeliness should be ignored." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (emphasis added). Timeliness "is not limited to chronological considerations but 'is to be determined from all circumstances.'" *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir. 1977) (citation omitted). The court considers "*unusual circumstances* militating either for or against a determination that the application is timely." *Id.* at 266 (emphasis added).  The Attorney General's Motion is timely under these standards.

First, *Daves* represents a significant reversal of position and therefore constitutes an unusual circumstance as it implicates threshold jurisdictional issues in a landmark case that significantly affects state law.

Second, the Attorney General has sought to intervene once he realized that his interests

were not being adequately represented.

Third, the Supreme Court denied certiorari in *Daves* on January 8, 2024. *Daves v. Dallas County*, 144 S. Ct. 548 (2024), and in a related bail reform case that applied *Daves* on October 7, 2024. *Russell v. Harris County*, 145 S. Ct. 269 (2024). The Attorney General afforded defendants the benefit of doubt and ample opportunity to act once those cases ended, and the Supreme Court repeatedly left the *Daves* decision undisturbed.

Fourth, on May 30, 2025, four Harris County Criminal Court at Law judges identified conflicts between the Consent Decree and S.B. 6. The Attorney General further allowed the parties opportunity to act once the issue was raised.

Fifth, the conflict between State law and the Consent Decree means that judicial officers are being asked to choose between complying with state law or the Consent Decree and have been threatened with contempt for complying with State law.

Plaintiffs and Defendant Harris County spill ink discussing how the Attorney General's delay will purportedly inconvenience them. *See* Dkt. 751 at 18-19; Dkt. 748 at 10. Prejudice, however, is "measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation." *Espy*, 18 F.3d at 1206. The court is "concerned only with the prejudice caused by the applicant's delay, not that prejudice which may result if intervention is allowed." *Edwards*, 78 F.3d at 1002. These parties' objections relate solely to the potential prejudice they may suffer if intervention is allowed. That is contrary to the clear standard enunciated by *Espy* and *Edwards*. They fail to show any prejudice resulting from the Attorney General's delay.

Moreover, any argument that it will needlessly prolong litigation is overblown and misplaced. Applying *Daves* is simply a matter of law; it does not require further factual

development. Similarly, the Motion to Vacate should be reviewed under Rule 60(b) as a matter

of law. No factual inquiry or evidentiary hearing is needed to apply S.B. 6 and S.B. 9. Therefore,

this motion should be granted under Fed. R. Civ. P. Rule 24(a)(2).

**F. Intervention is not futile; the Consent Decree should be vacated under Rule 60(b).**

Plaintiffs contend that intervention should be denied as futile as it relates to *Younger*

abstention and mootness because the Motion to Vacate, which accompanied the Motion, "does

not identify any subsection of Rule 60(b), nor any other legal basis, that would allow him to

raise his *Younger* and mootness arguments in the same way."[3] Dkt. 751 at 21-22.

Rule 60(b) of the Federal Rules of Civil Procedure provides that:

> On motion and upon such terms as are just, the court may relieve a party ... from a
> final judgment, order, or proceeding for the following reasons: ... (5) the judgment
> has been satisfied, released, or discharged, or a prior judgment upon which it is
> based has been reversed or otherwise vacated, or it is no longer equitable that the
> judgment should have prospective application; or (6) any other reason justifying
> relief from the operation of the judgment.

Fed. R. Civ. P. 60(b)(5) and (6). Thus, Rule 60(b)(5) – "it is no longer equitable that the

judgement should have prospective application" – and 60(b)(6) – "any other reason that justifies

relief" – provide such bases. *Id*. The court should vacate a consent decree where there has been

a significant change in law or the facts on which the consent decree was predicated. *Rufo v.*

*Inmates of Suffolk County Jail*, 502 U.S. 367, 383-90 (1992). For the reasons stated above, in

the Motion, and in the Motion to Vacate, Daves and change in law present extraordinary

circumstances that warrant vacatur of the Consent Decree.

Rule 12(h)(3) of the Federal Rules of Civil Procedure states: "If the court determines at

---

[3] Plaintiffs claim that the Motion to Vacate's "failure to identify a legal basis for raising these argument in support of vacatur prevents Plaintiffs from responding," Dkt. 751 at 22, n. 12, and express intent to seek leave to file a surreply if such basis is identified. As an initial matter, the Scheduling Order, Dkt. 746, states: "In the event the Court grants any part of the Attorney General's motion, the parties and Attorney General will confer and submit a proposed scheduling order for the Attorney General's motion to vacate the consent decree." Request for leave to file a surreply should be denied because Plaintiffs will have an opportunity to respond separately to the Motion to Vacate.

any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *Brown v. Philadelphia Housing Authority*, 350 F.3d 338, 347 (3d Cir. 2003). In *Brown*, the Third Circuit ordered vacatur of a 29-year-old consent decree for mootness, based on a change in law and lack of jurisdiction, pursuant to a 60(b) motion to vacate. *Id.* The court noted that ordinarily, "having held that the case was moot and that we lacked subject matter jurisdiction, we would proceed no further," but proceeded to offer guidance on when a consent decree challenged under Rule 60(b) should be set aside. *Id.* at 348 n.6. Thus, in the court's analysis, the inquiry should end once the court determines that the case is moot or that it lacks jurisdiction. Likewise, the Court should allow the Attorney General to intervene and vacate the Consent Decree under Rule 60(b) for mootness, *Younger* abstention, and change in law.

Additionally, vacatur is an equitable remedy. *U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership*, 513 U.S. 18, 25 (1994); *Hall v. Louisiana*, 884 F.3d 546, 553 (5th Cir. 2018); *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 118 (4th Cir. 2000). In *Valero Terrestrial Corp.*, the Fourth Circuit held that considerations for vacatur for mootness, such as public interest, are also "largely determinative of a district court's decision whether to vacate its own judgment due to mootness under... Rule 60(b)(6)." Accordingly, the Court should vacate for *Younger* abstention and mootness under Rule 60(b)(5) and (6).

Federal district courts are to dispose of moot cases in the manner "'most consonant to justice'... in the view of the nature and character of the conditions which have caused the case to become moot." *U.S. Bancorp*, 513 U.S. at 24 (citation omitted); *see also Hall*, 884 F.3d at 553. "The principal condition to which we have looked is whether the party seeking relief from the judgment below caused the mootness by voluntary action." *U.S. Bancorp*, 513 U.S. at 24; *Hall*, 884 F.3d at 553. Under that rubric, the Attorney General did not cause mootness by

his action.

Courts also consider the public interest in considering vacatur under Rule 60(b)(6). *Hall*, 884 F.3d at 553. The public interest "is best served by granting relief when the demands of orderly procedure cannot be honored." *Id*. Furthermore, "[j]udicial precedents are presumptively correct and valuable to the legal community as a whole." *Id*. The judicial precedent here – the *Daves* decision – compels vacatur.

As *Daves* observed, the Texas legislature has enacted legislation relating to bail practices – S.B. 6. Since *Daves*, the Texas legislature has passed S.B. 9, which governs bail practices for certain misdemeanors. The will of Texans as expressed through their elected representatives should be honored. Further, Texas judicial officials are now being threatened with contempt for complying with the law. *See* Exh. A.

Further, "'vacatur is available as a remedy to the district court ... even where the considerations of relative fault and the public interest *would otherwise counsel against* vacatur.'" *Hall*, 884 F.3d at 551 (citation omitted) (emphasis added). Thus, even absent a public interest consideration, the Court retains discretion to vacate under 60(b)(5) and (6).

Furthermore, as observed above, the Court's approval of the Consent Decree was expressly premised on its compliance with State law: "The [consent] decree *must* comply with Texas law, but it does not have to repeat every state-law requirement." Dkt. 707 at 37 (emphasis added). "[T]he proposed consent decree does not require officials to violate state statutes." *Id*. at 39.

Plaintiffs' futility argument fails. The Court has discretion to, and should vacate under, Rule 60(b)(5) and (6) for *Younger* abstention and mootness. As stated above, the court need not conduct an evidentiary hearing where the need for a consent decree has been eliminated by a change in law and there is no dispute about the change in law. *Brown*, 350 F.3d 348 n.6.

Granting the Motion will not unduly prolong this litigation because the Court can rule on the Motion to Vacate as a matter of law and without need for an evidentiary hearing: there is no factual dispute relating to the *Daves* decision, S.B. 6, and S.B. 9.

### G. Alternatively, the Court should permit intervention under Rule 24(B)(1)(B).

If the Court does not grant the Attorney General intervention as of right — which it should — it should grant for permissive intervention under Rule 24(b)(1)(B) for the same reasoning above.

### III.    CONCLUSION

For the foregoing reasons and those set forth in the Motion, the Attorney General respectfully requests that the Court grant his Motion and vacate the Consent Decree under Rule 60(b)(5) and (6).

September 23, 2025.                      Respectfully submitted,

**KEN PAXTON**
Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

*/s/ Joe Nwaokoro*
**JOE NWAOKORO**
Texas Bar No. 24032916
Southern Dist. No. 30168
Assistant Attorney General
General Litigation Division
Office of the Attorney General
P.O. Box 12548, Capitol Station

Austin, Texas 78711-2548
Phone: (512) 475-4072
Fax: (512) 320-0667
Joe.Nwaokoro@oag.texas.gov

COUNSEL FOR THE ATTORNEY GENERAL
OF TEXAS

**C**ERTIFICATE OF **S**ERVICE

I certify that on September 23, 2025, this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

*/s/ Joe Nwaokoro*
**JOE NWAOKORO**
Assistant Attorney General

# EXHIBIT A

SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP

1000 LOUISIANA
SUITE 5100
HOUSTON, TEXAS 77002
(713) 651-9366
FAX (713) 654-6666
WWW.SUSMANGODFREY.COM

| SUITE 1400 | SUITE 3000 | ONE MANHATTAN WEST |
| --- | --- | --- |
| 1900 AVENUE OF THE STARS | 401 UNION STREET | NEW YORK, NEW YORK 10001-8602 |
| LOS ANGELES, CALIFORNIA 90067-6029 | SEATTLE, WASHINGTON 98101-2683 | (212) 336-8330 |
| (310) 789-3100 | (206) 516-3880 | |

NEAL MANNE
DIRECT DIAL (713) 653-7827

E-MAIL NMANNE@SUSMANGODFREY.COM

September 12, 2025

*Via email: jonathan.fombonne@harriscountytx.gov*
Jonathan Fombonne
Office of the Harris County Attorney
1019 Congress, 15th Floor
Houston, TX 77002

*Via email: bgarrett@law.duke.edu*
Brandon Garrett
Duke University School of Law
210 Science Drive
Durham, NC 27708

Re:     Consent Decree Violations Related to Senate Bill 9

Dear Mr. Fombonne and Mr. Garrett,

We write to bring to the County's attention apparently intentional violations of the Consent Decree by the County's Criminal Law Hearing Officers and to ask that the County remind all Hearing Officers that the Consent Decree remains binding unless and until the federal court rules otherwise. Violations of a federal Consent Decree can justify a contempt finding. *United States v. Hinds Cty. Bd. of Sups.*, 128 F.4th 616, 636 (5th Cir. 2025). A knowing violation can constitute a criminal offense. *See* 18 U.S.C. § 401(3); *United States v. Landerman*, 109 F.3d 1053, 1068 (5th Cir. 1997) (affirming criminal contempt conviction). The Monitor reminded all Parties on September 2, 2025, of their obligation to comply with the entirety of the Consent Decree unless and until the federal court modifies it.

As you are aware, Senate Bill 9 took effect on September 1, 2025. In addition to other changes, Senate Bill 9 amended Article 17.03 to require cash bail for certain

**Exhibit A**
**1**

Jonathan Fombonne
Brandon Garrett
September 12, 2025
Page 2

enumerated offenses, including three misdemeanors: terroristic threat Class A, unlawful possession of a weapon, and violating certain protective orders. Article 17.03 as amended by S.B. 9 is inconsistent with L.R. 9.2, 9.3, 9.10, and 9.12 as codified in the federal court Consent Decree issued in the *ODonnell* litigation. *ODonnell v. Harris County*, No. 16-cv-01414, Dkt. 708 ¶ 30 (S.D. Tex. Nov. 21, 2019). Rule 9 states that any judicial officer considering bail must "consider the full range of available conditions of release" and have "complete discretion to release any misdemeanor arrestee on a personal bond," L.R. 9.10, and may impose an unaffordable condition of release only if "necessary to reasonably assure the safety of the community or to reasonably protect against flight from prosecution," L.R. 9.12.7; *see also* L.R. 9.2 (requiring prompt release on GOB for the majority of arrestees); L.R. 9.3 (prohibiting cash bail unless the bail order follows a bail hearing that meets the requirements of L.R. 9.12).

In just the past twelve days since Senate Bill 9 went into effect, we have identified seven cases involving five different Hearing Officers stating that they denied a personal bond for an individual charged with one of the aforementioned misdemeanor offenses based at least in part on Tex. Crim. Proc. art. 17.03. We have attached the bail orders for these cases. In many of these examples, the bail order explicitly says a personal bond is prohibited under Senate Bill 9. For example, two say "PR prohib. Per 17.03(b-2)(1)(B)," and another one similarly says, "Offense not eligible for PTRB/Art. 17.03/ TX C.C.P."

We include two representative findings below:

1. Bail order in *State v. Alleman*, SPN 03302622, Cause No. 258108101010. In Ms. Alleman's case, the hearing officer set a $500 secured bond, resulting in Ms. Alleman's detention.

Jonathan Fombonne
Brandon Garrett
September 12, 2025
Page 3

CAUSE NO. <u>258108101010</u>

Reasons for the bail decision and evidence relied upon: "

[MAND]: PR prohib. per 17.03(b-2)(1)(B).

[AFC]: lives in Katy, unemployed. Indigent.

[FLIGHT]: -

[HOLD]: -

[CHRI]: No CCH other than this allegation.

[ALLEGED]: Sep. 1, 2025 Def is CW's sister-in-law, same household. While CW recovering from surgery, CW's husband was taking CW to bathroom. Def threatened to push CW down the stairs because the hallway light was on.

[NOTE]: Defendant expressed intent to return to the residence to get her possessions, even after repeatedly being admonished that doing so would violate her protective order.

[CTZN]: US

I certify that the procedures and findings required by Local Rule 9 were provided and that I have explained the reasons and evidence relied on for my decision to Defendant and/or counsel, ☐ orally, ☒ in writing, ☐ or both.

Pursuant to Texas Code of Criminal Procedure art 17.022 and Texas Government Code § 72.038, I hereby certify that in setting this bail that I considered each factor of Texas Code of Criminal Procedure art. 17.15(a), and I certify that I considered the information in the Public Safety Report System. I hereby authorize the Harris County District Clerk to enter the required certification in the Public Safety Report System on my behalf.

<u>September 01, 2025 21:50 PM</u>          _____          _____
**Date and Time**                    **Magistrate (Judge or Hearing Officer)**          **Interpreter (if applicable)**

Magistrate <u>Chris_Ainsworth</u> - Magistrate SPN <u>02620288</u>

2.  Bail order in *State v. Gonzalez*, SPN: 01897516, Cause No. 258192801010. In Mr. Gonzalez's case, the hearing officer set a $1000 secured bond, resulting in Mr. Gonzalez's detention. When Mr. Gonzalez appeared in court two days later, the State dismissed the case for lack of probable cause.

CAUSE NO. <u>258192801010</u>

Reasons for the bail decision and evidence relied upon: 17.03 per SB9. On bond for PCS in 495th. CW=dad. Threatened murder-suicide. MOEP, Cond. Unemployed. Indigent.

I certify that the procedures and findings required by Local Rule 9 were provided and that I have explained the reasons and evidence relied on for my decision to Defendant and/or counsel, ☐ orally, ☐ in writing, ☒ or both.

Pursuant to Texas Code of Criminal Procedure art 17.022 and Texas Government Code § 72.038, I hereby certify that in setting this bail that I considered each factor of Texas Code of Criminal Procedure art. 17.15(a), and I certify that I considered the information in the Public Safety Report System. I hereby authorize the Harris County District Clerk to enter the required certification in the Public Safety Report System on my behalf.

<u>September 07, 2025 23:14 PM</u>          _____          _____
**Date and Time**                    **Magistrate (Judge or Hearing Officer)**          **Interpreter (if applicable)**

Magistrate <u>Sharon_Chu</u> - Magistrate SPN <u>02343756</u>

**Exhibit A**
**3**

Jonathan Fombonne
Brandon Garrett
September 12, 2025
Page 4

Our case review is manual and time-intensive, and there may be additional Senate
Bill 9-related violations. We understand that the County is creating a weekly report
to track potential violations of Local Rule 9 related to S.B. 9, which will assist all
Parties and the Monitors in their ongoing review of potential violations.

Senate Bill 9's prohibition on personal bonds means that poor people who cannot
afford secured bail will be detained pretrial even when detention is not necessary
and less restrictive alternatives would suffice. It thus requires the exact
constitutional violations that the Consent Decree was designed to remedy through
Local Rule 9.

To protect the Plaintiff class going forward, we ask the County to remind the
Hearing Officers to follow the binding order of the federal court, including in
circumstances such as the application of Art. 17.03 where the Hearing Officers may
encounter a conflict between what state law and the Consent Decree require.

We can be available to discuss further,

Sincerely,

Neal Manne

Neal Manne

cc:    Sandra Thompson          sguerrat@central.uh.edu
       Allan Van Fleet          allanvanfleet@gmail.com
       Judge Paula Goodhart     paula_goodhart@ccl.hctx.net
       Judge Jessica Padilla    jessica_padilla@ccl.hctx.net
       Judge Linda Garcia       linda_garcia@ccl.hctx.net
       Judge Leslie Johnson     leslie_johnson@ccl.hctx.net
       Murray Fogler            mfogler@foglerlaw.com

**Exhibit A**
**4**

# EXHIBIT B

**Joe Nwaokoro**

| | |
|---|---|
| **From:** | Goodhart, Judge Paula (CCL) <Paula_Goodhart@ccl.hctx.net> |
| **Sent:** | Wednesday, August 27, 2025 12:24 PM |
| **To:** | Joe Nwaokoro |
| **Subject:** | RE: ODonnell - Copy of Case filings |

Good afternoon,

██████████████████████████████████████████ I noticed in the filing that you indicated that the defendants did not respond and are presumed to be opposed. I, along with three of my colleagues are named defendants and are not opposed to your request. Because we do not have representation, we do not have access to filings. ██████████████████████████████████████████ ██████████████████████████████████████████ name of course.

██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ person.

██████████████████████████████████████████



The Honorable Paula Goodhart
Presiding Judge, Harris County Criminal Court
at Law No. 2

1201 Franklin St., 8th Floor, Houston, Texas
77002
832-927-3125 │ www.ccl.hctx.net

  

██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████



**Exhibit B**
**1**