United States District Court
Southern District of Texas
**ENTERED**
October 30, 2025
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MARANDA LYNN ODONNELL, *et al.*, | § | |
| on behalf of themselves and all others | § | |
| similarly situated, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-16-1414 |
| | § | |
| HARRIS COUNTY, TEXAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

The Attorney General of the State of Texas seeks to intervene and undo the parties' 2019 consent decree that settled a constitutional challenge to the Harris County bail system. The Attorney General seeks to do so almost a decade after the litigation began and six years after the consent decree went into effect. The results of the consent decree, reported and studied by independent court-appointed monitors, show no significant increases in recidivism; a multi-million-dollar savings to Harris County and some relief from its beyond-capacity jail population; and an improvement to the lives of many arrested for misdemeanor offenses. Despite this record of success, the Attorney General belatedly seeks to intervene to challenge the consent decree that achieved these results.

The Attorney General bases his motion on the Fifth Circuit's en banc decision in *Daves II*,[1] decided over two years ago. That decision, issued in a similar challenge to the Dallas County

---

[1] *Daves v. Dallas County (Daves II)*, 64 F.4th 616 (5th Cir. 2023) (en banc), *cert. denied*, 144 S. Ct. 548 (2024).

bail system, held that the state defendants could assert *Younger*[2] abstention against the plaintiffs' claims and that a new state law, Senate Bill 6, mooted the case. The Attorney General moves to intervene to argue that this court must also abstain under *Younger* and that Senate Bill 6 and Senate Bill 9, additional bail legislation passed after *Daves II*, moot this case.

After a careful review of the motion to intervene and the opposition, the briefs, the parties' supplemental briefs, the record, and the applicable law, the court grants in part and denies in part the Attorney General's motion to intervene. The court finds that the Attorney General may intervene to move to vacate or amend the consent decree based on Senate Bill 6 and Senate Bill 9, and to argue that these laws moot the consent decree or otherwise require its amendment. The Attorney General did not, however, timely intervene to assert *Younger* abstention, which he could have done beginning in 2018. The Attorney General has no right to intervene to raise *Younger* abstention and, by this point in the litigation, he has waived the *Younger* arguments that he outlines in his motion.

## I.    The Litigation and Entry of the Consent Decree

Close to a decade ago, Maranda Lynn ODonnell filed a class-action lawsuit challenging Harris County's police and practice of jailing about 40% of people arrested for misdemeanor offenses for the duration of their cases solely because they could not pay money bail, without constitutionally adequate procedures to justify their continued detention. *ODonnell v. Harris County*, 251 F. Supp. 3d 1052, 1058 (S.D. Tex. 2017), *aff'd as modified*, 892 F.3d 147 (5th Cir. 2018).

The parties vigorously litigated the case before this court and the Fifth Circuit. Harris County, the County Criminal Court at Law Judges, the Criminal Law Hearing Officers, and the

---

[2] *Younger v. Harris*, 401 U.S. 37 (1971).

Sheriff moved to dismiss the complaint, in part based on *Younger* abstention. (Docket Entry No. 80 at 25–31). The court denied the motion to abstain. (Docket Entry No. 125).

In 2017, the court held an eight-day preliminary-injunction hearing. (Docket Entry Nos. 222, 223, 228–30, 246, 247, 251). In advance of the hearing, several parties, including bail bondsmen whose financial interests supported the bail-bond system, moved to intervene. (Docket Entry No. 202). The Attorney General did not. The court granted the plaintiffs' motion for a preliminary injunction, finding that the County's bail practices likely violated the Constitution's Equal Protection Clause and Due Process Clause, (Docket Entry Nos. 302, 304), and granted the motion for class certification, (Docket Entry No. 303).

The County and the Hearing Officers appealed, asserting again that the district court should have abstained under *Younger*. (Docket Entry Nos. 309, 310). The Attorney General did not intervene, but he did file an amicus brief. *See* Br. for State of Texas et al., *ODonnell v. Harris County*, No. 17-20333, 2017 WL 2861848 (5th Cir. June 26, 2017). The brief argued that the Fifth Circuit should vacate the preliminary injunction but did not raise *Younger* abstention. *See id.*

The Fifth Circuit affirmed this court's decision that *Younger* abstention was improper, that the plaintiffs were likely to succeed on the merits of their claims, and that most of the preliminary injunction was proper. *See generally ODonnell v. Harris County (ODonnell I)*, 892 F.3d 147 (5th Cir. 2018) (opinion on rehearing), *overruled in part by Daves v. Dallas County (Daves I)*, 22 F.4th 522 (5th Cir. 2022), *and by Daves II*, 64 F.4th 616. The Attorney General did not intervene in the appeal and did not seek additional review from the Fifth Circuit en banc or from the Supreme Court.[3] The Fifth Circuit remanded the case to this court.

---

[3] The defendants only sought review from the Supreme Court in the form of a stay pending appeal from the district court's original preliminary injunction. *See ODonnell v. Harris County*, 260 F. Supp. 3d 810 (S.D. Tex. 2017) (denying a stay pending appeal). Justice Thomas denied the defendants' application for

On remand, the court entered a revised preliminary injunction, (Docket Entry Nos. 426, 427), which the County Judges appealed, (Docket Entry No. 434). The Attorney General again filed an amicus brief, arguing that the Fifth Circuit should vacate the preliminary injunction. Br. for State of Texas et al., *ODonnell v. Goodhart*, No. 18-20466, 2018 WL 4603243 (5th Cir. Sept. 17, 2018). The Fifth Circuit stayed pending appeal portions of the new preliminary injunction. *See generally ODonnell v. Goodhart (ODonnell II)*, 900 F.3d 220 (5th Cir. 2018), *overruled in part by Daves*, 22 F.4th 522.

The parties continued to litigate the case before this court while the County Judges' appeal of the revised preliminary injunction was pending. The parties submitted cross-motions for summary judgment, which included *Younger* arguments. (*See* Docket Entry No. 432). Before those motions were decided, newly elected County Judges took office, withdrew the pending appeal, (*See* Docket Entry No. 551), and began settlement negotiations, (Docket Entry No. 532). The parties routinely updated the court on the status of the settlement negotiations. (*See, e.g.*, Docket Entry Nos. 563, 590, 594). The Attorney General did not seek to intervene when the parties started negotiating settlement; after the district court denied without prejudice the County Judges' motion for summary judgment, which had asserted *Younger* abstention, (Docket Entry No. 540); after the parties notified the court of a new local rule that would provide a foundation for the proposed settlement, (Docket Entry No. 557); after the court ordered the defendants to comply with the new local rule, (Docket Entry Nos. 573, 575); or at any point during the work and public filings that led to the parties' consent decree.

After three years of litigation, including two appeals to the Fifth Circuit, the parties announced a settlement on July 25, 2019. (Docket Entry Nos. 615, 617). The court permitted

---

a stay pending appeal. *Harris County v. ODonnell*, No. 16A1204, 2017 WL 11824167, at *1 (U.S. June 7, 2017).

interested individuals and entities to file amicus briefs in support of, or in opposition to, the proposed consent decree to aid in its consideration of the parties' proposal. (Docket Entry No. 643). The Attorney General submitted written testimony arguing that the proposed consent decree was contrary to Texas law, that it was against the public interest because it endangered public safety, and, because the case was moot, that the court lacked subject-matter jurisdiction to enter the consent decree. (Docket Entry No. 689). At the final hearing to determine the fairness of the proposed class settlement and consent decree, the court afforded the Attorney General time to argue his position. (Docket Entry Nos. 692, 700; *see* Docket Entry No. 704 at 58:13–64:5). The Attorney General did not assert *Younger* abstention, even though every other party in the case had abandoned the issue and submitted the constitutional issues to the court for a decision on the merits.

On November 21, 2019, after considering the parties' and amici's submissions and arguments, the court entered the consent decree. (Docket Entry No. 708). In March 2020, the court appointed Professor Brandon Garrett of the Duke University Law School and Professor Sandra Guerra Thompson of the University of Houston Law Center, both well-regarded experts in criminal-justice law, as independent monitors to oversee the consent decree. (Docket Entry No. 714). The monitors have published reports over the past five years, collecting data on Harris County's bail system and documenting the effects of the consent decree. (Docket Entry Nos. 722-1, 725-2, 726-1, 733-2, 734-1, 736-1, 737-1, 739-1). The monitors have consistently found that, under the consent decree, "Harris County and [its] residents" have saved "many millions of dollars" and "the lives of tens of thousands of persons arrested for misdemeanors" have "improved," with "no increase in new offenses by persons arrested for misdemeanors." (Docket Entry No. 739-1 at 5 (Eighth Report of the Court-Appointed Monitor)). In short, the decree has responded to the constitutional violation of holding detainees, charged with misdemeanor offenses

but not convicted, who would have been released from jail but for their inability to post a cash bond, with no increase in new offenses.

In March 2020, the Attorney General moved to intervene in another case before this court raising similar challenges to Harris County's felony, as opposed to misdemeanor, bail system. (*Russell v. Harris County*, Case No. 4:19-cv-226 (S.D. Tex.), Docket Entry Nos. 38, 46).  In August 2021, Texas enacted Senate Bill 6, which altered the State's bail laws.  *See* S.B. 6, 87th Leg. (Tex. 2021).  In January 2022, the Fifth Circuit remanded the *Daves* case to the district court with instructions to address *Younger* abstention and mootness.  *Daves I*, 22 F.4th at 548.  In July 2022, the district court issued its post-remand opinion in *Daves*, concluding that *Younger* abstention was not required but that the case had been made moot by the Texas legislature's enactment of Senate Bill 6.  *Daves v. Dallas County*, No. 3:18-cv-154, 2022 WL 2473364, at *3, *6 (N.D. Tex. July 6, 2022).

In January 2023, the Attorney General moved to dismiss the *Russell* case, arguing that Senate Bill 6 made the challenges to the Harris County bail system moot.  (*Russell* Docket Entry Nos. 642, 669).  Two months later, in March 2023, the Fifth Circuit issued *Daves II*, which held that Senate Bill 6 mooted the case and that the district court had to abstain from adjudicating the case under *Younger*.  *Daves II*, 64 F.4th at 635; *see Russell v. Harris County*, No. H-19-cv-226, 2023 WL 5658936, at *3 (S.D. Tex. Aug. 31, 2023) (discussing *Daves II*).  The Attorney General did not move to intervene or to vacate the consent decree in *ODonnell* as these related cases developed.

In June 2025, the Texas Legislature enacted Senate Bill 9, which expanded the bail-system amendments made in Senate Bill 6.  *See* S.B. 9, 89th Leg. (Tex. 2025).  In August 2025,

6

the Attorney General moved to intervene and to vacate the consent decree in this case.  (Docket

Entry Nos. 740, 742).  Senate Bill 9 became effective on September 1, 2025.

## II.        The Legal Standards

The Attorney General moves to intervene as of right under Federal Rule of Civil Procedure

24(a)(2) and moves in the alternative for permissive intervention under Rule 24(b)(1).

"Rule 24(a)(2) governs intervention of right based on an interest in the action."  *St. Bernard

Par. v. Lafarge N. Am., Inc.*, 914 F.3d 969, 974 (5th Cir. 2019).  The Fifth Circuit has established

a four-pronged test for intervention under Rule 24(a)(2):

> (1) the application for intervention must be timely; (2) the applicant must have an
> interest relating to the property or transaction which is the subject of the action; (3)
> the applicant must be so situated that the disposition of the action may, as a practical
> matter, impair his ability to protect that interest; [and] (4) the applicant's interest
> must be inadequately represented by the existing parties to the suit.

*Id.* (quoting *Sommers v. Bank of Am., N.A.*, 835 F.3d 509, 512 (5th Cir. 2016)).  "Failure to satisfy

any one requirement precludes intervention of right."  *Louisiana v. Burgum*, 132 F.4th 918, 922

(5th Cir. 2025) (quoting *Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs*, 493

F.3d 570, 578 (5th Cir. 2007)).

Rule 24(b)(1) governs permissive intervention.  Under it, a "court may permit anyone to

intervene who" files a "timely motion" and "has a claim or defense that shares with the main action

a common question of law or fact."  FED. R. CIV. P. 24(b)(1)(B).  "Permissive intervention under

Rule 24(b) is 'wholly discretionary' and 'may be denied even when the requirements of Rule 24(b)

are satisfied.'"  *Burgum*, 132 F.4th at 923 (quoting *Turner v. Cincinnati Ins. Co.*, 9 F.4th 300, 317

(5th Cir. 2021)).  Only in "extraordinary circumstances" will a district court abuse its discretion in

denying permissive intervention.  *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996)

(en banc) (citation omitted).

7

Parties may not have the right to intervene to litigate every issue in a case. "[R]easonable conditions may be imposed even upon one who intervenes as of right." *Beauregard, Inc. v. Sword Servs. LLC*, 107 F.3d 351, 352–53 (5th Cir. 1997); *see* FED. R. CIV. P. 24 advisory committee note to 1966 amendment ("An intervention of right . . . may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings."). Courts may limit intervening parties to making certain motions or addressing specific issues. *See, e.g.*, *Swoboda v. Manders*, 665 F. App'x 312, 313, 315 (5th Cir. 2016) (per curiam); *Brumfield v. Dodd*, 749 F.3d 339, 341, 346 (5th Cir. 2014); *McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1073 (5th Cir. 1970); *La. State Conf. of Nat'l Ass'n for Advancement of Colored People v. Louisiana*, No. 19-cv-479, 2022 WL 2663850, at *2 (M.D. La. July 11, 2022); *Blue Spike, LLC v. Audible Magic Corp.*, No. 6:15-CV-584, 2016 WL 3870069, at *2 (E.D. Tex. Apr. 18, 2016); *Swann v. City of Dallas*, 172 F.R.D. 211, 213 (N.D. Tex. 1997); *see also In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 872 F.3d 57, 64 (1st Cir. 2017) ("Courts may further restrict intervention to . . . a particular set of issues" (citing *Harris v. Pernsley*, 820 F.2d 592, 599 (3d Cir. 1987)); *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1291 (D.C. Cir. 1980) (similar).

### III.    Analysis

The parties do not contest the Attorney General's motion to intervene for the purpose of arguing about the effect of Senate Bill 9 on the consent decree. (Docket Entry No. 751 at 22–23; *see generally* Docket Entry No. 748 (not addressing Senate Bill 9 in particular)). The Attorney General moved to intervene two months after the Texas legislature passed Senate Bill 9 and before the law went into effect. This aspect of the Attorney General's motion was "timely" and presents a "defense" that shares "a common question of law or fact" with "the main action." FED. R. CIV.

P. 24(b)(1)(A).  The court grants the Attorney General's motion to intervene to extent he plans to argue that the consent decree conflicts with Senate Bill 9.

The parties dispute whether the Attorney General may intervene, either as of right and permissively, to argue that the court must abstain under *Younger* and that Senate Bill 6 or Senate Bill 9 moots this case or requires amendment of the consent decree.  (*See generally* Docket Entry Nos. 740, 748, 751, 752, 755, 760, 761).  The court denies the Attorney General's motion to intervene to argue *Younger* abstention but grants the Attorney General's motion to intervene to argue that the consent decree should be vacated or amended based on Senate Bill 6 and Senate Bill 9.

### A.    Intervention as of Right

The Attorney General does not have a right to intervene to argue *Younger* abstention.  But he does have the right to intervene to argue that the case is moot, or that the consent decree must be vacated or changed, based on post-judgment changes in state law.

### 1.    *Younger* Abstention

The Attorney General does not have a right to intervene to raise *Younger* abstention, for two reasons.  First, he has not shown that he has a right to intervene under the Fifth Circuit's four-factor test implementing Rule 24(a)(2).  Second, the Attorney General's motion to intervene to argue *Younger* abstention is futile.  *See Saavedra v. Murphy Oil U.S.A., Inc.*, 930 F.2d 1104, 1109 (5th Cir. 1991); *In re Deepwater Horizon*, 546 F. App'x 502, 504 (5th Cir. 2023) (per curiam).

### i.    Rule 24(a)(2)

The Attorney General moves to intervene as of right to vacate a consent decree that he argues conflicts with Texas law—Senate Bill 6 and Senate Bill 9—governing bail procedures.  As a result, he can establish most of the factors warranting intervention as of right.  "States possess a

legitimate interest in the continued enforcement of their own statutes." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 191 (2022) (cleaned up).  Texas charges its Attorney General with enforcing its laws and defending its interests in litigation.  TEX. CONST. art. IV, § 22; *see In re Fraser*, 75 F. Supp. 2d 572, 584 (E.D. Tex. 1999).  And the current parties in the litigation do not adequately represent the Attorney General's interests because they would prefer the consent decree, as opposed to the allegedly conflicting state law, to continue to govern Harris County's bail practices.  *See Berger*, 597 U.S. at 197 (explaining that under Rule 24(a)(2), federal courts must respect the contrasting interests of different elected officials who may take opposing views on the constitutionality and enforcement of state laws); *cf. Haspel & Davis*, 493 F.3d at 579 (concluding that local officials adequately represented state officials' interests because they had the "same ultimate objective" of enforcing state law in the case).

The Attorney General cannot, however, establish a right to intervene based on *Younger* abstention because he asserts this basis for intervention too late.  Whether a motion to intervene is timely depends on four factors:

> (1) The length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; (3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

*Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–66 (5th Cir. 1977)).  "[A]bsolute measures of timeliness should be ignored" because the "analysis is contextual."  *Id.*  The timeliness requirement serves to "guard against prejudicing the original parties by the failure to apply sooner."  *Id.* (citing *McDonald*, 430 F.2d at 1074).  All these factors support finding that the Attorney General's motion to intervene is untimely.

The Attorney General moved to intervene almost seven years after he "became aware that [his] interests would no longer be protected by the original parties." *Sierra Club*, 18 F.3d at 1206 (5th Cir. 1994) (citing *Stallworth*, 558 F.2d at 264). In November 2018, the parties started negotiating a potential consent decree. (Docket Entry Nos. 529, 532, 537). Around the same time, the County Judges abandoned their appeal of the revised preliminary injunction. (Docket Entry No. 551). The Attorney General was fully aware of the issues and interests in the case; he filed amicus briefs in this court and in the Fifth Circuit on appeal. The Attorney General knew that the County Judges had argued *Younger* abstention in the district court and on appeal. However, he did not move to intervene to argue *Younger* abstention when the defendants declined to seek additional review after the Fifth Circuit ruled on this court's first preliminary-injunction order. The Attorney General did not move to intervene during the settlement negotiations or after the parties had filed a proposed consent decree with this court. Nor did he appeal this court's approval of the consent decree. Although the Attorney General saw the defendants abandon their position that this court should have abstained under *Younger* and that the plaintiffs should not succeed on the merits of their claim, he chose not to intervene, either in this court or in the appeal. In short, the Attorney General took no steps to challenge as a party the entry of the consent decree or its implementation during the past six-and-a-half years.

This court has not found a case in which a litigant so tardy has intervened as of right, especially when the motion to intervene is for the purpose of re-raising issues that were thoroughly litigated and then settled by the parties. The Attorney General has not cited such a case. The Fifth Circuit has held repeatedly that even much shorter delays are untimely. In one case, the Fifth Circuit held that a litigant's motion to intervene was untimely when it had "waited nearly 15 weeks after [a] district court entered [a] consent decree" and when the possibility of settlement "was well-

publicized for more than six months before the consent decree was entered." *United States v. Covington Cnty. Sch. Dist.*, 499 F.3d 464, 466 (5th Cir. 2007) (per curiam).  In another case, the Fifth Circuit held that the movants' effort to intervene was untimely because they had "waited 18 months" after learning that the parties in the case would not protect their interests. *Rotstain v. Mendez*, 986 F.3d 931, 938 (5th Cir. 2021).  The trend in Fifth Circuit case law is that a movant timely intervenes when it seeks to do so within several months of learning that the parties are no longer protecting its interests but that, after close to a year, a motion to intervene will likely be untimely.  *Compare Sierra Club*, 18 F.3d at 1206 (a delay of three weeks was timely); *Edwards*, 78 F.3d at 1000 (delays of 37 and 47 days was timely); *John Doe No. 1 v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001) (a delay of one month was timely), *with United States v. Allegheny-Ludlum Industries, Inc.*, 553 F.2d 451, 453 (5th Cir. 1977) (per curiam) (a delay of seven and a half months was untimely); *Engra, Inc. v. Gabel*, 958 F.2d 643, 645 (5th Cir. 1992) (per curiam) (a delay of eight months was untimely); *United States v. U.S. Steel Corp.*, 548 F.2d 1232, 1235 (5th Cir. 1977) (a delay of almost a year was untimely); *Corley v. Jackson Police Dep't*, 755 F.2d 1207, 1210 (5th Cir. 1985) (a delay of two years was untimely); *Smith v. Missouri Pac. R. Co.*, 615 F.2d 683, 684–85 (5th Cir. 1980) (same); *United States v. Louisiana*, 669 F.2d 314, 315 (5th Cir. 1982) (a delay of four years was untimely); *Jones v. Caddo Par. Sch. Bd.*, 735 F.2d 923, 925–27, 932–33, 932 n.11 (5th Cir. 1984) (en banc) (a delay of seven years was untimely).

This trend is consistent across the courts of appeals.  The Eleventh Circuit upheld a district court's determination that a movant's request to intervene one day before the court approved a consent decree was untimely, because the movant had known that the litigants did not represent its interests for over three years.  *Hollywood Cmty. Synagogue, Inc. v. City of Hollywood*, 254 F. App'x 769, 770–72 (11th Cir. 2007) (per curiam); *see also Reeves v. Harrell (Reeves II)*, 791 F.2d

1481, 1484 (11th Cir. 1986) (a delay of "two and a half years after the entry of the consent decree" was untimely); *United States v. Jefferson County*, 720 F.2d 1511, 1514–19 (11th Cir. 1983) (a delay of five years, until after the hearing on the proposed consent decree, was untimely); *cf. Howard v. McLucas*, 782 F.2d 956, 960 (11th Cir. 1986) (a delay of six weeks was timely).  The Ninth Circuit upheld a district court's denial of a motion to intervene when the movants sought to intervene about a year and a half after learning that the parties began "negotiations" that "might [have] produce[d] a settlement decree to their detriment."  *Cal. Dep't of Toxic Substances Control v. Com. Realty Projs., Inc.*, 309 F.3d 1113, 1120 (9th Cir. 2002); *EEOC v. Activision Blizzard, Inc.*, No. 22-55515, 2023 WL 8908774, at *1–2 (9th Cir. Dec. 27, 2023) (mem.) (a delay of five months was untimely).  The Seventh Circuit held that a motion to intervene filed towards the end of the parties' negotiations on a consent decree, and nine months after the movant learned of the lawsuit, was untimely.  *Illinois v. City of Chicago*, 912 F.3d 979, 983–86 (7th Cir. 2019).  And the Third Circuit held that motions to intervene were untimely when they were filed twenty and twenty-two months after the entry of a consent decree.  *Delaware Valley Citizens' Council for Clean Air v. Pennsylvania*, 674 F.2d 970, 972, 974 (3d Cir. 1982).

Courts do not consider motions to intervene timely when they are filed months or years after the publicized start of negotiations over a consent decree or the entry of a consent decree. *See, e.g., Alaniz v. Tillie Lewis Foods*, 572 F.2d 657, 658–59 (9th Cir. 1978) (per curiam); *Mich. Assoc. for Retarded Citizens v. Smith*, 657 F.2d 102, 105 (6th Cir. 1981); *Stotts v. Memphis Fire Dep't.*, 679 F.2d 579, 585 & n.5 (6th Cir. 1982); *Orange County v. Air Cal.*, 799 F.2d 535, 538 (9th Cir. 1986); *In re Dep't of Energy Stripper Well Exemption Litig.*, 864 F.2d 796, 801 (Temp. Emer. Ct. App. 1988); *City of Bloomington v. Westinghouse Elec. Corp.*, 824 F.2d 531, 535–37 (7th Cir. 1987); *Farmland Dairies v. Comm'r of New York State Dep't of Agric. & Markets*, 847

F.2d 1038, 1044–45 (2d Cir. 1988); *United States v. City of Chicago*, 908 F.2d 197, 199–200 (7th Cir. 1990); *United States v. City of Chicago*, 897 F.2d 243, 244 (7th Cir. 1990); *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 71 (2d Cir. 1994); *Afro-Am. Police Ass'n v. City of Memphis*, 61 F.3d 903 (6th Cir. 1995) (per curiam); *United States v. BASF-Inmont Corp.*, 52 F.3d 326 (6th Cir. 1995) (per curiam); *see also Nat'l Wildlife Fed'n v. Gorsuch*, 744 F.2d 963, 969–70 (3d Cir. 1984). The Attorney General waited so long to move to intervene that granting his motion could amount to an abuse of discretion. *See Reeves v. Wilkes (Reeves I)*, 754 F.2d 965, 970, 972 (11th Cir. 1985) (concluding that the district court abused its discretion by permitting intervention "two years and eight months after entry of the consent decree").

The Attorney General responds that he did not know the parties would not adequately protect his interests until the parties did not move to vacate the consent decree after *Daves II*. (Docket Entry No. 740-1 at 6–7). Neither the record nor the case law supports the Attorney General's position. The defendants began working to settle this case in 2018. They abandoned the arguments that the Attorney General now belatedly seeks to assert. By the Attorney General's own benchmark—when "the defendants abandoned their duty to defend against this action," (*Id.* at 7)—he is late by almost seven years. There is no basis in the record to find that the Attorney General reasonably thought that the parties adequately represented his interests until the parties did not seek to vacate the consent decree after *Daves II* was decided.

Nor is there case law supporting the proposition that a litigant may delay intervention until it has affirmatively "realized that [its] interests were not being adequately represented." (Docket Entry No. 752 at 11). In *Covington County School District*, the Fifth Circuit held that a party knew its interests were not being represented when the "possibility" that the parties "might settle was well-publicized." 499 F.3d at 466. The panel rejected the movants' arguments that "they believed

the United States would be pressing for their position," explaining that there was "no evidence that the United States gave them any explicit assurances that it would not compromise to settle the case." *Id.* The facts of this case are indistinguishable. The possibility of settlement in this case was apparent in November 2018, when the parties informed the court that they were beginning negotiations. (Docket Entry Nos. 529, 532, 537). The Attorney General has offered no evidence that any party assured him that they would preserve or not compromise certain issues, including the issue of *Younger* abstention. To the contrary, the parties' settlement, which was filed on the publicly available court docket, (Docket Entry Nos. 615, 617), clearly compromised the *Younger* arguments that the Attorney General now asserts. The defendants did not "induce[]" the Attorney General to refrain from intervening. *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1182 (3d Cir. 1994).

Courts often start the intervention clock when movants learn that the parties are not likely to adequately represent the movants' interests, even if there is a possibility that the parties will ultimately do so. *See Covington Cnty.*, 499 F.3d at 466 (relying on the fact that the "possibility" that the parties "might settle was well-publicized"); *Hollywood Cmty. Synagogue*, 254 F. App'x at 771 (explaining that "the Appellants were aware that the City may not represent their interests as early as February 2003"); *Air Cal.*, 799 F.2d at 538 ("Irvine should have realized that the litigation might be resolved by negotiated settlement."); *Com. Realty Projs.*, 309 F.3d at 1120 ("While Cities were not certain that the consent decree would be adverse to their interests, they had reason to know that negotiations might produce a settlement decree to their detriment."); *Illinois*, 912 F.3d at 985 ("[W]e measure from when the applicant has reason to know its interests *might* be adversely affected, not from when it knows for certain that they will be."); *see also Gabel*, 958 F.2d at 645 (referring to a proposed settlement when assessing timeliness); *U.S. Steel Corp.*, 548 F.2d at 1235

(same); *Corley*, 755 F.2d at 1210 (same); *Pitney Bowes*, 25 F.3d at 71 (same). "[T]he mere fact that the precise outcome of the litigation was unexpected does not restart the timeliness analysis." *Illinois*, 912 F.3d at 985 (citing *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 950 (7th Cir. 2000)).

The courts' consistent approach to determining timeliness is based on good reason and common sense. The approach requires parties to "intervene[] sooner to protect themselves from" the possibility that "negotiations . . . result in a consent decree" that harms their interests, appropriately placing the "risks of waiting" on the litigant that sits on its rights. *Com. Realty Projs.*, 309 F.3d at 1120; *see Air Cal.*, 799 F.2d at 538 ("[T]hey should have known the risks of waiting."). Litigants should intervene after learning about settlement negotiations toward a potential consent decree to ensure "a seat at the settlement table" and "a voice in the litigation." *Babbitt*, 214 F.3d at 950; *see Alaniz*, 572 F.2d at 659 ("To protect their interests, appellants should have joined the negotiations before the suit was settled."). "Had" the Attorney General "intervened when []he should have, []he could have contributed to the settlement process, and quite possibly an agreement—surely different, and not necessarily only in ways favorable to [his] view, than the present one—could have been reached." *Jones*, 735 F.2d at 935. Had the Attorney General timely intervened, there would have been "no consent decree without [his] agreement," requiring continued litigation that could have resulted in his favor. *Id.* The Attorney General "could have moved to intervene" before during settlement negotiations, "but chose to wait until after . . . a long complex negotiation process had taken place." *Jefferson County*, 720 F.2d at 1517; *see Stotts*, 679 F.2d at 584 n.3 (criticizing the movants' "wait-and-see" approach). The Attorney General cannot, through a belated motion to intervene, try to undo litigation decisions made more than half a decade ago.

Permitting the Attorney General to intervene now, years after the consent decree and entry of judgment, to argue issues that could have and should have been raised and litigated before the case was resolved, would substantially prejudice the parties.  The Fifth Circuit has cautioned that attempts "to intervene after final judgment" are "ordinarily looked upon with a jaundiced eye." *McDonald*, 430 F.2d at 1072.  "Interventions after judgment have a strong tendency to prejudice existing parties to the litigation or to interfere substantially with the orderly process of the court." *U.S. Steel Corp.*, 548 F.2d at 1235.

Interventions around or after the entry of a consent decree amplify these concerns.  Consent decrees are "reached after careful consideration by the parties involved; they do not wish, and should not be forced, to defend the decree in [motions] brought long after the decree was signed." *Hefner v. New Orleans Pub. Serv., Inc.*, 605 F.2d 893, 898 (5th Cir. 1979).  Intervention "for the purpose of challenging [a] consent agreement" prejudices the parties "by jeopardizing months of negotiations, causing substantial litigation expenses, and even more substantial expenses of implementation."  *Allegheny-Ludlum*, 553 F.2d at 453.  An intervention to undo the parties' "bargain," *U.S. Steel Corp.*, 548 F.2d at 1235, means that "[a] negotiated settlement of a difficult problem is put at risk, to the disadvantage of the named parties, the class," and, here, Harris County, *Corley*, 755 F.2d at 1210.  "To allow a tardy intervenor to block the settlement agreement after all that effort would result in the parties' combined efforts being wasted completely." *Babbitt*, 214 F.3d at 950; *accord Delaware Valley*, 674 F.2d at 975; *Jones*, 735 F.2d at 935; *Air Cal.*, 799 F.2d at 538; *Stripper Well Exemption*, 864 F.2d at 801; *City of Bloomington*, 824 F.2d at 536; *Farmland Dairies*, 847 F.2d at 1044–45; *BASF-Inmont Corp.*, 52 F.3d 326, at *3; *Hollywood Cmty. Synagogue*, 254 F. App'x at 771.  Because of this prejudice to the parties, there is a

17

"presumption that a motion to intervene after entry of a decree should be denied except in extraordinary circumstances." *Delaware Valley*, 674 F.2d at 974.

This case does not present extraordinary circumstances that would justify granting intervention years after the consent decree was entered. *McDonald* is an instructive comparison. That case involved "an injured employee, his employer's workmen's compensation carrier, a third-party tortfeasor, and lawyers who were never able to reach agreement on how to settle the compensation carrier's subrogation interest." 430 F.2d at 1066. The district court entered judgment that created a fund of $19,100. *Id.* at 1067. The compensation carrier moved to intervene one day later, and the trial court denied the motion as untimely. *Id.* at 1066. The Fifth Circuit reversed. *Id.* The compensation carrier "sought to intervene for the limited purpose of protecting its subrogation interest in a fund which had not yet been distributed," did so immediately after the final judgment, and "did not seek to reopen or relitigate any issue which had previously been determined." *Id.* at 1072. Because the movant accepted the court's previous decisions as the law of the case and sought to protect its interests from then on, the motion at most created a "minor inconvenience" for the court and the parties. *Id.* at 1072–73.

The Attorney General's motion to intervene to argue *Younger* abstention would create a major burden and disruption to the parties, not a "minor inconvenience." The Attorney General seeks to "reopen" and "relitigate" issues that the court "previously . . . determined," *id.* at 1072, and that the Attorney General could have litigated had he intervened at that time, *see Jefferson County*, 720 F.2d at 1517; *Jones*, 735 F.2d at 935. The Attorney General's bare assertions that the plaintiffs complain only of the "prejudice they may suffer if intervention is allow[ed]" and that they "fail to show any prejudice resulting from the Attorney General's delay" lack both factual

and legal support. (Docket Entry No. 752 at 12; *see* Docket Entry No. 740-1 at 7).[4] The prejudice that comes from relitigating issues the parties previously explored through discovery, presented by cross-motions and briefs, negotiated, and ultimately settled supports applying the presumption against intervention to challenge a consent decree after it is entered. *Delaware Valley*, 674 F.2d at 974; *accord U.S. Steel Corp.*, 548 F.2d at 1235; *Corley*, 755 F.2d at 1210; *Hefner*, 605 F.2d at 898; *Jones*, 735 F.2d at 935; *see also Jones v. Caddo Par. Sch. Bd.*, 204 F.R.D. 97, 100 (W.D. La. 2001). That prejudice is exponentially increased by an intervention years after the consent decree has been entered and implemented.

The Attorney General does not offer sufficient arguments on the remaining timeliness factors to outweigh the prejudice the parties will suffer if the court overlooks his long delay and grants his belated motion to intervene.

The Attorney General argues in reply that if intervention is denied, he will be prejudiced by being unable to enforce state law. (Docket Entry No. 752 at 7–8). This argument is unpersuasive. The Attorney General does not identify any prejudice if he is unable to intervene to argue *Younger* abstention. "Litigation will have no end if every time the parties resolve amicably (or drop) a point of contention, someone else intervenes to keep the ball in the air." *City of Chicago*, 897 F.2d at 244.

 "Congress has prescribed a primary route, by appeal as of right and certiorari, through which parties may seek relief from the legal consequences of judicial judgments." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 27 (1994). As a result, a movant suffers prejudice

---

[4] The Attorney General's argument on this issue is cursory. His opening brief provides two conclusory sentences on the prejudice prong. (Docket Entry No. 740-1 at 7). His reply brief includes two citations to the relevant standard, but it does not include an explanation of how that standard applies to this case or what facts in the record support his position under that standard. (Docket Entry No. 752 at 12). "[A]rguments asserted without citation to authority or left undeveloped are waived." *Wilson v. City of Mission*, No. 7:18-CV-00399, 2020 WL 2079359, at *10 (S.D. Tex. Apr. 29, 2020).

if intervention is denied and he loses "the ability to participate in" the litigation "or to appeal the ruling" of the court. *All. for Hippocratic Med. v. FDA*, No. 2:22-cv-223, 2024 WL 1260639, at *3 (N.D. Tex. Jan. 12, 2024) (cleaned up) (first citing *Glickman*, 256 F.3d at 379; and then citing *Edwards*, 78 F.3d at 1002–03). The Attorney General could have argued *Younger* abstention before the parties settled this case, or he could have intervened to appeal the entry of the consent decree. *Cf. In re Nat'l Prescription Opiate Litig.*, 976 F.3d 664, 670 (6th Cir. 2020) (holding that non-settling defendants have standing to appeal class-certification rulings that harm their interests). Because the Attorney General delayed so long to intervene, any prejudice he suffers is "self-inflicted and, therefore, is not actually the prejudice from which courts should protect" him. *Green v. Serv. Corp. Int'l*, No. H-06-cv-833, 2006 WL 8441295, at *2 (S.D. Tex. June 30, 2006).

A belated intervention to relitigate issues already settled and decided, after a direct appeal, is not meaningfully different from a collateral attack on a court's final judgment seeking "reconsideration of the merits of the claim[s] or issue[s]." *Epstein v. MCA, Inc. (Epstein III)*, 179 F.3d 641, 649 (9th Cir. 1999) (citing *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 483–85 (1982)); *cf. In re Deepwater Horizon*, 819 F.3d 190, 198 (5th Cir. 2016) ("[A] class member who was not truly absent and who received the required notice [is] precluded from challenging the prior class action judgment."). Denying the Attorney General's motion to intervene does not prejudice him; it places him in the position of any litigant who failed to assert his or her rights in the first instance. At a minimum, such "a preventable hardship weighs less heavily in the balance of harms," *R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 9 (1st Cir. 2009), that courts must assess in deciding whether a party timely moved to intervene. Crediting as dispositive the prejudice that the Attorney General alleges would depart from the robust precedent affirming

district courts' denials of motions to intervene based on movants' substantial delay and the time and effort that the parties invested in agreeing to a consent decree.

Finally, as noted, there are no unusual or exceptional circumstances that justify departing from the precedents denying similar motions to intervene. Courts have excused substantial delays in intervention when nonparties were deceived or induced into not intervening earlier. *See, e.g.*, *Stallworth*, 558 F.2d at 266–67; *Alcan Aluminum, Inc.*, 25 F.3d at 1182. Courts may also permit post-judgment intervention when parties so move for limited purposes that do not seek to relitigate issues already decided. *McDonald*, 430 F.2d at 1072–73. Neither of those circumstances is present with respect to the Attorney General's *Younger* arguments. The Attorney General argues instead that this case is unusual because the Fifth Circuit ruled in *Daves II* that *Younger* abstention was appropriate in that case. (Docket Entry No. 740-1 at 7; Docket Entry No. 752 at 11–12). *Daves II* does not justify the Attorney General's belated attempt to intervene.

"A consent decree must of course be modified if, as it later turns out, one or more of the obligations placed upon the parties has become impermissible under federal law." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 388 (1992). Or "modification of a consent decree may be warranted when the statutory or decisional law has changed to make legal what the decree was designed to prevent." *Id.* Neither occurred here. As the plaintiffs explain, "*Daves II* did not make it legal to detain poor people pretrial solely because they cannot pay arbitrary amounts of cash." (Docket Entry No. 755 at 2). The Fifth Circuit's *Younger* ruling did not change the fact that Texas's bail procedures did not "sufficiently protect detainees from magistrates imposing bail as an 'instrument of oppression.'" *ODonnell I*, 892 F.3d at 159. Nor did it change the fact that "wealthy arrestee[s]" were "less likely to plead guilty, more likely to receive a shorter sentence or be acquitted, and less likely to bear the social costs of incarceration . . . simply because" they have

more money than their poor counterparts. *Id.* at 163. Even after *Daves II*, the consent decree does not "order States or local governments, over their objection, to undertake a course of conduct not tailored to curing a constitutional violation that has been adjudicated." *Rufo*, 502 U.S. at 389.

The holding in *Daves II* on *Younger* rested on the conclusion that detainees have adequate opportunities to raise their constitutional claims in state court, making federal equitable relief unnecessary and shifting the balance of state-and-federal interests toward abstention. *See* 64 F.4th at 624–33. This is "a decision that clarifies the law" and that does "not, in and of itself, provide a basis for modifying a decree." *Rufo*, 502 U.S. at 390. Parties may "settle" a "dispute over the proper remedy for the constitutional violations that had been found by undertaking to do more than the Constitution itself requires" or "more than what a court would have ordered absent the settlement." *Id.* at 389. The Fifth Circuit's determination that *Younger* abstention is appropriate in some bail litigation, and that "errors can be rectified according to state law," as opposed to "virtually immediately," *Daves II*, 64 F.4th at 633, merely clarified that the consent decree accomplishes "more than the Constitution itself requires," *Rufo*, 502 U.S. at 389. Abstention, as discussed in more detail below, does not immediately or necessarily follow from a conclusion that *Younger*'s three-part test is met. *See Texas Ass'n of Bus. v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004). Nothing prevents parties from waiving *Younger* abstention. *Id. Daves II* did not hold that this consent decree does something the "Federal Constitution forb[ids]," *Rufo*, 502 U.S. at 389, or targets policies that were "legal" all along, *id.* at 388.

As a result, the *Daves II* holding on *Younger* does not warrant vacating or amending the consent decree. "To hold that a clarification in the law automatically opens the door for relitigation of the merits of every affected consent decree would undermine the finality of such agreements and could serve as a disincentive to negotiation of settlements in institutional reform litigation."

*Id.* at 389. *Rufo*'s statement compels denying the Attorney General's motion to intervene. His motion could potentially be justified in this circumstance if "the parties had based their agreement on a misunderstanding of the governing law." *Id.* at 390. But this is not such a case. Even after the Fifth Circuit held that *Younger* abstention was likely unnecessary, *ODonnell I*, 892 F.3d at 156–57, the County Judges continued to argue that *Younger* abstention applied because the Fifth Circuit's preliminary *Younger* ruling was inconsistent with the summary-judgment facts and Supreme Court precedent, (Docket Entry No. 432 at 15–16).[5] The consent decree was a compromise to "save . . . the time, expense, and inevitable risk of litigation." *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971). Although the consent decree may have required the parties to "do more than the Constitution itself requires" and "more than what a court would have ordered absent the settlement," both are acceptable aspects of a consent decree. *Rufo*, 502 U.S. at 389. *Daves II* holding on *Younger* is not an unusual or exceptional circumstance that warrants modifying the consent decree, let alone intervention to vacate it. *See Gonzalez v. Crosby*, 545 U.S. 524, 536–38 (2005) (concluding that a post-judgment change in law was "hardly extraordinary" and did not justify relief from a final judgment, especially because the movant lacked "diligence in pursuing review of the" relevant legal "issue").

It is worth highlighting—and an independent reason for concluding that the exceptional-circumstances factor weighs against granting the Attorney General's motion—that *Rufo* is a step removed from the posture of this case. *Rufo* concerned "a motion . . . to modify a consent decree," not a belated motion to intervene to vacate it. 502 U.S. at 371–72. "Had" the Attorney General "intervened when []he should have, []he could have contributed to the settlement process, and

---

[5] Unfavorable precedent does not excuse the Attorney General's delay in intervening. *See Thompson v. Lynaugh*, 821 F.2d 1054, 1063 (5th Cir. 1987) ("Futility of objection, even in the face of established legal precedent, will not constitute good cause to excuse a procedural default.").

quite possibly" secured "an agreement," *Jones*, 735 F.2d at 935, that would have preserved his ability to modify the consent decree based on later developments in governing law, *see, e.g.*, *Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1266 (10th Cir. 2002) (permitting *Younger* arguments after the entry of a consent decree because the agreement specifically allowed the defendants to raise "any . . . defense" after the expiration of a "one-year 'cease fire'" during which "no defenses could be raised"). The current consent decree, "reached after careful consideration by the parties involved," *Hefner*, 605 F.2d at 898, "based their agreement" not "on a misunderstanding of the governing law," *Rufo*, 502 U.S. at 390, but on an appropriate recognition of the governing law at the time, the chance that the law could change on final appellate review, (*see* Docket Entry No. 432 at 16), and the desire to "save . . . the time, expense, and inevitable risk of litigation," *Armour & Co.*, 402 U.S. at 681. *Daves II* does not make this consent decree different from other decrees that resolved thorny issues of constitutional law and federal-court authority. It, and *Rufo*, instead underscore the prejudice to the parties if the court allows the Attorney General to intervene now to argue *Younger* abstention, when he could and should have done so when the case was litigated and before it settled.

Based on the full record, the parties' arguments, and the applicable law, the court concludes that the Attorney General does not have a right to intervene to argue *Younger* abstention because his motion is untimely by many years. He knew that the parties were not protecting his interests almost seven years ago. His intervention now will substantially prejudice the parties by upending a consent decree that has governed the parties' conduct for six years and that, according to the independent monitors, is working very well. The Attorney General could have intervened to argue *Younger* abstention or other points before the consent decree was negotiated and entered, but he

24

chose not to do so.  Allowing him to intervene to do so now would significantly prejudice the parties and, indeed, the public.

### ii.    Futility

The Attorney General does not have the right to intervene to argue *Younger* abstention for the independent reason that his arguments would be futile.  *See Saavedra*, 930 F.2d at 1109; *In re Deepwater Horizon*, 546 F. App'x at 504.  First, as discussed, the *Daves II* decision on *Younger* is not a sufficient justification to modify the consent decree.  Second, the parties waived *Younger* abstention, and, as an intervenor, the Attorney General would be bound by that waiver.  Third, the Attorney General waived *Younger* abstention himself by failing to intervene to argue it until long after the preliminary injunction, consent decree, and appellate review.

Article III extends the judicial power "to all cases, in law and equity, arising under th[e] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority."  U.S. CONST. art. III, § 2.  Congress then vested "district courts" with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  When the Constitution and Congress grant federal courts jurisdiction over a case, those courts have a "virtually unflagging obligation . . . to exercise th[at] jurisdiction." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *see Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821) (Marshall, C.J.) ("We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.").  Abstention doctrines are limited "federalism-flavored carveouts" to that obligation, created "[o]ut of respect for the legitimate interest of the state, and to avoid needless friction" with their officials.  *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1084–85 (5th Cir. 2023).

*Younger* is one such doctrine. "*Younger* requires federal court abstention when three criteria are met: (1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges." *Daves II*, 64 F.4th at 625 (cleaned up). Its features follow from traditional "court noninterference in equity with state proceedings" and notions of "comity" and federalism that shape the exercise of the federal courts' judicial power. *Id.*

Yet abstention doctrines, including *Younger*, have their own exceptions, when the balance of federal-and-state interests shifts back towards the federal courts exercising their jurisdiction. "[C]ourts may disregard the *Younger* doctrine when: (1) the state court proceeding was brought in bad faith or with the purpose of harassing the federal plaintiff, (2) the [challenged] state statute is 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it,' or (3) application of the doctrine was waived." *Earle*, 388 F.3d at 519 (quoting *Younger*, 401 U.S. at 49).

The third exception is at issue on this motion. Because "abstention under *Younger* is not jurisdictional"—it is, after all, an exception to jurisdiction, rather than a jurisdictional rule itself— "application of the doctrine can be waived." *Daves I*, 22 F.4th at 545. When a "[s]tate voluntarily chooses to submit to a federal forum, principles of comity do not demand that the federal court force the case back into the State's own system." *Ohio Bureau of Emp. Servs. v. Hodory*, 431 U.S. 471, 480 (1977). State defendants may choose, when "faced with the prospect of lengthy administrative appeals followed by equally protracted state judicial proceedings," "to submit . . . constitutional issue[s]" to federal courts "for immediate resolution." *Id.* 479–80; *accord Brown v.*

26

*Hotel Employees*, 468 U.S. 491, 500 n.9 (1984); *Sosna v. Iowa*, 419 U.S. 393, 396 n.3 (1975). Litigants waive *Younger* abstention by "explicitly" seeking a court ruling on the merits of a constitutional claim. *RTM Media, L.L.C. v. City of Houston*, 584 F.3d 220, 229 n.15 (5th Cir. 2009) (quoting *O'Neill v. Coughlan*, 511 F.3d 638, 642 (6th Cir. 2008)).

It is less clear whether, or when, parties waive *Younger* by failing to timely raise it. Arguments not timely presented are usually waived. *Dolgencorp, Inc. v. Miss. Band of Choctaw Indians*, 746 F.3d 167, 177 (5th Cir. 2014). This rule does not cleanly apply to *Younger* abstention. Mere failure to raise *Younger* before the district court does not waive the issue. *See, e.g.*, *Boardman v. Estelle*, 957 F.2d 1523, 1535 (9th Cir. 1992) (per curiam) (denial of petition of reh'g en banc); *O'Neill*, 511 F.3d at 641–43. The Supreme Court has recognized that, "in each of the[] cases" finding *Younger* abstention waived, "the State expressly urged" the Supreme Court "or the District Court to proceed to an adjudication of the constitutional merits." *Ohio C.R. Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 626 (1986). "[I]n both *Sosna* and *Hodory*, the Supreme Court raised *Younger* abstention *sua sponte* well after the merits of the dispute had been argued and decided, and no suggestion was made that *Younger* had been waived because it was not raised earlier in the proceedings." *O'Neill*, 511 F.3d at 642. A state litigant does not waive *Younger* by failing to raise it in the district court or on direct appeal.

The Attorney General seizes on this precedent to argue that he did not waive *Younger* abstention. (Docket Entry No. 760). In his view, he did not expressly urge this court to adjudicate the constitutional merits, *Dayton Christian*, 477 U.S. at 626, and *Younger* may not be waived "through failure to raise the issue," *Boardman*, 957 F.2d at 1535. (Docket Entry No. 760 at 3–4). The Attorney General's arguments are not persuasive. Waiver as applied to *Younger* is no doubt forgiving. But the facts of this case are far beyond what the Supreme Court cases have permitted.

To hold that waiver did not occur in this case, after this court entered a final judgment and the time to appeal that judgment has passed, would in effect rule that no party may ever waive *Younger*.

The record does not support the Attorney General's arguments. First, the parties "explicitly" requested this court to rule on the merits of the plaintiffs' claims. *RTM Media*, 584 F.3d at 229 n.15 (quoting *O'Neill*, 511 F.3d at 642). The consent decree states that it was "to resolve Plaintiffs' claims and remedy the constitutional violations." (Docket Entry No. 708 ¶ 2). To approve the class-settlement effect of the decree, this court had to find "that it is fair, reasonable, and adequate," taking into account whether the "relief provided for the class is adequate" given the viability of their claims. FED. R. CIV. P. 23(e)(2)(C). This court weighed the "probability of the plaintiffs' success on the merits" as one of "the most important" factors in its decision to approve the consent decree. *ODonnell v. Harris County*, No. H-16-cv-1414, 2019 WL 6219933, at *12 (S.D. Tex. Nov. 21, 2019). This court found that the settlement "was the product of rigorous, hard-fought negotiations conducted at arm's-length." *Id.* at *10. And this court rejected federalism objections to the approval of the consent decree because the decree was "a voluntary agreement" that duly elected officials accepted. *Id.* at *18. The consent decree was a valid exercise of the court's judicial power because it was based on state officials' voluntary agreement, the plaintiffs' constitutional claims, and this court's determination that the agreement met the legal requirements and advanced the objectives of the law on which the plaintiffs' complaint was based. *See id.* at *14 (explaining that consent decrees must "spring from, and serve to resolve, a dispute within the court's subject-matter jurisdiction; must come within the general scope of the case made by the pleadings; and must further the objectives of the law upon which the complaint was based" (quoting *Smith v. Sch. Bd. of Concordia Par.*, 906 F.3d 327, 335 (5th Cir. 2018)). This court

approved the consent decree because the parties, including the defendants, "expressly urged" it "to proceed to an adjudication of the constitutional merits." *Dayton Christian*, 477 U.S. at 626.

By agreeing to the consent decree, the defendants waived *Younger* abstention. *Chisom v. Jindal*, 890 F. Supp. 2d 696, 721 (E.D. La. 2012) (citing *Felder v. Estelle*, 693 F.2d 549, 553 (5th Cir. 1982)); *Se. Pa. Transp. Auth. v. Pa. Pub. Util. Comm'n*, 210 F. Supp. 2d 689, 706–07 (E.D. Pa. 2002), *aff'd sub nom. Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n*, 342 F.3d 242 (3d Cir. 2003); *see Duran v. Carruthers*, 678 F. Supp. 839, 849 & n.16 (D.N.M. 1988) (explaining that an agreement to a consent decree waives comity-based objections to its equitable remedies), *aff'd*, 885 F.2d 1485 (10th Cir. 1989); *Off. of Child Advoc. v. Lindgren*, 296 F. Supp. 2d 178, 193–94 (D.R.I. 2004) (same); *see also Armour & Co.*, 402 U.S. at 681 (by agreeing to a consent decree, "[t]he parties waive their right to litigate the issues involved in the case"); *cf. Ingram*, 275 F.3d at 1266 (permitting *Younger* arguments after the entry of a consent decree because the agreement preserved them).

The parties' waiver of *Younger* abstention binds the Attorney General. An intervenor "has no right to relitigate issues already decided," *Sierra Club*, 18 F.3d at 1205 n.3, because he "must accept the proceedings as he finds them," *In re Geisser*, 554 F.2d 698, 705 n.6 (5th Cir. 1977); *see Arizona v. California*, 460 U.S. 605, 615 (1983) (explaining that "permission to intervene does not carry with it the right to relitigate matters already determined in the case"). Intervenors "stand in [the parties'] shoes." *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012). When "the state voluntarily intervene[s]," it takes "the case as it f[inds] it," becomes "a party for all intents and purposes as though an original party," and is "bound by the record at that time." *Kansas ex rel. Beck v. Occidental Life Ins. Co.*, 95 F.2d 935, 936 (10th Cir. 1938) (citing *French v. Gapen*, 105 U.S. (15 Otto) 509, 523 (1881)). The parties already submitted the constitutional issues to the

court for resolution and waived *Younger* abstention.  As a late intervenor, the Attorney General could not undo their decision.

Second, independent of the parties' waiver, the Attorney General waived *Younger* abstention himself.  Courts have held that waiver "is equally applicable where a state defendant by its consistent conduct over an extended period implicitly indicates a willingness to submit to a federal forum."  *Norton v. Town of Islip*, 239 F. Supp. 2d 264, 275 (E.D.N.Y.), *aff'd*, 77 F. App'x 56 (2d Cir. 2003).  In *Norton*, the court found that the Town waived *Younger* because it delayed its prosecution of the plaintiff for "five years . . . with the apparent intention of allowing" the court "to first rule on Plaintiff's constitutional claims."  *Id.*  The court held that the Town could not assert *Younger* after failing to raise the issue "in its motion to dismiss, its answer and its motion for summary judgment."  *See id.* at 275–76.  The facts here are even more compelling than in *Norton*; the Attorney General did not intervene when he could have and instead waited seven years (not five) to raise *Younger* abstention.  He allowed the court to first rule on the merits of the constitutional claims, and when the parties settled, and to enter a final judgment on the merits.

The Attorney General argues that *Younger* abstention can only be waived by an explicit request, not implicitly by failing to raise the issue.  (Docket Entry No. 760 at 3).  The case law that supports the Attorney General's position traces back to the Supreme Court's opinions in *Sosna* and *Hodory*.  *See RTM Media, LLC*, 584 F.3d at 229 n.15 (quoting *O'Neill*, 511 F.3d at 642).  In both cases, the Supreme Court raised *Younger sua sponte* on direct appeal.  *Sosna*, 419 U.S. at 396 (a direct appeal from a district-court judgment); *Hodory*, 431 U.S. at 475–76 (same); *see also O'Neill*, 511 F.3d at 642.  In *Dayton Christian*, the Court emphasized that the findings of waiver in *Sosna* and *Hodory* were based on the fact that the parties "expressly urged" federal courts to proceed to the merits.  *Dayton Christian*, 477 U.S. at 626.  By contrast, in *Dayton Christian*, the

defendant had "urged . . . abstention in the District Court" and in the Supreme Court.  *Id.* at 625–26.  The Supreme Court has never held that a party may raise *Younger* abstention after appellate review of a final judgment is complete.

Nor would it make sense for the Supreme Court to so hold.  "Allowing" defendants "to at once fully litigate their case in federal court, but then, at the drop of the *Younger* abstention argument, to abandon the federal forum for a state court favors not the worthy principles of comity, but the principles of forum-shopping and judicial inefficiency."  *Cradle of Liberty Council, Inc. v. City of Philadelphia*, No. 08-cv-2429, 2010 WL 68874, at *4 (E.D. Pa. Jan. 6, 2010).  The Attorney General participated in this case for years as a nonparty before final judgment, including after the the parties abandoned *Younger* abstention.  After the time to appeal a final judgment has passed, failure to raise a *Younger* defense does waive that argument.  *See Walnut Prop., Inc. v. City of Whittier*, 861 F.2d 1102, 1106 (9th Cir. 1988) (holding that "the City cannot now challenge the first decision of the district court on *Younger* grounds when it failed to confront [the Ninth Circuit] with that issue the last two times the case was before [the Ninth Circuit]").  The Attorney General himself waived *Younger* abstention, independent of the fact that the parties already waived the argument by agreeing to the consent decree.

*       *       *

The Attorney General does not have a right to intervene to argue *Younger* abstention.  His motion is untimely, and it would be futile.  The parties waived *Younger* abstention, and the Attorney General would step into their shoes as an intervenor.  The Attorney General also waived *Younger* abstention himself because he allowed the court to enter the consent decree, did not appeal it, and did not raise *Younger* on appeal.

### 2.    Mootness and Conflicting State Law

The Attorney General also moves to intervene to argue that the court must modify the consent decree based on new state legislation that may moot the parties' dispute or otherwise require modification of the decree.  (Docket Entry No. 740-1 at 1).  In *Daves II*, the Fifth Circuit held that the plaintiffs' challenge to Dallas County's bail practices was moot because there was "minimal evidence in the record reflecting what actually happens in Dallas County after the effective date of S.B. 6."  64 F.4th at 634.  The Attorney General argues that this court similarly "lost jurisdiction . . . after the passage of S.B. 6" and S.B. 9, (Docket Entry No. 742-1 at 3), which became effective on December 2, 2021, and September 1, 2025, respectively.  He also argues that the consent decree conflicts with these recently passed state laws, a change in circumstances that he argues warrants vacating the decree.  (*Id.* at 3–5).

The Attorney General has a right to intervene to make these arguments.  He has identified his interest in enforcing state laws that the parties are not seeking to assert.  *See Berger*, 597 U.S. at 197.  The question is whether the Attorney General's motion is timely.  His motion was untimely with respect to *Younger* abstention because the parties extensively litigated that issue before settling this case, and the Attorney General's late motion to intervene would prejudice the parties by disrupting the long-standing resolution of the plaintiffs' constitutional claims.  No such prejudice exists with respect to the Attorney General's arguments about the recently enacted Senate Bill 6 and Senate Bill 9.

The Attorney General's arguments that these bills make this case moot or conflict with the consent decree address post-judgment changes in state law.  Like the arguments of the intervenor in *McDonald*, the Attorney General's arguments are "for the limited purpose of protecting" new state law and do "not seek to reopen or relitigate any issue which had previously been determined."

32

*McDonald*, 430 F.2d at 1072. The Attorney General is "accept[ing] the proceedings as he finds them," *In re Geisser*, 554 F.2d at 705 n.6, and arguing for vacatur or modification on grounds that other parties in the action could also raise. The consent decree allows "any party" to move "to modify" the terms of the consent decree "upon a showing of good cause." (Docket Entry No. 708 ¶ 136). The Federal Rules of Civil Procedure also permit parties to move to alter or amend judgments. FED. R. CIV. P. 60(b). The Attorney General has a right to intervene to move to modify or vacate the consent decree based on Senate Bill 6 and Senate Bill 9.

The parties respond that the Attorney General's motion to intervene is still untimely because the Texas legislature passed Senate Bill 6 over four years ago and the Fifth Circuit issued *Daves II* over two years ago. (Docket Entry No. 748 at 15–16; Docket Entry No. 751 at 17–18, 22). But the timeliness inquiry timeliness "is contextual," and "absolute measures of timeliness should be ignored." *Sierra Club*, 18 F.3d at 1205. "When the result to the existing parties would have been the same regardless of whether the motion to intervene was filed earlier, there is no prejudice." *La. Int'l Marine, L.L.C. v. Drilling Rig Atlas Century*, No. 11-cv-186, 2011 WL 13340708, at *3 (S.D. Tex. Dec. 21, 2011), *report and recommendation adopted*, No. CV C-11-186, 2012 WL 13157133 (S.D. Tex. Mar. 19, 2012). If the prejudice that results "would have occurred whether the delay was one week or one year," it is not a reason to deny a motion to intervene. *Glickman*, 256 F.3d at 378; *see Sierra Club*, 18 F.3d at 1206 ("[P]rejudice must be measured by the delay in seeking intervention."). The parties have not identified prejudice that would result from the Attorney General's delay since Senate Bill 6 was enacted. The parties have proceeded consistently under the consent decree since then, and there have been no developments in the litigation that "might have obtained a different result" had the Attorney General "filed its

33

motion to intervene [based on the recently enacted bills] earlier." *La. Int'l Marine*, 2011 WL 13340708, at *3.

The plaintiffs argue that intervention would be futile because a motion to vacate on mootness grounds under Rule 60(b)(4), (5), or (6), or Rule 12(h)(3), will necessarily fail. (Docket Entry No. 755 at 2–3). Although the plaintiffs appear to argue that the Attorney General's motion to vacate will fail as a matter of law, they explain that at least part of the Attorney General's motion to vacate "requires a fact-intensive inquiry." (Docket Entry No. 755 at 3 n.2). They also note that they "will seek leave to conduct sufficient discovery to ensure the Court has an ample evidentiary record on which to consider the Parties' arguments." (*Id.*). Based on these statements, ruling that the Attorney General's motion to vacate will fail is premature. The court declines to rule that the plaintiffs' motion to vacate for mootness or the consent decree's conflict with state law is futile and will consider the parties' arguments on a full record and with complete briefing of the Attorney General's motion to vacate.

The court grants the Attorney General's motion to intervene to argue that the case is moot or that the consent decree must be vacated or changed based on post-judgment changes in state law.

### B.    Permissive Intervention

The Attorney General moves for permissive intervention under Rule 24(b). The court denies the motion for permissive intervention to argue *Younger* abstention because it is untimely. FED. R. CIV. P. 24(b)(1), (b)(2). The Attorney General knew that his interest in this issue was at risk in 2018, when the parties began negotiations to settle this case. He could have moved to intervene then to argue *Younger* abstention. His belated motion will prejudice the parties by wasting the time and effort expended in agreeing to and implementing the consent decree. His

motion is also futile because both the parties and he waived *Younger* abstention.  Even if the court granted his motion to intervene, his *Younger* abstention argument would fail.

### IV.    Conclusion

The Attorney General's motion to intervene, (Docket Entry No. 740), is granted in part and denied in part.  The Attorney General may intervene to move to vacate or amend the consent decree based on Senate Bill 6 and Senate Bill 9.  The Attorney General may make arguments that these new state laws moot the consent decree or otherwise require its amendment.  The Attorney General may not intervene to raise *Younger* abstention.

The parties must "confer regarding a scheduling order with respect to the motion to vacate," (Docket Entry No. 744 at 1), and propose a scheduling order within seven days of the issuance of this Memorandum and Opinion.

The parties may email Ms. Hassan at Glenda_Hassan@txs.uscourts.gov to set a scheduling conference if one is necessary.

SIGNED on October 30, 2025, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge