## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **MARANDA LYNN ODONNELL,** *et. al.*, **on behalf of themselves and all others similarly situated, Plaintiffs,** | § § § § | |
| **v.** | § § | **CIVIL ACTION NO. 4:16-cv-1414** |
| **HARRIS COUNTY, TEXAS,** *et. al.*, **Defendants.** | § § § | |

### DEFENDANTS', JUDGES PAULA GOODHART'S, JESSICA PADILLA'S, LESLIE JOHNSON'S, AND LINDA GARCIA'S
### <u>MOTION TO VACATE THE CONSENT DECREE</u>

TO THE HONORABLE JUDGE OF THIS COURT:

With the passage of Texas's bail-reform laws and the Fifth Circuit's opinion in *Daves v. Dallas Cty.*, 64 F.4th 616 (5th Cir. 2023) (en banc), Defendants, Judges Paula Goodhart, Jessica Padilla, Leslie Johnson, and Linda Garcia (the "Judges"), file this Motion asking the Court to vacate or, at minimum, modify the Consent Decree to be consistent with State law. Dkt. 708. The Judges request oral argument on this Motion.

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

NATURE AND STAGE OF THE PROCEEDING ........................................................... 2

    I.   Lawsuit Background ............................................................................................. 2

    II.  November 2019 – Consent Decree ..................................................................... 3

    III. The current version of Rule 9 was amended in 2022, without complying with the Consent Decree. ..................................................................................................... 5

    IV. The Texas Legislature enacted S.B. 6 and S.B. 9. ............................................ 5

    V.  The Consent Decree prevents compliance with state law – and the Judges have been threatened with federal contempt if they comply with S.B. 9 .......................... 7

    VI. Attempts to confer with the Monitors have failed. ......................................... 10

    VII. The Attorney General for the State of Texas has intervened and asked the Court to vacate the Consent Decree. ................................................................................. 12

ISSUES TO BE RULED ON ........................................................................................... 13

SUMMARY OF THE ARGUMENT ............................................................................... 13

ARGUMENT .................................................................................................................... 15

    I.   Challenges to Justiciability ............................................................................... 15

        A.  Under Daves II, significant changes to Texas' bail reform laws require that the Consent Decree be vacated for mootness ...................................................... 15

        B.  No Article III case or controversy ........................................................... 15

    II.  Rule 60(b) requires that the Consent Decree be vacated or, at minimum, modified. ...... 17

        A.  Rule 60(b)(5) and (b)(6) ......................................................................... 18

        B.  Rule 60(b)(4) ........................................................................................... 20

        C.  Timeliness ................................................................................................ 20

    III. Younger Abstention ......................................................................................... 20

CONCLUSION AND PRAYER ...................................................................................... 23

# INDEX OF AUTHORITIES

**Cases**

570 U.S. 744 (2013) ...................................................................................................16

*Colbert v. Paul,*
  858 F. App'x 702 (5th Cir. 2021) (per curiam) ....................................................16

*Daves II,*
  64 F.3d ...................................................................................................................20

*Daves v. Dallas Cty.,*
  64 F.4th 616 (5th Cir. 2023) (en banc) ........................................................ i, 13, 15

*Daves v. Dallas Cty.,*
  22 F.4th 522 (5th Cir. 2022) ...............................................................................21, 22

*Drinks, L.L.C. v. Landry's Inc.,*
  No. 23-20506, 2025 U.S. App. LEXIS 20188 (5th Cir. 2025) (per curiam) .............20

*Frazar v. Ladd,*
  457 F.3d 432 (5th Cir. 2006) ................................................................................13

*June Med. Servs. LLC v. Phillips,*
  640 F. Supp. 3d 523 (M.D. La. 2022) ..................................................................18

*Little v. Doguet,*
  71 F.4th 340 (5th Cir. 2023) .................................................................................22

*LULAC v. City of Boerne,*
  659 F.3d 421 (5th Cir. 2011) ................................................................................17

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n,*
  457 U.S. 423 (1982) ...............................................................................................21

*ODonnell v. Goodhart,*
  900 F.3d 220 (5th Cir. 2018) ..............................................................................2, 22

*ODonnell v. Harris Cty,*
  882 F.3d 528 (5th Cir. 2018) ................................................................................21

*ODonnell v. Harris Cty*,
227 F. Supp. 3d 706 (S.D. Tex. Dec. 16, 2016) ........................................................21

*ODonnell v. Harris Cty.*,
892 F.3d 147–64 (5th Cir. 2018) .......................................................2, 21, 22

*Police Ass'n of New Orleans ex rel. Cannatella v. New Orleans*,
100 F.3d 1159 (5th Cir. 1996) ........................................................18

*Pool v. City of Houston*,
87 F.4th 733 (5th Cir. 2023) ........................................................15

*Pool v. City of Houston*,
978 F.3d 307 (5th Cir. 2020) ........................................................13

*Preiser v. Rodriguez*,
411 U.S. 475 (1973) ........................................................21

*Rufo v. Inmates of Suffolk Cty. Jail*,
502 U.S. 367, 380 (1992).......................................................17, 18

*Russell v. Harris Cty., No. H-19-226*,
2023 WL 5658936, 2023 U.S. Dist. LEXIS 154051 (S.D. Tex. 2023) ...............................14, 15

*U.S. v. Un. Shoe Mach. Corp.*,
391 U.S. 244 (1968) ........................................................19

*Younger v. Harris*,
401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971) ........................................................13, 21

**Statutes**

Tex. Code Crim. Proc. Art. 17.028 ........................................................7, 10

Tex. Penal Code § 22.012 ........................................................5, 6

Texas Penal Code § 22.01 ........................................................3, 11

Texas Penal Code § 22.07 ........................................................3, 7

Texas Penal Code § 25.07 ........................................................3

Texas Penal Code § 49.04 ..........................................................................................................3

Texas Penal Code § 49.09 ..........................................................................................................3

5

## INTRODUCTION

Squarely wedged between the terms of a federal court decree[1] and Texas state law, the Judges are compelled under threat of contempt to bring this Motion to determine the proper bail processes to be employed in Harris County.

Plaintiffs' counsel wrote to the Court's Monitors in September to urge them (and, ultimately, this Court) to tell Harris County judicial officers that if there is a conflict between state law and the local rules "**codified in the federal court Consent Decree**", then judges who swear an oath to uphold the law must violate state law, or face contempt. *See* Appendix A (emphasis added). Clearly, Plaintiffs acknowledge and admit that the Decree contradicts state law.

The Decree also completely usurps judicial discretion. Under the Decree, only the charge against the arrestee, and nothing more, is considered before most class A or B misdemeanor defendants are ***automatically*** released. But Texas law requires trained magistrates to conduct an individualized review of the circumstances, criminal history, and other factors before ordering appropriate conditions for release. Under the Decree, almost every type of class A and B misdemeanor charge is treated the same, even though some cases involve serious conduct, some arrestees have extensive criminal histories, or other circumstances may show that a person could pose a danger to the victim or community. The Decree does not even have a mechanism to ask a magistrate to review a case that is subject to automatic release.

Texas' strong public policy is to protect not only the rights of the accused, but **also** to protect victims, law enforcement officers, and communities as a whole. The Consent Decree impairs these goals, and should be vacated or, at minimum, modified to be consistent with Texas law.

---

[1] Not insignificant is the fact that the terms go beyond the relief requested in Plaintiffs. Amended Complaint.

## NATURE AND STAGE OF THE PROCEEDING

### I.    Lawsuit Background

Originally filed on May 19, 2016 as a challenge to bail and other pretrial procedures for misdemeanor arrestees in Harris County (Dkt. 3), the Complaint was amended in September 2016 and included all judges of the 16 Harris County Criminal Courts at Law ("HCCCL") as defendants. Dkt. 54. The FAC asked that County officials be required to inquire and consider whether arrestees have the ability to pay bail. Dkt. 54 at 121-23. The HCCCL judges moved to dismiss on multiple grounds, including *Younger* abstention, and their motion was denied. Dkt. 125. On January 7, 2017, the Court entered an injunction (Dkt. 302), and on June 1, 2018, the Fifth Circuit narrowed the injunction because it "amounts to the outright elimination of secured bail for indigent misdemeanor arrestees." *ODonnell v. Harris Cty.*, 892 F.3d 147, 163–64 (5th Cir. 2018) (*ODonnell I*). The Fifth Circuit also overruled abstention arguments. *Id*. On August 14, 2018, the Fifth Circuit stayed a second injunction order, explaining it was overbroad in that "[s]ecured bail was not to be eliminated for any category of indigent arrestees, no matter how narrow." *ODonnell v. Goodhart*, 900 F.3d 220, 225 (5th Cir. 2018) (*ODonnell II*).

After these rulings from the Fifth Circuit, the judges who had filed the appeal lost the November 2018 election. Once their successors took office in January 2019, they withdrew the appeal and Plaintiffs filed an unopposed motion asking the Fifth Circuit to vacate its August 2018 stay opinion. Plaintiffs argued that the circumstances were "akin" to mootness, since the defendant judges now agreed with the Plaintiffs' revised preliminary injunction, which was "consistent with [the new judges'] policy views." Appendix B at 3 (Appellees' Unopposed Motion to Vacate Stay Opinion, No. 18-20466, filed Jan. 8, 2019 before the Fifth Circuit Court of Appeals).

Not long after, on August 1, 2019, Plaintiffs and Defendants jointly moved for approval of a class settlement agreement to impose bail-setting rules more sweeping than Plaintiffs had requested in the FAC and, in many respects, even broader than those the Fifth Circuit had already determined were too broad. The Court then entered the Consent Decree. Dkts. 617-2, 708.

## II.    November 2019 - Consent Decree

The stated purpose of the Consent Decree—the jurisdictional support for and terms of which are the principal issues here—was to remedy "systemic and longstanding constitutional violations found by the Court" and to "safeguard arrestees' equal protection and due process rights" such as rights to pretrial liberty and against wealth-based detention. Dkt. 617-1 at 11 ¶ 10. In effect, the Consent Decree limits judicial officers' ability to consider the relevant factors and terms of release for most class A and B misdemeanor arrestees. The Consent Decree required County officials to comply with the HCCCL's Local Rule 9, which at the time stated:

> All misdemeanor arrestees must be released on a personal bond or on nonfinancial conditions as soon as practicable after arrest, except those how fall within the following categories, who may be detained for up to 48 hours for an individualized hearing:
>
> 9.4.1  Individuals arrested and charged under Penal Code§ 25.07;
>
> 9.4.2  Individuals arrested and charged under Penal Code§ 22.01, against a person described in Penal Code § 22.01 (b)(2), or individuals arrested and charged under Penal Code§ 22.07(c)(l);
>
> 9.4.3  Individuals arrested and charged under Penal Code§ 49.04 and who the State gives notice may be subject to Penal Code§ 49.09(a) for a conviction that became final within the past five years;
>
> 9.4.4  Individuals arrested and charged with any new offense while on any form of pretrial release;
>
> 9.4.5  Individuals arrested on a capias issued after a bond forfeiture or bond revocation; and
>
> 9.4.6  Individuals arrested while on any form of community supervision for a Class A or B misdemeanor or a felony offense.

Dkt. 708 at 17-18. Rule 9 further states:

> …all misdemeanor arrestees will have unsecured bail amounts set initially at no more than $100 and be promptly released on a personal bond with or without other non-financial conditions as soon as practicable after arrest. Consistent with Texas law, a judicial office is not required to sign a personal bond prior to the person's release.

Loc. R. 9.2. To that end, "[s]ecured money bail must not be required as a condition of pretrial release" before a bail hearing. Loc. R. 9.3. The Local Rules define bail hearing as "any legal proceeding that occurs before any judicial officer…." Loc R. 9.3 n.3.

Under the version of Local Rule 9 existing at the time the Consent Decree issued, any person arrested for a class A or B misdemeanor will receive a general order bond and be released **without appearing before a trained magistrate**, unless they are part of specific carveouts for charges of:

1. **certain bond violations** - committing family violence while already out on bond on a family violence charge, or for committing certain acts in violation of a bond order in certain sexual assault, trafficking or stalking cases (Tex. Penal Code § 25.07);

2. **family assault or terroristic threat** - committing assault against a family member (Tex. Penal Code § 22.01(b)(2)), or making a terroristic threat of violence against a family member (Tex. Penal Code § 22.07(c)(1));

3. **certain driving while intoxicated** - if the state gives notice of a potential enhancement for prior DWI conviction (Tex. Penal Code §§ 49.04, 49.09(a)), and the prior conviction became final within the past five years;

4. any *new* offense (not a violation of a bond order) while already out on bond;

5. under a warrant issued for forfeiting bond;

6. any offense while on probation.

Loc. R. 9.4.1–9.4.6.

Rule 9.5 provides that any judge deciding conditions of release "must have complete discretion to release on a personal bond any misdemeanor arrestee prior to an individualized

hearing." Loc. R. 9.5. Rule 9.7 also prohibits any judge from ordering secured money bail "as a condition of pretrial release at any time in the pretrial period for any misdemeanor arrestee" except for the carveouts listed in Rule 9.4, and Rule 9.10 gives every judicial officer "complete discretion to release **any** misdemeanor arrestee on a personal bond." Loc. R. 9.10 (emphasis added).[2] Under Rule 9, the Sheriff "must not enforce any" secured money bail order without a record that Rule 9 procedures were followed—placing the question of compliance in a non-magistrate's hands—with the instruction that "the Sheriff must deliver to the arrestee a General Order Bond." Loc. R. 9.16.

### III.    The current version of Rule 9 was amended in 2022, without complying with the Consent Decree.

The current version of Local Rule 9 is not the same as what appears in the Consent Decree. *Compare* Loc. R. 9 (attached as Appendix G) *with* Dkt. 708 at 18 ¶¶9.4.1–9.4.6. The main difference is that, in 2022 (before the Judges took the bench), other HCCCL judges amended Rule 9 to add indecent assault as a carveout under paragraph 9.4.2.[3] There is no discussion of this being approved in the monitor's reports, or any other indication that the amendment was submitted to or approved by this Court.

### IV.    The Texas Legislature enacted S.B. 6 and S.B. 9.[4]

At the parties' November 12, 2025 hearing before the Court, Plaintiffs' counsel asked that the Consent Decree remain in place in perpetuity. But the Texas Legislature enacted criminal pretrial procedure reforms in 2021 and amended them in 2025. Each of those enactment was done with specific intent of protecting the safety of victims, law enforcement, and the public:

> In 2021, the legislature passed S.B. 6 addressing the release practices surrounding habitual and violent offenders to better protect the safety of victims, law

---

[2] This Rule directly contradicts S.B. 9, now codified at article  17.03 of the Texas Code of Criminal Procedure.

[3] Indecent assault is a type of sexual assault perpetrated on a person 17 years or older. Tex. Penal Code § 22.012.

[4] *See* Act of September 17, 2021, 87th Tex. Leg. 2d C.S., (S.B. 6); Act of June 16, 2025, 89th Tex. Leg., R.S. (S.B. 9). As the Court is already familiar with these enactments and *Daves II*, a detailed history is not provided here.

enforcement, and our communities. The legislation represents one of the largest overhauls to Texas' bail system; drastically increasing the amount of information available to judges when setting bail and the amount of statewide data tracked on bail outcomes.

Appendix C (Bill Analysis, Tex. S.B. 9, 89th Tex. Leg., R.S. (2025)); *see also* Appendix D (Bill Analysis, Tex. S.B. 6, 87th Tex. Leg., R.S. (2021)).

Texas revised and clarified the legal requirements for governing entities such as Harris County to manage pretrial release. This includes extensive training for magistrates and hearing officers who make bail determinations to ensure that they are considering the appropriate factors when issuing pretrial release orders. Tex. Code Crim. Proc. article 17.024. Importantly, hearing officers **must** conduct an individualized consideration of all circumstances and factors required by statute:

> Without unnecessary delay but not later than 48 hours after a defendant is arrested, **a magistrate shall order**, after individualized consideration of all circumstances and of the factors required by Article 17.15(a), that the defendant be: (1) granted personal bond with or without conditions; (2) granted surety or cash bond with or without conditions; or (3) denied bail in accordance with the Texas Constitution and other law.

Tex. Code Crim. Proc. art. 17.08(a) (emphasis added).

Article 17.15 specifically requires magistrates to consider "the nature of the offense and the circumstances under which the offense was committed," including not only family violence offenses but also whether the charges involve violence against a peace officer. *Id*. at art. 17.15. Magistrates must also consider the safety of the victim, law enforcement, and the community, the arrestee's criminal history, and citizenship status. *Id*. at art. 17.15(5)–(7). If a person is arrested under a warrant, the arresting officer "shall" take the arrestee before a magistrate to provide specific warnings under Article 15.17. *Id*. at art. 15.17(a). Not only are warnings provided, but counsel is appointed for indigent arrestees at that time. *Id*. Additionally, S.B. 9 amendments prohibit a defendant from being released on personal bond if, with certain exceptions, that

defendant is charged with certain offenses, including a terroristic threat under Texas Penal Code § 22.07. *See id*. at art. 17.03(b–2)(1)(B)(ii)).

Texas also implemented a public safety report system ("PSRS") through the Office of Court Administration ("OCA"). The PSRS details Article 17.15 requirements for setting bail and information about defendants, including their eligibility for release on a personal bond, criminal history, any prior failures to appear in court, whether they are on probation or are participating in intervention programs, have any outstanding warrants, or are the subject of a protective order. *Id*. at art. 17.021. As OCA explains it, the system serves several functions, including by generating "a public safety report with respect to a defendant for magistrates to consider before setting bail for defendants charged with a Class B misdemeanor or higher category offense…." Appendix E Public Safety Report System (PSRS) Information for District and County Court Judges, available at https://www.txcourts.gov/media/1453754/sb6-district-and-ccl-psrs-info-sheet.pdf (last visited December 11, 2025)). The system is live, and incorporates more information under changes from S.B. 9, which addresses the release of habitual and violent offenders. Appendix F (Senate Bill 9, 89th Legislature, available at https://www.txcourts.gov/media/1461101/senate-bill-9_overview-final-version_82525.pdf (last visited December 11, 2025)). Information in that system is not the only item that a magistrate relies on in making a bail decision. Tex. Code Crim. Proc. Art. 17.028.

## V. The Consent Decree prevents compliance with state law—and the Judges have been threatened with federal contempt if they comply with S.B. 9.

The Consent Decree conflicts with, and prevents compliance with, state law. As structured, no magistrate or hearing officer can or will consider the criminal history or facts surrounding the arrest for any class A or B misdemeanor charge that is not excepted under Local Rule 9.

Those charged with non-carved out misdemeanor offenses are automatically released with no individualized review, even though such review is required by state law. Among those who do not see a judge before release are:

- persons with an extensive or even violent criminal history, or who have indicated that they will reoffend or will not stay away from the victim after release, if they are charged with a class A or B misdemeanor that is ***not*** excepted from automatic release;

- persons charged with driving while intoxicated if it is their first offense (without regard to facts such as whether there was an accident or open container, or if there was a high alcohol concentration), or if they have a prior DWI conviction that is more than 5 years old, or if they have a DWI conviction within the last 5 years that is not discovered before they are released (e.g., if it was outside of Harris County and that record was not immediately accessible);

- persons charged with all other class A and class B misdemeanors, including:

    - burglary of a motor vehicle,
    - indecent exposure (first and second offenses),
    - terroristic threat against a non-family member,
    - harboring a runaway,
    - unlawful use of a criminal instrument,
    - assault on a non-family member,
    - unlawful restraint,
    - interference with an emergency telephone call, and
    - Attempted escape.

Based on monitor reports submitted to the Court, over 38,000 (72% of the total) misdemeanor cases filed in Harris County in 2024 resulted in pre-trial release of the arrestee on personal bond or less with no required bail review. Dkt. 739-1 at p. 28. Roughly two-thirds of the misdemeanor cases filed in Harris County were released on the same terms over the last five years. *Id*. Setting aside state law requirements, these figures are troubling on their own. Of the review done by the monitor to analyze whether bonds are successfully completed, the failure rate for personal bonds jumped from 22% in 2015 to 41% in 2017, after the injunction was entered here, and sat at 31% in 2023. Dkt. 739-1 at p. 36. By comparison during those same periods, failure rates for bail set on surety bonds was 16%, 16% and 15%, respectively. *Id*. The clear reality is that

secured bail bonds are forfeited or revoked far less often than personal bonds, which is an indicator that personal bonds experience higher nonappearance rates, new offenses committed while on bond, or other important violations. *Id*.

As public safety remains an objective of the Consent Decree, it is worth considering that serious crimes have been committed by persons released from custody on a general order bond ("GOB"),[5] including:

- Kelvin Hinton died on August 14, 2024. His accused murderer, Michael Mack, was released four days earlier on a GOB after making harassing communications against a woman who had left him, and Hinton was the current boyfriend of that woman. No magistrate reviewed Mack's statements, criminal history, or considered the safety of the victim or the community before Mack was released on a GOB.

- Parnell Bland is accused of shooting a Harris County Constable's office Deputy in front of the Harris County Family Law Center in the middle of the day. Bland was out on a GOB after being arrested for criminal trespass, with a lengthy criminal history that included possession of a firearm by a felon. No magistrate reviewed the circumstances of Parnell's arrest, his criminal history, or considered the safety of the victim or community, before Parnell received a standing order release bond.

- A 17-year-old girl from California, where the age of consent is 18, was found with a nude 30-year-old Arturo Camarena in a hotel room after she ran away from home. Camarena was charged with harboring a runaway, and was released on a GOB— despite the fact that he had driven from California to Texas to see this girl, and had told police that he would stay with the girl even if it was unlawful to do so. No consideration was given to the circumstances, or to the victim's safety, before he was released.

- Johnny Angali Harris was released on a GOB after being arrested for masturbating in a store, chasing a woman who was in the store with her two children, then going to a Jack in the Box and jumping over the counter and chasing employees, still with his pants down. He had a criminal history that included threatening to rape his ex-girlfriend's 15-year-old daughter, a threat of raping a public servant, and theft with a firearm, along with 15 prior convictions.

---

[5] A GOB under the Consent Decree is a single pre-signed document executed by an associate judge and duplicated by the Sheriff for each case. It is not the same as a personal bond, which a judge or magistrate issues after considering the facts and surrounding circumstances. A GOB, on the other hand, issues as a standing order without any judicial officer knowing anything about the case, defendant, or facts. Texas law not only requires magistrates to conduct an individualized review before issuing a bond order, it also prohibits standing general orders that violate Texas law.

Despite the serious risks of ignoring individualized review before release, **Plaintiffs' counsel have threatened and demanded that judicial officers must be instructed to outright violate S.B. 9**:

> As you are aware, Senate Bill 9 took effect on September 1, 2025. In addition to other changes, Senate Bill 9 amended Article 17.03 to require cash bail for certain **enumerated offenses, including three misdemeanors: terroristic threat Class A, unlawful possession of a weapon, and violating certain protective orders.** Article 17.03 as amended by S.B. 9 is inconsistent with L.R. 9.2, 9.3, 9.10, and 9.12 as codified in the federal court Consent Decree issued in the *ODonnell* litigation.

Appendix A at 1–2 (emphasis added). Mr. Manne points out that hearing officers are explaining the reason for orders when "a personal bond is prohibited under Senate Bill 9." *Id*. He asks that,

> To protect the Plaintiff class going forward, <u>we ask the County to remind the Hearing Officers to follow the binding order of the federal court</u>, including in circumstances such as the application of Art. 17.03 <u>where the Hearing Officers may encounter a conflict between what state law and the Consent Decree require</u>.

*Id*. at 4 (emphasis added). But the Judges, and judicial officers in Harris County, must be able to follow and enforce state law without impending threats of federal contempt.

## VI.    Attempts to confer with the Monitors have failed.

The Judges have raised concerns with the Monitors, explaining that the Decree violates state law. Dkt. 740-2. Specifically, the Judges explained that Article 17.028 of the Texas Code of Criminal Procedure requires a magistrate to make an appropriate pretrial release order. Under the Decree, no such review occurs for most arrestees; instead, a person is entered into the system based on their charges, and if the charge does not meet a carveout (regardless of criminal history or enhancement factors, in most situations), the Sheriff must issue a the Consent-Decree approved and issued GOB, and release. But Texas law prohibits a judge from adopting a bail schedule or standing order relating to bail that is inconsistent with Article 17. Tex. Code Crim. Proc. art. 17.028(d). The GOB is inconsistent with Article 17 because it completely removes most class A

and B misdemeanors from any magistrate consideration whatsoever, before releasing them. Those individuals do not receive any advice of counsel, which they would have had at a Harris County bail hearing. For example, a person charged with unlawful restraint, which is a class A misdemeanor under Section 20.02 of the Texas Penal Code, may have a criminal history of felony unlawful restraint—but under the Consent Decree, they **must be** automatically released without allowing a magistrate to do their job under Texas law, and consider whether a personal bond is appropriate, or if additional conditions should be set for release.

Local Rule 9 also requires automatic release for all arrestees, including carveouts from automatic release, if they have not appeared before a judicial officer within 48 hours of arrest. Loc R. 9.18 ("If the person does not appear before a judicial officer within 48 hours of arrest, by general order of the judges, the Sheriff must deliver to the arrestee a "General Order Bond" issued by one or more of the CCCL Judges and release the arrestee"). **That means even a violent or habitual offender is released if they have not appeared before a magistrate within 48 hours**. What this Rule does not account for is arrestees who require mental health or medical care at the time of arrest. They may easily exceed the 48-hour requirement and still receive release with a GOB. For example, someone charged with a class A misdemeanor for assaulting a family member[6] who requires medical or mental health care may be released with no pretrial conditions or emergency protective order to ensure the victim's safety.

The Monitors first questioned whether the issues were "properly before them," contending that only a majority of the HCCCL judges may raise an issue to them, including one that rises to the level of the Consent Decree's violation of state law. The Monitors then outright rejected any

---

[6] Under Texas Penal Code § 22.01(b), assault is a class A misdemeanor, and is not considered a third-degree felony unless certain circumstances exist, including if the defendant has a prior conviction for assault on a family member or the offense was committed by intentionally or recklessly impeding the victim's breathing or blood circulation by applying pressure to their throat or neck or blocking their nose or mouth. Tex. Penal Code § 22.01(b)(2).

change to Rule 9.18, completely declining to consider any potential threat to public safety that Texas law requires magistrates and hearing officers to consider, stating "[t]here is no reason, based in Texas law, for eliminating the 48-hour remedy…." Dkt. 742-4 at 4.

The Monitors also rejected the idea of having a magistrate or judge to engage in early-stage review on paper to consider Article 17.15 factors. Dkt. 742-4. They disagreed with early review by a "judge or magistrate" who "would have complete discretion…to either grant a personal bond, or deny one…." *Id*. at 5. Currently, no judge or officer conducts (or can conduct) such review— and there is **no discretion** to permit such review or require a hearing for non-carveout Class A or B misdemeanor cases.

## VII. The Attorney General for the State of Texas has intervened and asked the Court to vacate the Consent Decree.

The State of Texas moved to intervene in August of this year, and also moved to vacate the Consent Decree. Dkts. 740 & 742. The Court granted intervention in part, allowing the State to move to vacate or amend the Decree based on mootness under Texas law, and denied the State's ability to argue *Younger* abstention. Dkt. 764 at 35.

## ISSUES TO BE RULED ON

1. <u>Justiciability</u> The Consent Decree is moot following the passage of Texas bail reform laws under Senate Bill 6 and Senate Bill 9, as the Fifth Circuit made clear in *Daves*, and no case or controversy exists.

   *Standard of review* – A ruling on mootness is reviewed *de novo. Daves v. Dallas Cty.*, 64 F.4th 616, 623 (5th Cir. 2023) (en banc), as are rulings on whether a case or controversy exists. *Pool v. City of Houston,* 978 F.3d 307, 311 (5th Cir. 2020).

2. <u>Texas Law</u>. Under Rule 60(b), should the Consent Decree be vacated or, at minimum, modified, following Texas' enactment of bail reform?

   *Standard of review* – Rule 60(b) rulings are reviewed for an abuse of discretion. *Frazar v. Ladd*, 457 F.3d 432, 435 (5th Cir. 2006).

3. <u>Abstention</u>. Should the Court abstain under the *Younger*[7] doctrine, as the Fifth Circuit has suggested?

   *Standard of review* – Whether the prerequisites of abstention have been satisfied are reviewed de novo.

## SUMMARY OF THE ARGUMENT

After the Consent Decree issued, Texas enacted sweeping reform of pretrial procedures, the Fifth Circuit issued *Daves v. Dallas Cty.*, 64 F.4th 616 (5th Cir. 2023) (en banc) ("*Daves II*"), and the Legislature amended its bail-reform laws in 2025. No party to this case challenges whether Texas' 2021 bail-reform laws are constitutional, or argues that those laws do not adequately safeguard against the due process concerns that caused Plaintiffs to file this lawsuit in 2016.

As the Attorney General has argued, Texas' new bail-reform laws moot the issues raised in this case, and deprive the Court of jurisdiction over this matter, necessitating the dissolution of the Consent Decree and dismissal of this case.

In *Daves II*, the Fifth Circuit made clear that—

…S.B. 6 mooted the challenges in *Daves*, despite the plaintiffs citing to similar continued constitutional violations. *Daves*, although involving different facts, is

---

[7] *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971).

largely legally identical to *Russell*. Adherence to Fifth Circuit authority requires that this case be dismissed as moot. Having made that ruling, the court need not address any other basis for dismissal.

*Russell v. Harris Cty.*, No. H-19-226, 2023 WL 5658936, 2023 U.S. Dist. LEXIS 154051, at *14 (S.D. Tex. 2023) (also explaining that, beginning with *Daves* I, the Fifth Circuit retracted from the findings and legal conclusions reached in *ODonnell*).

Even if Texas' new laws did not moot the Consent Decree, the Court should vacate the Decree because it conflicts with Texas law or, at minimum, modify it to ensure that it does not conflict with Texas law—including by ensuring that judicial officers may review cases involving circumstances that could pose a threat to public safety.

Finally, *Daves II* overruled its prior holding in *ODonnell* on *Younger* abstention. *Id*. at *10 (citing *Daves II*, 64 F.3d at 623-33). The Judges raised *Younger* early in this case and the Court denied the argument, the Judges then raised the argument on appeal and the Fifth Circuit denied it, before later changing course on that issue. The Judges reassert *Younger* abstention here, and ask that the Court refrain from continued involvement in ongoing judicial proceedings, since this case implicates important state interests and arrestees have an adequate opportunity to raise any constitutional challenges they have through habeas relief.

## ARGUMENT

### I.    Challenges to Justiciability

#### A.    Under *Daves II*, significant changes to Texas' bail reform laws require that the Consent Decree be vacated for mootness.

While Plaintiffs' counsel have urged that it continue "in perpetuity," the Fifth Circuit has made clear that changes to Texas law moot the Decree, and the Court should abstain from further involvement in ongoing judicial proceedings. To avoid repetition, the Judges join the Attorney General's arguments that Texas' new laws require that the Consent Decree be vacated for mootness. *See* Dkt. 742-1 at 3–6& Dkt. 790-1 at 3–4.

The Fifth Circuit confirmed this case's "broad changes to misdemeanor bail bond procedures" and that the Texas Legislature passed S.B. 6 while *Daves* pended en banc. *Daves II*, 64 F.4th at 620-21 (citing *ODonnell v. Harris Cty..*, 882 F.3d 528 (5th Cir. 2018), *withdrawn and superseded on panel reh'g*, 892 F.3d 147 (5th Cir. 2018) and *ODonnell II*, 900 F.3d 220. The Court ultimately held that the federal court dispute over Texas bail procedures was moot due to S.B. 6. *See id*. The Judges therefore ask that the Court dissolve the Consent Decree (Dkt. 708) following the Fifth Circuit's pronouncements in *Daves II*. That is, significant changes in the law have made continued compliance with the Consent Decree not only onerous, but unworkable, since the Decree conflicts with new state laws, and continued enforcement of the Decree is contrary to and would be detrimental to the public interest.

#### B.    No Article III case or controversy.

Whether considered part of a mootness analysis or separately, a live case or controversy is a core requirement for jurisdiction to exist. *Russell*, 2023 U.S. Dist. LEXIS 154051, at *10. Yet, no controversy existed at the time the Consent Decree was entered here. *See Pool v. City of Houston*, 87 F.4th 733 (5th Cir. 2023).  In 2019, Plaintiffs asked the Fifth Circuit to vacate its

panel stay opinion because "[o]n November 6, 2018, the fourteen judges who filed [that] appeal and sought the say lost re-election" and once their successors took office, they "withdrew [the] appeal, reflecting their agreement with the revised preliminary injunction (as it is consistent with their policy views)." Appendix B (Appellees' Unopposed Motion to Vacate Stay Opinion at 3, No. 18-20466, filed Jan. 8, 2019 before the Fifth Circuit Court of Appeals). By August 2019, the parties— now friendly, with no disagreements over what procedures should be in place for pretrial detainees—entered into a settlement agreement and the Court issued the Consent Decree, maintaining oversight of Harris County's misdemeanor pretrial procedures for years. Dkt. 708. But to have a case or controversy under Article III, there must be an "ongoing adversarial posture between the parties before the court." *Colbert v. Paul*, 858 F. App'x 702, 703-04 (5th Cir. 2021) (per curiam) (quoting *Talbott Big Foot, Inc. v. Boudreaux (In re Talbott Big Foot, Inc.)*, 924 F.2d 85, 87 (5th Cir. 1991)). In *Colbert*, the lack of adversarial positions among the parties to the appeal rendered the appeal moot. *Id*. at 704.

In *United States v. Windsor*, a case involving the Defense of Marriage Act's ("DOMA") denial of tax benefits to a same-sex spouse following her partner's death, the United States took a dual-track approach—the government agreed with the plaintiff's legal arguments that DOMA was unconstitutional and stopped defending DOMA in the lawsuit, but congress continued to enforce the law, meaning the plaintiff still had an injury to litigate in court. 570 U.S. 744, 756 (2013). The Court considered both Article III jurisdiction and "the prudential limits on its exercise," ultimately holding that enough of a controversy existed to meet Article III standing requirements, and noting the "prudential problems inherent in the Executive's unusual [dual] position" since the government agreed with the plaintiff's counsel about DOMA being unconstitutional, the risk posed was that the court "faces a friendly, non-adversary, proceeding…." *Id*. at 759-60. Ultimately, the Court

decided it had authority to hear that case, and ruled DOMA unconstitutional. Here, on the other hand, the fourteen judges and the Plaintiffs lacked any real dispute in 2019.

The Plaintiffs made their non-adversarial position with the fourteen HCCCL judges in this case clear, months before the Consent Decree issued, therefore showing their hand that no case or controversy existed any longer to support standing.

## II.    Rule 60(b) requires that the Consent Decree be vacated or, at minimum, modified.

Consent decrees are subject to Federal Rule of Civil Procedure 60(b). *LULAC v. City of Boerne*, 659 F.3d 421, 437 (5th Cir. 2011) (citing *Rufo v. Inmates of Suffolk Cty.. Jail*, 502 U.S. 367, 380 (1992)). Under Rule 60(b), the Court "may relieve a party or its legal representative from a final judgment, order, or proceeding" if the judgment or order is void, or if "applying it prospectively is no longer equitable," or for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(4), (5), (6). District courts must take a flexible approach to motions to modify consent decrees or to modify or vacate institutional reform decrees. *Rufo*, 502 U.S. at 379-81. This is necessary to meet the goals of reform litigation. *City of Boerne*, 659 F.3d at 437 (citing *Horne v. Flores*, 557 U.S. 433, 450 (2009)). Under *Rufo*, modification is warranted if there has been a significant change in the facts or law that "make compliance with the decree substantially more onerous" or even unworkable due to unforeseen obstacles, or if enforcing the decree "would be detrimental to the public interest." *Rufo*, 502 U.S. at 384. If so, then a court has to consider if the proposed modification is "is suitably tailored to the changed circumstance." *Id*. at 383. Courts must consider the evidence in determining whether the moving party has met its burden. *LULAC*, 659 F.3d at 438.

Under Rule 60(b), a court may order relief from a judgment or order for several reasons, including that the judgment is void, or "applying it prospectively is no longer equitable," or for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(4)–(6). The Judges join in the Attorney

General's arguments that changes to Texas law require vacating the Consent Decree, that the Decree conflicts with state law, and that the public interest requires that the decree be vacated (Dkt. 790-1 at 2–6). In the alternative, the Consent Decree should be modified to remove its most blatant conflicts with Texas law.

### A.  Rule 60(b)(5) and (b)(6)

Changes in Texas law make continuing federal oversight under the Consent Decree no longer equitable. The Judges join in and incorporate the Attorney General's arguments on this point. *See* Dkt. 742-1 at 3–4, Dkt. 790-1 at 2–6.

Here, the Court must decide whether ongoing enforcement of the Consent Decree is permissible, considering the significant changes in state law. Importantly, no party argues that Texas' new laws would violate arrestees' constitutional rights. And, "without a constitutional violation, injunctions of this nature 'raise[] grave federalism concerns.'" *See June Med. Servs. LLC v. Phillips*, 640 F. Supp. 3d 523, 530 (M.D. La. 2022) ("significant change in the law brought by *Dobbs* makes continued maintenance of the injunction detrimental to the public interest and inequitable so as to justify an order vacating it" and injunction orders are properly vacated "when the legal basis" for them are eliminated—"and, indeed, the Court likely abuses its discretion when it doesn't") (collecting cases).

Additionally, *Rufo* asks that courts be flexible in modifying consent decrees, because significant changes in facts or the law may warrant changes to decrees to avoid imposing onerous or unworkable obligations on parties, or injuring the public interest. *Rufo*, 502 U.S. at 384. Here, changed Texas law constitutes a significant development that warrants vacatur or, at minimum, modification of the Consent Decree. Additionally, where the Decree is not meeting its intended purpose of, among other things, promoting public safety (Dkt. 708 at 11 ¶ 10), courts must reconsider the decree. *See Police Ass'n of New Orleans ex rel. Cannatella v. New Orleans*, 100

F.3d 1159, 1168 (5th Cir. 1996); *U.S. v. Un. Shoe Mach. Corp.*, 391 U.S. 244, 252 (1968). As discussed above at Section II, the Decree is not meeting that intended purpose. The Judges proposed changes to better tailor the Consent Decree to state law to the Monitors in May of 2025 (Dkt. 740-2 at 4), which the Monitors rejected (Dkt. 740-4). Those changes were:

9.2     To the extent Local Rule 9 conflicts with any other local rule, Local Rule 9 controls. ~~Except for situations described in Local Rule 9.4.1 9.4.6, all misdemeanor arrestees will have unsecured bail amounts set initially at no more than $100 and be promptly released on a personal bond with or without other non financial conditions as soon as practicable after arrest. Consistent with Texas law, a judicial officer is not required to sign a personal bond prior to the person's release.~~

9.4     Subject to Texas law, A~~a~~ll misdemeanor arrestees must be considered for ~~released~~ on a personal bond or on non-financial conditions as soon as practicable after arrest, except those who fall within the following categories, who may be detained for up to 48 hours for an individualized hearing:

9.5     Any person arrested for the reasons described in Local Rule 9.4.1-9.4.6 may be kept in custody pending an individualized hearing before a judicial officer. Any judicial officer who makes decisions about conditions of release, including the Harris County Criminal Law Hearing Officers, must—subject to Article 17.03 of the Texas Code of Criminal Procedure and other Texas law—have complete discretion to release on a personal bond any misdemeanor arrestee prior to an individualized hearing.

        For all misdemeanor arrestees to whom Local Rules 9.4.1-9.4.6 do not apply, a criminal law hearing officer or judge shall review and consider: (1) the public safety report; (2) factors required for setting the amount of bail listed in Article 17.15 of the Texas Code of Criminal Procedure; and (3) unsecured bail and release on a personal bond with or without other non-financial conditions. A criminal law hearing officer or judge shall devote a defined portion of each shift to such review and consideration, which shall occur as soon as practicable after arrest and shall not result in a decision contrary to Texas law.

9.18    If an arrestee is in the Sheriff's custody 40 hours after arrest and no conditions of release have been determined, the Sheriff must present the arrestee to a judicial officer for a bail hearing. ~~If the person does not appear before a judicial officer within 48 hours of arrest, by general order of the judges, the Sheriff must deliver to the arrestee a "General Order Bond" issued by one or more of the CCCL Judges and release the arrestee.~~

While the Consent Decree should be vacated for the reasons discussed above, and by the Attorney General in Dkt. 790-1, in the alternative, the Decree should be modified to be consistent with Texas law.

### B. Rule 60(b)(4)

With respect to Rule 60(b)(4), to the extent the Court considers the Consent Decree a contractual settlement among the parties, the Consent Decree is void. That is because, "[u]nder Texas law, a contract is illegal, and thus void, if the contract obligates the parties to perform an action that is forbidden by the law of the place where the action is to occur." *Drinks, L.L.C. v. Landry's Inc.*, No. 23-20506, 2025 U.S. App. LEXIS 20188, at *7, 2025 WL 2269783 (5th Cir. 2025) (per curiam) (quoting *Am. Precision Ammunition, L.L.C. v. City of Mineral Wells*, 90 F.4th 820, 824-25 (5th Cir. 2024)). In *Drinks, L.L.C.*, Texas statutes regulate the production, distribution and consumption of alcohol within the state, with a clear goal of prohibiting vertical integration among producers, distributors and sellers of alcohol. *Id.* at *7-8. The parties' agreement violated this law, and was therefore void. *Id.* Here, as discussed above, the Consent Decree violates Texas law, and cannot be enforced by this Court.

### C. Timeliness

The Judges' Motion is timely made in accordance with the Court's scheduling order. *See* Dkt. 773.

### III.    Younger Abstention

"[R]evis[ing] by federal decree the Texas state court procedures for felony and misdemeanor pretrial bail, should never have been brought in federal court." *Daves II*, 64 F.3d at 620. *Younger* "requires federal courts to abstain from revising state bail bond procedures on behalf of those being criminally prosecuted, when state procedures allow the accused adequate opportunities to raise their federal claims." *Id.*

The *Younger* abstention argument has a turbulent history in this case, with ample briefing of it before this Court and the Fifth Circuit. On November 9, 2016, the County Judges moved to dismiss the complaint arguing, in part, that the Court should abstain under *Younger*, and this Court denied the Motion. *See ODonnell v. Harris Cty.*, 227 F. Supp. 3d 706, 734-37 (S.D. Tex. Dec. 16, 2016). The Judges reassert this argument now, after the Fifth Circuit has clarified its position on *Younger* in *Daves*, and following the State's sweeping bail reform statutes. The Judges therefore adopt and incorporate by reference their *Younger* abstention arguments in Dkt. No. 80 here, as if set out in full. *See* Dkt. 80 at 25-31.

As brief additional argument on this point, the Court should abstain from further involvement in ongoing judicial proceedings pursuant to a "basic doctrine of equity jurisprudence" that is guided by "notions of comity" and federalism, where this case implicates important state interests and arrestees have an adequate opportunity to raise constitutional challenges through habeas relief. *Younger v. Harris*, 401 U.S. 37, 43-44 (1971) (cleaned up); *Preiser v. Rodriguez*, 411 U.S. 475 (1973); *see also Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

The Judges anticipate that Plaintiffs and perhaps the Court will question whether this point has been waived. The Fifth Circuit recently held, however, that *Younger* abstention was not waived. *Daves v. Dallas Cty.*, 22 F.4th 522, 547 (5th Cir. 2022).

Here, the Judges raised *Younger* abstention and this court denied that argument; the Fifth Circuit also denied a *Younger* argument in a February 1, 2018 panel decision later withdrawn on rehearing (though the denial of *Younger* abstention remained). *See ODonnell v. Harris Cty.*, 882 F.3d 528, 538 (5th Cir. 2018), *withdrawn and superseded on panel reh'g by ODonnell v. Harris Cty.*, 892 F.3d 147, 156 (5th Cir. 2018) (op. on reh.) ("*ODonnell* I"), *overruled in part by Daves v.*

*Dallas Cty.*, 22 F.4th 522, 546 (5th Cir. 2022). Soon after, fourteen Harris County Criminal Court at Law judges[8] raised *Younger* abstention when requesting a stay of this Court's preliminary injunction, and on August 14, 2018, a Fifth Circuit panel granted the stay without reaching that argument. *ODonnell II*, 900 F.3d at 222 ("*ODonnell II*"). The dissent characterized the *Younger* arguments as "recycle[d]" and noted that the Fifth Circuit had "previously rejected those arguments" in *Odonnell I*, 892 F.3d at 156-57 & n.3, and opined that the Court was "unlikely to find them persuasive in their repackaged forms." *Id*. at 232 (Graves, J., dissenting). Then, in 2019, the then-presiding HCCL judges entered into a settlement and consent decree.

As the Fifth Circuit later recognized in *Daves* in holding that a *Younger* abstention argument was not waived, "[r]elative silence as to abstention can be explained by the fact that our court's first *ODonnell* opinion…rejected *Younger* abstention…on February 14, 2018…." *Daves*, 22 F.4th at 546. It therefore "would reasonably have appeared preordained, making pursuing an early ruling on abstention in district court seemingly futile." *Id*. at 546-47. Rather, federal courts adjudicating claims "regarding bail for pretrial detainees would unduly interfere with state proceedings". *Little v. Doguet*, 71 F.4th 340, 346 (5th Cir. 2023) (citing *Daves*, 64 F.4th at 631). The Court should therefore decline from any further "ongoing federal audit of state criminal proceedings." *See id*. (quoting *O'Shea v. Littleton*, 414 U.S. 488, 500 (1974)).

There is no longer a need for federal intervention in this case, whether under a jurisdictional analysis based on mootness, or under an abstention theory like *Younger*, especially where the decree stands in the way of allowing County Judges to follow state law.

---

[8] Including Paula Goodhart as Judge of Harris County Criminal Court at Law ("HCCL") No. 1, Bill Harmon as Judge of HCCL No. 2, and Nathalie C. Fleming as Judge of HCCL No. 3. In 2019, Alex Salgado became Judge of HCCL No. 1, Ronnisha Bowman became judge of HCCL No. 2, Erica Hughes became judge of HCCL No. 3. Judges Goodhart and Leslie Johnson currently preside over HCCL Nos. 2 and 3, respectively.

## CONCLUSION AND PRAYER

Texas law enacted after the Consent Decree adequately protects the rights of misdemeanor arrestees in Harris County, and the parties and Court should allow Texas law to be implemented and followed by Harris County. The Judges ask that the Court consider this Motion, consider the Attorney General's Motion to Vacate, and issue an order vacating the Consent Decree in full. In the alternative, the Judges ask that the Court modify the Consent Decree to conform with Texas law.

Respectfully submitted,

**GREER, HERZ & ADAMS, L.L.P.**

By:    /s/ *Joseph R. Russo, Jr.*
Joseph R. Russo, Jr.
Federal I.D. No. 22559
State Bar No. 24002879
jrusso@greerherz.com
Angie Olalde
Fed. ID No. 690133
State Bar No. 24049015
aolalde@greerherz.com
One Moody Plaza, 18th Floor
Galveston, Texas 77550
(409) 797-3200 (Telephone)
(866) 456-0170 (Fax)

**ATTORNEYS FOR DEFENDANTS HON. PAULA GOODHART, HON. JESSICA PADILLA, HON. LESLIE JOHNSON, AND HON. LINDA GARCIA**

## **CERTIFICATE OF CONFERENCE**

The below-signed counsel has conferred with counsel for the other parties in this case. The Attorney General is NOT OPPOSED to this Motion, the other HCCCL judges take no position, and the remaining parties are OPPOSED to this Motion.

*/s/ Joseph R. Russo, Jr.*

## **CERTIFICATE OF SERVICE**

I certify that on the 12th day of December, 2025, a true and correct copy of the foregoing document was delivered to all counsel of record via the CM/ECF system and served by electronic notice to all parties of record.

*/s/ Joseph R. Russo, Jr.*