**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| MARANDA LYNN ODONNELL, *et al.*, on behalf of themselves and all others similarly situated, | § § § § | |
| | § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 4:16-cv-01414 (Consolidated Class Action) |
| v. | § § | |
| HARRIS COUNTY, TEXAS, *et. al.*, | § § | |
| Defendants. | § § § | |
| | § | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO THE FOUR JUDGES' MOTION TO EXPEDITE AND MOTION TO STAY ENFORCEMENT OF THE CONSENT DECREE**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

NATURE & STAGE OF PROCEEDINGS ......................................................................... 3

STANDARD OF REVIEW ................................................................................................. 4

ARGUMENT ....................................................................................................................... 5

    A.  The Court Should Deny the Request to Expedite "a Ruling on *Younger*" Because It Would Delay, Not Advance, Resolution of the Rule 60 Motions ............... 6

        1.  A full evidentiary record is required to determine whether a change in abstention law justifies modification or vacatur of the Consent Decree. ............... 7

        2.  There is no reason to bifurcate proceedings and expedite consideration of *Younger*, an unnecessary change that would further delay proceedings. ......... 10

    B.  The Court Should Deny the Request to Partially Stay the Consent Decree Because the Four Judges Do Not Even Attempt to Meet their Burden. ..................... 12

        1.  The Four Judges have not demonstrated a strong likelihood of success on the merits. .............................................................................................. 13

        2.  The Four Judges have not shown a stay is necessary to prevent irreparable harm. ................................................................................... 15

        3.  The Four Judges have not shown the equities and public interest favor a stay. ............................................................................................... 16

CONCLUSION .................................................................................................................. 17

## TABLE OF AUTHORITIES

**Cases**

*Barkan Wireless IP Holdings, L.P. v. T-Mobile US, Inc.*,
No. 21-CV-00034, 2021 WL 8441748 (E.D. Tex. Dec. 22, 2021)....................................11

*BLOM Bank SAL v. Honickman*,
605 U.S. 204 (2025)........................................................................................................ 7

*Cadle v. Jefferson*,
No. 3:07-CV-70, 2025 WL 1616725 (W.D. Ky. June 6, 2025) ...................................... 14

*Consumer Fin. Prot. Bureau v. Nexus Servs., Inc.*,
No. 5:21-CV-00016, 2024 WL 3236410 (W.D. Va. June 28, 2024)................................ 16

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*,
710 F.3d 579 (5th Cir. 2013) ........................................................................................ 15

*Daves v. Dallas Cnty.*,
64 F.4th 616 (5th Cir. 2023) .................................................................................. passim

*Dep't of Educ. v. Louisiana*,
603 U.S. 866 (2024)...................................................................................................... 13

*DeSpain v. Johnston*,
731 F.2d 1171 (5th Cir. 1984) ....................................................................................... 9

*Firestone Tire & Rubber Co. v. Risjord*,
449 U.S. 368 (1981)...................................................................................................... 16

*Gibson v. Berryhill*,
411 U.S. 564 (1973)........................................................................................................ 9

*Green v. Servs. Corp. Int'l*,
No. H-06-833, 2006 WL 8441295 (S.D. Tex. June 30, 2006)........................................ 15

*Gustavia Home, LLC v. Hoyer*,
No. 16-CV-4015, 2022 WL 875096 (E.D.N.Y. Mar. 23, 2022)..................................... 14

*Hilton v. Braunskill*,
481 U.S. 770 (1987).......................................................................................................... 5

*In re Deepwater Horizon*,
713 F. App'x 36 (5th Cir. 2018) ..................................................................................... 5

*In re Delta Starr Broad, L.L.C.*,
422 F. App'x 362 (5th Cir. 2011) ................................................................................. 14

*In re Villareal*,
160 B.R. 786 (Bankr. W.D. Tex. 1993)......................................................................... 11

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
512 U.S. 821 (1994)...................................................................................................... 16

*Johnson v. Florida*,
348 F.3d 1334 (11th Cir. 2003) ...................................................................................... 9

*Leaf Trading Cards, LLC v. Upper Deck Co.*,
No. 3:17-CV-3200, 2019 WL 7882552 (N.D. Tex. Sept. 18, 2019) ............................... 16

*League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*,
659 F.3d 421 (5th Cir. 2011) ........................................................................................... 8

*League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*,
675 F.3d 433 (5th Cir. 2012) ........................................................................................... 8

*Nken v. Holder*,
556 U.S. 418 (2009) ....................................................................................... 5, 13, 14, 16

*ODonnell v. Harris Cty.*,
251 F. Supp. 3d 1052 (S.D. Tex. 2017) ............................................................................ 3

*Ohio Bureau of Emp. Servs. v. Hodory*,
431 U.S. 471 (1977) ......................................................................................................... 9

*Plaquemines Parish v. Chevron USA, Inc.*,
84 F.4th 362 (5th Cir. 2023) ............................................................................................ 5

*Pugh v. Rainwater*,
483 F.2d 778 (5th Cir. 1973) ........................................................................................... 9

*Rufo v. Inmates of Suffolk Cnty. Jail*,
502 U.S. 367 (1992) ................................................................................................. passim

*Russell v. Harris Cnty.*,
No. CV H-19-226, 2023 WL 5658936 (S.D. Tex. Aug. 31, 2023) ................................... 9

*Saqui v. Pride Cent. Am., LLC*,
595 F.3d 206 (5th Cir. 2010) ........................................................................................... 5

*Smith v. Sch. Bd. of Concordia Par.*,
906 F.3d 327 (5th Cir. 2018) ......................................................................................... 15

*Talon Transaction Techs., Inc. v. Stoneeagle Services, Inc.*,
No. 3:13-CV-902, 2014 WL 6819846 (N.D. Tex. Dec. 4, 2014) .................................... 11

*Texas v. United States*,
40 F.4th 205 (5th Cir. 2022) .......................................................................................... 13

*United States v. City of Jackson*,
359 F.3d 727 (5th Cir. 2004) ......................................................................................... 15

*Vernon Smith, etc. v. Sch. Bd. of Concordia Parish*,
88 F.4th 588 (5th Cir. 2023) .......................................................................................... 13

*Virginian Ry. Co. v. United States*,
272 U.S. 658 (1926) ......................................................................................................... 5

*Williams v. Lesiak*,
822 F.2d 1223 (1st Cir. 1987) ........................................................................................ 14

*Winter v. Natural Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ........................................................................................................... 15

**Rules**

Rule 60(b) ................................................................................................................. passim

Rule 60(c) .................................................................................................................... 14

**INTRODUCTION**

After sitting on their hands for years, Judges Paula Goodhart, Leslie Johnson, Jessica Padilla, and Linda Garcia's ("the Four Judges") now ask this Court—five months into discovery—to expedite consideration of their motion to vacate the Consent Decree because of a three-year-old development in the law around *Younger* abstention, and to stay enforcement of the Consent Decree. Dkt. 803 ("Mot."). Their requests are frivolous, and the Court should deny them. The Court issued a well-considered case management order that would allow it to hear the Movants' Rule 60 motions together, with a full evidentiary record. There is no reason to reverse course now.

The Four Judges' request to expedite should be denied for two reasons. First, the Four Judges are wrong on the law. Specifically, they are mistaken that their motion to vacate the Consent Decree due to *Daves v. Dallas Cnty.*, 64 F.4th 616 (5th Cir. 2023) ("*Daves II*"), can be resolved without evidence as a matter of law. Mot. at 2–4. "[A] consent decree is a final judgment that may be reopened only to the extent that equity requires." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 391 (1992). Even if the Four Judges could identify a change in law sufficient for the Court to *consider* modification—despite this Court's prior ruling that "the *Daves II* decision on *Younger* is *not* a sufficient justification to modify the consent decree," Dkt. 764 at 25—they would still have to show that the appropriate remedy under Rule 60(b) is vacatur of the Consent Decree. The Four Judges do not even reference the Rule 60 standard in their motion to expedite. With good reason. The equitable determination it requires *cannot be resolved as a matter of law*. The Parties are in the middle of gathering the evidentiary record necessary for the Court to make that decision.

Second, even assuming there were some conceivable way to expedite "a ruling on *Younger*" without a factual record, the Four Judges have identified no persuasive reason for the Court to bifurcate proceedings. The Judges waited until nearly three years after *Daves II* was decided before they moved to vacate the Consent Decree. They did not object to the scheduling

1

order that has been in place for six months. They never objected to—or even acknowledged—this Court's previous finding that "the defendants waived *Younger* abstention." Opinion on the Attorney General's Motion to Intervene, Dkt. 764 at 29. Nor did they ask for an expedited ruling on their *Younger* argument five months ago when they filed their motion to vacate. Indeed, the Four Judges themselves have sought hundreds of thousands of documents from the Non-Movants, and even served subpoenas requesting even more documents from the independent court-appointed monitors. The Four Judges' "urgent" request for a partial ruling on their Rule 60 motion is a distraction from the Parties' efforts to develop the record this Court seeks, and reflects their misunderstanding about how Rule 60 works.

Nor is there any reason to stay enforcement of the Consent Decree for "acts taken in compliance with post-Decree amendments to state law." Mot. at 4. The Four Judges do not even identify the legal standard controlling their stay request, much less attempt to meet their burden to justify the extraordinary relief of staying a final judgment like the Consent Decree. Most notably, they offer no record on any of the factors Rule 60 requires, offer no explanation of how they face irreparable harm, and do not grapple with the public's strong interest in maintaining a decree that has been in place for nearly seven years, one that protects the liberty of tens of thousands of people and saves Harris County taxpayers millions each year. They also do not offer any evidence to show how the constitutional rights of class members would continue to be protected in the event of such a stay. In any event, this Court has already rejected this request, making clear that "[t]he Consent Decree remains in effect during the discovery into, and resolution of, the motions to vacate." Dkt. 773 at 2. The Four Judges offer no persuasive reason to revisit this admonition.

The Four Judges' motion obstructs the Parties' hard work building the factual record the Court requested. The Court should deny the motion and allow the Parties to continue.

2

### NATURE & STAGE OF PROCEEDINGS

Ten years ago, Maranda Lynn ODonnell filed a class action lawsuit challenging Harris County's policy and practice of detaining approximately 40% of all misdemeanor arrestees—tens of thousands of people every year—for the duration of their cases solely because they could not pay money bail, and without any finding that their detention served any governmental interest. *ODonnell v. Harris Cty.*, 251 F. Supp. 3d 1052, 1058 (S.D. Tex. 2017) ("PI Op."), *aff'd as modified*, 892 F.3d 147 (5th Cir. 2018). After protracted litigation, the Court entered a Consent Decree in which the Parties agreed to relief that, if adhered to, would resolve the gross constitutional violations identified by the Court. Nearly seven years later, that Consent Decree has "saved Harris County and residents many millions of dollars and improved the lives of tens of thousands of persons arrested for misdemeanors," while "produc[ing] no increase in new offenses by persons arrested for misdemeanors." Corrected Ninth Monitor Report, Dkt. 799-1 at 6.

In August 2025, Attorney General Ken Paxton moved to intervene in this closed case to file a motion to vacate the Consent Decree under Rule 60. Dkt. 740. This Court allowed the Attorney General to intervene to "move to vacate or amend the consent decree based on [S.B.] 6 and [S.B.] 9," but denied his motion "to intervene to raise *Younger* abstention." Dkt. 764 at 2. The Court found the Attorney General's proposed intervention to raise *Younger* untimely and futile both because *Daves II* is not a qualifying basis for modifying a consent decree and because the Defendants—and by proxy, the Attorney General—affirmatively waived the defense. *Id.* At 10-20, 21–31; *see also id.* at 29 ("By agreeing to the consent decree, the defendants waived *Younger* abstention.").

After granting the Attorney General's limited intervention, the Court held a scheduling conference on November 12, 2025, to consider how to resolve the motion to vacate. The Court recognized that whether changes in state law warrant vacating or modifying the Consent Decree

3

turns on "a factual query into how the consent decree is being implemented and how the state law affects that implementation." Nov. 12, 2025 Tr. at 13:16–18. The Court entered a scheduling order permitting six months of limited discovery followed by briefing and a hearing. Dkt. 773. On December 11, in the wake of that conference, despite the Court's request that they coordinate with the Attorney General to submit a single combined motion, Nov. 12, 2025 Tr. at 16:7–12, the Four Judges filed their own motion to vacate the Consent Decree, Dkt. 793. The Four Judges raised the same state law issues that form the basis of the Attorney General's motion. *Id.* at 20, 22–25. Additionally, they "reassert[ed]" the same argument the Attorney General was ordered not to raise, an argument they lost on years ago and subsequently waived, *Younger* abstention. *Id.* at 26.

For five months, the Parties, including the Four Judges, have diligently engaged in discovery. The Four Judges served discovery requests on the Non-Movants calling for hundreds of thousands of communications dating back to January 2018. Ex. A (Four Judges' Discovery Requests). More recently, they served three subpoenas on the independent court-appointed Monitors of the Consent Decree, seeking extensive data and documents. Ex. B (Subpoenas to Monitors and Attachment). Until the day before they filed this motion, the Four Judges had never shared any belief with the Court or the Non-Movants that their motion to vacate based on *Younger* should be decided on a separate, expedited track, or that a stay of any aspect of the Consent Decree was justified.

Over four months after they filed their motion to vacate, and after months of the Non-Movants' diligent work responding to discovery, the Four Judges filed this motion.

**STANDARD OF REVIEW**

The Four Judges' motion presents two issues: (1) whether it should expedite its consideration of the Four Judges' motion to vacate the Consent Decree due to a subsequent change in law regarding *Younger* abstention, Mot. at 2–4; and (2) whether it should stay enforcement of

4

the Consent Decree for "acts taken in compliance with post-Decree amendments to state law,"
Mot. at 4–8.

Issue one concerns docket management and is thus committed to this Court's "broad
discretion." *See Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 211 (5th Cir. 2010) ("District court
judges have broad discretion in managing their own dockets."); *In re Deepwater Horizon*, 713 F.
App'x 360, 362 (5th Cir. 2018) ("The court has broad discretion and inherent authority to manage
its docket.").

Issue two requires the Four Judges to satisfy the stringent standard for a stay of a final
judgment. "A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken
v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658,
672 (1926)). A party seeking a stay must demonstrate that four factors favor its issuance:

> (1) whether the stay applicant has made a strong showing that he is likely to
> succeed on the merits; (2) whether the applicant will be irreparably injured
> absent a stay; (3) whether issuance of the stay will substantially injure the other
> parties interested in the proceeding; and (4) where the public interest lies.

*Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *see, e.g.*, *Plaquemines Parish
v. Chevron USA, Inc.*, 84 F.4th 362, 376 (5th Cir. 2023) (denying stay where the movants failed to
show that the balance of equities 'weighs heavily' in favor of a stay").

## ARGUMENT

The Four Judges' Motion should be denied. First, the Four Judges' request for expedited
consideration misunderstands Rule 60. Even if they were correct that: (a) *Daves II* constitutes a
significant change in law under *Rufo*; (b) applying that precedent, abstention would be appropriate
were this same case filed today; and (c) the Four Judges had not already affirmatively waived
*Younger* abstention, *it still would not follow that vacatur is required under Rule 60*. The Rule 60
analysis requires further factual development and a full factual record. The Four Judges' request

5

is a needless distraction that has obstructed, and will continue to obstruct, the Parties' progress in these proceedings, making it more difficult for them to complete productions, review productions, and move expeditiously toward full briefing and argument on the important issues at stake.[1]

Second, the Four Judges' request to stay enforcement of the Consent Decree "for acts taken in compliance with post-Decree amendments to state law" is unintelligible and unjustified. This Court has already stated that "[t]he Consent Decree remains in effect during the discovery into, and resolution of, the motions to vacate." Dkt. 773 at 2. The Four Judges' failure to even identify or attempt to address the legal standard for the stay they seek is fatal to their request. But even if the Four Judges *had* addressed the stay factors, they could not approach satisfying any of them, particularly because a stay would upend enforcement of a consent decree that benefits the lives of tens of thousands of people every year and saved the County's taxpayers millions of dollars annually. The Court should deny their request.

### A. The Court Should Deny the Request to Expedite "a Ruling on *Younger*" Because It Would Delay, Not Advance, Resolution of the Rule 60 Motions.

The Four Judges' request to expedite fails for two reasons: First, the request's central premise—that the Court can resolve the Rule 60(b) motion raising *Younger* abstention as a matter of law, without any factual development or record—is wrong. Rule 60(b) requires the Court to undertake a fact-intensive, equitable analysis that demands evidence. Expediting consideration of *Younger* will do nothing to advance a resolution of the motions to vacate. Second, the Four Judges offer no legitimate reason for the Court to exercise its broad discretion to grant their belated request. Their delay in seeking expedited consideration undermines their claim to urgency.

---

[1] Plaintiffs' response does not address the merits of the Four Judges' Rule 60(b) argument based on *Younger* abstention as they do not understand that argument to be before the Court; it only addresses the request to expedite. If, however, the Court grants the Four Judges' request, Plaintiffs ask that the Court allow them the opportunity to fully brief their opposition.

Granting the request will only distract from the Parties' efforts to complete discovery, further delaying resolution of the pending Rule 60 motions.

> 1. *A full evidentiary record is required to determine whether a change in abstention law justifies modification or vacatur of the Consent Decree.*

The Four Judges' argument for an expedited ruling fails at the outset because it rests on the mistaken claim that "[d]iscovery and the consideration of evidence are wholly untethered to a decision on *Younger*." Mot. 4. That is simply untrue. "[A] consent decree is a final judgment that may be reopened only to the extent that equity requires." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 391 (1992). And "[i]t is Rule 60(b)'s standard—and *only* Rule 60(b)'s standard—that applies when a party seeks relief from final judgment." *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 214 (2025). The Court has ordered fact discovery so the Parties can assemble the record necessary to decide whether "equity requires" vacatur of the Consent Decree under Rule 60(b). Without that record, no decision is possible.

Motions to vacate or amend consent decrees require a case-specific and fact-intensive analysis. In *Rufo*, for example, the Supreme Court evaluated a motion under Rule 60(b)(5)—which permits modification of a "final judgment, order, or proceeding" where applying a judgment "is no longer equitable," Fed. R. Civ. P. 60(b)(5)—seeking relief from a consent decree meant to remedy unconstitutional conditions of confinement in a local jail. *Rufo*, 502 U.S. at 376–77. The Court rejected the argument that "a clarification in the law automatically opens the door for relitigation of the merits of every affected consent decree" because such a rule would "undermine the finality of such agreements" and "do violence to the obvious intention of the parties." *Id.* at 389–90 (quotation omitted). Instead, *Rufo* adopted a two-step fact-specific test for modifications under Rule 60(b)(5): First, the movant must show "a significant change either in factual conditions or in law" that "make compliance with the decree substantially more onerous [or] ... unworkable

because of unforeseen obstacles[,] ... or when enforcement of the decree without modification would be detrimental to the public interest." *Id.* at 384. Second, even if the moving party meets its burden at step one, the "district court should determine whether the proposed modification is suitably tailored to the changed circumstance." *Id.* at 391.

Following *Rufo*'s fact-specific approach to Rule 60(b) motions, the Fifth Circuit vacated a district court's modification of a consent decree because the court failed to "examine the evidence on the record and consider whether the moving party met its burden." *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 438 (5th Cir. 2011) ("*LULAC I*"). By failing to "present th[eir] evidence in their motion to the district court[,]" the movants "failed to meet [their] burden under the first step" of the *Rufo* test. *Id.* at 439. On remand, the district court issued a temporary modification of the consent decree based on the movants' "likelihood of success under the *Rufo* standard." *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 675 F.3d 433, 438 (5th Cir. 2012) ("*LULAC II*"). The Fifth Circuit again vacated the modification, observing that the district court did not "permit the parties to conduct discovery, or hold an evidentiary hearing to receive competing expert and lay testimony[.]" *Id.* "By approving a modification of the Consent Decree without holding a hearing and demanding a more developed factual record, the district court failed to follow the . . . *LULAC I* mandate." *Id.*

*Rufo*, *LULAC I*, and *LULAC II* require denying the Four Judges' request to expedite consideration of their Rule 60(b) motion regardless of whether *Younger* abstention would apply to this case if it were brought today rather than a decade ago. The Four Judges' invocation of *Daves II* cannot satisfy *Rufo*'s first step, much less do so as a matter of law.[2] But even if they could, they

---

[2] First, *Daves II*'s commentary on abstention should be considered a non-binding advisory opinion, given its conclusion that the case was moot. *Russell v. Harris Cnty.*, No. CV H-19-226, 2023 WL 5658936, at *3 (S.D. Tex. Aug. 31, 2023) (citing *Daves II*, 64 F.4th at 623–33). Nor, as this Court

8

would still have the burden to show that the equities support vacatur as a suitably tailored remedy. *See Rufo*, 502 U.S. at 391. *Daves II* did not address this Court's prior finding that the Consent Decree provides "critical relief" for "grave and widespread constitutional violations." Memorandum and Opinion Approving the Consent Decree, Dkt. 707 at 22. Moreover, a court will not vacate a consent decree if doing so would "create or perpetuate a constitutional violation." *Rufo*, 502 U.S. at 391. Thus, vacatur is impermissible if it would result in violations of class members' rights. *See, e.g., Johnson v. Florida*, 348 F.3d 1334, 1348 (11th Cir. 2003) (refusing to terminate consent decree where movant-state had neither "established the absence of ongoing constitutional violations" nor "that constitutional violations [would] not recur").

Thus, the foundational premise of the Four Judges' argument is wrong. Even if *Daves II* represented a change in law potentially warranting modification (it doesn't), even if *Younger* would apply on these facts in a hypothetical case brought today (it wouldn't), and even if the Four Judges had not waived their opportunity to re-litigate *Younger* (they did), the Four Judges would still have to show that the appropriate remedy is vacatur of the Consent Decree, which is a question that cannot be resolved as a matter of law. The Court must grapple with the evidence each side

---

has already recognized, was *Daves II* a change in law that "in and of itself, provide[s] a basis for modifying a decree," because it did not affect the substantive law on which the Consent Decree is based. Dkt. 764 at 22 (quoting *Rufo*, 502 U.S. at 390); *id.* ("*Daves II* did not hold that this consent decree does something the 'Federal Constitution forb[ids],' or targets policies that were 'legal' all along") (quoting *Rufo*, 502 U.S. at 389, 388).

Second, even if *Daves II*'s abstention holding were good law and a valid basis for potential modification, this Court would still need to determine whether the *Middlesex* factors are met and whether any exceptions apply. That would entail resolving fact-specific questions including whether the Four Judges waived their ability to raise *Younger* by "voluntarily choos[ing] to submit to a federal forum," *Ohio Bureau of Emp. Servs. v. Hodory*, 431 U.S. 471, 480 (1977), whether the state-court proceedings in Harris County are adequate and unbiased, *Gibson v. Berryhill*, 411 U.S. 564, 570, 577 (1973), whether Plaintiffs will suffer "great and immediate" irreparable harm if it abstains, *DeSpain v. Johnston*, 731 F.2d 1171, 1177 (5th Cir. 1984), and whether and to what degree the Consent Decree actually "impede[s] pending or future prosecutions on various charges in the state courts," *Pugh v. Rainwater*, 483 F.2d 778, 781 (5th Cir. 1973).

9

brings to bear on that question. That includes the Monitors' projection that doing away with key pieces of the Consent Decree would be "unworkable" and "have dramatic negative consequences on public safety, liberty, jail operations, and the County budgets." Ltr. from B. Garrett & S. Guerra Thompson to Four Judges, Dkt. 741-4 at 4. Plaintiffs expect testimony from numerous stakeholders will corroborate the Monitors' prediction and show that the modifications the Movants seek would be nothing short of catastrophic for the jail and the court system—not to mention the families who experience the system every day. The Court has already ordered the Parties to collect and provide the necessary evidentiary record—a process from which this motion practice is an unnecessary distraction.[3]

> 2. *There is no reason to bifurcate proceedings and expedite consideration of* Younger, *an unnecessary change that would further delay proceedings.*

Even if the Court could somehow give full consideration to the Four Judges' request despite lacking the necessary evidentiary record, the Four Judges have provided no valid reason to bifurcate proceedings and deviate from the scheduling order in this case. The Court should reject their disruptive request.

Courts refuse to expedite proceedings when, as here, the movant "offer[s] no reason for the Court to do so other than [the movants] filing [] a motion that could have been filed . . . earlier." *Talon Transaction Techs., Inc. v. Stoneeagle Services, Inc.*, No. 3:13-CV-902, 2014 WL 6819846, at *2 (N.D. Tex. Dec. 4, 2014); *In re Villareal*, 160 B.R. 786, 787 (Bankr. W.D. Tex. 1993) ("[I]f

---

[3] The Four Judges argue that the Court can reach *Younger* now because "[n]one of the reasons Plaintiffs gave for discovery relate in any way to the abstention argument." Mot. at 2 (citing Plaintiffs' pre-motion letter requesting a scheduling conference). As explained *supra*, that is incorrect. The same equitable considerations necessary to the Movants' state law claims are equally relevant to the Four Judges' abstention argument. Moreover, that Plaintiffs' letter did not explicitly reference *Younger* is hardly surprising: at that time, no party had raised *Younger* as a justification for moving to vacate, and the Court had just denied the Attorney General's request to intervene to assert it, noting that "defendants waived *Younger* abstention. Dkt. 764 at 29.

an expedited hearing is sought, it must appear clearly from the pleadings not only that there is an emergency but also that it is not an emergency of the movant's own making."). Relatedly, courts consider the prejudice that expedited consideration will have on the non-moving parties. *See Barkan Wireless IP Holdings, L.P. v. T-Mobile US, Inc.*, No. 21-CV-00034, 2021 WL 8441748, at \*2 (E.D. Tex. Dec. 22, 2021) (denying motion to expedite where expedited consideration "would unduly prejudice" the non-moving party); *Villareal*, 160 B.R. at 788 ("[T]he motion to expedite should address the question of prejudice to other parties . . . .").

Applying these principles, the Court should deny the Four Judges' request to expedite *Younger* on a separate track because granting the Motion is unnecessary and would only delay proceedings further. The Four Judges' claim to urgency is belied by their actions. They waited over three years since *Daves II*, six months since the Court's scheduling order, and five months since filing their Motion to Vacate to seek expedited relief. The Four Judges never once sought a decision on *Younger* abstention on a separate, expedited track until the day before filing their Motion. Not during the November 12, 2025 scheduling conference, when the Parties discussed the scope of discovery and the scheduling order. Not when they filed their own motion to vacate. And not during countless emails, calls, and meet-and-confers. Now, five months into a discovery period in which they have pursued hundreds of thousands of documents from the Parties and Monitors, *see* Exs. A, B, they claim an urgent need to change the Court's approach.

The Four Judges attempt to manufacture urgency by arguing "[r]ecent events show that resolution of *Younger* sooner, rather than later" is "critical." Mot. at 7–8. The recent events in question seem to be the Monitors' Ninth Report identifying situations where the Four Judges violated the Consent Decree and a September 12, 2025 letter identifying situations where enforcement of S.B. 9 conflicts with the Consent Decree. *See id.* at 7–8. But it is "stat[ing] the

11

obvious," Nov. 12, 2025 Tr. at 18:1–2, to say that until the Motions to Vacate are resolved, "the consent decree is in effect," *id.* at 17:21–22. It is the Monitors' job to evaluate the Parties' compliance with the terms of the Decree, as it has been for the past six years since they were appointed. Dkt. 708 ¶¶ 115, 117(f). The ordinary monitoring of the Consent Decree can hardly justify the Four Judges' belated request.

There are also no efficiencies gained by considering the Four Judges' *Younger* argument now, as there is no reason to believe that an expedited proceeding on *Younger* would avoid the need for this Court to separately hear and decide the Attorney General's motion to vacate or the remainder of the Four Judges' motion. The Court has already expressed skepticism of the same belated *Younger* argument when raised by the Attorney General. In denying the Attorney General's request to intervene on this basis, the Court observed that "*Daves II* did not make it legal to detain poor people pretrial solely because they cannot pay arbitrary amounts of cash," Dkt. 764 at 21, meaning *Daves II* does "not, in and of itself, provide a basis for modifying a [consent] decree., *id.* at 22 (quoting *Rufo*, 502 U.S. at 390). The Court also noted that "[b]y agreeing to the consent decree, the defendants waived *Younger* abstention." *Id.* at 29 (collecting cases). Neither the Four Judges' Motion to Expedite nor their original Motion to Vacate reckon with these observations. *Cf.* Mot. at 2–4; Mot. to Vacate, Dkt. 793 at 25–27. Indeed, not only would granting the Four Judges' request not speed up proceedings, by straining the Parties' and the Court's resources and slowing or halting the Parties' progress in discovery, it would have the perverse effect of further delaying resolution of the Rule 60 motions.

### B. The Court Should Deny the Request to Partially Stay the Consent Decree Because the Four Judges Do Not Even Attempt to Meet their Burden.

The Court should also deny the Four Judges' request to stay enforcement of the Consent Decree. A judicial stay is ordinarily a mechanism to preserve, not upset, the status quo. *Nken*, 556

U.S. at 429. "[A] stay is 'an extraordinary remedy'" where the movant's burden "is a substantial one." *Texas v. United States*, 40 F.4th 205, 215 (5th Cir. 2022). The Four Judges do not identify the specific Consent Decree provisions they seek to stay, *cf.* Proposed Order, Dkt. 803-2 at 1, let alone how the Court is supposed to determine whether an act is "taken in compliance with post-Decree amendments to state law," Mot. at 4. More importantly, the Four Judges have not even acknowledged the four *Nken* factors that determine whether a stay is justified, perhaps because those factors demonstrate the need for a factual record. These are glaring omissions given the monumental impact a stay would have on plaintiff class members, Harris County, the Twelve Non-Moving Judges, the Sheriff, the jail, the courts, and the public. *See* Corrected Ninth Monitor Report, Dkt. 799-1 at 6. The Four Judges have not met their burden for the extraordinary remedy of a stay. *See, e.g.*, *Dep't of Educ. v. Louisiana*, 603 U.S. 866, 868 (2024) (denying government's request for a stay on a "limited record" where the government did not "provided [the] Court a sufficient basis to disturb the lower courts' [preliminary injunctions]").

1. *The Four Judges have not demonstrated a strong likelihood of success on the merits.*

The Four Judges do not even argue, much less make "a strong showing that [they are] likely to succeed on the merits" of their Rule 60 motion. *Nken*, 556 U.S. at 434. On any of their asserted bases for vacatur, the Four Judges would need to show a likelihood of success on *Rufo*'s fact-intensive test for modification or vacatur of a consent decree. *See supra* § A.1.; *see also, e.g.*, *Vernon Smith, etc. v. Sch. Bd. of Concordia Parish*, 88 F.4th 588, 595–96 (5th Cir. 2023) (refusing to modify consent decree where movant "referenced Rule 60(b)(5) only *once*" and exhibited a "stark lack of briefing on the two primary bases for Rule 60(b)(5) relief," but instead urged modification "without regard to the Rule 60(b)(5) standard"). The Four Judges do not even attempt this careful balancing, let alone make the necessary showing. For example, they have not presented

13

any evidence on the "factual inquiry" of "how the consent decree is being implemented and how the state law affects that implementation." Nov. 12, 2025 Tr. at 13:16–18; *Williams v. Lesiak*, 822 F.2d 1223, 1228 (1st Cir. 1987) ("[O]verlapping court orders and subsequent state statutes" require "a careful case-specific inquiry that must be sensitive to the goals of the decree and the legislation, as well as to the values of federalism."). Nor have they demonstrated that staying enforcement of the Consent Decree would "not create or perpetuate a constitutional violation." *Rufo*, 502 U.S. at 391; Dkt. 707 at 26 (finding the Decree addresses "the fundamental source of constitutional deficiency" of the pre-trial system prior to this Court's intervention) (quotation omitted).

Another reason the Four Judges' motion to vacate is not likely to succeed is because their motion was not filed "within a reasonable time," as required by Rule 60(c). *See In re Delta Starr Broad, L.L.C.*, 422 F. App'x 362, 367 (5th Cir. 2011); *Gustavia Home, LLC v. Hoyer*, No. 16-CV-4015, 2022 WL 875096, at *3 (E.D.N.Y. Mar. 23, 2022) (noting that "a delay of more than' three years 'cannot be considered reasonable unless mitigating circumstances exist that justify such a delay'") (citation omitted); *Cadle v. Jefferson*, No. 3:07-CV-70, 2025 WL 1616725, at *2 (W.D. Ky. June 6, 2025) (noting that "delays of longer than two years are generally rejected").

Instead of identifying or presenting evidence on any of the stay factors, the Four Judges suggest the Court should issue a stay based on the "presum[ption that] Texas' bail-reform laws are constitutional, and Texas court procedures afford adequate remedies for arrestees." Mot. at 4. The Four Judges' appeal to a presumption of adequacy is irrelevant to the Rule 60 analysis on which they must demonstrate a "strong showing" of success, as well as to the other stay factors. *Nken*, 556 U.S. at 434. It also reflects a galling misapprehension of the legal basis underlying the Consent Decree. Throughout the *ODonnell* litigation, Defendants argued they were complying with state law. *See, e.g.*, Mar. 10, 2017 Tr., Dkt. 276 at 115:21–115:24 (Test. of Paula Goodhart) ("[M]y oath

14

of office is to follow state law . . . . We are under the state obligation to follow the law and consider all those factors."). Nevertheless, the Court found the Consent Decree was necessary to address "grave and widespread constitutional violations." Dkt. 707 at 22.

The Four Judges have not even attempted to argue that they are likely to succeed on the merits of any of their claims. That alone is reason to deny their request for a stay.

2. *The Four Judges have not shown a stay is necessary to prevent irreparable harm.*

The Four Judges also have not made a showing of irreparable harm. Their motion does not mention irreparable harm. They seemingly argue that the harm posed to them is the possibility that they could "be held in contempt of federal court" if they violate the Consent Decree. Mot. at 6. But complying with a consent decree hardly constitutes irreparable harm.

First, holding the Four Judges to a voluntary agreement is no harm at all. The Four Judges "struck a deal with the [other parties] and bound [themselves] to an enforceable judicial order." *United States v. City of Jackson*, 359 F.3d 727, 732 (5th Cir. 2004). By striking this deal, the Four Judges "vested the district court with the authority to ensure [their] compliance." *Smith v. Sch. Bd. of Concordia Par.*, 906 F.3d 327, 335 (5th Cir. 2018). Any harm the Four Judges now claim is "self-inflicted" and "not actually the prejudice from which courts should protect parties." *Green v. Servs. Corp. Int'l*, No. H-06-833, 2006 WL 8441295, at *2 (S.D. Tex. June 30, 2006).

Second, even assuming the risk of contempt from violating the Consent Decree constitutes some harm, that harm is not irreparable. Irreparable harm is "harm for which there is no adequate remedy at law." *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The Four Judges' stated harm fails this standard twice over: first, because they can defend against any contempt proceedings under procedures that provide them an adequate opportunity to be heard, *see Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994), and second,

15

because, if found in contempt, the Four Judges may "challenge the order on direct appeal of the contempt ruling," *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 377 (1981); *see, e.g.*, *M.D. by Stukenberg v. Abbott*, 119 F.4th 373, 378 (5th Cir. 2025) (reversing contempt order on direct appeal). Accordingly, "the risk of a finding of contempt does not rise to the level of irreparable harm necessary to grant a stay." *Consumer Fin. Prot. Bureau v. Nexus Servs., Inc.*, No. 5:21-CV-00016, 2024 WL 3236410, at *5 (W.D. Va. June 28, 2024).

Third, the Four Judges' delay in seeking a stay is inconsistent with their assertions of irreparable harm. "[C]ourts generally consider anywhere from a three-month delay to a six-month delay enough to militate against" finding irreparable harm. *Leaf Trading Cards, LLC v. Upper Deck Co.*, No. 3:17-CV-3200, 2019 WL 7882552, at *2 (N.D. Tex. Sept. 18, 2019) (collecting cases). The state legislature enacted S.B. 6 over four years ago. Each of the Four Judges has been on the bench for years with the Consent Decree in place, yet they waited until now, five months after filing their motion to vacate, to seek a stay. The second factor weighs against a stay.

*3. The Four Judges have not shown the equities and public interest favor a stay.*

Nor have the Four Judges shown that they meet the third and fourth stay factors because they have not demonstrated that a stay will not "substantially injure" class members, Harris County, the Sheriff, and the non-moving judges, or that the public interest favors a stay. *Nken*, 556 U.S. at 434. The Four Judges provide no evidence to meet their burden. And while the evidentiary record is still being developed, the evidence thus far suggests that the requested stay would wreak havoc on the County's pretrial system. "The monitors have consistently found that, under the consent decree, 'Harris County and [its] residents have saved "many millions of dollars' and 'the lives of tens of thousands of persons arrested for misdemeanors' have 'improved,' with 'no increase in new offenses by persons arrested for misdemeanors.'" Dkt. 764 at 5 (quoting Eighth Report of the Court-Appointed Monitor, Dkt. 739-1 at 5). Those findings were confirmed by the

16

Monitors' recent Ninth Report. Dkt. 799-1 at 6. Indeed, when the Four Judges previously asked the Monitor for similar relief from the Consent Decree, the Monitors found the proposal "unworkable," likely resulting in "dramatic negative consequences on public safety, liberty, jail operations, and the County budget." Dkt. 741-4 at 4.

Granting the requested stay would impair the constitutional rights of tens of thousands of class members each year, threaten millions of dollars for the County, and wreak havoc on the pretrial system and public safety. The equities and public interest strongly weigh against a stay.

***

The Four Judges have not attempted to justify the extraordinary relief they seek and cannot do so without evidence. None of the stay factors favor a stay. The Court should deny the request.

**CONCLUSION**

For the foregoing reasons, the Court should deny the Four Judges' motion in its entirety.

(signatures on following page)

17

Date: May 7, 2026                                          Respectfully Submitted,

/s/ Jeremy D. Cutting
Alec George Karakatsanis                    Neal S. Manne
alec@civilrightscorps.org                   Texas Bar No. 12937980
Elizabeth Rossi                             nmanne@susmangodfrey.com
elizabeth@civilrightscorps.org              Joseph S. Grinstein
Jeremy D. Cutting                           Texas Bar No. 24002188
cody@civilrightscorps.org                   Abbey E. McNaughton
CIVIL RIGHTS CORPS                          Texas Bar No. 2411675
1601 Connecticut Ave NW, Suite 800          SUSMAN GODFREY L.L.P.
Washington, DC 20009                        11000 Louisiana Street, Suite 5100
Telephone: (202) 681-2721                   Houston, Texas 77002
                                            Telephone: (713) 651-9366


Dustin Rynders                              Morgan McCollum
Texas Bar No. 24048005                      mmccollum@susmangodfrey.com
dustin@texascivilrightsproject.org          SUSMAN GODFREY L.L.P.
Travis Fife                                 One Manhattan West
Texas Bar No. 24126956                      New York, NY 10001
travis@texascivilrightsproject.org          Telephone: (212) 336-8330
Kirsten Budwine
Texas Bar No. 24140263
kirsten@texascivilrightsproject.org
TEXAS CIVIL RIGHTS PROJECT
2100 Travis Street
Houston, TX 77002
Telephone: (512) 474-5073


*Attorneys for Plaintiffs*

18

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of May, 2026, I electronically filed the foregoing with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ *Jeremy D. Cutting*
Jeremy D. Cutting