UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MARANDA LYNN ODONNELL, ET AL. §
§
*Plaintiffs*, §
§
v. §                                    Case No. 4:16-cv-01414
§
HARRIS COUNTY, TEXAS, ET AL. §
§
*Defendants.* §

## INTERVENOR'S RESPONSE IN OPPOSITION TO NON-MOVANTS' JOINT STATUS REPORT & REQUEST FOR STATUS CONFERENCE

Intervenor, Ken Paxton, the Attorney General of Texas, files his Response to Non-Movants' Joint Status Report & Request for Status Conference (Status Report") (Dkt. 808). Ordinarily, Intervenor will neither oppose a Status Report nor a Request for Status Conference. Here, however, he is constrained to. Regretfully, after Intervenor urged that the parties confer first to identify and attempt to resolve any disputes before approaching the Court and observed that the draft Status Report was inaccurate and misleading, Non-Movants nonetheless proceeded with filing, compelling this Response. While disguised as an objective "Status Report," the apparent goal is to extend the discovery deadline. The Status Report purports to advise the Court of "potential issues" that are "not yet ripe for a pre-motion conference," *id*. at 1, even as Non-Movants spurned Movants' repeated entreaties that the parties confer first and thereafter approach the Court as needed. The stated objective of the proposed Status Conference, besides extension of the discovery period and speculated potential disputes, is unclear. Accordingly, Intervenor respectfully submits his Response in opposition and to clarify discovery status.

## BACKGROUND

At 11.26 am on May 11, 2026, Plaintiffs' counsel emailed the parties a draft Status Report, requesting feedback by 5 p.m. of the same day, and stating:

> In light of the numerous outstanding issues outlined in the attached status report, *Plaintiffs believe we will need an extension of the discovery period. It also seems we may need court intervention on one or more issues currently pending.* We believe it prudent to let the court know about these issues now rather than later.

Intervenor responded that the parties had inadequate time to respond, and recommended that the parties meet and confer first, as they did in April, before approaching the Court. Counsel for the Judges Paula Goodhart, Leslie Johnson, Jessica Padilla, and Linda Carcia (the "Four Judges") agreed with Intervenor, and observed that the "report seems premature if the parties are in agreement that we need to confer on the issues you are presenting. We also have some issues with the presentation." Intervenor further expressed his disagreement with the draft because it was inaccurate and incomplete. Intervenor sent another email on May 12, 2026, stating:

> The draft you circulated requests a conference "for the purpose of resolving disputes and modifying the scheduling order" and requests the court to set a pre-motion conference and "order the Parties to confer and file pre-motion letters and proposed schedules." You reiterate that you are not seeking any relief but, unless I'm missing something, the draft explicitly seeks extension to the discovery period and modifying the scheduling order correspondingly. We don't need an order to confer (we didn't need one to confer in April) and I have requested that the parties try to confer first, identify and try to resolve any dispute before approaching the court, and then approach if unable to reach accord. Otherwise, we are putting the cart before the horse. In any event, as it appears from your email that Plaintiffs intend to proceed regardless, I will reserve any further comment and respond to your filing as appropriate.

Following that email, Intervenor spoke with Plaintiffs' counsel, detailing his concerns with the draft Status Report, reiterating that the parties should confer by phone or videoconference to identify and attempt to resolve any issues before approaching the Court, and restating opposition to extending the discovery deadline. Non-Movants proceeded with filing the Status Report.

2

**A.     Discovery Progress:**

While several items are generally accurate, the Status Report is not objective, and omits several key developments, such as those described below:

1.  The Status Report recited that Intervenor and the Four Judges served their discovery requests on Non-Movants on February 5, 2026 and February 11, 2026, respectively, but failed to mention that Non-Movants requested, and Movants granted a deadline extension to April 15, 2026.  Thus, Intervenor and the Four Judges gave Non-Movants *more than two months* to respond to his discovery requests.

2.  In granting the extension, counsel for the Four Judges stated: "I would only ask though that we discuss any snags you are running into on obtaining and reviewing docs so we can get that sorted out before April comes around."  Intervenor similarly conveyed the same expectation to the parties that any issues should be promptly raised and resolved in advance of the new deadline, given the June 12, 2026 discovery deadline.

3.  Notwithstanding Movants' request that Non-Movants promptly raise any concerns well in advance of the discovery deadline, it was not until April 2, 2026, less than two weeks before their discovery responses were due, that Plaintiffs asked to confer about Movants' discovery requests.  Following Plaintiffs' request to meet and confer, counsel for Harris County and the twelve Non-Moving Judges ("12 Judges") also wrote to join and discuss the Movants' respective Requests for Production, leading to the parties' meetings on April 3 and 6, respectively.

4.  Sheriff Ed Gonzalez neither responded to the discovery requests, sought to meet and confer, nor participated in the conference calls.

5. The April 3 and 6 meetings covered not only discovery but also potential amendments to the scheduling order, such as the deadline for expert reports, and providing Movants time to amend their motions to vacate to include evidence elicited from discovery. Movants were clear that any amendment to the schedule should not result in extending either the fact discovery deadline of June 12, 2026, nor the potential hearing date of August 27, 2026, and circulated proposed deadlines to avoid interference with August 27, 2026. The parties had worked toward a draft schedule within the current scheduled hearing date, but plaintiffs ceased discussions after being made aware of the Four Judges motion to expedite and subpoenas.

6. On April 24, 2026, Harris County produced records, and Plaintiffs followed suit on April 28, 2026.

7. On April 27, 2026, Intervenor asked counsel for the 12 Judges when to expect their production; he responded that they were under review but could start producing records in his custody.

8. On April 29, 2026, Intervenor emailed the Sheriff, whose discovery response was long overdue, asking when to expect his production. No response was received.

9. On April 30, 2026, Intervenor emailed Sheriff again about his overdue discovery response in light of the impending discovery deadline, noting that objections had been waived.

10. On May 4, 2026, the Sheriff sent his belated discovery response without producing any documents. On the same day, Intervenor notified the Sheriff that his discovery responses were inadequate, his objections had been waived and were baseless, and the

Requests for Admissions had been deemed admitted.  Intervenor further asked when to expect production of documents, especially in light of the discovery deadline.

11. On the same day, Intervenor also inquired into the status of the 12 Judges' production, and was informed that responsive documents had been pulled, were under review, and that counsel would provide an update on May 7, 2026.

12. On May 8, Intervenor sent yet another email to the Sheriff, inquiring again, among others, into timing for his overdue production given the impending discovery deadline.

13. On May 11, 2026, the Sheriff's counsel responded that he had gathered and was reviewing responsive documents and "hope[d] to have a better timeline for actual production by end of the week."

14. On May 12, 2026, Intervenor followed up with counsel for the 12 Judges, as no update was received on May 7, and was advised that counsel was conducting privilege review before producing the records.

15. The Status Report claims that Harris County has produced over 262,000 pages of documents, Dkt. 808 at 4, and paints a distorted picture of the Non-Movants drowning in production.  A significant omission is that the high page count in the County's production was simply because, instead of producing spreadsheets in native format, as is customarily done, the County converted them into pdfs and text files of 12,000 to 15,000 pages each, resulting in a deceptively high page count.  The County's production to date is barely 2,150 documents. Indeed, a large number of the production is unusable, as shown by Intervenor's eDiscovery Project Manager to Harris County on May 4, 2026, regarding its production, stating in part:

> We had some trouble importing some very large files that we received as part of the Harris County production on 04/24/2026 into our eDiscovery review platform.  After speaking with Joe, we don't believe we will need to analyze these files extensively, so there is no

need to re-produce any items at this time. I just wanted to provide some information in case these types of files needed to be produced at some point in the future.

These are all TAB or TXT files that appear to have been retrieved from a database and converted into a text format. Generally, we receive files like these in native format, with a single page place holder for the production view – like you would do with an Excel spreadsheet. Unfortunately, the large page count text files that were provided are not usable, as they come out looking like the following:

```
SPNDefendantNameActiveDefendantIIDNoContactSurrenDocsEMSPortablePhoneUA
UACondAlcoholScanCollateralCSCDAssessmentCurfewEducationEmploymentFlatFee
HireAttorneyMHMRAMustResideNoDrivingNoDrugsNoReplacementOtherOtherDescript
ionTelephoneCallRemainHarrisCountyReportInPersonSAEvalCourtOrderedSAEvalPositiveUA
SAEvalVoluntarySCRAMTreatmentCounselingCourtNumberCaseNumberCaseChargePretri
alBondTypeCaseStageDateBondApprovedSupervisionBeginDateDateReleasedDisposition
DateDispositionTypeDispositionLiteralDispositionStatusChangeUnsuccessfulReasonNewChar
geWarrantAssignedDateWarrantAssignedTypeActiveCaseCDINcicTcicCodeNcicTcicDescri
ption
00010000ABEL,
STEPHENFalse11822373110
1010FALSIFY DRUG TEST
RESULTPersonalNEW2018-12-112018-12-112018-12-17FTAaci/bfFTAY
False002360010FALSIFY DRUG TEST RESULTS
00010267BROWN,
ALBERTFalse1162245854010
10TER
THREATPersonalNEW2019-02-072019-02-072019-02-072019-02-13DISM
False002210097TERRORISTIC THREAT
00010286BROWN,
JIMMIEFalse11223636301010
ASLT BI FAM
MEMBPersonalNEW2018-12-042018-12-042019-04-18DISMNFalse00
2131420ASSAULT-FAMILY MEMBER
00010399CARTER,
MAXWELLFalse11209168040
801010AG
ASLTPersonalNEW2020-06-272020-06-272020-06-272021-01-14DISMN
False003131421AGG ASSAULT-FAMILY MEMBER
00010453CHRISTIE,
CHRISTOPHERFalse1922283
7701010THPersonalNEW2018-10-162018-10-172018-10-172019-12-12HCJ/CTS4
DAYS/2 DAYS CREDITFalse002239100THEFT >=$100<$750
00010460CLARK,
IVORIEFalse11123500220101
0CRIM
TRESPPersonalNEW2021-03-222021-03-222021-03-222021-04-08FTAACI/REV/B
FTAY2021-06-01ACI/REV/BFalse002570720CRIMINAL TRESPASS
00010492COLEMAN, JEFFERYTrue111DEF
SHALL NOT USE OR POSSESS ANY FIREARMS OR OTHER
WEAPONS2236888101010ASLTPersonal Not
ReleasedNEW2021-07-262021-07-26True002131420ASSAULT-FA
MILY MEMBER
00010519CONNER,
EARLFalse111188816050060
1010PCSPersonal-RICNEW2018-09-152018-09-162018-09-152018-12-11DADJprob
ation 4 yearsOtherNFalse003559904POSS CS PG 1 <1G
```

## B.    Outstanding Issues and Tasks.

After contending that "there are *numerous* outstanding issues to resolve and tasks to complete prior the close of fact discovery," Dkt. 808 at 4 (emphasis added), the Status Report lists only three.

**First issue**: Significant Outstanding Work to Complete Document Discovery.

Non-Movants' first issue is that "the Parties have significant work left to do to complete document discovery." *Id*. Regarding the second bullet on this issue, as noted above, counsel for the 12 Judges and the Sheriff have indicated that they are currently conducting privilege reviews. Such reviews should not be burdensome or time-consuming. In any event, to the extent the Status Report refers to discovery owed Intervenor, Non-Movants are in no position to speak for the

6

Attorney General, nor for the Four Judges and the Monitors, who have separate counsel.

The Status Report claims in the second bullet that "Non-Movants are currently reviewing tens of thousands of the Movants' RFPs." *Id*. Intervenor and the Four Judges sent separate RFPs, so it is unclear which "Movant" is referred to. Harris County has provided its discovery responses, which Intervenor is currently reviewing. Intervenor is unaware of any outstanding production that Harris County could be reviewing in response to his discovery requests nor has Harris County indicated that it is undertaking any additional production. Indeed, while Intervenor's email of May 4, 2026, notified Harris County of issues with its production, re-production was not requested.

Regarding the 12 Judges' and Sheriffs' outstanding production to Intervenor, the 12 Judges have delayed production, not because of volume, as the Status Report might suggest, but apparently for client-related/administrative reasons as counsel for the 12 Judges worked with his clients and the County court administration to obtain the requested records. Indeed, counsel for the 12 Judges notified Intervenor on May 12, 2026, that he had received the records and conducting privilege review before producing the documents. To the extent there is a high page count, it could also be related to the same issue as the County. Counsel for the Sheriff has not given any indication whatsoever that he has a high volume; instead, he indicated that he should have a timeline for his long overdue production by May 15.

The Status Report further states: "Although Plaintiffs believe they could complete production by June 12, 2026, that would not be sufficient time for any party to review those documents prior to depositions under the current schedule." *Id*. It is worth remembering that any outstanding discovery by Harris County, the 12 Judges, or the Sheriff is owed to *Intervenor*, not Plaintiffs. Intervenor has the discretion to decide whether, when, and who to depose, and when to

approach the Court for relief.  No matter how well-meaning, Plaintiffs, who are adversaries in this proceeding, do not speak for Intervenor.

The third bullet under this first issue states: "The Four Judges' subpoenas to the Monitors will require resolution."  Dkt. 808 at 4.  Non-Movants also do not speak for the Four Judges and the Monitors, whom the Status Report recognizes have separate counsel.  Without dismissing the possibility of a dispute between the Four Judges and the Monitors, the Status Report is merely speculating.   There is no indication that the Status Report reflects the latest communication between counsel for the Four Judges and counsel for the Monitors, or that Non-Movants are privy to such communication. Indeed, per counsel for the Four Judges, they are working with Monitors' counsel on narrowing requests to manage production within current deadlines. Astoundingly, even as the Status Report acknowledges that the Monitors have retained outside counsel, it nonetheless states that "*Plaintiffs* are also considering whether a protective order is necessary due to the scope of the subpoenas to the Monitors."  *Id*. at 4-5 (emphasis added).  It is unclear on what basis that Plaintiffs will purport to act for the Monitors, who are represented by separate counsel, Gibson Dunn & Crutcher, LLP.

**Second issue**: Depositions.

The Status Report claims that no depositions have occurred "largely because of the pace of document production."  *Id*. at 5.  But whose document production and for whose deposition?  As the Status Report acknowledged, on May 1, 2026, Plaintiffs notified the parties of intent to depose four witnesses on May 1: Judge Paula Goodhart ("Goodhart"), Hearing Officer Cheryl Diggs ("Diggs"), Hearing Officer Andrew Martin ("Martin"), and Executive Director Porscha Brown ("Brown").  Except for Judge Goodhart, among the Four Judges represented by separate counsel, the rest are Harris Counsel employees.  Counsel for Harris County has provided deposition dates

8

for Diggs (May 21) and Brown (May 20).  Counsel for the Four Judges also provided potential deposition dates for Judge Goodhart in early June.

Significantly, Plaintiffs sent discovery requests to Harris County on April 22, 2026, fully aware not only that the County has thirty days to respond, but also of the impending June 12 deadline.  As Plaintiffs and Harris County are aligned in implementing the Consent Decree and in opposing the Movants' motions, they both have ample time to expedite production of documents to facilitate timely discovery and are likely jointly aware of correspondence related to Consent Decree implementation or failures.

**Third issue**:  The Four Judges' Pending Motion.

Non-Movants' inclusion of a third issue, the Four Judges' pending Motion to Expedite and Partially Stay Enforcement of the Consent Decree, Dkt. 803, is baffling.  The Court is well aware of it; the Four Judges base their motion on the fact that discovery is unnecessary for the Court's ruling on it. It makes little sense to discuss a motion having no need for discovery in a Status Conference proposed because discovery is delayed.

## C.      Non-Movants have not shown good cause to extend the discovery deadline.

Federal Rule of Civil Procedure 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).  Thus, while the Court has discretion to modify its scheduling order, Non-Movants must demonstrate "good cause."  A lack of diligence negates good cause. Non-Movants have shown a remarkable lack of diligence.  On November 6, 2025, Non-Movants jointly wrote to the Court, requesting a scheduling conference on the proposed scheduling order requesting a six-month discovery period.  Dkt. 770. For all their claim that they needed discovery, only Plaintiffs have sent discovery requests (to the Intervenor, the Four Judges, and to the County).  Neither Harris County, the 12 Judges nor the

9

Sheriff sent a discovery request.

Non-Movants had over two months to respond to Intervenor's discovery requests and waited until a mere 13 days to their discovery deadline before requesting to meet and confer, with the exception of the Sheriff who neither bothered to respond nor participated in the meet and confer on April 3 and 6, even though he was copied in all the parties' correspondence. Non-Movants had ample time to flag any issues and confer with Intervenor long before the discovery deadline but failed to do so. Indeed, as shown above, Movants implored Non-Movants that potential discovery issues should be raised promptly so they can be resolved in light of the June 12, 2026 deadline.

The Sheriff's conduct has been egregious in paying little heed to the discovery deadline, responding only after Intervenor had sent repeated emails (on April 29 & 30) two weeks after the deadline, after he approached this Court to request discovery. Dkt. 770. More than three months after Intervenor's discovery requests, the Sheriff is yet to produce a single document; instead, after repeated emails inquiring as to when he would meet his obligations and produce responsive records, the Sheriff "hope[s] to have a better timeline for actual production by end of the week." Yet, the Sheriff submitted a Status Report claiming that "the Parties have diligently engaged in discovery." Dkt. 808 at 2.

On their part, Plaintiffs waited until April 22, 2026, before sending their discovery requests to Harris County. No reason has been offered for this inordinate delay, as Plaintiffs fully knew that Harris County has thirty days, that is, till May 22, 2026, to respond. Plaintiffs could have served their discovery requests in sufficient time to use any responses in depositions.

Plaintiffs also waited until May 1 before notifying the parties of intent to depose four witnesses, including three Harris County employees. Harris County provided potential deposition dates of May 20 and May 21, which would have resulted in Plaintiffs deposing witnesses before

10

Harris County's production was due.

The 12 Judges have also not completed production over three months after Intervenor's request.  While counsel for the 12 Judges has produced some records on "his laptop," the production of documents from the 12 Judges' emails own files remains outstanding.  The Court should not reward Non-Movants' lack of diligence and poor planning by extending the discovery deadline. None has shown good cause.

Non-Movants may argue that they are not seeking any relief in the Status Report. Intervenor respectfully disagrees.  That is belied by Plaintiffs' email of May 11, 2026, stating in part that "Plaintiffs believe we will need an extension of the discovery period."  Additionally, by stating that the "current date for the close of discovery is not practicable" Dkt. 808 at 2, by requesting that the parties "confer and file re-motion letters and proposed schedules no later than two days before the conference," *Id*., No-Movants' intent could not be more obvious.  Even if assuming they have not expressly requested an extension, they are clearly setting the stage for such extension.  Their request should be denied.

**D.     Another Status Conference with the Court is unwarranted.**

The proposed Status Conference is a solution in search of a problem and seeks to needlessly delay resolution of the Movants' pending motions.  At best, the Status Report raises speculative issues without a modicum of effort to resolve them before approaching the Court.  The parties did not need a Court order to confer in April and do not need one now to resolve any potential issues.

Further, while the Status Report purports to apprise the Court of "a number of issues and time-consuming discovery tasks [that] remain unsolved," Dkt. 808 at 1, one is hard pressed to identify a single concrete issue that is outside the parties' control and ripe for the Court's consideration in a Status Conference by May 20.  The 12 Judges and the Sheriff can expedite their

11

overdue production of documents, and can readily confer with Intervenor, if they face any issues. Intervenor has repeatedly emailed counsel for the Sheriff seeking to meet and confer on his outstanding discovery response and has been diligently following up, frequently reminding the Sheriff of the impending discovery deadline. He has also been dutifully following up with counsel for the 12 Judges. The 12 Judges and the Sheriff need not wait till a Status Conference to produce requested records. It is telling that Non-Movants are willing to spend time preparing a response to the 4 Judges motion, prepare this Status Report, and will "file-pre motion letters and proposed schedules" but somehow do not have time to either confer by phone or videoconference with Movants or expedite outstanding production.

### E.    Timing of the Status Report is suspicious.

Prior to Plaintiffs' email of May 11, 2026, expressing intent to file a status report regardless of the other parties' position, there was no discussion among the parties on providing periodic status updates to the Court. A status report was not discussed in the meetings on April 3 and 6 nor in the several emails among the parties. Indeed, this is the first "status report" since the discovery period. There was none at the halfway point, none at the sixty-day mark, only now, when Plaintiffs realized that they would need additional time for discovery. Thus, the so-called "Status Report" is a self-serving effort designed to drag out discovery and raise speculative, potential issues that Non-Movants are not even seeking a ruling on.

### CONCLUSION

For the foregoing reasons, Intervenor sees no reason for a Status Conference or extension of the discovery deadline at this time. Non-Movants have demonstrably shown lack of diligence and their extension request, disguised as a "Status Report," is designed to needlessly delay resolution of the pending motions to vacate. To the extent the scheduling order should be amended,

12

then Intervenor requests that Movants be afforded an opportunity to amend their motions to vacate to include any evidence derived from discovery.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief – General Litigation Division

/s/Joe Nwaokoro
JOE NWAOKORO
Attorney-in-charge
Texas Bar No. 24032916
Southern Dist. No. 30168
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667
Joe.Nwaokoro@oag.texas.gov

COUNSEL FOR THE ATTORNEY GENERAL
OF TEXAS

## CERTIFICATE OF SERVICE

I certify that on May 13, 2026, a true and correct copy of the foregoing document was filed and served via the Court's CM/ECF system to all counsel of record.

/s/ Joe Nwaokoro
Joe Nwaokoro
Assistant Attorney General

13