**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **MARANDA LYNN ODONNELL, *et. al.*, on behalf of themselves and all others similarly situated, Plaintiffs,** | § § § § | |
| **v.** | § | **CIVIL ACTION NO. 4:16-cv-1414** |
| **HARRIS COUNTY, TEXAS, *et. al.*, Defendants.** | § § § | |

**DEFENDANT JUDGES PAULA GOODHART, JESSICA PADILLA, LESLIE JOHNSON, AND LINDA GARCIA'S**
**RENEWED REQUEST FOR *YOUNGER* ABSTENTION**

## TABLE OF CONTENTS


NATURE AND STAGE OF THE PROCEEDING ........ 1

I. Lawsuit Background ........ 1

II. November 2019 – Consent Decree ........ 2

III. The Texas Legislature enacted S.B. 6 and S.B. 9. ........ 3

IV. The Attorney General for the State of Texas intervened seeking to vacate the Consent Decree, and the Judges gained counsel. ........ 4

V. Present Status ........ 5

ISSUE TO BE RULED ON ........ 7

SUMMARY ........ 7

ARGUMENT ........ 9

I. The Court must abstain under Younger ........ 9

II. Younger abstention is not waived ........ 11

A. There is no waiver through predecessors' entry into the consent decree. ........ 11

B. The Judges consistently urged Younger abstention ........ 11

C. There has been no waiver-through action or inaction ........ 12

i. Burden and Evidence ........ 12

ii. Applicable Law ........ 13

iii. The Judges asked for but were denied representation by the County, while their County arranged for their Democrat colleagues' representation ........ 14

iv. The Judges repeatedly asked the County for representation ........ 15

III. Mootness is a "coequal ground" for dismissal ........ 21

IV. CONCLUSION AND PRAYER ........ 22

**INDEX OF AUTHORITIES**

Cases

*Bank of N.Y. Mellon Tr. Co. Nat'l Ass'n v. Meachum*,
No. 21-10766, 2022 U.S. App. LEXIS 10757 (5th Cir. 2022) ....................13

*Broad. Satellite Int'l, Inc. v. Nat'l Dig. TV Ctr., Inc.*,
323 F.3d 339 (5th Cir. 2003) ....................13

*Daves v. Dallas County*,
64 F.4th 616 (5th Cir. 2023) (en banc) ....................9,21

*Daves v. Dallas Cty.*,
22 F.4th 522 (5th Cir. 2022) ....................11

*Emergency Mgmt. Agency*,
556 F.3d 307 (5th Cir. 2009) ....................12

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*,
457 U.S. 423 (1982) ....................10

*O'Neill v Coughlan*,
511 F.3d 638 (6th Cir. 2008) ....................13

*O'Shea v. Littleton*,
414 U.S. 488 (1974) ....................9

*ODonnell v. Goodhart*,
900 F.3d 220 (5th Cir. 2018) ....................1,12

*ODonnell v. Harris Cnty.*,
882 F.3d ....................11

*Polyflow, L.L.C. v. Specialty RTP, L.L.C.*,
993 F.3d 295 (5th Cir. 2021) ....................12

*Preiser v. Rodriguez*,
411 U.S. 475 (1973) ....................10

*RTM Media, L.L.C. v. City of Houston*,
584 F.3d 220 (5th Cir. 2009) ....................13

*Russell v. Harris Cnty., No. H-19-226*,
2023 U.S. Dist. LEXIS 154051 *10 ....................17,21

*State v. U.S. Dep't of Homeland Sec.*,
123 F.4th 186 (5th Cir. 2024) .......... 12

*Tarter v. Hury*,
646 F.2d 1010 (5th Cir. Unit A June 1981) .......... 9,10

*Younger v. Harris*,
401 U.S. 37 (1971) .......... 7,10

Statutes

Fed. R. Civ. P. 60 .......... 11

Tex. Code Crim. Proc. art. 17.08 .......... 3

Tex. Code Crim. Proc. article 17.024 .......... 3

Tex. Penal Code § 22.012 .......... 3

Texas Penal Code § 22.07 .......... 3

TO THE HONORABLE JUDGE LEE H. ROSENTHAL:

Defendants, Judges Paula Goodhart, Jessica Padilla, Leslie Johnson, and Linda Garcia (the "Judges"), file this renewed request to abstain under *Younger* pursuant to the Court's August 27, 2026 hearing and *In re Hon. Paula Goodhart, et al.*, No. 26-20337 (5th Cir. Aug. 26, 2026) (per curiam) ("*In re Goodhart*").[1]

**NATURE AND STAGE OF THE PROCEEDING**

**I. Lawsuit Background**

Originally filed on May 19, 2016 as a challenge to bail and other pretrial procedures for misdemeanor arrestees in Harris County (Dkt. 3), the Complaint was amended in September 2016 and included all judges of the 16 Harris County Criminal Courts at Law ("HCCCL") as defendants. Dkt. 54. The First Amended Complaint ("FAC") asked that County officials be required to inquire and consider whether arrestees have the ability to pay bail. Dkt. 54 at 121-23. The HCCCL judges moved to dismiss on multiple grounds, including *Younger* abstention, and their motion was denied. Dkt. 125. On January 7, 2017, the Court entered an injunction (Dkt. 302), and on June 1, 2018, the Fifth Circuit narrowed the injunction because it "amounts to the outright elimination of secured bail for indigent misdemeanor arrestees." *ODonnell I*, 892 F.3d at 163-64. The Fifth Circuit also overruled abstention arguments. *Id*. On August 14, 2018, the Fifth Circuit stayed a second injunction order, explaining it was overbroad in that "[s]ecured bail was not to be eliminated for any category of indigent arrestees, no matter how narrow." *ODonnell v. Goodhart*, 900 F.3d 220, 225 (5th Cir. 2018) (*ODonnell II*).

After these rulings from the Fifth Circuit, the judges who had filed the appeal lost the

[1] Following *In re Goodhart*, it appears that the parties and Court need not reach the other arguments made in the Judges' Motion to Vacate. Dkt. 793. If the Court rules otherwise, the Judges request the opportunity to provide any necessary further briefing.

November 2018 election. Once their successors took office in January 2019, they withdrew the appeal and Plaintiffs filed an unopposed motion asking the Fifth Circuit to vacate its August 2018 stay opinion. Plaintiffs argued that the circumstances were "akin" to mootness, since the new defendant judges changed their position and agreed with the Plaintiffs' revised preliminary injunction, which was "consistent with [the new judges'] policy views." Appendix B at 3 (Appellees' Unopposed Motion to Vacate Stay Opinion, No. 18-20466, filed Jan. 8, 2019 before the Fifth Circuit Court of Appeals).

Not long after, on August 1, 2019, Plaintiffs and Defendants jointly moved for approval of a class settlement agreement to impose bail-setting rules more sweeping than Plaintiffs had requested in the FAC and, in many respects, even broader than those the Fifth Circuit had already determined were too broad. The Court then entered the Consent Decree. Dkts. 617-2, 708.

## II. November 2019 - Consent Decree

The Consent Decree states its purpose was to remedy "systemic and longstanding constitutional violations found by the Court" and to "safeguard arrestees' equal protection and due process rights" such as rights to pretrial liberty and against wealth-based detention. Dkt. 617-1 at 11 ¶10. It limits judicial officers' ability to consider the relevant factors and terms of release for most class A and B misdemeanor arrestees. The Consent Decree requires County officials to comply with the HCCCL's Local Rule 9, which mandated the quick release of most misdemeanor arrestees on a general order bond ("GOB") without appearing before a trained magistrate to consider the circumstances of their arrest, criminal history, or any other pertinent facts (Dkt. 708 at 17-18); Loc R. 9.2.[2] Rule 9.5 provides that any judge deciding conditions of release "must have complete

[2] A GOB under the Consent Decree is a single pre-signed document executed by an associate judge and duplicated by the Sheriff for each case. It is not the same as a personal bond, which a judge or magistrate issues after considering the facts and surrounding circumstances. A GOB, on the other hand, issues as a standing order without any judicial officer knowing anything about the case, defendant, or facts. Texas law

discretion to release on a personal bond any misdemeanor arrestee prior to an individualized hearing." Loc. R. 9.5. Rule 9.7 also prohibits any judge from ordering secured money bail "as a condition of pretrial release at any time in the pretrial period for any misdemeanor arrestee" except for limited carveouts. Loc. R. 9.7. Rule 9.10 gives every judicial officer "complete discretion to release any misdemeanor arrestee on a personal bond." Loc. R. 9.10.[3] The Decree incorporated Local Rule 9, and prohibited its amendment without the approval of the Court-appointed Monitor or the Court. Dkt. 708 at ¶¶ 30, 120, 137.[4]

### III. The Texas Legislature enacted S.B. 6 and S.B. 9.

The Texas Legislature enacted criminal pretrial procedure reforms in 2021 and amended them in 2025, with the specific intent of protecting victims, law enforcement, and the public. *See* Appendix C (Bill Analysis, Tex. S.B. 9, 89th Tex. Leg., R.S. (2025)); *see also* Appendix D (Bill Analysis, Tex. S.B. 6, 87th Tex. Leg., R.S. (2021)). It established detailed procedures related to pretrial release, including extensive training for magistrates and hearing officers who make bail determinations (Tex. Code Crim. Proc. article 17.024), requiring an individualized review of all circumstances and factors under statute (Tex. Code Crim. Proc. art. 17.08(a)), and prohibiting a defendant from being released on personal bond if they are charged with certain offenses, including a terroristic threat under Texas Penal Code § 22.07. *See id*. at art. 17.03(b–2)(1)(B)(ii)).

---

not only requires magistrates to conduct an individualized review before issuing a bond order, it also prohibits standing general orders that violate Texas law.

[3] This Rule directly contradicts S.B. 9, now codified at article 17.03 of the Texas Code of Criminal Procedure.

[4] The current version of Local Rule 9 differs from what appears in the Consent Decree. Compare Loc. R. 9 (attached as Appendix G to Dkt. 793-1) with Dkt. 708 at 18 ¶¶ 9.4.1–9.4.6. The main difference is that, in 2022 (before the Judges took the bench), other HCCCL judges amended Rule 9 to add indecent assault as a carveout under paragraph 9.4.2. Indecent assault is a type of sexual assault perpetrated on a person 17 years or older. Tex. Penal Code § 22.012. There is no discussion of this being approved in the monitor's reports, or any other indication that the amendment was submitted to or approved by this Court.

The Consent Decree conflicts with, and prevents compliance with, these laws primarily by prohibiting trained hearing officers, magistrates and judges from considering the facts surrounding an arrest for most class A or B misdemeanor charges.

Plaintiffs' counsel admit the Consent Decree's required local rules violate S.B. 9:

> As you are aware, Senate Bill 9 took effect on September 1, 2025. In addition to other changes, Senate Bill 9 amended Article 17.03 to require cash bail for certain enumerated offenses, including three misdemeanors: terroristic threat Class A, unlawful possession of a weapon, and violating certain protective orders. Article 17.03 as amended by S.B. 9 is inconsistent with L.R. 9.2, 9.3, 9.10, and 9.12 as codified in the federal court Consent Decree issued in the *ODonnell* litigation.

Appendix A at 1–2 (emphasis added).

### IV. The Attorney General for the State of Texas intervened seeking to vacate the Consent Decree, and the Judges gained counsel.

The State of Texas moved to intervene in August 2025 and moved to vacate the Consent Decree. Dkts. 740 & 742. On October 30, 2025, the Court granted intervention in part, allowing the State to move to vacate or amend the Decree based on mootness under Texas law, and denied the State's ability to argue *Younger* abstention. Dkt. 764 at 35. On November 4, 2025, the undersigned counsel appeared for the Judges. Dkts. 765-766. On November 5th, the Judges moved to be substituted as parties in this case (Dkt. 767), and the Court entered an order granting their substitution. Dkt. 768.

On November 12th, the Court set a December 11, 2025 deadline to file motions to vacate, permitted limited fact discovery, and set a hearing on the motions "if necessary" on August 27, 2026. Dkt. 773. The AG and the Judges filed Motions to Vacate on December 11th. Dkts. 789 & 793. In March 2026, the Monitor filed his Ninth Report. Dkt. 799-1. The AG objected, noting the Monitor did not provide a draft to it as a party before filing, and because the report was riddled with flawed methods and analyses, rendering it unreliable. Dkt. 801 at 1-2. Plaintiffs responded to the objection.

Dkt. 801. On April 16, 2026, the Judges filed their Motion for Expedited Ruling on *Younger* Abstention, maintaining that the Court should quickly consider the issue as a matter of law, without burdensome discovery. Dkt. 803 at 1-2.[5] The Plaintiffs, Harris County, the other 12 HCCCL Judges, and the Sheriff all objected. Dkts. 804-807. They filed a status report and requested a conference. Dkt. 808. This prompted the AG to object to their apparent goal of extending discovery, and the Judges joined the objection. Dkts. 809-810. On May 26, 2026, the Court overruled the AG's objections to the Monitor's Ninth Report, denied the Judges' request to expedite consideration of *Younger* abstention (Dkt. 821), extended discovery, and continued the hearing date for the motions to vacate to November 16, 2026. Dkt. 820. The Judges sought mandamus relief, which all other parties but the AG opposed. Discovery continued in this case, including expert disclosures (Dkts. 847, 848) and the Judges' attempts to obtain data from the Court's Monitor, who refused to provide any data he relied upon for his report. *See* Dkts. 839, 852.

**V. Present Status**

On August 26, 2026, the Fifth Circuit issued *In re Goodhart*, directing the Court to consider the Judges' *Younger* abstention argument on an expedited basis, and "to follow *Daves II*." *In re Goodhart*, No. 26-20337 slip. op. at 8-9. The Court instructed that *Younger* abstention was not waived by the Judges' Democrat predecessors' agreement to the Consent Decree, and pointed to three of its prior opinions in this case, recounting that "the state judges consistently urged the district court and our court to abstain" from the case's inception through 2018, when Democrats swept the judicial elections. *Id*. at 7-8 (emphasis added, citing *ODonnell v. Harris Cnty.*, 892 F.3d 147 (5th Cir. 2018) ("*ODonnell I*"), *ODonnell v. Goodhart*, 900 F.3d 220 (5th Cir. 2018) ("*ODonnell II*"),

---

[5] The request for expedited consideration came at a time when not only had the Judges been threatened with criminal contempt by Plaintiffs' lawyers (Dkt. 793-2 at 3), but the Monitor had, for the first time in his Ninth Report, singled out some of the Judges for purported violations of the Consent Decree. Dkt. 799-1.

*ODonnell v. Salgado*, 913 F.3d 479, 481 (5th Cir. 2019) ("*ODonnell III*")). The Court noted that it was not until two years after *Daves II* issued that the Judges moved to substitute as parties (*id*. at 3), and rejected the Plaintiffs' implied waiver argument, noting that if the Judges "were unable to obtain counsel independent of their judicial colleagues who support the consent decree, we do not see how they could have filed earlier." *Id*. at 8. It is undisputed that the Judges had no counsel to assist with any challenges to the Consent Decree from the time they took office until outside counsel appeared on their behalf on November 4, 2025. Dkts. 765-766.[6] The docket shows nothing was filed on the Judges' behalf in that time period. The County had delayed, then denied the Judges' requests for outside counsel in April 2024.

The Judges now re-urge *Younger* abstention.

[6] Even with this appearance, the County did not execute counsel's engagement agreement until January 2026.

## ISSUE TO BE RULED ON

| | |
|---|---|
| **Issue** | Whether the Court should abstain under *Younger v. Harris*, 401 U.S. 37 (1971). |
| **Standard of review** | "The district court's decision on abstention is discretionary, but we review de novo whether the prerequisites of abstention have been satisfied." *Daves II*, 64 F.3d at 622-23. |

## SUMMARY

The Fifth Circuit has directed the Court to consider *Younger* abstention on an expedited basis, and to follow *Daves II*. *Daves II* held that *Younger* abstention applies to this case, and instructed that "revis[ing] by federal decree the Texas state court procedures for felony and misdemeanor pretrial bail, should never have been brought in federal court." *Daves II*, 64 F.3d at 620. This Court must follow that holding and dismiss.

Plaintiffs have indicated they will argue waiver, and, separately, that they are entitled to develop a factual record under Rule 60(b). The Fifth Circuit foreclosed these arguments.

With respect to factual development, not only is it undisputed that Texas law has changed, Texas law expressly provides mechanisms for challenging excessive bail. The procedural posture of this case does not distinguish it from *Daves II*, and as the Fifth Circuit held: "*Daves II* does not hinge upon factual development or discovery." *In re Goodhart*, slip op. at 6-7. *In re Goodhart* makes clear that the Court must abstain.

Plaintiffs indicate they want to explore waiver. But the Fifth Circuit largely foreclosed any waiver argument when it (1) held that a predecessor judge's entry into the Consent Decree does not waive *Younger* abstention, and (2) explained that the state judges clearly and consistently argued for abstention in both the district and appellate courts. The only remaining argument Plaintiffs can make is what this Court has described as a "window crack"—namely, if *Younger* abstention is waived as untimely raised because the Judges "were unable to obtain counsel

independent of their judicial colleagues who support the consent decree…."*In re Goodhart*, No. 26-20337 slip. op. at 8. Without counsel, the Fifth Circuit "do[es] not see how [the Judges] could have filed earlier." *Id*.

No detailed factual development is necessary to consider and deny any waiver argument, because it is undisputed that the Judges—***defendants in this lawsuit***—had no attorney, and that the County denied the Judges' request for representation while continually providing their Democrat colleagues with counsel. Any attempt to impute waiver under those circumstances borders frivolity, and would reduce the requirements of establishing implicit waiver into little more than a light sneeze.

Nor is the relevant time period, as Plaintiffs have argued, two years. *Daves II* issued on March 31, 2023. Three of the Judges (Judges Paula Goodhart, Jessica Padilla, and Leslie Johnson) took office on January 1, 2023, but Judge Linda Garcia, one of the movant judges here, did not take office until January 1, 2025. Therefore, even if Plaintiffs could show that three of the Judges sat idly by, did nothing to present or protect their legal rights, and willingly and knowingly waived *Younger* abstention through December 31, 2024 (of course none of which is true, as discussed below), it does nothing to defeat Judge Garcia's right to argue *Younger* which could not have arisen until she took office on January 1, 2025. At that time, the County had already denied three movant Judges' request for counsel. But the Judges plainly continued with their efforts to gain representation counsel during this time period, because counsel appeared for them in November 2025.

The Court should consider *Younger*, and dismiss.

## ARGUMENT

### I. The Court must abstain under *Younger*.

*Daves II* declared that this case should not "have been adjudicated in federal court." *Daves v. Dallas County*, 64 F.4th 616, 631 (5th Cir. 2023) (en banc) ("*Daves II*"). It overruled *ODonnell I*'s decision against abstention. *Id*. at 631, 635. The Fifth Circuit has now clarified that *Daves II* directly controls this case, and is not distinguishable due to its pre-judgment procedural posture. *In re Hon. Paula Goodhart, et al.*, No. 26-20337, slip. op. at 6 (5th Cir. Aug. 26, 2026) (per curiam) ("*In re Goodhart*"). Rather,

> *Daves II* expressly held that "*ODonnell I*...should [not] have been adjudicated in federal court" and that the district court should have abstained. 64 F.4th at 631. Again, *ODonnell I* is this case. *Daves II* does not hinge upon factual development or discovery.

*Id*. at 3. As *Daves II* directs, *Younger* abstention is a doctrine that "remains controlling today, with particular application to interventions into state criminal procedures." *Daves II*, 64 F.3d at 625. Federal courts must abstain when "(1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges." *Id*. (citation modified). Here, as in *O'Shea*,[7] and *Tarter*,[8] all three criteria apply: there is no dispute that this proceeding interferes with ongoing state judicial proceedings, or that the state has an important interest in regulating its pretrial criminal procedures. And, as the Fifth Circuit discussed in *Daves II*, "Texas law expressly provides mechanisms for challenging excessive bail," including motions for bond reduction, magistrate review of bail orders, and petitions for habeas corpus. *Id*. at 629.

---

[7] *O'Shea v. Littleton*, 414 U.S. 488 (1974).

[8] *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. Unit A June 1981).

*O'Shea* involved a claim of excessive bail, and request that a federal court constantly supervise state judicial officers, which is "antipathetic to established principles of comity." *Id*. at 626 (quoting *O'Shea*, 414 U.S. at 501). For those charged with a crime, they "would have recourse to [the] federal court" to seek compliance, "or even contempt." *Id*.[9] This "extensive federal oversight" would amount to "an ongoing federal audit of state criminal proceedings" in violation of *Younger*, especially where various adequate legal remedies existed in state court. *Id*. at 626-27. *Tarter* reached the same conclusion. *Id*. at 627. *Daves II* held that *O'Shea* and *Tarter* "supply compelling precedent for withholding federal adjudication of the bail complaint in both *ODonnell I* and *Daves*." *Id*. The Fifth Circuit reviewed its prior holding in *ODonnell I* rejecting *Younger* abstention, and overruled it. *Id*. at 631 (citing, inter alia, *Wallace v. Kern*, 520 F.2d 400 (2d. Cir. 1975)). The Court held that:

> The injunctions issued in Houston and Dallas plainly show federal court involvement to the point of ongoing interference and "audit" of state criminal procedures. Further, in stark contrast to *Gerstein*, Texas courts are neither unable nor unwilling to reconsider bail determinations under the proper circumstances, thus providing state court detainees the chance to raise federal claims without the need to come to federal court. The availability of state court remedies counsels that federal courts may not intervene under equity jurisprudence to decide these disputes.

*Id*. *Daves II* made clear that *Younger*'s focus is on "the fact that errors can be rectified according to state law, not that they must be rectified virtually immediately." *Id*. at 633.

Considering the analysis in *Daves II*, and the direction of *In re Goodhart*, the Court should abstain from further involvement in ongoing HCCCL proceedings pursuant to a "basic doctrine of equity jurisprudence" guided by "notions of comity" and federalism, where this case implicates important state interests and arrestees have an adequate opportunity to raise constitutional challenges through habeas relief. *See Younger*, 401 U.S. at 43-44 (citation modified); *Preiser v. Rodriguez*, 411 U.S. 475 (1973); *see also Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423,

[9] That is exactly what has happened here, as the Judges have previously argued. Dkt.793-2 at 3.

432 (1982).[10]

## II. *Younger* abstention is not waived.

### A. There is no waiver through predecessors' entry into the consent decree.

The Fifth Circuit has now twice held that *Younger* abstention has not been waived. *Daves v. Dallas Cty*., 22 F.4th 522, 547 (5th Cir. 2022); *In re Goodhart*, No. 26-20337 at 7. *In re Goodhart* specifically held that *Younger* abstention was not waived because the Judges' Democrat predecessors entered into the Consent Decree. *In re Goodhart*, slip op. at 6, 9. Plaintiffs, therefore, can no longer contend otherwise.

### B. The Judges consistently urged *Younger* abstention.

The *Younger* abstention argument has a turbulent history in this case, with ample briefing of it before this Court and the Fifth Circuit. In fact, this filing will be at least the seventh time that *Younger* abstention has been raised or urged in this case.

*In re Goodhart* also recognized that the judges have "consistently urged" abstention. *In re Goodhart*, slip op. at 7-8 (citing *ODonnell I*, *ODonnell II* and *ODonnell III*). On November 9, 2016, the County Judges moved to dismiss the complaint arguing, in part, that the Court should abstain under *Younger* (Dkt. 80), and this Court denied the Motion. *See ODonnell v. Harris Cty*., 227 F. Supp. 3d 706, 734-37 (S.D. Tex. Dec. 16, 2016). It was then raised at least twice on appeal. The Fifth Circuit denied the argument in a February 1, 2018 panel decision that was later withdrawn on rehearing (though the denial of *Younger* abstention remained). *See ODonnell v. Harris Cnty.*, 882 F.3d at 538, *withdrawn and superseded on panel reh'g by ODonnell I*, 892 F.3d at 156. Soon after,

---

[10] Plaintiffs contend a full, factual analysis under Rule 60(b) is appropriate even now, after the Fifth Circuit's clear mandate in *In re Goodhart*. The Judges disagree. *In re Goodhart* excused this Court from conducting a detailed factual analysis in its mandate, and its direction that "*Daves II* does not hinge upon factual development or discovery." *In re Goodhart*, slip op. at 6-7. Regardless, it is clear that there has been a change in the law (*Daves II* which is now expressly made applicable under *In re Goodhart*), and applying the Consent Decree is no longer equitable. Fed. R. Civ. P. 60(b)(4), (5), (6).

fourteen HCCCL judges[11] raised *Younger* abstention when requesting a stay of this Court's preliminary injunction, and on August 14, 2018, a Fifth Circuit panel granted the stay without reaching that argument. *ODonnell II*, 900 F.3d at 222. The dissent characterized the *Younger* arguments as "recycle[d]" and noted that the Fifth Circuit had "previously rejected" *Younger* arguments in *ODonnell I*, 892 F.3d at 156-57 & n.3, and opined that the Court was "unlikely to find them persuasive in their repackaged forms." *Id*. at 232 (Graves, J., dissenting). The argument was raised again by the AG (Dkt. 740-1), and by the Judges. Dkt. 793 at 20-22. It was addressed by the Fifth Circuit in *In re Goodhart*. It is now re-urged, again.[12] There is no waiver.

**C. There has been no waiver—through action or inaction.**

**i. Burden and Evidence**

It is Plaintiffs' burden to demonstrate waiver. *See State v. U.S. Dep't of Homeland Sec.*, 123 F.4th 186, 227 (5th Cir. 2024) (defendants do not have to prove no waiver of sovereign immunity, plaintiff asserting jurisdiction "has the burden of pointing to a congressional act that gives it consent to do so"); *see also Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009) ("Plaintiff bears the burden of showing Congress's unequivocal waiver of sovereign immunity"); *Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 307 (5th Cir. 2021) ("the burden of proving waiver falls even more heavily on the shoulders of the party seeking to prove waiver").

The Four Judges do not believe they need to put forth any evidence on the issue of waiver because (1) it is not their burden, and (2) any argument that they waived *Younger* at a time they were

---

[11] Including Paula Goodhart as Judge of HCCCL No. 1, Bill Harmon as Judge of HCCL No. 2, and Nathalie C. Fleming as Judge of HCCL No. 3. In 2019, Alex Salgado became Judge of HCCL No. 1, Ronnisha Bowman became judge of HCCL No. 2, Erica Hughes became judge of HCCL No. 3. Judges Goodhart and Leslie Johnson currently preside over HCCCL Nos. 2 and 3, respectively.

[12] It is no surprise that these arguments were raised when Republicans were parties to this case, and it is no secret that there were no Republican parties to this case after the consent decree was signed until 2023, when three Republican judges took office.

not represented by counsel can be considered and denied as a matter of law. But, because the Plaintiffs have indicated they will argue waiver, in the interest of expediency and due to the mandate in *In re Goodhart*, the Four Judges provide evidence of their efforts to gain representation to show they have not waived any *Younger* argument, so as not to cause any delay to the Court's consideration.

**ii. Applicable Law**

Any waiver of *Younger* abstention must be clear and explicit. *See, e.g., RTM Media, L.L.C. v. City of Houston*, 584 F.3d 220, 229 n.15 (5th Cir. 2009) (citing *O'Neill v. Coughlan*, 511 F.3d 638, 642 (6th Cir. 2008)). In *RTM*, the Fifth Circuit held the city did not waive *Younger* by conducting full discovery or fully briefing the merits of the case, where it consistently requested that the district court abstain. *Id*. at 229.

The Fifth Circuit has already acknowledged that the state judges have consistently urged abstention. *In re Goodhart*, slip op. at 7-8. *O'Neill*, cited in *RTM*, discussed another case that held that even when no party had raised *Younger* abstention to the district court and it was raised sua sponte on appeal, *Younger* abstention was not waived and the district court had no discretion to grant injunctive relief when *Younger* abstention applies. *See O'Neill*, 511 F.3d at 642-43 (citing *Beeman v. Stafford*, No. 94-3634, 1995 WL 456367, at *4 (6th Cir. Aug. 1, 1995) (unpublished). That is because "a federal court will only tread [wh]ere it is unequivocally invited." *O'Neil*, 511 F.3d at 643.

Finally, implied waiver requires, among other elements, conclusive evidence that a party "unequivocally manifests its intention to no longer assert its right." *Bank of N.Y. Mellon Tr. Co. Nat'l Ass'n v. Meachum*, No. 21-10766, 2022 U.S. App. LEXIS 10757, at *5-6 (5th Cir. 2022) (quotation omitted). There are no grounds to find the elements of waiver, including that the Judges through conduct intended to relinquish their rights. *Broad. Satellite Int'l, Inc. v. Nat'l Dig. TV Ctr., Inc.*, 323

F.3d 339, 345 (5th Cir. 2003).

**iii. The Judges asked for but were denied representation by the County, while the County arranged for their Democrat colleagues' representation.**

Plaintiffs criticize the Judges for not reasserting *Younger* abstention after *Daves II* issued on March 31, 2023. But the Judges were not represented by counsel willing to challenge the Decree from the time they took office until after October 30, 2025, when the below-signed counsel was retained to represent them. It is undisputed that the County hired an attorney to represent the Democrat HCCCL Judges who supported the Consent Decree and refused to hire counsel to represent the Republican HCCCL Judges to challenge the validity of the Decree. The message was clear: the County would provide counsel only to the judges who supported the Consent Decree, and if any HCCCL Judges were concerned that the Decree was invalid, or conflicted with state law, or resulted in the release of violent offenders without judicial review, the County would *not* provide them with an attorney to raise those concerns. As the Fifth Circuit has stated, if the Judges "were unable to obtain counsel independent of their judicial colleagues who support the consent decree, [the Court does] not see how they could have filed earlier." *In re Goodhart*, slip op. at 8. Plaintiffs cannot meet their burden to show waiver here.

First, the Court's docket shows no explicit waiver. From the time the Judges took office (three in 2023, one in 2025) up until November of 2025, there is not one entry filed on their behalf:[13]

| | | |
|---|---|---|
| 09/03/2022 | 734 | NOTICE *of Filing of Fifth Six-Month Monitor Report* by Robert Ryan Ford, Loetha Shanta McGruder, Maranda Lynn ODonnell, filed. (Attachments: # 1 Exhibit 1: Fifth Six-Month Monitor Report)(Cutting, Jeremy) (Entered: 09/03/2022) |
| 01/17/2023 | 735 | Letter from Jamarick Gray re: fairness and settlement agreement, filed. (ckrus, 4) (Entered: 01/17/2023) |

[13] The Fifth Circuit noticed this gap—stating in *In re Goodhart* that it was not until two years after *Daves II* issued that the Judges moved to substitute as parties. *In re Goodhart*, slip op. at 3.

| | | |
|---|---|---|
| 03/03/2023 | 736 | NOTICE *of Filing of Sixth Six-Month Monitor Report* by Robert Ryan Ford, Loetha Shanta McGruder, Maranda Lynn ODonnell, filed. (Attachments: # 1 Exhibit 1: Sixth Six-Month Monitor Report)(Cutting, Jeremy) (Entered: 03/03/2023) |
| 03/03/2024 | 737 | NOTICE *of Filing of Seventh Monitor Report* by Robert Ryan Ford, Loetha Shanta McGruder, Maranda Lynn ODonnell, filed. (Attachments: # 1 Exhibit 1: Seventh Monitor Report)(Cutting, Jeremy) (Entered: 03/03/2024) |
| 03/15/2024 | 738 | NOTICE of Appearance by Travis Walker Fife on behalf of Robert Ryan Ford, Loetha Shanta McGruder, Maranda Lynn ODonnell, filed. (Fife, Travis) (Entered: 03/15/2024) |
| 03/03/2025 | 739 | NOTICE *of Filing of Eighth Monitor Report* by Loetha Shanta McGruder, Robert Ryan Ford, Maranda Lynn ODonnell, filed. (Attachments: # 1 Exhibit Eighth Monitor Report) (Fife, Travis) (Entered: 03/03/2025) |
| 08/26/2025 | 740 | MOTION to Intervene by Ken Paxton, in his official capacity as the Attorney General of Texas, filed. Motion Docket Date 9/16/2025. (Attachments: # 1 Exhibit MEMORANDUM IN SUPPORT OF THE ATTORNEY GENERAL OF TEXAS MOTION TO INTERVENE, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Proposed Order) (Nwaokoro, Joseph) (Entered: 08/26/2025) |

**iv. The Judges repeatedly asked the County for representation.**

On January 1, 2023, when three of the Judges took office, Allan Van Fleet, who represented all of the then-Democrat HCCCL Judges since 2018, wrote to the new judges (including the Republican Judges) to introduce himself and extend his representation to them, with a caveat that he felt was important enough to repeat twice:

> vote. Obviously, if you (or any Judge) were to insist on taking a position contrary to your colleagues, I could not represent you, and you would need different counsel to represent you before the Monitor or Judge Rosenthal.

. . .

> Office of the Public Defender. So far, these individual incidents have been resolved. Obviously, if you (or any Judge) were to insist on taking a position that I believe contrary to the Consent Decree, I could not represent you, and you would need different counsel to represent you before the Monitor or Judge Rosenthal.

Exhibit 1-A. Mr. Van Fleet, as a conscientious attorney, established at the outset that his representation of the Judges' offices only extended so far as they were willing to go along with the

majority HCCCL Judges and to uphold the Decree.

In or around March 2023, the monitors in this Lawsuit held a meeting with the HCCCL Judges. Exhibit 1 at ¶ 3. Part of the discussion was whether the judges must follow state law or the Decree when there is a conflict between them, and Judges Padilla and Goodhart asked the monitors which controls, since the Decree conflicted with new state laws. *Id*. The monitors committed to getting guidance for the judges on that issue. *Id*. *Daves II* was issued shortly thereafter, on March 31, 2023. The HCCCL Judges were emailed a copy that same day by their staff attorney at the time, Ashley Guice. Exhibit 1 at ¶ 4.

In early April 2023, at an HCCCL meeting, Judge Goodhart asked again about conflicts between the Decree and state law, and what impact *Daves II* has on the Decree. *Id*. Shortly after that meeting, Mr. Van Fleet sent Judges Padilla and Goodhart a letter withdrawing from any representation in this Lawsuit. *Id*.; Exhibit 1-B.

Mr. Van Fleet also informed the monitors and other counsel of his withdrawal. Exhibit 2 (PLS_007313-April 18, 2023 email). While the letter does not expressly mention Judge Johnson at that time, Judge Johnson was aligned with Judges Goodhart and Padilla, had the same questions about the Decree, and did not consider Mr. Van Fleet as her attorney in this case. Exhibit 3 at ¶ 3 (Declaration of Hon. Leslie Johnson). Regardless, Mr. Van Fleet's prior correspondence makes clear that legal questions about the validity of the Decree remained outside of his representation. Exhibit 1-A. It was clear at that point that the three Republican Judges had no independent representation working on their behalf in this case.

Regardless, the three Judges wanted an answer to whether state law or the Consent Decree controlled, and what impact *Daves II* had on the Consent Decree. Exhibit 1 at ¶ 5. In April and May of 2023, Judge Goodhart pursued answers from the Attorney General ("AG"), seeking an opinion

on the issue, and asking whether the AG's office could represent them. *Id*. Judge Goodhart was informed that an HCCCL judge could not request an AG opinion. *Id*. She eventually learned the AG's office would not represent her or the other Republican judges because they are not state employees. *Id*. Around this time, briefing was submitted regarding *Daves II*'s impact in a related proceeding in this Court, *Russell v. Harris County* (No. H-19-226). **Exhibit 1** at ¶ 6. The three Judges waited with hope that rulings in the *Russell* matter would be applied to the Decree. *Id*. The opinion dismissing the *Russell* case issued in August of 2023, but was not applied to the Decree. *Id*.; *see also Russell v. Harris Cnty.*, No. H-19-226, 2023 U.S. Dist. LEXIS 154051 *10; 2023 WL 5658936 (S.D. Tex. Aug. 31, 2023) (mem. and order).

In October of 2023, Judges Goodhart and Johnson met with other HCCCL Judges seeking a consensus about revising the Decree and local rules to comply with Texas law, but the majority of the HCCCL Judges would not raise a challenge. **Exhibit 1** at ¶ 7. When that effort failed, and noting that the County provided uninterrupted representation to their Democrat colleagues, the three Judges turned to the County Attorney's Office to request independent representation for them in this case, which would permit them to raise their concerns over the Decree. *Id*. at ¶ 8. Judges Padilla and Goodhart largely handled these discussions, but included Judge Johnson in the request. *Id*.; *see also* **Exhibit 1-C** (email chain beginning October 30, 2023 referencing prior conversation with County Attorney Jonathan Fombonne about obtaining counsel in this lawsuit, stating "We are currently parties to a federal consent decree and do not have representation as our colleagues do. There is a conflict of interest that necessitates us having separate counsel"). The conversations with the County Attorney's office involved a process: they would find and recommend potential attorneys to that office, who would review and approve or decline them, and if approved, a proposed engagement agreement would be submitted to the Commissioners' Court for approval. Exhibit 1 at ¶¶ 8-9.

By mid-December 2023, Judges Padilla and Goodhart finally got a meeting with Mr. Fombonne and County Attorney Christian Menefee regarding their request for counsel for the Republican Judges. *Id*. at ¶ 10; **Exhibit 1-D** at 5-6 (April 23, 2024 email chain beginning December 11, 2023 about providing counsel). Judge Johnson was also to attend that meeting. Exhibit 1 at ¶ 10. The Judges were informed that the County Attorney would submit the matter to the Commissioner's Court to consider in its next executive session. *Id*. But, just after that meeting, the Judges learned that the County Attorney would not submit the request to Commissioners' Court until after the March 2024 primaries. *Id*. at ¶ 11.

On April 23, 2024, the Commissioners' Court finally considered the Judges' request for counsel. On that same day, Mr. Fombonne notified the Judges: "**today, the County Commissioners declined to approve the request for outside counsel**" in this case. **Exhibit 1-D** (April 23, 2024 email from Mr. Fombonne) (emphasis added).

The Judges did not cease their efforts over the next months. Judge Goodhart communicated with the AG's office about potential representation or involvement, and communicated with other elected officials about this issue. *Id*. at ¶12. She detailed her efforts speaking with the AG's office and asking for their assistance:

> After many conversations with Grant Dorfman when he was at the AG's office, another Harris County judge and I had a zoom meeting with James Lloyd and Kimberly Gdula on 8/12/24. We expressed our concerns about the pervasive practice in Harris County of releasing individuals on a "general order bond" without any judicial review because of the O'Donnell consent decree. We were and are concerned that we are being forced to violate state law daily because of the decree. They expressed interest in either representing us or intervening because of a state interest. Since that meeting, I spoke to Ms. Gdula on 11/19/24, 12/10/24 and 3/17/25. I left numerous messages including on 4/8, 4/15 and 4/23, two days after the deputy was shot by the individual released on 4/16 without an individualized bail hearing on his misdemeanor case. I have not heard from the AG's office since our conversation in March, so I do not know where they stand. We would appreciate their assistance in this matter as the Harris County Commissioners refuse to provide counsel for us to appear in federal court.

**Exhibit 1-E** (letter to G. Coker outlining efforts in 2024).

Judge Linda Garcia was elected to County Court at Law No. 16 and took the bench on January 1, 2025. Exhibit 1 at ¶ 13. Judge Garcia is aligned with the other three Republican Judges with respect to their concerns about the Consent Decree and its conflict with state law. *Id*.

Despite their prolonged efforts, the Judges continued without representation, and it was made clear that they would not be provided counsel in this lawsuit. But communications with the County Attorney's office continued about their concerns over the Decree and its requirement to violate state law. **Exhibit 1** at ¶ 14; **Exhibit 1-F**.

On April 23, 2025, a Harris County Deputy Constable was shot, allegedly by a person released on GOB without individualized review. **Exhibit 1-F** at 5. Judge Goodhart reached out to the monitors about the shooting and re-raised the issue of the Decree conflicting with state law. **Exhibit 1-F** at 5. The monitor refused to provide any advice on the Decree. **Exhibit 4** (April 25, 2025 email, RCCCL00000823). He referred Judge Goodhart to Mr. Fombonne, who confirmed that the County Attorney's office would not represent the Judges to challenge the Decree, and the Commissioners' Court declined to approve counsel for them. *Id*. at 2.

Mr. Fombonne also reiterated the County's declination of outside counsel representation to provide advice on challenging the Decree:

> We'd be happy to discuss. To go back to your prior email, I don't believe we said that we were conflicted on providing general legal advice on the consent decree – just that our office wouldn't be able to challenge the continuing validity of the consent decree. As you'll recall, we asked commissioners court for outside counsel for you to do so, but commissioners court declined to approve that contract.

**Exhibit 1-F** at 2.

As described below, it is during this time period (May 30, 2025) that the Judges took a proposal from the HCCCL Judges and presented a modification request to the monitors in an effort to alleviate the Consent Decree's conflict with state law. **Exhibit 1** at ¶ 15; **Exhibit 8** (May 30, 2025

letter). The monitor rejected that request on July 25, 2025. **Exhibit 1** at ¶ 15; **Exhibit 9** (7/25/25 letter). One day later, Mr. Fombonne *again* reiterated that the County Attorney's office would not represent the Judges regarding any modification of the Consent Decree. *Id*. at ¶ 16; **Exhibit 1-G**.

Mr. Van Fleet also confirmed (again) that he did not represent the Judges in response to their May 30, 2025 Decree modification request to the monitors, taken from an HCCCL discussion. **Exhibit 5** (May 30, 2025 email). Mr. Fombonne also responded on June 2, 2025 reiterating to *all counsel* in the case that:

> we've let [the Judges] know [the County] can't represent them in any modification proceedings given the position of the County in this litigation. These judges requested outside counsel last year, but commissioners court did not approve that request.

**Exhibit 6** at HC - 950779.

During this time period, Judge Goodhart reached out to others in attempts to gain assistance. In an April 28, 2025 letter to Senate Legislative Director, Grayson Coker, she outlined additional efforts taken with the AG's office in 2024 and into 2025 **Exhibit 1-E** (April 28, 2025 letter to G. Coker).

The Texas Attorney General moved to intervene on August 26, 2025 [Dkt. 740] and the very next day, the Four Judges made a second request for independent counsel. **Exhibit 1** at ¶17; **Exhibit 1-H** at 7. They were even contacted by Plaintiffs' counsel asking for a response to a motion when they were not represented by counsel. **Exhibit 1** at ¶17; **Exhibit 1-H** (September 2, 2025 email). Judge Goodhart responded that she did not feel comfortable joining a motion without counsel, and communicated her concerns about restrictions on practicing law while serving as an elected judge. **Exhibit 1-H** at 1.

The Judges' request for independent counsel was submitted again to the Commissioners' Court on September 18, 2025, and approved—but only on the condition that "the Attorney General's Motion to Intervene in the O'Donnell case is granted." **Exhibit 7** at 2 (9/18/25 CC Exceptions

Agenda); **Exhibit 1** at ¶ 18. Intervention was granted on October 30, 2025. Dkt. 764. Counsel for the Judges was retained, appeared on November 4, 2025 [Dkt. 765], and moved to substitute the Judges in the next day. Dkt. 767. Consistent with the scheduling order issued in this case, the Judges filed their motion to vacate raising the abstention issue on December 11, 2025. Dkt. 793.

Based on the foregoing, Plaintiffs have no merited argument that the Judges waived their rights to raise the *Younger* abstention doctrine. Consistent with the Fifth Circuit's directives, abstention must be considered and following *Davies II*, this case should be dismissed.

**III. Mootness is a "coequal ground" for dismissal.**

The Judges discuss mootness briefly here because the Court mentioned it at the August 27, 2026 hearing. The Court previously dismissed claims in the *Russell* litigation as moot after *Daves II* issued. *Russell v. Harris Cnty.*, No. H-19-226, 2023 U.S. Dist. LEXIS 154051 *10; 2023 WL 5658936 (S.D. Tex. Aug. 31, 2023) (mem. and order) ("*Daves*, although involving different facts, is largely legally identical to *Russell*. Adherence to Fifth Circuit authority requires that this case be dismissed as moot"). Any ruling on mootness is reviewed *de novo. Daves II*, 64 F.4th at 623.

Briefly, *Daves II* addressed *Younger* abstention first, and afterward turned to mootness as a "coequal ground" for dismissal. *Daves II*, 64 F.3d at 633. That ground was not burdened by a heavy factual analysis. The Court noted that the named plaintiffs were not "subject to bail proceedings since years before the advent of S.B. 6," making their ability to pursue ongoing injunctive relief as an injured party or class representative questionable. *Id*. at 634. The provisions of Texas' heavily procedural new bail-reform laws, and their implementation, presented "constitutional issues beyond the scope of this case and the circumstances of the plaintiffs who filed it." *Id*. at 635. The Court held that, "even if federal courts were not compelled by *Younger* and *O'Shea* to abstain, the present controversy must be considered moot" because the issues presented are not live, and the parties lack

a legally cognizable interest in the outcome. *Id*. at 634. The same is true here. The Court may dismiss based on *Younger*, or may sua sponte consider and apply *Daves II*'s mootness analysis. The result is the same.

## CONCLUSION AND PRAYER

The Judges ask that the Court consider their *Younger* abstention argument on an expedited basis, and issue an order consistent with the holdings in *Daves II*.

Respectfully submitted,

**GREER, HERZ & ADAMS, L.L.P.**

By: /s/ *Joseph R. Russo, Jr.*
Joseph R. Russo, Jr.
Federal I.D. No. 22559
State Bar No. 24002879
jrusso@greerherz.com
Angie Olalde
Fed. ID No. 690133
State Bar No. 24049015
aolalde@greerherz.com
123 Rosenberg Street, Suite 3000
Galveston, Texas 77550
(409) 797-3200 (Telephone)
(866) 456-0170 (Fax)

**ATTORNEYS FOR DEFENDANTS**
**HON. PAULA GOODHART,**
**HON. JESSICA PADILLA,**
**HON. LESLIE JOHNSON, AND**
**HON. LINDA GARCIA**

## CERTIFICATE OF CONFERENCE

The below-signed counsel has conferred with counsel for the other parties in this case. The Attorney General is NOT OPPOSED to this Motion, and the remaining parties are OPPOSED to this Motion.

*/s/ Joseph R. Russo, Jr.*

## CERTIFICATE OF SERVICE

I certify that on the 31st day of August, 2026, a true and correct copy of the foregoing document was delivered to all counsel of record via the CM/ECF system and served by electronic notice to all parties of record.

*/s/ Joseph R. Russo, Jr.*