EXHIBIT
1

**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **MARANDA LYNN ODONNELL, *et. al.*, on behalf of themselves and all others similarly situated, Plaintiffs,** | § § § § | |
| **v.** | § | **CIVIL ACTION NO. 4:16-cv-1414** |
| **HARRIS COUNTY, TEXAS, *et. al.*, Defendants.** | § § § | |

**DECLARATION OF JUDGE PAULA GOODHART**

BEFORE ME, the undersigned authority, on this day personally appeared the undersigned affiant, who, being by me duly sworn, on oath stated:

1. My name is Paula Goodhart. I am the presiding Judge of Harris County Criminal Court at Law ("HCCCL") 2, and have been since I took that office on January 1, 2023. I am at least eighteen years of age, of sound mind, capable of making this affidavit and fully competent to testify to the matters stated in this affidavit, and I have personal knowledge of each of the matters stated.

2. **Exhibit 1-A** is a true and correct copy of a letter I received from Allan Van Fleet on or about January 1, 2023 regarding his representation of the HCCCL Judges, including limitations on that representation.

3. In or around March 2023, the monitors in this Lawsuit held a meeting with the HCCCL Judges. Judge Padilla and I asked the monitors whether Texas' new bail-reform laws or the Consent Decree would control HCCCL pretrial procedures, since the Decree conflicted with new state laws. The monitors committed to getting guidance for the judges on that issue.

4. Our staff attorney, Ashley Guice, forwarded the *Daves II* opinion to the HCCCL Judges on March 31, 2023. At an HCCCL meeting in or around the first week of April 2023, I asked again about whether state law conflicts with the Decree and what impact the new opinion has on the Decree. Shortly after that meeting, Judge Padilla and I received the April 6, 2023 letter from Mr. Van Fleet withdrawing from any representation of me and Judge Padilla. A true and correct copy of that letter is attached as **Exhibit 1-B**.

5. Judges Padilla, Johnson, and I wanted an answer to whether state law or the Consent Decree controlled, and what impact *Daves II* had on the Consent Decree. In April and May of 2023 I asked Grant Dorfman who was serving as a Deputy First Assistant at the Attorney General's ("AG") office whether we could request an AG opinion about which controls if there is a conflict, the Consent Decree or Texas' new laws. I was

informed that an HCCCL judge could not request an AG opinion. I also asked whether the AG's office could provide representation for me and my colleagues who questioned the Decree. I eventually learned that would not happen because we were not considered state employees.

6. Around this time, I was aware of briefing concerning the impact of the *Daves II* opinion being submitted to Judge Rosenthal in a related proceeding, *Russell v. Harris Cnty.*, No. H-19-226. I waited, along with my colleagues, to see whether a decision in *Russell* would impact the Decree. The *Russell* decision issued in August 2023, but there was no change made to the Decree.

7. In October of 2023, Judge Johnson I met with other HCCCL Judges at a retreat. We sought a consensus on whether the judges would work to revise the Decree to comply with state law. The majority of HCCCL judges declined.

8. Judge Padilla and I also asked the County to provide representation for us and Judge Johnson, since the County provided the other HCCCL judges with an attorney. I understood that a request for representation could be made to the County Attorney, who would review specific attorneys, and if the County Attorney's office approved them, it would submit a proposed engagement agreement to the Commissioners' Court for approval.

9. Judge Padilla and I spoke with Assistant County Attorney Jonathan Fombonne requesting representation in this Lawsuit. **Exhibit 1-C** is a true and correct copy of an email string between Mr. Fombonne, Judge Padilla and me. **Exhibit 1-D** is a true and correct copy of an email string including the County Attorney Christian Meneffee, Mr. Fombonne, Judge Padilla and me.

10. In mid-December 2023, Judge Padilla and I met with Mr. Fombonne and Mr. Menefee, and again requested that the County provide us counsel in the Lawsuit. Judge Johnson was also to attend that meeting. We were informed that the County Attorney would submit the matter to the Commissioner's Court to consider in its next executive session.

11. Shortly after this mid-December meeting, Mr. Fombonne informed Judge Padilla that the County Attorney would not submit our request for counsel to the Commissioners' Court until after the March 2024 primary elections took place. We continued to follow up with Mr. Fombonne about requesting counsel for us from the Commissioners' Court.

12. After that, over the course of several months, I communicated with the AG's office about potential representation or involvement, and communicated with other elected officials about this issue. Attached **Exhibit 1-E** is a true and correct copy of my April 28, 2025 letter to Grayson Coker discussing my efforts.

13. In 2024, Judge Linda Garcia was elected to County Court at Law No. 16 and took the bench on January 1, 2025. Judge Garcia is aligned with myself, Judge Padilla, and

Judge Johnson with respect to our concerns about the Consent Decree and its conflict with state law.

14. I continued communicating with the County Attorney's office about my concerns about the Decree and being forced to violate state law. I emailed and spoke with Mr. Fombonne on the issue. **Exhibit 1-F** is a true and correct copy of his April 28, 2025 response.

15. On May 30, 2025, I and my Republican colleagues sent a request for modification to the monitor in an effort to alleviate the Consent Decree's conflict with state law. The monitor rejected our request on July 25, 2025.

16. The County Attorney's office informed us that it would not represent us concerning any modification of the Consent Decree. Attached as **Exhibit 1-G** is a true and correct copy of Mr. Fombonne's June 26, 2025 response to questions we had about the Consent Decree.

17. After the AG moved to intervene in August of 2025, Judges Padilla, Johnson, Garcia and I asked the County to again consider providing us outside representation in this Lawsuit. **Exhibit 1-H** is a true and correct copy of a September 2, 2025 response to Plaintiff's counsel asking for our response to a motion while unrepresented.

18. On or about September 18, 2025, the Commissioners Court finally approved hiring counsel to represent us, on the condition that the AG's Motion to Intervene was granted.

19. I was not represented by counsel in the above-referenced case from early 2023 until the law firm of Greer, Herz and Adams, LLP was retained to represent me and my three colleagues, Judges Padilla, Johnson, and Garcia after October 30, 2025. I was not sent draft copies of monitor reports prior to the Ninth Report, when I had counsel.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 31, 2026.

Paula Goodhart

Paula Goodhart