**Brandon L. Garrett**
**L. Neil Williams, Jr. Professor of Law**
Duke University School of Law
210 Science Drive
Box 90360 • Durham, NC 27708-0360
Phone: 919-613-7090
BGarrett@law.duke.edu

**Sandra Guerra Thompson**
**Newell H. Blakely Professor of Law**
University of Houston Law Center
4170 Martin Luther King Blvd.
Room 430W • Houston, TX 77204-6060
Phone: 713-743-2134
sgthompson@central.uh.edu

July 25, 2025

Hon. Paula Goodhart, Jessica Padilla,
Leslie Johnson, and Linda Garcia
Judges, Harris County Criminal Courts at Law

Re: Proposal to Modify Rule 9

Dear Judge Goodhart and Colleagues:

We are writing in response to your proposal, shared with us in the letter dated May 30, 2025, on behalf of County Criminal Court at Law Judges Paula Goodhart, Jessica Padilla, Leslie Johnson, and Linda Garcia – to modify the ODonnell Consent Decree and Local Rule 9. We have benefited from the two conversations that we have had and we now we far better understand the proposal. We have also, as we shared with you, been gathering information, regarding case processing and budgetary impacts, to better study the proposal's likely impacts. We write below to share our reasoning in response.

As we all now know, based on more than five years of experience in Harris County with the changes made, Local Rule 9, adopted in early 2019, and the ODonnell Consent Decree, has permitted tens of thousands of people who are arrested for low-level, nonviolent offenses to be released without the need to pay money to secure their liberty. From the beginning of our monitoring work, we have consistently observed and reported that the changes in the bail rules for these minor arrests have not increased repeat offending or created a public safety risk. Instead, public safety has benefited, with steadily declining numbers of misdemeanor arrests and rearrests. Any major changes that might impact the rules that have produced those remarkable public benefits, while safeguarding people's legal and constitutional rights, must be carefully considered.

Our overall task when considering any proposal to modify Rule 9 or the Consent Decree, is to follow the considerations set out in Paragraph 31, which states:

> Any change to Local Rule 9 must ensure that no misdemeanor arrestee is detained solely due to inability to make a monetary payment; that hearings to determine conditions of release or detention comply with constitutional principles of equal protection and substantive and procedural due process; that any condition of release is the least restrictive condition necessary to meet the government's interests in preventing bodily harm to another person and preventing flight from prosecution; and must be consistent with the best available evidence.

Thus, any such request must be evaluated based on whether it satisfies those core principles, reflecting core commitments of the U.S. Constitution, as well as Texas law.

Further, Paragraph 26 states that:

> Any requests for resources and staffing needs by County departments related to the implementation of this Consent Decree will be evaluated by the Monitor, who will provide a recommendation to assist Commissioners Court in its determination of the extent and type of staffing and resources needed, if any, in response to the request.

Thus, for any requested modification that would have substantial budgetary and/or staffing implications, we must examine the types of information that the Commissioner's Court would have to consider.

The Consent Decree states in Paragraphs 32 and 33, that parties may make requests to modifty the Consent Decree. The present request, which Paragraph 32 speaks to, is characterized as a request to "amend Local Rule 9."

**A. The Request for a Modification is Premature**

We begin with a fundamental procedural concern. We view this request, because it involves a request to amend Local Rule 9, as premature.

We agree, of course, that all County Criminal Court at Law judges are parties to ODonnell. However, for four judges to request a modification to the Consent Decree and to amend Rule 9, which the other judges do not join, raises a question of timing and procedure. Without any consensus among the judges on the request, and we have learned that no such consensus exists during our two group conversations about this proposal, we do not have what amounts to a final proposal from the CCCL Judges to consider.

After all, even if the other parties to the Consent Decree agreed that such a modification was a sound and worthwhile improvement, all of the judges would have to vote to approve any amendment to a local rule. We have been informed by counsel for the other thirteen CCCL judges that they do not join in this proposal, at this time. Where the CCCL judges differ over the appropriate path forward, we do not think that consideration of a proposal, with so little support, is itself appropriate.

That is why, we believe, the Cosnent Decree speaks to requests from the "CCCL Judges." The "CCCL Judges" have not made a request to amend Local Rule 9. Four judges have done so. And four judges cannot, acting alone and without further consensus among their colleagues, amend Local Rule 9.

We also note that no other parties have expressed support for the proposal. We sought to reach out to all of the parties to solicit their feedback and to gather information that could inform our decisionmaking. In a July 11, 2025 letter, the plaintiffs detailed their reasons for opposing the request. As noted, counsel for the other thirteen CCCL judges shared that those judges are not of one mind about any change to Rule 9, and they do not join in the request by the four judges.

We believe that if there was proper deliberation among the judges, and also among the parties, a workable proposal could be developed. The Consent Decree, in Paragraphs 32 and 33, contemplates that type of deliberation, where the "CCCL Judges" would themselves come together to consider, and potentially request, a change. We remain very much open to ways to improve the Consent Decree and Rule 9, including to cement the enormous public benefits of these rules going forward.

However, at this time, we decline to approve or reject the proposal as it is not properly before us.

**B. The Merits of the Proposal**

While we do not view this proposal as properly before us, we add that, even if there was consensus of the CCCL judges, and agreement among the other parties, we believe that it is unworkable as drafted, and would have dramatic negative consequences on public safety, liberty, jail operations, and the County budget. We have serious constitutional concerns with what is being proposed. Indeed, the proposal is also not well suited to accomplish the drafters' stated goal of better harmonizing Rule 9 with more recent changes to Texas law.

We note first, that the four judges have advanced this proposal with one stated purpose: to better harmonize Rule 9 to reflect more recent changes in Texas law, specifically, to Article 17.03 of the Texas Code of Criminal Procedure. That is a laudable goal. The drafters of the Consent Decree put great effort into harmonizing the provisions designed to safeguard constitutional rights with Texas law, at that time. Making efforts to maintain that balance, as Texas law changes, is a worthwhile goal. Unfortunately, this proposal does not accomplished that goal well.

In one major respect, the request made by the four judges is not geared towards reflecting past or current Texas law. Currently, Local Rule 9 requires releasing anyone who is detained for more than 48 hours without a bail hearing, or without the required findings made at a bail hearing. The proposal had deleted this remedy from the new Rule 9. During our first zoom meeting to discuss the request, you and your three colleages had agreed to delete this part of the proposal, but then later declined in writing to do so.

There is no reason, based in Texas law, for eliminating the 48-hour remedy, and no such basis was given. Indeed, the 48-hour release requirement of Rule 9 and the Consent Decree provides a remedy for a right which has been well-established in Texas law (under Article 17.028 ("Without unnecessary delay but not later than 48 hours after a defendant is arrested, a magistrate shall…")), and which reflects important constitutional concerns as well – the concern for prolonged detention, without a bail hearing or required findings.

Omitting that protection raises a special concern where the core of the proposal is likely to cause dramatic delays in processing people arrested for misdemeanors, which will burden the entire Joint Processing Center, and potentially impact felony case processing and bail hearings as well. The result may threaten both liberty and also public safety, if these new demands would prevent the type of careful consideration of the most public-safety-salient cases by magistrates.

Indeed, that portion of the proposal may reflect a concern that prolonged detentions are to be expected should the proposal be adopted, and that a 48-hour release rule could result in large numbers of people being released without bail hearings. However, to eliminate the release rule would mean that large numbers of people would suffer the anticipated prolonged detentions, and infringe important protections under Texas statutory and constitutional law, as well as the U.S. Constitution. As a result, this proposal raises serious concerns under Texas law, the stated basis for the request.

### C. The Large Population of Arrestees Affected

The rest of the proposal adds very broad language, permitting a judge or a magistrate, without a bail hearing, to engage in an early-stage review on paper, during which a personal bond could be granted. The ostensible goal is to permit the reviewing judge or magistrate to consider the factors set out in Article 17.15 of the Texas Code of Criminal Procedure. It is not clear that this language does in fact comport with current Texas Law.

Currently, all people arrested for non-carve-out offenses, receive a General Order Bond. Under this proposal, all such people would instead have their cases reviewed by a judge or magistrate, who would have complete discretion, under this proposal, to either grant a personal bond, or deny one, in which case the person would have a 15.17 hearing. Assuing that such a volume of decisions does in fact comport with the Constitution and with Texas Law would be a challenging task. The proposal offers no guidance or procedures to ensure such compliance.

The numbers of cases would be massive: almost 28,000 cases a year would be shifted to dockets in which they would be eligible for 15.17 hearings, but most would likely be resolved, individually, by magistrates and judges, without such hearings. We have no way of knowing what the time demands of that case review, of 28,000 cases a year, would look like.

This is far more cases than are currently reviewed using an early presentment process. Currently, we see fewer than 1,000 cases a month that receive personal bonds using the current early presentment process, for carve-out cases, which may receive a personal bond in advance of a bail hearing. We observe 5,636 EP case settings using a 6-month interval from Dec. 2024 thru May 2025. We thank the Office of Court Management for reviewing our analysis and sharing data with us.

This suggests that if all current GOBs were added to the EP caseload, there could be a 96% increase in total bond determinations done, currently, by hearing officers (from 14,108 to 27,729) and a 146% increase in EP determinations in particular (from 5,636 to 19,527).

What we also do not know is how many of those 28,000 cases per year would result in 15.17 hearings, and what the resulting burden would be on those magistration dockets. We cannot know whether or how many additional magistrates would need to be hired and whether additional space would be needed for the dockets to be adequate to the task.

The burdens on magistates, and perhaps also judges, would be substantial. We have been provided no estimate regarding what the staffing and resources needs would be. We have been told that existing

resources and staffing will suffice, but only as regards the judiciary. We have every reason to question the accuracy of this assertion for the other stakeholders in the booking and magistration process.

The burdens, likely substantial and to some degree highly uncertain in nature, would also fall on public defenders and on prosecutors, in preparing for those hearings. There is an open question how such a person would then, given the unclear timing of this early-presentment review, appropriately meet with a newly assigned public defender, to adequately prepare for that 15.17 hearing. Any considerable increase in dockets would require additional public defender space and staffing to handle the expansion in these dockets. We note that our understanding is that additional space may simply not be currently available, and the construction costs and the time needed to reconfigure space may be quite large. Currently, carve out cases are identified at charging, so that the public defender's office can be given an advance list of the persons arrested who are scheduled to have 15.17 hearings. The Consent Decree calls for electronic discovery, meeting space, and other supports to ensure that the public defender assigned can meaningfully and adequately prepare for the bail hearing. Under this proposal, those public defense rights would be compromised, and to a degree that is unknown and not addressed by the proposal. Thus, due process rights, both federal and under Article 1 Section 19 of the Texas Constitution, may be compromised at these hearings, in ways that have simply not been addressed.

The text of the proposal does not address adding conditions that restrict a persons liberty to that personal bond, but in writing, the four judges clarified that this could be done: on paper, during early presentment, a judge or magistrate could issue a personal bond with conditions. For someone to be deprived of liberty, based on a paper-review and without a bond hearing, raises serious federal and Texas constitutional concerns.

Nor is such a review, resulting in bond conditions imposed, clearly permitted by Texas Law. The relevant provisions are new enough that they have not been interpreted by Texas courts. And the procedure proposed raises real concerns under Texas Law. Texas law clearly contemplates that individuals receive reasoned decisions, as must be made at 15.17 hearings, before decisions are made that restrict liberty.

**D. County Budget and Costs**

The proposal dramatically impacts the handling of tens of thousands of cases each year in Harris County. Yet, the proposal contains no information about how it would impact County budgets. The Consent Decree was the product of lengthy deliberations, including regarding the cost of its many changes, for a range of stakeholders. The proposal would impact Pretrial Services, the Sheriff's Office, the Public Defender's Office, the District Attorney's Office, and Managed Assigned Counsel's Office, in addition to the CCCL.

We do not have any estimates regarding what the budget impacts on those offices would be or what Commissioiner's Court would need to consider to adequately fund a proposal such as this one. In our consideration of this proposal, we have initiated conversations with relevant stakeholders to develop budgetary estimates which we would need in fulfilling our Consent Decree obligations to provide such information to Commissionsers Court. To date, we do not have information about the resources and staffing that would be required to implement changes of this magnitude.

**E. Criteria for a Successful Proposal**

We have no doubt that other modifications could accomplish the goals set out in Paragraph 31 of the Consent Decree, as well as the goal of improving harmonization with Texas law, while also fully respecting the constitutional rights of persons charged with misdemeanors in Harris County, and promoting public safety. For any such proposal, under Paragraph 26 of the Consent Decree, we would want to see careful advance work to set out what it would cost and what staff would be needed to efficiently review cases at that early stage, to ensure prompt release for the vast majority of persons arrested for misdemeanors. And, of course, any such proposal affecting Local Rule 9 would need a positive vote of the CCCL Judges. Piloting such a system, before fully approving and adopting it, would make great sense especially for better understanding the cost, staffing, and space needs, and perhaps, for any proposal concerning improving the use of early presentment, it could be done using cases currently reviewed for early presentment.

We believe that the Consent Decree and Rule 9 can continue to be improved, so that the benefits of the many years of work are solidified in the years to come. We thank you and all the Parties, who are cc'ed here, as always, for the conscientious and hard work administering and leading the pretrial system in Harris County.

Sincerely yours,

Brandon L. Garrett
ODonnell Monitor

Sandra Guerra Thompson
ODonnell Deputy Monitor

Cc: Elizabeth Rossi, Cody Cutting, Travis Fife, Plaintiffs' Counsel

Seth Hopkins, Rachel Fraser, Jonathan Fombonne, County Attorney's Office

Alisa Certain, Harris County Sheriff's Office

Allan Van Fleet, Counsel for 13 County Criminal Court at Law Judges