UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARANDA LYNN ODONNELL, ET AL.<br>*Plaintiffs*, | § § § | |
| v. | § | Case No. 4:16-cv-01414 |
| HARRIS COUNTY, TEXAS, ET AL.<br>*Defendants*. | § § § | |

**OMNIBUS REPLY IN SUPPORT OF THE ATTORNEY GENERAL OF TEXAS'S MOTION TO RECONSIDER**

The Attorney General of Texas, Ken Paxton, hereby files this Omnibus Reply in support of his Motion to Reconsider and Re-Urge Intervention to Assert *Younger* Abstention ("Motion") (Dkt. 861), responding to the Responses of Harris County (Dkt. 869), the Plaintiffs (Dkt. 871), and the Twelve Judges (Dkt. 870).

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**WILLIAM WASSDORF**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

**JOE NWAOKORO**
Attorney-in-Charge
Assistant Attorney General
Texas Bar No. 24032916
Southern Dist. No. 30168
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667
Joe.Nwaokoro@oag.texas.gov

**COUNSEL FOR THE ATTORNEY GENERAL OF TEXAS**

## TABLE OF CONTENTS


TABLE OF CONTENTS ........ ii

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

I. Reconsideration Is Proper — an Intervening Controlling Decision Is the Classic Ground, and *In re Goodhart* Is Law of the Case. ........ 3

II. Intervention Is Timely ........ 5

A. Timeliness Is Measured from When the State's Interest Became Unprotected, Judged on All the Circumstances, Not Merely by the Calendar. ........ 5

B. The Attorney General's Own Trigger, Not the Four Judges' Counsel Problem, Makes His Motion Timely. ........ 6

C. This Court's Timeliness Ruling Rested on a Waiver Premise That *In re Goodhart* Has Now Rejected. ........ 8

D. There Is No Cognizable Prejudice, and the Equities Favor the Attorney General. ........ 9

III. Intervention Is Not Futile; the Attorney General Did Not Waive *Younger*. ........ 13

A. No Personal Waiver. ........ 13

B. No Inherited or "Disappearing" Waiver—and, as a Non-Party, Nothing to Inherit. ........ 14

IV. The Attorney General Satisfies Rule 24 Because His Interest Is Distinct, Inadequately Represented, and Non-Duplicative; at Minimum, Permissive Intervention Is Warranted. ........ 15

V. *Daves II* Controls This Case. ........ 19

VI. Any Remaining Futility Argument Fails: *Younger* Is Meritorious. ........ 19

CONCLUSION ........ 20

CERTIFICATE OF SERVICE ........ 21

**TABLE OF AUTHORITIES**

**Cases**

*Austin v. Kroger Tex., L.P.*,
864 F.3d 326 (5th Cir. 2017) .......... 3

*Berger v. N.C. State Conf. of the NAACP*,
597 U.S. 179 (2022) .......... 15

*Calpetco 1981 v. Marshall Expl., Inc.*,
989 F.2d 1408 (5th Cir. 1993) .......... 3

*Cameron v. EMW Women's Surgical Ctr., P.S.C.*,
595 U.S. 267 (2022) .......... 5, 6, 7

*Collins v. Dep't of the Treasury*,
83 F.4th 970 (5th Cir. 2023) .......... 4, 19

*Daves v. Dallas Cnty.* (*Daves I*),
22 F.4th 522 (5th Cir. 2022) (en banc) .......... 2, 4

*Daves v. Dallas Cnty.* (*Daves II*),
64 F.4th 616 (5th Cir. 2023) (en banc) .......... passim

*Green v. Serv. Corp. Int'l*,
No. H-06-cv-833, 2006 WL 8441295 (S.D. Tex. June 30, 2006) .......... 11

*Hickman v. Taylor*,
329 U.S. 495 (1947) .......... 10

*In re Goodhart*,
No. 26-20337, 2026 WL 2517641 (5th Cir. Aug. 26, 2026) (per curiam) .......... passim

*Little v. Doguet*,
71 F.4th 340 (5th Cir. 2023) .......... 19

*Muecke Co. v. CVS Caremark Corp.*,
615 F. App'x 837 (5th Cir. 2015) .......... 4, 19

*O'Donnell v. Harris Cnty.* (*O'Donnell I*),
892 F.3d 147 (5th Cir. 2018) .......... 1, 8

*O'Neill v. Coughlan*,
511 F.3d 638 (6th Cir. 2008) .......... 4, 14

*Rotstain v. Mendez*,
986 F.3d 931 (5th Cir. 2021) .......... 5, 9, 10, 11

*RTM Media, L.L.C. v. City of Houston*,
584 F.3d 220 (5th Cir. 2009) ........................................ 1, 2, 4, 14

*Rufo v. Inmates of Suffolk Cnty. Jail*,
502 U.S. 367 (1992)........................................ 9

*Russell v. Harris Cnty.*,
No. 4:19-cv-226, Dkt. 669 (S.D. Tex. Apr. 14, 2023)........................................ 14

*Stallworth v. Monsanto Co.*,
558 F.2d 257 (5th Cir. 1977) ........................................ 5, 8

*Stringfellow v. Concerned Neighbors in Action*,
480 U.S. 370 (1987)........................................ 4

*Theriot v. Par. of Jefferson*,
185 F.3d 477 (5th Cir. 1999) ........................................ 10

*Younger v. Harris*,
401 U.S. 37 (1971)........................................ passim

**Statutes**

Senate Bill 6........................................ 12, 15, 16, 17

Senate Bill 9........................................ passim

**Rules**

Fed. R. Civ. P. 24........................................ passim

Fed. R. Civ. P. 24(b)(1)(B) ........................................ 16

Fed. R. Civ. P. 54(b) ........................................ passim

Fed. R. Civ. P. 59(e) ........................................ 3

Fed. R. Civ. P. 60(b) ........................................ 9

**INTRODUCTION**

The Fifth Circuit has twice stated that this litigation does not belong in federal court. *Daves v. Dallas Cnty.* (*Daves II*), 64 F.4th 616, 631 (5th Cir. 2023) (en banc), overruled *O'Donnell v. Harris Cnty.* (*O'Donnell I*), 892 F.3d 147 (5th Cir. 2018), and held that this very case "should [not] have been adjudicated in federal court." And *In re Goodhart* commanded this Court to "follow *Daves II*" and to consider *Younger* abstention on an expedited basis, well in advance of the November 3, 2026 judicial election. *In re Goodhart*, No. 26-20337, 2026 WL 2517641, at *5 (5th Cir. Aug. 26, 2026) (per curiam). The Attorney General asks only to be heard on *Younger*, which the Court is already bound to consider on expedited basis.

The responses of Plaintiffs, Harris County, and the Twelve Judges (collectively, "Non-Movants") can be distilled into two arguments—(i) untimeliness under Rule 24 and (ii) futility by waiver. Both fail. Eleven months ago, in court-ordered supplemental briefing, the Attorney General argued that a State waives *Younger* only "by express statement, not through failure to raise the issue," and that a non-party that "has not even been party to a suit" cannot waive at all. Dkt. 760 at 3–4. The Attorney General correctly stated the law then; the Fifth Circuit has since reaffirmed that rule in *In re Goodhart*.

Plaintiffs, Harris County, and the Sheriff urged the exact opposite—that "[w]aiving *Younger* does not require an express statement." Dkt. 761 at 2. This Court adopted the implied-waiver rule and denied leave to intervene to raise *Younger*. Dkt. 764 at 29–31. In *In re Goodhart*, the Fifth Circuit adopted the Attorney General's position, holding that a governmental party must waive *Younger* "explicitly." Controlling Fifth Circuit precedent had said as much for years: "for a state to waive *Younger* abstention, it must do so explicitly." *RTM Media, L.L.C. v. City of Houston*, 584 F.3d 220, 229 (5th Cir. 2009). That is the model occasion for Rule 54(b) reconsideration: an intervening decision of controlling authority resolving, in a party's favor, the identical legal

question that party lost below.

Non-Movants' refrain, that *In re Goodhart* "did not even mention timeliness, intervention, Rule 24, or the Attorney General" (Dkt. 871 at 9), confuses a holding with a party. The Attorney General was not a petitioner in the mandamus proceeding, so the panel's silence about his Rule 24 posture is the unremarkable consequence of who sought the writ, not a limit on the rule announced by the panel.

Non-Movants cannot have it both ways: invoke the Attorney General's absence from the mandamus proceeding to escape its holding while simultaneously insisting that the holding is confined to those who appeared before the court. A court's statement of a governing rule binds the case, not only the litigants who invoked it. And, as stated above, the explicit-waiver rule is not even new: the Fifth Circuit demanded an explicit waiver years before *In re Goodhart*, *RTM Media*, 584 F.3d at 229, and confirmed that a State relinquishes *Younger* only by "voluntarily choos[ing] to submit to a federal forum," *Daves v. Dallas Cnty.* (*Daves I*), 22 F.4th 522, 545 (5th Cir. 2022) (en banc). Non-Movants cannot save an order built on the implied-waiver rule the Fifth Circuit has repeatedly rejected by pretending that rule reaches only the Four Judges. And the new evidence the Plaintiffs filed—Judge Goodhart's deposition (Dkt. 871-1) and notes (Dkt. 871-2)—does not show the intentional relinquishment that waiver demands; instead, it shows the Attorney General deliberating over a novel intervention question and, at worst, bureaucratic inadvertence, which is the opposite of waiver.

Non-Movants' resistance runs on two tracks and both fail: Harris County urges waiver from the Attorney General's years of participation even as it concedes the ruling may be reconsidered (Dkt. 869 at 3), while Plaintiffs press Rule 24 timeliness and point to a single, unexamined shorthand phrase in the deponent's personal notes that were never explained at

deposition. The Twelve Judges add nothing of their own. (Dkt. 870). The Court should grant reconsideration and permit the Attorney General to be heard on the expedited *Younger* track the Fifth Circuit has already compelled. Granting reconsideration is not a reversal of this Court's prior order; rather, it is the course the Fifth Circuit's mandate now requires.

## I. Reconsideration Is Proper — an Intervening Controlling Decision Is the Classic Ground, and *In re Goodhart* Is Law of the Case.

As an initial matter, the opposing parties agree that the intervention denial (Dkt. 764) is interlocutory and revisable under Rule 54(b), with Harris County conceding that "an intervening appellate decision controlling the legal issue can be a basis for reconsideration." Dkt. 869 at 3. Plaintiffs' rejoinder that Rule 54(b) discretion must be "exercised sparingly" (Dkt. 871 at 7) does not carry the weight they place on it. Reconsideration of an interlocutory order under Rule 54(b) is governed by a standard less exacting than Rule 59(e): the Court "is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). The "sparingly" admonition is aimed at a particular abuse, that is, the "never-ending" "cycle of reconsideration" that would follow if a court had to revisit a ruling whenever a losing party "belatedly came forward with evidence not submitted prior to the ruling." *Calpetco 1981 v. Marshall Expl., Inc.*, 989 F.2d 1408 (5th Cir. 1993).

That concern is not implicated here. This is not a movant "merely . . . disagree[ing]" with the prior order (Dkt. 869 at 3), nor one recycling the record it already presented, but one pointing to a supervening Fifth Circuit decision that adopted the very rule this Court had previously rejected—the quintessential basis for Rule 54(b) reconsideration. That the panel resolved the four defendant judges' (Judges Paula Goodhart, Jessica Padilla, Leslie Johnson, and Linda Garcia (collectively, the "Four Judges")) petition does not confine its holdings to them. Unpublished

status is immaterial, because unpublished Fifth Circuit opinions "are precedential for purposes of the law of the case," *Muecke Co. v. CVS Caremark Corp.*, 615 F. App'x 837, 841 (5th Cir. 2015), and the mandate obligates this Court to "implement both the letter and the spirit of the appellate court's mandate." *Collins v. Dep't of the Treasury*, 83 F.4th 970, 979 (5th Cir. 2023). As stated above, controlling Fifth Circuit authority independently confirms the panel's rule that a State relinquishes *Younger* only by "voluntarily choos[ing] to submit to a federal forum," *Daves I*, 22 F.4th at 545; it "must do so explicitly," *RTM Media*, 584 F.3d at 229; and a federal court will only tread where it is unequivocally invited, *O'Neill v. Coughlan*, 511 F.3d 638, 643 (6th Cir. 2008).

Non-Movants do not contend, in response to this Motion, that the Attorney General "abandoned" *Younger*, or that the intervention order became "final," by his voluntary dismissal of the interlocutory appeal. Plaintiffs advanced that baseless theory only in their Supreme Court application, and the lone statement to that effect in the *In re Goodhart* dissent was wrong. The suggestion is meritless. Denial of leave to raise *Younger* is interlocutory and revisable under Rule 54(b), as Harris County concedes, Dkt. 869 at 3. And Plaintiffs told this Court that a denial of intervention is appealable "only if it is a 'complete denial' that 'prevents a putative intervenor from becoming a party in any respect.'" Dkt. 751 at 10 n.7 (invoking *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 375, 378 (1987)). The Attorney General expressly reserved *Younger* in the Amended Motion to Vacate he filed the same day he dismissed the appeal, Dkt. 790-1 at 1. Thus, the law-of-the-case doctrine and the mandate rule require this Court to implement both the letter and the spirit of the Fifth Circuit's directive in this very docket, regardless of who sought the writ. *See Collins v. Dep't of the Treasury*, 83 F.4th 970, 979 (5th Cir. 2023); *Muecke Co. v. CVS Caremark Corp.*, 615 F. App'x 837, 841 (5th Cir. 2015).

## II. Intervention Is Timely.

### A. Timeliness Is Measured from When the State's Interest Became Unprotected, Judged on All the Circumstances, Not Merely by the Calendar.

Applying *Stallworth*'s factors confirms timeliness. First, any raw measure of time is subordinate to when the State's interests ceased to be protected; here, the trigger was the Fifth Circuit's intervening directive in *In re Goodhart*, and the Attorney General moved within two days. *See Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–66 (5th Cir. 1977); *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 277–80 (2022). Second, Non-Movants identify no cognizable prejudice from delay; Rule 24 measures prejudice by delay in seeking intervention, not inconvenience from a sovereign's participation in litigation already on an expedited *Younger* track. *Rotstain v. Mendez*, 986 F.3d 931, 939 (5th Cir. 2021). Third, prejudice to the intervenor weighs in favor of intervention: excluding the Attorney General risks foreclosing the State's sovereign interest in the autonomy of its criminal process. *See Younger v. Harris*, 401 U.S. 37, 44 (1971). Fourth, unusual circumstances favor intervention, primarily, the Fifth Circuit's instruction to this Court to follow *Daves II* and address *Younger* on an expedited basis. *See In re Goodhart*, No. 26-20337, 2026 WL 2517641, at *5 (5th Cir. Aug. 26, 2026) (per curiam).

Timeliness "is to be determined from all the circumstances," and "absolute" measures (how old the case is, how long the movant has been aware of it) must be ignored. *Stallworth*, 558 F.2d at 263. The clock runs from when the movant's interest became unprotected, not from case inception. *Id.* at 264–65. The Attorney General urged exactly this standard in his motion to intervene, asserting that "absolute measures of timeliness should be ignored," and the movant's interest became unprotected only when "the defendants abandoned their duty to defend." Dkt. 740-1 at 6. *Cameron* controls and is directly on point: a State attorney general's intervention was timely though sought after "years" of litigation, because the "most important circumstance" was that he

moved as soon as it became clear the State's interests "would no longer be protected." *Cameron*, 595 U.S. at 280. A State's opportunity to defend its laws "should not be lightly cut off." *Id.* at 277. The trigger here is *In re Goodhart* and the Attorney General filed this motion within two days (Dkt. 861), a timeline the Plaintiffs themselves acknowledge, conceding that he moved to re-urge *Younger* just "two days after the panel's decision." Pls.' Appl. for Stay or Recall of Mandate at 21 (U.S. filed Sept. 2, 2026). Harris County's contention that the mandamus opinion is "silent as to how long a non-party can wait" before intervening (Dkt. 869 at 6) misreads the test. The same all-circumstances inquiry governs a non-party sovereign, whose clock likewise runs from the *Cameron* trigger, not from case inception; and the timeliness factors Harris County invokes (Dkt. 869 at 6) turn on prejudice from delay—of which, as shown in Part II.D below, there is none.

**B. The Attorney General's Own Trigger, Not the Four Judges' Counsel Problem, Makes His Motion Timely.**

Timeliness runs from *Cameron*'s benchmark, namely, the point at which it became clear the State's interest "would no longer be protected." *Cameron*, 595 U.S. at 280. That point was not the inception of the case but rather the convergence of two developments in 2025–2026. First, the Attorney General determined he could not defend the State's interest through the county judges, who are not state employees (Dkt. 864-1 ¶ 5; Dkt. 871-1 at 41–42) and were themselves without counsel to argue *Younger* until after October 30, 2025 (Dkt. 864-1 ¶ 19), so there was no vehicle to protect the State's *Younger* interest through the existing parties. Second, *In re Goodhart* clarified the path.

With that convergence, the Attorney General promptly moved to protect the State's interest and promptly filed this motion after *In re Goodhart*. That is the conduct-independent trigger that the Attorney General identified at the outset: a movant's clock starts when "the defendants abandoned their duty to defend," not at filing. Dkt. 740-1 at 6. He urged exactly that standard in

his motion to intervene, asserting that "absolute measures of timeliness should be ignored." *Id*.

The new evidence Plaintiffs attach confirms the point. It shows the Attorney General methodically resolving a threshold question of first impression (how a non-party sovereign may intervene to raise *Younger* against a six-year-old decree), the logistics of representation, the State's interest in when it can intervene, and "standing" while "getting up to speed" on the posture. Dkt. 871-2 at 2. That is pure deliberation, not neglect. To the extent the Plaintiffs raise the Four Judges' delay against the Attorney General, *In re Goodhart*'s observation that the Four Judges could not "have filed earlier" without independent counsel (*In re Goodhart*, 2026 WL 2517641, at *4) confirms only that the panel rejected time-based, implied waiver; it is not the Attorney General's excuse, which is the distinct trigger under *Cameron*.

Plaintiffs' contrary reading of their own exhibits does not withstand scrutiny. They assert that "[i]n April 2023, Judge Goodhart told the Attorney General directly that the existing parties did not intend to assert *Younger* abstention," and that "for the next two and a half years" she "repeatedly informed" the Attorney General of the same. Dkt. 871 at 10–11. But the sole testimony they cite for both propositions—Goodhart Dep. 78:14–79:4—establishes neither. Those lines relate to an email "sent on April 28, 2025" (not April 2023) in which Judge Goodhart described "seeking [the Attorney General's] representation" to assert "the conflict with state law" "[a]nd *Daves*"—not any report that the existing parties would decline to assert *Younger*. Dkt. 871-1 at 78–79. Nor does the balance of the deposition provide the notice that Plaintiffs claim.

When Plaintiffs' counsel asked whether she ever requested an Attorney General opinion on whether *Younger* required vacatur, Judge Goodhart testified that she "did not because [she] wasn't authorized to request an attorney general opinion as a judge," and that it was "clear" she "wasn't a person who could ask for an attorney general opinion." Dkt. 871-1 at 40–41. Her

discussions with the office concerned "*Daves* and its implications on the decree," which "everybody was reading . . . as *O'Donnell* being overruled," not a demand that the Attorney General intervene to assert *Younger*. *Id.* Thus, the record Plaintiffs filed shows a judge exploring representation and the effect of *Daves II*, not a sovereign placed on notice that its *Younger* interest was unprotected and ignored. And the Plaintiffs' lone "dropped the ball" note does not and cannot bear the weight they place on it.[1]

### C. This Court's Timeliness Ruling Rested on a Waiver Premise That *In re Goodhart* Has Now Rejected.

This Court's timeliness analysis assumed that the Attorney General's silence forfeited a defense he should have asserted earlier. Dkt. 764 at 29–31. However, if, as *In re Goodhart* holds, *Younger* cannot be waived by mere silence (because only an explicit statement can), then the premise underlying the *Stallworth* prejudice and unusual-circumstances findings is substantially weaker than the order assumed. While Plaintiffs are right that *In re Goodhart* did not decide Rule 24, they are wrong that its holding is irrelevant, because this Court's timeliness ruling was predicated on the waiver rule that the panel rejected.

This Court has already found the Attorney General a proper and timely intervenor, granting leave to intervene to seek vacatur of the decree on mootness and state-law grounds, and denying

[1] The Plaintiffs feature a single phrase—that the office had, at one point, "dropped the ball" and let the consent decree fall off its radar (Dkt. 871 at 4; Dkt. 871-2 at 1)—drawn from Judge Goodhart's handwritten note of a November 19, 2024 telephone call. It is a second-hand paraphrase recorded in personal notes—not testimony and certainly not a party admission—and it was never probed for meaning, source, or accuracy. The Plaintiffs elicited no foundation for the phrase at Judge Goodhart's deposition and never asked her to explain its context or source. Dkt. 871-1. And because the Plaintiffs bear the burden of proving an unequivocal waiver, a secondhand, unauthenticated note of this kind cannot carry it. Dkt. 864 at 12. It appears among informal scheduling entries, a follow-up noted after the November holiday and later records of repeated voicemails and missed calls, so it was more likely referring to the office's responsiveness in returning calls, rather than a considered decision about whether or when to intervene. Dkt. 871-2 at 1. Even assuming it was an administrative oversight, that is the exact opposite of waiver, which requires that "a party unequivocally manifests its intention to no longer assert its right." A matter that briefly slips and is then taken up is the opposite of a knowing, intentional relinquishment, and the phrase says nothing about any intention to abandon *Younger*, the only relinquishment that could matter here. Timeliness turns on *In re Goodhart* and *Stallworth*/*Cameron*, not on a shorthand, unexamined personal note.

leave only as to *Younger*. Dkt. 764. The Court's determination that the Attorney General's 2025 intervention was timely and worked no undue prejudice thus already covers the *Younger* ground raised in the same motion. The Court's denial as to *Younger* turned not on any distinct timeliness or prejudice problem but on the implied-waiver premise that *In re Goodhart* has since rejected. Strip off that premise and nothing separates the *Younger* ground from the mootness and state-law grounds that the Court already allowed the Attorney General to press: the same intervenor, the same motion, the same expedited track, and no additional discovery. Accordingly, allowing the Attorney General to be heard on *Younger* adds a legal argument to an intervention the Court has already granted; it does not add a new party.

**D. There Is No Cognizable Prejudice, and the Equities Favor the Attorney General.**

Cognizable prejudice is "measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation." *Rotstain*, 986 F.3d at 939. Plaintiffs' asserted prejudice is all participation-inconvenience: that discovery has closed and they would want to depose an Attorney General witness "on waiver." Dkt. 871 at 12. But that need is illusory. Under *In re Goodhart*'s explicit waiver rule, whether the Attorney General waived *Younger* is a legal question answered by the absence of any express submission. No deposition can manufacture an explicit waiver that never occurred. And as the Fifth Circuit held: "*Daves II* does not hinge upon factual development or discovery." *In re Goodhart*, 2026 WL 2517641, at *3.

Plaintiffs' "explicit-waiver" rationale for a deposition presents a pure question of law that, as *In re Goodhart* holds, discovery cannot resolve. The Attorney General takes no position in this reply—and does not concede—any evidentiary showing required under Rule 60(b) or *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367 (1992), to vacate the consent decree; that merits issue is already on the expedited *Younger* track (Dkt. 865) and is not before the Court on this motion for

reconsideration.

Moreover, the deponent the Plaintiffs identify is improper. The witness the Plaintiffs would examine is the Attorney General's counsel of record. Depositions of a party's counsel are disfavored and permitted "only in limited circumstances," and the burden of justifying one rests on the party seeking it, a burden that applies with full force to counsel of record. *Theriot v. Par. of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999). Plaintiffs cannot carry that burden. The only subject of a "waiver" deposition—why and when the Attorney General assessed the *Younger* question as he did—is protected work product and, absent any advice-of-counsel or good-faith-reliance defense, is not at issue. *Hickman v. Taylor*, 329 U.S. 495 (1947). That is dispositive of relevance as well because *In re Goodhart* confirms that the *Younger* inquiry "does not hinge upon factual development or discovery," so testimony about the Attorney General's internal deliberations could not bear on a question the record already answers. *In re Goodhart*, 2026 WL 2517641, at *3.

Plaintiffs' claimed prejudice is self-created, not the product of delay. Before the August 24 close of fact discovery, Plaintiffs themselves asked the Court to "extend fact discovery solely for purposes of disclosing declarations by September 8 and serving amended written discovery responses by September 11," Dkt. 853 at 2, and they then deposed Judges Goodhart and Johnson on September 2 and 3. Dkt. 862 at 2. Plaintiffs knew of the Attorney General's pending reconsideration motion before the August 31 conference and urged that his *Younger* motion proceed together with the Four Judges,' yet the Non-Movants' proposed scheduling order sought no discovery directed to the Attorney General's motion. Dkt. 866-1. Having shaped the schedule they now invoke, Plaintiffs cannot conjure prejudice from it. *See Rotstain*, 986 F.3d at 939.

Plaintiffs' "self-inflicted" label assumes its own conclusion (whether the Attorney General's pace was reasonable is the merits question, not an answer to it), and *Green v. Serv. Corp.*

*Int'l*, No. H-06-cv-833, 2006 WL 8441295, at *2 (S.D. Tex. June 30, 2006), which they rely on, addressed a private litigant's tactical delay, not a sovereign entity's evaluation of an abstention question. Dkt. 871 at 11. Their claim that they could not explore the Attorney General's purported waiver in discovery (Dkt. 871 at 12) is refuted by their own exhibits. They have filed and rely on Judge Goodhart's deposition and her notes tracking the Attorney General's office month by month. Dkts. 871-1; 871-2.

Nor do the Plaintiffs' finality and "will of the voters" arguments (Dkt. 871 at 12) establish prejudice. Elections change officeholders but not the State's sovereign interest in enforcing its statutes, and reliance on a consent decree that forces judges to violate state law daily is not a protectable interest. Plaintiffs argue at length in their pending Supreme Court application that election is "legally and factually irrelevant to this litigation" and that "[t]he party is the office, not its occupant." Pls.' Appl. for Stay or Recall of Mandate at 16–18 (U.S.). Plaintiffs cannot tell the Supreme Court that electoral outcomes are irrelevant to *Younger* while telling this Court that the electorate's preferences should bar the Attorney General from raising it. Finally, because *In re Goodhart* has placed the identical *Younger* question on an expedited track that the Attorney General has joined (Dkt. 865), his intervention adds nothing to the schedule or the record.

Harris County's separate claim of institutional prejudice—that the County has "spent resources to reconfigure the Jail, Pretrial Services, Sheriff's Office, Public Defender's Office, District Attorney's Office, Managed Assigned Counsel's Office, and the courts to comply with the Consent Decree," Dkt. 869 at 7—fails for the same reason. Cognizable Rule 24 prejudice is "measured by the delay in seeking intervention, not the inconvenience . . . of allowing the intervenor to participate in the litigation." *Rotstain*, 986 F.3d at 939.

The County's reconfiguration costs were incurred when the decree was implemented in

2019 and 2020, years before *Daves II* and *In re Goodhart*, and years before the Attorney General filed this motion. They are a function of the decree's existence, not of any delay attributable to the Attorney General's intervention; the same costs exist whether the Attorney General is heard on *Younger* or not, because the Four Judges have already put the decree's validity squarely before the Court. *See* Dkt. 793.

Harris County and Plaintiffs raised the same category of institutional-reliance and settlement-finality objections against the Attorney General's original motion to intervene, Dkt. 764 at 17–20 (reciting the parties' arguments that intervention would "jeopardiz[e] months of negotiations" and "substantial... expenses of implementation"), yet this Court granted intervention and permitted the Attorney General to argue that Senate Bill 6 ("S.B. 6") and Senate Bill 9 ("S.B. 9") moot the decree or require its amendment, which poses the same risk to the compliance infrastructure. Dkt. 764 at 32–34. If institutional reliance did not bar intervention on mootness and conflict with state law, then it should not bar intervention on *Younger*; these arguments threaten the identical operational consequences.

The Twelve Judges' current position underscores the point. They now adopt Harris County's and Plaintiffs' prejudice arguments wholesale, stating that they oppose reconsideration "for the reasons stated in Harris County's response and Plaintiffs' [] response." Dkt. 870. But in response to the Attorney General's original motion to intervene, the Twelve Judges took the opposite position, telling this Court that they "welcome[d] a definitive judicial determination of the viability of the Consent Decree and whether it supersedes conflicting State law," noting in the same breath that they "may propose changes to the carve-out criteria in Rule 9, such as adding certain sex offenses, but that is for another day." Dkt. 749 at 1–2 & n.1. Hence, the Twelve Judges told this Court that they anticipated, and were prepared to adapt to, further judicial resolution of

the decree's viability, which is the opposite of a party whose institutional reliance interests would be prejudiced by that resolution. Having invited a "definitive judicial determination" of the decree's viability and represented that they would revisit its terms accordingly, the Twelve Judges cannot now credibly claim that permitting intervention on the identical question somehow threatens reliance interests that they themselves described as open to reexamination.

Similarly, Plaintiffs have stated that they "take no position on the Attorney General's intervention for the limited purpose of litigating whether S.B. 9 conflicts with the Consent Decree," have acknowledged his "general interest in enforcing state law" and have conceded that his intervention is "timely with respect to Senate Bill 9." Dkt. 751 at 29. Plaintiffs' position substantially undermines the County's institutional reliance theory.

This Court has already permitted the Attorney General to intervene to argue mootness and conflict with state law. Permitting the Attorney General to be heard on *Younger* will not cause any incremental disruption beyond what the County and the Twelve Judges already face in the mootness and conflict-with-state law proceeding they did not defeat: intervention only decides who may argue *Younger*, not whether or how quickly the consent decree may be modified. The County's and the Twelve Judges' operational-reliance argument is accordingly prejudice from litigation (which the Twelve Judges welcomed), not prejudice from any delay in seeking intervention on *Younger* specifically, and Rule 24 does not recognize it as a bar.

## III. Intervention Is Not Futile; the Attorney General Did Not Waive *Younger*.

### A. No Personal Waiver.

Non-Movants' core argument is that the Attorney General waived *Younger* "by taking an active role in the briefing and settlement of this case and sitting on his argument for seven years." Dkt. 869 at 3. That is implied waiver by conduct and silence, which the law forbids. A State must waive *Younger* "explicitly," and it does not waive "by conducting full discovery and fully briefing

the merits" where it has consistently resisted federal adjudication. *RTM Media*, 584 F.3d at 229. That is a categorical rule. Both the County's theory (waiver from years of participation) and the Plaintiffs' (waiver from silence) fail for the same defect that neither identifies the explicit, affirmative renunciation the rule demands.

Reading *In re Goodhart* to make the Attorney General's silence a waiver of *Younger*—when the panel expressly excused active merits engagement—stands the decision on its head. Waiver exists only where the State "expressly urged" the court "to proceed to an adjudication of the constitutional merits." Dkt. 760 at 3. The burden of proving that "falls even more heavily on the shoulders of the party seeking to prove waiver." Dkt. 864 at 12. Non-Movants cannot carry it.

The record shows the Attorney General never submitted to the federal forum. To the contrary, he "submitted written testimony opposing settlement," argued the decree "was contrary to Texas law," and urged that "the court lacked subject-matter jurisdiction to enter the consent decree." Dkt. 869 at 2. A litigant who tells a court that it lacks jurisdiction has not "unequivocally invited" federal adjudication; he has resisted it. *O'Neill*, 511 F.3d at 643. Plaintiffs' argument that the Attorney General raised *Younger* twice—in *Daves II* and *Russell v. Harris Cnty.*, No. 4:19-cv-226, Dkt. 669 (S.D. Tex. Apr. 14, 2023)—proves that he was vindicating the doctrine, not relinquishing it. Dkt. 871 at 8.

**B. No Inherited or "Disappearing" Waiver—and, as a Non-Party, Nothing to Inherit.**

Plaintiffs argue that the Attorney General "must accept the proceedings as he finds them" and so inherits the defendants' waiver. Dkt. 871 at 14. But the Attorney General was never a party to this suit, and "[i]t is illogical to imply waiver of the *Younger* doctrine when the state has not even been party to a suit." Dkt. 760 at 4. There is no waiver to inherit.

Nor was the defense that Non-Movants claim was surrendered the county officials' to surrender in the first place. *Younger* protects the State's sovereign interest in the autonomy of its

own courts and criminal process—the comity and "Our Federalism" concerns that belong to the State *qua* State, *Younger*, 401 U.S. at 44; Dkt. 740-1 at 3—an interest that Harris County, the Sheriff, and individual county-court judges had no authority to waive on the State's behalf by negotiating a settlement to which the State was not a party. Dkt. 760 at 4.

In any event, the consent-binds-successors theory fails on its own terms. *In re Goodhart* expressly held that "[c]onsent alone is insufficient to support a commitment by a public official that ties the hands of his successor." *In re Goodhart*, 2026 WL 2517641, at *4. A predecessor does not bind a successor who did not consent. Plaintiffs' "party is the office" authorities address who the real party is in an official-capacity suit; they do not hold that a non-jurisdictional, waivable defense is locked forever by a predecessor's litigation choice. Dkt. 871 at 15 n.4.

## IV. The Attorney General Satisfies Rule 24 Because His Interest Is Distinct, Inadequately Represented, and Non-Duplicative; at Minimum, Permissive Intervention Is Warranted.

Non-Movants suggest that the Attorney General adds nothing because the Four Judges raise the same *Younger* argument. But the record refutes their argument, and the governing standard guts it. A potential intervenor need only show that the representation may be inadequate, a "minimal" burden. *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 195 (2022); Dkt. 740-1 at 4. No presumption of adequacy runs against the State: "a presumption of adequate representation is inappropriate when a duly authorized state agent seeks to intervene to defend a state law," and "a State's chosen representatives should be greeted in federal court with respect, not adverse presumptions." *Id.* at 198. The State's interest in enforcing S.B. 6 and S.B. 9 is a "legitimate interest in the continued enforce[ment] of [its] own statutes" that local officials cannot represent. Harris County, the Sheriff, and the Twelve Judges support the decree, and local governments lack the same prerogatives in representing the interests of their residents as the state. *Id.* at 191; Dkt. 740-1 at 3. This is not a case where the intervenor "has the same ultimate objective

as a party." Dkt. 740-1 at 8.

Nor are the Four Judges adequate representatives for the State. Their ability to litigate *Younger* is neither independent nor secure. They were without counsel in this case from early 2023 "until the law firm of Greer, Herz and Adams, LLP was retained . . . after October 30, 2025" (Dkt. 864-1 ¶ 19), and the County approved that counsel only "on the condition that the AG's Motion to Intervene was granted." Dkt. 864-1 ¶ 18. Hence, the Four Judges' capacity to argue abstention is derivative of the very intervention that Non-Movants oppose.

That the Four Judges now raise the identical *Younger* question shows there is no incremental burden from adding the Attorney General, not that the State's distinct sovereign interest is already protected. Only the Attorney General "will provide a state-wide perspective and an adversarial presentation" that outlasts any county officeholder's term. Dkt. 740-1 at 8. Indeed, by the Plaintiffs' own account, the aligned bloc is transient as only two of the Four Judges are on the November 3, 2026 ballot, one is retiring, and only Judge Garcia holds a term extending to 2028. Pls.' Appl. for Stay or Recall of Mandate at 17 (U.S.). The State's sovereign interest in enforcing state law, such as S.B. 6 and S.B. 9, does not turn over with the Harris County bench. Only the Attorney General provides continuity of the State's interest through the coming election and beyond. At a minimum, the common question of *Younger* abstention, already being briefed on the expedited track, warrants permissive intervention under Rule 24(b)(1)(B). Dkt. 740-1 at 8.

The record confirms this point. Judge Goodhart's declaration establishes that the Attorney General's office could not represent the county judges because they are not state employees (Dkt. 864-1 ¶ 5); that the County first delayed and then, on April 23, 2024, declined to provide them outside counsel (Dkt. 864 at 17); that the County also refused to represent them on any decree modification (Dkt. 864-1 ¶ 16); and that counsel was approved only "on the condition that the

AG's Motion to Intervene was granted." Dkt. 864-1 ¶ 18. Judge Johnson's affidavit corroborates that she never treated Mr. Allan Van Fleet as her counsel and was aligned with the effort to obtain independent representation. Dkt. 864-11 ¶¶ 2–3. Those facts show why no existing party could protect the State's sovereign interest in enforcing S.B. 6 and S.B. 9, and why the Attorney General's intervention in his own name is necessary, not duplicative.

Plaintiffs' adequacy theory is self-defeating. Plaintiffs cannot hold up the Four Judges as adequate representatives of the State's interest in asserting *Younger* while simultaneously contending that those very same Four Judges waived *Younger*—which the Plaintiffs contend, arguing the Judges "implicitly waived their Younger argument 'by waiting over two years' after Daves II." Dkt. 871 at 13. Nor can they deem that representation adequate while simultaneously asking the Supreme Court to stay or vacate the mandamus that gives the Four Judges their expedited vehicle to consider *Younger*, branding it "egregiously wrong and disruptive." Dkt. 871 at 6. Representation that an opposing party deems forfeited, and actively seeks to dismantle, cannot be deemed adequate; instead, it is insecure because if Plaintiffs prevail at the Supreme Court, the vehicle they now say makes the State's intervention unnecessary will disappear. That is no reason to deny the Attorney General his own seat at the table; it is all the more reason he needs one.

Plaintiffs' adequacy argument is also incoherent. They fault the Attorney General's joinder in the Four Judges' renewed *Younger* motion, Dkt. 865, as "adopting the Four Judges' arguments and raising none of his own," and treat that as proof his interest is "already adequately represented." Dkt. 871 at 11. But Plaintiffs engineered that very posture. In their August 31 letter, they insisted the Attorney General be "bound to the arguments raised in the Four Judges' forthcoming amended motion" and "oppose[d] any schedule that would force Non-Movants to respond to the Four Judges' motion, then the Attorney General's motion to reconsider, and then,

if his motion is granted, another motion to vacate on the basis of *Younger*." Dkt. 862 at 3.

The Court adopted that approach: at the August 31, 2026 scheduling conference it directed the Attorney General to proceed by adopting the Four Judges' *Younger* motion, and its Scheduling Order required him to file that motion by that date. Dkt. 867. Having demanded and obtained from the Court an arrangement in which the Attorney General adopts the Four Judges' *Younger* arguments rather than press his own, Plaintiffs cannot now invoke his compliance as proof that his interest is adequately represented.

Further, the Twelve Judges did not file a separate motion in opposition to the Attorney General's reconsideration motion; instead, they adopted the arguments of Harris County and the Plaintiffs, stating that they opposed the "motion for the reasons stated in Harris County's response and Plaintiffs' draft response." Dkt. 870. Under the Plaintiffs' rule, the defendant Twelve Judges' joinder in Plaintiffs' motion would mean that the Twelve Judges' interests are adequately represented by Plaintiffs. The supposed defendants—Harris County, the Sheriff, and the Twelve Judges—have joined in some of Plaintiffs' pleadings and submittals to this Court. *See, e.g.*, Dkts. 770, 806, 807, 808. If, as Plaintiffs posit, mere adoption or joinder amounts to adequate representation, then the implication is obvious: there is no real adversarial proceeding between the parties and the "versus" is illusory, as Plaintiffs and the purported county defendants, save the Four Judges, are one and the same, with none needing separate representation. To the extent such flawed logic deserves any credit (it does not), that is all the more reason for intervention in this case in the largest county in the State, whose effects necessarily reach other counties and the State at large.

Non-Movants' prior positions confirm the point. As shown above, in response to the Attorney General's original motion to intervene, the Twelve Judges, who now oppose reconsideration, stated that they "take no position on the Attorney General of Texas's Motion to

Intervene," and "welcome a definitive judicial determination of the viability of the Consent Decree and whether it supersedes conflicting State law," even flagging their own possible "changes to the carve-out criteria in Rule 9." Dkt. 749 at 1–2 & n.1. Plaintiffs likewise "take no position on the Attorney General's intervention for the limited purpose of litigating whether S.B. 9 conflicts with the Consent Decree," acknowledging his "general interest in enforcing state law" and conceding that his intervention is "timely with respect to Senate Bill 9." Dkt. 751 at 29. Parties who invited a determination of whether the consent decree conflicts with state law, and who did not oppose intervention to litigate that conflict, cannot now claim that they adequately represent the State's sovereign interest, or that the Attorney General's intervention on the closely related *Younger* question is improper or prejudicial.

## V. *Daves II* Controls This Case.

Plaintiffs renew their contention that the *Younger* holding of *Daves II* is "dicta" or "advisory." Dkt. 871 at 10. Their saying so does not make it so. *In re Goodhart* erased any doubt when it expressly directed this Court to follow *Daves II* in this case, a directive that is now the law of the case and a mandate that this Court must implement. *Collins*, 83 F.4th at 979; *Muecke Co.*, 615 F. App'x at 841. The Fifth Circuit has already applied *Daves II* to materially identical bail litigation and ordered dismissal. There, "[t]he Plaintiffs concede[d] . . . that it is necessary for the court to abstain and dismiss the suit." *Little v. Doguet*, 71 F.4th 340, 345 (5th Cir. 2023). And Civil Rights Corps, counsel for the Plaintiffs here, was among the plaintiffs' counsel in *Little*. Dkt. 760 at 2. The opponents cannot relitigate or dismiss *Daves II*'s authority by labeling it dicta.

## VI. Any Remaining Futility Argument Fails: *Younger* Is Meritorious.

Non-Movants' remaining futility theory, that reconsideration is pointless because the *Younger* defense would fail, collapses under controlling law. Intervention to assert *Younger* is meritorious, not futile: *In re Goodhart* and *Daves II* make *Younger* abstention the required

disposition of a materially identical challenge to Texas's misdemeanor-bail procedures, and the Fifth Circuit has directed this Court to follow *Daves II* in this case. *Daves II*, 64 F.4th at 620; *In re Goodhart*, 2026 WL 2517641, at *5.

## CONCLUSION

For the foregoing reasons and those set forth in the Motion, the Attorney General respectfully requests that the Court grant his Motion and permit him to intervene to assert *Younger* abstention.

September 8, 2026.

Respectfully submitted,

**KEN PAXTON**
Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**WILLIAM WASSDORF**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

*<u>/s/ Joe Nwaokoro</u>*
**JOE NWAOKORO**
Texas Bar No. 24032916
Southern Dist. No. 30168
Assistant Attorney General
General Litigation Division
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: (512) 475-4072
Fax: (512) 320-0667
Joe.Nwaokoro@oag.texas.gov
COUNSEL FOR THE ATTORNEY GENERAL OF TEXAS

**CERTIFICATE OF SERVICE**

I certify that on September 8, 2026, this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

*/s/ Joe Nwaokoro*
**JOE NWAOKORO**
Assistant Attorney General