**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| MARANDA LYNN ODONNELL, ET AL.<br>Plaintiffs, | §<br>§<br>§ | |
| v. | § | Case No. 4:16-cv-01414 |
| HARRIS COUNTY, TEXAS, ET AL.<br>Defendants. | §<br>§<br>§ | |

**THE ATTORNEY GENERAL OF TEXAS'S POST-HEARING BRIEF**


**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**WILLIAM WASSDORF**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

**JOE NWAOKORO**
Attorney-in-Charge
Assistant Attorney General
Texas Bar No. 24032916
Southern Dist. No. 30168
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: (512) 979-5382 | Fax: (512) 477-2348
Joe.Nwaokoro@oag.texas.gov

**COUNSEL FOR THE ATTORNEY GENERAL OF TEXAS**

**TABLE OF CONTENTS**


TABLE OF CONTENTS ..... ii

TABLE OF AUTHORITIES ..... iv

ORDER OF OPERATIONS ..... 2

I. SEVERABILITY — THE DECREE MUST BE TREATED AS AN INTEGRATED WHOLE ..... 3

A. The Governing Framework. ..... 3

B. This Court Has Already Distinguished *Joseph A. v. Ingram*. ..... 4

C. A Provision-by-Provision Inquiry Conflicts With the Fifth Circuit's Mandate. ..... 4

D. *Younger* Does Not Permit Bifurcating Interrelated Claims. ..... 5

E. Even on Its Own Terms, *Joseph A.*'s Method Leaves Nothing to Sever Here. ..... 5

II. PROCEDURAL MECHANISM — RULE 60(b) IS THE VEHICLE TO VACATE IF THE COURT ABSTAINS ..... 6

A. *Younger* Requires Dismissal. ..... 6

B. Dismissal on Abstention Does Not, By Itself, Unwind the Decree. ..... 6

C. Rule 60(b)(5) Is the Appropriate Vehicle. ..... 6

D. Rule 60(b)(6) Is an Alternative, Independent Basis. ..... 7

E. Recommended Sequence. ..... 8

F. If the Court Declines to Abstain. ..... 8

III. ABSTENTION DOES NOT FORECLOSE VACATUR ..... 8

A. *Younger* Abstention Is Prudential, Not Jurisdictional; The Court Retains Full Authority to Conclude the Case. ..... 8

B. Vacatur Requires No Merits Adjudication. ..... 8

C. Rule 60(c)(1) Timeliness Is Satisfied. ..... 9

D. Recommended Framing. ..... 10

E. Limiting Principles ..... 10

IV. MOOTNESS — AN INDEPENDENT, "COEQUAL" GROUND FOR DISMISSAL ... 11

A. The Governing Standard: Superseding Legislation Moots a Challenge to the Regime It Replaces. ... 11

B. *Daves II* Applied This Same Framework As a "Coequal Ground" Alongside *Younger*. ... 12

C. The Pre-Judgment Posture of *Daves II* and *Russell* Is Immaterial. ... 13

D. The Class-Action Posture Does Not Preserve a Live Controversy ... 14

E. S.B. 6 and S.B. 9 Directly Conflict With the Decree, Reinforcing Mootness. ... 14

F. This Court Has Already Reached the Same Result in Its Own Companion Case. 15

G. No Factual Development Is Required. ... 15

H. Recommended Framing. ... 15

CONCLUSION ... 15

CERTIFICATE OF SERVICE ... 16

## TABLE OF AUTHORITIES

**Cases**

*Agostini v. Felton*,
521 U.S. 203 (1997) ... 7

*Alexander v. Bahou*,
512 F. Supp. 3d 363 (N.D.N.Y. 2021) ... 9

*Bice v. La. Pub. Def. Bd.*,
677 F.3d 712 (5th Cir. 2012) ... 3

*BLOM Bank SAL v. Honickman*,
605 U.S. 204 (2025) ... 7

*Cf. Salazar v. District of Columbia*,
729 F. Supp. 2d 257 (D.D.C. 2010) ... 9

*Chisom v. Louisiana ex rel. Landry*,
116 F.4th 309 (5th Cir. 2024) ... 7

*Coney Island Auto Parts Unlimited, Inc. v. Burton*,
607 U.S. 155 (2026) ... 10

*Cooper v. Tex. Alcoholic Beverage Comm'n,*
820 F.3d 730 (5th Cir. 2016) ... 9

*Daves v. Dallas Cnty. (Daves II),*
64 F.4th 616 (5th Cir. 2023) ... passim

*Doe v. Briley*,
562 F.3d 777 (6th Cir. 2009) ... 9

*Freedom From Religion Found., Inc. v. Abbott*,
58 F.4th 824 (5th Cir. 2023) ... 12

*Frew v. Hawkins*,
540 U.S. 431 (2004) ... 3, 6, 11

*Gerstein v. Pugh*,
420 U.S. 103 (1975) ... 14

*Horne v. Flores*,
557 U.S. 433 (2009) ... 6

*In re Goodhart,*
No. 26-20337, 2026 WL 2517641 (5th Cir. Aug. 26, 2026) ... passim

*Joseph A. v. Ingram*,
275 F.3d 1253 (10th Cir. 2002) ........................................ 1, 4, 5, 15

*Miller v. French*,
530 U.S. 327 (2000) ........................................ 13

*Moore v. Sims*,
442 U.S. 415 (1979) ........................................ 5

*O'Donnell v. Harris Cnty. (O'Donnell I),*
892 F.3d 147 (5th Cir. 2018) ........................................ 6

*O'Donnell v. Harris Cnty.*,
808 F. Supp. 3d 738 (S.D. Tex. 2025) ........................................ 4

*R.C. ex rel. Ala. Disabilities Advocacy Program v. Nachman*,
969 F. Supp. 682 (M.D. Ala. 1997) ........................................ 10

*Rufo v. Inmates of Suffolk Cnty. Jail*,
502 U.S. 367, 384 (1992) ........................................ passim

*Russell v. Harris County*,
No. H-19-226, 2023 WL 5658936 (S.D. Tex. Aug. 31, 2023) ........................................ 2, 13, 16

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
549 U.S. 422, 431 (2007) ........................................ 2, 6

*Sosna v. Iowa*,
419 U.S. 393 (1975) ........................................ 14

*Sprint Commc'ns, Inc. v. Jacobs*,
571 U.S. 69 (2013) ........................................ 8

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ........................................ 2

*Veasey v. Abbott*,
888 F.3d 792 (5th Cir. 2018) ........................................ 11, 12

*Younger v. Harris,*
401 U.S. 37 (1971) ........................................ passim

**Statutes**

Tex. Code Crim. Proc. Ann. art. 17.024 ........................................ 14

Tex. Code Crim. Proc. Ann. art. 17.028(a) ........................................ 14

Tex. Code Crim. Proc. Ann. art. 17.03(b-2) ........................................ 14

Tex. Code Crim. Proc. Ann. art. 17.15(a) ........ 14

**Rules**

Fed. R. Civ. P. 60(b) ........ passim

Fed. R. Civ. P. 60(b)(4) ........ 10

Fed. R. Civ. P. 60(b)(5) ........ passim

Fed. R. Civ. P. 60(b)(6) ........ passim

Fed. R. Civ. P. 60(c)(1) ........ 9, 10

The Attorney General of Texas, Ken Paxton, respectfully files this brief to answer the questions posed by the Court at the September 22, 2026 hearing regarding: (1) the order of operations for ruling on abstention, mootness, and the Consent Decree's provisions; (2) whether any provisions of the Consent Decree (Dkt. 708) survive *Younger* even if others do not, that is, whether the Decree can be severed or must be treated as an integrated whole for abstention purposes; (3) if the Court abstains, whether it may still vacate the Consent Decree, and if so, under what procedural mechanism; and (4) mootness, which Plaintiffs did not brief. The Attorney General addresses each below and joins in the brief filed by the Four Judges.

**Order of Operations.** The Court can resolve all four questions in a single order: (1) hold that *Younger* requires abstention; (2) hold, in the same order, that the Decree must be treated as an integrated whole, so abstention and any resulting vacatur reach the Decree; (3) hold that Rule 60(b)(5) (or, alternatively, 60(b)(6)) is satisfied as a matter of law on the existing record and vacate the Decree; and (4) hold, as an independent and coequal alternative ground reaching the same result regardless of how the Court resolves *Younger*, that the action is moot. If the Court declines to abstain, it may proceed to the Rule 60(b) hearing. Mootness remains available at any stage and does not depend on *Younger*.

Regarding (2), provision-by-provision severance of the Decree is impermissible under *Younger* in this case. Every provision continues the same ongoing supervision of individualized bail decisions in pending state prosecutions, enforced through the Monitor, and each independently satisfies the "ongoing federal audit" rationale of *O'Shea*. *Joseph A. v. Ingram*, 275 F.3d 1253 (10th Cir. 2002), which this Court has already distinguished in its Intervention Order, does not require a different result.

As to (3), abstention requires dismissal. But dismissal does not, by itself, vacate the

Consent Decree. Rule 60(b)(5), or, alternatively, Rule 60(b)(6), supplies the procedural vehicle for vacatur, and its elements are met as a matter of law. Because *Younger* is prudential, not a limit on the Court's power, abstention does not prevent the Court from bringing the Decree to a proper close. Regarding (4), mootness, grounded in *Daves II* and this Court's decision in *Russell v. Harris County*, No. H-19-226, 2023 WL 5658936 (S.D. Tex. Aug. 31, 2023), provides an independent, "coequal" ground for dismissal given the relevant changes in state law through S.B. 6 and S.B. 9. In *Daves II*, the Fifth Circuit expressly held that S.B. 6 rendered plaintiffs' claims moot, a finding that compels the same result here.

**ORDER OF OPERATIONS**

The Court asked how to sequence the questions of abstention, mootness, and the Decree's provisions. The Court need not treat them as competing paths; instead, it can dispose of the case in a single order that proceeds in the following sequence.

**1.** Abstain under *Younger*. *Daves II* held that *Younger* "required the district court to abstain" in this very litigation, 64 F.4th at 635, and *In re Goodhart* directed this Court to follow *Daves II* "as a matter of law," No. 26-20337, 2026 WL 2517641, at *3, *5 (5th Cir. Aug. 26, 2026) (per curiam). A federal court "has leeway 'to choose among threshold grounds for denying audience to a case on the merits'" and need not "decide whether the parties present an Article III case or controversy before abstaining under *Younger*." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007).

**2.** Address mootness. Mootness is jurisdictional; it is not merely one equitable factor among others, and a federal court's first duty is to satisfy itself of its own jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). *Daves II* held that "[a] coequal ground for dismissing this case is mootness," 64 F.4th at 633, and that "even if federal courts were not

compelled by *Younger* and *O'Shea* to abstain, the present controversy must be considered moot," *id.* at 634. Consistent with *Sinochem*, the Court may select among threshold grounds; consistent with *Daves II*, it may address abstention first and, as a coequal jurisdictional ground, mootness next. The Court should therefore reach mootness independently of the Rule 60(b) equities and may dismiss on both grounds, as in *Daves II*. *Id.* at 635.

**3.** Treat the Consent Decree as an integrated whole. No severable, non-offending provision exists; every operative term enforces the same ongoing supervision of state bail decisions, so there is nothing to carve out and preserve once the Court abstains and finds the case moot.

**4.** Vacate the Decree under Rule 60(b)(5) (or, alternatively, 60(b)(6)), in the same order. This is an institutional-reform decree governed by *Rufo*'s flexible standard, and its elements are satisfied as a matter of law on the existing record. Rule 60(b)(6) provides an alternative, independent basis.

**5.** Dismiss. With the Decree vacated, the Court dismisses and returns responsibility "promptly to the State and its officials." *Frew v. Hawkins*, 540 U.S. 431, 442 (2004).

## I. SEVERABILITY — THE DECREE MUST BE TREATED AS AN INTEGRATED WHOLE

### A. The Governing Framework.

The *Younger* analysis is whether continuing to enforce the Decree would interfere with an ongoing state judicial proceeding, touch an important state interest, and leave an adequate state forum. *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012). Where the federal court's continuing role amounts to an "ongoing federal audit of state criminal proceedings," it is forbidden by comity, regardless of how such audit is packaged. *Daves v. Dallas Cnty.* (*Daves II*), 64 F.4th 616, 631 (5th Cir. 2023) (en banc) (citation omitted). The "requested relief" for this purpose is the continued operation of the Decree's bail-setting mechanism, Local Rule 9's GOB protocol, Dkt.

708 at 17-19 ¶¶ 9.2, 9.5, 9.7, 9.10, enforced through the Monitor's compliance reporting to this Court.

**B. This Court Has Already Distinguished *Joseph A. v. Ingram*.**

The Court need not revisit *Joseph A.*, which it has already distinguished in this case. In its Intervention Order, the Court explained that *Joseph A.* permitted post-decree *Younger* arguments only because the New Mexico decree "specifically allowed the defendants to raise 'any . . . defense' after the expiration of a 'one-year "cease fire."'" *O'Donnell v. Harris Cnty.*, 808 F. Supp. 3d 738, 758 (S.D. Tex. 2025). *Joseph A.*'s provision-by-provision approach was driven by two features: a different procedural posture, and a decree that expressly carved out a right to raise *Younger* after entry. This Consent Decree has neither. To the contrary, it forbids amending Local Rule 9 without the Monitor's approval and, absent agreement, the Court's approval, Dkt. 708 ¶¶ 32–33, and reserves no right for any party to raise *Younger* after entry. *Joseph A.*'s methodology relied on a contractual reservation this Decree lacks. The Decree's general severability clause, Dkt. 708 ¶ 28, does not change the analysis. Severability under *Younger* turns on substance, not boilerplate. Each provision continues the same federal supervision of state bail proceedings. In this posture, there is nothing to sever.

**C. A Provision-by-Provision Inquiry Conflicts With the Fifth Circuit's Mandate.**

The Fifth Circuit directed this Court to follow *Daves II*, expressly because "*Daves II* does not hinge upon factual development or discovery." *In re Goodhart*, 2026 WL 2517641, at *3. Breaking the Decree into dozens of individual provisions for a granular "ongoing versus systemic" parsing would invite exactly the kind of fact-heavy inquiry the Fifth Circuit has directed the Court to avoid. *Joseph A.* required such an exercise only because the Tenth Circuit confronted a consent decree that bundled unrelated administrative subjects. Not so here.

### D. *Younger* Does Not Permit Bifurcating Interrelated Claims.

The Supreme Court has separately rejected bifurcating a *Younger* analysis across interrelated claims in a single proceeding, reasoning that "[g]iven the interrelated nature of the claims," partial abstention "would result in . . . duplicative litigation and lack of state-court interpretation of an integrated . . . framework." *Moore v. Sims*, 442 U.S. 415, 426 n.10 (1979); *see id.* at 427 (breadth of a challenge to a complex state statutory scheme has "traditionally militated in favor of abstention, not against it"). The Decree here presents a strong case for all-or-nothing treatment. Its provisions do not merely share a subject: Local Rule 9, the GOB mechanism, and the Monitor's compliance reporting operate as a single, integrated system for supervising state bail-setting; it does not present a set of independently severable commitments.

### E. Even on Its Own Terms, *Joseph A.*'s Method Leaves Nothing to Sever Here.

Even if *Joseph A.* were applied here, the outcome would be the same. It was remanded because the New Mexico decree bundled together freestanding, unrelated subjects (computerized recordkeeping, staff qualifications, compliance with state Citizen Review Board law, and separate Social Security Act funding obligations), some with no case-specific supervisory component at all. The Consent Decree here is not comparable. Every substantive provision of Local Rule 9 dictates the terms on which individual misdemeanor arrestees are released in pending state prosecutions. If the Court nonetheless wants a standard, then a provision may be severed only if it (i) does not condition, restrict, or dictate any bail-related decision or term of release in any pending or future misdemeanor case, and (ii) does not depend on continued Monitor reporting, compliance review, or judicial enforcement for its operation. Here, no such provision exists; every substantive term of Local Rule 9 fails that test.

## II. PROCEDURAL MECHANISM — RULE 60(b) IS THE VEHICLE TO VACATE IF THE COURT ABSTAINS

### A. *Younger* Requires Dismissal.

*Daves II* held that *Younger* "required the district court to abstain," overruled *O'Donnell I*, held the case moot, and remanded with instructions to dismiss. 64 F.4th at 635. *In re Goodhart* directs this Court to apply *Daves II* here. *See also Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (court may resolve a threshold ground for declining to reach the merits without first resolving Article III jurisdiction).

### B. Dismissal on Abstention Does Not, By Itself, Unwind the Decree.

Abstention relates to whether the Court should continue to exercise jurisdiction; it does not, independently, vacate the Consent Decree. A separate procedural vehicle is required to accomplish that. That vehicle is Rule 60(b). Fed. R. Civ. P. 60(b).

### C. Rule 60(b)(5) Is the Appropriate Vehicle.

Rule 60(b)(5) authorizes relief where "applying [the judgment] prospectively is no longer equitable." A movant satisfies that standard by showing "a significant change either in factual conditions or in law." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992). *Daves II* and *In re Goodhart* together constitute that change. Both hold that this case should never have been adjudicated in federal court under *Younger*. A decree resting on a jurisdictional predicate that the Fifth Circuit has twice held should not have existed is one whose continued prospective enforcement is "no longer equitable." *See Horne v. Flores*, 557 U.S. 433, 450, 454 (2009); *Frew v. Hawkins*, 540 U.S. 431, 441-42 (2004).

To the extent the Court's prior order characterized *Daves II* as a mere "clarification," that characterization does not foreclose relief. Even a clarifying decision "could constitute a change in circumstances that would support modification if the parties had based their agreement on a

misunderstanding of the governing law." *Rufo*, 502 U.S. at 390.

Fifth Circuit authority confirms that a consent decree can be dissolved under Rule 60(b)(5) as a matter of law, without fact-finding. In *Chisom v. Louisiana ex rel. Landry*, 116 F.4th 309, 313 (5th Cir. 2024) (en banc), the Fifth Circuit reversed and rendered judgment dissolving a decades-old consent decree without remanding for a hearing. In doing so, the court reaffirmed that consent decrees "are not intended to operate in perpetuity," that "it is the courts' duty to bring federal control over the issue to its proper end," and that federal courts must return responsibility to the State "as promptly as possible." *Id.* at 316-17. Procedurally, *Chisom* teaches that once the predicate for continued federal control falls away, the court may end the decree as a matter of law. *See* Attorney General's Reply, Dkt. 887, at 6-9 (incorporated here by reference).

**D. Rule 60(b)(6) Is an Alternative, Independent Basis.**

In the alternative only, Rule 60(b)(6)'s catchall "any other reason that justifies relief" independently supports vacatur. Relief under the catchall requires "extraordinary circumstances," a standard that is deliberately demanding, and an intervening change in decisional law "by [it]sel[f]" will rarely satisfy it. *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 210–13, 216–17 (2025) (quoting *Agostini v. Felton*, 521 U.S. 203, 239 (1997)). This case falls within that category because the change is not merely a generalized change in law in unrelated litigation, but a controlling mandate directed to this Court, in this case, commanding abstention after the Fifth Circuit twice held that this litigation should not have proceeded in federal court. *Daves II*, 64 F.4th at 635; *In re Goodhart*, 2026 WL 2517641, at *5. Continued enforcement of a decree entered on a jurisdictional premise the court of appeals has since disavowed is the sort of extraordinary circumstance encompassed by the catchall. For clarity, the Attorney General does not rest on the catchall; as previously stated, he maintains that Rule 60(b)(5) remains the appropriate vehicle for

relief and Rule 60(b)(6) provides only a secondary, independent basis.

**E. Recommended Sequence.**

The Court can resolve both questions in a single order: (1) hold that *Younger* requires abstention; (2) hold that Rule 60(b)(5) (or, alternatively, 60(b)(6)) is satisfied as a matter of law on the existing record, consistent with *In re Goodhart*'s direction that no further factual development is required; and (3) vacate the Consent Decree and dismiss the action accordingly. Proceeding in that sequence clarifies the status of the Decree and carries out the Fifth Circuit's mandate.

**F. If the Court Declines to Abstain.**

If the Court chooses not to abstain, it may simply proceed with Rule 60(b) motions and address conflict with state law.

## III. ABSTENTION DOES NOT FORECLOSE VACATUR

**A. *Younger* Abstention Is Prudential, Not Jurisdictional; The Court Retains Full Authority to Conclude the Case.**

*Younger* abstention is not a limit on the Court's Article III power; it is a discretionary doctrine of equitable restraint where a federal court declines to exercise its jurisdiction. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013). The Court does not "lose" its authority as in subject-matter-jurisdiction defect. Abstaining simply means the Court will not continue supervising state bail decisions; it does not prevent the Court from bringing the matter to a proper close.

**B. Vacatur Requires No Merits Adjudication.**

*Rufo* has two steps: (1) whether there has been a significant change in law or fact, and (2) whether the proposed modification is "suitably tailored" to that change. 502 U.S. at 383, 391. Here, step one is pure law. *Daves II* and *In re Goodhart* both held that this case should never have been

in federal court. Step two only requires an evidentiary weighing when the remedy is genuinely open-ended. That is not the case here. With the predicate for continued federal oversight gone, vacatur is the only coherent course. *Cooper v. Tex. Alcoholic Beverage Comm'n* decided a Rule 60(b)(5) change-in-decisional-law question "wholly an issue of law" on appeal, without an evidentiary remand. 820 F.3d 730, 740-41 (5th Cir. 2016). This also disposes of Non-Movants' cost and public-safety evidence, which bears only on a step-two inquiry. *See* Reply, Dkt. 887 at 15-19.

**C. Rule 60(c)(1) Timeliness Is Satisfied.**

"Reasonable time" under Rule 60(c)(1) considers "the length of the delay, the explanations for the delay, the prejudice to the opposing party caused by the delay and the circumstances warranting relief," including "whether it involves a purely private disagreement or a matter of public interest." *Doe v. Briley*, 562 F.3d 777, 781 (6th Cir. 2009). For a Rule 60(b)(5) motion based on intervening change in law, those factors relate to the movant's diligence after the change, not to the time elapsed since the decree was entered. Applying those factors, *Doe* upheld as timely a Rule 60(b)(5) motion to dissolve a consent decree filed roughly thirty years after the controlling decision, because the change in law undercut the decree's foundation, the matter was of public concern, and the opponent showed no prejudice. *Id.* The finality interest underpinning Rule 60(c)(1) is especially weak for an ongoing institutional-reform decree, which "is itself an ongoing remedy that precludes finality as long as it endures." *Alexander v. Bahou*, 512 F. Supp. 3d 363, 371 (N.D.N.Y. 2021). The relevant change in law occurred with *In re Goodhart*. The Attorney General renewed his abstention request almost immediately thereafter. That prompt action bears no resemblance to the unexplained delays found untimely in other cases. *Cf. Salazar v. District of Columbia*, 729 F. Supp. 2d 257, 260-61 (D.D.C. 2010) (roughly seven-year, unexplained gap

untimely); *R.C. ex rel. Ala. Disabilities Advocacy Program v. Nachman*, 969 F. Supp. 682, 700-01 (M.D. Ala. 1997) (unexplained four-year delay untimely).

Plaintiffs' contrary reliance on *Coney Island Auto Parts Unlimited, Inc. v. Burton*, 607 U.S. 155 (2026), is misplaced. *Coney Island* holds only that Rule 60(c)(1)'s reasonable-time limit applies to a motion under Rule 60(b)(4) alleging that a judgment is *void* for defective service. *Id.* at 162. It does not address a consent decree, Rule 60(b)(5) change-in-law relief, or the measure of "reasonable time" for such relief; indeed, the movant there "d[id] not contend that it complied with th[e] requirement," so the Court "need not expound on whether [its] timing was reasonable." *Id.* Here, by contrast, the Attorney General acted within a reasonable time.

Finally, importing a fact-intensive reasonable-time inquiry into the *Younger* analysis would contradict the mandate. *In re Goodhart* directed this Court to follow *Daves II* precisely because the question "does not hinge upon factual development or discovery," and it rejected the argument that the Movants waived *Younger* "merely by waiting over two years." Timeliness here is resolved on the docket and as a matter of law.

**D. Recommended Framing.**

The order should rest on a single legal predicate (the holdings of *Daves II*, as the Fifth Circuit directed this Court to apply them in *In re Goodhart*) that simultaneously (i) requires abstention under *Younger*, (ii) satisfies Rule 60(b)(5)'s change-in-law showing as a matter of law, and (iii) leaves no open tailoring or timeliness question requiring further factual development. That is the same integrated approach the Fifth Circuit used in *Daves II*.

**E. Limiting Principles.**

The relief the Attorney General requests is narrow and based on four limiting principles: *First*, relief here is based on a controlling appellate mandate. *Daves II* held that *Younger* "required

the district court to abstain" in this very litigation, 64 F.4th at 635, and *In re Goodhart* ordered this Court to apply that holding. *Second*, the doctrine applies to institutional-reform consent decrees governed by *Rufo*'s flexible standard, not to money judgments or decrees resolving discrete private rights. *Rufo*, 502 U.S. at 380–83. *Third*, vacatur follows only where the predicate for continued federal supervision is eliminated by supervening legislative or judicial action (here, S.B. 6 and S.B. 9 together with *Daves II*) and not from a party's mere dissatisfaction with a decree's terms; a change in law that left the decree's legal foundation intact would not suffice. *Fourth*, vacatur returns authority over bail administration to the State under *Frew*; it does not adjudicate or foreclose any state-law remedy that individual arrestees may pursue in state courts. *Frew*, 540 U.S. at 442. These limiting principles address the concern that granting relief here would unsettle consent decrees generally. Relief is warranted only where a controlling appellate decision in the same case has eliminated the jurisdictional predicate for an institutional-reform decree and returns the matter to the State without foreclosing other remedies.

## IV. MOOTNESS — AN INDEPENDENT, "COEQUAL" GROUND FOR DISMISSAL

The Court asked for briefing on mootness because Plaintiffs did not address it. The Attorney General respectfully urges the Court to treat mootness as an independent, alternative basis for dismissal, just as the Fifth Circuit did in *Daves II*.

### A. The Governing Standard: Superseding Legislation Moots a Challenge to the Regime It Replaces.

"Ordinarily, a lawsuit challenging a statute would become moot by the legislature's enactment of a superseding law." *Veasey v. Abbott*, 888 F.3d 792, 799 (5th Cir. 2018). Where the challenged legal regime is amended or replaced after suit is filed and the plaintiff seeks only prospective relief, "mootness is the default," because a federal ruling on the superseded regime would amount to an advisory opinion. *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th

824, 832 (5th Cir. 2023). Nor is this the kind of easily reversible "voluntary cessation" that leaves a controversy live: a duly enacted statute carries a presumption of legislative good faith and is not treated as a temporary expedient adopted to evade review. *Id.*; *Veasey*, 888 F.3d at 799. S.B. 6 and S.B. 9 constitute such intervening change.

**B. *Daves II* Applied This Same Framework As a "Coequal Ground" Alongside *Younger*.**

After holding that *Younger* required the district court to abstain, *Daves II* turned to mootness, holding it "[a] coequal ground for dismissing this case," noting that S.B. 6 was enacted after the initial panel decision and while en banc review was pending. 64 F.4th at 633. The court held that the named plaintiffs had not been subject to bail proceedings since years before the advent of S.B. 6, that adjudicating the new statutory regime on a pre-amendment record "would constitute no more than an advisory opinion," and that the case was moot because "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* at 634. It rejected the plaintiffs' contention that their claims survived the new law, holding that "both the provisions of S.B. 6 and their implementation are alleged to raise constitutional issues beyond the scope of this case and the circumstances of the plaintiffs who filed it. The case is moot." *Id.* at 635. The Fifth Circuit's disposition was clear and unequivocal: the case is "moot by virtue of intervening state law." *Id.* The holdings of *Daves II* on abstention and mootness govern this action as controlling law. *Daves II*, 64 F.4th at 631, 635. Plaintiffs have not challenged the constitutionality of S.B. 6 or S.B. 9, and any argument that S.B. 9 perpetuates constitutional violations that the decree was designed to remedy rehashes the same discredited argument raised by the plaintiffs in *Daves II*: "According to the plaintiffs, their complaint is not moot because it is essentially unrelated to the changes made by the Texas legislature. Dallas County's bail practices allegedly remain unconstitutional irrespective of S.B. 6 and irrespective of the existence of bail

schedules." *Daves II*, 64 F.4th at 635. The en banc court found plaintiffs' arguments "incoherent," noting that "S.B. 6 is heavily procedural in nature, just like the alleged claims of these plaintiffs," and found the case moot. *Id*. Here, Plaintiffs press the same incoherent argument. As *Daves II* recognized, S.B. 6 is "heavily procedural in nature, just like the alleged claims of these plaintiffs." *In re Goodhart* directed this Court to follow *Daves II*, and the en banc decision requires dismissal for mootness.

**C. The Pre-Judgment Posture of *Daves II* and *Russell* Is Immaterial.**

Plaintiffs may argue that *Daves II* and *Russell* are inapposite because both were decided before final judgment. That distinction is immaterial for three reasons.

First, Article III mootness reaches prospective relief under a final decree. A live controversy is a jurisdictional prerequisite at every stage of the litigation, and the entry of a decree does not immunize from mootness. "[P]rospective relief under a continuing, executory decree remains subject to alteration due to changes in the underlying law." *Miller v. French*, 530 U.S. 327, 344 (2000). Even where "the remedial injunction here is a 'final judgment' for purposes of appeal, it is not the 'last word of the judicial department'"; the decree "is subject to the continuing supervisory jurisdiction of the court, and therefore may be altered according to subsequent changes in the law." *Id.* at 347. A consent decree governing future bail proceedings constitutes continuing, executory prospective relief.

Second, *Daves II* mootness analysis considered whether intervening legislation left a live controversy, not the procedural stage at which the question arose. And third, because a final decree exists, the changed law extinguishes the live controversy under Article III (mootness), and it satisfies the "significant change . . . in law" threshold for reopening the decree under Rule 60(b)(5). When intervening legislation moots a case of this kind, it easily meets *Rufo*'s standard for revisiting

a consent decree's prospective terms.

**D. The Class-Action Posture Does Not Preserve a Live Controversy.**

Plaintiffs may argue that a named plaintiff's mooted claim does not moot the certified class, and that bail claims are "capable of repetition yet evading review." *See Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975); *Sosna v. Iowa*, 419 U.S. 393, 401 (1975). Those arguments fail. Each addresses a plaintiff whose *individual circumstances* change while the challenged legal regime remains; neither preserves a controversy once the challenged regime itself is superseded by statute. *Daves II* confirms this point, finding the case "moot by virtue of intervening state law," notwithstanding the class posture. 64 F.4th at 634-35. Any challenge to the S.B. 6/S.B. 9 regime, as distinct from the superseded pre-reform system, raises "constitutional issues beyond the scope of this case," and would have to be litigated, if at all, in a separate action. *Id.* at 635.

**E. S.B. 6 and S.B. 9 Directly Conflict With the Decree, Reinforcing Mootness.**

S.B. 6 and S.B. 9 enacted a comprehensive statutory bail-reform scheme requiring individualized review before release, such as mandatory training for magistrates, art. 17.024; individualized consideration, within 48 hours, of the statutory bail factors, arts. 17.028(a), 17.15(a); and a bar on personal-bond release for certain enumerated offenses, art. 17.03(b-2). Tex. Code Crim. Proc. arts. 17.024, 17.028(a), 17.15(a), 17.03(b-2). That scheme occupies the field that the Decree regulates through Local Rule 9's GOB mechanism, which forecloses individualized review for most Class A and B misdemeanor arrestees. As the Four Judges have shown, the Decree "conflicts with, and prevents compliance with" these laws. Four Judges' Renewed Request for Younger Abstention (Dkt. 864) at 3. Plaintiffs' own counsel has already conceded the conflict, acknowledging that "Article 17.03 as amended by S.B. 9 is inconsistent with L.R. 9.2, 9.3, 9.10, and 9.12 as codified in the federal court Consent Decree." Dkt. 793-2, App'x A at 1-2. With a

comprehensive statutory scheme in place, continued adjudication of the superseded decree would serve no practical purpose.

**F. This Court Has Already Reached the Same Result in Its Own Companion Case.**

In *Russell*, 2023 WL 5658936, a companion felony-bail case before this Court, the Court dismissed as moot immediately after *Daves II*, holding that although *Daves* "involv[ed] different facts," it "is largely legally identical to *Russell*," and that "[a]dherence to Fifth Circuit authority requires that this case be dismissed as moot." *Id.* at *4. That reasoning applies here. *In re Goodhart* directs this Court to apply *Daves II*.

**G. No Factual Development Is Required.**

Like the *Younger* and Rule 60(b) analysis above, mootness here turns on legal and textual questions (comparing the terms of S.B. 6/S.B. 9 to the terms of Local Rule 9, and the Fifth Circuit's own characterization of the named plaintiffs' circumstances in *Daves II*) not on any fact genuinely in dispute. *Daves II*, 64 F.4th at 634-35. Mootness is resolvable on this record; no evidentiary hearing is needed.

**H. Recommended Framing.**

The Attorney General respectfully requests the Court address mootness as an independent, alternative holding, as *Daves II* did, so that dismissal rests on two self-sufficient grounds rather than one. 64 F.4th at 633.

## CONCLUSION

The Consent Decree should be treated as an integrated whole for *Younger* purposes; no severable, non-offending provision has been identified, and *Joseph A. v. Ingram* does not require a different result on this record. If the Court abstains, then it should vacate the Decree in the same order, under Rule 60(b)(5) or, alternatively, Rule 60(b)(6); no further factual development is

required, and abstention does not deprive the Court of authority to take that step. Finally, mootness, based on *Daves II* itself and this Court's own decision in *Russell*, provides an independent, coequal basis for the same result.

September 24, 2026.

Respectfully submitted,

**KEN PAXTON**
Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**WILLIAM WASSDORF**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

*/s/ Joe Nwaokoro*
**JOE NWAOKORO**
Attorney-in-Charge
Assistant Attorney General
Texas Bar No. 24032916
Southern Dist. No. 30168
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: (512) 979-5382 | Fax: (512) 477-2348
Joe.Nwaokoro@oag.texas.gov
***COUNSEL FOR THE ATTORNEY GENERAL OF TEXAS***

**CERTIFICATE OF SERVICE**

I certify that on September 24, 2026, this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

*/s/ Joe Nwaokoro*
**JOE NWAOKORO**
Assistant Attorney General