**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **MARANDA LYNN ODONNELL, *et. al.*, on behalf of themselves and all others similarly situated, Plaintiffs,** | § § § § | |
| | § | **CIVIL ACTION NO. 4:16-cv-1414** |
| **v.** | § § | |
| **HARRIS COUNTY, TEXAS, *et. al.*, Defendants.** | § § | |

**DEFENDANT JUDGES PAULA GOODHART, JESSICA PADILLA, LESLIE JOHNSON, AND LINDA GARCIA'S POST-HEARING BRIEF IN SUPPORT OF THEIR RENEWED REQUEST FOR *YOUNGER* ABSTENTION**

## TABLE OF CONTENTS


I. *Daves II* and *In re Goodhart* establish the order of operations .................................. 1

1. Start with *Younger* ........................................................................ 2

2. If the Court grants *Younger* abstention ............................................... 2

3. If the Court denies *Younger* abstention, also consider mootness .......................... 6

II. Past elected officials cannot forever bind future elected officials .............................. 7

III. Points of Clarification on pro se action, statements of regret, evidence, habeas matters, and timeliness .......................................................................... 9

a) Plaintiffs are flatly wrong, and ignore *In re Goodhart*'s clear statements in arguing the Judges could represent their offices *pro se* ........................................ 9

b) Rule 60 does not transform Fifth Circuit precedent into a "statement of regret" ........................................................................................ 10

i. Evidence ........................................................................................ 12

ii. Habeas Cases .................................................................................. 13

iii. Timeliness ...................................................................................... 13

CONCLUSION AND PRAYER ........................................................................ 14

## INDEX OF AUTHORITIES

Cases

*Cain v. Ruiz*,
No. 92-4096, 1993 U.S. Dist. LEXIS 326 (E.D. La. 1993) ....................................................10

*Chisom v. La. ex rel. Landry*,
116 F.4th 309 (5th Cir. 2024) (en banc) ............................................................................ *passim*

*Coney Island Auto Parts Unltd., Inc. v. Burton*,
607 U.S. 155 (2026) ..................................................................................................................13

*Daves v. Dall. Cty.*,
64 F.4th 616 (5th Cir. 2023) ................................................................................................ *passim*

*Gonzalez v. Crosby*,
545 U.S. 524 (2005) ..................................................................................................................13

*Horne v. Flores*,
557 U.S. 433, 448 (2009) .....................................................................................................7,8,12

*Howery v. Allstate Ins. Co.*,
243 F.3d 912 (5th Cir. 2001) .......................................................................................................7

*In re Goodhart*,
No. 26-20337, 2026 U.S. App. LEXIS 26177 (5th Cir. Aug. 26, 2026) (per curiam) ....... *passim*

*Joseph A. v. Ingram*,
275 F.3d 1253 (10th Cir. 2002) ...................................................................................................4

*McCorvey v. Hill*,
385 F.3d 846, 848 (5th Cir. 2004).................................................................................................6

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Assn.*,
457 U.S. 423 (1982) ....................................................................................................................2

*O'Shea v. Littleton*,
414 U.S. 488 (1974).....................................................................................................2,3,4,13

*Pugh v. Rainwater*,
572 F.2d 1053 (5th Cir. 1978) .....................................................................................................6

*RC v. Nachman*,
969 F. Supp. 682 (M.D. Ala. 1997) ...........................................................................................13

*Rufo v. Inmates of Suffolk Cnty.*,
502 U.S. 367 (1992) ....................................................................................................................8

*Russell v. Harris Cnty.*,
No. H-19-226, 2023 U.S. Dist. LEXIS 154051 *14 (S.D. Tex. Aug. 31, 2023) ..........................7

*Williams v. Rubiera*,
539 F.2d 470 (5th Cir. 1976) ....................5

<u>Other</u>

Fed. R. Civ. P. 60 .................... *passim*

TO THE HONORABLE JUDGE LEE H. ROSENTHAL:

Defendants, Judges Paula Goodhart, Jessica Padilla, Leslie Johnson, and Linda Garcia (the "Judges") file this post-hearing brief pursuant to the Court's request. The Judges join in and adopt the Attorney General's ("AG") arguments in his post-hearing brief.

Under *In re Goodhart*'s instruction to resolve abstention and follow *Daves II*,[1] the Fifth Circuit has already addressed and foreclosed each of Plaintiffs' proffered arguments, leading to the only possible result—abstention and dismissal. The Judges address the following issues:

I. *Daves II* and *In re Goodhart* establish the order of operations.

II. Past elected officials cannot forever bind future elected officials—the limiting principle that begins and ends with the Constitution;

III. Points of Clarification on *pro se* action, statements of regret, evidence, habeas matters, and timeliness.

## I. *Daves II* and *In re Goodhart* establish the order of operations.

The Court has asked what it must rule on, in what order, and whether the Court may abstain but still keep some part of the Consent Decree in place. There are two holdings to keep in mind while proceeding under the Fifth Circuit's mandate:

| **Goodhart mandate** | ***Daves II* holding** |
|---|---|
| The district court must consider the four judges' *Younger* abstention argument on an expedited basis, well before the upcoming Texas judicial election on November 3, 2026. We also direct the district court to follow *Daves II*. *In re Goodhart*, 2026 U.S. App. LEXIS 26177, at *11-12. | Exercising our discretion to review both justiciability issues following remand, we hold that *Younger v. Harris* and its progeny required the district court to abstain; that the *ODonnell I* decision to the contrary is overruled; and that the case is moot by virtue of intervening state law. *Daves II*, 64 F.4th at 635. |

It is clear that following *Daves II* means this case must be dismissed in its entirety.

[1] *In re Goodhart*, No. 26-20337, 2026 U.S. App. LEXIS 26177 (5th Cir. Aug. 26, 2026) (per curiam); *Daves v. Dall. Cty.*, 64 F.4th 616 (5th Cir. 2023) ("*Daves II*").

### 1. Start with *Younger*

*In re Goodhart* tells us to start with *Younger* abstention. In *Daves II*, the Fifth Circuit considered *Younger* abstention as a threshold question before addressing mootness, explaining that federal courts need not "decide whether the parties present an Article III case or controversy before abstaining under *Younger*…." *Daves II*, 6 F.4th at 623 (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007)).

So *Younger* is first, and *Younger* is met as explained in *Daves II*: (1) it is undeniable that this case interferes with ongoing state judicial proceedings, (2) "[t]he plaintiffs in *ODonnell I* conceded that the second prong of *Younger* is met," and (3) Texas law provides detainees with "opportunities, beyond those deemed in *O'Shea*, to raise their federal claims." *Daves II*, 64 F.3rd at 627 n.21 & at 630.[2] Therefore, *Younger* abstention is required. Plaintiffs must pursue any claims they have after S.B. 6 in state courts. *Id*. at 623.

### 2. If the Court grants *Younger* abstention

The Court has asked that, if it grants *Younger* abstention, what happens to the Consent Decree. The Fifth Circuit recently recognized the lack of case law on consent decrees. *Chisom v. La. ex rel. Landry*, 116 F.4th 309, 316 (5th Cir. 2024) (en banc). In *Chisom*, the Fifth Circuit explained that, because "consent decrees are 'not intended to operate in perpetuity,'" "the starting point for courts…is an understanding that the decree has an end, and it is the courts' duty to ensure that control is returned to the State when that end is reached." *Id*. (quotations omitted). Courts must keep in mind the "paramount concern" of the decree's impact "on the principles of federalism," and "must take an approach to consent decrees that guarantees power is returned to the State as

[2] Plaintiffs' counsel conceded at the September 22, 2026 hearing that *Daves II* is binding precedent, and that it "resolves the *Middlesex* factors, including "adequacy of opportunity." Appx. 1 at 35:19-23 (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Assn*., 457 U.S. 423, 432 (1982)).

promptly as possible." *Id*. at 316-17. *Chisom* analyzed the satisfaction component of 60(b)(5), and finding it was met, the next step was simple: "We reverse the district court's decision denying the State's motion and hereby dissolve the Chisom Decree." *Id*. at 320.

The Court has asked how to apply *In re Goodhart* and *Daves II* to the Consent Decree—e.g., must the Court review a developed factual record, or determine whether each provision of the Consent Decree conflicts with state laws, or consider the equities that favor vacating or amending the decree. *In re Goodhart* both addressed and foreclosed these concerns. *In re Goodhart*, 2026 U.S. App. LEXIS 26177 at *8-9. The Fifth Circuit acknowledged this Court's concern that it may need to review a developed record Rule 60(b), and then excused this Court from that process because *Daves II* "expressly held that '*ODonnell I*…should [not] have been adjudicated in federal court' and that the district court should have abstained.'" *Id.* (quoting *Daves II*, 6i4 F.4th at 631). In arguing the Court must now consider reams of facts or a recently developed record, Plaintiffs ask the Court to take steps that *Goodhart* rejected. *Id*. ("[a]gain, *ODonnell I* is this case. *Daves II* does not hinge upon factual development or discovery").

With respect to a line-by-line review of the Decree, that is unnecessary. There are no provisions of the Consent Decree that do not overstep *O'Shea* or *Younger*.

*Daves II* explains. There is "friction" between "institutional state bail reform in federal court" and "state criminal courts where, overlooking or misinterpreting abstention, federal courts have forced bail bond changes." *Daves II*, 64 F.4th at 623. Among the types of interference federal courts should abstain from are:

- forcing bail bond changes,
- reviewing judicial officers' compliance with a federal decree in pending criminal cases,
- conducting ongoing federal auditing of state criminal proceedings,

- opening "the federal courts any time an arrestee cries foul,"
- requiring on-the-record hearings and detailed factual opinions concerning bail determinations, and
- as the Decree itself describes its purpose, creating and enforcing a "pretrial release and detention system." Dkt. 708 at 15 ¶18.

Each of these overstep the boundaries that *Younger* is designed to create and protect. *See Daves II*, 64 F.4th at 630-31 & n.30; *O'Shea v. Littleton*, 414 U.S. 488, 500 (1974). In fact, the Fifth Circuit pointed to the *monitor's actions in this case* as an example of the friction that exists with state courts when federal courts force bail-bond changes:

> In the *ODonnell* case, for instance, the federal monitor for Harris County has determined "errors" made by judicial officers in setting bail and identified "violations" of the federal consent decree.

*Daves II*, 64 F.4th n.10.As *Daves II* understood, this is exactly what has happened, and is happening, in this case. Dkt. 864-10 at 2 (email to monitor and counsel discussing "improper bail orders" in violation of Local Rule 9 and the Consent Decree).[3] The Monitor even rejected a proposal in 2022 from the majority of the HCCCL judges to replace the GOB procedure with a fast-track system designed to satisfy state law and effect the swift release of most misdemeanor arrestees. Dkt. 801-2 at 2. The Monitor's ability to review and reject judicial officials' proposed changes to local rules governing pretrial bail procedures is the very interference that *Daves II* and *O'Shea* warned against.

The Court mentioned the Tenth Circuit *Ingram* case, which involved systemic problems in New Mexico's Department of Human Services that caused delays and deprived meaningful access to adoption services. *Joseph A. v. Ingram*, 275 F.3d 1253, 1257 (10th Cir. 2002). *Ingram* stated that some federal oversight and control may be acceptable under *Younger*, such as mandating

[3] That email, from April 2023, omits the three Judges.

training or qualifications for social workers, or developing computer systems. *Id*. at 1273. But there is a clear line drawn when federal courts control the "operation of a mechanism that is an essential part of" state-court proceedings—like "assessment and treatment planning conferences" or enforcing the use of boards to review case dispositions and then report to state courts. *Id*. *Ingram* cites a Fifth Circuit case that applied *Younger* to a claim that state-court defendants were entitled to court-appointed counsel for crimes punishable by fine. *Williams v. Rubiera*, 539 F.2d 470, 473 (5th Cir. 1976) In *Williams*, the relief requested "would have the intrusive impact on the state proceeding that *Younger* and its progeny abhorred," and therefore any injunction would "be direct federal interference in the state criminal prosecution." *Id*.

The Decree 'creates and enforces a pretrial release and detention system' that intrudes into daily magistrate and judicial practices. It cannot stand under *Younger*; none of it remains when *Younger* is applied.[4]

Plaintiffs contend that the Court must take additional steps before dismissal. Again, *Chisom* counsels otherwise, as do *In re Goodhart* and *Daves II*. The Court is operating under the Fifth Circuit's mandate. No detailed Rule 60(b) analysis is needed. The Court's analysis at this stage is a simple and straightforward one: the Decree was based on an earlier judgment that has been reversed (*Daves II*, 64 F.4th at 635) which is a significant change in law that *In re Goodhart* instructs the Court to follow. The Court must dismiss.

#### 3. If the Court denies *Younger* abstention, also consider mootness

Considering the holdings and instructions of *In re Goodhart* and *Daves II*, the Court should not deny *Younger* abstention. But if it does, the Court must follow *Daves II* and dismiss based on

[4] The entire Decree is subject to abstention. For example, applying *Daves II* to this case shows Decree paragraphs 30 through 45 and 57 through 72 directly interfere with the conduct of proceedings, while Paragraphs 46 through 56 and 73 through 133 create or promote the types of error reporting specifically referred to in *Daves II*. The remaining paragraphs, such as definitions, are unnecessary when *Daves II* and *Younger* are appropriately applied.

mootness. And as an Article III requirement, mootness is an antecedent issue. *See McCorvey v. Hill*, 385 F.3d 846, 848 (5th Cir. 2004) ("A question necessarily antecedent to McCorvey's substantive claim [under Rule 60], however, is whether she has presented a justiciable case or controversy pursuant to Article III of the Constitution.").

*Daves II* explained that mootness was a "coequal ground for dismissing," and held that S.B. 6's "substantial changes" to "procedures for assessing bail" are heavily procedural, and that any constitutional issues raised about S.B. 6 or its implementation are "issues beyond the scope of this case and the circumstances of the plaintiffs who filed it." *Daves II*, 64 F.3d at 632 (citing *Am. Charities for Reas. Fund. Reg., Inc. v. O'Bannon*, 909 F.3d 329, 332-34 (10th Cir. 2018)) ("The law materially changed, fundamentally altering the issues that had been presented in district court. This change in the law renders the appeal moot"); *see also Pugh v. Rainwater*, 572 F.2d 1053, 1058 (5th Cir. 1978) (new laws passed after final judgment mooted the case). The Fifth Circuit then overruled *ODonnell I*'s *Younger* ruling and held the case "is moot by virtue of intervening state law." *Daves II*, 64 F.3d at 635. The Court also rejected the plaintiffs' argument that their case was not related to county bail practices instead of the new state laws, and their argument that those practices would "remain unconstitutional irrespective of S.B. 6…." *Daves II*, 64 F.4th at 635. Plaintiffs repeat that rejected argument here. As *Chisom* held, "[t]he safeguard that remains once the decree is dissolved is simply the law itself," whether through a new lawsuit or "[e]lected officials may also be held accountable to the citizenry through the political process." *Chisom*, 116 F.4th at 317.

This Court, in *Russell*, applied *Daves II*, stating that:

> The Fifth Circuit determined that S.B. 6 mooted the challenges in *Daves*, despite the plaintiffs citing to similar continued constitutional violations. *Daves*, although involving different facts, is largely legally identical to *Russell*. Adherence to Fifth Circuit authority requires that this case be dismissed as moot.

*Russell v. Harris Cnty*., No. H-19-226, 2023 U.S. Dist. LEXIS 154051 *14 (S.D. Tex. Aug. 31, 2023). *Daves II* makes clear that Texas' new state laws mooted the case—and mandates a finding of mootness here. *Daves II*, 64 F.4th at 634. If *Younger* is denied, mootness must be swiftly decided—which would result in vacatur of the Decree and dismissal. *See Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001) ("federal courts must address jurisdictional questions whenever they are raised and must consider jurisdiction sua sponte if not raised by the parties").

**II. Past elected officials cannot forever bind future elected officials.**

The Fifth Circuit rejected any waiver argument based on predecessor officeholders' entry into the Consent Decree. *In re Goodhart*, 2026 U.S. App. LEXIS 26177 at *10 (citing *Evans v. City of Chicago*, 10 F.3d 474, 478 (10th Cir. 1993) (en banc) ("democracy does not permit public officials to bind the polity forever"). The Court now inquires into what limiting principles exist if a newly elected official can challenge a consent decree that a previous officeholder accepted. The question stabs at the heart of *Younger*.

First, there is no need to examine potential limiting principles in order to effect *In re Goodhart*'s mandate, because that Court held there is no waiver in this case based on a prior officeholder's entry into the Decree. *Id*.

Second, the Fifth Circuit, after rejecting this waiver argument, explained that reviewing a consent decree involves factors such as "changed circumstances or a change in law," but in this case, *Daves II* covers that ground by discussing S.B. 6, and holding *ODonnell I* should never have been adjudicated in federal court. The test itself serves as the limiting principle, not the identity of the party who challenges the decree.

Holding otherwise would impinge on the very federalism concerns that *Chisom* and *Horne* instruct courts to consider. *Chisom*, 116 F.4th at 317. Texas has partisan judicial elections every four years. And voters may choose newly elected officials, with different policy preferences than

their predecessors. A federal court's continuing injunction over a system like Harris County's misdemeanor criminal courts may go unchallenged for as many years as the elected officials agree with and support the decree. It may, however, be challenged if voters elect new officials who disagree with the continuation of that order and have a valid reason to vacate or modify it. Courts considering the validity of the new official's challenge should not refuse to hear it altogether because a predecessor decades earlier entered into the consent decree. The support for this lies in *Chisom*, and *Horne*:

> institutional reform consent decrees require a "flexible approach" that "allows courts to ensure that 'responsibility for discharging the State's obligations is returned promptly to the State and its officials' when the circumstances warrant.

*Chisom*, 116 F4th at 317; *see also Horne v. Flores*, 557 U.S. 433, 448 (2009) (reversing Ninth Circuit for paying too little deference to federalism concerns). That is because reform litigation "reach[es] beyond the parties involved directly in the suit and impact[s] on the public's right to the sound and efficient operation of its institutions." *Rufo v. Inmates of Suffolk Cnty.*, 502 U.S. 367, 381 (1992) (quotation omitted).[5] Otherwise, litigants could sue and settle, have a consent decree installed, and use it to ignore and flout future changes in state law ad infinitum. Effectively, this could disenfranchise future voters by tying the hands and silencing the voices of officials they elect.

It is therefore the challenge that provides the limiting principle the Court seeks. Challenges must be based on a solid argument, like here, where a state's overhauled bail-reform laws moot a case.

---

[5] Justice O'Connor spotted the problem of an inflexible standard in *Rufo*, noting that the district court's decision not to modify a decree because the modification sought "would not comply with the overall purpose of the consent decree" and "would set aside the obligations of that decree" vitiated the very flexible standard it purported to apply. *Rufo v. Inmates of Suffolk Cnty.*, 502 U.S. 367, 396 (1992) (O'Connor, J., concurring) ("every modification, by definition, will alter an obligation of a decree").

**III. Points of Clarification on pro se action, statements of regret, evidence, habeas matters, and timeliness.**

**a. Plaintiffs are flatly wrong and ignore *In re Goodhart*'s clear statements in arguing the Judges could represent their offices *pro se*.**

The Fifth Circuit has already answered whether the Judges should have proceeded *pro se*: "If the four judges were unable to obtain counsel independent of their judicial colleagues who support the consent decree, we do not see how they could have filed earlier." *In re Goodhart*, 2026 U.S. App. LEXIS 26177 at *11. Undeterred, Plaintiffs' counsel claims incredulity that a sitting criminal county judge sued in their official capacity would not file a *Younger* motion *pro se* in a complex federal civil rights case. Plaintiffs concede that the most difficult issue for them to overcome is that Judge Garcia took the bench in 2025. Appdx. 1 at 84:6-8 (9/22/26 hearing transcript). But they argue all of the Judges should have immediately filed *Younger* motions on their own (and that Judge Garcia could have filed on January 1st, *id*. at 49-50), ignoring the glaring discrepancy that *In re Goodhart* clocked: every one of their judicial colleagues had representation.[6]

Plaintiffs' representations about the Judicial Code of Ethics, Canon 4(G), must be corrected. That Canon does not allow judges to represent their offices *pro se*. Judges cannot practice law unless permitted by statute or the Code of Judicial Conduct. Canon 4(G) is an exception that allows a judge to act *pro se* or give legal advice to family members—*that is, they may represent themselves individually*. This is explained in Judicial Ethics Opinion 226 (1998), which asks whether a judge, under Canon 4(G), may represent herself **when sued individually**. It certainly does not opine that a judge sued in her official capacity may represent her **office** *pro se*. In fact, federal courts have rejected officials' attempts to represent themselves in their official

[6] Plaintiffs also argue that unrepresented parties' communications with the monitor somehow waive *Younger*. Perhaps they argue this because there is nothing other than monitor reporting and Mr. Fife's appearance on the docket between *Daves II*'s issuance and the AG's motion to intervene in August 2025. *See* Dkts. 736-740.

capacities. *See Cain v. Ruiz*, No. 92-4096 SECTION "K" (6), 1993 U.S. Dist. LEXIS 326, at *2 (E.D. La. 1993) (permitting Harris County district attorney to represent himself *individually* but ordering counsel must appear for official-capacity claims). Plaintiffs' *pro se* arguments do not support waiver.

**b. Rule 60 does not transform Fifth Circuit precedent into a "statement of regret."[7]**

Plaintiffs contend that, under *Rufo*, the Court must consider whether there has been a significant change in circumstances to justify vacatur and, if so, the Court must determine what modification of the Decree is appropriate to tailor it to the changed circumstance. For example, Plaintiffs propose that the Court determine "whether *Daves* is a significant change in law in the first place…" Appx. 1 at 36:1-2. This argument is nonsensical. Even Plaintiffs admit that *Daves II* is binding precedent. *Id*. at 35. It is therefore law of the case that must be followed.

Plaintiffs argue the Court is constrained to delve into a deep factual analysis that the Fifth Circuit has found is unnecessary. Not every 60(b) analysis will be the same.[8] To be sure, the Four Judges do not believe application of Rule 60(b) or (c) hurts their Renewed Request to Apply *Younger*. In fact, on proper application, the Four Judges meet the requirements of Rule 60(b)(5), (b)(6) and Rule 60(c)'s "reasonable time" limits, should the Court apply them. Of course, Rule 60(c)'s timeliness requirement is extended by "good cause" for any delay. *In re Edwards*, 865 F.3d 197, 208, 676 Fed. Appx. 298 (5th Cir. 2017) (quoting *In re Osborne*, 379 F.3d 277, 283 (5th Cir. 2004)). Thus, the Four Judges' arguments against waiver apply equally here.

Nevertheless, as the Court acknowledges, this is an unusual case. The Fifth Circuit has held

---

[7] Appx. 1 at 37:12-16.

[8] As discussed in *Chisom*, heightened deference to the district court is not warranted in 60(b)(5) analyses and, if anything, "that deference should be lessened relative to an ordinary case." *Chisom*, 116 F.4th at 31.

that no detailed factual development is required. On August 27, 2026, the parties and Court discussed that order, which leaves only a 'window crack' of a fact issue to discuss.

Nor is there a 'great and irreparable harm' exception that warrants departure from *Daves II*, which exposed Plaintiffs' "incorrect assumption that each moment in erroneous pretrial detention is a constitutional violation." *Daves II*, 64 F.4th at 632. Plaintiffs have speculated that if S.B. 9 were followed in Harris County misdemeanor cases, then thousands of constitutional violations will occur.[9] They try to use Rule 60(b) as a vehicle to raise new challenges to S.B. 9 in this case. But under *Daves II*, "both the provisions of S.B. 6 and their implementation are alleged to raise constitutional issues beyond the scope of this case and the circumstances of the plaintiffs who filed it." *Id*. at 635. S.B. 9 is implemented in Texas' other counties without state or federal lawsuits challenging constitutional violations under S.B. 9. And, after this Court dismissed *Russell*, felony arrestees in Harris County have been processed according to state law and S.B. 9 without any outcry of thousands of constitutional violations. Therefore, Plaintiffs' argument that applying Texas' new laws will result in constitutional violations is the same "incoherent' argument that *Daves II* rejected. *Daves II*, 64 F.4th at 635 (rejecting plaintiffs' argument that the county's bail practices would remain unconstitutional under Texas' new laws, and explaining that Texas requires a bail decision within 48 hours of arrest that reflects individualized consideration of the Article 17.15 factors, and imposition of the least restrictive conditions to reasonably ensure appearance in court and protect public safety). It should not be considered here.

**i. Evidence**

Plaintiffs and other parties created declarations and figures in the days before filing their

[9] Frankly, if the County was able to transform its pre-decree procedures to comply with the Decree, it is able to modify those procedures to comply with state law. Plaintiffs' argument that chaos would ensue 'if the decree goes away and local rule 9 is eliminated' is baseless, and forgets that the majority HCCCL judges are able to keep in place as many procedures in Rule 9 that do not conflict with S.B. 9 as they wish.

responses (filed on a Friday evening before a Tuesday hearing). They characterize their attachments as 'undisputed.' They are wrong on two fronts.

First, their evidence is not undisputed, it is wholly ***unvetted***. The Judges' motion followed *In re Goodhart*'s strict instruction that, to follow *Daves II*, no factual development is required. Plaintiffs ignored this directive, and in doing so, they invite the Court to deviate from the Fifth Circuit's mandate. The Judges' objection to Plaintiffs' evidence is that it is irrelevant under *In re Goodhart*, under Federal Rules of Evidence 402 and 403 and unhelpful opinion evidence under Rules 701-704. In its August 27, 2026 hearing, this Court agreed the last, limited fact issue concerned the Judges' inability to obtain counsel. *See* Dkt. 862, 863. The Judges reiterate their objections to the Plaintiffs' and Harris County's declarations that outline unsupported and speculative impacts to the County, several of which were disclosed three days before the hearing when they filed their Responses, including Exhibits B-5, B-7, B-9 and B-12. Importantly, the Judges' objections are no acquiescence to the conclusions and figures that Plaintiffs and the County present. Again, those declarations and figures were undisclosed, and are completely unvetted.

Second, their evidence lacks foundation and is grossly overinflated. For example, with respect to the millions in costs that Harris County claims will be incurred if it follows state law, those figures are utterly inflated speculation.[10] On their face, these exhibits do not consider the fact that without the Decree, the majority of the HCCCL judges will be returned their state-given control over their local rules, and that in 2022 they proposed a fast-track system to replace GOB procedures aimed at satisfying state law and effecting the swift release of nonviolent misdemeanor

[10] Plaintiffs and the County ignore the millions paid to Plaintiffs' counsel, the monitors, and in costs to implement and perpetuate the Decree. This, too is a federalism concern *Horne* recognizes: "[f]ederalism concerns are heightened when…a federal court decree has the effect of dictating state or local budget priorities." *Horne*, 557 U.S at 448.

arrestees. Dkt. 801-2 at 2. The Monitor rejected judges' proposal.[11] Regardless, an additional 28,000 people will not be detained each year, as the County argues.

**ii. Habeas Cases**

Counsel for the 12 Judges discussed habeas proceedings at the hearing. But the Supreme Court has that "extraordinary circumstances" required under 60(b)(6) "will rarely occur in the habeas context" and that "not every interpretation of the federal statutes setting forth the requirements for habeas provides cause for reopening cases long since final." *Gonzalez v. Crosby*, 545 U.S. 524, 535-37 (2005).

**iii. Timeliness**

Plaintiffs cite *Coney Island* and Rule 60(c)'s reasonable time requirements. Assessing what is a reasonable time may, in some circumstances, provide a basis for rejecting a challenge to a final judgment, or even a continuing injunction in the form of a consent decree. *Coney Island* applied Rule 60(c) timeliness to a Rule 60(b)(4) challenge and held that waiting seven years after entry of the judgment was not timely. *Coney Island Auto Parts Unltd., Inc. v. Burton*, 607 U.S. 155 (2026). But that case involved a final judgment, not an ongoing decree imposing institutional reforms.[12] Plaintiffs cite *RC v. Nachman*, a case involving a consent decree transforming Alabama's child welfare system. *RC v. Nachman*, 969 F. Supp. 682 (M.D. Ala. 1997). In that case, the court discussed several Rule 60(b) arguments, including a change in the law, and concluded the motion was untimely because the defendant waited four years after the changed law without any explanation for the delay. *Id.* at 700-03. That is not the case here, as discussed in the Judges'

[11] That the Monitor could review and reject judicial officials' proposal to modify their local rules governing pretrial bail procedures is the very interference that *Daves II* and *O'Shea* warned against.

[12] Stated differently, *Coney Island* does not change the result here, where a consent decree creates ongoing daily interference with state law and state court proceedings, and a reviewing court overruled its prior order underpinning the Decree. Regardless, as discussed above, Rule 60 factors are met, and this Court must apply *Younger* and abstain.

renewed *Younger* motion and reply. Here, the Rule 60(c) requirement of filing within a reasonable time does not apply to bar *Younger* abstention, based on the same facts and reasons discussed by the Judges in response to Plaintiffs' waiver-by-conduct arguments. Nor could a rule of civil procedure ever be used to reject a jurisdictional argument like mootness. And while Plaintiffs argue "reasonable time" under 60(c) is not the same standard as waiver, they ignore the clear statement in *In re Goodhart* that the judges could not have filed sooner if they did not have counsel.

**CONCLUSION AND PRAYER**

The Fifth Circuit gave clear and specific instructions. The result is the same under a mootness or *Younger* analysis: dismissal. The Judges ask that the Court consider *Younger*, *In re Goodhart*, and issue an order following *Daves II*.

Respectfully submitted,

**GREER, HERZ & ADAMS, L.L.P.**

By: /s/ *Joseph R. Russo, Jr.*
Joseph R. Russo, Jr.
Federal I.D. No. 22559
State Bar No. 24002879
jrusso@greerherz.com
Angie Olalde
Fed. ID No. 690133
State Bar No. 24049015
aolalde@greerherz.com
123 Rosenberg Street, Suite 3000
Galveston, Texas 77550
(409) 797-3200 (Telephone)
(866) 456-0170 (Fax)

**ATTORNEYS FOR DEFENDANTS**
**HON. PAULA GOODHART,**
**HON. JESSICA PADILLA,**
**HON. LESLIE JOHNSON, AND**
**HON. LINDA GARCIA**

**CERTIFICATE OF SERVICE**

I certify that on the 24th day of September, 2026, a true and correct copy of the foregoing document was delivered to all counsel of record via the CM/ECF system and served by electronic notice to all parties of record.

*/s/ Joseph R. Russo, Jr.*