**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| MARANDA LYNN ODONNELL, *et al.*, on behalf of themselves and all others similarly situated, | § | |
| Plaintiffs, | § | CIVIL ACTION NO. 4:16-cv-01414 (Consolidated Class Action) |
| v. | § | |
| HARRIS COUNTY, TEXAS, *et al.*, | § | |
| Defendants. | § | |

**PLAINTIFFS' POST-HEARING SUPPLEMENTAL BRIEF**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

I. INTRODUCTION ........ 1

II. PROCEDURAL AND FACTUAL BACKGROUND ........ 2

III. ORDER OF OPERATIONS ........ 4

IV. ARGUMENT ........ 6

A. The Court is Obligated to Apply Rule 60. ........ 6

B. Under Rule 60, the Court Should Deny the Motion to Vacate Based on *Younger*. ........ 8

1. The motion to vacate is untimely. ........ 8
2. Movants waived *Younger*. ........ 12
3. The Court should not consider *Younger* "first," but rather do so as part of the Supreme Court's *Rufo* test. ........ 14
4. Movants have not carried their burden under *Rufo*. ........ 15

C. *In re Goodhart* Did Not Provide an Independent Vehicle for Considering Vacatur or Abstention, but Even if It Did, Neither Is Required. ........ 21

D. Mootness Plays No Part in This Court's Analysis ........ 22

1. Mootness has no application to an unsatisfied consent decree ........ 22
2. *Goodhart* does not require expedited consideration of "mootness," and the Court should not expedite consideration of this fact-bound issue. ........ 25
3. An argument for vacatur based on mootness would fail. ........ 28

V. CONDITIONAL REQUEST FOR A STAY ........ 31

VI. CONCLUSION ........ 32

# TABLE OF AUTHORITIES

## Cases

*Ballard v. Wilson*,
856 F.2d 1568 (5th Cir. 1988) .......... 20

*Bank of Nova Scotia v. United States*,
487 U.S. 250 (1988) .......... 7, 22

*Barrow v. New Orleans S.S. Ass'n*,
932 F.2d 473 (5th Cir. 1991) .......... 14

*Browder v. Dir., Dep't of Corrections of Ill.*,
434 U.S. 257 (1978) .......... 9

*Callon Petroleum Co. v. Frontier Ins. Co.*,
351 F.3d 204 (5th Cir. 2003) .......... 7, 15

*Carlisle v. United States*,
517 U.S. 416 (1996) .......... 7, 9, 22

*Chafin v. Chafin*,
568 U.S. 165 (2013) .......... 23

*Chisom v. Louisiana ex rel. Landry*,
116 F.4th 309 (5th Cir. 2024) .......... 25

*Clark v. Davis*,
850 F.3d 770 (5th Cir. 2017) .......... 8, 11

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976) .......... 16

*Coney Island Auto Parts Unlimited v. Burton*,
607 U.S. 155 (2026) .......... passim

*Cooper v. Texas Alcoholic Beverage Comm'n*,
820 F.3d 730 (5th Cir. 2016) .......... 20

*Daves v. Dallas Cty.*,
22 F.4th 522, 545 (5th Cir. 2022) .......... 31

*Daves v. Dallas Cty.*,
64 F.4th 616 (5th Cir. 2023) .......... passim

*Davila v. State of Tex.*,
489 F. Supp. 803 (S.D. Tex. 1980) .......... 31

*Doe v. Briley*,
562 F.3d 777 (6th Cir. 2009) .......... 8

*Doran v. Salem Inn, Inc.*,
422 U.S. 922 (1975) ........ 20

*Evans v. Fenty*,
701 F. Supp. 2d 126 (D.D.C. 2010) ........ 23

*Evans v. Garza*,
161 F.4th 315 (5th Cir. 2025) ........ 18

*First RepublicBank Fort Worth v. Norglass*,
958 F.2d 117 (5th Cir. 1992) ........ 8, 9, 11, 28

*Fischer v. United States*,
603 U.S. 480 (2024) ........ 24

*Frazar v. Ladd*,
457 F.3d 432 (5th Cir. 2006) ........ 23

*Hartmann v. Chudzik*,
No. 25-2762, 2026 WL 2871863 (3d Cir. Sept. 24, 2026) ........ 16, 17

*Horne v. Flores*,
557 U.S. 433 (2009) ........ 23

*In re Goodhart*,
No. 26-20337, 2026 WL 2517641 (5th Cir. Aug. 26, 2026) ........ passim

*Inmates of Suffolk Cty. Jail v. Rufo*,
12 F.3d 286 (1st Cir. 1993) ........ 21

*Jonathan R. by Dixon v. Justice*,
41 F.4th 316 (4th Cir. 2022) ........ 16

*Joseph A. ex rel. Wolfe v. Ingram*,
275 F.3d 1253 (10th Cir. 2002) ........ 20

*Kentucky v. Graham*,
473 U.S. 159 (1985) ........ 10

*Laccinole v. Wood*,
No. 3:23-CV-1831, 2024 WL 5455818 (N.D. Tex. Dec. 13, 2024) ........ 22

*Louisiana Env't Action Network v. City of Baton Rouge*,
677 F.3d 737 (5th Cir. 2012) ........ 24

*Mission Prod. Holdings, Inc. v. Tempnology, LLC*,
587 U.S. 370 (2019) ........ 23

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
491 U.S. 350 (1989) ........ 16

*New York State Rifle & Pistol Ass'n, Inc. v. City of New York*,
590 U.S. 336 (2020) ........ 23

*ODonnell v. Harris Cty.*,
227 F. Supp. 3d 706 (S.D. Tex. 2016) ........ 17

*ODonnell v. Harris Cty.*,
251 F. Supp. 3d 1052, 1099 (S.D. Tex. 2017) ........ 5, 18, 19

*ODonnell v. Harris Cty.*,
892 F.3d 147 (5th Cir. 2018) ........ 17, 19, 26

*Peak Med. Oklahoma No. 5, Inc. v. Sebelius*,
No. 10-CV-597, 2010 WL 4809319 (N.D. Okla. Nov. 18, 2010) ........ 31

*R.C. by Ala. Disabilities Advoc. Program v. Nachman*,
969 F. Supp. 682 (M.D. Ala. 1997) ........ 10

*Ruiz v. Estelle*,
650 F.2d 555 (5th Cir. 1981) ........ 31

*Salazar v. D.C.*,
685 F. Supp. 2d 72 (D.D.C. 2010) ........ 7

*Salazar v. District of Columbia*,
729 F. Supp. 2d 257 (D.D.C. 2010) ........ 10

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
549 U.S. 422 (2007) ........ 7

*Smith v. Sch. Bd. of Concordia Par.*,
906 F.3d 327 (5th Cir. 2018) ........ 24

*Spallone v. United States*,
493 U.S. 265 (1990) ........ 24

*Sprint Commc'ns, Inc. v. Jacobs*,
571 U.S. 69 (2013) ........ passim

*Tex. Ent. Ass'n. Inc. v. Hegar*,
10 F.4th 495 (5th Cir. 2021) ........ 16

*United States v. Alcoa, Inc.*,
533 F.3d 278 (5th Cir. 2008) ........ 24

*United States v. Payner*,
447 U.S. 727 (1980) ........ 7

*United States v. Robinson*,
361 U.S. 220 (1960) ........ 9

*United States v. Swift & Co.*,
286 U.S. 106 (1932) ... 24

*Walker v. City of Calhoun*,
901 F.3d 1245 (11th Cir. 2018) ... 17

*Washington v. Fishing Vessel Ass'n.*,
443 U.S. 658 (1979) ... 30

*Williams v. Lesiak*,
822 F.2d 1223 (1st Cir. 1987) ... 30

*Younger v. Harris*,
401 U.S. 37 (1971) ... passim

**Statutes**

Senate Bill 6 ... passim

Senate Bill 9 ... passim

Tex. Code Crim. Proc. art. 17.028(b) ... 27

Tex. Code Crim. Proc. art. 17.03 ... 27

Tex. Code Crim. Proc. art. 17.15 (1993) ... 27

Tex. Loc. Gov't Code § 157.901 ... 13

**Treatises**

13B Wright & Miller, Fed. Prac. & Proc. § 3533 (3d ed.) ... 24

**Rules**

Fed. R. App. P. 4(a) ... 9

Fed. R. Civ. P. 6(b) ... 8

Fed. R. Civ. P. 60(b) ... passim

Fed. R. Civ. P. 60(b)(4) ... 7

Fed. R. Civ. P. 60(b)(5) ... passim

Fed. R. Civ. P. 60(b)(6) ... 22

Fed. R. Civ. P. 60(c)(1) ... passim

Fed. R. Civ. P. 62(d) ... 31

Fed. R. Crim. P. 29 ... 9

Tex. R. Prof. Cond. 1.01(a) ... 14

**Other Authorities**

Tex. Judicial Ethics Ops., Op. No. 226 (1998) ... 13

# I. INTRODUCTION

This Court has asked how best to comply with *In re Goodhart*'s mandate to "consider *Younger*"[1] and "follow *Daves II*."[2] *In re Goodhart*, No. 26-20337, 2026 WL 2517641, at *5 (5th Cir. Aug. 26, 2026) (per curiam) ("*Goodhart*"). There is only one answer: the Court must apply Rule 60 and binding precedent to the motion to vacate. If the Court does so, it will have complied with *Goodhart*'s mandate. It also will have determined that the motion to vacate must be denied.

At various points in the September 22 motion hearing, the Court also asked for guidance about "what to decide *first*." Ex. A (Rough Tr. Hr'g 9/22/2026) at 2:8–18 (emphasis added); *id.* at 5:8–10. But there is only one decision: whether to grant vacatur under Rule 60. *Goodhart* instructed this Court to address abstention *fast*—not first. And that makes sense, because there is no mechanism in civil procedure, after a final judgment is issued, to extricate consideration of *Younger* from the overarching framework of Rule 60. The analysis is not divisible. Just as a court does not independently assess subject-matter jurisdiction in the Rule 60 context, *see generally Coney Island Auto Parts Unlimited v. Burton*, 607 U.S. 155 (2026), this Court does not "decide" *Younger*, it considers it as part of the governing Rule 60 framework.

This basic fact of civil procedure and federal court jurisdiction is entirely compatible with the mandate. The *Goodhart* majority only directed this Court to "consider" *Younger* expeditiously and "follow" *Daves II*. 2026 WL 2517641, at *5. The Court does that by evaluating *Younger* and *Daves II* as a basis for vacatur under Rule 60. Goodhart did not—could not—abrogate Rule 60 or overrule *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992), announce a freestanding mechanism outside the federal rules for "abstaining" from litigation after final judgment, or

---

[1] *Younger v. Harris*, 401 U.S. 37 (1971).

[2] *Daves v. Dallas Cty.*, 64 F.4th 616 (5th Cir. 2023) (en banc) ("*Daves II*").

authorize this Court to reject binding precedent. The Judges petitioned for a writ of mandamus asking the Fifth Circuit to require this Court to move more quickly. And that is what they got. By accelerating a ruling on the motion to vacate based on abstention under Rule 60, and following *Daves II* as precedent, this Court fully complies with the mandate.

Rule 60(c)(1) imposes a procedural requirement independent of the merits that the motion be filed "within a reasonable time." Fed. R. Civ. P. 60(c)(1). The Four Judges first raised *Younger* 32 months after *Daves II*. The Attorney General waited 29 months to make a similar motion, despite participating as a nonparty for years, choosing not to assert *Younger* once the judicial-defendants withdrew their pending request for abstention, and urging the Fifth Circuit to reach the merits. Those delays are fatal.

Nonetheless, the Court also has an adequate record to deny their motion on the merits on numerous alternative grounds, which it should do to create a comprehensive record for a streamlined appeal of all issues and avoid the need for a limited remand for further factfinding.

At the conclusion of the hearing, this Court requested supplemental briefing on the "order of operations" for deciding the pending motion raising *Younger*, whether the *Goodhart* mandate requires this Court to consider mootness, and several other issues. That briefing follows.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Two and a half years after *Daves II* was decided, the Four Judges moved to vacate the seven-year-old *ODonnell* Consent Decree based in part on *Daves II*'s abstention holding. Dkt. 793. Four months into discovery, the Four Judges asked this Court to expedite a ruling on *Younger* abstention. Dkt. 803. The Court declined. Dkt. 821 at 2 ("Rule 60(b)'s equitable analysis requires an appropriate factual record."). The Judges eventually petitioned for a writ of mandamus from the Fifth Circuit to order this Court to "immediately consider *Younger* abstention and follow this

Court's precedent in *Daves II*," noting that the evidentiary hearing was set for after the elections. Petition for Writ of Mandamus at 11, *In re Goodhart*, No. 26-20337 (5th Cir. June 25, 2026).

Two months later, a divided panel of the Fifth Circuit issued the writ of mandamus, stating:

> The district court must consider the four judges' *Younger* abstention argument on an expedited basis, well in advance of the upcoming Texas judicial election on November 3, 2026. We also direct the district court to follow *Daves II.*

*Goodhart*, 2026 WL 2517641, at *5. The court's narrow mandate did not instruct this Court to "consider *Younger*" *before* other issues, to consider it outside of Rule 60, or to avoid the factual questions related to timeliness, waiver, and the exceptions to *Younger* for bad faith and irreparable harm that *Daves II* did not resolve.[3] It certainly did not tell this Court that it must vacate the Consent Decree.

Following *Goodhart*, the Attorney General moved the Court to reconsider its prior denial of his motion to intervene to raise *Younger* in a motion to vacate. Dkt. 861. The Court reserved judgment on the Attorney General's motion for reconsideration, but instructed him to file a conditional motion for vacatur. Dkt. 877 (Tr. Hr'g 8/31/26) at 35. All parties agreed that the new motions would deal only with abstention, *see id.* at 38–39, 46–47, 71, and the agreed language in the scheduling order explicitly limited the briefing and hearing as such, Dkt. 867.

In accordance with the scheduling order, the Four Judges filed a motion to vacate, styled as a "Renewed Request for Younger Abstention," Dkt. 864, and the Attorney General filed a "Conditional Joinder in the Four Judges' Request for *Younger* Abstention," Dkt. 865. The Attorney General's motion to reconsider, the Four Judges' "Renewed Request," and the Attorney General's conditional joinder are the three motions pending before the Court.

---

[3] The Fifth Circuit's ruling did not "instruct that fact findings and discovery are not necessary to apply *Younger* abstention in this case," as the Four Judges had also requested. *Compare* Petition for Writ of Mandamus at 23, *with Goodhart*, 2026 WL 2517641.

## III. ORDER OF OPERATIONS

This Court requested guidance on the order in which it should navigate the numerous legal and factual components of the task before it, all while complying with the mandate and following binding precedent. To do so, the Court must proceed as follows:

First, the Court must decide whether Rule 60 applies. As explained *infra* IV.A., this is no decision at all. There is no other mechanism for this Court to consider the relief that Movants seek, so Rule 60 must apply.

Second, assuming Rule 60 applies, the Court must decide whether the Rule 60 motion was timely filed. As discussed *infra* IV.B.1., the motion to vacate is untimely.

Third, the Court must determine whether Movants waived *Younger* by inducing years of prejudicial reliance from Non-Movants. As explained *infra* IV.B.2., Movants waived *Younger*.

Fourth, the Court must apply Rule 60 and the *Rufo* test to determine whether *Daves II*'s abstention holding justifies vacatur. As part of that determination, the Court must assess whether Movants have carried their burden to show: (a) that *Daves II* is "a significant change in law" that would have applied on the facts of this case; (b) that *Younger* would have applied to the case when filed, had *Daves II* been binding precedent at the time; and (c) that vacatur is a "suitable" modification because it will not result in constitutional violations and is justified by the equities. As explained *infra* IV.B.3–4, the motion to vacate fails at each step of *Rufo*'s test.

Although the Court has some flexibility in the order it considers these issues (for instance, it could address Rule 60(c)(1) timeliness before or after applying *Rufo*), to grant the motion, the Court would have to do all of the following:

1. Assess timeliness, and find at least one of the Movants had raised *Younger* in a reasonable time, Fed. R. Civ. P. 60(c)(1);

2. Assess waiver, and find that at least one of the Movants had neither expressly waived *Younger* nor acted inconsistently with an intent to raise it;

3. Assess whether a change in abstention doctrine is a qualifying change in law under *Rufo*, and be the first court to hold that it is;

4. Apply *Younger* and *Daves II* to the facts of this case as they were when Plaintiffs sued, and find that the County's bail practices in 2016 provided an adequate opportunity to raise constitutional issues even though arrestees were shouted down, told not to speak, and had no lawyers, and even though 85% of people detained at disposition pleaded guilty to get out of jail, typically the same day, and did so in a median of 3.2 days, *ODonnell v. Harris Cty.*, 251 F. Supp. 3d 1052, 1099, 1105 (S.D. Tex. 2017);

5. Assess whether detention hearings fall within a *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013), category subject to potential abstention, and disregard law of the case on this question (never briefed or considered in *Daves II*) to hold that they do;

6. Assess whether abstaining from hearing the case in 2016 would have exposed plaintiff class members to "great and immediate irreparable harm," reversing this Court's prior findings on irreparable harm and finding that abstaining would *not* result in irreparable harm to the Plaintiff class, including unlawful pretrial jailing, coerced guilty pleas, lost jobs, lost housing, lost custody, and other harms;

7. Assess whether Movants have met their burden to show that constitutional violations will not recur if the Consent Decree is vacated, and find that they have despite the only evidence in the record demonstrating that vacatur will result in pretrial detention of thousands of people for arbitrary, unjustified, money-based reasons, the precise constitutional violations the decree is designed to prevent; and

8. Assess whether Movants have met their burden to show that the equities weigh in favor of vacatur, and find that they have done so despite the only evidence in the record demonstrating that vacating the Consent Decree will reduce pretrial liberty, harm public safety, and cost County taxpayers millions.

The Movants cannot navigate this gauntlet. They have not even tried. Indeed, they do not think they are required to. They are wrong.

Even if the Court denies the motion at an early decision point, it should analyze and make

factual findings on each component of the *Rufo* test to streamline appellate proceedings and avoid the possibility of a limited remand.

Applying the steps above will both comply with *Goodhart* and reach a result consistent with other binding precedent that *Goodhart* could not have overruled. And contrary to the Four Judges' suggestion at argument, the divided and unpublished per curiam opinion did not establish a free-standing first-of-its-kind procedure for vacatur unmoored from Rule 60(b). *See infra* IV.C.

The Court should not address mootness. *See infra* IV.D. At status conferences on August 27 and August 31, 2026, the parties agreed the Court should only consider *Younger* as a basis for vacatur. That understanding was memorialized in the operative schedule. Moreover, mootness has no bearing on a consent decree and is not contemplated by *Goodhart*'s mandate. Even if the Court addresses mootness now, Movants have failed to carry their burden under Rule 60.

Lastly, if the Court finds Movants satisfied their Rule 60 burden and vacates the Consent Decree, it should administratively stay that order to allow Non-Movants to seek a stay pending appeal. *See infra* V.

## IV. ARGUMENT

### A. The Court is Obligated to Apply Rule 60.

As Plaintiffs explained in detail in prior briefing, because Movants seek relief from a consent decree, this Court must apply Rule 60. *See* Dkt. 885 (Pls' Opp. to Four Judges' Request for Abstention) ("Pls' Opp.") at 41–44. Movants did not meaningfully contest this fact at the September 22 hearing other than to make the creative argument, lacking any textual or legal support and conflicting with binding law, that "our view is the mandate is the procedure." Ex. A (Rough Tr. Hr'g 9/22/2026) at 70:22–23.

When a party to a consent decree seeks relief based on a change in law, as Movants do here, Rule 60(b)(5) applies. That rule authorizes courts to modify a final judgment when "applying

it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992), is "the leading case setting forth the standards for modifying a final judgment under Rule 60(b)(5) in institutional reform cases." *Salazar v. D.C.*, 685 F. Supp. 2d 72, 76 (D.D.C. 2010), *aff'd*, 633 F.3d 1110 (D.C. Cir. 2011). In *Rufo*, the Supreme Court set out a fact-specific test, holding that the "party seeking modification of a consent decree" bears the burden of establishing "that a significant change in facts or law warrants revision of the decree and that the proposed modification is suitably tailored to the changed circumstance." *Id.* at 393.

The Court should reject Movants' mandate-as-procedure rule since it conflicts with Rule 60 and oversteps limits on appellate jurisdiction. The Supreme Court has rejected the view that a court of appeals has "'discretionary power to disregard the considered limitations of the law it is charged with enforcing.'" *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988) (quoting *United States v. Payner*, 447 U.S. 727, 737 (1980)). When a federal rule controls, a federal court "may not invoke supervisory power to circumvent" the procedure dictated by the rule. *Id.*; *see, e.g.*, *Carlisle v. United States*, 517 U.S. 416, 424 (1996) (finding a court's "supervisory power" cannot "supersed[e] clear rules that . . . mean . . . what they plainly say"). But that is exactly what Movants attempt to do: use *Goodhart* to displace Rule 60, which it could not have done.[4] That is why the Fifth Circuit has evaluated abstention-based attacks on final judgments under Rule 60(b). *Callon Petroleum Co. v. Frontier Ins. Co.*, 351 F.3d 204, 208–09 (5th Cir. 2003) (affirming denial of Rule 60(b)(4) motion because district court had diversity jurisdiction, even though abstention "would have been proper" had it been timely raised before settlement).

---

[4] The only case Movants cite for their proposition that *Younger* can be considered as a threshold matter outside of Rule 60 is *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007). Dkt. 887 (AG's Reply) at 10–11. But *Sinochem* merely held that a court can address a forum non conveniens plea before other threshold objections. It offers no support for uncoupling and extracting the Court's application of *Younger* from the rest of the Rule 60 test.

Assuming the Court finds that Movants did not waive reliance on Rule 60, the Court must next consider whether the motion meets Rule 60's requirements, beginning with assessing whether it is timely under Rule 60(c)(1).

**B. Under Rule 60, the Court Should Deny the Motion to Vacate Based on *Younger*.**

*1. The motion to vacate is untimely.*

If Rule 60 is the vehicle, its "operative language clearly requires parties to make Rule 60(b) motions within a reasonable time." *Coney Island Auto Parts*, 607 U.S. at 162. The Attorney General waited 29 months and the Four Judges waited 32 months to seek relief from judgment by asserting *Daves II* requires abstention. That is untimely. *See First RepublicBank Fort Worth v. Norglass*, 958 F.2d 117, 121 (5th Cir. 1992). Nor does any good cause excuse Movants' delay. *See Clark v. Davis*, 850 F.3d 770, 780 (5th Cir. 2017); Pls' Opp. at 63–65. The Court is also prohibited from "extend[ing] the time to act under Rule[] . . . 60(b)." Fed. R. Civ. P. 6(b).

The Court asked whether, if it found abstention appropriate here, it could still deny the motion as untimely. The answer is yes. In *Coney Island Auto Parts*, an eight-justice majority rejected the movant's argument that, since they alleged a void judgment and a "void judgment is a legal nullity," the "reasonable-time limit does not apply." *Coney Island Auto Parts*, 607 U.S. at 159 (quotation omitted). Thus, even if the Court were inclined to find that it would have abstained in this case in 2016 if *Daves II* had preceded this Court's ruling on the motions to dismiss, it still can deny the motion as untimely. Indeed, it must.[5]

[5] The Four Judges attempted to find support in *Doe v. Briley*, 562 F.3d 777 (6th Cir. 2009). Dkt. 886 (Four Judges' Reply) at 17–18. *Briley* affirmed the district court's finding that the movants' belated filing satisfied Rule 60(c)(1) because the non-movant could not "identif[y] even a shred of prejudice," *Briley*, 562 F.3d at 781, and it granted vacatur because a change in law satisfied *Rufo* first step by "mak[ing] legal what the decree was designed to prevent," *id.* at 782 (quoting *Rufo*, 502 U.S. at 388). *Briley*'s timeliness approach conflicts with the Fifth Circuit's in *Norglass* and the Supreme Court's recent holding in *Coney Island Auto Parts*. And even if that were not so, it is

Excusing Movants' untimeliness "would have extreme implications." *Coney Island Auto Parts*, 607 U.S. at 159. There is no legal principle that "require[es] courts to keep their doors perpetually open to" attacks on a final judgment. *Id.* Rather, "statutes and rules routinely limit the time during which a party can seek relief from a judgment infected by error." *Id.* For example, under Federal Rule of Appellate Procedure 4(a), the "30-day time limit is 'mandatory and jurisdictional.'" *Browder v. Dir., Dep't of Corrections of Ill.*, 434 U.S. 257, 264 (1978) (quoting *United States v. Robinson*, 361 U.S. 220, 229 (1960)). Similarly, where a criminal defendant belatedly moves for acquittal after the seven-day timeline imposed by Rule 29, the Supreme Court has said courts lack "supervisory power" to grant acquittal outside the strictures and time limit Rule 29 imposes. *Carlisle*, 517 U.S. at 424 (citing Fed. R. Crim. P. 29). Just like Federal Rule of Appellate Procedure 4 and Federal Rule of Criminal Procedure 29 prohibit tardy challenges to erroneous final judgments (regardless of the basis for the challenge), failure to file a Rule 60 motion within a reasonable time results in denial (regardless of the basis for the challenge). *See, e.g.*, *Norglass*, 958 F.2d at 121–22 (affirming denial of Rule 60(b) motion as untimely without addressing merits).

The Court asked whether the Four Judges had any limiting principle for when a Rule 60 motion would be too late. Ex. A (Rough Tr. Hr'g 9/22/2026) at 62:20–22. The Four Judges rejected any limiting principle, arguing that any "officials elected in the future . . . get a new clock," under Rule 60(c)(1), *id.* at 63:6–9, but that is wrong. Rule 60's timeliness provision runs with the office, not the individual office holder. Only "a party" may seek relief from judgment. Fed. R. Civ. P. 60(b). The Four Judges are parties only in their official capacity, meaning the "party" for purposes

---

easily distinguished here, where the prejudice of untimely filing is immense and the constitutional holding underpinning the decree is entirely undisturbed.

of filing the Rule 60 motion is the office, not the individual who happens to occupy it at a specific time. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Four Judges' view, if adopted by this Court, would "allow a complete change of position with each election," which "would completely undermine the interests of finality and repose that [Rule 60] is designed to protect." *Salazar v. District of Columbia*, 729 F. Supp. 2d 257, 261 (D.D.C. 2010). Public officers could settle litigation, receive "all the benefits of settlement," and then, with each election, attack that settlement based on "a shift in the political winds." *R.C. by Ala. Disabilities Advoc. Program v. Nachman*, 969 F. Supp. 682, 701 (M.D. Ala. 1997), *aff'd sub nom. R.C. v. Nachman*, 145 F.3d 363 (11th Cir. 1998). "Such maneuvering does not warrant the Court's indulgence." *Id.* (citation omitted).

The *Goodhart* majority recognized that the "mere transfer of power from one officeholder to another is [not] enough to vacate or modify a consent decree." 2026 WL 2517641, at *4. The Four Judges' proposed new-election-new-clock rule conflicts with that holding by reopening final judgments after each "mere transfer of power." *Id.*; *see also Salazar*, 729 F. Supp. 2d at 261. Nor did *Goodhart* say anything about Rule 60(c)(1). It instead considered whether *Younger* abstention had been waived, an entirely separate inquiry. The Court should not read into *Goodhart* an implicit holding about Rule 60(c)(1) when its plain text is clear. *See Coney Island Auto Parts*, 607 U.S. at 161 (rejecting "policy concerns, Rule 60's drafting history, and the canon of constitutional avoidance" when Rule 60's "operative language" was clear).

Based on Rule 60's text, structure, and purpose, and applying *Goodhart*, the judges of Courts 2, 3, 14, and 16 filed their motion 32 months after *Daves II*, which is untimely. But even if the Court adopts Movants' radical new-election-new-clock rule, Judge Garcia did not raise

*Younger* for eleven months.[6] In *Clark*, the Fifth Circuit found a similar delay untimely. 850 F.3d at 782. And *Norglass* favorably cited cases finding delays from three to five months untimely. 958 F.2d at 121 (collecting cases). And there is no dispute that Judge Garcia knew of the Consent Decree when she took office since she was a defendant earlier in the litigation. *See* Dkt. 158 (Motion to Substitute Darrell Jordan for Linda Garcia under Fed. R. Civ. P. 25(d)). Judge Garcia's eleven-month delay is untimely.

In their reply, the Four Judges misconstrue *Clark* as holding that the petitioner's clock started once "conflicted counsel[] was removed." Dkt. 886 (Four Judges' Reply) at 14. That line was an alternative holding addressing the most charitable timeline possible. *See Clark*, 850 F.3d at 782. More to the point, the counsel that the petitioner was given was "barred by a Texas statute from representing [him] in any federal proceeding" and could only have "advis[ed] [him] to seek federal habeas counsel and pursue concurrent federal proceedings." *Id.* at 783. But the petitioner failed to file a motion in federal court and did not find federal habeas counsel until more than a year later. *Id.* Thus, *Clark* demonstrates the Four Judges' untimeliness. They were similarly advised the existing attorneys could not represent them in a challenge to the decree. They nonetheless never filed anything, either through hired counsel or on their own, until November 2025, thirty-one months after *Daves II*.

Lastly, while the Four Judges never explicitly address timeliness under Rule 60(c)(1), their lack of counsel does not excuse untimeliness for the reasons discussed below, *infra* IV.B.2., in addition to those presented in Plaintiffs' opposition brief and at oral argument.

---

[6] It remains undisputed that the other three movant-judges knew of the *Daves II* opinion the day it issued when they were in office. *See* Dkt. 864-1 (Goodhart Decl.) ¶ 4. Their clock thus began to run on March 31, 2023 (32 months prior to them raising abstention).

*2. Movants waived* Younger.

Movants waived *Younger* via entry of the Consent Decree and years of conduct consistent with an intent to relinquish a *Younger* defense, which induced reliance from the Plaintiffs, County, Sheriff, and Judges, involving investments of millions of dollars and thousands of hours. *Goodhart* foreclosed the first theory (waiver through settlement) as to the Four Judges, but even applying *Goodhart*'s novel (and wrong) view of waiver doctrine for official capacity defendants, they waived *Younger* twice: first, because they could have filed their motion far earlier; and second, because they submitted their state law arguments for federal adjudication while allowing themselves to be bound by the Consent Decree and this Court's adjudication. Pls' Opp. at 65–71. The Attorney General's waiver is even more egregious as he waited years to raise *Younger* despite numerous opportunities and affirmatively sought a merits decision without raising it. *Id.* at 71–73.

Excusing those waivers would severely prejudice the non-moving parties. Plaintiffs, the Sheriff, the majority of judicial-defendants, and the County acted on everyone's *Younger* waiver and spent thousands of hours and millions of dollars creating the post-arrest system the Consent Decree requires. This reliance interest is not just about the misdemeanor system either. The entire post-arrest processing system relies on the Consent Decree. Ending it now, after years of making the system work under the Consent Decree, would wreak havoc on class members, taxpayers, and the officers tasked with carrying out the post-arrest system every day. *See* Pls' Opp. at 33–39.

In this brief, Plaintiffs only note that under *Goodhart*'s reasoning, the record demonstrates the Four Judges "could have filed earlier" by either retaining outside counsel or proceeding *pro se*. This is also true for Judge Garcia who waited eleven months to raise *Younger*, requested the Consent Decree be retained, though modified, and acquiesced to being bound by it for nearly an entire year.

First, as explained, the Four Judges had countless opportunities to find counsel, but chose

to focus their efforts on taxpayer-funded counsel and the Attorney General's office. Pls' Opp. at 63–64. Indeed, they did not even seek pro bono representation until August 2025. *Id.* at 63 (citing Dkt. 885-16 (Goodhart Dep.) at 86:1–22).

The Four Judges' waiver is not excused based on their asserted entitlement to counsel under state law. Dkt. 886 (Four Judges' Reply) at 10–11. Texas law requires a county's commissioner's court to pay for counsel when an official is "sued by any entity." Tex. Loc. Gov't Code § 157.901. It is an unsettled question of state law whether the County was obligated to fund outside counsel so that one of its officials could re-open a case that had been closed for over four years and which all other local officials want to preserve. But the Court need not address that issue because the Four Judges chose not to exercise any remedies under state law (such as seeking a writ of mandamus). And state law recognizes that county officials may elect to hire their own counsel, which the Four Judges chose not to do. *Id.* § 157.901(c).

Second, regardless of counsel, the Four Judges could have represented themselves *pro se*. In her deposition, Judge Goodhart said she could not "practice[e] pro bono . . . given what the judicial code of conduct says." Dkt. 886 (Four Judges' Reply) at 12–13 (quoting Goodhart Dep. at 133:13–134:5). But Canon 4(g) of the Judicial Code of Conduct expressly says that "a judge may act pro se." Tex. Code of Judicial Conduct Canon 4(g) (2026), https://www.txcourts.gov/media/1462935/texas-state-code-of-judicial-conduct.pdf. As one judicial ethics opinion puts it, "A judge may always represent herself in a legal action." Tex. Judicial Ethics Ops., Op. No. 226 (1998).[7] Nevertheless, the Four Judges chose not to.

Judge Goodhart also stated that it would be unethical to proceed *pro se* since she purportedly does not feel competent in federal practice, "particularly in matters of civil rights[.]"

[7] Accessible at: https://www.txcourts.gov/media/678096/JudicialEthicsOpinions.pdf

Goodhart Dep. at 133:13–23. But that rule applies only to "accept[ing] or continu[ing] employment," not *pro se* representation. Tex. R. Prof. Cond. 1.01(a). It also ignores the federal courts' tradition of applying strict timeliness requirements even to *pro se* litigants who are far less educated and sophisticated. Pls' Opp. at 62–63; Ex. A (Rough Tr. Hr'g 9/22/2026) at 80:2–81:4; *see also id.* at 64:22–23 (The Court: "Half of my civil docket is pro se litigants and they're not lawyers much less judges."). In the statute of limitations context, the Fifth Circuit has even refused to toll the statute of limitations for an unrepresented longshoreman who could not read because neither "unfamiliarity with the legal process nor [] lack of representation" justified equitable tolling. *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir. 1991).

Movants are correct that the facts of these cases differ from the circumstances here. But taken together, they demonstrate that the Four Judges' lack of counsel cannot excuse their inaction. The Four Judges "could have filed earlier." *Goodhart*, 2026 WL 2517641, at *4. That constitutes waiver. *Id.*

3. *The Court should not consider* Younger *"first," but rather do so as part of the Supreme Court's* Rufo *test.*

If the Court concludes that the Movants have properly invoked Rule 60, it must apply the *Rufo* test to determine whether it should grant their request and vacate the Consent Decree. Under that standard, the moving party must show "a significant change either in factual conditions or in law" that "warrants revision of the decree," *Rufo*, 502 U.S. at 383–84, and that "the proposed modification is suitably tailored to the changed circumstance," *id.* at 391.

The Court asked the parties how compliance with the *Goodhart* mandate fits into the *Rufo* test: "If I abstain, usually that's followed by a period, as in full stop, right?" Ex. A (Rough Tr. Hr'g 9/22/2026) at 5:17–18; *see also id.* at 5:8–11 ("Well, if I decide, if I decide abstention first, and I must, I think that's the order of operations, abstention first."). Under Rule 12, prior to final

judgment, abstention *is* “followed by a period,” *id.* at 5:18: if abstention is warranted, the case must be dismissed. But *after* final judgment, where Rule 60 applies, the analysis is different: the Court must *first* determine whether or not a change in abstention law would apply to the case’s facts and *then* continue through the rest of the *Rufo* test. There is no “full stop” after the Court “considers *Younger*” when it is operating in the Rule 60 context.

In other words, the *Rufo* analysis cannot be bifurcated or complied with in any other way than its entirety: the Court’s finding on “abstention” cannot possibly be separated from Rule 60. *Rufo* mandates that Movants satisfy the entirety of *Rufo*’s standard before relief is warranted. The only way for this Court to “consider *Younger*” after judgment is within the Rule 60 framework.

*4. Movants have not carried their burden under* Rufo.

Under Rule 60, Movants have the burden to show that: (a) *Daves II* is “a significant change in law”; (b) *Younger* would have applied to the case when brought, had *Daves II* been binding precedent at the time; and (c) vacatur is a “suitable” modification because it will not result in constitutional violations and it is justified by the equities. Movants do not even believe they have a burden.[8] Needless to say, they have not met it.

a. Movants fail to show that *Daves II* is a qualifying change in law.

Applying *Rufo*, this Court must determine whether *Daves II* is a qualifying change in law. Plaintiffs have explained why it is not, and why, even if it were, *Younger* and *Daves II* would not require abstention on the facts of this case, Pls’ Opp. at 45–49. Of course, as the Court knows well, Plaintiffs do not agree that *Daves II* was correctly decided, and it is wholly unprecedented for a Court to “abstain” from litigation that has proceeded to final judgment and a negotiated Consent Decree that embodies the official-capacity Defendants’ waiver. *Callon Petroleum Co.*, 351 F.3d

[8] *See, e.g.*, Ex. A (Tr. Hr’g 9/22/2026) at 4:9–10 (“We don’t believe the mandate requires a Rule 60(b) analysis.”); *id.* at 70:22–23 (Mr. Russo: “[O]ur view is the mandate is the procedure.”).

at 208–09 (affirming denial of Rule 60(b)(4) even though abstention "would have been proper" pre-settlement).

b. *Younger* and *Daves II* do not require the Court to "abstain" in this case.

If the Court decides *Daves II* is a qualifying change in law—or believes it is bound by *Goodhart* to treat it as such—then it must next apply abstention doctrine to the facts of *this* case, in compliance with the Fifth Circuit's mandate to "consider *Younger*" and "follow *Daves II*."

"Jurisdiction existing . . . a federal court's 'obligation' to hear and decide a case is 'virtually unflagging.'" *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). "[O]nly exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989) ("*NOPSI*"). "[E]xceptional circumstances exist . . . in three types of proceedings": "state criminal prosecutions," "certain civil enforcement proceedings," and "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 78 (citations and quotations omitted); *see also NOPSI*, 491 U.S. at 367–68. The Supreme Court has "not applied *Younger* outside these three 'exceptional' categories, and . . . they define *Younger*'s scope." *Sprint*, 571 U.S. at 78.

If the state-court proceeding does not fall within one of *Sprint*'s "exceptional categories," the analysis ends and abstention is improper. *See Tex. Ent. Ass'n. Inc. v. Hegar*, 10 F.4th 495, 508–09 (5th Cir. 2021) (rejecting *Younger* abstention because "none of the three 'exceptional circumstances' for *Younger* abstention apply in this case").[9]

---

[9] *Hartmann v. Chudzik*, No. 25-2762, 2026 WL 2871863, at *5 (3d Cir. Sept. 24, 2026) (rejecting *Younger* because "Plaintiffs do not seek to enjoin 'state criminal prosecutions'"); *Jonathan R. by Dixon v. Justice*, 41 F.4th 316, 329 (4th Cir. 2022) ("[I]f the case falls into one of the three settled categories, courts should go on to determine if federal involvement will in fact put comity at risk,

If it does, the Court must apply the *Middlesex* factors, *see Sprint*, 571 U.S. at 81, and consider whether "(1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges." *Daves II*, 64 F.4th at 625 (citations and quotations omitted).

In 2016, this Court held that bail hearings do not fall within a *Sprint* category as they do not affect the merits of a criminal prosecution. This Court issued an alternative holding on the *Middlesex* factors, finding that there were no ongoing proceedings, and "[t]he third factor, the adequacy of a timely hearing," "is not met." *ODonnell v. Harris Cty.*, 227 F. Supp. 3d 706, 736 (S.D. Tex. 2016). On appeal, the parties litigated the applicability of the *Middlesex* factors but not the threshold question of whether bail hearings fall within a *Sprint* category. And the *ODonnell I* decision that resolved that appeal affirmed the Court's application of *Middlesex* but said nothing about *Sprint*. *ODonnell v. Harris Cty.*, 892 F.3d 147, 153 (5th Cir. 2018) (op. on reh'g) ("*ODonnell I*").

In *Daves II*, the Court "overrule[d] *ODonnell I*'s holding against abstention" and held that "neither *ODonnell I* nor this case should have been adjudicated in federal court." *Daves II*, 64 F.4th at 631. The holding was solely based on the *Middlesex* factors. The en banc court did not consider *Sprint* because none of the parties raised it.[10] Thus, this Court's 2016 holding on *Sprint*

but if the case does not, courts need go no further[.]"); *Walker v. City of Calhoun*, 901 F.3d 1245, 1254 (11th Cir. 2018) ("*Younger* does not readily apply here because Walker is not asking to enjoin any prosecution.").

[10] In dicta, without briefing or argument, and without citation, *Daves II* purported to expand the *Sprint* categories, asserting that *Younger* has "particular application to interventions into state criminal *procedures*." 64 F.4th at 625 (emphasis added). That is not true: the Supreme Court has never held that *Younger* applies to all criminal "procedures." *See, e.g.*, *Hartmann*, 2026 WL 2871863, at *4 n.9 (citing cases in which the Third Circuit has declined to abstain though the state-court proceedings involved criminal procedures).

is the law of the case. The Court should find abstention inapplicable under Rule 60 based on its prior holding on *Sprint*.

If the Court now takes a different view on Sprint and proceeds to the *Middlesex* factors, *Daves II* likely requires it to hold that—had *Daves II* preceded the motions to dismiss in this case, abstention would have been required.[11] *Daves II* treated the *Middlesex* factors as something that can be decided as a matter of law. Plaintiffs dispute that this was proper, but acknowledge that *Goodhart* instructed this Court to apply it when it concluded that "*Daves II* does not hinge upon factual development or discovery." 2026 WL 2517641, at *3.

The command to "consider *Younger*" and "follow *Daves II*," however, does not end here. There are exceptions to *Younger* that *Daves II* did not resolve—specifically for bad faith and immediate irreparable harm—which this Court must consider in the first instance. *Daves II*, 64 F.4th at 633 ("Here, plaintiffs do not allege bad faith."); *cf. id.* at 624–25 (acknowledging the irreparable harm exception to abstention and holding that "the ordinary pains of undertaking a defense against criminal charges" does not "constitute sufficiently irreparable injury for equitable relief," without addressing the numerous enhanced harms found by this Court). Given the record evidence from the preliminary injunction hearing showing the Hearing Officers were bound to

[11] As they have noted, Plaintiffs strenuously disagree with *Daves II* and will challenge its holdings at the appropriate time. Additionally, there are key factual differences between Dallas County's bail system and Harris County's practices that are relevant to the *Middlesex* factors, most notably: in Harris County, in 2016, a bail schedule determined the amount required for release *prior to any proceeding at all*. In Dallas County, in contrast, the bail schedule was applied in the first instance *at* a 15.17 hearing. The question of whether there is an "ongoing" proceeding should be answered differently based on the different facts. *See, e.g.*, *Evans v. Garza*, 161 F.4th 315, 320 (5th Cir. 2025) ("In the case presently before us, there were no formal charges against Evans. So, we will not apply *Younger* abstention."). Additionally, *Daves II* egregiously misconstrued the law on timeliness and adequacy. The hearings in Harris County lasted seconds or minutes, and arrestees were prohibited from speaking. They typically pleaded guilty at the first opportunity. *ODonnell*, 251 F. Supp. at 1099, 1105, 1114. These hearings were not "adequate" or timely under *Middlesex*. For purposes of the motion to vacate, however, Plaintiffs acknowledge that *Daves II* is binding.

follow the Judges' instructions not to issue personal bonds, and that they imposed secured bail knowing or intending that it would detain indigent arrestees, the Court can find that the bad faith exception applies. And as to irreparable harm, this Court already held that the plaintiff class suffered irreparable injury, including infringement on the fundamental right to liberty, an increased risk of pleading guilty, conviction, and jail time, lost jobs, and the inability to maintain housing arrangements or care for their families. *ODonnell*, 251 F. Supp. at 1157–58. The Court also found that these harms could not be remedied in the ongoing proceeding because indigent people faced overwhelming pressures to plead guilty at first appearance. *Id.* at 1130–31.

The Court noted that the sentence in *Daves II*, repeated in *Goodhart*, that "*ODonnell I* . . . should [not] have been adjudicated in federal court," "has been haunting [it] for some time." *Goodhart*, 2026 WL 2517641, at *2; Ex. A (Tr. Hr'g 9/26/2026) at 37:12–13. That language from *Daves II* must be understood in the context of *Younger*, *Sprint*, law of the case, and the limits of appellate jurisdiction. Appellate courts cannot decide questions that are not before them. Accordingly, all *Daves II* could have meant when it said "*ODonnell I* . . . should [not] have been adjudicated in federal court" is that, had *Daves II* preceded *ODonnell*, the panel in *ODonnell I* would not have found that the *Middlesex* factors were satisfied. *Daves II* does not—and could not—foreclose this Court's obligations to apply the law of the case regarding the *Sprint* categories and consider whether the bad faith or immediate irreparable harm exceptions apply.

The Court also asked the parties for guidance on whether it should apply *Younger* to each individual provision of the Consent Decree. The answer is no. As explained above, *Younger* generally has no application post-judgment, so there is virtually no precedent for applying *Younger* to the provisions of a consent decree, nor should there be. Indeed, doing so would be completely inconsistent with the Supreme Court's binding test from *Middlesex*, which holds that abstention is

required at the outset of a case as to a particular claim for relief. *Sprint*, 571 U.S. at 81. There is simply no cogent way to apply the *Middlesex* analysis to each provision of the Consent Decree.

Plaintiffs have identified only one case in which a court indicated that this could be done. *Joseph A. ex rel. Wolfe v. Ingram*, 275 F.3d 1253 (10th Cir. 2002). In *Joseph A.*, the court authorized "[a] provision-by-provision *Younger* analysis." *Id.* at 1272–73. The appellate court cited just two cases, and neither is on point here. The first rejected abstention as to two of three plaintiffs because there were no ongoing proceedings against those two, *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 930–31 (1975), and the second involved abstention from injunctive claims, but not claims for damages, which were not recoverable in any state-court proceeding, *Ballard v. Wilson*, 856 F.2d 1568, 1571–72 (5th Cir. 1988). Neither dealt with a consent decree or was even a Rule 60 case. A provision-by-provision analysis of the Consent Decree would not comport with *Younger* and *Middlesex*.

c. <u>Movants fail to show that vacatur will not result in constitutional violations and is justified by the equities.</u>

Even if the Court concludes that abstention would be required under *Daves II*, it still must consider whether vacatur will create or perpetuate constitutional violations and whether the equities warrant vacatur. Plaintiffs incorporate their briefing on this issue, Pls' Opp. at 32–37, and that the equities support vacatur, *id.* at 37–39.[12]

At the hearing on September 22, the Court asked what record was relevant to determining whether vacatur will lead to constitutional violations. Ex. A (Tr. Hr'g 9/22/2026) at 32:6–18. As

[12] Contrary to the Attorney General's assertion, this inquiry cannot be satisfied as a matter of law. Dkt. 887 (AG's Reply) at 12. In the sole case he cites, *Cooper v. Texas Alcoholic Beverage Comm'n*, 820 F.3d 730, 741 (5th Cir. 2016), the court *denied* the motion to vacate because it found that it failed the first step of the *Rufo* analysis. That is, the asserted change in law was not a "significant" change in decisional law, and thus under no factual circumstances could it possibly warrant relief. To the extent *Cooper* is relevant, it only underscores that *Daves II* fails at step one.

counsel explained, the Court should consider the record presently before it as well as the evidence and factual findings the Court made in 2017. *Id.* at 32:19–25. That record shows what happens in Harris County when there is no Consent Decree in place, and the evidence Non-Movants' submitted in opposition to the motion to vacate shows that the cultural forces and system pressures that produced the mass pretrial detention of indigent misdemeanor arrestees in 2016 are still there. Dkt. 885-5 (Draper Decl.) ¶ 28; *see also Inmates of Suffolk Cty. Jail v. Rufo*, 12 F.3d 286, 293 (1st Cir. 1993) (denying motion to modify consent decree under Rule 60(b)(5) because, even though the asserted change in law was "significant," the sheriff had not shown that constitutional violations were unlikely to recur).

Movants argue that S.B. 6 and S.B. 9 are equitable factors weighing in favor of vacatur. Not so. If anything, the existence of S.B. 9 proves the constitutional violations will recur (by mandating the use of cash bail for people charged with certain offenses), as does S.B. 6, to the extent Movants believe it prohibits the use of General Order Bonds.

Nor do comity and federalism constitute the "equities" at play under Rule 60. Here, Movants—and all of the other Defendants—agreed to the Consent Decree. Indeed, Rule 9, which is the heart of the Consent Decree, embodies the Judges' local policy judgments. Comity and federalism do not require vacatur.

### C. *In re Goodhart* Did Not Provide an Independent Vehicle for Considering Vacatur or Abstention, but Even if It Did, Neither Is Required.

There is no procedural mechanism to abstain, post-judgment, outside of Rule 60. Movants' unfounded assertion that this Court has the power to modify or vacate the Consent Decree without a federal rule should be rejected. Ex. A (Rough Tr. Hr'g 9/22/2026) at 70:22–23 ("[O]ur view is that the mandate is the procedure."). *Goodhart* did not suggest otherwise. In fact, *Goodhart* cited *Rufo* multiple times. Nor could *Goodhart* have given this court the authority to circumvent the

federal rules. *See supra* IV.A. (citing *Bank of Nova Scotia*, 487 U.S. at 254; *Carlisle*, 517 U.S. at 424). This Court must either find Movants waived reliance on Rule 60 by failing to raise it in their motion and deny their motion on that basis, or construe Movants' "request" under Rule 60 and apply that framework. *See, e.g.*, *Laccinole v. Wood*, No. 3:23-CV-1831, 2024 WL 5455818, at *3 (N.D. Tex. Dec. 13, 2024) ("generously constru[ing] [a motion to reopen after a case was closed] as seeking relief under Rule 60(b)(3) or Rule 60(b)(6)").

But in an imaginary world where the Court retains Article III power outside of the federal rules to consider whether it would have abstained at the Rule 12(b)(6) stage 10 years ago had *Daves II* already been decided back in 2016, such a ruling would constitute an advisory opinion. The Court would still have an obligation to consider whether Movants waived *Younger* abstention, and whether the bad faith or immediate irreparable harm exceptions apply. As discussed *supra* IV.B.4., and in prior briefing, Pls' Opp. at 48–49, the motion would still be denied.

### D. Mootness Plays No Part in This Court's Analysis

The Court also asked for guidance on whether *Goodhart* requires it to reach mootness, and what the result should be if it must. Plaintiffs object to mootness being raised in this way. This Court ordered the parties to limit their submissions to *Younger*. The Movants agreed, then went ahead and raised mootness anyway.[13] Nevertheless, Plaintiffs address the argument at the Court's direction and explain why a consent decree that resolved a live constitutional controversy cannot be "moot," and any mootness argument must fail.

#### *1. Mootness has no application to an unsatisfied consent decree*

"Under settled law, [courts] may dismiss [a] case [as moot] only if 'it is impossible for a

[13] *See, e.g.*, Dkt. 877 (Tr. Hr'g 8/31/26) at 39:9–14 (Court: "[T]he motion to vacate that will be filed . . . will be limited to discussing *Younger* abstention. Is that right?" Counsel for Four Judges: "That's correct."); Dkt. 867 (Scheduling Order) at 1 (calling for "amended motions to vacate or modify the Consent Decree *on the basis of Younger abstention*.") (emphasis added).

court to grant [the plaintiff] any effectual relief[.]'" *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 376–77 (2019) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)). Mid-litigation legislation moots a case only if it provides the precise relief sought in the litigation, such that a court could not grant the plaintiff any effective relief. *See New York State Rifle & Pistol Ass'n, Inc. v. City of New York*, 590 U.S. 336, 339 (2020). *Daves II* flouted this well-settled law, holding that the 2021 passage of a state bail law, Senate Bill 6, mooted a challenge to Dallas County's bail practices. *Daves II*, 64 F.4th at 635. Without even purporting to apply the appropriate standard, the court pointed to what it called "the substantial changes made by [S.B. 6] to procedures for assessing bail," and reasoned that, because there was "minimal evidence in the record reflecting what actually happens in Dallas County after the effective date of S.B. 6," a ruling on the claims "would constitute . . . an advisory opinion." *Id.* at 633–34.

*Daves II*'s misguided mootness holding is irrelevant to a post-final judgment consent decree. Once a court enters a consent decree, the only way to "moot" it is through full satisfaction of its obligations and a showing of a durable remedy. *Horne v. Flores*, 557 U.S. 433, 450 (2009); *see also, e.g.*, *Evans v. Fenty*, 701 F. Supp. 2d 126, 171 (D.D.C. 2010) ("[A]t a minimum, a 'durable' remedy means a remedy that gives the Court confidence that defendants will not resume their violations of plaintiffs' constitutional rights once judicial oversight ends."). That is, a consent decree is only "moot" when a party shows that it is no longer necessary. Under Rule 60(b)(5), parties can ask a court to modify or dissolve the decree because the judgment "has been satisfied, released, or discharged." Fed. R. Civ. P. 60(b)(5); *see Frazar v. Ladd*, 457 F.3d 432, 435 (5th Cir. 2006) (state's alleged compliance with federal law was not, by itself, adequate ground to dissolve consent decree). If traditional mootness inquiries applied, Rule 60(b)(5)'s first clause would be

irrelevant. *See Fischer v. United States*, 603 U.S. 480, 496 (2024) ("[S]urplusage is nonetheless disfavored.").

Indeed, justifications underlying mootness in pending litigation do not apply in any form to consent decrees. A consent decree resolves the underlying litigation on the merits. Yet through the court's inherent power, it retains ongoing jurisdiction specifically to enforce, monitor, or modify the terms of the decree itself. *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932); *Spallone v. United States*, 493 U.S. 265, 276 (1990) ("[C]ourts have inherent power to enforce compliance with their lawful orders ....") (internal quotations and citation omitted); *Smith v. Sch. Bd. of Concordia Par.*, 906 F.3d 327, 335 (5th Cir. 2018) ("[D]istrict courts have the power and ordinarily must hold parties to the terms of a consent decree.") (quoting *United States v. Alcoa, Inc.*, 533 F.3d 278, 286 (5th Cir. 2008)). Since the court's jurisdiction is merely the jurisdiction to enforce the parties' agreement in this closed case, concepts of adversity and mootness are irrelevant. *See Louisiana Env't Action Network v. City of Baton Rouge*, 677 F.3d 737, 745 (5th Cir. 2012) ("Mootness doctrine encompasses the circumstances that destroy the justiciability of a suit *previously suitable for determination*.") (quoting 13B Wright & Miller, Fed. Prac. & Proc. § 3533 (3d ed.)) (emphasis added). As this case has already reached a judgment and resolution, and because the Consent Decree rests on this Court's inherent equitable authority, not on continued adversity between the parties, mootness doctrine has no import.

*Daves II*'s concern was that legislative changes had supposedly so changed the relationship between the plaintiffs' claims for relief and the current environment that any ruling would be "advisory." But here, the Court has already made that ruling, entered a final judgment, and issued a consent decree. *Daves II*'s analysis of the pleadings makes no sense as applied to a final judgment like the consent decree since the relevant inquiry into whether the court can still offer relief is

whether "the judgment has been satisfied." *Chisom v. Louisiana ex rel. Landry*, 116 F.4th 309, 320 (5th Cir. 2024) (en banc); *see, e.g.*, *id.* (dissolving consent decree where "[e]veryone . . . agree[d] that the State ha[d] fully completed each of the eight remedial actions listed in the [] decree"). If it were otherwise, the plaintiffs who have obtained a consent decree would have to re-prove their case every time state law changed, undermining the finality such relief is meant to further.

Here, no one has suggested that relief is appropriate because "the judgment has been satisfied, released, or discharged." Fed. R. Civ. P. 60(b)(5). Movants have offered *zero* evidence supporting such a showing. To the contrary, the evidence shows that the Consent Decree remains very much required to protect the plaintiff class members against unconstitutional pretrial detention. Pls' Opp. at 33–37. Neither mootness nor *Daves II*'s holding on mootness have any effect on this Consent Decree.

2. *Goodhart does not require expedited consideration of "mootness," and the Court should not expedite consideration of this fact-bound issue.*

*In re Goodhart*'s mandate does not require expedited consideration of S.B. 6, S.B. 9, or *Daves II*'s mootness holding. *Goodhart* directs this Court to "consider *Younger*" in advance of the election, and "follow *Daves II*." While *Daves II* reached two "co-equal" holdings, the only natural reading of the mandate, given the Four Judges' petition, the specific words *Goodhart* used, and their sequence, is that *Goodhart* instructed this Court to "follow *Daves II*" *in the process of* "consider[ing] *Younger*." Mootness has no applicability to that process.

Looking beyond the mandate language confirms that the panel majority was unconcerned with mootness. Indeed, *Goodhart* itself had nothing to do with mootness. The only time the majority used the word "moot" is to deny the Four Judges' stay motion. When it described *Daves II*, it referred *solely to the abstention holding without even mentioning the mootness holding*.

*Goodhart*, 2026 WL 2517641, at *2. ("Two years after entry of the consent decree, we concluded in *Daves II* that *Younger* 'and its progeny required the district court to abstain' in this case. . . . We overruled *ODonnell I*'s holding against abstention.") (quotations omitted). It beggars belief to hold that the panel majority issued a mandate to this Court on an issue it never even discussed, and even intentionally omitted from its text.[14]

Of course, even if the Court disregarded all of this, and read *Goodhart* to order it to "follow" *all of Daves II*, it would still have no effect here. The only issue that *Goodhart* orders this Court to consider on an expedited basis is "*Younger*." *Goodhart*, 2026 WL 2517641, at *5. *Goodhart*'s instruction to "follow *Daves II*" can be followed on whatever timeline this Court deems appropriate. *Id.* The mandate does not require the Court to consider mootness on an expedited basis.[15]

Since the Court is free to consider mootness's relevance to the continued need for the Consent Decree on whatever timeline it deems appropriate, it should wait until after it considers abstention. Whether framed as a motion to vacate due to a conflict with state law or due to *Daves II*'s mootness holding, the Court needs a developed record, a hearing to take evidence and resolve factual disputes, and briefing on the issues before it can be decided.

---

[14] Given the *Goodhart* panel's mistaken belief that all four judges could lose their seats in November, their exclusive focus on *Younger* makes sense. This Court denied the Attorney General's request to intervene to raise *Younger* but allowed him in to raise mootness. The panel majority worried that, if the Four Judges were all replaced by election, and their successors withdrew the motion to vacate based on *Younger*, the Fifth Circuit would be deprived of an opportunity to eventually issue a ruling on whether *Daves II*'s abstention holding warrants vacatur under Rule 60. No such risk ever existed for the mootness argument. The Attorney General is already raising that argument and will presumably continue to do so.

[15] Nor could the Four Judges possibly demonstrate a need to expedite a ruling on any portion of their motion to vacate. Each of them will be in office at least through December 31, 2026. And Judge Garcia is not up for election this year, and will retain her ability to press the motion to vacate, no matter what happens on November 3. Ex. A (Rough Tr. Hr'g 9/22/2026) at 8:1–4 (counsel for the Four Judges acknowledging that Judge Garcia will keep her seat).

Movants' attempt to persuade the Court that state law should be presumed sufficient to achieve the Consent Decree's goals reflects a galling misapprehension of the legal basis underlying the Consent Decree. This case has never been about compliance with state law. Throughout the litigation, Defendants argued they were complying with state law. *See, e.g.*, Dkt. 276 (Tr. 3/10/2017) at 115:21–115:24 (Test. of Paula Goodhart) ("[M]y oath of office is to follow state law . . . . We are under the state obligation to follow the law and consider all those factors."). Nevertheless, the Court found the Consent Decree was necessary to address "grave and widespread constitutional violations." Dkt. 707 (Memo. and Op. Approving the Consent Decree) at 22.

Movants' argument also runs up against the text of the laws themselves. S.B. 6 dictates that "ability to make bail" be "considered," as Texas law also required before S.B. 6, *see* Tex. Code Crim. Proc. art. 17.15 (1993), and purports to require that officials "impose the least restrictive conditions . . . necessary to reasonably ensure" that the government's interests are served. Tex. Code Crim. Proc. art. 17.028(b). But neither S.B. 6 nor any other part of state law mandates—as the Consent Decree and Constitution require—an actual finding concerning ability to pay and necessity of detention in light of alternatives, let alone on-the-record findings by clear and convincing evidence after an adequately noticed and adversarial evidentiary hearing. And S.B. 9 actively undermines the Consent Decree's constitutional safeguards by forcing judges and hearing officers to impose secured bail as a condition of release for certain offenses, including some misdemeanors, even where they do not believe secured bail is justified by a person's risk of flight or danger. Tex. Code Crim. Proc. art. 17.03.

The same is true for the other arguments made by Movants. *Goodhart* has no relevance to any of these arguments, and the Court should exercise its discretion to set a schedule for ensuring a comprehensive record and issuing a well-considered decision.

*3. An argument for vacatur based on mootness would fail.*

If the Court were to reverse course and consider mootness on an expedited basis as part of this motion proceeding, it should find that the argument fails for at least three reasons. First, under Rule 60, the argument is untimely. Second, *Daves II*'s mootness holding is relevant only to an active proceeding, and does not apply to a seven-year-old consent decree. And third, whether framed as a change in mootness law made by *Daves II* or a change in fact made by the passage of S.B. 6 and S.B. 9, this Court is not permitted to grant vacatur on the current record showing that it would result in resumed constitutional violations, as well as decreased public safety and tens of millions of dollars in extra taxpayer costs.

a. A mootness argument is untimely under Rule 60(c)(1).

Movants' mootness arguments, first raised in August 2025 (Attorney General) and December 2025 (Four Judges) are untimely under Rule 60(c)(1). S.B. 6 went into effect on December 2, 2021. Raised on its own as a basis for relief from the consent decree, the Movants are years too late. To the extent they instead base their mootness argument on *Daves II*, issued March 31, 2023, they are still tardy. For the same reasons an abstention argument based on *Daves II* is untimely, *supra* IV.B.1., this mootness one is at least as untimely, *see Norglass*, 958 F.2d at 122 (collecting cases).

Nor is the jurisdictional nature of mootness an excuse to skirt the strict requirements of Rule 60. As the Supreme Court recently held, Rule 60(c)(1) constrains the time for raising even an allegation that a judgment is void, that is, a legal nullity. *See Coney Island Auto Parts*, 607 U.S. at 159; *see also supra* at 9 (describing effect of untimely filing).

The only related change in circumstance that is not patently untimely is S.B. 9, which was enacted in June 2025 and went into effect on September 1, 2025. As explained below, S.B. 9's only effect on the Consent Decree is to make it *more* necessary by purporting to require secured

bail regardless of whether a judge or hearing officer finds it necessary.

b. Vacatur would not be permitted under Rule 60(b)(5).

Movants have packaged their "mootness" argument as both a change in law (based on *Daves II*) and a change in fact (based on S.B. 6 and S.B. 9). Both forms of the argument can only be brought under Rule 60(b)(5). To justify Rule 60 relief on this premise, Movants must show (a) that a significant change in factual circumstances or in law warrants revision of the decree, and (b) that the requested modification is suitably tailored to the changed circumstance. *Rufo*, 502 U.S. at 383.

*i. There is no significant change in law.*

Movants' mootness argument based on *Daves II* shares several of the same flaws as the abstention argument based on the same decision. First, *Daves II*'s mootness holding is not "a significant change . . . in law" because it did not affect the underlying substance of the constitutional law giving rise to plaintiffs' legal claims and the Consent Decree's provisions. In short, it did not "make legal what the decree was designed to prevent." *Rufo*, 502 U.S. at 388. Second, *Daves II*'s mootness holding would not apply on these facts. As explained *supra* IV.D.1., that decision is only relevant to an open proceeding, and has no application or relevance to a case that has been resolved through a final judgment and consent decree.

*ii. There is no significant change in factual circumstances.*

To the extent Movants' "mootness" argument is reframed as a conflict with state law, it still fails. To assess whether a state law is a "change in factual circumstances" warranting vacatur, a court must first assess whether there is a conflict between the decree and the law and to what degree. "[A] state statute that has the effect of thwarting a federal court order enforcing federal rights 'cannot survive the command of the Supremacy Clause of the United States Constitution.'"

*Williams v. Lesiak*, 822 F.2d 1223, 1227 (1st Cir. 1987) (quoting *Washington v. Fishing Vessel Ass'n.*, 443 U.S. 658, 695 (1979)). "[O]verlapping court orders and subsequent state statutes" require "[a] hybrid inquiry, involving close attention to both factual and legal detail." *Id.* at 1228.

Movants do not even attempt to carry their burden by presenting evidence on the "factual inquiry" of "how the consent decree is being implemented and how the state law affects that implementation." Dkt. 792 (Nov. 12, 2025 Tr.) at 13:16–18; *Lesiak*, 822 F.2d at 1227–28 (1st Cir. 1987) (requiring statute-and-decree specific assessments of motions to vacate or amend a consent decree based on "a state statute adopted long after the court order"). No record exists to allow the Court to consider whether S.B. 6 directly thwarts the Consent Decree's objectives (in which case, neither modification nor vacatur can be warranted), merely overlaps with the decree, or can be read not to conflict with it at all. And Movants have never responded to Plaintiffs' repeated observation that S.B. 9 requires the very arbitrary money-based detention that the Consent Decree sought to eradicate, putting them in direct conflict and precluding relief on that basis.

*iii. Vacatur is not "suitable" due to the risk of constitutional violations and weighty equitable concerns.*

Even if Movants had met their burden to show that *Daves II*, S.B. 6, or S.B. 9 were deemed significant under *Rufo* step one, despite there being no record on which they could do so, they would also then have to demonstrate that the requested relief, vacatur of the entirety of a seven-year-old consent decree, "is suitably tailored to the changed circumstance." *Rufo*, 502 U.S. at 383. As with the Court's analysis for whether vacatur is suitably tailored to *Daves II*'s abstention holding, the same direction applies: Movants' must establish that vacatur will not "create or perpetuate" constitutional violations, and any modification must be justified by the equities. *Id.* at 391. As Plaintiffs have explained in prior briefing, Movants cannot meet that burden. To the contrary, vacating the Consent Decree would be certain to result in thousands of constitutional

violations, Pls' Opp. at 33–37, and the enormous financial and safety costs further weigh against vacatur, Pls' Opp. at 37–39.

***

Thus, if the Court were to consider mootness now, on an expedited basis, it must find that Movants have failed to carry their burden.

## V. CONDITIONAL REQUEST FOR A STAY

In the event the Court seriously considers granting the motion, Plaintiffs request this Court impose an administrative stay of vacatur to allow the parties a brief period of time to seek a stay pending appeal pursuant to Rule 62(d). A district court has authority to grant a stay of an order dissolving an injunction. Fed. R. Civ. P. 62(d). This is true even where the basis for vacatur is abstention or a jurisdictional doctrine. *See Davila v. State of Tex.*, 489 F. Supp. 803, 810 (S.D. Tex. 1980) (granting preliminary injunction after dismissing case on *Younger* grounds while case is on appeal); *Peak Med. Oklahoma No. 5, Inc. v. Sebelius*, No. 10-CV-597, 2010 WL 4809319, at *1, *5 (N.D. Okla. Nov. 18, 2010) (staying vacatur based on lack of subject matter jurisdiction and collecting cases).[16] The court must consider the traditional stay factors, though if "the balance of the equities weighs heavily in favor of granting the stay," a "probability" of success is not required, and movant "need only present a substantial case on the merits when a serious legal question is involved[.]" *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981) (citation omitted). Regardless of the standard—likelihood of success or a substantial case on the merits and a serious legal question—Plaintiffs satisfy the requirements of a stay and request an opportunity to brief the issue before any vacatur order goes into effect.

[16] If courts can stay vacatur after finding they lack jurisdiction, then the Court in this case can certainly exercise its discretion to stay vacatur. *See Daves v. Dallas Cty.*, 22 F.4th 522, 545 (5th Cir. 2022) (en banc) ("*Daves I*") (holding that *Younger* abstention "is not jurisdictional").

## VI. CONCLUSION

This vital case impacts tens of thousands of people every year inside and outside of the largest jail in Texas. It has a 10-year history and has reshaped Harris County over the past seven years. It is important to get it right at this moment. Should the Court have any questions, or be left with any modicum of doubt following the arguments and briefing, Plaintiffs respectfully request that the Court provide an opportunity to supplement the record, either through briefing or argument, in response to the Court's concerns.

To return to the Court's initial question: there is no way this Court can decide *Younger* "first," or indeed "decide abstention" at all. However, the Court can fully comply with the *Goodhart* mandate to "consider *Younger*" well before the election and "follow *Daves II*" by resolving the motion and applying Rule 60 and other binding precedent. For the reasons explained above, at the hearing, and in prior briefing, Movants failed to file timely motions or to meet their burden to justify vacatur. The Court should deny the Attorney General's motion to reconsider intervention based on *Younger*, deny the Four Judges' motion to vacate, and allow the County's bail practices—which were strenuously negotiated, consented to by every Defendant, transformed the County's bail system for the better on every metric, and remain critical according to all locally elected officials save four—to remain safely in place.

Date: September 24, 2026

Respectfully Submitted,

/s/ *Jeremy D. Cutting*
Alec George Karakatsanis
alec@civilrightscorps.org
Elizabeth Rossi
elizabeth@civilrightscorps.org
Jeremy D. Cutting
cody@civilrightscorps.org
CIVIL RIGHTS CORPS
1601 Connecticut Ave NW, Suite 800
Washington, DC 20009
Telephone: (202) 681-2721

Neal S. Manne
Texas Bar No. 12937980
nmanne@susmangodfrey.com
Joseph S. Grinstein
Texas Bar No. 24002188
Abbey E. McNaughton
Texas Bar No. 2411675
SUSMAN GODFREY L.L.P.
11000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366

Dustin Rynders
Texas Bar No. 24048005
dustin@texascivilrightsproject.org
Sarah Beebe
Texas Bar No. 24069362
sbeebe@texascivilrightsproject.org
Travis Walker Fife
Texas Bar No. 24126956
travis@texascivilrightsproject.org
TEXAS CIVIL RIGHTS PROJECT
1500 McGowen, Suite 220
Houston, TX 77004
Telephone: (512) 474-5073

Morgan McCollum
(*admitted pro hac vice*)
mmccollum@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West
New York, NY 10001
Telephone: (212) 336-8330

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of September, 2026, I electronically filed the foregoing with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Jeremy D. Cutting*
Jeremy D. Cutting