United States District Court
Southern District of Texas
**ENTERED**
October 05, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MARANDA LYNN ODONNELL, *et al.*, on behalf of themselves and all others similarly situated, | § | |
| | § | CIVIL ACTION NO. H-16-1414 |
| Plaintiffs, | § | |
| v. | § | |
| HARRIS COUNTY, TEXAS, *et al.*, | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Nearly seven years ago, constitutional challenges to the Harris County, Texas system for setting bail for individuals accused of misdemeanor offenses were resolved through a consent decree and final judgment. *ODonnell v. Harris County*, No. H-16-1414, 2019 WL 6219933 (S.D. Tex. Nov. 21, 2019); (Docket Entry No. 707). Harris County has operated under the consent decree since then. The Fifth Circuit initially affirmed *ODonnell*'s conclusion that the bail practices had violated the Constitution by detaining arrestees solely because they could not afford to pay, and affirmed the consent decree injunction with minor modifications. *ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018). In 2023, the Fifth Circuit, sitting en banc, overruled its panel decision and *ODonnell I*'s holding that the doctrine of *Younger* abstention, *Younger v. Harris*, 401 U.S. 37 (1971),[1] did not apply to prevent a federal court from addressing the constitutional violations established by an extensive record. *Daves v. Dallas County*, 64 F.4th 616, 635 (5th Cir. 2023) (en banc) ("*Daves II*"), *cert. denied*, 144 S. Ct. 548 (2024); *see also Daves II*, 64 F.4th at 633–35 (noting that "[a] coequal ground for dismissing [*Daves II*] is mootness" "by virtue of

---

[1] Even though "[t]he governmental party was Younger, [and] the private party [was] Harris," [the court] refer[s] to th[is] case as *Younger*." *Daves II*, 64 F.4th at 639 n.2 (Southwick, J., concurring).

intervening state law[,]" Senate Bill 6 ("S.B. 6")[2]). In *Daves II*, the Fifth Circuit stated that *ODonnell I* "should [not] have been adjudicated in federal court[,]" 64 F.4th at 631, quoted in *In re Goodhart*, No. 26-20337, 2026 WL 2517641, at *2 (5th Cir. Aug. 26, 2026) (per curiam).

Over two years later, four Harris County Criminal Court at Law Judges (the "Four Judges") moved in this court to abstain under *Younger* and to vacate or modify the consent decree. (Docket Entry Nos. 793, 864). The twelve other Harris County Criminal Court at Law Judges, as well as Harris County and the Harris County Sheriff, oppose this request and support the continued operation of the decree. (Docket Entry Nos. 805, 806, 807, 883, 884, 891, 892, 893). The Texas Attorney General filed a "Conditional Joinder in the Four Judges' Renewed Request for *Younger* Abstention[,]" (Docket Entry No. 865). The Attorney General stated that "[t]he consent decree should be vacated for the reasons set forth in the Four Judges' Renewed Request." (*Id.* at 1). The Attorney General also moved for reconsideration to re-urge his intervention to assert *Younger* abstention, (Docket Entry No. 861). The movants, the Four Judges and the Attorney General, have sought modification or vacatur of the consent decree in their briefing, (Docket Entry Nos. 741, 742, 793, 864, 865, 886, 887, 894, 895), and at the most recent motion hearing, (Docket Entry No. 888).

The Fifth Circuit has tasked this court with expeditiously deciding the *Younger* abstention issue—well in advance of the November election, in which three of the Four Judges are on the ballot and could lose their seats—and with faithfully applying *Daves II*'s holding overruling *ODonnell I*'s holding against *Younger* abstention. *In re Goodhart*, 2026 WL 2517641, at *5. After

[2] S.B. 6 is the same Texas law at issue in the present case. "S.B. 6 went into effect on December 2, 2021." (Docket Entry No. 896 at 34).

receiving expedited briefing from the parties and hearing, the court addresses both issues in this memorandum and opinion.

Because the *ODonnell I* consent decree is a final judgment, the proper procedure for modification or vacatur is through Federal Rule of Civil Procedure 60(b),[3] which imposes a "reasonable time" requirement. *See Coney Island Auto Parts Unlimited, Inc. v. Burton Tr. for Vista-Pro Auto., LLC*, 607 U.S. 155, 157–58 (2026) ("*Coney Island*"); *accord Kemp v. United States*, 596 U.S. 528, 533 (2022) ("All [Rule 60(b) motions] must be filed 'within a reasonable time.'"). On August 26, 2025, the Attorney General moved to intervene and vacate the consent decree. (Docket Entry Nos. 740, 741, 742). This was 29 months—over two years—after *Daves II* overruled *ODonnell I*'s holding against *Younger* abstention. *Compare Daves II*, 64 F.4th at 631, 635; *with* (Docket Entry Nos. 740, 741, 742). The Four Judges waited 950 days after *Daves II* issued to file their first motion, which was a motion to substitute themselves as parties under Rule 25(d). (Docket Entry No. 767). In December 2025, the Four Judges moved to vacate or modify the consent decree. (Docket Entry No. 793). That was almost three years after *Daves II.* (*See id.*).

After a careful review of the motions, the briefs, the parties' supplemental briefs, the record, and the applicable law, the court denies the motions to vacate or modify the consent decree because the requested Rule 60(b) relief was not "made within a reasonable time," as Rule 60(c) requires. The court also declines to abstain because doing so would, in effect, "relieve [the movants] . . . from [the] final judgment," without complying with Rule 60's requirements.

The reasons for these rulings are set out below.

[3] The movants have not sought relief under Rule 60(d). (*See generally* Docket Entry Nos. 741, 742, 793, 864, 865, 886, 887, 894, 895).

## I. The Litigation and Entry of the Consent Decree

Close to a decade ago, Maranda Lynn ODonnell filed a class-action lawsuit challenging Harris County's police and practice of jailing about 40% of people arrested for misdemeanor offenses for the duration of their cases solely because they could not pay money bail, without constitutionally adequate procedures to justify their continued detention. *ODonnell v. Harris County*, 251 F. Supp. 3d 1052, 1058 (S.D. Tex. 2017), *aff'd as modified*, 892 F.3d 147 (5th Cir. 2018).

The parties vigorously litigated the case before this court and the Fifth Circuit. Harris County, the County Criminal Court at Law Judges, the Criminal Law Hearing Officers, and the Sheriff moved to dismiss the complaint, in part based on *Younger* abstention. (Docket Entry No. 80 at 25–31 (citing *Younger v. Harris*, 401 U.S. 37 (1971)). The court denied the motion to abstain. (Docket Entry No. 125).

In 2017, the court held an eight-day preliminary-injunction hearing. (Docket Entry Nos. 222, 223, 228–30, 246, 247, 251). In advance of the hearing, several parties, including bail bondsmen whose financial interests supported continuing the existing bail-bond system, moved to intervene. (Docket Entry No. 202). The Texas Attorney General did not. The court granted the plaintiffs' motion for a preliminary injunction, finding that the evidence showed that County's bail practices likely violated the Constitution's Equal Protection Clause and Due Process Clause, (Docket Entry Nos. 302, 304), and granted the motion for class certification, (Docket Entry No. 303).

The County and the Hearing Officers appealed, asserting again that the district court should have abstained under *Younger.* (Docket Entry Nos. 309, 310). The Attorney General did not intervene, but he did file an amicus brief. *See* Br. for State of Texas *et al*., *ODonnell v. Harris*

*County*, No. 17-20333, 2017 WL 2861848 (5th Cir. June 26, 2017). The Attorney General argued that the Fifth Circuit should vacate the preliminary injunction, but he did not raise *Younger* abstention. *See id.*

The Fifth Circuit affirmed this court's decision that *Younger* abstention was not required, that the plaintiffs were likely to succeed on the merits of their claims, and that most of the preliminary injunction was proper. *See generally ODonnell v. Harris County (ODonnell I)*, 892 F.3d 147 (5th Cir. 2018) (opinion on rehearing), *overruled in part by Daves v. Dallas County* (*Daves I*), 22 F.4th 522 (5th Cir. 2022), *and by Daves II*, 64 F.4th 616. The Attorney General did not intervene in the appeal and did not seek additional review from the Fifth Circuit en banc or from the Supreme Court.[4] The Fifth Circuit remanded the case to this court.

On remand, the court entered a revised preliminary injunction, (Docket Entry Nos. 426, 427), which the County Judges appealed, (Docket Entry No. 434). The Attorney General again filed an amicus brief, arguing that the Fifth Circuit should vacate the preliminary injunction. Br. for State of Texas *et al.*, *ODonnell v. Goodhart*, No. 18-20466, 2018 WL 4603243 (5th Cir. Sept. 17, 2018). The Fifth Circuit stayed pending the appeal portions of the revised preliminary injunction. *See generally ODonnell v. Goodhart (ODonnell II)*, 900 F.3d 220 (5th Cir. 2018), *overruled in part by Daves I*, 22 F.4th 522.

The parties continued to litigate the case before this court while the County Judges' appeal of the revised preliminary injunction was pending. The parties submitted cross-motions for summary judgment, which included *Younger* arguments. (*See* Docket Entry No. 432). Before

[4] The defendants only sought review from the Supreme Court in the form of a stay pending appeal from the district court's original preliminary injunction. *See ODonnell v. Harris County*, 260 F. Supp. 3d 810 (S.D. Tex. 2017) (denying a stay pending appeal). Justice Thomas denied the defendants' application for a stay pending appeal. *Harris County v. ODonnell*, No. 16A1204, 2017 WL 11824167, at *1 (U.S. June 7, 2017).

those motions were decided, newly elected County Judges took office, withdrew the pending appeal, and began settlement negotiations, (Docket Entries Nos. 551, 532). The parties routinely updated the court on the status of the settlement negotiations. (*See, e.g.*, Docket Entry Nos. 563, 590, 594). The Attorney General did not seek to intervene when the parties started negotiating settlement; after the district court denied without prejudice the County Judges' motion for summary judgment, which had asserted *Younger* abstention, (Docket Entry No. 540); after the parties notified the court of a new local rule that would provide a foundation for the proposed settlement, (Docket Entry No. 557); after the court ordered the defendants to comply with the new local rule, (Docket Entry Nos. 573, 575); or at any point during the work and public filings that led to the parties' consent decree.

After three years of litigation, including two appeals to the Fifth Circuit, the parties announced a settlement on July 25, 2019. (Docket Entry Nos. 615, 617). The court permitted interested individuals and entities to file amicus briefs in support of, or in opposition to, the proposed consent decree to aid in its consideration of the parties' proposal. (Docket Entry No. 643). The Attorney General submitted written testimony arguing that the proposed consent decree was contrary to Texas law; that it was against the public interest because it endangered public safety; and, because the case was moot, that the court lacked subject-matter jurisdiction to enter the consent decree. (Docket Entry No. 689). At the final hearing to determine the fairness of the proposed class settlement and consent decree, the court afforded the Attorney General time to argue his position, which he did. (Docket Entry Nos. 692, 700; *see* Docket Entry No. 704 at 58:13–64:5). However, the Attorney General did not assert *Younger* abstention, even though every other party in the case had abandoned the issue and instead submitted the constitutional issues to this court for a decision on the merits.

On November 21, 2019, after considering the parties' and amici's submissions and arguments, the court entered the consent decree.[5] (Docket Entry Nos. 708, 709). In March 2020, the Attorney General moved to intervene in another case before this court raising similar challenges to Harris County's felony, as opposed to misdemeanor, bail system. (*Russell v. Harris County*, Case No. 4:19-cv-226 (S.D. Tex.), Docket Entry Nos. 38, 46). In August 2021, Texas enacted S.B. 6, which altered the State's bail laws. *See* S.B. 6, 87th Leg. (Tex. 2021). In January 2022, the Fifth Circuit remanded the *Daves* case to the Dallas district court with instructions to address *Younger* abstention and mootness. *Daves I*, 22 F.4th at 548. In July 2022, the district court in *Daves* issued its post-remand opinion, concluding that *Younger* abstention was not required but that the case had been made moot by the Texas legislature's enactment of S.B. 6, and dismissing the case in advance of final judgment. *Daves v. Dallas County*, No. 3:18-cv-154, 2022 WL 2473364, at *3, *6 (N.D. Tex. July 6, 2022).

In January 2023, the Attorney General moved to dismiss the *Russell* case, arguing that S.B. 6 made the challenges to the Harris County bail system moot. (*Russell* Docket Entry Nos. 642, 669). Two months later, on March 31, 2023, the Fifth Circuit issued *Daves II*,[6] which held that S.B. 6 mooted the case and that the district court had to abstain from adjudicating the case under *Younger*. *Daves II*, 64 F.4th at 635; *see Russell v. Harris County*, No. H-19-cv-226, 2023 WL 5658936, at *3 (S.D. Tex. Aug. 31, 2023) (discussing *Daves II*). The Attorney General did not

[5] Since the consent decree's entry as a final judgment, no party has asked this court to take any judicial steps to enforce it.

[6] The third prong of *Younger*—adequate opportunities to raise the constitutional objections in the state proceedings—is a case-specific, factually-intensive inquiry. *Daves II* did not have *ODonnell*'s record before it. *Cf.* 64 F.4th at 620–36. *Younger* also has additional exceptions for great and immediate injuries and bad faith that *Daves II* did not analyze. *Compare Younger*, 401 U.S. at 38–58, *with Daves II*, 64 F.4th at 620–36.

move to intervene or to vacate the consent decree in *ODonnell* during the development of other cases involving challenges to the Texas bail systems.

In June 2025, the Texas Legislature enacted S.B. 9, which expanded the bail-system amendments made in S.B 6. *See* S.B. 9, 89th Leg. (Tex. 2025). On August 26, 2025, 29 months after the en banc court issued its opinion overruling *ODonnell I*, "this very case," the Attorney General moved to intervene and vacate the consent decree, (Docket Entry Nos. 741, 742), stating:

> The Court should grant the motion because, as the Fifth Circuit held in *Daves v. Dallas County*, 64 F.4th 616, 631 (5th Cir. 2023) (en banc), the Court should not have exercised jurisdiction, and Senate Bill 6 ("S.B. 6") rendered plaintiffs' claims moot. Alternatively, dissolution is warranted under Federal Rule of Civil Procedure 60(b) given intervening changes in state law.

(Docket Entry No. 741). Senate Bill 9 became effective on September 1, 2025. In a detailed 35-page memorandum and opinion, this court granted the Attorney General's motion to intervene to move to vacate or amend the consent decree based on the changes to Texas bail systems made in S.B. 6 and S.B. 9. (Docket Entry No. 764). In the same memorandum and opinion, the court denied, in part, the Attorney General's motion to intervene to assert *Younger* abstention on the ground that the Attorney General had waived his *Younger* arguments. *ODonnell v. Harris County*, 808 F. Supp. 3d 738, 749–62 (S.D. Tex. 2025); (Docket Entry No. 764 at 8–31); *see also ODonnell*, 808 F. Supp. 3d at 762 ("The Attorney General does not have a right to intervene to argue *Younger* abstention. His motion is untimely[] and . . . [therefore] futile. The parties waived *Younger* abstention, and the Attorney General would step into their shoes as an intervenor. The Attorney General also waived *Younger* abstention himself because he allowed the court to enter the consent decree, did not appeal it, and did not raise *Younger* on appeal."); (Docket Entry No. 764 at 31). The Attorney General appealed the intervention order. (Docket Entry No. 777).

Four of the sixteen Harris County Criminal Court at Law Judges (the "Four Judges") moved to substitute themselves as parties for their predecessors in public office under Federal Rule of Civil Procedure 25(d) on November 5, 2025. (Docket Entry No. 767). The Four Judges waited 950 days after *Daves II* issued to file this motion. (*See id.*). A week after the Four Judges moved to substitute themselves as parties, the court issued a scheduling order with several discovery dates and briefing dates, to which no intervenor objected. (Docket Entry No. 773). The Four Judges moved to vacate the consent decree under Rule 60(b) on December 11, 2025, about 32.5 months after *Daves II* had issued. (Docket Entry No. 793). The same day, the Attorney General moved for voluntary dismissal of his appeal, which was granted. (25-20543, Docket Entry Nos. 19, 20). The Four Judges' motion to vacate largely echoed the points in the Attorney General's motion, which cited S.B. 6 as intervening state law and *Younger* abstention. (*Compare* Docket Entry No. 793, *with* Docket Entry Nos. 741, 742).

About five months later, the Four Judges moved for an expedited ruling on their *Younger* arguments. (Docket Entry No. 803). This court denied the Four Judges' motion for expedited consideration, on the ground that some fact discovery was needed to rule on the motions to vacate or modify the consent decree post-final judgment. (Docket Entry No. 821). The Four Judges petitioned for a writ of mandamus, which was granted. (Docket Entry No. 859). The Fifth Circuit stated that "[t]he district court must consider the four judges' *Younger* abstention argument on an expedited basis, well in advance of the upcoming Texas judicial election on November 3, 2026." (*Id.* at 9). The Fifth Circuit "also direct[ed] the district court to follow *Daves II,*" (*id.*), which did not "hinge upon factual development or discovery[,]" *id.* at 7). The mandamus opinion did not

refer to the Attorney General. *Cf. id.* at 1–9 (referencing only the Four Judges); *In re Goodhart*, 2026 WL 2517641, at *1–5.

The day after the mandamus opinion issued and again a few days later, this court held hearings with all the parties to set a briefing schedule that would allow compliance with the Fifth Circuit's directive for both expedited consideration of abstention and adherence to *Daves II.* (Docket Entry Nos. 860, 863). The court ordered an expedited briefing schedule, (Docket Entry No. 867), and held a three-and-a-half-hour motion hearing as soon as the parties' schedules permitted, (Docket Entry No. 888). To the parties' credit, all complied with the expedition required by the Fifth Circuit.

The Four Judges moved to vacate the consent decree through a "Renewed Request for Younger Abstention," (Docket Entry No. 864),[7] and the Attorney General filed a "Conditional Joinder in the Four Judges' Request for *Younger* Abstention," (Docket Entry No. 865). The Attorney General stated that "[t]he consent decree should be vacated for the reasons set forth in the Four Judges' Renewed Request." (*Id.* at 1).

## II. The Legal Standards

### A. Rule 60.

"Federal Rule of Civil Procedure 60 permits a court to 'relieve a party . . . from a final judgment, order, or proceeding' . . . ." *Coney Island Auto Parts Unlimited, Inc. v. Burton Tr. for Vista-Pro Auto., LLC*, 607 U.S. 155, 158 (2026) ("*Coney Island*"). "Parties may seek relief under Rule 60 by filing a motion with the court." *Id.* Relief under Rule 60(b) requires the movant to demonstrate:

(1) mistake, inadvertence, surprise, or excusable neglect;

[7] The Four Judges' motion is listed as a "Renewed Motion to Vacate[,]" on the docket. (Docket Entry No. 864).

> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

FED. R. CIV. P. 60(b) (titled "Grounds for Relief from a Final Judgment, Order, or Proceeding"); *see also Osborne v. Belton*, 131 F.4th 262, 270 (5th Cir. 2025) (per curiam) ("The burden of establishing at least one of the grounds for Rule 60(b) relief is on the movant." (citations omitted)). "Rule 60(b) enables a court to grant relief from a judgment in circumstances in which the need for truth outweighs the value of finality in litigation." 12 Joseph T. McLaughlin, et al., MOORE'S FEDERAL PRACTICE (hereinafter "12 MOORE'S") § 60.02[2] (3d ed. 2026) (citation omitted). "[I]n almost all circumstances, a court may not grant relief under Rule 60(b) sua sponte, that is, in the absence of a motion." 12 MOORE'S § 60.62 (citing, *inter alia*, *Chavez v. Balesh*, 704 F.2d 774, 777 (5th Cir. 1983) ("If the court acted simply upon its own initiative, then we would not uphold its action under Rule 60(b), because unlike Rule 60(a), 60(b) allows the court to act only 'upon motion.'")); *cf. Chavez*, 704 F.2d at 777 ("This court has held that a district judge may initiate such a motion and grant relief under Rule 60(b)(1) if the judge gives some sort of written notice to the parties." (citing *McDowell v. Celebrezze*, 310 F.2d 43, 44 (5th Cir. 1962) (per curiam))).

"The scope of relief that may be obtained under Rule 60(b) is strictly limited." 12 MOORE'S § 60.02[2]. Granting a Rule 60(b) motion requires "extraordinary circumstances" justifying relief. *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 287 (5th Cir. 1985); *see also In re Pettle*, 410 F.3d 189, 191 (5th Cir. 2005) ("We have consistently held that the relief under Rule 60(b) is considered an extraordinary remedy . . . [and that] [t]he desire for a judicial process that is predictable mandates

caution in reopening judgments." (citations and internal quotations omitted; alterations in original)). "Rule 60(b) may not be used to provide an avenue for challenges of mistakes of law that should ordinarily be raised by timely appeal." *Pryor*, 729 F.2d at 286 (citations omitted); *see also Halliburton Energy Servs. v. NL Indus.*, 618 F. Supp. 2d 614, 620 (S.D. Tex. 2009) ("The scope of review under Rule 60(b) is narrower than on a direct appeal." (citing *Aucoin v. K-Mart Apparel Fashion Corp.*, 943 F.2d 6, 8 (5th Cir. 1991) (per curiam))).

The Supreme Court has recently emphasized that "Rule 60 also imposes a time limit for such motions." *Coney Island*, 607 U.S. at 158. "A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." FED. R. CIV. P. 60(c)(1); *see also Coney Island*, 607 U.S. at 157 (holding "that this time limit applies to a motion alleging that a judgment is void" under Rule 60(b)(4)); *accord*, *Kemp v. United States*, 596 U.S. 528, 538 (2022) ("[A]ll Rule 60(b) motions[] must be made 'within a reasonable time.'" (citing FED. R. CIV. P. 60(c)(1))). "A district court may not apply the normal rules for enlarging the time limits set out in Rule 60 for making a Rule 60(b) motion." 12 MOORE'S § 60.03[1] (citing FED. R. CIV. P. 60(c)(1)). "Rule 6(b), which sets out those normal time-extension rules do not apply to Rule 60(b) motions." 12 MOORE'S § 60.03[1] (citing FED. R. CIV. P. 6(b)(2)). "The [Rule 60(b)] motion does not affect the judgment's finality or suspend its operation." FED. R. CIV. P. 60(c)(2).

"In assessing the reasonableness of a delay in bringing a Rule 60(b) motion, the relevant period is usually measured from the time at which the moving party could have filed the motion, which is not necessarily the date on which the underlying judgment was entered." 12 MOORE'S § 60.65[1] (citing, *inter alia*, *Clark v. Davis*, 850 F.3d 770, 780 (5th Cir. 2017) ("[T]imeliness . . . is measured as of the point in time when the moving party has grounds to make [a Rule 60(b)] motion,

regardless of the time that has elapsed since the entry of judgment." (alterations in original; citation omitted))). "Reasonableness turns on the 'particular facts and circumstances of the case.'" *Clark*, 850 F.3d at 780 (citing, *inter alia*, *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 38 F.3d 1404, 1410 (5th Cir. 1994)); *see also Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981) (per curiam) ("What constitutes 'reasonable time' depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." (citations omitted)).

Courts consider "whether the party opposing the motion has been prejudiced by the delay in seeking relief and . . . whether the moving party had some good reason for his failure to take appropriate action sooner." *Clark*, 850 F.3d at 780 (citing *Lairsey v. Advance Abrasives Co.*, 542 F.2d 928, 930 (5th Cir. 1976) (citing 11 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2866, at 228-29)); *see also Pryor*, 769 F.2d at 287 ("This Court has pointedly announced that a party has a duty of diligence to inquire about the status of a case, and that Rule 60(b) relief will be afforded only in 'unique circumstances.'" (citing *Wilson v. Atwood Grp.*, 725 F.2d 255, 257–58 (5th Cir. 1984) (en banc))).

### B. *Younger* Abstention

Article III extends the judicial power "to all cases, in law and equity, arising under th[e] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority." U.S. CONST. art. III, § 2. Congress then vested "district courts" with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. When the Constitution and Congress grant federal courts jurisdiction over a case, those courts have a "virtually unflagging obligation ... to exercise th[at] jurisdiction . . . ." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *see Cohens v.*

*Virginia*, 19 U.S. 264, 404 (1821) (Marshall, C.J.) ("We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given."). Abstention doctrines are limited "federalism-flavored carveouts" to that obligation, created "[o]ut of respect for the legitimate interest of the state, and to avoid needless friction[.]" *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1084–85 (5th Cir. 2023).

*Younger* is one such doctrine. *Id.* "*Younger* requires federal court abstention when three criteria are met: (1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges." *Daves II*, 64 F.4th at 625 (citations and internal quotations omitted). Its features follow from traditional "court noninterference in equity with state proceedings" and notions of "comity" and federalism that shape the exercise of the federal courts' judicial power. *Id.*

Yet abstention doctrines, including *Younger*, have their own exceptions, when the balance of federal-and-state interests shifts back toward the federal courts exercising their jurisdiction. "[C]ourts may disregard the *Younger* doctrine when: (1) the state court proceeding was brought in bad faith or with the purpose of harassing the federal plaintiff, (2) the [challenged] state statute is 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it,' or (3) application of the doctrine was waived." *Texas Ass'n of Bus. v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004) (citing, *inter alia*, *Younger*, 401 U.S. at 49). The third exception is at issue here.

Because "abstention under *Younger* is not jurisdictional"—it is, after all, an exception to jurisdiction, rather than a jurisdictional rule itself—"application of the doctrine can be waived." *Daves I*, 22 F.4th at 545. When a "[s]tate voluntarily chooses to submit to a federal forum,

principles of comity do not demand that the federal court force the case back into the [s]tate's own system." *Ohio Bureau of Emp. Servs. v. Hodory*, 431 U.S. 471, 480 (1977). State defendants may choose, when "faced with the prospect of lengthy administrative appeals followed by equally protracted state judicial proceedings," "to submit . . . constitutional issue[s]" to federal courts "for immediate resolution." *Id.*; *accord Brown v. Hotel Emps.*, 468 U.S. 491, 500 n.9 (1984); *Sosna v. Iowa*, 419 U.S. 393, 396 n.3 (1975).

## III. Analysis

### A. Rule 60

The movants, the Four Judges and the Attorney General, have sought modification or vacatur of the consent decree in their briefing, (Docket Entry Nos. 741, 742, 793, 861, 864, 865, 873, 886, 887, 894, 895), and at the most-recent motion hearing, (Docket Entry No. 888). At the motion hearing, the Four Judges stated that their "view is the [Fifth Circuit's August 2026] mandate is the procedure." (Docket Entry No. 895-1 at 70:22–23 (Rough Tr. Hr'g 9/22/2026)).

At the post-final-judgment stage, modifying or vacating a consent decree is through Rule 60. *See Coney Island*, 607 U.S. at 158 ("Federal Rule of Civil Procedure 60 permits a court to 'relieve a party . . . from a final judgment, order, or proceeding' . . . ."). The mandamus opinion did not alter the requirement to proceed through Rule 60 to seek vacatur or modification of the final judgment consent decree. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988).

This court could not have granted Rule 60(b) relief sua sponte, even after *Daves II*. 12 MOORE'S § 60.62 ("[I]n almost all circumstances, a court may not grant relief under Rule 60(b) sua sponte, that is, in the absence of a motion." (citing, *inter alia*, *Chavez*, 704 F.2d at 777 ("If the court acted simply upon its own initiative, then we would not uphold its action under Rule 60(b),

because unlike Rule 60(a), 60(b) allows the court to act only 'upon motion.'"))). The movants, the Four Judges and the Attorney General, have the burden of demonstrating that Rule 60(b) relief is proper. *See Osborne*, 131 F.4th at 270 ("The burden of establishing at least one of the grounds for Rule 60(b) relief is on the movant." (citation omitted)).

Rule 60's "operative language clearly requires parties to make Rule 60(b) motions within a reasonable time." *Coney Island*, 607 U.S. at 161; *see also Clark*, 850 F.3d at 780 ("[T]imeliness . . . is measured as of the point in time when the moving party has grounds to make [a Rule 60(b)] motion, regardless of the time that has elapsed since the entry of judgment." (alterations and ellipsis in original)). The key question is when the Rule 60 clock started—which Rule 60(b) motion was available to the movants, and importantly, when it was available.

The record shows that the Rule 60(b) clock started on March 31, 2023, the date *Daves II* issued. *See* 64 F.4th at 620–36. In *Daves II*, the en banc court expressly overruled *ODonnell I*'s holding against abstention and held that *Daves II* was moot because of the intervening change in law, S.B. 6. *Id.* at 631, 635. That point was emphasized in *In re Goodhart*, 2026 WL 2517641, at *3, which stated that "…*Daves II* expressly held that '*ODonnell I*,' this very case, 'should [not] have been adjudicated in federal court.'" (citing *Daves II*, 64 F.4th at 631); *see also In re Goodhart*, 2026 WL 2517641, at *3 ("Again, *ODonnell I is this case*. *Daves II* does not hinge upon factual development or discovery." (emphasis in original)).

In *Daves II*, the Fifth Circuit reversed the *ODonnell* holding that *Younger* abstention did not apply. 64 F.4th at 631. That started the Rule 60(b)(5) clock to challenge the failure to abstain under *Younger*, which resulted in the consent decree and final judgment in *ODonnell*. FED. R. CIV. P. 60(b)(5); *see also* 12 MOORE'S § 60.46[1] ("The overall standard appears to be that one judgment is based on another when the first judgment is so related to the second that the first

judgment has claim or issue preclusion effects on the second[.]" (citations omitted)); *see also Lubben v. Selective Serv. Sys. Local Bd. No. 27*, 453 F.2d 645, 650 (1st Cir. 1972) ("For a decision to be 'based on' a prior judgment within the meaning of Rule 60(b)(5), the prior judgment must be a necessary element of the decision, giving rise, for example, to the cause of action or a successful defense . . . It is not sufficient that the prior judgment provides only precedent for the decision." (citations omitted)).

Under either formulation, the en banc court's express overruling of *ODonnell I*'s abstention holding started the Rule 60(b)(5) clock. *See id.*; *see also Overrule*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("(Of a court) to overturn or set aside (a precedent) by expressly deciding that it should no longer be controlling law <in *Brown v. Board of Education*, the Supreme Court overruled *Plessy v. Ferguson*>.").

The court briefly discusses the other potential avenues of Rule 60(b) relief.[8] Relief under Rule 60(b)(1), (2), or (3) is unavailable at this juncture, for two reasons. First, the movants have not invoked these three subsections. (*See generally* Docket Entry Nos. 741, 742, 793, 861, 864, 865, 873, 886, 887, 894, 895). Second, the Attorney General and the Four Judges moved to vacate beyond the one-year time limit that Rule 60(c) provides for such motions. *See* FED. R. CIV. P. 60(c) ("A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.").

Rule 60(b)(4) is not the proper vehicle for modification or vacatur because this "court had jurisdiction at the time it entered the judgment[,]" the court's actions comported with due process,

[8] The movants have not sought relief under Rule 60(d). (*See generally* Docket Entry Nos. 741, 742, 793, 861, 864, 865, 873, 886, 887, 894, 895).

and the court's abstention holdings were affirmed on appeal. *See Callon Petroleum Co. v. Frontier Ins. Co.*, 351 F.3d 204, 208–10 (5th Cir. 2003) (affirming denial of a Rule 60(b)(4) motion because the district court had diversity jurisdiction, even though abstention "would have been proper, if not obligatory[]" had it been timely raised before settlement); *see also Borne v. River Pars. Hosp., L.L.C.*, 548 F. App'x 954, 957 (5th Cir. 2013) (per curiam) ("[A] void judgment is one which, from its inception, was a complete nullity and without legal effect." (citing *Carter v. Fenner*, 136 F.3d 1000, 1006 (5th Cir. 1998) (quoting *United States v. Zima*, 766 F.2d 1153, 1159 (7th Cir. 1985)))); *see also Lubben*, 453 F.2d at 649 ("In the interest of finality, the concept of void judgments is narrowly construed . . . Only in the rare instance of a clear usurpation of power will a judgment be rendered void.").

At the final hearing to determine the fairness of the proposed class settlement and consent decree, the court afforded the Attorney General time to argue his position. (Docket Entry Nos. 692, 700; *see* Docket Entry No. 704 at 58:13–64:5). The Attorney General did present arguments against the decree, but he did not assert *Younger* abstention, even though every other party in the case had abandoned that issue and instead had submitted the constitutional issues to the court for a decision on the merits.

The Four Judges contend that "at th[e] time [when the consent decree was entered], all parties were united, the local rules had already been amended, and no controversy existed for the [c]ourt to determine." (Docket Entry No. 886 at 17 n.7). But the fact that the parties agreed on a particular result does not mean that there was no Article III case or controversy when the court entered the consent decree. *Cf. United States v. Texas*, 181 F.4th 548 (5th Cir. 2026) (affirming the denial of intervention, even though the movants-appellants claimed there was no case or controversy because the Attorney General and Department of Justice were aligned on the position

that federal law expressly preempted Texas's law allowing illegal aliens to obtain in-state tuition rates, at the time the district court entered the consent judgment). As noted, the Attorney General did present arguments against the decree, but not based on *Younger* abstention.

Rule 60(b)(6) relief is not available because Rule 60(b)(5) relief was available to seek to modify or vacate the consent decree and final judgment. *See BLOM Bank SAL v. Honickman*, 605 U.S. 204, 211 ("Rule 60(b)(6) provides only grounds for relief not already covered by the preceding five paragraphs. Were it otherwise, the catchall provision could swallow the preceding paragraphs and 'b[e] used to circumvent' their time bars." (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863, n.11 (1988))); *see also BLOM Bank SAL*, 605 U.S. at 211 ("Thus, we have repeatedly held that relief under Rule 60(b)(6) is available 'only when Rules 60(b)(1) through (b)(5) are inapplicable.'" (citing, *inter alia*, *Kemp*, 596 U.S. at 533)). In any event, "[a] change in decisional law after entry of judgment does not constitute exceptional circumstances and is not alone grounds for relief from a final judgment." *Bailey v. Ryan Stevedoring Co., Inc.*, 894 F.2d 157, 160 (5th Cir. 1990) (citing *McKnight v. United States Steel Corp.*, 726 F.2d 333, 336 (7th Cir. 1984); *Title v. United States*, 263 F.2d 28, 31 (9th Cir. 1959)).

**1. The Four Judges' Motion to Vacate**

The Four Judges' motion to vacate does not comply with Rule 60(c)'s "reasonable time" requirement. *See* FED. R. CIV. P. 60(c). The Four Judges' Rule 60 clock began to run when *Daves II* was issued on March 31, 2023, and stopped, at the earliest, on November 5, 2025, when the Four Judges formally moved to substitute themselves as parties under Federal Rule of Civil Procedure 25(d).[9] *Compare Daves II*, 64 F.4th at 620–36, *with* (Docket Entry No. 767; Docket Entry No.

[9] The Four Judges moved to vacate on December 11, 2025, which was 986 days after *Daves II* issued. (Docket Entry No. 793). The Four Judges moved to substitute themselves as parties on November

885 at 62 ("All 16 judges received a copy of the [*Daves II*] decision from their staff attorney the day it issued." (citing Docket Entry No. 864-1 (Goodhart Decl.) ¶ 4) ("At a[] [Harris County Criminal Court at Law] meeting in or around the first week of April 2023, [Judge Paula Goodhart] asked again about whether state law conflicts with the Decree and what the impact the new [*Daves II*] opinion has on the Decree.")))). Judge Goodhart testified that she read the *Daves II* opinion on March 31, 2023, and answered in the affirmative that she understood that the en banc court overruled the prior *ODonnell* decision rejecting *Younger* abstention in this case. (Docket Entry No. 885 at 62 (citing Docket Entry No. 885-16 (Goodhart Dep.) at 15:11–24)).

When *Daves II* issued, Judges Goodhart, Johnson, and Padilla were in office. (*See* Docket Entry No. 767). They waited 950 days, or about 31.5 months, from *Daves II*'s issuance to file their first motion in the present case. (*Id.* (substituting themselves as parties under Rule 25(d)); *cf. First Republic Bank Fort Worth v. Norglass, Inc.*, 958 F.2d 117, 120 (5th Cir. 1992) ("*Norglass*") ("[T]he grounds for filing the Rule 60(b) motion . . . were known to the intervenor-movants all along."). The fact that the Four Judges waited 950 days is important to the Rule 60(c) reasonable-time analysis.

A related question is the Four Judges' party status during this period. Either the Four Judges were parties to this litigation under Federal Rule of Civil Procedure 25(d) when they were in office, or they were not. If the former applies and these Judges were already parties when they were in office, they did not need to intervene; if the latter applies, the Four Judges needed to intervene to become parties.

---

5, 2025, which was 950 days after *Daves II* issued. (Docket Entry No. 767). The court uses the more lenient 950 days as the timeline to assess the Four Judges' delay in moving for Rule 60 relief.

The court explores whether the Four Judges, when they were in office, were parties to this litigation under Rule 25(d). Rule 25(d) provides,

> An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution.

FED. R. CIV. P. 25(d) (titled "Public Officers; Death or Separation from Office").

Under the plain text of Rule 25(d), the Four Judges were "automatically substituted as . . . part[ies]" when they were in or took office. *See id.*; 6 Judge Jerry E. Smith, MOORE'S FEDERAL PRACTICE (hereinafter "6 MOORE'S") § 25.42[1] ("When a public officer leaves office, the officer's successor is 'automatically substituted as a party.' The rule does not require a motion or application or any showing of a need to continue the action." (citing, *inter alia*, *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 480 n.1 (5th Cir. 2008))). Under Rule 25(d), Judges Goodhart, Johnson, and Padilla were parties to this case, even before *Daves II* issued, because these judges had assumed office earlier in January 2023.[10] (*See* Docket Entry No. 767). That the court did not formally grant the unopposed motion to substitute parties until November 5, 2025, the same day that the Four Judges formally moved to substitute themselves under Rule 25(d), does not change the fact that they were already parties. *See* FED. R. CIV. P. 25(d); *see also* 6 MOORE'S § 25.42[1] ("An order of substitution may be rendered by the court at any time, but this is not necessary, and omitting an order does not affect the substitution or the conduct of the litigation." (citations omitted)).

[10] Judge Garcia assumed office in January 2025 and became a party to the litigation upon assuming office. *Compare* FED. R. CIV. P. 25(d), *with* (Docket Entry No. 864-1 (Goodhart Decl.) ¶ 13).

The Four Judges, as parties under Rule 25(d), waited 950 days after *Daves II* to move to substitute themselves, and even longer to move to vacate the consent decree.[11] The Fifth Circuit stated in *In re Goodhart* that the "four judges apparently could not file such a motion until November 2025," when they "were finally able to obtain counsel independent from that of the other twelve Harris County Criminal Court at Law judges, all of whom support the consent decree's continuation." 2026 WL 2517641, at *4. The *Goodhart* opinion noted that the plaintiffs disputed that account, but the record before the panel did not show that the Four Judges were incorrect. *See id.* On remand, the parties developed a record on the Four Judges' 950-day delay.

"It remains undisputed that the other three movant-judges knew of the *Daves II* opinion the day it issued when they were in office."[12] (Docket Entry No. 896 at 17 n.6 (citing Docket Entry No. 864-1 (Judge Goodhart Decl.) ¶ 4 ("[S]taff attorney, Ashley Guice, forwarded the *Daves II* opinion to the [Harris County Criminal Court at Law] [("]HCCCL[")] Judges on March 31, 2023. At an HCCCL meeting in or around the first week of April 2023, [Judge Goodhart] asked again about whether state law conflicts with the [consent] [d]ecree and what impact the new opinion has on the [consent] [d]ecree. Shortly after that meeting, Judge Padilla and [Judge Goodhart] received the April 6, 2023[,] letter from Mr. Van Fleet [counsel for the 12 Harris County Criminal Court at Law Judges who support the consent decree and oppose its vacatur or modification] withdrawing from any representation of [Judge Goodhart] and Judge Padilla . . . ."))). "Judges Padilla, Johnson, and [Judge Goodhart] wanted an answer to whether the state law or the [c]onsent [d]ecree controlled, and what impact *Daves II* had on the [c]onsent [d]ecree . . . ." (Docket Entry No. 864-

[11] After assuming office, Judge Garcia waited over 11 months to move to vacate the consent decree. (Docket Entry No. 793).

[12] "Judge Garcia is aligned with [Judge Goodhart], Judge Padillia, and Judge Johnson with respect to [the] concerns about the [c]onsent [d]ecree and its conflict with state law." (Docket Entry No. 864-1 (Goodhart Decl.) ¶ 13).

1 (Goodhart Decl.) ¶ 5). "Around this time, [Judge Goodhart] was aware of briefing concerning the impact of the *Daves II* opinion being submitted to Judge Rosenthal in a related proceeding, *Russell v. Harris Cnty.*, No. H-19-226. [Judge Goodhart] waited, along with [her] colleagues, to see whether a decision in *Russell* would impact the [consent] [d]ecree . . . ." (*Id.* ¶ 6); *see also* Minute Entry, *Russell v. Harris County*, No. 4:19-CV-226, Docket Entry 661 (Mar. 31, 2023) ("The court conferred with the parties on the impact of the Fifth Circuit[']s most recent en banc decision in *Daves v. Dallas County*.").

The Four Judges excuse their delay by asserting that they were monitoring the developments in *Russell v. Harris* County, No. H-19-226, and waiting to see whether that decision would impact the consent decree. (*See* Docket Entry No. 864-1 (Goodhart Decl.) ¶ 6). But that argument does not explain the Four Judges' two-and-a half-year delay in moving to vacate the consent decree after *Daves II* issued. The Four Judges did not make the court aware of any change in their substantive position for over 950 days after *Daves II* issued. That is precisely the type of delay that courts analyze in evaluating the timeliness of a motion to change or vacate a final judgment under Rule 60. *See Clark*, 850 F.3d at 780.

The Four Judges argue that the delay was needed because they had to obtain counsel to enable them to move to substitute themselves as party. A detailed and thorough review of the record developed on remand shows that the Four Judges could have obtained private or pro bono counsel well before they formally moved to substitute themselves as parties in November 2025. (*See, e.g.*, Docket Entry Nos. 767, 768, 864-1, 885-16). Judges Padilla and Goodhart wanted Harris County to provide taxpayer-funded representation. (*See* Docket Entry No. 864-1 (Goodhart Decl.) ¶ 8). The County Attorney's office promptly informed the Four Judges that it would not provide taxpayer-funded counsel to represent them. (*Id.* ¶ 16). The Four Judges acknowledge that

the Commissioners Court did not prohibit them from finding representation in the matter. (Docket Entry No. 885-16 (Goodhart Dep.) at 30:15–18). State law permitted the Four Judges to hire their own counsel. *See* TEX. LOC. GOV'T CODE § 157.901(c). Judge Goodhart focused her efforts to obtain counsel on the County Attorney's and Attorney General's offices. (*See* Docket Entry No. 885-16 (Goodhart Dep.) at 20:22–21:09, 33:10–22). Judge Goodhart did not seek counsel outside of these offices or seek pro bono counsel until August 12, 2025. (*See id.* at 33:01–17 (the purpose of the August 12, 2025, meeting was to find pro bono representation)). The Four Judges' briefing does not respond to the Rule 25(d) analysis to support, much less command, a contrary result on reasonable timeliness under Rule 60.

The Four Judges do not fare better under the alternative scenario, in which they were not, by virtue of their office, parties to the litigation when *Daves II* issued, and therefore needed to intervene. To modify or vacate a consent decree, a putative intervenor must be granted leave to intervene as a party. 6 Edward J. Brunet et al., MOORE'S FEDERAL PRACTICE (hereinafter "6 MOORE'S") § 24.20 (3d ed. 2026) ("[T]he intervenor is not considered a party unless leave to intervene is granted." (citing, *inter alia*, *White v. Tex. Am. Bank/Galleria*, 958 F.2d 80, 83 (5th Cir. 1992) ("[U]ntil the Appellants received leave to intervene, they were not parties to the suit and, consequently, had no standing to be served or respond to NCNB's summary judgment motion . . . It was only when the court permitted [Appellants] to intervene that the Appellants became parties to the action, equal in status to the original parties." (citations omitted)))); *see also U.S. ex rel. Eisenstein v. City of N.Y.*, 556 U.S. 928, 933 ("[I]ntervention is the requisite method for a nonparty to become a party to a lawsuit." (citation omitted)); *see also Robert Ito Farm, Inc. v. Cnty. of Maui*, 842 F.3d 681, 687 (9th Cir. 2016) ("[A] prospective intervenor does not become a party to the suit unless and until he is allowed to intervene."); *see also* FED. R. CIV. P. 60(b) ("On motion and just

terms, the court may relieve a *party* or its legal representative from a final judgment[.]" (emphasis added)). But the Four Judges waited 950 days after *Daves II*'s issuance to move to intervene.

The Four Judges' 950-day delay in filing any motion prejudiced the existing parties who supported the consent decree, were bound by its terms, and had acted in reliance on its provisions.[13] *See Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (noting that the timeliness requirement serves to "guard against prejudicing the original parties by the failure to apply sooner" (citing *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970))). The movants rely on *Doe v. Briley*, 562 F.3d 777, 781 (6th Cir. 2009), but in that case, the movant "ha[d] not identified even a shred of prejudice that [it] ha[d] suffered as a result of [the] [d]efendants' delay." *See id.* In the present case, the prejudice to the non-moving parties has been identified and is significant. *Cf. id.* Second, *Doe* is distinguishable. The consent decree in that case was entered after the Supreme Court decided in *Wisconsin v. Constantineau*, 400 U.S. 433, 434–39 (1971), that the Constitution (as opposed to only state defamation law) appeared to protect a "stand-alone liberty interest in one's reputation," *Doe*, 562 F.3d at 780, and before the Court decided *Paul v. Davis*, 424 U.S. 693 (1976), which "emphatically made clear that it does not." *Doe*, 562 F.3d at 780. The consent decree [in *Doe*] . . . was entered during the time between the two decisions. *Id.* In the present case, by contrast, the constitutional holding underpinning the consent decree—that the Harris County's wealth-based bail system violated due process and equal protection—was not disturbed. (*Compare* Docket Entry Nos. 708, 709, 896 at 15 n.5, *with Doe*, 562 F.3d at 789–90 ("[T]here has been a change in the law," . . . whose effect is that '[t]he foundation upon which the [decree] was built has crumbled.'" (citation omitted))). Third, because vacating the consent decree final

[13] The analysis in this paragraph generally applies whether the Four Judges are viewed as parties under Rule 25(d) or as intervenors.

judgment must comply with Rule 60(b), and the parties have limited their motions and arguments to Rule 60(b), (*see generally* Docket Entry Nos. 741, 742, 793, 861, 864, 865, 873, 886, 887, 894, 895), today's holding does not "'bind all future officers of the State' . . . to the decree's proscriptions" because other avenues of Rule 60 relief that have not been raised remain open.[14] *Cf. Doe*, 562 F.3d at 781.

Consent decrees are "reached after careful consideration by the parties involved; they do not wish, and should not be forced, to defend the decree in [motions] brought long after the decree was signed." *Hefner v. New Orleans Pub. Serv., Inc.*, 605 F.2d 893, 898 (5th Cir. 1979). Intervention years later, "for the purpose of challenging [a] consent agreement," prejudices the parties "by jeopardizing months of negotiations, causing substantial litigation expenses, and even more substantial expenses of implementation." *United States v. Allegheny-Ludlum Indus., Inc.*, 553 F.2d 451, 453 (5th Cir. 1977) (per curiam). An intervention to undo the parties' "bargain," *United States v. U.S. Steel Corp.*, 548 F.2d 1232, 1235 (5th Cir. 1977), means that "[a] negotiated settlement of a difficult problem is put at risk, to the disadvantage of the named parties, the class," and, here, Harris County, *Corley v. Jackson Police Dep't*, 755 F.2d 1207, 1210 (5th Cir. 1985). "To allow a tardy intervenor to block the settlement agreement after all that effort would result in the parties' combined efforts being wasted completely." *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 950 (7th Cir. 2000); *accord Delaware Valley Citizens' Council for Clean Air v. Pennsylvania*, 674 F.2d 970, 975 (3d Cir. 1982) ("The fact that appellants knew or should have known of the pendency of this lawsuit at an earlier time and failed to act at that time to protect

---

[14] The court expresses no view on the appropriateness of relief under Rule 60(d) or prong one of Rule 60(b)(5) for the "satisf[action], release[], or discharge[]" of "the judgment," FED. R. CIV. P. 60(b)(5), (d), because the Texas Attorney General and the Four Judges have not, at this time, requested such relief. (*See generally* Docket Entry Nos. 741, 742, 793, 861, 864, 865, 873, 886, 887, 894, 895).

their interests weighs heavily against the timeliness of these motions." (citations omitted)); *Jones v. Caddo Par. Sch. Bd.*, 735 F.2d 923, 935 (5th Cir. 1984) (en banc); *Orange County v. Air Cal.*, 799 F.2d 535, 538 (9th Cir. 1986); *In re Dep't of Energy Stripper Well Exemption Litig.*, 864 F.2d 796, 801 (Temp. Emer. Ct. App. 1988); *City of Bloomington v. Westinghouse Elec. Corp.*, 824 F.2d 531, 536 (7th Cir. 1987); *Farmland Dairies v. Comm'r of New York State Dep't of Agric. & Markets*, 847 F.2d 1038, 1044–45 (2d Cir. 1988); *United States v. BASF-Inmont Corp.*, 52 F.3d 326, at *3 (6th Cir. 1995) (per curiam); *Hollywood Cmty. Synagogue, Inc. v. City of Hollywood*, 254 F. App'x 769, 771 (11th Cir. 2007) (per curiam).

Returning to Rule 25(d), if the Four Judges, upon taking office, were parties to the litigation, the prejudice to the nonmoving parties is just as significant, if not greater. The absence of a timely motion for Rule 60(b) relief meant that all the parties to the decree acted in reliance on it. The supermajority of judges and other parties supporting the decree reasonably relied on the lack of a timely motion seeking to vacate it under *Daves II*.

The Four Judges' 950-day delay makes their motion to vacate or modify under Rule 60 based on *Daves II* untimely. A comparison with other cases is illustrative because the Fifth Circuit has held untimely far shorter delays in the Rule 60(b) context. *See Clark*, 850 F.3d at 782 ("As noted, Clark filed his Rule 60(b) motion on September 19, 2014, almost sixteen months after [the relevant case] was decided on May 28, 2013. If, rather than the date [the relevant case] issued, we utilize August 2013, the date that conflict-free counsel was appointed by the state habeas court, then the Rule 60(b)(6) motion was filed twelve months after new counsel was appointed. Using either date, the rule 60(b)(6) motion was untimely."). *Clark* is illustrative because the petitioner's counsel was "barred by a Texas statute from representing [the petitioner] in any federal proceeding" and could only have "advis[ed] [the petitioner] to seek federal habeas counsel and

pursue concurrent federal proceedings." *Id.* at 783 (citations omitted). Nevertheless, the petitioner in *Clark* did not find federal habeas counsel for more than a year. *See id.* A similar situation occurred in the present case, albeit in a different context, because the Four Judges were advised that the existing attorneys could not represent them in a challenge to the consent decree. (Docket Entry No. 896 at 11). Despite these issues, the Four Judges did not submit anything, "either through hired counsel or on their own, until November 2025, thirty-one months after *Daves II*." (*See id.*). In *Norglass*, the Fifth Circuit favorably cited cases in other circuits holding that unjustified delays ranging from ten weeks to one year did not comply with Rule 60's reasonable-time requirements. *See* 958 F.2d at 121 (collecting cases); *see also id.* ("[W]e are comfortable affirming the district court's judgment because there is no abuse of discretion in finding that a *two year* delay in filing a Rule 60(b) motion is beyond the bounds of reasonableness when, as here, the moving party has given no valid justification for the delay." (emphasis in original; citations omitted)).

Counsel for the Four Judges contends that Judge Garcia, who assumed office on January 1, 2025, gets a fresh Rule 60(c) clock at that time, because "we're dealing with a governmental entity here." (Docket Entry No. 896-1 at 63:14–64:09).[15] But that proposition is not consistent with Rule 25(d) or Rule 60(c). *See* FED. R. CIV. P. 25(d), 60(c). When a public official takes office, that official becomes a party to existing litigation against the official in her official capacity. *See* 6 MOORE'S § 25.42[1], [2]; *id.* § 25.43[1], [2] (noting that a public official "stands in the same position as the predecessor . . . and has the same procedural position in the suit as did the predecessor" (citations omitted)); *see also Stroman Realty, Inc.*, 513 F.3d at 480 n.1. A new-

[15] Counsel for the Four Judges did not articulate a limiting principle—under Rule 60(c)'s framework—when asked if the new-officeholder new-clock theory would apply to officeholders who took office ten or twenty years later. (*See* Docket Entry No. 896-1 at 63:14–64:09).

officeholder new-clock theory is inconsistent with Rule 60(c)'s reasonable-time requirement, which would be undermined if swearing in a new public official allowed that official to move to vacate a final judgment years, even decades, after the grounds for making the Rule 60(b) motion were available and were not pursued in a reasonable time. *Cf. Coney Island*, 607 U.S. at 159–61. Third, the new-officeholder new-clock theory would have broad trans-substantive Rule 60 consequences for other consent decrees. *Cf. Texas*, 181 F.4th at 551–62 (affirming the denial of intervention in a case involving a consent decree that prevents illegal aliens from obtaining in-state tuition rates in Texas); *see also Salazar v. District of Columbia*, 729 F. Supp. 2d 257, 261 (D.D.C. 2010) ("To read . . . Rule [60]'s 'reasonable time' requirement to allow a complete change of position with each election of a new administration would completely undermine the interests of finality and repose that the Rule is designed to protect."); *see also id.* n. 5 ("Indeed, such a reading would undoubtedly prejudice many interests in a community and raise doubts about whether commitments made and relied upon could be trusted for the future."); *see also In re Goodhart*, 2026 WL 2517641, at *4 (noting that the "mere transfer of power from one officeholder to another is [not] enough to vacate or modify a consent decree").

The fact that Judge Garcia assumed office in 2025 does not allow her to restart the reasonable-time clock. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all other respects other than name, to be treated as a suit against the entity . . . It is *not* a suit against the official personally, for the real party in interest is the entity." (emphasis in original; citation omitted)). In any event, there is no basis to restart the Rule 60(c) clock for Judge Garcia; she had appeared in this litigation as early as October 2016, (Docket Entry Nos. 67–71). Even under the Four Judges' new-officeholder new-clock theory, Judge Garcia's eleven-month delay in moving

to vacate is untimely. *See Norglass*, 958 F.2d at 121 (favorably citing circuit-court holdings that affirmed denials of Rule 60(b) relief based on unjustified untimeliness ranging from ten weeks to a year); *see also Tamayo v. Stephens*, 740 F.3d 986, 991 (5th Cir. 2014) (per curiam) (holding that the district court did not abuse its discretion in denying a Rule 60(b) motion because the controlling law "was issued on May 28, 2013, nearly 8 months" earlier and the petitioner "waited until January 20, 2014, two days before his scheduled execution, to file th[e] [Rule 60(b)] motion").

The movants do not argue that relief is available under Rule 60(b)(5) for the "satisf[action], release[], or discharge[]" of the judgment. *See* FED. R. CIV. P. 60(b)(5); (*see generally* Docket Entry Nos. 741, 742, 793, 861, 864, 865, 873, 886, 894, 895). Instead, the movants' argument for Rule 60(b)(5) relief is that prospective application of the consent decree is no longer equitable. FED. R. CIV. P. 60(b)(5) (prong three); (*see generally* Docket Entry Nos. 741, 742, 793, 861, 864, 865, 873, 886, 887, 894, 895). The problem with this argument is that the movants' basis for prospective inequity rests on Rule 60(b) grounds that were available as soon as *Daves II* issued, but were not pursued within a reasonable time. The Four Judges argue that this case is different because it involves "an ongoing decree imposing institutional reforms[,]" whereas *Coney Island* involved "a final judgment." (*Cf.* Docket Entry No. 895 at 17). The Four Judges' argument is unpersuasive, for two reasons.

First, the Four Judges seek to vacate or modify the consent decree and final judgment years after they had grounds for a Rule 60(b) motion, without complying with the Rule 60(c)(1) reasonable time requirement. *See Clark*, 850 F.3d at 780. Second, that the decree may have "ongoing" effects does not remove or create an exception to the Rule 60(c)(1) reasonable time limit for challenging final judgments. *Cf. Coney Island*, 607 U.S. at 159 (holding that Rule 60(c)(1)'s reasonable time-limit applies even to challenges to void judgments and rejecting the

argument that a movant can seek relief at any time just because a "void judgment is a legal nullity"); *see also Kemp*, 596 U.S. at 530 ("[A] Rule 60(b)(1) motion, like *all* Rule 60(b) motions, must be made 'within a reasonable time.'" (emphasis added)).

Second, the Supreme Court's recent decision in *Coney Island* reinforces *Kemp*'s statement that Rule 60(b) motions must be made within a reasonable time. *See* 607 U.S. at 158–59. If a reasonable time-limit applies to void judgments, even though "the passage of time cannot cure voidness," "the same principle holds true" here. *See id.* Just as the reasonable time-limit applies to challenges even to void judgments, the reasonable time-limit applies to modifications or vacatur motions involving institutional-reform consent decrees. *See id.* at 158–59. "Statutes and rules routinely limit the time during which a party can seek relief from a judgment infected by error." *Id.* at 159. The movants cannot invoke a prospective inequity argument to avoid the fact that the Rule 60(b)(5) clock started when *Daves II* issued or the fact that they did not file a motion in the intervening 950-day period. *See id.* at 161 ("Here, the operative language clearly requires parties to make Rule 60(b) motions within a reasonable time."); *see also Kemp*, 596 U.S. at 530; *cf. R.C. by Ala. Disabilities Advoc. Program v. Nachman*, 969 F. Supp. 682, 701 (M.D. Ala. 1997) ("The [c]ourt is aware of no extraordinary circumstance militating in favor of reaching the merits of defendant's 60(b)(5) motion."), *aff'd sub nom. R.C. v. Nachman*, 145 F.3d 363 (11th Cir. 1998).

**2. The Attorney General's Motion to Vacate**

The Attorney General's request to modify or vacate the consent decree is also untimely.[16] The Attorney General knew about *Daves II* when it issued "because his office litigated th[e] case on behalf of the District Court Judges who were defendants." (Docket Entry No. 885 at 62); *see*

[16] Although the court denied the Attorney General's motion to intervene to invoke *Younger* abstention, the Attorney General was allowed to intervene to assert mootness. (Docket Entry No. 764 at

*also Daves II*, 64 F.4th at 618 (listing counsel appearances for the Attorney General). In a similar case, in which "the Attorney General participated as counsel for the Felony Judges (until they were dismissed) and [as] the Intervenor (after the Felony Judges were dismissed), the [c]ourt discussed the potential impact of *Daves II* with the parties the day it issued." (Docket Entry No. 885 at 62 (citing Minute Entry, *Russell v. Harris County*, No. 4:19-CV-226, Docket Entry 661 (Mar. 31, 2023) ("The court conferred with the parties on the impact of the Fifth Circuit[']s most recent en banc decision in *Daves v. Dallas County*."))). *Daves II* issued on March 31, 2023. The Attorney General did not move to intervene to seek to vacate the consent decree until August 26, 2025. (Docket Entry Nos. 740, 741, 742). The record shows that the Attorney General's 879-day (29-month) delay after *Daves II* issued in moving to intervene to seek to vacate the consent decree, (Docket Entry Nos. 740, 741, 742), fails to meet the Rule 60(c) reasonable-time requirement.

The Attorney General states that the delay was due to his Office's "deliberation." (Docket Entry No. 873 at 11). But the Attorney General has not identified case law, in the intervention or Rule 60(b) context, excusing a prospective intervenor's deliberation-based delay in moving to challenge a final judgment. (*See generally* Docket Entry Nos. 740, 741, 742, 861, 873, 887, 894). Rule 60 requires such deliberation to take place within a reasonable time. *See* FED. R. CIV. P. 60(c).

The Attorney General argues that "[t]he finality interest underpinning Rule 60(c)(1) is especially weak for an ongoing institutional-reform decree, which 'is itself an ongoing remedy that precludes finality as long as it endures.'" (Docket Entry No. 894 at 15–16 (quoting *Alexander v.*

---

32–35). The court addresses whether the Attorney General has complied with Rule 60(c)(1)'s reasonable time-limit requirement because the Attorney General has status as an intervenor, albeit for a different reason. The court concludes that the Attorney General has not satisfied Rule 60(c)(1)'s reasonable time-limit requirement for the requested relief.

*Bahou*, 512 F. Supp. 3d 363, 371 (N.D.N.Y. 2021))). The Attorney General argues that the nonmovants' reliance on *Coney Island* is "misplaced" because "*Coney Island* holds only that Rule 60(c)(1)'s reasonable-time limit applies to a motion under Rule 60(b)(4) alleging that a judgment is void for defective service." (Docket Entry No. 894 at 16 (emphasis and citation omitted)). The Attorney General's contention is unpersuasive, for three reasons. First, *Bahou* predates the Supreme Court's recent case law explaining that "all Rule 60(b) motions[] must be made 'within a reasonable time.'" *See Kemp*, 596 U.S. at 530; *see also Coney Island*, 607 U.S. at 157 ("Rule 60(c)(1) requires parties to make Rule 60(b) motions within a 'reasonable time.'"); *see also id.* at 158 (citing *Kemp*, 596 U.S. at 533 ("Rule 60(c) imposes deadlines on Rule 60(b) motions. All must be filed 'within a reasonable time.'")). Second, in *Coney Island*, the Supreme Court noted that allowing a "special, unlimited-time principle" "would have extreme implications" because an "adversely affected party could wait as long as it wanted" without "be[ing] required to comply with . . . deadline[s]." *See* 607 U.S. at 159–60. The Supreme Court held that Rule 60(c)(1)'s reasonable-time limit applies, despite "several Courts of Appeals[] and a prominent treatise[,]" which "rel[ied] on the generally accepted maxim that a 'void judgment is a legal nullity'" and "that the passage of time cannot turn such a nullity into an enforceable judgment." *See id.* at 159 (citations omitted). Third, the court in *Bahou* discussed, *inter alia*, the appropriateness of relief under prong one of Rule 60(b)(5) for the "satisf[action], release[], or discharge[]" of "the judgment." 512 F. Supp. 3d at 369–70; FED. R. CIV. P. 60(b)(5). The Texas Attorney General and the Four Judges have not requested relief under prong one of Rule 60(b)(5). (*See generally* Docket Entry Nos. 741, 742, 793, 861, 864, 865, 873, 886, 887, 894, 895). In *Bahou*, "Syracuse d[id] not challenge the timeliness of the government's motion to the extent that the government argue[d]

that the substantial objectives of the consent decree ha[d] been met." 512 F. Supp. 3d at 371. In this case, the parties vigorously dispute timeliness under Rule 60(c). *Cf id.*

**B. *Younger* Abstention**

The Fifth Circuit tasked this court with expeditiously deciding the *Younger* abstention issue—well in advance of the November election—and with faithfully applying *Daves II*'s holding overruling *ODonnell I*'s holding against *Younger* abstention. *In re Goodhart*, 2026 WL 2517641, at *5. For the following reasons, the court believes it has followed both directives.

The law about *Younger* abstention in bail-reform cases has changed since this court decided *ODonnell.* If *ODonnell* were filed today, it would face a vastly different landscape of en banc precedent than when this court relied on[17] then-binding-en-banc precedent in *Pugh v. Rainwater*, which held that "imprisonment solely because of indigent status is invidious discrimination and not constitutionally permissible." *See* 572 F.2d 1053, 1056 (5th Cir. 1978) (en banc) (citing *Williams v. Illinois*, 399 U.S. 235 (1970); *Tate v. Short*, 401 U.S. 395 (1971)); *see also Pugh*, 572 F.2d at 1056 ("We view such deprivation of liberty of one who is accused but not convicted of crime as presenting a question having broader effects and constitutional implications than would appear from a rule stated solely for the protection of indigents.").

To be sure, it would be "proper, if not obligatory, for the district court to" abstain under *Younger*, if *ODonnell* were filed today. *See Callon Petroleum Co. v. Frontier Ins. Co.*, 351 F.3d

[17] At the time that this court entered the consent decree, the court relied on the unanimous guidance of *Gerstein v. Pugh*, 420 U.S. 103, 108 n.9 (1975) ("The District Court correctly held that respondents' claim for relief was not barred by the equitable restrictions on federal intervention in state prosecutions, *Younger v. Harris*, 401 U.S. 37 (1971). The injunction was not directed at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecution. The order to hold preliminary hearings could not prejudice the conduct of the trial on the merits." (citing *Conover v. Montemuro*, 477 F.2d 1073, 1082 (3d Cir. 1972); *cf. Perez v. Ledesma*, 401 U.S. 82, 91 (1971); *Stefanelli v. Minard*, 342 U.S. 117 (1951))).

204, 209–10 (5th Cir. 2003) ("We can certainly agree that, had the Superintendent timely moved the district court to dismiss or stay this action on *Buford* grounds, it would have been proper, if not obligatory, for the district court to have done so. However, these are not the facts before us."); *see also id.* at 206–12 (affirming the denial of Rule 60(b) relief without abstaining under *Buford*). Notably, although the court in *Callon* recognized that abstention would have been proper earlier in the case, it denied Rule 60(b) relief and did not require abstention. *Id.* A final judgment stands, even in a case in which abstention would have been "obligatory" at the outset, when the parties do not meet their burden to vacate or modify under Rule 60. *See id.*; FED. R. CIV. P. 60. The *Daves II* holding that this case "should [not] have been adjudicated in federal court" does not in itself vacate the final judgment under Rule 60(b), though the final judgment may be susceptible to an alternative challenge under Rule 60. *Compare Callon*, 351 F.3d at 206–12, *with Daves II*, 64 F.4th at 631; *In re Goodhart*, 2026 WL 2517641, at *2. Abstention is not jurisdictional, and this is not a case in which the court has lost jurisdiction. *See Daves I*, 22 F.4th at 545.

Even though *Daves II* held that this court should have abstained rather than enter the parties' consent decree, this court cannot vacate or modify the consent decree under Rule 60(b), as the movants request, because they have not satisfied Rule 60(c)'s reasonable-time requirement. *See Coney Island*, 607 U.S. at 159 (applying the reasonable-time limit even to void judgments and reiterating that all Rule 60(b) motions must be filed within a reasonable time). At this time, an abstention holding does not address or cure the movants' Rule 60(c) reasonable-time issue. The movants have not cited, and the court has not found, a case in which a court performed a Rule 60(c) analysis, held that Rule 60(c) was not satisfied, and then proceeded to abstain under *Younger*. Abstention at this point, years after the consent decree final judgment, would be the functional equivalent of "reliev[ing] [the movants] . . . from [the] final judgment," which cannot be done

without satisfying Rule 60's requirements. *See* FED. R. CIV. P. 60. Nevertheless, once Rule 60's requirements are met,[18] this court recognizes its obligation under current Fifth Circuit precedent to abstain in this case, absent a *Younger* waiver determination.

**1. Waiver**

The plaintiffs argue that this court can determine whether the movants have waived their *Younger* arguments. (*See* Docket Entry Nos. 885, 896). In the interest of thoroughness, the court begins its discussion with the Attorney General.

**a. The Attorney General**

The court has carefully considered whether to depart from its detailed memorandum and opinion holding that the Attorney General waived *Younger* abstention. *See ODonnell v. Harris County*, 808 F. Supp. 3d 738, 749–62 (S.D. Tex. 2025); (Docket Entry No. 764 at 8–31); *see also ODonnell*, 808 F. Supp. 3d at 762 ("The Attorney General does not have a right to intervene to argue *Younger* abstention. His motion is untimely[] and . . . [therefore] futile. The parties waived *Younger* abstention, and the Attorney General would step into their shoes as an intervenor. The Attorney General also waived *Younger* abstention himself because he allowed the court to enter the consent decree, did not appeal it, and did not raise *Younger* on appeal."); (Docket Entry No. 764 at 31). The Attorney General moved for voluntary dismissal of the appeal, which the Fifth Circuit granted. (No. 25-20543, Docket Entry Nos. 19, 20; Docket Entry No. 777). The mandamus opinion does not refer to the Attorney General and does not, at this point, necessitate a contrary

---

[18] The court expresses no view on the appropriateness of relief under Rule 60(d) or prong one of Rule 60(b)(5) for the "satisf[action], release[], or discharge[]" of "the judgment," FED. R. CIV. P. 60(b)(5) and 60(d), because the Texas Attorney General and the Four Judges have not, at this time, requested such relief. (*See generally* Docket Entry Nos. 741, 742, 793, 861, 864, 865, 873, 886, 887, 894, 895).

holding. *Cf. In re Goodhart*, 2026 WL 2517641, at *1–5 (referencing only the Four Judges); (Docket Entry No. 859).

The court denies the Attorney General's motion for reconsideration, (Docket Entry No. 861), because the record shows that Attorney General waived *Younger* abstention.

**b. The Four Judges**

The nonmovants, the *ODonnell* plaintiffs, argue that the Four Judges waived *Younger* abstention. (Docket Entry No. 885 at 65–71). "Under Texas law, the elements of waiver include: (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Boren v. U.S. Nat'l Bank Ass'n*, 807 F.3d 99, 105 (5th Cir. 2015) (citations omitted). There are two theories of waiver: express waiver and implied waiver. *See id.* at 106 ("Waiver . . . can occur either expressly, through a clear repudiation of the right, or impliedly, through conduct inconsistent with a claim to the right." (citation omitted)).

The first two elements of the waiver analysis— (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence—are easier to determine. The Four Judges were aware of *Daves II*'s existence and the en banc opinion's effect on the *Younger* abstention and mootness inquiries. These two waiver elements have been satisfied. At issue is the third element, "the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *See Boren*, 807 F.3d at 105. The *ODonnell* plaintiffs acknowledge that the *Goodhart* panel "rejected the express-wavier theory."[19] (Docket Entry No. 885 at 67). With this

[19] Plaintiffs have noted that they "intend to challenge that ruling in an appropriate forum." (Docket Entry No. 885 at 67).

first route to establishing waiver closed, the *ODonnell* plaintiffs must prove that the Four Judges impliedly waived *Younger* abstention.

After a detailed and thorough review of the record, the court finds that, well before November 2025, the Four Judges were able to find counsel independent of their twelve judicial colleagues who support the consent decree. (*See* Docket Entry Nos. 864-1, 885-16). The County chose not to fund affirmative litigation to reopen a case that had already been closed for some years. (*See id.*). The Four Judges focused their efforts on obtaining taxpayer-funded counsel and on the Attorney General's office. (*See id.*). The Four Judges did not seek other outside counsel or pro bono counsel until August 2025, 29 months—almost two and a half years—after *Daves II* issued. (*See id.*). The court finds that the Four Judges' efforts to obtain counsel were dilatory, but dilatory conduct does not equate to an implied waiver, which requires "conduct inconsistent with a claim to the right." *See Boren* at 105–06.

The court holds that the Four Judges did not waive their ability to raise *Younger* abstention. The court is dubious as to the applicability of *Younger* abstention at the post-final-judgment stage because the court is not aware of authority allowing parties to challenge a consent decree and final judgment based on *Younger* abstention when the parties did not expressly reserve defenses in the consent decree's text.[20] The court notes that the Fifth Circuit did not mention this issue in its opinion in *In re Goodhart*, 2026 WL 2517641, at *1–5.

[20] In their mandamus petition, the Four Judges cited *Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002) ("*Joseph A.*"), as their only case supporting the position that *Younger* abstention is warranted at the post-final-judgment stage. (26-20337, Docket Entry 2-1 at 28). But in *Joseph A.*, the consent decree "permitt[ed] *Younger* arguments after the entry of [the] consent decree because the agreement specifically allowed the defendants to raise 'any . . . defense' after the expiration of a 'one-year 'cease fire'' during which 'no defenses could be raised.'" (Docket Entry 764 at 24); *ODonnell v. Harris County*, 808 F. Supp. 3d 738, 758 (S.D. Tex. 2025) (discussing *Joseph A.*, 275 F.3d at 1266).

*Joseph A.*'s approach in allowing abstention differs from that of other courts. *Compare* 275 F.3d at 1272, *with Off. of Child Advocate v. Lindgren*, 296 F. Supp. 2d 178, 194 (D. R.I. 2004) ("[E]ven if

Assuming that *Younger* abstention applies and applying our circuit's interpretation of *Younger* abstention, this court must abstain when Rule 60's requirements are met. *See Daves II*, 64 F.4th at 620–33, 35; *see also In re Goodhart*, No. 26-20337, 2026 WL 2517641, at *2 (noting that the Fifth Circuit "expressly stated that '*ODonnell I*,' this very case, 'should [not] have been adjudicated in federal court.'" (citing *Daves II*, 64 F.4th at 631, 635)); *see also id.* at *3 ("*Daves II* does not hinge upon factual development or discovery.").

*   *   *

The court recognizes the peculiar procedural posture of the present case and notes that two points are seemingly in tension with one another. On one hand, this court, following recent Supreme Court precedent, cannot grant the requested Rule 60(b) relief from the final judgment because Rule 60(c)'s reasonable-time limit has not been met. *See* FED. R. CIV. P. 60. Rule 60(c) precludes the requested modification or vacatur of the consent decree, based on the present record, motions, and briefs. *See Coney Island*, 607 U.S. at 157–62; (*see generally* Docket Entry Nos. 741, 742, 793, 861, 864, 865, 873, 886, 887, 894, 895). If the court abstains under *Younger*, that will preclude any judicial action on the consent decree and final judgment, effectively "reliev[ing] [the

---

abstention had been appropriate initially in this litigation, there is no authority that supports abstention after the entry of a final judgment in federal court."); *Se. Pa. Transp. Auth. v. Pa. Pub. Util. Comm'n*, 210 F. Supp. 2d 689, 707 (E.D. Pa. 2002) ("The [c]onsent [d]ecree, which is a final judgment on the merits, and can therefore only be the result of 'proceedings of substance on the merits' in a federal court, was approved in 1996 [(a year before state proceedings began)]. *Younger* abstention is therefore inapplicable in this case."), *aff'd sub nom. Nat'l R.R. Passenger Corp. v. Pa. Pub. Util Comm'n*, 342 F.3d 242 (3d Cir. 2003).

The court in *Joseph A.* noted "that the parties enjoyed the bargained-for benefits for that year, regardless of whether any of the potential defenses ultimately proved successful." 275 F.3d at 1266. In the present case, no analogous provision exists in the consent decree. (*See* Docket Entry Nos. 708, 709). *Joseph A.* did not conduct a Rule 60(c) reasonable-time analysis, which has become more salient after the Supreme Court's recent decision in *Coney Island*. *See* 607 U.S. at 157–62.

Even in *Joseph A.*, the court stated that "[a] provision-by-provision *Younger* analysis appears prudent, however, for the fact that one provision may not be enforcement in light of *Younger* does not necessarily warrant voiding the entire consent decree." 275 F.3d at 1272; *see also id.* at 1273 (remanding to the district court "for further briefing and findings" to "determine in the first instance which, if any, of the . . . provisions can be enforced in light of *Younger*").

movants] . . . from [the] final judgment." *See* FED. R. CIV. P. 60. That circumvents the Rule 60 requirements. *See id.* On the other hand, when Rule 60's requirements are met, the court acknowledges that it will have to abstain from proceedings seeking further relief because the Four Judges have not waived *Younger* abstention.[21] *See Daves II*, 64 F.4th at 631, 635. If abstention is nevertheless warranted irrespective of a Rule 60 determination, any modification or vacatur of the consent decree must still go through Rule 60. To avoid running afoul of Rule 60, the court declines to abstain under *Younger* at this time, based on the present motions and briefing. (*See generally* Docket Entry Nos. 741, 742, 793, 861, 864, 865, 873, 886, 887, 894, 895).

The court believes that it has complied, in good faith, with the Fifth Circuit's mandate and has faithfully applied binding Fifth Circuit and Supreme Court precedents. *Compare Coney Island*, 607 U.S. at 157–62, *with Daves II*, 64 F.4th at 618–36.

## IV. Conclusion

The court denies the Attorney General's motion for reconsideration, (Docket Entry No. 861); denies the Four Judges' motion, (Docket Entry No. 864); and denies the Attorney General's conditional joinder, (Docket Entry No. 865). The motion to suspend briefing deadlines, (Docket Entry No. 897), is granted.

The court denies the motions to vacate or modify the consent decree and final judgment because the requested Rule 60(b) relief was not "made within a reasonable time," as Rule 60(c) requires. The court declines to abstain because doing so would have the effect of "reliev[ing] [the movants] . . . from [the] final judgment," despite the failure to comply with Rule 60. Importantly, this does not mean that this consent decree cannot be challenged, vacated, or modified. But on the

[21] This waiver-acknowledgment applies to only the Four Judges and does not bind any future successors, who may choose to waive *Younger* abstention.

present record and briefs, the court cannot grant the requested relief. The court expresses no view on the appropriateness of relief under Rule 60(d) or prong one of Rule 60(b)(5) for the "satisf[action], release[], or discharge[]" of "the judgment," FED. R. CIV. P. 60(b)(5) and 60(d), because the Texas Attorney General and the Four Judges have not, at this time, requested such relief. (*See generally* Docket Entry Nos. 741, 742, 793, 861, 864, 865, 873, 886, 887, 894, 895).

This is a final and appealable order.

SIGNED on October 5, 2026, at Houston, Texas.

Lee H. Rosenthal
Senior United States District Judge